Esperanza Cervantes Anderson | SBN 197953
T. Stephen Corcoran | SBN 167880
**LAW OFFICE OF ESPERANZA CERVANTES ANDERSON**
1037 N Allen Avenue
Pasadena, California 91104
Tel.: (626) 219-6773
Fax: (626) 389-8911

Attorneys for PLAINTIFF
PATRICK BYRNE

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an individual,<br><br>PLAINTIFF,<br><br>v.<br><br>AMERIS BANK, a Georgia corporation,<br><br>Defendants. | Case No.: 8:24-cv-01989- MWC (JDEx)<br><br>**DECLARATION OF ESPERANZA ANDERSON IN SUPPORT OF OPPOSITION OF PLAINTIFF PATRICK BYRNE TO DEFENDANT, AMERIS BANK'S *EX PARTE* APPLICATION FOR A PROTECTIVE ORDER**<br><br>**DISCOVERY MATTER**<br><br>Courtroom: 6A<br>Magistrate Judge: Hon. John D. Early<br><br>Discovery Cutoff: November 28, 2025<br>Final Pretrial Conference: May 22, 2025<br>Trial Date: June 1, 2026 |

# DECLARATION OF ESPERANZA CERVANTES ANDERSON

I, Esperanza Cervantes Anderson, declare:

1. I am an attorney at law, a member in good standing of the State Bar of California and duly admitted to practice before this and other courts. I practice with Law Office of Esperanza Cervantes Anderson, attorneys for plaintiff, Patrick Byrne, and am the attorney chiefly responsible for the representation of Patrick Byrne. I make this declaration in support of Patrick Byrne's Opposition to Defendant's *Ex Parte* Application for a Protective Order.

2. On October 29, 2025, I served the applicable notices of deposition for H. Palmer Proctor and Leo Hill by remote appearance on Ameris' counsel. At the time the notices were served, there was no Order preventing Plaintiff from noticing other depositions. Although I unilaterally noticed the dates, I told Ameris' counsel, Nana Yee, Stacy Fode and Zachary Brower, that I would agree to move the dates of the depositions to mutually agreeable dates. Attached hereto as **Exhibit A** is a true and correct copy of my October 29, 2025 email serving the Notices of Deposition on counsel for Ameris.

3. Both Mr. Proctor and Mr. Hill have direct first-hand knowledge regarding Plaintiff's termination and also the administration of the LTIP. I am awre that in his position, Plaintiff had many direct conversations with both men. Plaintiff repeatedly made presentations to Ameris' Board of Directors regarding the Balboa division's performance. Both Mr. Proctor and Mr. Hill have direct information that is highly relevant to Plaintiff's claims. Mr. Proctor was identified by Ameris as a person who participated in the decision to terminate Plaintiff's employment in its verified responses to Plaintiff's first set of Interrogatories. Attached hereto as **Exhibit B** is a true and correct copy of Ameris' responses to Plaintiff's first set of Requests for Production of Documents which was served on my office on March 24, 2025.

4. I understand that before his termination, Plaintiff was the CEO of the Balboa division of Ameris. As CEO of Balboa, Plaintiff reported directly to the C-Suite, specifically James LaHaise ("LaHaise") who was at the same level as Proctor. Plaintiff also interacted directly with Ameris Bank CEO Proctor. As CEO of the Ameris, Proctor's approval was necessary both for the acquisition of Balboa and for the direction of the Balboa division after the acquisition. Proctor's approval was necessary regarding the compensation of high-level employees like Plaintiff. I attended the Rule 30(b)(6) deposition of Ameris Bank on November 5, 2025 in Atlanta, Georgia. Mr. LaHaise was designated as the person most knowledgeable. I also attended Mr. LaHaise's deposition in his personal capacity on November 13, 2025. I also attended the depositions of Phil Silva, Nicole Stokes Sufhan Majid on October 28, November 3 and November 4, respectfully.

5. Mr. LaHaise testified that Mr. Proctor reviewed and approved the LTIP payouts. Mr. LaHaise also testified he informed Mr. Proctor of all major decisions regarding Plaintiff, including Mr. LaHaise's decision to ask Plaintiff to sign a Severance Protection and Restrictive Covenant Agreement in the months before his termination, which Mr. LaHaise portrayed as a means of enticing Plaintiff to remain employed. As explained below, I am not allowed to attach the transcript from Mr. LaHaise's deposition because it was marked confidential by Ameris. Mr. Proctor could have directed Mr. LaHaise not to fire Plaintiff if he wanted. Mr. Proctor's approval was necessary to choose the person to replace Plaintiff after his termination.

6. Mr. LaHaise's efforts to block Proctor's deposition by portraying Proctor as a silent stone statue, receiving information without reaction, is unavailing. Indeed, Ameris witnesses engaged in extraordinary feats of mental gymnastics to avoid answering straight-forward questions. Mr. LaHaise and Mr. Silva, for example, continuously refused to admit that Mr. Silva replaced Plaintiff

DECLARATION OF ESPERANZA ANDERSON ISO PLAINTIFF'S OPPOSITION TO AMERIS' *EX PARTE* APPLICATION

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

as the head of the Balboa division until finally, Mr. LaHaise had no choice but to admit that Mr. Silva is the senior most person in the division and that prior to his termination, Plaintiff had been the senior most person in the division. Senior Vice President, Director of Accounting, Sufhan Majid, refused to acknowledge that he understood the term "accrual" as used in an email he drafted.

7. Compensation Committee member Leo Hill ("Hill") would be uncalled for in the average case involving a low-level employee fired by a middle manager, this case is brought by the former CEO of Balboa, a division of Ameris Bank.

8. Meanwhile, Leo Hill was a member of the Compensation Committee throughout the time period at issue. The LTIP – which is the central reason for this lawsuit – provides that it is to be administered by the Compensation Committee. As such, Mr. Hill would have relevant information regarding the LTIP.

9. I tried to obtain the information that I needed from Mr. Hill by less instrusive means. I propounded on Plaintiff's behalf requests for production of documents sufficient to identify the dates and times of the meetings of the Compensation Committee where the LTIP was discussed and also sought the minutes from the meetings. During the extended meet and confer hearing on September 11, 2025, the Court considered Plaintiff's arguments regarding deficiencies with Ameris' response to this request and accepted Ameris' counsel's compromise of providing a list of dates and times for those meetings. See Docket No. 64 Transcript of Sept. 11, 2025 Hearing. Although Ameris agreed to provide this list by September 19, 2025, it refused to do so.

10. Plaintiff's first set of RFPs also included a request that Ameris produce documents evidencing any delegation of authority to administer the LTIP to an individual outside of the Compensation Committee. Although Ameris agreed to produce responsive documents (as opposed to responding that it had no responsive

- 3
DECLARATION OF ESPERANZA ANDERSON ISO PLAINTIFF'S OPPOSITION TO AMERIS' *EX PARTE* APPLICATION

documents as it did to other requests where appropriate), Ameris has still not produced any responsive documents. Mr. LaHaise testified in his deposition on November 13 that he was the person administering the LTIP. Mr. LaHaise also testified that he did not know what documents existed regarding the delegation.

11. How the LTIP was administered, including discussions about the Performance Goals, Performance Criteria, formulas and accounting methodologies used to calculate the LTIP are a central issue in this case. Plaintiff claims that he was fired because he complained that Ameris intentionally miscalculated the LTIP to cheat the employees working in the Balboa division of bonuses earned after those employees did the work that entitled them to receipt of the bonuses. Ameris' refusal to provide straightforward responses is forcing Plaintiff to depose Mr. Hill.

12. Contrary to what Ameris alleges in its ex parte application, there was no order preventing Plaintiff from noticing depositions. The meet and confer effort before the Court on October 22, 2025 involved depositions previously set on dates offered by Ameris which Ameris' witnesses refused to appear for. See Docket No. 74 Order; Docket No. 76 Transcript. Plaintiff's notices of deposition for Leo Hill and Palmer Proctor were timely and valid.

13. Plaintiff respectfully requests that the Court deny Ameris' *ex parte* application for a protective order. Should the Court deny Ameris' request, Plaintiff respectfully requests an Order compelling Mr. Proctor and Mr. Hill to appear for their depositions. Ameris filed an *ex parte* application on October 6 (Docket No. 65) which the Court denied on October 7 (Docket No. 69). Instead of honoring the ruling, Ameris chose to just ignore the notice and it did not appear. Plaintiff respectfully requests the order to avoid the same result as with the Rule 30(b)(6) deposition.

14. Additionally, Plaintiff requests an Order setting a meet and confer session with the Court or a shortened briefing schedule on motions to compel to

- 4 -
DECLARATION OF ESPERANZA ANDERSON ISO PLAINTIFF'S OPPOSITION TO AMERIS' *EX PARTE* APPLICATION

address Ameris' counsel's obstructive behavior, including to require Ameris' witnesses to appear for another day of deposition to answer questions they were improperly instructed not to answer.

15. The Parties were last before the Court on October 22, 2025 to set a deposition schedule. See Docket No. 76 Transcript. During the hearing, Ameris' counsel complained that I asked for breaks during Plaintiff's examination and that Plaintiff left early, after Ameris had him served with a papers showing that a default judgment had been entered against him in an action filed against him by Ameris in Delaware even though he was never served with the Complaint. The Court entered an Order clarifying the deposition was to appear again at his deposition on October 27 and stay until completed (which he did). See Docket Nos. 74 and 76. The Court clarified the Parties should not take more than one ten minute break per hour but the Court did not rule that the testimony had to continue for one hour before a break could be taken. Docket Nos. 74 and 76.

16. Ameris has twisted this order to take control of Plaintiff's depositions of Ameris' witnesses in a manner that is obstructing Plaintiff's ability to get the testimony he needs from Ameris' witnesses. In many instances, my colleague, T. Stephen Corcoran ("Corcoran), and I have sought to take a break at close to the hour mark because we are at a breaking point between one area of examination and the next. By refusing to go off the record – and indeed, speaking to us in an imperious and overly aggressive tone – Ameris' counsel has forced my colleague and I to begin a line of questioning only to stop midway to take a break. Ameris' counsel has behaved this way even when either Mr. Corcoran or I require a bathroom break or when we need to leave the room to get a document from the next.

17. Additionally, Ameris' counsel, Nana Yee, has engaged in obstructive behavior by repeatedly making speaking objections. Ms. Yee made approximately

- 5 -
DECLARATION OF ESPERANZA ANDERSON ISO PLAINTIFF'S OPPOSITION TO AMERIS' *EX PARTE* APPLICATION

500 objections during the depositions of Sufhan Majid and Ameris' Rule 30(b)(6) witness James LaHaise. Many of the objections clearly do not apply to the questions asked. For example, Ms. Yee repeatedly objects that a question calls for speculation or lacks foundation even where the question is attempting to lay the foundation or asks for information about the witness's direct involvement in a matter. The effect of Ms. Yee's speaking objections are that the witnesses are coached to obstruct the depositions. For example, Mr. Majid refused to answer simple questions about emails he wrote forcing Plaintiff's counsel to spend several minutes laying the foundation for the words Mr. Majid used in his email. The transcript reads like the Abbott and Costello "Who's On First" routine.

18.  Ms. Yee and her colleague Stacy Fode has also improperly instructed the witnesses not to answer questions regarding the 2024 LTIP even though that is an item of damage for Plaintiff. The basis for the instruction is that the 2024 LTIP is part of this lawsuit.

19.  Ms. Yee also engages in argument on the record. For example, if Mr. Corcoran comes back from break a minute or two after the time Ms. Yee dictated the break should end, Ms. Yee spends as much as five minutes arguing on the record that Mr. Corcoran is delaying the deposition. Ms. Yee's constant remarks are doing more to delay the depositions and burn the time Plaintiff has to ask questions than any delay in getting back on the record after the break.

20.  Even this *ex parte* application was brought at a time designed to prevent Plaintiff from being able to take David Sparacio's deposition, which was scheduled for today, November 14. Counsel for Ameris has witnessed that at each deposition, Mr. Corcoran asks the questions (because Ameris refuses to allow me to speak) while I slip him notes or else supports Mr. Corcoran by making a copy during times when Ameris refuses to allow Mr. Corcoran to take a break. During the meet and confer call on November 12, I told Ms. Yee and her colleague Zac

- 6 -
DECLARATION OF ESPERANZA ANDERSON ISO PLAINTIFF'S OPPOSITION TO AMERIS' *EX PARTE* APPLICATION

Brower, that I was unable to respond to a different request until after the depositions then scheduled for November 13, 14 and 17 were over. When Ameris indicated that it would file an *ex parte* application, I asked as to the timing. Both Mr. Brower and Ms. Yee said they did not know. I was surprised when she saw the *ex parte* application filed late November 13. The fact that I had to file any opposition within 24 hours meant that I would not be able to attend Mr. Sparacio's deposition. I had to cancel the deposition to be rescheduled for another date. Attached hereto as **Exhibit C** is a true and correct copy of my email exchange with Ms. Yee on November 14, 2025 regarding the cancelation of Mr. Sparacio's deposition.

21.   Plaintiff seeks a meet and confer session or order shortening notice so that Plaintiff may seek an Order compelling Mr. Sparacio to appear on another date and compelling the other Ameris witnesses to answer questions they were instructed not to answer.

22.   It has also become apparent that Ameris is using the ESI searches it agreed to perform to avoid "finding" and producing responsive documents. Plaintiff served his first set of Requests for Production of Documents on February 20, 2025. Ameris' responses and document production were due on March 24, 2025. During the deposition, gaps in responsive documents have become apparent. For example, LaHaise took issue with the interpretation of an email exchange he had with Plaintiff from January 31, 2024 to May 6, 2024 stating that there were other intervening emails on the issues described. This email chain is highly relevant because it includes Plaintiff's complaints about the miscalculations, and LaHaise's representations that he wanted Plaintiff to remain CEO of the division (notwithstanding Plaintiff's alleged poor job performance). Ameris should not be allowed to negate the inferences and admissions made in documents by claiming that there are other documents that refute those admissions/inferences but which

were not pulled up by Ameris' carefully limited ESI searches. These documents should have been produced regardless of the search terms employed. Since Mr. LaHaise claims to be the person who fired Plaintiff, Ameris was always aware that it needed to obtain all relevant emails from him.

23. Another example is LaHaise's claim that Ross Creasy, Chief Information Officer, complained about Plaintiff, which complaints supported LaHaise's termination decision. Although I requested, on Plaintiff's behalf, that Ameris include Mr. Creasy as a custodian of records, Ameris has refused.

24. On July 29, 2025, I provided Ameris with a full list of requested search terms. Ameris refused to consider the list arguing it was too large. The fact that the database has already been assembled meant that Ameris would have been able to perform the search within a matter of hours.

25. On October 22, 2025, I handed Ameris' counsel, Nana Yee, a substantially reduced list of search terms, which included the reasons for the searches, to Ameris' counsel when they were together at the hearing on October 22. Ms. Yee not only refused to conduct the search, Ms. Yee also falsely claimed on November 4 that the list was never provided.

26. On Tuesday, November 12, I emailed Ms. Yee the ESI list again. Attached hereto as **Exhibit D** is a true and correct copy of my email to Ms. Yee sent on November 12, 2025 setting the agenda for our call and attaching the ESI search terms.

27. During our call on November 12, Ms. Yee flat out refused to conduct any searches because she said Plaintiff was too late. This argument tries to shift the burden of responding to Ameris' discovery onto Plaintiff. Plaintiff propounded his requests for production of documents in February 2025. Ameris had a duty to respond and produce responsive documents by late March 2025. Eight months later, Ameris is still refusing to provide full and complete responses. Plaintiff

DECLARATION OF ESPERANZA ANDERSON ISO PLAINTIFF'S OPPOSITION TO AMERIS' *EX PARTE* APPLICATION

requests a shortened briefing schedule to file a motion to compel. If Ameris plans to limit its production to only what it can find though key word searches, Plaintiff requests that his ESI search terms be made. Attached hereto as **Exhibit E** is a true and correct copy of my email to Ms. Yee sent on November 12, 2025 memorializing our call that day.

28. Notably, Ameris' counsel repeatedly and unfairly accuse me of making misrepresentations. I tried to have a meet and confer conference on the record during a period in the deposition of Sufhan Majid when Mr. Corcoran left the room to use the bathroom but Ms. Yee refused to allow the court reporter to go off the record. The meet and confer effort was related to Plaintiff's request to amend the Complaint. Ms. Yee falsely claimed that she never received the letter regarding Plaintiff's proposed First Amended Complaint which I handed her during Plaintiff's deposition on October 27, 2025. Despite these emphatic accusations claiming I was lying, Ms. Yee responded to my letter on November 6. This letter inappropriately claimed that the redlined version of the FAC was not made to the original word complaint. I did the redlines myself using my word version of the complaint. This aside is an example of the tactics Ameris' counsel is employing to hamper Plaintiff's ability to move the case forward. Everytime I get accused of lying, I have to spend the time and effort to clear the record lest Plaintiff be prejudiced by the accusation.

29. Ameris is also blocking discovery by producing documents that cannot be viewed or accessed by Plaintiff. Over 200 documents of the 1450 documents produced after September 19 consisted of a blank sheet with the words "Document Cannot Be Viewed" written on them. Additionally, after many requests by me, on October 28, 2025, Ameris produced its privilege log for its entire production – dating back to July 2025. By delaying until October 28 to produce a privilege log for documents produced more than one month earlier, Ameris has severely

- 9 -
DECLARATION OF ESPERANZA ANDERSON ISO PLAINTIFF'S OPPOSITION TO AMERIS' *EX PARTE* APPLICATION

1  restricted Plaintiff's ability to seek a ruling regarding those documents improperly
2  withheld or improperly redacted.

3      30.    A review of the privilege log shows that the majority of the
4  information withheld is done so based on "third party privacy," or "confidentiality"
5  or "relevancy" which are improper grounds. Plaintiff requests a shortened briefing
6  schedule to file a motion to compel.

7      31.    Ameris has been inconsistent with how it treats confidential
8  information showing that Ameris is using the protective order to obstruct Plaintiff,
9  and not to protect sensitive information. For example, Ameris has refused to allow
10 any of its witnesses to sign the Protective Order claiming that it does not apply to
11 employees. This interpretation is without merit given the terms of the Protective
12 Order. The Order restricts Ameris from sharing information with whole categories
13 of employees except those specifically identified as being allowed to receive the
14 confidential information. If Ameris' employees can share the "confidential"
15 information with anyone they want, Plaintiff should not be restricted from using the
16 information in this lawsuit.

17     32.    The fact that Ameris wants only to restrict Plaintiff shows that the true
18 reason for the designations is not to protect sensitive information, it is to stonewall
19 Plaintiff's ability to prosecute his case, including by hampering Plaintiff's ability to
20 use confidential information when filing motions or oppositions to motions. The
21 timeline for Local Rule 79 (which governs how to file confidential documents) is
22 not conducive to the *ex parte* procedure outlined in the Local Rules.

23     33.    This is apparent in the fact that Ameris has designated just about every
24 page produced as Confidential, including employee handbooks issued to all Ameris
25 employees. The only records Ameris did not designate as confidential are those
26 pertaining to Plaintiff, including Plaintiff's pay records. Although Ameris
27 designated as confidential and redacted the payment terms of the stock purchase
28

agreement by which Ameris acquired Balboa, Ameris has refused to agree to allow Plaintiff to designate the testimony from his deposition where he disclosed how much he was paid for his sale of the company. Since Plaintiff was the sole owner of the company, the disclosure of the amount of money Plaintiff earned would necessarily reveal the information that Ameris redacted and designated as confidential when it produced the stock purchase agreement. If Ameris' truly believed the information about the sale was protected financial information revealing its business strategy, it would have no problem agreeing to Plaintiff's request to designate the portions showing how much he earned in the sale as confidential.

34. Ameris has also indiscriminately designated every single page of the deposition transcripts of its deponents as confidential regardless of the topics over which the witnesses were testifying about. The Protective Order prohibits these over-designations. Attached hereto as **Exhibit F** is a true and correct copy of Protective Order entered in this case on June 20, 2025. Docket No. 29. Plaintiff seeks an order shortening notice on a motion to withdraw the "confidential" designation from documents and testimony that clearly do not qualify.

35. Attached hereto as **Exhibit G** is a true and correct copy of the Civil Trial Order entered in this case, which Ameris failed to attach to its *ex parte* application.

36. Attached hereto as **Exhibit H** is a true and correct copy of the Court's Order denying the Stipulation to Continue the Discovery Cut-off, which Ameris failed to attach to its ex parte application.

///
///
///
///

-11-

DECLARATION OF ESPERANZA ANDERSON ISO PLAINTIFF'S OPPOSITION TO AMERIS' *EX PARTE* APPLICATION

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 14th day of November in Pasadena, California.

_____
Esperanza Cervantes Anderson