# EXHIBIT A

DECLARATION OF ESPERANZA ANDERSON ISO PLAINTIFF'S *EX PARTE* APPLICATION TO (1) MODIFY SCHEDULING ORDER; (2) FOR LEAVE TO FILE FIRST AMENDED COMPLAINT; AND (3) TO EXTEND EXPERT DISCOVERY DEADLINES BY THIRTY DAYS

Esperanza Cervantes Anderson | SBN 197953
T. Stephen Corcoran | SBN 167880
**LAW OFFICE OF ESPERANZA CERVANTES ANDERSON**
1037 N Allen Avenue
Pasadena, California 91104
Tel.:  (626) 219-6773
Fax:   (626) 389-8911

Attorneys for PLAINTIFF
PATRICK BYRNE

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| PATRICK BYRNE, an individual,<br><br>PLAINTIFF,<br><br>v.<br><br>AMERIS BANK, a Georgia corporation,<br><br>Defendants. | Case No.: 8:24-cv-01989<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR:**<br><br>1. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;**<br>2. **RETALIATION IN VIOLATION OF LABOR CODE §1102.5;**<br>3. **FAILURE TO PAY ALL WAGES DUE AT TERMINATION;**<br>4. **VIOLATION OF BUSINESS & PROFESSIONS CODE §17200**<br>5. **BREACH OF CONTRACT;**<br>6. **BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING; AND**<br>7. **ACCOUNTING**<br>    4.       .<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -

First Amended Complaint for Damages

PLAINTIFF PATRICK BYRNE ("**PLAINTIFF**") complains and alleges as follows:

## PARTIES

1. PLAINTIFF is a male resident of Orange County, California.

2. PLAINTIFF is informed and believes that Defendant AMERIS BANK ("**AMERIS**") is organized as a corporation under the laws of Georgia, with a principal place of business in Atlanta, Georgia.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States and the amount in controversy exceeds $75,000.00.

4. Personal jurisdiction and venue are proper in this judicial district pursuant to 28 U.S.C. § 139l(b), as the Defendant is found in, has or has had an agent or agents, has or has had contacts, and transact or have transacted business in this district.

## GENERAL ALLEGATIONS

5. During all times relevant to this Complaint, Balboa Capital Corporation ("**BALBOA**") was and continues to be a financial technology company that provides business lending solutions to small and medium-sized businesses nationwide for the purchase or lease of business equipment.

6. On or about December 10, 2021, AMERIS entered into a Stock Purchase Agreement whereby AMERIS acquired BALBOA. Through this Stock Purchase Agreement, BALBOA continued to operate in California as a division of AMERIS. BALBOA employees continued working for BALBOA performing the same job duties as they had before the Stock Purchase Agreement, except that employees were now considered employees of AMERIS, not BALBOA.

7. Along these lines, on or about December 10, 2021, AMERIS entered into an Employment Agreement with PLAINTIFF whereby PLAINTIFF would

- 2 -
First Amended Complaint for Damages

1 continue to work at BALBOA as its Chief Executive Officer, while being an
2 employee of AMERIS. The term of the Employment Agreement was from
3 December 10, 2021 through December 31, 2024 ("Initial Term"). The Employment
4 Agreement ("Agreement") would be automatically renewed for an additional one
5 year period at the expiration of the existing term, whether the Initial Term or a
6 Renewal Term, unless either party terminated the Agreement.

7     8. On ~~or about~~ December 10, 2021, AMERIS, as part of its acquisition
8 of BALBOA, entered into an agreement establishing ~~issued~~ the BALBOA Long-
9 term Cash Incentive Plan ("**LTIP**"). The LTIP provided for ~~cash bonus awards~~
10 Cash Bonus Awards (Defined Term in the LTIP) to eligible employees of the
11 BALBOA division of AMERIS based on the achievement of ~~p~~Performance ~~g~~Goals
12 (Defined Term in the LTIP) by BALBOA during the ~~p~~Performance ~~p~~Periods
13 (Defined Term in the LTIP). Specifically, the LTIP set Performance Goals for
14 2022, 2023, and 2024 that required BALBOA to hit a minimum threshold of
15 earnings before taxes (EBT) before AMERIS was to put money in an Incentive
16 Pool (Defined Term in the LTIP). The earnings before taxes (EBT) Performance
17 Goal threshold increased substantially by multi-million dollars each year. If
18 BALBOA exceeded the Performance Goal set in the LTIP for a given year, 35% of
19 the amount by which BALBOA exceeded the Performance Goal threshold would
20 be placed into the Incentive Pool. The LTIP required that the entire amount of the
21 Incentive Pool would be paid out in Cash Bonus Awards to employees working in
22 the BALBOA division of AMERIS.

23     9. The potential for ~~additional cash awards~~Cash Bonus Awards promised
24 in the LTIP induced employees participating in the LTIP, including PLAINTIFF,
25 to work above and beyond to increase BALBOA's profitability, which would
26 result in tens of millions of dollars of additional profits for AMERIS and hundreds
27 of millions of dollars of increased stock value for AMERIS stockholders.

28     10. Instead of honoring the promises made in the LTIP, AMERIS

- 3 -
First Amended Complaint for Damages

intentionally ~~failed to properly calculate the earnings and performance of BALBOA~~ miscalculated the LTIP by changing various inputs to the LTIP and accounting methodologies used to calculate the LTIP so as to reduce BALBOA's earnings so that AMERIS could reduce or eliminate the Incentive Pool from which Cash Bonus Awards would be paid. ~~it would not have to pay any cash awards under the LTIP.~~ AMERIS' intentional miscalculations and changes to various inputs to the LTIP thereby reduced and/or eliminated the incentive compensation of BALBOA employees participating in the LTIP, including PLAINTIFF, after they had already performed the extra work that the LTIP was designed to encourage. As a result of AMERIS' intentional miscalculations and changes to various inputs to the LTIP, BALBOA employees participating in the LTIP, including PLAINTIFF, were retroactively deprived of the income they earned through their increased efforts after they had already done the work.

  11. AMERIS did this by intentionally miscalculating BALBOA's EBT in breach of the agreed upon calculation method under the LTIP. The LTIP required AMERIS to calculate the EBT of BALBOA using the methods consistent with the "Pioneer 1Q21 Operating Model" (attached as Exhibit A to the LTIP) and to apply an expressly enumerated set of "Key Assumptions" that "must be used in interpretation and application of the Pioneer 1Q21 Operating Model for purposes of the calculation of EBT." AMERIS, however, did not use the methods consistent with the Pioneer 1Q21 Operating Model or correctly apply the "Key Assumptions" as required under the LTIP and instead calculated the EBT of BALBOA using different methods that intentionally lowered the EBT, and by extension, lowered or eliminated the Cash Bonus Awards earned but not received by approximately 145 BALBOA employees participating in the LTIP from 2022 to 2024, including PLAINTIFF.

  ~~10.~~12. AMERIS also violated the terms of the LTIP by refusing to pay PLAINTIFF the Cash Bonus Award he earned for the year 2024. Under the terms

1  of the LTIP, in the event that an employee, including PLAINTIFF, is terminated
2  without cause, that employee does not forfeit the unearned and/or unpaid portions
3  of the Cash Bonus Award. On June 27, 2024, AMERIS sent PLAINTIFF a letter
4  notifying him that his employment would be terminated effective June 30, 2024.
5  AMERIS, however, stated that PLAINTIFF's termination was "without [c]ause"
6  and that he "will remain eligible to participate in the Balboa Capital Long-Term
7  Cash Incentive Plan, subject to its terms and conditions, for the 2024 calendar year
8  performance period. Nevertheless, AMERIS did not, as promised, pay Plaintiff the
9  Case Bonus Award to which he is entitled for the year 2024.

10      11. 13. From June 2023 through his termination, PLAINTIFF complained
11  repeatedly to AMERIS that they were improperly calculating BALBOA's earnings
12  under the LTIP miscalculating and changing various inputs and accounting
13  methodologies to the agreed-upon LTIP. PLAINTIFF complained to AMERIS that
14  he and numerous 145 other eligible employees were owed a larger Cash Bonus
15  Award Bonus for their participation in the LTIP during 2022, a larger Cash Bonus
16  Award Bonus for their participation in the LTIP during 2023, and that they were
17  owed other monies. Through their intentional miscalculations and changing of
18  various inputs to the LTIP, AMERIS reduced the Incentive Pool for 2022 and
19  avoided placing any money into the Incentive Pool for 2023 thereby depriving
20  approximately 145 employees of Cash Bonus Awards they earned for their work in
21  2022 and 2023.

22      12. 14. As a result of PLAINTIFF's complaints, AMERIS decided not to
23  renew PLAINTIFF'S Employment Agreement in or about March 2024. Then in
24  June 2024, AMERIS terminated PLAINTIFF'S employment effective June 30,
25  2024. PLAINTIFF is informed and believes and on that basis alleges that AMERIS
26  decided to terminate his employment in retaliation for PLAINTIFF'S complaints
27  about AMERIS' intentional miscalculation of BALBOA's earnings. Prior to
28  PLAINTIFF'S complaints, AMERIS repeatedly told PLAINTIFF that they were

- 5 -
First Amended Complaint for Damages

happy with PLAINTIFF'S performance and that AMERIS wanted to continue the realationship relationship with PLAINTIFF.

## DAMAGES

13.15. **Economic damages:** As a consequence of AMERIS' conduct, PLAINTIFF has suffered and will suffer loss of income and employment benefits in a sum to be proven at trial because AMERIS withheld monies earned by PLAINTIFF and owed to him pursuant to the Employment Agreement. Additionally, PLAINTIFF has suffered and will suffer harm, including lost past and future income and employment benefits in a sum to be proven at trial because he was terminated for complaining about unlawful violations of the California Labor Code which was depriving PLAINTIFF and approximately 145 other employees of AMERIS of millions of dollars in bonuses. PLAINTIFF has also lost the investment income PLAINTIFF would have earned had he been paid when the wages were due.

14.16. **Non-economic damages:** As a consequence of AMERIS' conduct, PLAINTIFF has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial. PLAINTIFF took great pride in his work as CEO. He personally hired many of the employees affected by AMERIS' violations of the California Labor Code. For decades, PLAINTIFF worked directly with many of the employees at BALBOA. He worked closest with the 14 employees that made up the senior management team at BALBOA, with whom he worked for an average of 15 years, and who were most directly affected by AMERIS depriving them of their Cash Bonus Awards. Therefore, PLAINTIFF was devastated that he could not protect these employees from AMERIS' fraudulent conduct.

15.17. **Punitive damages:** AMERIS' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles PLAINTIFF to an award of exemplary and/or punitive damages.

1  a. **Fraud:** In addition, and/or alternatively, AMERIS' conduct, as alleged above, was fraudulent within the meaning of California Civil Code section 3294, including that AMERIS changed the methods of calculation of BALBOA's earnings. Intentionally miscalculated and changed various inputs to the LTIP. Additionally, AMERIS asserted false (pretextual) grounds for terminating PLAINTIFF were undertaken to cause PLAINTIFF hardship and deprive him of legal rights.

b. **Malice:** Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to PLAINTIFF and/or acted with reckless disregard for PLAINTIFF'S rights, including his right to be free from retaliation for voicing valid complaints about AMERIS' violations of the California Labor Code. This conduct was despicable and committed in willful and conscious disregard of PLAINTIFF'S rights to be free of retaliation.

c. **Oppression:** In addition, and/or alternatively, defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that AMERIS' actions against PLAINTIFF because of his complaints were "despicable" and subjected PLAINTIFF to cruel and unjust hardship, in knowing disregard of PLAINTIFF'S rights to a work place free of retaliation.

16.18. **Attorneys' fees:** PLAINTIFF has incurred and continues to incur legal expenses and attorneys' fees.

## COUNT I

## WRONGFUL TERMINATION /ADVERSE EMPLOYMENT ACTION IN VIOLATION OF PUBLIC POLICY

(Against AMERIS)

17.19. PLAINTIFF realleges each and every allegation in the preceding paragraphs with the same force and effect as though fully set forth herein.

- 7 -

First Amended Complaint for Damages

///

18.20. Under California law, no employee, whether they are an at-will employee, or an employee under a written or other employment contract, can be terminated or subjected to another adverse action for a reason that is in violation of a fundamental public policy.

19.21. PLAINTIFF is informed and believes, and based thereon alleges, that AMERIS decided not to renew PLAINTIFF'S Employment Agreement in or about March 2024 and then terminated his PLAINTIFF'S employment in June 2024 because he complained of unlawful violations of the California Labor Code and fraud which deprived employees of earned compensation. Thus PLAINTIFF'S termination was in violation of the public policy of the State of California and the United States imposing general business duties with which every business entity must comply.

20.22. As a proximate result of AMERIS conduct, PLAINTIFF has sustained and will continue to sustain economic damages in the form of lost wages and benefits, future lost wages and benefits, lost business and professional opportunities.

21.23. In addition, PLAINTIFF has sustained emotional and mental damages as a result of his anxiety, loss of self-esteem, loss of self-confidence, embarrassment, humiliation, worry and mental distress, all in an amount that is not currently known, but capable of proof at trial and within the jurisdictional limits of this court.

22.24. AMERIS' supervisory agents acted with malice, oppression, deceit, and with the intent to injure PLAINTIFF, or in reckless disregard of PLAINTIFF'S rights. PLAINTIFF was terminated by officers, directors or managing agents of AMERIS because *inter alia* he complained of business practices that were fraudulent and he refused to violate the California Labor Code. Alternatively, AMERIS authorized and ratified the conduct of its officers, directors and

1 managing agents who maliciously engaged in the despicable act of terminating
2 PLAINTIFF in conscious disregard of his right to be free of retaliation.
3 PLAINTIFF is therefore entitled to punitive and exemplary damages. PLAINTIFF
4 prays for punitive damages against AMERIS in an amount to be determined at the
5 time of trial, that is sufficiently high to punish AMERIS deter them from engaging
6 in such conduct in the future, and to make an example of them to others.

## COUNT II

## RETALIATION IN VIOLATION OF LABOR CODE §1102.5

(Against AMERIS)

10  23.25. PLAINTIFF realleges each and every allegation in the preceding
11 paragraphs with the same force and effect as though fully set forth herein.
12  24.26. At all times mentioned herein, the California Labor Code was in full
13 force and effect and proscribed AMERIS' conduct.
14  25.27. AMERIS created the LTIP for the purposes of inducing employees
15 working for BALBOA, a division of AMERIS, to perform work above and beyond
16 what they had been doing., generating millions of dollars of additional profits for
17 AMERIS. Beginning in 2024, after employees had already performed the work
18 necessary to secure the results identified thoughout 2023, and despite Plaintiff
19 complaining about the miscalculation and changing of various inputs and
20 accounting methodologies to the LTIP Performance Formula starting in June 2023,
21 AMERIS continued to miscalculate and change various inputs and accounting
22 methodologies to the LTIP Performance Formula so as deprive eligible employees
23 of the promised cash awards Cash Bonus Awards. This affected approximately 145
24 employees. Throughout the beginning months of 2024, PLAINTIFF continued to
25 complain repeatedly to AMERIS about miscalculations and various changes to
26 inputs and accounting methodologies used to calculate the LTIP. that their
27 alterations to the Performance Formula retroactively removed many line items
28 used to determine profitability, and as such, By this point in time PLAINTIFF was

- 9 -

First Amended Complaint for Damages

accusing AMERIS of intentionally miscalculating the LTIP so as to prevent BALBOA from hitting the Performance Goal necessary to fund the Incentive Pool from which Cash Bonus Awards would be paid. PLAINTIFF complained that AMERIS' various changes to the LTIP served to retroactively deprive all of the approximately 145 eligible employees of their Cash Bonus Awards under the LTIP after they had done the extra work to meet the LTIP performance goals. PLAINTIFF had reasonable cause to believe that his complaints disclosed a violation of the statutes in the California Labor Code and California Civil Code. These retroactive changes to the bonus structure deprived all of the approximately 145 eligible employees of earned wages in violation of Labor Code §§201, 202, 204 and 219, among others. AMERIS' conduct was also fraudulent in violation of Civil Code §1572 and 1710.

26.28. PLAINTIFF is informed and believes, and thereon alleges that as a direct result of his complaints, and because PLAINTIFF refused to ignore the violations of the Labor Code requiring the payment of earned wages and violations of the Civil Code prohibiting fraud, AMERIS decided not to renew PLAINTIFF'S Employment Agreement and then when PLAINTIFF still refused to go along with what he had reasonable cause to believe was unlawful conduct, AMERIS terminated his employment.

27.29. As a proximate result of AMERIS' conduct, PLAINTIFF has sustained and will continue to sustain economic damages in the form of lost wages and benefits, future lost wages and benefits, lost business and professional opportunities.

28.30. Additionally, PLAINTIFF has sustained emotional and mental damages as a result of his anxiety, loss of self-esteem, loss of self-confidence, embarrassment, humiliation, worry and mental distress, all in an amount that is not currently known, but capable of proof at trial and within the jurisdictional limits of this court

29.31. As a further proximate result of the aforementioned wrongful conduct, PLAINTIFF has had to employ the services of attorneys to pursue his legal rights, to PLAINTIFF'S damage in an amount unknown at this time, but according to proof at trial.

30.32. The grossly reckless, and/or intentional, malicious, and bad faith manner in which AMERIS engaged in those acts as described in this cause of action entitles PLAINTIFF to punitive damages against AMERIS in an amount within the jurisdiction of this court, to be ascertained by the fact finder, that is sufficiently high to punish AMERIS deter them from engaging in such conduct again, and to make an example of them to others.

## COUNT III

## FAILURE TO PAY ALL WAGES AT TERMINATION

## CALIFORNIA LABOR CODE §§201 AND 203

(Against AMERIS)

31.33. PLAINTIFF realleges each and every allegation in the preceding paragraphs with the same force and effect as though fully set forth herein.

32.34. At all times relevant during the liability period, PLAINTIFF was an employee of AMERIS covered by California Labor Code Section 201.

33.35. Pursuant to Labor Code Section 201, PLAINTIFF was entitled, upon termination, to timely payment of all wages earned and unpaid prior to termination.

34.36. AMERIS failed to pay PLAINTIFF all wages earned and unpaid prior to termination in accordance with California Labor Code Section 201. Indeed, to this day PLAINTIFF is still owed unpaid bonuses earned for his work in 2022 and 2023 as well as other wages.

35.37. AMERIS' failure to pay PLAINTIFF all wages earned at the time of termination in accordance with Labor Code Section 201 was willful. AMERIS had the ability to pay all wages earned in accordance with Labor Code Section 201 but failed to do so.

1    36.38. Pursuant to *inter alia* Labor Code Section 201, PLAINTIFF is entitled

2    to all wages earned prior to termination that AMERIS did not pay him.

3    37.39. Pursuant to Labor Code section 203, PLAINTIFF is entitled to daily

4    waiting time penalties equivalent to one day's wage from the day his earned and

5    unpaid wages were due upon termination up to a maximum of thirty (30) days.

6    38.40. As a result of AMERIS' conduct, PLAINTIFF has suffered damages

7    in an amount, subject to proof, to the extent he was not paid for all wages earned

8    prior to termination.

9    39.41. As a result of AMERIS' conduct, PLAINTIFF has suffered damages

10   in an amount, subject to proof, to the extent he was not paid all continuation

11   wages/waiting time penalties owed under Labor Code section 203.

12   40.42. As a further result of AMERIS' conduct, pursuant to Labor Code

13   sections 218.5, and 218.6, PLAINTIFF is entitled to recover interest on the unpaid

14   final wages, reasonable attorneys' fees, and costs of suit.

## COUNT IV

## VIOLATION OF BUSINESS & PROFESSIONS CODE §17200

(Against AMERIS)

18   41.43. PLAINTIFF realleges each and every allegation in the preceding

19   paragraphs with the same force and effect as though fully set forth herein.

20   ///

21   42.44. Section 17200 of the California Business and Professions Code

22   prohibits unfair competition by prohibiting any "unlawful, unfair or fraudulent

23   business acts or practices . . ." PLAINTIFF is informed and believes that by (1)

24   intentionally and fraudulently miscalculating and changing various inputs and

25   accounting methodologies used to calculate the LTIP so as to reduce the amount

26   AMERIS was required to pay into the Incentive Pool, thereby depriving employees

27   of earned Cash Bonus Awards Bonuses, and (2) terminating PLAINTIFF for

28   complaining about AMERIS' intentional and unlawful miscalculation of

- 12 -

First Amended Complaint for Damages

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

BALBOA'S earnings so as to avoid paying employees the Cash Bonus Awards Bonuses promised agreed to in the LTIP, AMERIS violated their generally applicable duty, as recognized in the statutes cited above, to refrain from unfair and deceptive business acts and practices.

43.45. AMERIS' conduct as alleged herein violates the Unfair Competition Law. The business acts and practices of AMERIS as alleged herein, constituted and continue to constitute a continuing course of conduct that is unlawful, unfair and/or fraudulent. PLAINTIFF is informed and believes that such unlawful, unfair and/or fraudulent conduct continues to this day and AMERIS will continue such activity in the future. The harm to the general public and AMERIS' employees far outweighs any illegitimate benefit AMERIS may derive from their legal violations.

44.46. PLAINTIFF and members of the general public have been injured by AMERIS' unlawful, misleading and fraudulent general business practices. These violations persist to this day and have not been rectified. Therefore, PLAINTIFF has been injured by AMERIS' conduct and lost money as a result of said conduct.

45.47. PLAINTIFF is thus entitled to restitution of monies he would have earned had AMERIS not engaged in these fraudulent and unfair business practices, disgorgement of unlawful profits and, an injunction preventing AMERIS from engaging in the unlawful practices discussed herein, and an injunction requiring AMERIS to fund an Incentive Pool with the unlawful profits it earned through its intentional miscalculation so that BALBOA employees participating in the LTIP in 2022, 2023 and 2024 can receive their full Cash Bonus Awards for those years according to the distribution plan that PLAINTIFF and senior management of BALBOA agreed to at the time of the acquisition.

46.48. PLAINTIFF also requests an award of attorneys' fees, based on his vindication of a public interest and/or the Court's inherent equitable powers, in an amount to be established by proof at time of trial.

///

## COUNT V

## BREACH OF CONTRACT

(Against AMERIS)

49. PLAINTIFF realleges each and every allegation in the preceding paragraphs with the same force and effect as though fully set forth herein.

50. The LTIP constitutes a valid and enforceable contract between PLAINTIFF and AMERIS, and by its terms, obligated AMERIS to calculate the EBT of BALBOA using the methods consistent with the "Pioneer 1Q21 Operating Model" (attached as Exhibit A to the LTIP) and to correctly apply an expressly enumerated set of "Key Assumptions" that "must be used in interpretation and application of the Pioneer 1Q21 Operating Model for purposes of the calculation of EBT."

51. The LTIP, by its terms, also obligated AMERIS to pay PLAINTIFF a Cash Bonus Award for the year 2024 because, among other things, the termination of his employment on June 30, 2024 was without cause.

52. PLAINTIFF has performed or substantially performed all of his obligations under the LTIP, or was otherwise excused from performance.

53. AMERIS materially breached the LTIP by, among other things, failing to calculate the EBT of BALBOA with the required calculation method under the LTIP, and failing to pay PLAINTIFF a Cash Bonus Award for the year 2024.

54. PLAINTIFF has not, and no provision in the LTIP, otherwise excused AMERIS' non-performance.

55. PLAINTIFF has suffered and continues to suffer damages as a direct and proximate result of AMERIS' breach of its obligations under the LTIP in an amount to be proven at trial.

## COUNT VI

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

- 14 -

First Amended Complaint for Damages

(Against AMERIS)

56. PLAINTIFF realleges each and every allegation in the preceding paragraphs with the same force and effect as though fully set forth herein.

57. The LTIP constitutes a valid and enforceable contract between PLAINTIFF and AMERIS.

58. The LTIP contains an implied covenant of good faith and fair dealing that imposes a duty upon each party to act with honesty in transacting business, and to perform the agreement in good faith in a manner that will accomplish the purpose of the contract. This duty of good faith is implied in every agreement and there is a covenant by each party not to deprive or do anything that will deprive the other party thereto of the benefits of the contract.

59. AMERIS breached the implied covenant of good faith and fair dealing by, among other things, calculating the EBT of BALBOA using different methods that intentionally lowered the EBT, and by extension, lowered or eliminated the Cash Bonus Awards earned by not received by approximately 145 BALBOA employees participating in the LTIP, including PLAINTIFF.

60. AMERIS also breached the implied covenant of good faith and fair dealing by, among other things, failing to pay PLAINTIFF a Cash Bonus Award for the year 2024.

61. PLAINTIFF has suffered and continues to suffer damages as a direct and proximate result of AMERIS' breach of the implied covenant of good fatih and fair dealing under the LTIP in an amount to be proven at trial.

///

## COUNT VII

## ACCOUNTING

(Against AMERIS)

62. PLAINTIFF realleges each and every allegation in the preceding paragraphs with the same force and effect as though fully set forth herein.

- 15 -

First Amended Complaint for Damages

63.  PLAINTIFF is and was entitled to receive a Cash Bonus Award for each year that BALBOA exceeded the Performance Goal set in the LTIP for 2022, 2023 and 2024. PLAINTIFF learned that AMERIS had intentionally miscalculated the LTIP by refusing employ methods consistent with the "Pioneer 1Q21 Operating Model" (attached as Exhibit A to the LTIP) and refusing to correctly apply an expressly enumerated set of "Key Assumptions" that "must be used in interpretation and application of the Pioneer 1Q21 Operating Model for purposes of the calculation of EBT."

64.  PLAINTIFF'S investigation revealed that AMERIS shorted the Incentive Pool for 2022 by a minimum of $1,457,057, and avoided paying a minimum of $3,037,750 into the Incentive Pool for 2023 through its intentional miscalculations. PLAINTIFF is aware that AMERIS has acknowledged that BALBOA exceeded the Performance Goal for 2024 by at least $3,656,709. However, PLAINTIFF cannot know the true amounts by which BALBOA exceeded the Performance Goals for each of these years because AMERIS' miscalculations were designed to reduce or eliminate the monies it was required to pay into the Incentive Pool for 2022, 2023 and 2024 each.

65.  Therefore PLAINTIFF demands an accounting of all income and revenue earned by BALBOA in calendar years 2022, 2023 and 2024 and all expenses properly charged to BALBOA for 2022, 2023 and 2024 using the accounting methods in the "Pioneer 1Q21 Operating Model" (attached as Exhibit A to the LTIP) and correctly appling only the expressly enumerated set of "Key Assumptions" that set forth in the LTIP.

**PRAYER**

WHEREFORE, PLAINTIFF prays for judgment against AMERIS BANK as follows:

1.  For economic damages, including but not limited to past and future

lost wages, commissions, bonuses and benefits, according to proof at trial;

  2. For non-economic, including but not limited to emotional distress damages, mental suffering, loss of reputation, anxiety, inconvenience, according to proof at trial;

  3. For punitive damages as allowed by law and according to proof at trial;

  4. For pre-judgment interest at the prevailing legal rate;

  5. For PLAINTIFF'S costs;

  <u>6. For reasonable attorneys' fees, according to proof;</u>

  <s>6.</s><u>7.</u> For an accounting;

  <s>7.</s><u>8.</u> For injunctive relief (as to PLAINTIFF'S cause of action for Violation of Business & Professions Code §17200); and

  <s>8.</s><u>9.</u> For such other and further relief as this Court deems just and proper.

DATED: <u>November __, 2025</u><s>September 16, 2024</s>.

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON

By: _____
  Esperanza Cervantes Anderson, Esq.
  Attorney for PLAINTIFF
  PATRICK BYRNE

- 17 -

<u>First Amended</u> Complaint for Damages

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules Of Civil Procedure, PLAINTIFF hereby requests a trial by jury for all claims and issues so triable.

DATED: <u>November __,</u> <u>2025</u><s>September 16, 2024</s>.

**LAW OFFICE OF ESPERANZA CERVANTES ANDERSON**

By: _____
    Esperanza Cervantes Anderson, Esq.
    Attorney for PLAINTIFF
    PATRICK BYRNE