Stacy L. Fode, Esq. (SBN 199883)
sfode@nfclegal.com
Nana J. Yee, Esq. (SBN 272783)
nyee@nfclegal.com
**NUKK-FREEMAN & CERRA, P.C.**
550 West C Street, Suite 910
San Diego, CA 92101
Telephone: 619.292.0515
Facsimile: 619.566.4741

Attorneys for Defendant
AMERIS BANK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an individual,<br><br>       Plaintiff,<br><br>vs.<br><br>AMERIS BANK, a Georgia corporation,<br><br>       Defendant. | Case No. 8:24-cv-01989-MWC (JDEx)<br><br>**DEFENDANT AMERIS BANK'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge: Hon. Michelle Williams Court<br>Date: February 13, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 6A<br><br>Discovery Cut-Off: November 28, 2025<br>Pretrial Conference: May 22, 2026<br>Trial Date: June 1, 2026 |

Pursuant to Local Rule 56-1, Defendant Ameris Bank ("Ameris") respectfully submits the following statement of uncontroverted facts and conclusions of law ("SSUF") in support of Defendant's Motion for Summary Judgment, on, in the Alternative, for Partial Summary Judgment, as to each of Plaintiff Patrick Byrne's ("Byrne") Claims ("MSJ").

# I.    FIRST CAUSE OF ACTION FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

Plaintiff's First Cause of Action for Wrongful Termination in violation of public policy fails because he cannot identify any specific statutory or constitutional provision. To the extent it relies on or derives from a Labor Code wage claim, it also lacks merit. Ameris respectfully requests that this Court grant Ameris's request for summary judgment as to Plaintiff's First Cause of Action and dismiss the cause of action in its entirety.

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
| --- | --- | --- |
| 1. | In 1988, Byrne founded Balboa Capital, an equipment leasing company, where he served as its CEO until December 2021. | Defendant Ameris Bank's Compendium of Exhibits in Support of its Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment ("COE"), Exh. 1, Deposition of Patrick Byrne Vol. I ("Byrne Dep."), 46:4-14, 47:19-25, 50:6-51:2, 52:22-24. |
| 2. | Byrne became the sole owner of Balboa Capital around 2015 and retained sole | COE, Exh. 1, Byrne Dep., 51:25-52:21, 53:15-18. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | ownership until its sale to Ameris in December 2021. | |
| 3. | Byrne, who is not a CPA and holds no accounting, credentials, considers himself a visionary entrepreneur. | COE, Exh. 1, Byrne Dep., 48:25-49:2, 50:10-13, 53:19-23. |
| 4. | As CEO of Balboa Capital, Byrne oversaw finance, loan operations, and the company's strategic direction, reporting to no one as it was privately owned. | COE, Exh. 1, Byrne Dep., 51:3-18, 53:24-54:4, 54:18-55:23. |
| 5. | After extensive negotiations, Ameris and Byrne executed a Stock Purchase Agreement (the "SPA") on December 10, 2021, under which Ameris acquired 100% of Balboa Capital for approximately $186 million. | COE, Exh. 1, Byrne Dep., 57:8-23, 60:7-61:3, 62:7-10, 67:21-68:6; COE, Exh. 2, Deposition of 30(b)(6) James LaHaise ("30(b)(6) Dep."), 20:20-21:3; Declaration of James LaHaise in support of Defendant's Motion for Summary Judgment, or Alternatively, For Partial Summary Judgment ("LaHaise Decl."), Para. 2. |
| 6. | ███████████████████████ ███████████████████████ █████████████████ | COE, Exh. 1, Byrne Dep., 63:10-64:9, 66:13-18. |
| 7. | With counsel, Byrne and Ameris negotiated and agreed to the LTIP and an LTIP Award | COE, Exh. 1, Byrne II Dep., 179:8-181:17, 179:17-19, |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
|  | Agreement (the "Award Agreement"). | 181:5-17; COE, Exh. 2, 30(b)(6) Dep., 52:17-22; COE, Exh. 3, Balboa Capital Long-Term Cash Incentive Plan ("LTIP"), at AMERIS000221-233. |
| 8. | The LTIP covered annual performance periods for 2022, 2023, and 2024. | COE, Exh. 1, Byrne II Dep., 180:3-6. |
| 9. | James LaHaise ("LaHaise"), Ameris's Chief Strategy Officer, testified that the LTIP is an incentive program designed to reward participants if they are eligible and approved to be included in payouts under the Plan. | COE, Exh. 2, 30(b)(6) Dep., 47:24-48:19; COE, Exh. 3, LTIP, AMERIS000221, section 1.1. |
| 10. | Put simply, if the Balboa Division beats its projected profitability targets during 2022, 2023, and 2024, which Bryne was convinced it could do, it could be entitled to additional bonus award payments for each annual performance period. | COE, Exh. 2, 30(b)(6) Dep., 48:9-19; LaHaise Decl., Para. 3. |
| 11. | Ameris's Compensation Committee (the "Committee") has broad authority and discretion to administer the LTIP as expressly delineated in the LTIP, including but not limited to construe and interpret the | COE, Exh. 3, LTIP, AMERIS000222-223, sections 2, 3.1, 3.2, 3.4, & 6. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | Plan and apply its provisions, to determine who shall participate in the Plan and the Performance Criteria that will be used to establish the Performance Goals, to adjust or modify the calculation of a Performance Goal for a Performance Period, and "to exercise discretion to make any and all other determinations which it determines to be necessary or advisable for the administration of the Plan." | |
| 12. | The Committee may delegate all or part of its authority and powers under the Plan to one or more employees of Ameris. | COE, Exh. 3, LTIP, AMERIS000223, section 3.4. |
| 13. | In this instance, the Committee delegated such authority and powers to LaHaise, who – consistent with the LTIP's "recommendation" – consulted with Byrne regarding the distribution of Cash Bonus Awards under the Plan. | COE, Exh. 5, Declaration of James LaHaise ("LaHaise Dep."), 139:25-141:17, 145:9-146:2; COE, Exh. 3, LTIP, AMERIS000222, section 3.1. |
| 14. | All decisions made by the Committee, and its delegates, are final and binding on the Company and the Participants. | COE, Exh. 3, LTIP, AMERIS000223, section 3.3. |
| 15. | After a Performance Period is completed, the Committee (or its delegate) is required to review and certify whether the | COE, Exh. 3, LTIP, AMERIS000224, section 7. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | Performance Goals were achieved and calculate the Cash Bonus Awards based upon the Performance Formula. | |
| 16. | No right to a Cash Bonus Award exists until it is paid, and participation in one Performance Period does not guarantee future participation. | COE, Exh. 3, LTIP, AMERIS000224-25, section 10.4. |
| 17. | Byrne testified he understood that LTIP awards were not guaranteed every year, to the extent that the Balboa Division did not meet the required threshold targets and he acknowledged as much in an email noting, "*Given the high probability of a downturn in the economy in 2023, we encourage the managers to use these [LTIP] bonuses to tamper down expectations for large raises in 2023. We will let everyone know that something like this may be available next year but there are no promises and it would only occur if we are able to drive long-term profitability….*" | COE, Exh. 6, AMERIS001562-65; COE, Exh. 1, Byrne II Dep., 185:8-188:3; 191:17-192:21, 192:22-193:1. |
| 18. | Balboa is a division of Ameris, which is a publicly traded company governed by the Sarbanes-Oxley Act of 2002 ("SOX"), a U.S. federal law enacted to protect investors | Declaration of Nicole Stokes in support of Defendant Ameris Bank's Motion for Summary Judgment, or in the Alternative, |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | by improving the accuracy and reliability of corporate disclosures. | For Partial Summary Judgment ("Stokes Decl."), Para. 2; COE, Exh. 7, Deposition of Nicole Stokes ("Stokes Dep."), 98:21-99:2. |
| 19. | The Balboa Division is required to follow Generally Accepted Accounting Principles ("GAAP"), the accounting standards that govern the preparation of financial statements. | Stokes Decl., Para. 3; COE, Exh. 7, Stokes Dep., 109:2-110:7, 110:15-111:12 ["…LTIP calculation is based on earnings before tax, and [Balboa Division is] a part of [Ameris]. And that's part of a publicly traded company that has to follow GAAP]. |
| 20. | The LTIP and Award Agreement expressly state that cash bonus awards are subject to all applicable laws and required regulatory approvals. | COE, Exh. 7, Stokes Dep., 109:2-110:7; COE, Exh. 3, LTIP, AMERIS000224, 229. |
| 21. | Byrne and Ameris also agreed to key assumptions in the LTIP Award Agreement, including that "[i]nitial direct costs will be calculated using GAAP methodology." | COE, Exh. 3, LTIP, AMERIS000227-28; COE, Exh. 1, Byrne II Dep., 183:10-23. |
| 22. | Byrne testified that he understood Initial Direct Costs ("IDC") would be calculated in accordance with GAAP. | COE, Exh. 3, LTIP, AMERIS000227-28; COE, Exh. 1, Byrne II Dep., 183:10-184:8. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| 23. | The LTIP's primary performance criteria is the Balboa Division's annual Earnings Before Tax ("EBT"), as defined in the Pioneer 1Q21 Operating Model ("Pioneer Model") which includes Balboa Capital's "Historical" (pre-acquisition 2017-2020) and "Projected" (2021-2025) financial data. | COE, Exh. 3, LTIP, AMERIS000227, 228, 233-34; COE, Exh. 1, Byrne II Dep., 181:13-182:23, 184:9-185:7. |
| 24. | For each year, 35% of EBT above the threshold is allocated to the LTIP bonus pool. | COE, Exh. 3, LTIP, AMERIS000227-28. |
| 25. | On the same day the SPA was executed, Byrne signed an Employment Agreement (the "Agreement") to serve as CEO of the Balboa Division of Ameris from December 10, 2021 until December 31, 2024. | COE, Exh. 8, AMERIS000238-259; COE, Exh. 1, Byrne Dep., 68:7-9, 68:15-18, 70:18-72:14. |
| 26. | ██████████████████████ ███████████████ █████████████████████ ████████████████████ ████████████ | COE, Exh. 8, AMERIS000238. |
| 27. | As the CEO of the Balboa Division, Byrne reported to LaHaise, marking the first time he had a supervisor since founding Balboa Capital in 1988. | COE, Exh. 1, Byrne Dep., 72:23-73:4; 72:15-22 ("shall report directly to the chief strategy officer of the company."); COE, Exh. 8, |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | | AMERIS000238, section 2.1 ("shall have such responsibilities and duties as the chief strategy officer of the company may assign from time to time"); COE, Exh. 9, AMERIS000235. |
| 28. | Pursuant to the Agreement, Byrne's initial base salary in 2022 was ██████████, and he received a 3% increase each subsequent year. | COE, Exh. 8, AMERIS000239, section 3.1; COE, Exh. 1, Byrne Dep., 73:5-74:7. |
| 29. | ███████████████ ████████████████ ██████████████ ████████ | COE, Exh. 8, AMERIS000239, section 3.2. |
| 30. | Although the Balboa Division did not always meet those quarterly targets, Byrne received, personally, a ██████ bonus each quarter he worked at Ameris. | COE, Exh. 8, AMERIS000239, section 3.2; COE, Exh. 5, LaHaise Dep., 128:4-129:3, 131:7-134:21; LaHaise Decl., Para. 6. |
| 31. | ███████████████ ████████████████ ██████████████ ████████████████ ███████████████ | COE, Exh. 10, AMERIS000006-10; COE, Exh. 1, Byrne Dep., 86:20-88:4, 88:11-89:5; COE, Exh. 11, AMERIS000011-16. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
|  | ██████████████ |  |
| 32. | ████████████████████ ██████████████ ██████████████ | COE, Exh. 12, AMERIS000035; COE, Exh. 1, Byrne Dep., 89:23-90:23. |
| 33. | Byrne had a written Job Description and acknowledged in deposition that because Ameris is a highly regulated publicly traded financial institution with legal and regulatory obligations, as CEO of the Balboa Division, he was responsible for setting short-and long-term goals with the executive team, ensuring compliance with applicable laws and regulations, and exercising strong managerial, financial, and communication skills. | COE, Exh. 9, AMERIS000235-237; COE, Exh. 1, Byrne Dep. 78:7-22, 80:11-16, 80:18-83:24, 84:4-16. |
| 34. | Ameris maintains anti-retaliation and whistleblower protections policies in its Code of Business Conduct and Ethics, which prohibit retaliation and provide reporting procedures. | COE, Exh. 13, AMERIS000420-421; LaHaise Decl., at Paras. 20-21. |
| 35. | The Code of Business Conduct and Ethics provides a procedure for employees to report concerns, prohibits whistleblower retaliation. | COE, Exh. 13, AMERIS000422-24; LaHaise Decl., at Paras. 20-21; COE, Exh. 14, AMERIS000435; COE, Exh. 15, |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | | AMERIS000490-492. |
| 36. | Byrne acknowledged these policies and was aware of the reporting avenues, and despite raising LTIP calculation methodology related disputes for over a year before his termination, he never complained of retaliation during his employment. | COE, Exh. 1, Byrne II Dep., 117:6-118:11, 120:1-4; COE, Exh. 16, AMERIS000103-104, 352-367; LaHaise Decl. Paras. 22-23. |
| 37. | At the close of 2022, the 2022 LTIP pool was approximately $9 million. | COE, Exh. 6, AMERIS001562-65; COE, Exh. 1, Byrne II Dep., 187:12-188:18, 195:11-19; COE, Exh. 4, AMERIS000738. |
| 38. | At **no time** during Byrne's email communications with Ameris's director of compensation, accounting personnel, or LaHaise regarding the 2022 LTIP pool did Byrne raise any concerns about Ameris's calculation methodology or dispute the 2022 pool amount. | COE, Exh. 1, Byrne II Dep., 193:4-195:9, 197:19-198:9, 202:23-203:10; COE, Exh. 6, AMERIS001562-65; COE, Exh. 17, AMERIS001780-81 ("The 2022 LTIP payout calculation was final, and payments were distributed per your recommendations. You raised no dispute or request for an adjustment in your disbursement of the 2022 payout.") |
| 39. | On February 15, 2023, Byrne received and | COE, Exh. 6, AMERIS001562- |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | accepted his 2022 LTIP award of over $5.6 million - more than 62% of the total pool available for distribution - per his own recommendation. | 65; COE, Exh. 1, Byrne II Dep., 187:12-188:18, 193:4-195:9, 195:11-19, 197:19-198:9, 202:23-203:10; COE, Exh. 19, AMERIS000068. |
| 40. | Byrne later awarded himself an additional bonus of $12,150.29, which was pulled from another participating employee's 2022 LTIP bonus award allocation. | COE, Exh. 18, AMERIS001560-61; COE, Exh. 1, Byrne II Dep., 199:2-200:6 |
| 41. | Byrne testified that he made the "decision" on how the LTIP pool was allocated and acknowledged that no one at Ameris overturned his allocations because "there wasn't the ability, because we had already agreed upon that." | COE, Exh. 1, Byrne II Dep., 188:19-191:07, 191:8-16. |
| 42. | Byrne first raised issues with Ameris's LTIP calculation methodology around mid-2023 and only thereafter attempted to retroactively challenge Ameris's *2022* LTIP calculation and seek additional LTIP money for 2022. | COE, Exh. 20, AMERIS001207-08; COE, Exh. 17, AMERIS001780-81. |
| 43. | All of Byrne's proposed changes and revisions to the LTIP calculations challenge Ameris's established calculation methodology and focus only on accounting | LaHaise Decl., Para. 9; *see also* COE, Exh. 20, AMERIS001207-08; COE, Exh. 22, AMERIS001981; COE, |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | items such as overhead allocations, repossessions, depreciation of pre-acquisition assets, charge-offs, tax benefits, stipulated judgments, and interim rents. | Exh. 1, Byrne II Dep., 166:3-4, 200:10-204:14; COE, Exh. 23, AMERIS001661-62; COE, Exh. 24, AMERIS001435-1439; COE, Exh. 25, AMERIS002283; COE, Exh. 26, AMERIS001806-1809; COE, Exh. 27, AMERIS001036-1045; COE, Exh. 49, AMERIS2040-2043; COE, Exh. 28, AMERIS001695; COE, Exh. 29, AMERIS001047; COE, Exh. 30, AMERIS001413; COE, Exh. 34, AMERIS000785; COE, Exh. 17, AMERIS001782; COE, Exh. 37, AMERIS002243-59. |
| 44. | In April 2023, Sufhan Majid ("Majid"), Ameris's Director of Accounting, provided Byrne with the Balboa Division's 2023 Q1 LTIP estimate, which showed that the quarterly EBT target *was not met*. | COE, Exh. 20, AMERIS001207-08. |
| 45. | Majid was responsible for preparation of the LTIP calculations, which included pulling | COE, Exh. 21, Deposition of Sufhan Majid ("Majid Dep."), |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | data from the general ledger via a reporting software, which was sent to Byrne quarterly for review. | 21:22-23:8. |
| 46. | To track the key inputs to the LTIP, Ameris maintained two cost centers for Balboa Division, i.e., cost center 890 tracks components of the LTIP while cost center 891 tracks all other Balboa related financial activity. | COE, Exh. 7, Stokes Dep., 76:19-77:11. |
| 47. | Upon realizing that that the Balboa Division had failed to meet the Q1 estimated target - which threatened Byrne's LTIP payment - in or around June 2023, Byrne began a campaign of incessantly demanding changes to the LTIP calculations that were inconsistent with GAAP, Ameris's accounting controls, and the terms of the LTIP and Award Agreement. | LaHaise Decl., at Paras. 9-12, 14-16; *see also* COE, Exh. 20, AMERIS001207-08; COE, Exh. 22, AMERIS001981; COE, Exh. 1, Byrne II Dep., 166:3-4, 200:10-204:14; COE, Exh. 23, AMERIS001661-62; COE, Exh. 24, AMERIS001435-1439; COE, Exh. 25, AMERIS002283; COE, Exh. 26, AMERIS001806-1809; COE, Exh. 27, AMERIS001036-1045; COE, Exh. 49, AMERIS2040-2043; COE, Exh. 28, AMERIS001695; COE, Exh. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | | 29, AMERIS001047; COE, Exh. 30, AMERIS001413; COE, Exh. 34, AMERIS000785; COE, Exh. 17, AMERIS001782; COE, Exh. 37, AMERIS002243-59. |
| 48. | On *June 5, 2023,* Byrne e-mailed LaHaise, asserting that Ameris improperly allocated over $3 million in overhead for the Balboa Division in the *2022* LTIP and sought to "add back" those costs, arguing the Division employee salaries in certain departments should be excluded because they reported to Ameris rather than directly to him. | COE, Exh. 20, AMERIS001207-08. |
| 49. | He made the same claims for Q1 2023, alleging improper overhead treatment, changes to repossession accounting, and excluded income that caused the LTIP target to be missed. | COE, Exh. 20, AMERIS001207-08. |
| 50. | Byrne submitted his own revised LTIP calculations for 2022 and Q1 2023 and demanded that he be paid an additional *$1.1 million* for 2022 and $150,000 for Q1 2023. | COE, Exh. 20, AMERIS001207-08. |
| 51. | LaHaise responded the next day, disagreed | COE, Exh. 20, |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | with Byrne's revisions, and proposed discussing the issue. | AMERIS001207-08. |
| 52. | On July 24, 2023, Byrne e-mailed Majid again claiming errors in the 2022 LTIP calculations and demanding ***an additional $1,248,354 in his July 30 payroll,*** with no reference to other Plan participants. | COE, Exh. 22, AMERIS001981; COE, Exh. 1, Byrne II Dep., 200:10-204:14. |
| 53. | Byrne repeated that the salaries for the Balboa Division Accounting, IT and Marketing departments were erroneously included in overhead and should be "added back" to align with the SPA and past practice. | COE, Exh. 22, AMERIS001981; COE, Exh. 1, Byrne II Dep., 201:3-204:14. |
| 54. | That same day, Byrne e-mailed five purported issues with the Q2 2023 LTIP: changes to repossession accounting; revision of Q2 quarterly net charge-offs; adjustment to the provision and formula; and reiterated that the Balboa Division departments overhead should be "added back," and that the depreciation for pre-acquisition assets was wrongly deducted. | COE, Exh. 23, AMERIS001661-62. |
| 55. | Byrne argued that based on his own revised calculations, the LTIP targets for Q1 and Q2 2023 were both met and asked that his | COE, Exh. 23, AMERIS001661-62. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | quarterly bonuses be included in his July 30 payroll. | |
| 56. | In the following months, Byrne repeatedly raised the same LTIP issues, seeking accounting changes based on past practices, which were addressed by accounting personnel, Stokes, and LaHaise. | COE, Exh. 24, AMERIS001435-1439; COE, Exh. 49, AMERIS2040-2043; COE, Exh. 25, AMERIS002283; COE, Exh. 1, Byrne II Dep., 166:3-4; Stokes Decl. 4-7, 9; LaHaise Decl., Paras. 9-11, 14-16. |
| 57. | David Sparacio ("Sparacio"), Ameris's Controller, explained that Byrne's position on the interim rent issue was incorrect because the LTIP requires GAAP-based calculations, while Byrne had historically used a cash-basis approach. | COE, Exh. 26, AMERIS001806-1809. |
| 58. | Additionally, Majid also told Byrne that his "old method" or "past practices" were not GAAP-compliant, and Sparacio emphasized that Ameris cannot allow business units to set accounting policy, and the accounting department cannot make changes as requested by Byrne during book closing given the established guidance and the conservative nature of the business | COE, Exh. 27, AMERIS001036-1045. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
|  | practices. |  |
| 59. | Both Stokes and LaHaise carefully reviewed but disagreed with Byrne's proposed changes and adjustments, noting that they reflected incorrect assumptions, were not compliant with GAAP, and rehashed issues previously discussed and **agreed upon** with Byrne. | COE, Exh. 24, AMERIS001435 (Stokes stating "I do not agree with these adjustments. Would you like to set up a time next week to discuss?)"; COE, Exh. 28, AMERIS001695; COE, Exh. 29, AMERIS001047 (LaHaise stating "Your statement…is wholly inaccurate and quite counterproductive…adjustments to the calculation you have made have been not mutually agreed to by us…."); COE, Exh. 30, AMERIS001413; COE, Exh. 23, AMERIS001661-62; COE, Exh. 24, AMERIS2040-2043; COE, Exh. 25, AMERIS002282-83; COE, Exh. 7, Stokes Dep., 70:14-77:18, 93:8-19 94:18-95:5, 95:6-100:8 ("…We discovered in the end of '22, beginning of '23 that Balboa Capital had not been |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | | following GAAP on the way they accounted for repossessions. And so we made the accounting adjustment to follow GAAP, per the agreement that we would follow GAAP. And so that is the adjustment that he is proposing under non-GAAP. And we said we were calculating the LTIP under GAAP, pursuant to the agreement…."). |
| 60. | Stokes testified that she spoke to Byrne at various times regarding her disagreement with Byrne's requested LTIP adjustments and revisions, and she and LaHaise even flew to California in summer of 2023 to meet with Byrne in person to address these issues. | COE, Exh. 7, Stokes Dep., 92:22-93:19; 223:18 – 224:24; LaHaise Decl., Para. 16; Stokes Decl., Para. 9; COE, Exh. 30, AMERIS001413. |
| 61. | Ultimately, the Balboa Division did not meet the 2023 LTIP EBT, and therefore no funds were allocated to the 2023 LTIP pool. | COE, Exh. 33, AMERIS000739; COE, Exh. 3, LTIP, AMERIS000221-233. |
| 62. | On January 10, 2024, after the 2023 books had officially closed, Majid emailed the | COE, Exh. 34, AMERIS000786; COE, Exh. 1, |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | final 2023 LTIP calculation to Byrne. | Byrne II Dep., 209:20-210:19. |
| 63. | On January 15, 2024, Byrne repeated his six objections and demanded ***$3,037,750***, citing issues with (1) stipulated judgments; (2) depreciation of pre-acquisition assets; (3) Accounting, IT, and Marketing overhead; (4) tax benefits; (5) interim rent, and (6) repossession accounting changes. | COE, Exh. 34, AMERIS000785; COE, Exh. 1, Byrne II Dep., 210:20-215:6; 211:9-23, 212:25-213:5. |
| 64. | In response to the six issues above, Sparacio stated, "once again we in accounting do not have the authority to adjust the LTIP calculation.  The adjustments need to be directed to [LaHaise,] so we will take no action on these." | COE, Exh. 35, AMERIS002151; COE, Exh. 36, AMERIS002155 ("We do not have the authority to change the LTIP calculation so none of these changes will be made.") |
| 65. | On January 29, 2024, Byrne sent ***another*** email to LaHaise, stating that he revised the ***2022*** LTIP calculation ***again*** and now claiming that he was owed $1,457,057. | COE, Exh. 37, AMERIS002243-59; COE, Exh. 17, AMERIS001782. |
| 66. | Byrne testified that the dispute concerned customer "security deposits," which he claimed were accounted for differently than pre-acquisition. | COE, Exh. 1, Byrne II Dep., 219:10-220:18; Stokes Decl., Para. 9. |
| 67. | Two days later, on January 31, 2024, Byrne forwarded all his January LTIP emails to LaHaise, demanding payments based on his | COE, Exh. 17, AMERIS001782; COE, Exh. 1, Byrne II Dep., 217:11-220:18. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | recalculations: (1) $2,024,765 for security deposits; (2) $1,457,057 for the 2022 LTIP; and (3) $3,037,750 for the 2023 LTIP. | |
| 68. | Byrne declined to discuss his disputes by phone, therefore LaHaise emailed him on February 5, 2024, addressing each topic raised in Byrne's January emails in reliance on Stoke's analysis, explaining, in detail, why no additional amounts were owed: <br> (1) Security Deposits: <br> • **No compensation is owed**, as the SPA's purchase-price adjustment process was followed; <br> (2) 2022 LTIP <br> • Byrne's claimed $3 million in employee overhead are direct operating costs of the Division and these employees preform their daily duties based on direction given by Byrne or a manager within the Division; no LTIP adjustment is warranted; <br> • The SPA does not impose post-acquisition staffing or reporting requirements; <br> • The 2022 LTIP was final, paid per | COE, Exh. 17, AMERIS001780-81 ("Pat, since you did not wish to discuss these topics via conference call, below is my response to your email addressed me to dated 1/31/24 with a subject: Summary of compensation owed."); COE, Exh. 1, Byrne II Dep., 226:10-227:11; COE, Exh. 34, AMERIS000785-94; COE, Exh. 23, AMERIS001661-62; COE, Exh. 25, AMERIS002282-83; COE, Exh. 7, Stokes Dep., 70:14-77:18; 94:18-100:8; COE, Exh. 24, AMERIS001435-1439; COE, Exh. 49, AMERIS2040-2043. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | Byrne's recommendations, and undisputed at the time;<br><br>• Depreciation of pre-acquisition assets was properly included in the Pioneer Model; **no adjustment to the LTIP is warranted**.<br><br>(3) 2023 LTIP<br><br>• Adjustment for stipulated judgments is accepted;<br><br>• No adjustment is warranted for depreciation of pre-acquisition assets or claimed $6.5 million overhead (direct operating costs);<br><br>• LTIP is based on EBT and tax impacts are irrelevant;<br><br>• The accounting for interim rent changed due to ASC842 and was identified in due diligence; No further adjustment is warranted.<br><br>• Adjustment is accepted for one-time change to 120-day charge off. | |
| 69. | While Ameris rejected most of Byrne's incorrect assumptions and miscalculations, it made two adjustments to the 2023 LTIP | COE, Exh. 17, AMERIS001780-81; COE, Exh. 1, Byrne II Dep., 223:15-21. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | EBT calculation per Byrne's request. | |
| 70. | However, even with those adjustments, the final 2023 EBT calculation was still below the 2023 LTIP EBT threshold. | COE, Exh. 17, AMERIS001780-81. |
| 71. | On March 11, 2024, Byrne e-mailed LaHaise, stating that his position on outstanding LTIP payments "has not changed." | COE, Exh. 17, AMERIS001776. |
| 72. | LaHaise replied, noting nothing had changed from his original response in March and invited Byrne to schedule a discussion. | COE, Exh. 17, AMERIS001776. |
| 73. | Byrne responded that "unless you are presenting an offer then talking about it anymore is a waste of time." | COE, Exh. 17, AMERIS001776. |
| 74. | LaHaise also emailed on May 6, 2024, confirming Byrne was not owed any additional 2022 or 2023 LTIP payments and that the matter was closed.  That same day, Byrne e-mailed LaHaise again, asserting the **Q1 2024** LTIP was miscalculated, repeated previously rejected issues, and requested payment based on his own revisions. | COE, Exh. 38, AMERIS001110-1111; LaHaise Decl., Para. 14. |
| 75. | At the time of Byrne's termination in June 2024, the 2024 year-end LTIP pool (if any) | COE, Exh. 39, AMERIS001792-95; COE, Exh. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | had not yet been calculated and it was uncertain whether EBT would exceed the threshold. | 3, LTIP, AMERIS000222 ("performance periods"). |
| 76. | In 2023, after realizing that a profit in 2023 was unlikely due to the Balboa Division's anticipated financial performance, Byrne became increasingly preoccupied with challenging Ameris's LTIP EBT calculation methodology to revise the numbers so that it would appear the target was met. This preoccupation caused Byrne to lose focus on the actual performance of the Balboa Division, which ultimately suffered, and it failed to meet the year-end target. | COE, Exh. 33, AMERIS000739; COE, Exh. 3, LTIP, AMERIS000221-233; COE, Exh. 5, LaHaise Dep., 188:6-13; LaHaise Decl., at Para. 11. |
| 77. | In his annual performance review for 2023, Byrne's performance issues were formally documented, with substantial constructive feedback from LaHaise. | LaHaise Decl., at Para. 12. |
| 78. | During his employment, Byrne was given annual performance reviews by his direct supervisor, LaHaise. | COE, Exh. 40, AMERIS000095-100; COE, Exh. 41, AMERIS000088-92. |
| 79. | LaHaise noted in Byrne's first (2022) performance review that integrating Balboa Capital, a long-time private company, into a publicly traded financial institution was | COE, Exh. 41, AMERIS000088-92. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | "challenging." | |
| 80. | Likewise, Stokes testified that "it was certainly a difficult relationship [with Byrne]" and "…a progression of difficulty that started along the whole path." | COE, Exh. 7, Stokes Dep., 229:20-231:17; 233:24-234:23. |
| 81. | The review noted that the Balboa Division did not generate a profit for 2023, and adjusted loan losses totaled approximately ██████████ ██████████ which prevented the Balboa Division from exceeding the 2023 LTIP EBT target. | COE, Exh., AMERIS000097; COE, Exh. 1, Byrne II Dep., 270:6-272:2; COE, Exh. 7, Stokes Dep., 218:14-25; COE, Exh. 47, AMERIS001544-48. |
| 82. | Stokes testified that she was unhappy with the ██████ in charge-offs and confirmed that Byrne, as head of Balboa Capital, was responsible for those losses. | COE, Exh. 7, Stokes Dep., 218:14-25. |
| 83. | LaHaise also observed that Byrne was dissatisfied with the level of autonomy he had in leading the Balboa Division, which contributed to strained relationships with some company leaders. | COE, Exh. 40, AMERIS000100; COE, Exh. 1, Byrne II Dep., 273:8-275:21; COE, Exh. 2, 30(b)(6) Dep. 168:20-25, 183:23-184:5; COE, Exh. 7, Stokes Dep., 220:2-221:7. |
| 84. | Despite these issues, LaHaise noted that Ameris hoped Byrne would continue in a | COE, Exh. 40, AMERIS000100; COE, Exh. 1, |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | long-term leadership role but that he would need to decide whether he wished to do so. | Byrne II Dep., 273:8-275:21; COE, Exh. 2, 30(b)(6) Dep. 133:18-20, 134:24-135:1; COE, Exh. 7, Stokes Dep., 220:2-221:7; COE, Exh. 17, AMERIS001781 ("…To follow up on our conversation during your 2023 performance review, you stated that you may not wish to continue in the role of CEO of the Balboa Capital division. If this is still the case, it will require considerable coordination to assure no impact to the Balboa Capital division's performance. Please confirm back to me your plans for remaining with the company, or not, by 2/08/24.") |
| 85. | Byrne's professional relationship with his direct supervisor, LaHaise, became strained when Byrne - rather than focusing on the Balboa Division's performance - repeatedly insisted on changing LTIP calculations based on incorrect assumptions, despite | COE, Exh. 2, 30(b)(6) Dep., 183:23-184:5, 188:9-189:18; COE, Exh. 17, AMERIS001776; COE, Exh. 24, AMERIS001435 (Stokes stating "I do not agree with |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | Ameris providing reasoning and confirmation that his revisions were neither GAAP-compliant nor consistent with the terms of the LTIP. | these adjustments. Would you like to set up a time next week to discuss?)"; COE, Exh. 28, AMERIS001695; COE, Exh. 29, AMERIS001047 (LaHaise stating "Your statement…is wholly inaccurate and quite counterproductive…adjustments to the calculation you have made have been not mutually agreed to by us…."); COE, Exh. 30, AMERIS001413; COE, Exh. 23, AMERIS001661-62; COE, Exh. 25, AMERIS002282-83; COE, Exh. 24, AMERIS2040-2043; COE, Exh. 7, Stokes Dep., 70:14-77:18, 93:8-19, 94:18-95:5, 95:6-100:8 ("…We discovered in the end of '22, beginning of '23 that Balboa Capital had not been following GAAP on the way they accounted for repossessions. And so we made the accounting adjustment to |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | | follow GAAP, per the agreement that we would follow GAAP. And so that is the adjustment that he is proposing under non-GAAP. And we said we were calculating the LTIP under GAAP, pursuant to the agreement….") |
| 86. | LaHaise noted that based on his interactions with Byrne, including their discussions, Byrne's conduct, and his attitude, it became clear to LaHaise that Byrne did not want to continue in the role of Division CEO. | COE, Exh. 2, 30(b)(6) Dep., 190:8-11; LaHaise Decl., at Paras. 10-15. |
| 87. | Stokes also experienced a strained work relationship with Byrne, stating that Byrne stopped responding to her emails and phone calls, stopped attending meetings, and stopped taking meeting requests from Stokes' assistant. | COE, Exh. 7, Stokes Dep., 220:2-221:7; Stokes Decl. at Para. 9. |
| 88. | Byrne also failed to follow internal controls and procedures, even directly instructing employees to process loans in a manner that did not conform with established GAAP accounting controls that had been explained to him. | COE, Exh. 7, Stokes Dep., 220:2-221:7; COE, Exh. 2, 30(b)(6) Dep., 184:7-185:4; COE, Exh. 43, Deposition of Heather Parker ("Parker Dep.") 65:3-12; COE, Exh. 45, |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | | AMERIS002131; Stokes Decl., Para. 9-10. |
| 89. | For example, in or around May 2024, Ameris's Controller, Sparacio, advised Byrne regarding Ameris's decision to make changes to the IDC process to remain GAAP compliant regarding purchased loans, which Byrne questioned and attempted to circumvent it, suggesting that the Division recharacterize the purchased loans and "book as individual deals" rather than using "the code for portfolio purchases" to avoid the impact of Ameris's IDC process change, in direct violation of GAAP and Ameris's internal accounting controls and compliance requirements. | COE, Exh. 44, AMERIS001784-1787; Stokes Decl., Para. 9. |
| 90. | Stokes raised these concerns to LaHaise and the Chief Compliance Officer, Bill McKendry. | Stokes Decl., at Paras. 7, 9. |
| 91. | Phil Silva ("Silva"), President of the Balboa Division, who had worked with and reported to Byrne for 17 years including before the acquisition, testified that his friendship and partnership with Byrne also changed over time. | COE, Exh. 46, Deposition of Phil Silva ("Silva Dep."), 22:3-10, 80:10-24. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| 92. | For example, in multiple e-mails, Byrne repeatedly undermined Silva in front of other Division employees, questioning his opinions regarding LTIP. | COE, Exh. 47, AMERIS001547-49; COE, Exh. 1, Byrne II Dep., 253:11-258:1. |
| 93. | Silva called Byrne's behavior "incredibly disrespectful," noting that he had no time to spend on negativity. | COE, Exh. 48, AMERIS001524-25. |
| 94. | Silva further emphasized, "With regards to [LaHaise] and Ameris... I have been very clear with them and you that we are a much better company with you … **They want you to be here if you want to be here** …" | COE, Exh. 48, AMERIS001524-25 (emphasis added). |
| 95. | According to Silva, Byrne had become increasingly "paranoid" and "really unhappy," and that he was in conflict with multiple individuals across different levels of Ameris. | COE, Exh. 46, Silva Dep., 14:20 – 15:5-17. |
| 96. | Silva wrote to Byrne in a separate e-mail that, "The LTIP seems to have been the impetus for the breakage of our relationship." | COE, Exh. 1, Byrne II Dep., 259:3-10 (Byrne agreed that the LTIP became the "impetus for the breakage" of his relationship with Silva); COE, Exh. 47, AMERIS001544-46. |
| 97. | On February 5, 2024, Byrne sent an e-mail to the Balboa Division management team – | COE, Exh. 47, AMERIS001547-48; COE, Exh. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | consisting of 11 employees – openly expressing his disagreement with Ameris's 2023 EBT and LTIP calculations, without sharing Ameris's explanations. | 1, Byrne II Dep., 256:23-16. |
| 98. | On March 1, 2024, Byrne claimed approximately **$6.5 million** was "past due," and questioned LaHaise, "…if you don't find what I am doing valuable, please let me know…if the feeling is not mutual, please suggest how we move forward." LaHaise replied that he had told Byrne during the 2023 performance review that he wanted Byrne to remain Division CEO, explained that Byrne's LTIP assumptions were incorrect, and no payments were due, and proposed a call or in person meeting at Ameris's headquarters, including Ameris's CEO if needed. | COE, Exh. 17, AMERIS001778; COE, Exh. 1, Byrne II Dep., 234:11-235:13. |
| 99. | Byrne refused LaHaise's offer of a call or in person meeting at Ameris's headquarters. | COE, Exh. 1, Byrne Dep., 235:19-236:3; 238:5-8. |
| 100. | Because the LTIP only covered the three-year period from 2022 through 2024, LaHaise sent Byrne a template for a 2025 incentive plan on December 7, 2023, to allow ample time for discussion. | COE, Exh. 50, AMERIS001562-63; COE, Exh. 1, Byrne II Dep., 249:12-250:17. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| 101. | Thereafter, according to Byrne, Ameris and Byrne discussed the 2025 incentive plan nearly weekly for "seven months," but were unable to reach an agreement. | COE, Exh. 1, Byrne II Dep., 235:14-18, 236:13-18, 243:17-25, 244:1-20, 249:12-250:17, 251:5-12. |
| 102. | As Byrne's Employment Agreement was set to expire at the end of 2024, LaHaise sent the required notice of non-renewal in March 2024 to both Byrne and Silva, along with an intent to transition Byrne to a senior management agreement consistent with those of Ameris's other seniormost executives. | COE, Exh. 51, AMERIS001752-53; COE, Exh. 1, Byrne II Dep., 240:5-245:2; COE, Exh. 2, 30(b)(6) Dep., 164:22-165:4, 165:20-166:2, 169:21-170:6; LaHaise Decl., Para. 13. |
| 103. | Byrne understood that this non-renewal notice was not a termination of his employment, but simply notice that the terms of the existing Agreement would not be extended, as the parties had been negotiating a new senior management agreement since January 2024. | COE, Exh. 51, AMERIS001752-53; COE, Exh. 1, Byrne II Dep., 238:21-239:25, 240:5-245:2; COE, Exh. 2, 30(b)(6) Dep., 164:22-165:4, 165:20-166:2, 169:21-170:6. |
| 104. | On March 11, 2024, four days later, LaHaise followed up by emailing Byrne a draft senior management agreement for his review, which would have continued his employment and CEO role at the Balboa Division. | LaHaise Decl., Para. 13; COE, Exh. 52, AMERIS001754-1769; COE, Exh. 1, Byrne II Dep., 242:4-22. |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
| --- | --- | --- |
| 105. | Byrne never signed the proposed agreement. | LaHaise Decl., Para. 13. |
| 106. | Byrne did not consult an attorney regarding this draft, even though he had sought legal review for his prior agreements with Ameris. | COE, Exh. 1, Byrne II Dep., 244:1-20. |
| 107. | Byrne further testified that he thought the senior management agreement "didn't seem like it was real" and that he "didn't know what was…behind it." | COE, Exh. 1, Byrne II Dep., 244:1-20. |
| 108. | The same draft senior management agreement was also offered to Silva and was signed by him. | LaHaise Decl., Para. 13. |
| 109. | Leading up to his termination, Byrne was generally uncooperative, repeatedly claiming Ameris did not want him to continue as Division CEO. | COE, Exh. 1, Byrne II Dep., 227:15-229:12, 229:25-230:9, 233:8-234:21, 248:19-24; COE, Exh. 2, 30(b)(6) Dep. 190:4-11. |
| 110. | On June 24, 2024, LaHaise e-mailed Byrne and Silva an agenda for a meeting the next day, which Byrne cancelled at the last minute. | LaHaise Decl., Para. 18; COE, Exh. 53, AMERIS002284-85. |
| 111. | Silva noted that if Byrne had remained engaged and positive, he could have been a strong leader, but unfortunately, he had become the opposite. | COE, Exh. 46, Silva Dep., 10:14 – 11:12, 86:20 – 87:2. |

*PATRICK BYRNE v. AMERIS BANK*
DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT

Case No. 8:24-01989

Page 33

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| 112. | Ameris terminated Byrne's employment with a formal notice sent to Byrne on June 27, 2024, effective June 30. | COE, Exh. 39, AMERIS001792-97; LaHaise Decl., Para. 18; COE, Exh. 2, 30(b)(6) Dep., 177:4-23 |
| 113. | Although designated "without cause," which would have allowed Byrne to collect severance under his Employment Agreement, Ameris had multiple legitimate reasons for its decision, including but not limited to: the Balboa Division's failure to meet expected financial results under Byrne's leadership; Byrne's strained and unproductive working relationships with employees across Ameris; and Byrne's failure to follow - and attempts to circumvent - internal accounting controls and processes. | COE, Exh. 8, AMERIS000238-259; COE, Exh. 39, AMERIS001792-97; COE, Exh. 2, 30(b)(6) Dep., 168:16-169:4; 177:4-179:8; 183:2-190:16; COE, Exh. 43, Parker Dep., 65:3-12; LaHaise Decl., Para. 19. |
| 114. | Byrne testified that he first saw the June 27, 2024 termination e-mail on June 28, 2024 and claimed he had not received "any advanced warning…the courtesy of a call, or anything like that, no previous communication or any indication that I was going to be terminated." | COE, Exh. 1, Byrne II Dep., 133:11- 136:7; COE, Exh. 39, AMERIS001792-95. |
| 115. | ***However, his testimony was directly*** | LaHaise Decl., Para. 18; COE, |

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | ***contradicted by the undisputed record.*** Before sending the June 27 termination e-mail, LaHaise scheduled a call with Byrne during which he personally informed Byrne of Ameris's termination decision. | Exh. 54, AMERIS002286-88. |
| 116. | During that call, Byrne requested that his legal counsel be copied on the termination notice and provided LaHaise his counsel's contact information that same day. | LaHaise Decl., Para. 18; COE, Exh. 54, AMERIS002288. |
| 117. | After their call, LaHaise sent Byrne a formal Notice of Termination confirming the June 30 effective date. | LaHaise Decl., Para. 18; COE, Exh. 39, AMERIS001792-95; COE, Exh. 1, Byrne II Dep., 136:15-137:20. |

## II.    SECOND CAUSE OF ACTION FOR RETALIATION IN VIOLATION OF LABOR CODE §1102.5

Plaintiff's Second Cause of Action for Retaliation in violation of Labor Code §1102.5 fails because Plaintiff did not engage in protected activity and his LTIP accounting complaints were not a contributing factor in his termination. Even if he could establish a *prima facie* case, Ameris had legitimate, independent reasons for Plaintiff's termination. Ameris respectfully requests that this Court grant Ameris's request for summary judgment as to Plaintiff's Second Cause of Action and dismiss the cause of action in its entirety.

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|

| | See Defendant's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 1-117, which are incorporated herein by reference. | |
| --- | --- | --- |

## III.    THIRD CAUSE OF ACTION FOR FAILURE TO PAY ALL WAGES DUE AT TERMINATION

Plaintiff's Third Cause of Action for Failure to Pay All Wages Due at Termination fails because the LTIP is a discretionary bonus and not wages.  Even if deemed non-discretionary, Byrne had not "earned" any 2024 LTIP bonus at termination, as it remained subject to future calculation and distribution (if any). All undisputed 2022 and 2023 LTIP amounts were timely paid, and any alleged shortfall stems from a good-faith dispute over calculation methodology, precluding willfulness. Ameris respectfully requests that this Court grant Ameris's request for summary judgment as to Plaintiff's Third Cause of Action and dismiss the cause of action in its entirety.

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
| --- | --- | --- |
| | See Defendant's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 1-117, which are incorporated herein by | |

| | reference. | |
|---|---|---|

## IV.    FOURTH CAUSE OF ACTION FOR VIOLATION OF BUSINESS & PROFESSIONS CODE §17200.

Plaintiff's Fourth Cause of Action for Violation of Business & Professions Code §17200 fails because the claim is derivative of Plaintiff's wage claim and lacks merit. Ameris respectfully requests that this Court grant Ameris's request for summary judgment as to Plaintiff's Fourth Cause of Action and dismiss the cause of action in its entirety.

| SSUF No. | Defendant's Uncontroverted Fact | Defendant's Supporting Evidence |
|---|---|---|
| | See Defendant's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 1-117, which are incorporated herein by reference. | |

Dated:  December 26, 2025                **NUKK-FREEMAN & CERRA**


                                          By:    /s/Stacy L.Fode
                                                 Stacy L. Fode, Esq.
                                                 Nana J. Yee, Esq.
                                                 Attorney for Defendant
                                                 AMERIS BANK