Stacy L. Fode, Esq. (SBN 199883)
sfode@nfclegal.com
Nana J. Yee, Esq. (SBN 272783)
nyee@nfclegal.com
**NUKK-FREEMAN & CERRA, P.C.**
550 West C Street, Suite 910
San Diego, CA 92101
Telephone: 619.292.0515
Facsimile: 619.566.4741

Attorneys for Defendant
AMERIS BANK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an individual, | Case No. 8:24-cv-01989-MWC (JDEx) |
| Plaintiff, | **DECLARATION OF NICOLE STOKES IN SUPPORT OF DEFENDANT AMERIS BANK'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT AS TO EACH OF PLAINTIFF'S CLAIMS** |
| vs. | |
| AMERIS BANK, a Georgia corporation, | |
| Defendant. | |
| | Judge: Hon. Michelle Williams Court |
| | Date: February 13, 2026 |
| | Time: 1:30 p.m. |
| | Place: Courtroom 6A |
| | |
| | Discovery Cut-Off: November 28, 2025 |
| | Pretrial Conference: May 22, 2026 |
| | Trial Date: June 1, 2026 |

I, Nicole Stokes, declare as follows:

1. I am the Chief Financial Officer at Defendant AMERIS BANK, a Georgia Corporation (hereinafter "Ameris" or "Defendant"). I have personal knowledge of the facts set forth below, and if called to do so, could and would testify competently thereto.

2. In December 2021, Ameris acquired Balboa Capital Corporation ("Balboa Capital" or "Balboa"), which then became division of Ameris ("Balboa Division"), a publicly traded company governed by the Sarbanes-Oxley Act of 2002 ("SOX"), a U.S. federal law enacted to protect investors by improving the accuracy and reliability of corporate disclosures - and the Ameris financial statements, which include the Balboa Division - are subject to those regulations.

3. As a division of Ameris, the Balboa Division is required to follow Generally Accepted Accounting Principles ("GAAP"), the accounting standards that govern the preparation of financial statements. GAAP is designed to ensure that financial information is reported in a clear, consistent, and transparent manner so that investors, regulators, and other stakeholders can accurately understand and compare an organization's financial condition and performance. GAAP is established and maintained by the Financial Accounting Standards Board ("FASB"), an independent organization recognized by the U.S. government. Consistent with these requirements, Ameris reports its financial results and statements in Form 10-K filings and has established accounting and financial reporting policies to govern the application of GAAP in the preparation of its financial statements.

4. In response to Plaintiff Patrick Byrne ("Byrne") raising alleged Long-Term Incentive Plan ("LTIP") calculation errors in 2023, I spoke with Byrne at various times regarding my disagreement with his requested LTIP adjustments and revisions. In summer of 2023, James LaHaise ("LaHaise"), Corporate Executive Vice President and Chief Strategy Officer at Ameris, and I flew to California to meet with Byrne in person to address his requested LTIP adjustments and revisions, and explained to him, in detail, that his proposed changes reflected incorrect assumptions, were not compliant with

GAAP, and rehashed issues previously discussed and agreed upon.

5. Based on my review of Byrne's proposed changes and adjustments to the LTIP calculation methodology between 2023 and 2024, they focused on accounting items such as overhead allocations, repossessions, depreciation of pre-acquisition assets, charge-offs, tax benefits, stipulated judgments, security deposits, and interim rents. I reviewed and analyzed Byrne's proposed revisions and concluded they reflected incorrect assumptions, and were not compliant with GAAP, Ameris's accounting controls, or the terms of the LTIP. For example, I explained why LTIP adjustments were unnecessary:

- Ameris acquired the assets of Balboa Capital at book value and Balboa never fully expensed the asset prior to the stock purchase. Depreciation of pre-acquisition assets was already included in the Pioneer Model and therefore no adjustment to the LTIP is warranted;
- Byrne's claim of improper allocation of employee overhead is incorrect because the subject charges are direct operating costs of the Balboa Division and these employees continued performing their duties despite reporting-line adjustments for SOX compliance;
- LTIP is based on pre-tax income, and tax benefits are irrelevant and required no adjustment;
- Interim rent accounting was updated due to ASC 842, which was identified in pre-acquisition due diligence with the impact already reflected in the Pioneer Model. As such, no further adjustment to the LTIP calculation was warranted;
- As to security deposits, Balboa Capital's historical practice (before acquisition) was to recognize these deposits as income if the customer did not expressly request a refund. In contrast, Ameris returns the deposits that are refundable and does not record refundable lease payments as income, because under GAAP, refundable security deposits are required to be returned to the lessee.

- When reviewing the LTIP calculations, I also found that several charge-offs and expenses properly attributable to Earnings before Tax ("EBT") had not been included, to Byrne's benefit.

True and correct copies of correspondence reflecting the above issues are attached to Ameris's Compendium of Exhibits ("COE") as **Exhibits 23, 24, 25, 31**, **32, 36, and 49.**

6. My analysis and response were explained to Byrne verbally and in writing by me, members of Ameris' Accounting team, and LaHaise. Oftentimes, Byrne's concerns rehashed issues previously discussed and/or agreed upon with Byrne. A true and correct copy of correspondence reflecting the above issues is attached to the COE as **Exhibit 35.**

7. I also raised my concerns to his supervisor, LaHaise, and the Chief Compliance Officer, Bill McKendry. For instance, in my email of January 11, 2023, I explained that "Pat believes it is Accounting's responsibility to decision and process charge-offs, which is a clear violation of our internal controls. Accounting is not responsible for charge off decisioning. We have pushed back on him and tried to clarify this, but he is persistent…I do think it is important for you to see the conversations and his lack of understanding of segregation of duties and responsibilities in loan operations, accounting and credit." True and correct copy of correspondence between me and LaHaise and related correspondence are attached to the COE as **Exhibits 26 and 45.**

8. In 2023, the Balboa Division underperformed. One factor that prevented the Division from exceeding the 2023 LTIP EBT target was approximately $40 million in charge-offs, which I believe were attributable to Byrne's leadership as head of Balboa Capital.

9. My professional relationship with Byrne became strained, in part, due to Byrnes failure to follow internal controls and procedures, even directly instructing employees to process loans in a manner that did not conform with established GAAP accounting controls that had been explained to him. For example, in or around May 2024, Ameris's Controller, David Sparacio ("Sparacio"), advised Byrne by email, with a copy

to me, LaHaise and other employees, regarding Ameris's decision to make changes to the Initial Direct Cost ("IDC") process to remain GAAP-compliant for purchased loans. Sparacio explained in his email that the change required retroactive application of a deferral rate, resulting in increased expense and a reduction in the related asset. In response, Byrne questioned Ameris's decision and attempted to circumvent it. Specifically, and I later discovered that, Byrne had removed me, LaHaise and others from the May 2024 e-mail chain above and forwarded the e-mail to Balboa Division employees, Phil Silva and Heather Parker, suggesting that the Division recharacterize the purchased loans and "book as individual deals" rather than using "the code for portfolio purchases" to avoid the impact of Ameris's IDC process change, in direct violation of GAAP and Ameris's internal accounting controls and compliance requirements. True and correct copy of the correspondence related to the above issues are attached to Ameris's COE as **Exhibits 27 and 44.**

10. Although I was not the decision-maker in Byrne's termination, I discussed with LaHaise, his supervisor, the reasons the working relationship with Byrne had become difficult and strained. For example, Byrne stopped responding to my emails and phone calls, stopped attending meetings, and stopped taking meeting requests from my assistant. Due to his refusal to communicate with me, I was left with no practical choice but to communicate through LaHaise, his supervisor.

///
///
///
///
///
///
///
///
///

Executed this __19th__ day of December 2025, in Atlanta, Georgia.

_____
Nicole Stokes