# EXHIBIT 5

```
 1              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
 2

 3

 4   PATRICK BYRNE,                     )
                                        )
 5        Plaintiff,                    )
                                        )
 6   v.                                 )      CASE NO.
                                        )8:24-cv-01989-MWC-JDEx
 7                                      )
     AMERIS BANK,                       )
 8                                      )
          Defendant.                    )
 9

10

11          REMOTE ZOOM VIDEOTAPED DEPOSITION OF
                        JAMES LAHAISE
12             THURSDAY, NOVEMBER 13, 2025
                     1:22 P.M. EASTERN
13

14

15

16
     Reported by:
17       STEVE HUSEBY, RPR
         CCR # B-1372
18

19

20

21

22

23

24

25
```



```
 1   don't recall ever agreeing to making any
 2   changes, making any --
 3   BY MR. CORCORAN:
 4       Q.   Did Ameris Bank pay Patrick Byrne his
 5   quarter three bonus for 2023?
 6                MS. YEE:  Vague, overbroad.
 7                THE WITNESS:  I believe Patrick
 8   Byrne was paid all of his bonuses.
 9   BY MR. CORCORAN:
10       Q.   Is your answer, yes, Ameris Bank paid
11   Patrick Byrne his quarter three 20 -- quarter
12   three 2023 bonus?
13                MS. YEE:  Objection, asked and
14   answered, vague, overbroad.
15                THE WITNESS:  To the best of my
16   knowledge he's been paid all of his quarterly
17   bonuses.
18   BY MR. CORCORAN:
19       Q.   So is your answer yes?
20                MS. YEE:  Objection, misstates
21   his prior testimony, asked and answered.
22   BY MR. CORCORAN:
23       Q.   My question specifically:  Did Ameris
24   Bank pay Patrick Byrne his quarter three 2023
25   bonus, yes or no?
```



```
 1      A.   Well, I'll state it again, I believe
 2   Patrick Byrne was paid all of his quarterly
 3   bonuses.
 4      Q.   All right.  Let's pull up Exhibit 19.
 5              (LaHaise Exhibit Number 19
 6              marked for identification).
 7   BY MR. CORCORAN:
 8      Q.   Sir, before we get to Exhibit 19,
 9   were -- do you know if the tax benefits and
10   interim rent --
11           MS. YEE:  Sorry, can you repeat
12   the question?  What is it, are you finished?
13           MR. CORCORAN:  No.
14   BY MR. CORCORAN:
15      Q.   Do you know if the tax benefits and
16   interim rent were added back into the LTIP
17   calculation for quarter three, 2023?
18           MS. YEE:  Objection, vague,
19   overbroad, lacks foundation.
20           THE WITNESS:  No, I'm not
21   familiar.
22   BY MR. CORCORAN:
23      Q.   All right.  Fair to say you have no
24   reason to dispute this email wherein Pat --
25   Patrick Byrne states you agreed to add back in
```



```
 1   Pat, we will be remitting your Q3 incentive
 2   payment that should be in the 12-30-23 payroll.
 3   In addition I've included an interest payment
 4   of $1,003, four percent interest for 61 days
 5   which is for missing the 30-day post quarter
 6   end payment date in your employment agreement.
 7          My question to you is:  If Ameris paid
 8   Patrick Byrne's quarterly Q3 incentive payment,
 9   Balboa Capital would have had to have met the
10   LTIP threshold for that quarter, correct?
11               MS. YEE:  Objection, document
12   speaks for itself.  And it sounds like you're
13   reading from an email although that document is
14   not in front of the witness or myself.  And
15   incomplete hypothetical.
16   BY MR. CORCORAN:
17      Q.   You can answer.
18      A.   The answer to your question is no,
19   that's not correct.
20      Q.   Well, would it be true that in any
21   quarter in which Patrick Byrne was paid his
22   quarterly incentive payment, the $150,000, that
23   would have only happened because Balboa Capital
24   had met the LTIP threshold for that quarter,
25   right?
```



```
 1                 MS. YEE:  Objection, vague,
 2   overbroad, lacks foundation, assumes facts not
 3   in evidence, incomplete hypothetical.
 4                 THE WITNESS:  No, that's not
 5   correct.
 6   BY MR. CORCORAN:
 7       Q.   Did Balboa -- strike that.
 8       Did Ameris Bank ever pay Patrick Byrne his
 9   quarterly incentive payment, his bonus, of
10   $150,000 when --
11                 MS. YEE:  Objection --
12   BY MR. CORCORAN:
13       Q.   -- Balboa Capital had not met the
14   LTIP threshold?
15                 MS. YEE:  Objection, vague,
16   overbroad, lacks foundation, document speaks
17   for itself.
18   BY MR. CORCORAN:
19       Q.   You can answer.
20       A.   Please reread the question again.
21   I -- I --
22       Q.   We'll have it read back for you.
23                 (The record was read.  Question:
24   Did Ameris Bank ever pay Patrick Byrne his
25   quarterly incentive payment, his bonus, of
```



```
 1    $150,000 when Balboa Capital had not met the
 2    LTIP threshold?)
 3                  THE WITNESS:  Yes.
 4                  MS. YEE:  Same objections.
 5                  THE WITNESS:  Yes.
 6    BY MR. CORCORAN:
 7        Q.   For what reason or under what
 8    circumstances would Ameris Bank pay Patrick
 9    Byrne his quarterly incentive of $150,000 when
10    Balboa Capital would not have met the LTIP
11    threshold?
12                  MS. YEE:  Overbroad,
13    unintelligible, assumes facts not in evidence,
14    and compound.
15    BY MR. CORCORAN:
16        Q.   You can answer.
17        A.   I decided to pay Patrick Byrne his
18    incentive despite the fact they failed to make
19    the incentive payment because of the losses
20    associated with the division that prevented it
21    from making the LTIP calculation as a way to
22    incent Pat Byrne to focus on the strategy of
23    the company instead of this constant -- this
24    process of -- of trying to adjust the LTIP
25    incorrectly.
```



1      So I did it in order to focus him on the
2   strategy of the company because he wasn't
3   spending the time on strategy of the company
4   versus the calculation of the LTIP.
5      Q.   Were you trying to bribe Patrick
6   Byrne so he would stop complaining about the
7   LTIP?
8           MS. YEE:   Objection,
9   argumentative, assumes fact not in evidence,
10  misstates his prior testimony, lacks
11  foundation.
12          THE WITNESS:   I stated the reason
13  that I asked -- that I paid the incentive plan
14  or the -- the bonus.
15  BY MR. CORCORAN:
16     Q.   Move to strike as nonresponsive.  My
17  question to you, sir, is:  Were you trying to
18  bribe Patrick Byrne so he would stop
19  complaining about the LTIP, yes or no?
20          MS. YEE:   Same objections.
21          THE WITNESS:   No.
22  BY MR. CORCORAN:
23     Q.   Patrick Byrne was the only person you
24  spoke to during negotiations for the LTIP,
25  true?



```
 1                MS. YEE:  Same objections and
 2   asked and answered.
 3                THE WITNESS:  Patrick Byrne is
 4   the only person that I spoke to on that.
 5   BY MR. CORCORAN:
 6       Q.   Did you exchange any emails with
 7   Nicole or Palmer Proctor regarding the decision
 8   to pay the bonus, the LTIP bonus?
 9                MS. YEE:  Objection, vague,
10   overbroad, document speaks for itself, calls
11   for speculation, assumes facts not in evidence.
12                THE WITNESS:  I'm not aware of
13   any emails.
14   BY MR. CORCORAN:
15       Q.   Did you talk face to face with either
16   Nicole or Palmer Proctor regarding the decision
17   to pay the LTIP bonus?
18                MS. YEE:  Objection, vague,
19   overbroad, lacks foundation.
20                THE WITNESS:  As I previously
21   stated, I -- all compensation-related
22   recommendations are presented to Palmer Proctor
23   prior to being paid.
24   BY MR. CORCORAN:
25       Q.   Who at Ameris administered the LTIP
```



```
 1   on behalf of Balboa?
 2              MS. YEE:  Objection, vague,
 3   overbroad, lacks foundation, assumes facts not
 4   in evidence, document speaks for itself.
 5              THE WITNESS:  So the LTIP is not
 6   administered on behalf of Balboa.  It's
 7   administered as part of the company
 8   compensation plan.  I administered the plan.
 9   BY MR. CORCORAN:
10       Q.   Anybody else?
11              MS. YEE:  Objection, vague, asked
12   and answered.
13              THE WITNESS:  I'm the one
14   responsible.
15   BY MR. CORCORAN:
16       Q.   Who gave you the authority to be the
17   person responsible?
18              MS. YEE:  Objection, calls for a
19   legal conclusion, document speaks for itself,
20   vague and overbroad.
21              THE WITNESS:  The document states
22   that the compensation committee delegates it.
23   BY MR. CORCORAN:
24       Q.   So is the answer the compensation
25   committee?
```



```
 1        A.   That's --
 2             MS. YEE:  Objection, misstates
 3   his prior testimony, document speaks for
 4   itself.
 5   BY MR. CORCORAN:
 6        Q.   Are there any documents giving you
 7   the authority to administer the LTIP program?
 8             MS. YEE:  Asked and answered.
 9             THE WITNESS:  The LTIP document
10   states it.
11   BY MR. CORCORAN:
12        Q.   And that's the only document, true?
13             MS. YEE:  Objection, vague,
14   overbroad, calls for a legal conclusion.
15             THE WITNESS:  I'm not aware of
16   all the documents, so it's the only one I'm
17   aware of.
18   BY MR. CORCORAN:
19        Q.   At the time you were negotiating the
20   acquisition of Balboa Capital you were
21   discussing with Phil Silva, Rob Rasmussen and
22   Patrick Byrne their individual employment
23   agreements, true?
24             MS. YEE:  Objection, vague,
25   overbroad, lacks foundation, assumes facts not
```



```
 1  BY MR. CORCORAN:
 2      Q.   What's incorrect about it?
 3           MS. YEE:  Overbroad, vague.
 4           THE WITNESS:  There's no specific
 5  distribution amount to anybody on any of the
 6  documents, and there's no guarantee on any of
 7  the payments to anybody per the agreement.
 8  BY MR. CORCORAN:
 9      Q.   With regard to the 2022 LTIP
10  performance period pool, that -- that pool of
11  money was distributed between Rob Rasmussen,
12  Phil Silva and Patrick Byrne based upon
13  percentages that had been agreed to and the
14  remainder was distributed among Balboa
15  employees, true?
16           MS. YEE:  Objection, vague,
17  overbroad, document speaks for itself, assumes
18  facts not in evidence and lacks foundation.
19  BY MR. CORCORAN:
20      Q.   You can answer.
21      A.   So again, I don't have the document
22  in front of me, but there is no specific
23  agreement to a certain payout.  Those
24  recommendations were made by Pat Byrne.  But
25  there is no -- there was no documentation -- no
```



1  document that states there's a specific amount
2  that they should get paid.
3       Q.   There's no mention of interim rent in
4  the key indicators nor anywhere in the LTIP
5  agreement, correct?
6            MS. YEE:  Objection, document
7  speaks for itself.
8            THE WITNESS:  I'm not aware of
9  any of those statements in the agreement.
10 BY MR. CORCORAN:
11      Q.   With respect to initial direct costs,
12 you didn't tell Pat Byrne that you would change
13 the IDC accounting methodology on certain types
14 of contracts or pools of contracts, correct?
15           MS. YEE:  Objection, assumes
16 facts not in evidence, document speaks for
17 itself.
18           THE WITNESS:  I can't speak to
19 the specific accounting, but it clearly states
20 that -- that accounting would be follow the
21 GAAP principles, so whatever the GAAP
22 principles are are the correct accounting of
23 any -- or any financial data that comes
24 through.
25 BY MR. CORCORAN:



```
 1      A.   They were still responsible --
 2           MS. YEE:  Misstates his prior
 3   testimony, vague.
 4   BY MR. CORCORAN:
 5      Q.   You can answer.
 6      A.   Yes, as part of the controls and
 7   process, independence, direct reporting
 8   structures are modified.  But they are still
 9   the responsibility and their focus is 100
10   percent on the division.  And again that --
11   that is all -- all direct costs and indirect
12   costs are -- for the Balboa Capital and are
13   charged to the company.
14      Q.   Once the reporting line for employees
15   was moved to Ameris those employees had to
16   follow the directives of their Ameris
17   supervisors, correct?
18           MS. YEE:  Objection, assumes fact
19   not in evidence, vague.
20           THE WITNESS:  So all employees
21   have to follow the directions of their
22   supervisors.
23   BY MR. CORCORAN:
24      Q.   If there is a difference of opinion
25   between Ameris Bank and Patrick Byrne, the
```



```
 1                    C E R T I F I C A T E
 2
 3
 4    G E O R G I A:
 5    FULTON COUNTY:
 6
 7
 8                    I hereby certify that the
 9           foregoing deposition was reported, as
10           stated in the caption, and the questions
11           and answers thereto were reduced to the
12           written page under my direction; that the
13           foregoing pages represent a true and
14           correct transcript of the evidence
15           given.  I further certify that I am not in
16           any way financially interested in the
17           result of said case.
18                    Pursuant to Rules and Regulations
19           of the Board of Court Reporting of the
20           Judicial Council of Georgia, I make the
21           following disclosure:
22                    I am a Georgia Certified Court
23           Reporter.  I am here as an independent
24           contractor.
25
```



```
 1            I was contacted to provide court
 2   reporting services for this deposition.
 3   I will not be taking this deposition under
 4   any contract that is prohibited by O.C.G.A.
 5   15-14-7 (a) or (b).
 6            I have no written contract to
 7   provide reporting services with any party
 8   to the case, any counsel in the case, or
 9   any reporter or reporting agency from whom
10   a referral might have been made to cover
11   this deposition.  I will charge my usual
12   and customary rates to all parties in the
13   case.
14            This, the 17th day of November, 2025.
15
16                  _____
                    STEVE S. HUSEBY, CCR-B-1372
17                  My Commission Expires
                    November 20th, 2026.
18
19
20
21
22
23
24
25
```

