# EXHIBIT 39

| | |
|---|---|
| **From:** | LaHaise, James [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D5DD0DC8FC3E499A942AC9190EFDF471-LAHAISE, JA] |
| **Sent:** | 6/27/2024 8:21:47 PM |
| **To:** | Patrick Byrne [pateb17@yahoo.com] |
| **CC:** | Spencer, Jody [jody.spencer@amerisbank.com]; Phelps, Ben [ben.phelps@amerisbank.com] |
| **Subject:** | Notice of termination |
| **Attachments:** | Pat Byrne Employment Agreement Release.pdf; Termination Notice PB 06272024.pdf |

Pat,  The attached document is our termination of employment notice as discussed.  Additionally, the employment agreement release.  To complete employment separation paperwork, please coordinate with Ben Phelps, Senior HR Partner.  He is copied on this communication and his office phone number is 404-639-6724.  I have not forwarded this notice to your counsel as I have been advised that should be sent from you directly.

Sincerely,

Jim


**James A. LaHaise**
**Ameris Bank** | Chief Strategy Officer
3490 Piedmont Rd. NE | Atlanta, GA 30305
(D) 404.240.1536 | (C) 404.538.2203
james.lahaise@amerisbank.com





June 27, 2024

*Via Email (pateb17@yahoo.com) and FedEx*

Patrick Byrne
70 Monarch Bay Drive
Dana Point, California 92629

Re: Employment Agreement with Ameris Bank (the "Company) dated as of December 10, 2021 (the "Agreement")

Dear Pat:

This letter shall serve as notice, pursuant to Section 5.1 of the Agreement, that the Company has terminated your employment as of June 30, 2024.

As provided in Section 6.2 of the Agreement, termination of your employment by the Company without Cause (as defined in the Agreement) entitles you to certain severance benefits according to the terms of the Agreement, which benefits are subject to: (i) your executing and not revoking a valid release substantially in the form attached to the Agreement, a copy of which is included with this letter; and (ii) your compliance with the provisions of Section 4 of the Agreement, including Section 4.3(b), which generally prohibits you from soliciting employees and consultants of the Company Group (as defined in the Agreement) for a period of 12 months following the termination of your employment, and Section 4.4(a), which generally prohibits you from at any time disparaging or defaming the Company, any member of the Company Group, or any of their directors, officers, shareholders, agents or employees. I encourage you to carefully review the specific terms of these restrictions.

Assuming your satisfaction of the conditions in the Agreement discussed above, the severance benefits provided for in Section 6.2 of the Agreement include only the following: (i) continued payment of your base salary of $371,315, payable in accordance with the Company's regular payroll schedule, through the 12-month period ending June 30, 2025; (ii) a prorated portion of the Bonus (as defined in the Agreement) for this year, in accordance with the terms of the Agreement, which payment shall equal your quarterly Bonus through June 30, 2024; and (iii) provided you timely elect COBRA coverage under the Company's group health plan, the Company will pay or reimburse you (at the Company's election) an amount equal to the Company's share of the insurance premiums through the 18-month period ending December 31, 2025.

In addition, notwithstanding the termination of your employment by the Company without Cause, you will remain eligible to participate in the Balboa Capital Long-Term Cash Incentive Plan, subject to its terms and conditions, for the 2024 calendar year performance period.

June 27, 2024
Page 2

      Finally, there remains $472,352.34 in unreimbursed legal fees and expenses related to the MHT litigation with respect to which you are obligated to indemnify the Company pursuant to Section 8.2(f) of the Stock Purchase Agreement by and among you and the Company, among others, dated December 10, 2021. We ask that you reimburse the Company for such amounts by no later than July 31, 2024.

      Sincerely,

James A. LaHaise
Chief Strategy Officer

## Release Agreement

Reference is made to the Employment Agreement, dated as of December 10, 2021, by the undersigned individual and Ameris Bank (the "Agreement"). Capitalized terms used but not defined in this release (this "Release") have the meanings set forth in the Agreement.

1. In consideration for the Severance Payments offered to me under the Agreement and deeming this Release to be fair, reasonable, and equitable, and intending to be legally bound hereby, I, the undersigned, agree to and hereby do, for myself and for each of my heirs, representatives, executors, administrators, and assigns, forever and irrevocably fully release and discharge the Company, each member of the Company Group, and their respective officers, directors, employees, agents, trustees, predecessors, successors, purchasers, investors, assigns, and representatives (the "Released Parties"), of and from any and all complaints, judgments, claims, demands, debts, actions or causes of action, obligations, damages, and liabilities whatsoever (collectively, "Claims") which I now have, have had, or may have, whether the same be known or unknown, at law, in equity, or mixed, in any way arising out of or relating to any matter, act, occurrence, omission, practice, conduct, policy, event, or transaction that occurred on or before the date of this Release. I expressly acknowledge that this Release includes, but is not limited to, any Claims arising out of or related to my employment with the Company and my separation therefrom. I also release and waive any and all Claims arising under any express or implied contract, law (federal, state or local), rule, regulation, or ordinance, including, but not limited to: (a) Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, Executive Order 11246, 42 U.S.C. Section 1981, (b) the Americans with Disabilities Act, (c) the Rehabilitation Act of 1973, (d) the Family and Medical Leave Act, (e) the Pregnancy Discrimination Act of 1978, (f) the Equal Pay Act, (g) the Fair Labor Standards Act, (h) the Worker Adjustment and Retraining Notification Act of 1988, (i) the Occupational Health and Safety Act, (j) the Employee Retirement Income Security Act of 1974 (excluding claims for vested benefits), (k) the Age Discrimination in Employment Act of 1967, as amended ("ADEA") and the Older Workers Benefit Protection Act of 1990, as amended ("OWBPA") (except a claim relating to whether this release or waiver is valid under the ADEA and except for any claims under the ADEA that may arise after the date this Release is executed by me), (l) any claim under the National Labor Relations Act ("NLRA"), and (m) all related and/or comparable state and local laws (all as amended from time to time).

2. Notwithstanding anything set forth herein to the contrary, the Release shall not release or waive (a) any rights to indemnification that arise after the date I sign the Release which I may have as an officer of the Company under the Agreement or the Company's Bylaws, (b) the Accrued Benefits and the Severance Payments, or (c) any claims I may not release as a matter of law.

3. In the event that I decide in the future to commence, or attempt to commence, any action or litigation against the Released Parties in violation of this Release, except as it relates to the enforcement of any rights I may have under this Release, or any action challenging the legal sufficiency of this Release under the OWBPA or ADEA, or in connection with any charge filed with, or investigation by, the Equal Employment Opportunity Commission ("EEOC"), this will constitute a breach of this Release, and I will be obligated to repay the Company all Severance Payments paid to me and reimburse any costs expended by the Company Group to challenge such action (including, without limitation, reasonable attorneys' fees). In that event, the Release granted by me shall nonetheless remain in effect, unless otherwise modified by a court of competent jurisdiction.

4. I acknowledge that with this document I have been advised in writing to consult with an attorney prior to executing this waiver of ADEA claims and that I have been given 21 days in

which to consider entering into the waiver of the ADEA claims, if any. If I decide to sign before the expiration of 21 days, I acknowledge that I am doing so knowingly and voluntarily. In addition, I acknowledge that I have been informed that I may revoke a signed waiver of the ADEA claims for up to 7 days after executing this Release and that to be effective, my revocation must be in writing, signed, dated, and delivered to the Company no later than 7 days from the date on which I sign this Release. If the 7th day falls on a weekend or holiday, my revocation must be delivered the next business day.

5.  I acknowledge that I am aware that I may hereafter discover claims or facts in addition to, or different from, those which I now know or believe to exist with respect to the subject matter covered by this Release and which, if known or suspected at the time of executing this Release, may have materially affected this Release or my decision to enter into it. Nevertheless, I hereby waive any rights, claims, or causes of action that might arise as a result of such different or additional claims or facts.

6.  I acknowledge that the Company Group expressly denies liability of any kind to me, and nothing contained in this Release will be construed as an admission of any liability or wrongdoing by any of the Released Parties.

7.  I understand that my receipt and retention of the Severance Payments are contingent not only on the effectiveness of this Release, but also on my continued compliance with Section 4 of the Agreement. Pursuant to the Agreement, if I fail to comply with my obligations under Section 4 of the Agreement, the Company's obligation to pay any additional Severance Payments shall cease immediately and I shall promptly refund any Severance Payments previously paid by the Company.

8.  On or before my last day of employment, I will deliver to a Company representative, at a location to be determined, all Company Group property which I have in my possession, including all equipment and accessories, office equipment, account lists or client contact lists, credit cards, keys, access cards, and documents, including copies of documents.

9.  I acknowledge that the Agreement and this Release set forth the entire agreement between me and the Company and supersede all prior and contemporaneous oral and written agreements and discussions. After this Release becomes effective, it may be amended only by an agreement in writing signed by a duly authorized representative of the Company and by me.

10. By executing this Release, I acknowledge that I have carefully reviewed all of the provisions of this Release and all the provisions of the Agreement, have not relied on any representation or statement, oral or written, by the Company Group or any of its representatives, which is not set forth in those documents, and have had the opportunity to receive independent legal advice with respect to executing this Release.

11. I understand, acknowledge, and agree to the terms and conditions, including the releases and waivers, set forth in this Release.

12. This Release shall be interpreted and construed in accordance with the laws of the State of Georgia, excluding any conflicts or choice of law rule or principle that might otherwise refer construction or interpretation of this provision to the substantive law of another jurisdiction. Should this Release be held invalid or unenforceable in whole or in part with respect to any particular claim or circumstances, it shall remain fully valid and enforceable as to all other claims and circumstances.

CONFIDENTIAL                                                                                                    AMERIS001794

13. I fully understand that, notwithstanding any other provision of this Release, nothing in this Release prohibits me from making any disclosure or communication that is required or protected by law. For example, nothing in this Release prohibits me from reporting possible violations of law to a governmental agency or entity, or requires me to seek authorization from any member of the Company Group or to notify any member of the Company Group if I do make such reports.

14. I acknowledge that I am hereby notified that I will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal and I do not disclose the trade secret except pursuant to court order.

**PLEASE REVIEW THIS RELEASE AGREEMENT CAREFULLY. IT CONTAINS A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

_____     _____
Patrick Byrne                                                      Date

CONFIDENTIAL                                                                                                         AMERIS001795