# EXHIBIT 46

```
 1                  UNITED STATES DISTRICT COURT

 2             FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5     PATRICK BYRNE, an
       individual,
 6
                    Plaintiff,
 7                                       Case No.
             vs.                         8:24-cv-01989- MWC
 8                                       (JDEx)
       AMERIS BANK, a Georgia
 9     corporation,

10                  Defendant.
       ------------------------
11

12

13          VIDEOTAPED DEPOSITION OF PHILIP F. SILVA
        APPEARING REMOTELY FROM SPOKANE COUNTY, WASHINGTON
14            Taken on behalf of the Plaintiff
                    *Via Videoconference*
15

16

17

18     October 28, 2025
       Portland, Oregon
19

20     Ariel Badenhop, CSR, RPR
       Court Reporter
21

22

23

24

25
```



```
 1   ask him any follow-up question.  You can ask if it
 2   affects his memory.
 3   BY MR. CORCORAN:
 4        Q.   Have you consumed any medications,
 5   prescription or over the counter, that might affect
 6   your ability to recall or remember circumstances from
 7   the past?
 8        A.   I'm just taking it for a cold, medication for
 9   a cold.
10        Q.   So nothing that you think would affect your
11   ability to remember events or circumstances from the
12   past; correct?
13        A.   Correct.
14        Q.   Is there any reason you can think of that
15   your deposition should not go forward today?
16        A.   No.
17        Q.   Is there any reason you cannot provide your
18   best testimony today?
19        A.   No.
20        Q.   Is there any reason you cannot provide
21   truthful and honest answers at your deposition today?
22        A.   No.
23        Q.   Did you receive a copy of the notice of
24   deposition in this case?
25        A.   Yes.
```



1    Q.    Do you have it with you?

2    A.    No.

3    Q.    Do you have any documents with you today?

4    A.    I don't.

5    Q.    Did you review any documents in preparation
6    for your deposition testimony?

7          MS. YEE:  Objection.  I want to make sure
8    that, you know, Phil, you don't get into any
9    information that you and I discussed because that's
10   attorney-client privilege.  Other than that, you can
11   respond.

12         THE WITNESS:  No.

13   BY MR. CORCORAN:

14   Q.    I'm not asking you about any conversations
15   you had with counsel.  Did you look at any documents
16   preparing for your deposition?

17   A.    I don't recall with any specificity.

18   Q.    How old are you today?

19   A.    66.

20   Q.    Have you ever testified at trial?

21   A.    No.

22   Q.    Are there any health reasons that would
23   prevent you from sitting through your deposition?

24   A.    No.

25   Q.    If we don't finish your deposition today, do



```
 1   at Capital?
 2           MS. YEE:  Vague and ambiguous.  Overbroad.
 3   Counsel, can you please clarify, when you say Balboa
 4   Capital, what are you referring to?  If we're going to
 5   use Balboa, Balboa Capital in this case, I want to
 6   make sure we understand each other.
 7   BY MR. CORCORAN:
 8       Q.   Mr. Silva, who is your current employer?
 9       A.   Ameris Bank.
10       Q.   What is your current job title?
11       A.   President.
12       Q.   Of -- what?
13       A.   Ameris Bank Equipment Finance.
14       Q.   Are you familiar with an entity called Balboa
15   Capital?
16       A.   I am.
17       Q.   Is Ameris Bank Equipment Finance a separate
18   entity from Balboa Capital?
19           MS. YEE:  Vague and ambiguous.
20   BY MR. CORCORAN:
21       Q.   You can answer.
22       A.   Ameris Bank Equipment Finance is a division
23   of Ameris Bank.  The entity formerly known as Balboa
24   Capital was a division of Ameris Bank.
25       Q.   When did the entity formerly known as Balboa
```



```
 1   Capital become Ameris Bank Equipment Finance?
 2            MS. YEE:  Vague and ambiguous.
 3   BY MR. CORCORAN:
 4       Q.   You can answer.
 5       A.   I don't recall.
 6       Q.   Best estimate.
 7       A.   In or around the last 30 to 60 days.
 8       Q.   Why -- withdraw that question.
 9            Why did Balboa Capital become Ameris
10   Equipment Finance?
11            MS. YEE:  Did you say why?
12            Thank you.  Objection.  Vague and ambiguous.
13   Overbroad.
14   BY MR. CORCORAN:
15       Q.   You can answer.
16       A.   Ameris Bank Equipment Finance is a division
17   of Ameris Bank.
18       Q.   I understand that.  Why did Balboa Capital
19   become Ameris Bank Equipment Finance?
20       A.   Same answer.
21       Q.   Do you know why?
22       A.   I just said why.
23            MS. YEE:  Asked and answered.
24   BY MR. CORCORAN:
25       Q.   You said it is a division, but you didn't say
```



```
 1              MS. YEE:  Vague and ambiguous.
 2   BY MR. CORCORAN:
 3        Q.   Describe the -- of your friendship with Pat
 4   Byrnes at the time.
 5              MS. YEE:  Overbroad.  Vague and ambiguous.
 6   BY MR. CORCORAN:
 7        Q.   You can answer.
 8        A.   Pat and I worked together for a long time.
 9   So it was a friendship and partnership of working
10   together that changed over time.
11        Q.   Did you do things socially with Pat Byrne?
12              MS. YEE:  Vague and ambiguous.  Overbroad.
13   Unclear as to time frame.
14   BY MR. CORCORAN:
15        Q.   Before the acquisition.
16        A.   I could only give you a general description
17   or reply.
18        Q.   Go ahead.
19        A.   We socially met very few times before the
20   acquisition.
21        Q.   Did you do things socially with Pat Byrne
22   after the acquisition?
23        A.   Yes.
24        Q.   Did you ever ride on Pat Byrne's boat with
25   him?
```



```
 1                MS. YEE:  Vague and ambiguous.
 2   BY MR. CORCORAN:
 3       Q.   Describe what you did socially with Pat Byrne
 4   after the acquisition.
 5                MS. YEE:  Overbroad.  Vague and ambiguous.
 6                THE WITNESS:  Most of the social interaction
 7   was with -- with company sponsored types of outings.
 8   BY MR. CORCORAN:
 9       Q.   Describe the social outings that you took,
10   the company sponsored social outings.
11                MS. YEE:  Overbroad.  Vague and ambiguous.
12   Unclear as to time frame.
13   BY MR. CORCORAN:
14       Q.   You can answer.
15       A.   Could you restate the question, please?
16       Q.   Describe the social outings that you took
17   with Pat Byrne after the acquisition.
18       A.   As I recall, business dinners as well as
19   company sponsored outings on his boat.
20       Q.   Anything else?
21       A.   Not that I can recall.
22       Q.   In terms of your own employment history,
23   you're on the Balboa Capital web page.  It states you
24   worked for the National Accounts Group for American
25   Express; is that correct?
```



```
 1                (Multiple people speaking simultaneously.)
 2   BY MR. CORCORAN:
 3        Q.   Did Pat Byrne tell you that he planned on
 4   leaving Balboa Capital on his own?
 5        A.   I don't recall.
 6                (Multiple people speaking simultaneously.)
 7                THE WITNESS:  I don't recall him -- I don't
 8   recall that conversation.
 9   BY MR. CORCORAN:
10        Q.   You could see that, as the groundwork was
11   being laid for the termination of Pat Byrne, there
12   would be a vacuum there that you could fill; correct?
13                MS. YEE:  Asked and answered.  Assumes facts
14   not in evidence.
15                Let me finish, Counsel.
16                Vague and ambiguous.  Lacks foundation.
17   BY MR. CORCORAN:
18        Q.   You can answer.
19        A.   As we mentioned earlier, we had a long
20   working relationship with Pat.  I reported to Pat the
21   entire 16, 17 years that he was here.  He and I had
22   many conversations, and it was my intention to report
23   to him to the fullest of my ability until he wasn't
24   here, and that's what I did.
25                (Multiple people speaking simultaneously.)
```



1    It's not --
2            (Multiple people speaking simultaneously.)
3    BY MR. CORCORAN:
4        Q.   You've had training in Ameris as how to
5    terminate someone so as not to risk --
6        A.   No, not specific training like that, specific
7    with that objective.
8        Q.   This is an e-mail dated November 18, 2023, to
9    Pat Byrne and you.  The subject is estimated LTIP,
10   LTIP calculation, dated 10/31/2023, final.  Do you see
11   that?
12           MS. YEE:  Document speaks for itself.
13           Just to confirm, did you say there's an
14   attachment or no?
15           MR. CORCORAN:  The e-mail references it.
16           MS. YEE:  The attachment is not in the
17   exhibit; right?
18           THE WITNESS:  What was your question?
19   BY MR. CORCORAN:
20       Q.   This is an e-mail from Sufan to Pat Byrne and
21   you, and the subject is estimated LTIP with an
22   attachment, 10/21/2023, final, 0014455.
23           Do you see that?
24       A.   Yes.
25       Q.   In this e-mail, Sufan Majid sent the LTIP



```
 1   calculation to Pat Byrne and you; correct?
 2        A.   Yes.
 3        Q.   Sufan Majid asks both you and Pat Byrne to
 4   let Sufan Majid know if there are any questions;
 5   right?
 6             MS. YEE:  Document speaks for itself.
 7   BY MR. CORCORAN:
 8        Q.   Sufan Majid asks Pat Byrne and you to let
 9   Sufan Majid know if there are any questions; correct?
10             MS. YEE:  Same objections.
11             THE WITNESS:  Yes.
12   BY MR. CORCORAN:
13        Q.   If you scroll down, you can see Sufan Majid
14   asked David to review the LTIP calculation for
15   10/31/2023; right?
16             MS. YEE:  Calls for speculation.  Document
17   speaks for itself.
18   BY MR. CORCORAN:
19        Q.   Was the chain of command, from bottom to top,
20   as follows:  Sufan Majid, David Sparacio, and Nicole
21   Stokes?
22             MS. YEE:  Is there a question?
23             Objection.  Vague and ambiguous.
24             THE WITNESS:  There are -- Sufan Majid and
25   David reported in to Nicole.  I'm not sure if the
```



1

2                         CERTIFICATE

3

4              I, ARIEL BADENHOP, a Registered

5    Professional Reporter and Certified Shorthand Reporter

6    No. 13-0424 for Oregon, do hereby certify that,

7    pursuant to the Oregon Rules of Civil Procedure,

8    PHIL SILVA appeared before me remotely, via

9    videoconference, at the time and place mentioned in

10   the caption herein; that the witness was by me first

11   duly sworn on oath and examined upon oral

12   interrogatories propounded by counsel; that at said

13   time and place I reported in Stenotype all testimony

14   adduced and other oral proceedings had in the

15   foregoing manner; that thereafter my notes were

16   reduced to typewriting under my direction, and that

17   the foregoing transcript, pages 1 through 143,

18   constitutes a full, true, and accurate record of all

19   such testimony adduced and oral proceedings had, and

20   of the whole thereof.

21              WITNESS MY HAND at Portland, Oregon,

22   on November 3, 2025.

23   _____

24   ARIEL BADENHOP -  RPR, CSR
     Registered Professional Reporter    Expires: 09/30/2028
25   Oregon CSR No. 13-0424               Expires: 03/31/2026

