# BALBOA CAPITAL LONG-TERM CASH INCENTIVE PLAN

1. <u>Purpose; Eligibility</u>.

    1.1    <u>General Purpose</u>. The name of this plan is the Balboa Capital Long-Term Cash Incentive Plan (the "**Plan**"). The purpose of the Plan is to further link the interests of Participants with those of the Company by creating a direct relationship between key Company performance measurements and individual bonus payouts.

    1.2    <u>Effective Date</u>. The Plan is effective as of [**DATE**][1] (the "**Effective Date**").

2. <u>Definitions</u>.

    "**Affiliate**" means any majority owned subsidiary of the Company.

    "**Award Agreement**" means a written agreement, contract, certificate, or other instrument or document evidencing the terms and conditions of an individual Cash Bonus Award granted under the Plan which may, in the discretion of the Company, be transmitted electronically to any Participant. Each Award Agreement shall be subject to the terms and conditions of the Plan.

    "**Board**" means the Board of Directors of the Company, as constituted at any time.

    "**Cash Bonus Award**" means a cash incentive award, the payment of which is contingent on the achievement of Performance Goals with respect to a Performance Period.

    "**Code**" means the U.S. Internal Revenue Code of 1986, as it may be amended from time to time.

    2.1    "**Committee**" means the Compensation Committee of the Company, unless the Board establishes and appoints a different committee to administer the Plan in accordance with Section 3 of the Plan.

    "**Company**" means Ameris Bank, a Georgia state-chartered bank, and any successor thereto.

    "**Participant**" means, as to any Performance Period, the employees of the Balboa Capital division of the Company or an Affiliate who are designated by the Committee pursuant to Section 3.2 to participate in the Plan.

    "**Performance Criteria**" means the criterion or criteria that the Committee shall select for purposes of establishing the Performance Goal(s) for a Performance Period with respect to any Cash Bonus Award under the Plan.

---

[1] NTD: TBD.



REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

"**Performance Formula**" means, for a Performance Period, the one or more objective formulae applied against the relevant Performance Goal(s) to determine, with regard to the Cash Bonus Award of a particular Participant, whether and in what amount the Cash Bonus Award has been earned for the Performance Period.

"**Performance Goals**" means, for a Performance Period, the one or more goals established by the Committee for the Performance Period based upon one or more Performance Criteria.

"**Performance Period**" means the period over which the attainment of the Performance Goals will be measured for the purpose of determining a Participant's right to and the payment of a Cash Bonus Award. Performance Periods will be determined by the Committee in connection with the grant of a Cash Bonus Award.

3. Administration.

3.1 <u>Administration by the Committee; Committee Composition</u>. The Plan shall be administered by the Committee. If the Committee is not the Compensation Committee of the Company, the members of such Committee shall be appointed by the Board. For purposes of the allocation of Cash Bonus Awards under the Plan, the Company will recommend that the Committee consult Patrick Byrne.

3.2 <u>Authority of the Committee</u>. Subject to the terms of the Plan and applicable laws, and in addition to other express powers and authorization conferred by the Plan, the Committee shall have the authority:

(a) to construe and interpret the Plan and apply its provisions;

(b) to promulgate, amend, and rescind rules and regulations relating to the administration of the Plan;

(c) to authorize any person to execute, on behalf of the Company, any instrument required to carry out the purposes of the Plan;

(d) to determine when Cash Bonus Awards are to be granted under the Plan;

(e) from time to time to select, subject to the limitations set forth in the Plan, those Participants to whom Cash Bonus Awards shall be granted;

(f) to prescribe the terms and conditions of each Cash Bonus Award and to specify the provisions of the Award Agreement relating to such grant;

(g) to establish the Performance Periods over which performance will be measured;

(h) to select the Performance Criteria that will be used to establish the Performance Goals;

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

      (i)    to interpret, administer, reconcile any inconsistency in, correct any defect in and/or supply any omission in the Plan and any instrument or agreement relating to, or Cash Bonus Award granted under, the Plan; and

      (j)    to exercise discretion to make any and all other determinations which it determines to be necessary or advisable for the administration of the Plan.

    3.3    <u>Committee Decisions Final</u>. All decisions made by the Committee pursuant to the provisions of the Plan shall be final and binding on the Company and the Participants.

    3.4    <u>Delegation</u>. The Committee, in its sole discretion, may delegate all or part of its authority and powers under the Plan to one or more employees of the Company.

    3.5    <u>Indemnification</u>. In addition to such other rights of indemnification as they may have as directors or members of the Committee, and to the extent allowed by applicable laws, the Committee shall be indemnified by the Company against the reasonable expenses, including attorneys' fees, actually incurred in connection with any action, suit or proceeding or in connection with any appeal therein, to which the Committee may be party by reason of any action taken or failure to act under or in connection with the Plan or any Cash Bonus Award granted under the Plan, and against all amounts paid by the Committee in settlement thereof (*provided, however*, that the settlement has been approved by the Company, which approval shall not be unreasonably withheld) or paid by the Committee in satisfaction of a judgment in any such action, suit or proceeding, except in relation to matters as to which it shall be adjudged in such action, suit, or proceeding that such Committee did not act in good faith and in a manner which such person reasonably believed to be in the best interests of the Company, or in the case of a criminal proceeding, had no reason to believe that the conduct complained of was unlawful; *provided, however*, that within 60 days after institution of any such action, suit or proceeding, such Committee shall, in writing, offer the Company the opportunity at its own expense to handle and defend such action, suit, or proceeding.

    4.    <u>Eligibility</u>. The Committee will, in its sole discretion, determine which Participants will be eligible to receive Cash Bonus Awards in respect of such Performance Period. However, designation of a Participant eligible to receive a Cash Bonus Award hereunder for a Performance Period shall not in any manner entitle the Participant to receive payment in respect of any Cash Bonus Award for such Performance Period. The determination as to whether or not such Participant becomes entitled to payment in respect of any Cash Bonus Award shall be decided solely in accordance with the provisions of Sections 7 and 8 of the Plan.

    5.    <u>Threshold for Awards</u>. The Committee shall specify the threshold award level for each Performance Period. The threshold for awards shall be expressed as a percentage by which actual financial results exceed projected financial results. A Participant will not receive a Cash Bonus Award with respect to a Performance Period if performance is below the threshold.

    6.    <u>Performance Criteria; Performance Goals</u>. The Committee shall select the Performance Criteria that will be used to establish the Performance Goal(s). The Committee is authorized, in its sole discretion, to adjust or modify the calculation of a Performance Goal for a Performance Period.

7.  **Certification by Committee.** Following the completion of a Performance Period, the Committee shall review and certify in writing whether, and to what extent, the Performance Goals for the Performance Period have been achieved and, if so, calculate and certify in writing the amount of the Cash Bonus Awards earned for the Performance Period based upon the Performance Formula, including each Participant's individual Cash Bonus Award for the Performance Period.

8.  **Payment of Cash Bonus Awards.**

    8.1  **Employment Requirement.** Except as otherwise provided in such Participant's award agreement, a Participant must be employed by the Company, or an Affiliate on the date that Cash Bonus Awards are paid to be eligible for payment in respect of a Cash Bonus Award for such Performance Period.

    8.2  **Achievement of Performance Goal Requirement.** A Participant shall be eligible to receive payment in respect of a Cash Bonus Award only to the extent that: (A) the Performance Goal(s) for such period are achieved and such achievement is certified pursuant to Section 7; and (B) the Performance Formula as applied against such Performance Goals determines that all or some portion of such Participant's Cash Bonus Award has been earned for the Performance Period.

    8.3  **Timing of Cash Bonus Award Payments.** Cash Bonus Awards granted for a Performance Period shall be paid to Participants as soon as administratively practicable following completion of the certifications required by Section 7, but in no event later than March 15 of the calendar year following the end of the calendar year to which such Performance Period relates.

9.  **Termination of Employment.** Except as otherwise provided in such Participant's award agreement, if a Participant's employment terminates during a Performance Period, the Participant will forfeit all rights to any Cash Bonus Award under the Plan.

10. **General Provisions.**

    10.1  **Compliance with Legal Requirements.** The Plan and the granting of Cash Bonus Awards shall be subject to all applicable federal and state laws, rules and regulations, and to such approvals by any regulatory or governmental agency as may be required.

    10.2  **Non-Transferability.** A person's rights and interests under the Plan, including any Cash Bonus Award previously made to such person or any amounts payable under the Plan, may not be assigned, pledged, or transferred.

    10.3  **No Right to Employment.** Nothing in the Plan or any Award Agreement shall confer upon any person the right to continue in the employment of the Company or any Affiliate or affect the right of the Company or any Affiliate to terminate the employment of any Participant.

    10.4  **No Right to Cash Bonus Award.** A Participant shall not have any right to any Cash Bonus Award under the Plan until such Cash Bonus Award has been paid to such

4

Participant, and participation in the Plan in one Performance Period does not connote any right to become a Participant in the Plan in any future Performance Period.

  10.5 <u>Withholding</u>. The Company shall have the right to withhold from any Cash Bonus Award, any federal, state or local income and/or payroll taxes required by law to be withheld and to take such other action as the Committee may deem advisable to enable the Company and Participants to satisfy obligations for the payment of withholding taxes and other tax obligations relating to a Cash Bonus Award.

  10.6 <u>Amendment or Termination of the Plan</u>. The Board or the Committee may, at any time, amend, suspend, or terminate the Plan or any Award Agreement in whole or in part.

  10.7 <u>Unfunded Status</u>. Nothing contained in the Plan, and no action taken pursuant to its provisions, shall create or be construed to create a trust of any kind or a fiduciary relationship between the Company and any Participant, beneficiary or legal representative or any other person. To the extent that a person acquires a right to receive payments under the Plan, such right shall be no greater than the right of an unsecured general creditor of the Company. All payments to be made hereunder shall be paid from the general funds of the Company and no special or separate fund shall be established and no segregation of assets shall be made to assure payment of such amounts except as expressly set forth in the Plan. The Plan is not intended to be subject to the Employee Retirement Income Security Act of 1974, as amended (ERISA).

  10.8 <u>Governing Law</u>. Unless otherwise noted in the award agreement for a Participant, the Plan shall be construed, administered, and enforced in accordance with the laws of the state of Georgia without regard to conflicts of law.

  10.9 <u>Section 409A of the Code</u>. It is intended that payments under the Plan qualify as short-term deferrals exempt from the requirements of Section 409A of the Code, as amended, and the regulations thereunder (collectively, "Section 409A"). In the event that any Cash Bonus Award does not qualify for treatment as an exempt short-term deferral, it is intended that such amount will be paid in a manner that satisfies the requirements of Section 409A. The Plan shall be interpreted and construed in a manner consistent with the requirements for avoiding taxes or penalties under Section 409A. Notwithstanding the foregoing, nothing in this Plan or any Award Agreement shall be interpreted or construed to transfer any liability for any tax (including a tax or penalty due as a result of a failure to comply with Section 409A) from any Participant to the Company any Affiliate, or to any other individual or entity.

  10.10 <u>Expenses</u>. All costs and expenses in connection with the administration of the Plan shall be paid by the Company.

  10.11 <u>Section Headings</u>. The headings of the Plan have been inserted for convenience of reference only and in the event of any conflict, the text of the Plan, rather than such headings, shall control.

10.12 <u>Severability</u>. In the event that any provision of this Plan is found by a court, arbitrator, or other tribunal having competent jurisdiction to be illegal, invalid or unenforceable, then such provision shall not be voided, but shall be recast so as to be enforced to the maximum extent permissible under applicable law while taking into account the original intent and effect of the provision, and the remainder of this Plan shall remain in full force and effect. Any prohibition or unenforceability of any provision of this Plan in any jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.

10.13 <u>Gender and Number</u>. Except where otherwise indicated by the context, wherever used, the masculine pronoun includes the feminine pronoun; the plural shall include the singular, and the singular shall include the plural.

10.14 <u>Non-Exclusive</u>. Nothing in the Plan shall limit the authority of the Company, the Board or the Committee to adopt such other compensation arrangements as it may deem desirable for any Participant. Notwithstanding the foregoing, except as may be set forth in any employment agreement with an individual Participant or as otherwise determined by the Committee, while the Plan is in effect, no Participant shall be eligible to participate in any other annual incentive or bonus plan of the Company providing for the payment or settlement of awards in cash.

10.15 <u>Notice</u>. Any notice to be given to the Company or the Committee pursuant to the provisions of the Plan shall be in writing and directed to the Company as follows: Ameris Bank, Attn: James A. LaHaise, Chief Strategy Officer, 3490 Piedmont Road NE, Suite 1550, Atlanta, Georgia, 30305; with a copy (which shall not constitute notice to the Company) to the Chief Legal Officer of the Company at such address.

10.16 <u>Successors</u>. All obligations of the Company under the Plan with respect to Cash Bonus Awards granted hereunder shall be binding upon any successor to the Company whether the existence of such successor is the result of a direct or indirect purchase, merger, consolidation or otherwise, of all or substantially all of the assets of the Company.

10.17 <u>Clawback</u>. In the event the Board determines that a significant restatement of the Company's financial results or other Company metrics for any of the three prior fiscal years for which audited financial statements have been prepared is required and (i) such restatement is the result of fraud or willful misconduct and (ii) the Participant's Cash Bonus Award amount would have been lower had the results or metrics been properly calculated, the Committee has the authority to obtain reimbursement from any Participant responsible for the fraud or willful misconduct resulting in the restatement. Such reimbursement shall consist of any portion of any Cash Bonus Award previously paid that is greater than it would have been if calculated based upon the restated financial results or metrics. The action permitted to be taken by the Board under this Section 10.17 is in addition to, and not in lieu of, any and all other rights of the Board and/or the Company under applicable law and shall apply notwithstanding anything to the contrary in the Plan.

* * * * *

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# BALBOA CAPITAL LONG-TERM CASH INCENTIVE PLAN

## AWARD AGREEMENT

This agreement (this "**Agreement**") evidences the grant of a Cash Bonus Award by Ameris Bank (the "**Company**") to the individual named below (the "**Grantee**").

Name: Patrick Byrne

Performance Periods: Each individual calendar year 2022, 2023 and 2024

Performance Criteria: Performance for this Cash Bonus Award will be measured using the annual "EBT" of the Balboa Capital division of the Company ("Balboa"), which for this purpose is defined as actual annual earnings before tax as identified as "Actual Earnings Before Tax" in the Pioneer 1Q21 Operating Model (attached here as Exhibit A), excluding amounts allocated to the Incentive Pool (defined below) and the Retention Pool (defined below). For purposes of the calculation of EBT under this Agreement and the Plan (defined below), the Key Assumptions (defined below) must be used in interpretation and application of the Pioneer 1Q21 Operating Model for purposes of the calculation of EBT, and no costs of a type not contemplated by the Pioneer 1Q21 Operating Model will be allocated to Balboa.

> **Retention Pool**: means the pool for key employees equal to 10% of key employee salaries, or approximately ▬▬▬▬), which will be funded by the Company upon its acquisition of Balboa and will not be charged to Balboa.
>
> **Key Assumptions**: For purposes of calculating EBT under this Agreement and the Plan:
>
> a. Initial direct costs will be calculated using GAAP methodology[2].
>
> b. The interest cost used will be 1%.
>
> c. There will be no allocation of indirect Company expenses to Balboa by the Company, and there will be no transfer pricing between the Company and Balboa.
>
> d. For the performance period of this agreement, Balboa will not be charged for any other cost of capital other than the ▬ cost of funds on the average outstanding balance on all earning assets.
>
> e. Balboa will bear all direct costs incurred in its operations, and the Company will pass through at actual cost without markup any discounts relating to Balboa's operations that the Company enjoys with suppliers and vendors.

---

[2] Note to Sellers: Utilizing GAAP should be neutral to projected results, since Balboa has been over amortizing initial direct costs to catch up to past over deferrals.

  f. The allowance for loan losses calculations and expenses for Balboa will be the greater of (i) actual net charge-offs or (ii) ▮▮▮▮ of net investment in direct financing leases.[3]

Performance Goal: EBT for an individual Performance Period to exceed Threshold for Award for that Performance Period (No Cap)

Threshold for Award: 2022 = EBT of ▮▮▮▮; 2023 = EBT of ▮▮▮▮; 2024 = EBT of ▮▮▮▮

Performance Formula: 35% of EBT above the Threshold for Award will be allocated to the Balboa Capital Long-Term Cash Incentive Plan (the "**Plan**") cash bonus award pool for that Performance Period (the "**Incentive Pool**")

Cash Bonus Award: [NUMBER]% of the Incentive Pool (if any) established for each Performance Period

Date of Grant: [DATE]

  1. <u>Grant of Award</u>. The Company hereby grants to the Grantee on the date of grant set forth above (the "**Date of Grant**") a Cash Bonus Award (the "**Award**") consisting of the right to receive, on the terms provided herein, a cash bonus equal to the amount set forth above (if any).

  2. <u>Meaning of Certain Terms</u>. Each initially capitalized term used but not separately defined herein has the meaning assigned to such term in the Balboa Capital Long-Term Cash Incentive Plan (the "**Plan**") or in the Grantee's Employment Agreement (as noted below).

  3. <u>Forfeiture Risk</u>. If the Grantee's employment ceases for any reason, other than a termination Without Cause (as defined in the Grantee's Employment Agreement) or a Resignation by the Grantee for Good Reason (as defined in the Grantee's Employment Agreement), including death or disability, any unearned and/or unpaid portion of the Award is forfeited, and any remaining incentive opportunity associated with the Award shall be canceled. The unpaid portion of a forfeited Award (and any canceled remaining incentive opportunity) will be reallocated to the Incentive Pool. In the event of a termination Without Cause or a resignation for Good Reason, the Award for all outstanding Performance Periods shall be determined and paid out in accordance with Section 4 below and the Plan, and the Participant shall receive such Award for the each Performance Period that occurs during the year of the termination Without Cause or the resignation for Good Reason and each year thereafter, if any.

  4. <u>Payment</u>. The Company shall deliver to the Grantee as soon as administratively practicable following completion of each Performance Goal certification, as described in the Plan, but in no event later than March 15 of the calendar year following the end of the calendar

---

[3] Note to Sellers: Balboa has an established CECL model and vendor, which will apply to the Balboa Capital division. The general premise of the LTIP is to materially follow past practice, which this calculation is maintaining.

year to which such Performance Period relates, a cash payment equal to the Award for that Performance Period, subject to the terms of the Plan and this Agreement.

5. **Relationship to and Incorporation of the Plan.** The Award shall be subject to and governed by, and shall be construed and administered in accordance with, the terms and conditions of the Plan, which terms and conditions are incorporated herein by reference. By accepting the Award, the Awardee agrees to be bound by the terms and conditions set forth in this Agreement and the Plan.

6. **Non-transferability.** A person's rights and interests under the Plan, including any Cash Bonus Award previously made to such person or any amounts payable under the Plan, may not be assigned, pledged, or transferred.

7. **Certain Tax Matters.**

    7.1 **Generally.** The Grantee expressly acknowledges and agrees that the Grantee's rights to receive any amounts payable hereunder will be reduced by such amounts as are required to satisfy withholding of all federal, state, local or other taxes required to be withheld, if any. Neither the Company nor any of its Affiliates makes any representation to the Grantee, by way of this Agreement or otherwise, with respect to the tax treatment of the Award granted hereunder.

    7.2 **Section 409A.** The parties intend that the provisions of this Agreement comply with, or be exempt from, Section 409A of the Internal Revenue Code of 1986, as amended, and the regulations thereunder (collectively, "**Section 409A**") and all provisions of this Agreement shall be construed in a manner consistent with the requirements for avoiding taxes or penalties under Section 409A. Notwithstanding the foregoing, nothing in this Agreement shall be interpreted or construed to transfer any liability for any tax (including a tax or penalty due as a result of a failure to comply with Section 409A) from Grantee to the Company, any Affiliate, or to any other individual or entity.

8. **Clawback.** By accepting the Award, the Grantee expressly acknowledges and agrees that the Grantee's rights under the Award are subject to Section 10.17 of the Plan .

9. **Compliance with Legal Requirements.** This Agreement and the granting of Cash Bonus Awards shall be subject to all applicable federal and state laws, rules and regulations, and to such approvals by any regulatory or governmental agency as may be required.

10. **No Right to Employment.** Nothing in the Plan or this Agreement shall confer upon any person the right to continue in the employment of the Company or any Affiliate or affect the right of the Company or any Affiliate to terminate the employment of any Grantee.

11. **No Right to Cash Bonus Award.** Grantee shall not have any right to any Cash Bonus Award under this Agreement until such Cash Bonus Award has been paid to such Grantee.

12. **Governing Law.** Unless and until Grantee relocates out of the State of California (the "**Relocation**"), this Agreement will be governed and interpreted in accordance with the laws of the State of California, without regard to or application of choice-of-law rules or principles.

Following a Relocation, or if Grantee is currently located outside of the State of California, this Agreement will be governed and interpreted in accordance with the laws of the State of Georgia, without regard to or application of choice-of-law rules or principles, and without regard to the place of execution or the place of performance thereof.

13. <u>Venue</u>. The parties agree that any legal proceeding, commenced by one party against the other, shall be brought in any state or federal court having proper jurisdiction within the State of California prior to a Relocation and within the State of Georgia following the Relocation, or if the Grantee is not currently located within the State of California. Both parties submit to such jurisdiction, and waive any objection to venue and/or claim of inconvenient forum.

14. <u>Section Headings</u>. The headings in this Agreement have been inserted for convenience of reference only and in the event of any conflict, the text of the Agreement, and the Plan, rather than such headings, shall control.

15. <u>Severability</u>. In the event that any provision of this Agreement is found by a court, arbitrator, or other tribunal having competent jurisdiction to be illegal, invalid or unenforceable, then such provision shall not be voided, but shall be recast so as to be enforced to the maximum extent permissible under applicable law while taking into account the original intent and effect of the provision, and the remainder of this Agreement shall remain in full force and effect. Any prohibition or unenforceability of any provision of this Agreement in any jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.

16. <u>Parties Bound</u>. The terms, provisions, covenants and agreements contained in this Agreement shall apply to, be binding upon and inure to the benefit of the parties and their respective heirs, legal representatives, successors and assigns. The Company may assign this Agreement to its successors or affiliates. Grantee may not assign this Agreement.

17. <u>Gender and Number</u>. Except where otherwise indicated by the context, wherever used, the masculine pronoun includes the feminine pronoun; the plural shall include the singular, and the singular shall include the plural.

18. <u>Notice</u>. Any notice to be given to the Company pursuant to the provisions of this Agreement shall be in writing and directed to the Company as follows: Ameris Bank, Attn: James A. LaHaise, Chief Strategy Officer, 3490 Piedmont Road NE, Suite 1550, Atlanta, Georgia, 30305; with a copy (which shall not constitute notice to the Company) to the Chief Legal Officer of the Company at such address.

19. <u>Counterparts</u>. This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, but all of which together will constitute one and the same Agreement. Signatures delivered by facsimile or electronically shall be deemed effective for all purposes.

[*Remainder of the Page Intentionally Left Blank*]

IN WITNESS WHEREOF, the parties have entered into this Agreement on the date first written above.

Grantee

_____

Patrick Byrne
Address:

Ameris Bank

_____

By:
Title:

[*Signature Page to Award Agreement*]

## Exhibit A

[Pioneer 1Q21 Operating Model to be attached]



AMERIS000233
CONFIDENTIAL

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

AMERIS000234

CONFIDENTIAL