**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

```
1              UNITED STATES DISTRICT COURT

2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

3                              .
   PATRICK BYRNE,               .      Case No.:
4                               .      8:24-CV-01989-MWC-JDEx
          Plaintiff,            .
5                               .      Atlanta, Georgia
       vs.                      .
6                               .      November 3, 2025
   AMERIS BANK,                 .
7                               .      10:39 a.m.
          Defendant.            .
8                               .
   . . . . . . . . . . . . . . .
9

10

11

12            VIDEOTAPED DEPOSITION OF

13                 NICOLE STOKES

14            Taken by the Plaintiff

15          NONCONFIDENTIAL PORTIONS

16

17          CANDICE EDWARDS, CER-4519
          Esquire Deposition Solutions
18

19

20

21

22

23

24 Proceedings recorded by electronic sound recording;
   Transcript produced by transcription.
25
```



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  record Exhibit 7, which is a memo dated January 19th,

2  2024?

3       (Plaintiff's Exhibit 7 was marked for

4  identification.)

5  BY MR. CORCORAN:

6  Q.    Exhibit 7.

7  A.    Thank you.

8          MR. CORCORAN:  Ms. Fode.

9  BY MR. CORCORAN:

10  Q.    Let me when know you've had a chance to look at

11  this document.

12  A.    Thank you.  I will.

13       Thank you.  I've reviewed Exhibit 7.



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**



ESQUIRE
DEPOSITION SOLUTIONS

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**





**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**





**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**



19 BY MR. CORCORAN:

20 Q.    James LaHaise is -- his job title is chief

21 strategy officer, true?

22 A.    Correct.

23 Q.    James LaHaise is not part of the accounting

24 department, correct?

25 A.    Correct.



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1 sent an email to Sufhan Majid identifying five separate

2 line items that needed to be revised on the LTIP

3 calculation, true?

4          MS. FODE:  Document speaks for itself.  Lacks

5 foundation.

6          THE WITNESS:  Yes.  This is, again, where Pat

7 is responding back with some of the same adjustments.

8 BY MR. CORCORAN:

9 Q.   Up to this point, you were not made a recipient on

10 this email chain, correct?

11          MS. FODE:  Document speaks for itself.

12          THE WITNESS:  That's correct.

13 BY MR. CORCORAN:

14 Q.   Thereafter, on November 3rd, 2023, Sufhan Majid

15 looped in or added you, Nicole Stokes, into this email

16 chain, forwarding the same to you, stating, "Nicole,

17 see below for LTIP adjustments proposed by Pat." Do you

18 see that?

19          MS. FODE:  Same objection.

20          THE WITNESS:  I do see that in this email

21 chain.

████████████████████

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

20  BY MR. CORCORAN:

21  Q.    Do you have any notes of the conversation you had

22  with Pat, Patrick Byrne, when you flew to California?

23          MS. FODE:  Vague as to time.

24          THE WITNESS:  I don't recall if I have any

25  notes.



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

 1 │ BY MR. CORCORAN:
 2 │ Q.    What were the reasons that you identified to Pat
 3 │ -- Patrick Byrne when you flew to California as the
 4 │ reasons that you did not agree with these adjustments?
 5 │ A.    Would you like to go through each one?
 6 │ Q.    Yes.
 7 │ A.    And are we going to go through the list on --
 8 │ Q.    Let's start with --
 9 │ A.    -- Document 10 or Document 9?  Because they are
10 │ different lists.  I'm sorry.  Document 8 -- Exhibit 8
11 │ and Exhibit 10 are two different lists.
12 │ Q.    Let's go with exhibit -- let's stick with the
13 │ exhibit we're on, which is Exhibit 10.
14 │ A.    Okay.
15 │         MS. FODE:  And I'm sorry.  What is the
16 │ question pending?  I lost that.
17 │ BY MR. CORCORAN:



REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL





**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**





**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

████████████████████████████

█████████████████████████████

██████████████████████████████████

█████████████████████████████

████████████████████████████

█████████

████████████████████

████████████

 9      MR. CORCORAN:  All right.  We'll move on.
10 Next up is Exhibit 11.

11      (Plaintiff's Exhibit 11 was marked for
12 identification.)

13      MS. FODE:  Thank you.

14      THE WITNESS:  Thank you.

15      MR. CORCORAN:  For the record, Exhibit 11 is
16 an email trail dated November 14th, 2023, from Patrick
17 Byrne to you, Nicole Stokes, regarding the huddle at
18 11:30/2:30 finalizing tax pricing follow-up call,
19 Bates-stamped Ameris 1556 to 1558.

20      THE WITNESS:  Okay.  I'm going to take just a
21 minute to review it.

22 BY MR. CORCORAN:

23 Q.   Go ahead.  Sure.

24 A.   Thank you.

25      Okay.  I've had time to review.  Thank you.



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  BY MR. CORCORAN:

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

███████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

 8 BY MR. CORCORAN:

 9 Q.    All right.  Can you go to the first page of the

10 award agreement, Bates Stamp 227?  Just as an aside,

11 you're not publish -- Ameris is not publishing Balboa's

12 finances, are they?

13          MS. FODE:  Overbroad.  Vague as to time.

14 Vague and ambiguous.

█████████████████████████████████████████████████

████████████████████████████████

█████████████████

███████████

█████████████████████████████████████████████████

██████████████████████████████

████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████

█████████████████

█████████████████████████████████████████████████





13  BY MR. CORCORAN:

14  Q.   All right.  Can you go to the award agreement,

15  Bates Stamp 227?

16  A.   I'm there.

17  Q.   You have it there?  Okay.  Looking at that

18  paragraph titled "Performance Criteria" at the top

19  corner of the page, you see that?

20  A.   Yes.

21  Q.   Looking at the last full sentence, that sentence

22  states, "For purposes of the calculation of EBT."  That

23  means Earnings Before Taxes, right?

24          MS. FODE:  Document speaks for itself.

25          THE WITNESS:  Yes.



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  can think of at this time.  That's all I recall.

2  BY MR. CORCORAN:

3  Q.   Did you ever express any dissatisfaction with

4  Patrick Byrne's job performance?

5            MS. FODE:  Vague and ambiguous.

6            THE WITNESS:  So I'll remind you that Patrick

7  Byrne did not report to me.

8  BY MR. CORCORAN:

9  Q.   Understood.  My question is a little different.

10 Did you ever express any dissatisfaction with Patrick

11 Byrne's job performance?

12           MS. FODE:  The same objection.

13           You can answer.



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  A.    Can you repeat the question?

8  BY MR. CORCORAN:

9  Q.    Did you ever discuss any of those opinions that

10 you just mentioned with Patrick Byrne directly?

11 A.    As I just stated, Patrick Byrne stopped responding

12 to emails.  He had stopped taking my calls.  He had

13 stopped coming to meetings.

14 Q.    Can you direct me to any -- any emails between you

15 and Patrick Byrne wherein Patrick Byrne did not accept

16 an invitation to a meeting?

17 A.    With me today?  Is that the question?

18 Q.    Yes.

19 A.    No, I didn't bring anything with me.  But there

20 was absolutely meetings that he did not show up to,

21 emails that went unanswered, phone calls that went

22 unanswered, and meeting requests that were ignored via

23 calendar invites.

24 Q.    When did you voice these concerns or issues with

25 Jim LaHaise?



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1          MS. FODE:  Overbroad.

2          Go ahead.

3          THE WITNESS:  So there's many reasons why the

4  CFO of the company would want to have a relationship

5  and be able to talk to the president of one of our

6  divisions.  But specifically, I will give you one

7  example of our ALCO meetings.  So Pat was invited to

8  attend our ALCO, which is Asset Liability Committee,

9  meetings.  Those meetings were scheduled for 9:00 a.m.

10 He complained that that was in -- you know, did not

11 respect his time change and that we -- I think his word

12 was, we clearly didn't want people from California on

13 the call.  So we purposely moved the ALCO meetings from

14 9:00 a.m. Eastern to 11:00 Eastern so that would then

15 be 8:00 Pat's time, and Pat still didn't attend those

16 meetings.

17 BY MR. CORCORAN:



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**



25          MS. FODE:   And I want to -- I didn't want to



1 out there.  So I know that that was in 2023 when we

2 were out there.  So I know that they were having issues

3 then.

4 Q.   Were you having those problems before you went out

5 there in 2023?

6 A.   Yes.

7 Q.   And when you say that we went out there in 2023,

8 you're talking to me about the trip that you and Jim

9 LaHaise took out to California on July 31st and August

10 1st of 2023, correct?

11 A.   Correct.

12 Q.   How early in 2023 did the problems that you had

13 defined as making Pat Byrne very difficult start?  Did

14 they start in January or February of 2023?

15         MS. FODE:  Overbroad.  Compound.

16         THE WITNESS:  Again, I can't remember the

17 exact date of when it all started, but I would say that

18 the relationship progressed and got more difficult.

19 BY MR. CORCORAN:



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**



ESQUIRE
DEPOSITION SOLUTIONS

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**



18 BY MR. CORCORAN:

19 Q.   What's an 8-K event?

20 A.   So an 8-K is a filing with the SEC when you have

21 public -- an event that you need to make public.

22 That's the way you become SEC compliant, is you file it

23 on an 8-K.

24 Q.   At some point, Balboa Capital's marketing team was

25 moved to Ameris, correct?



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

```
 1  A.   No.  I think that's wrong.  Pat Byrne wanted to do
 2  press releases.
 3  Q.   But --
 4  A.   And we said --
 5  Q.   Go ahead.
 6  A.   And we said no, that we -- that we couldn't do
 7  those.
 8        MS. FODE:  And Jody Spencer lost sound if you
 9  could unmute for him.
10        THE VIDEOGRAPHER:  Say again?
11        MS. FODE:  Jody Spencer lost sound if you
12  could turn the Zoom sound back on.
13        THE VIDEOGRAPHER:  Oh, I'm sorry.
14        MS. FODE:  No problem.
15        THE VIDEOGRAPHER:  I thought I clicked it.
16  Apologies.
17        MS. FODE:  No problem.
18  BY MR. CORCORAN:
19  Q.   Were Pat Byrne's requests to do press releases
20  simply requests rather than complaints?
21        MS. FODE:  Vague and ambiguous.
22  Argumentative.
23        THE WITNESS:  No, they were complaints.
```

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**



24          MR. CORCORAN:  All right.  Can we go off the

25  record?

ESQUIRE
DEPOSITION SOLUTIONS