MATTHEW SESSIONS (BAR NO. 307098)
STACEY A. VILLAGOMEZ (BAR NO. 317081)
MADISON E. LARSEN (BAR NO. 364953)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
2010 Main Street, 8th Floor
Irvine, California 92614-7214
Phone:  (949) 553-1313
Fax:  (949) 553-8354
E-Mail:  msessions@allenmatkins.com
         svillagomez@allenmatkins.com
         mlarsen@allenmatkins.com

Attorneys for Plaintiff
PATRICK BYRNE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>AMERIS BANK, a Georgia corporation,<br><br>Defendant. | Case No. 8:24-cv-01989-MWC-JDE<br><br>ASSIGNED FOR ALL PURPOSES TO<br>Judge Michelle Williams Court<br><br>**PLAINTIFF PATRICK BYRNE'S OPPOSITION TO DEFENDANT AMERIS BANK'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   February 13, 2026<br>Time:  1:30 p.m.<br>Ctrm:  6A<br><br>Disc. Cutoff:         November 28, 2025<br>Pretrial Conference:  May 22, 2026<br>Trial Date:           June 1, 2026 |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................1

II.   BACKGROUND ................................................................................2

    A.    Balboa Acquisition and Byrne's Continued Role at Ameris ...............2

        1.    Balboa's Business and Historical Performance.........................2

        2.    Ameris Bank Acquires Balboa and Byrne Remains as CEO ................................................................................3

        3.    LTIP as a Component of Byrne's Compensation and Leadership Continuity ................................................................3

    B.    The LTIP's Structure ................................................................4

        1.    Performance Metric: Earnings Before Tax Defined by the Pioneer Model................................................................4

        2.    Thresholds, Allocation Framework, and Payment Mechanics................................................................4

    C.    Balboa's LTIP Performance and Subsequent Disputes .....................5

        1.    2022 Performance and Payment Under the LTIP......................5

        2.    Ameris's LTIP Calculation Methodology and Resulting Dispute................................................................5

    D.    Byrne's Complaints and Subsequent Termination .........................6

III.  ARGUMENT ................................................................................7

    A.    Ameris Is Not Entitled To Summary Judgment On Byrne's Wage Claims (Labor Code §§ 201–203) ................................................7

        1.    Ameris is Not Entitled to Judgment as a Matter of Law ................................................................................8

            (a)    As a Matter of Law, Labor Code §§ 201–203 Claims Do Not Turn on the "Discretionary" versus "Non–discretionary" Nature of Unpaid Bonuses ................................................................8

            (b)    As a Matter of Law, Byrne's Acceptance of the 2022 LTIP Cash Award Payment Does Not Bar His Claims ................................................10

        2.    Triable Issues of Fact Also Preclude Summary Judgment................................................................12

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4935-5387-5337.9

(i)

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

**Page**

       (a)    Disputed Facts Exist as to Whether the LTIP Cash Awards were "Discretionary" ...............................12

       (b)    Disputed Facts Exist as to Whether there was a "Fixed Allocation Formula" for Determining Byrne's LTIP Cash Awards .....................14

       (c)    Disputes of Fact Exist as to Whether Ameris Properly Calculated EBT and thus Cash Awards were "Earned" ....................................15

       (d)    Disputed Facts Exist as to Whether Ameris's Conduct was "Willful" under Labor Code § 203 ...............................................................16

   B.    Ameris Is Not Entitled To Summary Judgment On Section 1102.5...................................................18

      1.    Triable Issues of Fact Exist on the Section 1102.5 Claim Because it is Disputed Whether Protected Activity was a "Contributing Factor" for Byrne's Termination................................................................18

      2.    Ameris is not Entitled to Judgment on the Section 1102.5 Claim as a Matter of Law Because Byrne Engaged in Protected Activity by Disclosing What He Had Reasonable Cause to Believe was a Violation of California Labor Law ...........................21

   C.    Ameris is Not Entitled to Summary Judgment on Byrne's Wrongful Termination and UCL Claims ...........................................23

      1.    Byrne's Common Law Wrongful Termination Claim is Independently Viable as a Matter of Law.................23

      2.    UCL Claim is Independently Viable as a Matter of Law ............................................................................24

   D.    Ameris is Not Entitled to Summary Judgment on Punitive Damages ...........................................................25

IV.    CONCLUSION .............................................................25

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9

(ii)

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alonzo v. Maximus, Inc.*,
    832 F. Supp. 2d 1122 (C.D. Cal. 2011) ............................................................. 9

*Barlow v. Ground*,
    943 F.2d 1132 (9th Cir. 1991) ........................................................................ 14

*Butte Fire Cases*,
    24 Cal. App. 5th 1150 (2018) ......................................................................... 25

*Carter v. Escondido Union High Sch. Dist.*,
    148 Cal. App. 4th 922 (2007) .................................................................. 22, 23

*Davis v. Farmers Ins. Exch.*,
    245 Cal. App. 4th 1302 (2016) ......................................................................... 8

*Diaz v. Grill Concepts Servs., Inc.*,
    23 Cal. App. 5th 859 (2018) ........................................................................... 17

*Dowell v. Contra Costa County*,
    928 F.Supp.2d 1137 (N.D. Cal. 2013) ............................................................ 19

*Edgerly v. City of Oakland*,
    211 Cal. App. 4th 1191 (2012) ....................................................................... 21

*Fitzgerald v. EL Dorado Cnty.*,
    94 F Supp. 3d 1155 (E.D. Cal. 2015) ....................................................... 21, 22

*Frausto v. Bank of Am., N.A.*,
    2019 WL 5626640 (N.D. Cal. Oct. 31, 2019) ................................................... 9

*Harris v. Itzhaki*,
    183 F.3d 1043 (9th Cir. 1999) ........................................................................ 20

*Hays v. Cnty. of Los Angeles*,
    2020 WL 1465826 (Cal. Ct. App. Mar. 26, 2020) .......................................... 23

*Hernandez v. Hughes Missile Sys. Co.*,
    362 F.3d 564 (9th Cir. 2004) .......................................................................... 20

*hiQ Labs, Inc. v. LinkedIn Corporation*,
    639 F. Supp. 3d 944 (N.D. Cal. 2022) ............................................................ 12

*In re Taco Bell Wage & Hour Actions*,
    2011 WL 4479730 (E.D. Cal. Sept. 26, 2011) ................................................ 18

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) .................................................................................... 24

*Kempf v. Barrett Bus. Servs., Inc.*,
    336 F. App'x 658 (9th Cir. 2009) ...................................................................... 9

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9

(iii)

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

**Page(s)**

*Killgore v. SpecPro Professional Services, LLC,*
    51 F.4th 973 (9th Cir. 2022)...................................................................19, 21

*La v. San Mateo Cnty. Transit Dist.*
    No. 14-CV-01768-WHO, 2014 WL 4632224 (N.D. Cal. Sept. 16, 2014)........................................................................................................22

*Lawson v. PPG Architectural Finishes, Inc.,*
    12 Cal. 5th 703 (2022)...........................................................................18, 19

*Love v. Motion Indus., Inc.,*
    309 F. Supp. 2d 1128 (N.D. Cal. 2004)...............................................21, 22

*Naranjo v. Spectrum Sec. Servs., Inc.,*
    88 Cal. App. 5th 937 (2023).........................................................................17

*Neisendorf v. Levi Strauss & Co.,*
    143 Cal. App. 4th 509 (2006)....................................................................8, 9

*NLRB v. Electro Vector, Inc.,*
    539 F.2d 35 (9th Cir. 1976)..........................................................................10

*Patten v. Grant Joint Union High Sch. Dist.,*
    134 Cal. App. 4th 1378 (2005)..............................................................22, 23

*Quach v. California Com. Club, Inc.*
    16 Cal. 5th 562 (2024).................................................................................12

*Ross v. County of Riverside,*
    36 Cal. App. 5th 580(2019)...................................................................21, 24

*Schachter v. Citigroup, Inc.,*
    47 Cal. 4th 610 (2009)............................................................................8, 11

*Schnall v. Hertz Corp.,*
    78 Cal. App. 4th 1144 (2000).......................................................................24

*Smith v. Level 3 Commc'ns Inc.,*
    2015 WL 833614 (N.D. Cal. Feb. 24, 2015).............................................9, 10

*Volland v. Mobile Mini, Inc.,*
    WL 2898864 (D. Ariz., July 16, 2012).........................................................20

*Wentzo v. Signavio, Inc.,*
    No. CV 21-09968 TJH (JCX), 2024 WL 3191228 (C.D. Cal. Apr. 29, 2024)........................................................................................15

**Statutes**

Bus. & Prof. Code § 17200.................................................................................24

Civ. Code § 3294(a)...........................................................................................25

Lab. Code § 1102.5 (b)......................................................................................21

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9

(iv)

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

| | **Page(s)** |
|---|---|
| Lab. Code § 1102.5(b) | 19 |
| Lab. Code § 200(a) | 8 |
| Lab. Code § 206.5 | 11 |
| Lab. Code § 219 | 11 |

**Other Authorities**

CACI No. 2430, *Wrongful Discharge in Violation of Public Policy*, (Judicial Council of Cal. Civ. Jury Instructions (2025)) ................................ 24

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4935-5387-5337.9

(v)

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

# I.    INTRODUCTION

Defendant Ameris Bank's motion for summary judgment hinges on two primary strategies: (1) recasting the LTIP Cash Awards as "discretionary bonuses" and (2) trivializing Plaintiff Patrick Byrne's objections to Ameris's miscalculations of the LTIP pool as personal dissatisfaction. The record and the LTIP's affirmatively demonstrate otherwise. The LTIP was a negotiated component of Byrne's compensation, administered under defined performance metrics and allocation rules, and Ameris denied payments based on its own disputed "Actual Earnings Before Tax" ("EBT") calculations—not on any exercise of a committee's "discretion." Those same disputes, along with evidence bearing on causation and pretext, require denial of summary judgment on every claim. Key factual disputes (among others) precluding summary judgment include:

- The LTIP was a negotiated component of Byrne's compensation (SGI 124–125, 143), implemented in connection with the Balboa acquisition (SGI 7, 25, 131) and treated as mandatory participation under his Employment Agreement—not a discretionary or optional bonus program (SGI 11, 144);

- Ameris's EBT calculations departed from the LTIP's express framework (SGI 23, 120), including by imposing a global GAAP-based methodology that conflicted with the plan's defined key assumptions, the Pioneer operating model, and Balboa's historical practices (SGI 21–23, 119, 135, 152);

- The plain language of the LTIP confirms that Byrne's acceptance of the 2022 LTIP payment did not waive future rights (SGI 16, 38), and did not foreclose disputes regarding Ameris's calculations for later, separate performance periods, including in 2023 and 2024 (SGI 8, 38); and

- Byrne repeatedly raised internal concerns regarding unpaid LTIP compensation (SGI 44, 47), and the timing and circumstances of his termination following those complaints (SGI 42, 36) support a reasonable inference that his protected activity (SGI 36, 47)—not personal dissatisfaction

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9

-1-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

or greed (SGI 17, 38)—was a motivating factor in the decision to terminate his employment (SGI 36).

Moreover, the legal defects in Ameris's motion mirror the factual disputes it ignores. First, Ameris is wrong that Labor Code §§ 201–203 turns on whether a bonus is labeled "discretionary"; the question is whether the compensation was earned, and triable issues exist as to the LTIP's framework, Byrne's fixed allocation, and whether the EBT threshold was met under the Plan. Second, Ameris's waiver theory fails as a matter of law and fact; Byrne's acceptance of a 2022 payment does not waive later-discovered underpayments or disputes as to separate performance periods. Third, Ameris cannot convert a contractual performance determination into "discretion" after the fact. Fourth, Ameris's "good-faith dispute" defense to § 203 penalties raises fact questions about knowledge and intent that cannot be resolved on summary judgment. Finally, on whistleblower retaliation, wrongful termination, UCL, and punitive damages, the timing, shifting explanations, and contested administration of the LTIP present classic jury issues of motive and pretext. Summary judgment should be denied.

## II.    BACKGROUND

### A.    Balboa Acquisition and Byrne's Continued Role at Ameris

#### 1.    Balboa's Business and Historical Performance

Plaintiff Patrick Byrne founded Balboa Capital ("Balboa") in 1988 and served as its Chief Executive Officer for more than three decades. (Statement of Genuine Issues ("SGI") 1.) Balboa is a nationwide equipment leasing and financing company whose performance is driven by multi-year lease portfolios and underwriting models. (SGI 118.)  During the period before Ameris's acquisition, when Balboa was privately held, the company had a long operating history with relatively predictable performance driven by established lease portfolios and underwriting models, and it consistently evaluated profitability using internal metrics that reflected the long-term nature of its equipment leasing business and were used for

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9                    -2-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

1  management compensation, incentive planning, and performance evaluation well
2  before the acquisition. (SGI 119.) Those practices formed the baseline "past
3  practice" reflected in the Pioneer operating model and the LTIP's performance
4  framework. (SGI 120.)

5          **2.      Ameris Bank Acquires Balboa and Byrne Remains as CEO**

6          In 2021, Ameris Bank ("Ameris") pursued the acquisition of Balboa. (SGI
7  121.) Before agreeing to sell Balboa to Ameris, Byrne evaluated multiple
8  acquisition opportunities from other banks and financial institutions. (SGI 122.)
9  Those proposals were very close in terms of price and structure but differed in
10 incentives for Byrne's and the other approximately 180 employees of Balboa. (SGI
11 123.) Ameris ultimately acquired Balboa in December 2021. (SGI 5.)

12         As part of the transaction, Ameris sought to retain Byrne in a leadership role.
13 (SGI 124.) Byrne agreed to remain with Ameris as Chief Executive Officer of the
14 Balboa Division, and, at closing, entered into a written Employment Agreement
15 governing his post-acquisition role and compensation. (SGI 25.)

16         **3.      LTIP as a Component of Byrne's Compensation and
17                 Leadership Continuity**

18         The Employment Agreement included the Balboa Capital Long-Term Cash
19 Incentive Plan ("LTIP") as a component of Byrne's compensation, distinct from his
20 base salary and quarterly bonuses. (SGI 125.) The LTIP was a material part of
21 Ameris's acquisition proposal and factored into Byrne's decision to select Ameris
22 over other potential acquiring companies. (SGI 126.) As reflected in the declarations
23 of Byrne, Robert Rasmussen, and Jacquie Emert, the LTIP was discussed during the
24 acquisition as a means of rewarding performance and maintaining the continuity of
25 Balboa's leadership after the sale to Ameris. (SGI 127.)

26         Following Ameris's acquisition, Byrne took an active role in communicating
27 the LTIP to Balboa's leadership team as an important element of their post-
28 acquisition compensation. (SGI 128.) Senior and mid-level leaders relied on those

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9                    -3-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

representations when deciding to remain with the company. (SGI 129.) In his continued role as CEO, Byrne used the LTIP as a tool to retain, motivate, and reward Balboa personnel at all levels, while also providing him with a direct incentive to drive strong performance following the acquisition. (SGI 130.)

**B.    The LTIP's Structure**

Ameris implemented the LTIP as a formal, written incentive plan covering Byrne and other eligible participants in the Balboa Division. (SGI 131.) The stated purpose of the LTIP is to link the interests of participants with those of the company by creating a direct relationship between performance measurements and individual bonus payouts. (SGI 132.) Participation in the LTIP is governed by the written Plan, which establishes the operative incentive framework, while the Award Agreement is the individual instrument that applies that framework to a particular participant and year. (SGI 136.) Byrne's Award Agreement covers annual performance periods for calendar years 2022, 2023, and 2024. (SGI 8, 10.)

**1.    Performance Metric: Earnings Before Tax Defined by the Pioneer Model**

Under the LTIP, performance is measured using the Balboa Division's EBT, as defined in the Pioneer 1Q21 Operating Model attached to the LTIP. (SGI 23.) The Award Agreement specifies that EBT is calculated using the Pioneer model, subject to six defined "Key Assumptions," one of which provides that "initial direct costs will be calculated using GAAP methodology." (SGI 21.) The remaining five assumptions do not reference GAAP, and GAAP is not referenced elsewhere in the LTIP outside of this limited context. (SGI 134.) The Award Agreement adds that the general premise of the LTIP is to materially follow Balboa's past practice, meaning Balboa's practices before Ameris's acquisition. (SGI 135.)

**2.    Thresholds, Allocation Framework, and Payment Mechanics**

For each performance period, the LTIP establishes a threshold EBT amount. (SGI 24.) If EBT exceeds the threshold, 35% of EBT above the threshold is

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9                                    -4-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

1  allocated to the LTIP bonus pool for that period. (SGI 24.) The LTIP also
2  establishes a framework for allocating the bonus pool, including fixed percentage
3  allocations for certain participants and a defined portion allocated within the pre-
4  established framework. (SGI 39, 136.) That framework was negotiated and
5  established prior to Ameris' acquisition of Balboa. (SGI 39, 137.)

6       After completing each performance period, Ameris's Compensation
7  Committee is required to review and certify whether the performance goals have
8  been achieved and, if so, calculate and certify the amount of cash bonus awards
9  earned under the LTIP's formula. (SGI 138.) Cash bonus awards are then paid as
10 soon as administratively practicable following certification, and no later than March
11 15 of the following calendar year. (SGI 139.)

12       **C.    Balboa's LTIP Performance and Subsequent Disputes**
13            **1.    2022 Performance and Payment Under the LTIP**

14       In 2022, the Balboa Division delivered strong operating results and generated
15 earnings sufficient to exceed the LTIP performance threshold. (SGI 37.) Ameris
16 calculated Balboa's EBT for LTIP purposes and paid the LTIP bonus pool of
17 approximately $9 million for the 2022 performance period, including payments to
18 Byrne and other Balboa participants. (SGI 37.)

19       Because Ameris concluded that the 2022 LTIP performance threshold had
20 been satisfied and paid LTIP awards accordingly, Byrne did not undertake an
21 independent recalculation of EBT for LTIP purposes at that time. (SGI 140, 141.)
22 There was no reason for him to do so: the certified outcome was that the
23 performance threshold had been met, and LTIP payments were made in accordance
24 with that conclusion. (SGI 141.)

25            **2.    Ameris's LTIP Calculation Methodology and Resulting
26                    Dispute**

27       For the 2023 performance period, the Balboa Division again operated at a
28 high level and, in Byrne's view, generated results sufficient to exceed the LTIP

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9                    -5-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

performance threshold. (SGI 142.) Ameris, however, reached a different conclusion and determined that the Balboa Division had *not* met the LTIP threshold for that year. (SGI 142.)

In reaching that conclusion, Ameris applied GAAP accounting principles broadly to the LTIP calculation, which produced materially different EBT figures for LTIP purposes when considered in view of Balboa's prior practices. (SGI 19.) Byrne disagreed with that approach and raised concerns—both orally and in writing—that Ameris's methodology departed from the LTIP's express terms and from Balboa's historical practices reflected in the Pioneer operating model.[1] (SGI 47, 50, 52.) His objections focused on whether the EBT calculation complied with the LTIP's defined assumptions and performance framework. (*Id.*) In declining to certify payment for the 2023 performance period, Ameris took the position that the LTIP performance threshold had not been satisfied based on its EBT calculation. (SGI 52–61.)

### D. Byrne's Complaints and Subsequent Termination

Beginning in 2023 and continuing into 2024, Byrne raised concerns internally regarding Ameris's LTIP calculations and the resulting failure to pay LTIP compensation. (SGI 47–56, 97–98.) He communicated those concerns to Ameris personnel responsible for compensation, accounting, and senior leadership over an extended period of time. (*Id.*) As reflected in the declarations of Byrne, Rasmussen, and Emert, Byrne raised these issues in the ordinary course of his responsibilities as Chief Executive Officer of the Balboa Division. (*Id.*) His objections were directed at whether the LTIP was being administered in accordance with its written terms and

---

[1] The LTIP defines performance as meeting the "EBT" as calculated under the Pioneer operating model attached to the Plan. (SGI 23.) That model was based on Balboa's pre-acquisition operating practices, which evaluated performance using internal metrics reflecting the economics of Balboa's leasing business, rather than Ameris's consolidated GAAP financial reporting. *Id.* While the LTIP identifies GAAP methodology for one specified component of the calculation, it does not require GAAP to be applied globally to all elements of EBT and states that its general premise is to materially follow Balboa's past practice. (SGI 134.)

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4935-5387-5337.9                                   -6-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

1  how it had been presented during the acquisition. (*Id.*)

2    Over time, Byrne's working relationship with Ameris leadership became

3  increasingly strained, particularly with respect to autonomy and the unresolved

4  LTIP dispute. (SGI 83–85, 87.) Although Ameris continued to acknowledge Byrne's

5  leadership and the Balboa Division's strong performance, it did not resolve the LTIP

6  issues and continued to apply the challenged methodology. (SGI 70.)

7    In 2024, Ameris terminated Byrne's employment "without cause", but

8  remaining "eligible to participate in the [LTIP]". (SGI 113.) Ameris later offered

9  various justifications for the termination. (SGI 112, 113.) The termination followed

10  Byrne's sustained objections regarding the LTIP calculations and his efforts to

11  secure payment of compensation he believed had been earned under the Plan. (SGI

12  98.) Byrne's internal complaints concerned the nonpayment of compensation he

13  believed was owed under the LTIP and were made in the course of his ongoing

14  efforts to ensure that the Plan was administered in accordance with its written terms.

15  (SGI 47–56, 97–98.)

16  ## III. ARGUMENT

17    Ameris's motion must be denied. As discussed below, with respect to each

18  cause of action on which Ameris has moved, (1) triable issues of disputed fact exist

19  that preclude summary judgment and (2) even assuming all material facts were

20  undisputed (they are not), Ameris is not entitled to judgment as a matter of law.

21
22    **A. Ameris Is Not Entitled To Summary Judgment On Byrne's Wage Claims (Labor Code §§ 201–203)**

23    First, the Court should deny summary judgment with respect to Byrne's claim

24  for unpaid earned wages at the time of termination under Labor Code § 201 and for

25  waiting time penalties under § 203 for multiple independent but equally dispositive

26  reasons.

27
28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4935-5387-5337.9  -7-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

1. **Ameris is Not Entitled to Judgment as a Matter of Law**

 (a) **As a Matter of Law, Labor Code §§ 201–203 Claims Do Not Turn on the "Discretionary" versus "Non–discretionary" Nature of Unpaid Bonuses**

Ameris begins its discussion of Byrne's unpaid wage claims by arguing that LTIP Cash Awards are "discretionary" bonuses and are therefore not "wages" and are not subject to recoupment under Labor Code § 201 or waiting time penalties under § 203. Ameris is completely wrong. For sections 201–203, the correct legal analysis turns on whether the bonus was "earned" at the time of termination, not whether it was "discretionary."

A wage is defined as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard for time, task, piece, commission basis, or other method of calculation." Lab. Code § 200(a). Under that broad definition, "[i]ncentive compensation, such as bonuses and profit-sharing plans . . . constitute wages." *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 618 (2009); *see also Davis v. Farmers Ins. Exch.*, 245 Cal. App. 4th 1302, 1331 and n.20 (2016) (Labor Code's wage payment provisions apply to "highly-compensated executives"; "wages include not just salaries earned hourly, but also bonuses, profit-sharing plans, and commissions."). Critically, "when an employee satisfies the condition(s) precedent to receiving incentive compensation . . . that employee [is] said to have earned the incentive compensation (thereby necessitating payment upon resignation or termination)." *Schachter*, 47 Cal. 4th at 621. Moreover, whether the bonus is considered "discretionary" or "non-discretionary" is immaterial. *See Neisendorf v. Levi Strauss & Co.*, 143 Cal. App. 4th 509, 522 (2006). As the California Court of Appeal aptly explained:

> [O]nce a bonus has been promised as part of the compensation for service, and the employee fulfills all the agreed-to conditions, the promised bonus is considered wages that must be paid. Consequently, defining bonuses as wages protects an employee's expectation of promised remuneration and prevents the employer from arguing that the promised bonus was an unenforceable gift or gratuity.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9

-8-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

*Id.* Accordingly, even if Byrne's LTIP Cash Awards were "discretionary"—which, as explained below, they were not—they were still subject to payment at the time of termination under Labor Code § 201 and to waiting time penalties under § 203. *See Kempf v. Barrett Bus. Servs., Inc.*, 336 F. App'x 658, 662 (9th Cir. 2009) (holding that because employer "'does not dispute that [employee] performed his obligations under [his] agreement' . . . [employee's] bonus was a wage that must be paid under § 201.").

Notably, none of Ameris's cases cited in their motion hold otherwise. First, Ameris cites to *Frausto v. Bank of Am., N.A.*, 2019 WL 5626640, at *5–6, 9 (N.D. Cal. Oct. 31, 2019), and represents the case, in a parenthetical, as "holding discretionary bonuses are not wages and granting summary judgment for employer under Lab. Code §§ 201–203." Mot. at 15. That was not the court's holding. Indeed, what Ameris omits is that the *Frausto* court's holding had nothing to do with whether a bonus was due at the time of termination or not (which in contrast, is what's at issue here). Instead, the issue was whether the employer failed to incorporate discretionary bonuses into its calculation of overtime pay, which the employee relatedly claimed was underpaid at the time of termination. *See Frausto*, 2019 WL 5626640, at *5–6 (explaining that under California law, "[n]on-discretionary bonuses are part of the regular rate of pay," for purposes of calculating overtime, "and discretionary bonuses are not"); *id.* at *9 (granting summary judgment as to section 201–203 claim to the extent it depended on the failure to include discretionary bonuses into the calculation of employee's overtime pay). Ameris's reliance on *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1133 (C.D. Cal. 2011) is similarly inapplicable, because, as Ameris actually acknowledges in its motion, the case again involved whether discretionary bonuses should be excluded "from regular rate of pay for computing overtime." Mot. at 15.

Next, Ameris blatantly misrepresents *Smith v. Level 3 Commc'ns Inc.*, 2015 WL 833614, at *2 (N.D. Cal. Feb. 24, 2015) by claiming, again through a

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9

-9-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

parenthetical, that the court held that "discretionary bonuses are not wages due upon termination under Labor Code § 200." Mot. at 15. In *Smith*, there was no analysis or discussion of whether "discretionary" bonuses constitute wages that must be paid at the time of termination under sections 201–203. 2015 WL 833614, at *2–3. Instead, the issue was whether an employee's commissions had been "earned" at the time of termination, not whether they were "discretionary." *Id.* ("Plaintiff's amended complaint alleges sufficient facts to make out a plausible claim that the $30,000 in banked commissions constituted earned wages, that defendant owed her these commissions when defendant terminated her, and that defendant failed to pay her these wages."). Finally, Ameris creatively cites to *NLRB v. Electro Vector, Inc.*, 539 F.2d 35, 37–38 (9th Cir. 1976) to claim, in a parenthetical, that the court held that "discretionary bonuses are not earned wages." Mot. at 15. Ameris fails to note that the case has nothing to do with section 201 or 203, and that it instead involved whether a company's failure to pay out a discretionary "year-end" bonus violated the National Labor Relations Act (governing collective bargaining agreements with unions). *See Electro Vector*, 539 F.2d at 37.

Accordingly, Ameris is wrong in arguing that to the extent the LTIP Cash Awards were discretionary as to Byrne (they were not), Ameris did not have to pay them at the time of termination. This is a bold misrepresentation, and Ameris is not entitled to judgment as a matter of law.

**(b)    As a Matter of Law, Byrne's Acceptance of the 2022 LTIP Cash Award Payment Does Not Bar His Claims**

Next, Ameris incorrectly argues that Byrne's initial acceptance of his 2022 LTIP payment (before he learned the payment was deficient) and, relatedly, the LTIP's language that "the Committee's decisions are 'final and binding'" (Mot. at 17) somehow bar his wage claim as it pertains to 2022.[2] This argument fails on

---

[2]    Notably, Ameris does not make this argument as to 2023 or 2024.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4935-5387-5337.9                                    -10-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

1 multiple grounds.

2 First, Ameris's assertion that Byrne's initial acceptance of the 2022 LTIP

3 payment and the "final and binding" language foreclose his right to receive the full

4 amount he is owed is contrary to California law. Lab. Code § 206.5 provides that

5 "[a]n employer shall not require the execution of a release of a claim or right on

6 account of wages due, or to become due, or made as an advance on wages to be

7 earned, unless payment of those wages has been made. A release required or

8 executed in violation of the provisions of this section shall be null and void as

9 between the employer and the employee." Lab. Code § 206.5. Applied here, an

10 employer cannot withhold wages owed to an employee because that employee

11 "accepted" the initial payment and did not immediately identify and dispute the

12 amount nor because the employee at some point—before learning that the payment

13 was deficient—agreed that determinations about the payments amount would be

14 "final and binding."

15 Labor Code § 219 further emphasizes this point by prohibiting "an employer

16 and employee from agreeing, even voluntarily, to circumvent provisions of article I

17 (consisting of §§ 200–243) of the Labor Code." *Schachter*, 47 Cal. 4th at 619; Lab.

18 Code § 219 ("Nothing in this article… can in any way be contravened or set aside

19 by private agreement, whether written, oral, or implied."). Thus, even if Byrne

20 receiving the 2022 LTIP payment could be construed as acceptance of the same,

21 section 219 would nullify any such agreement. Byrne is thus entitled to all earned

22 wages upon termination, including those later discovered in the context of

23 identifying the 2023 LTIP miscalculations.[3]

24 Second, it is well settled that "[t]o establish waiver under generally applicable

25 contract law, the party opposing enforcement of a contractual agreement must prove

26 by clear and convincing evidence that the waiving party knew of the contractual

27 _____

28 [3]  If Ameris's position were to be accepted, it would foreclose nearly all wage claims in which an employee accepts a paycheck from an employer.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4935-5387-5337.9                    -11-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

right and intentionally relinquished or abandoned it." *Quach v. California Com. Club, Inc.* 16 Cal. 5th 562, 584 (2024). Here, at a minimum, there are genuine disputes of fact as to whether Byrne "knowingly" and "intentionally" waived his rights to full payments under the LTIP. At the time of payment, Ameris certified that the 2022 LTIP performance threshold had been met and paid LTIP compensation accordingly. (SGI 37, 39.) Byrne accepted that payment based on Ameris's certification and had no reason at that time to believe Ameris had incorrectly conducted its calculations. (SGI 141.) Accordingly, whether Byrne knowingly and intentionally intended to waive any contractual rights by merely accepting payment cannot be resolved on summary judgment. *See hiQ Labs, Inc. v. LinkedIn Corporation*, 639 F. Supp. 3d 944, 963 (N.D. Cal. 2022) (contractual waiver is ordinarily a question of fact that turns on "the intention of the party who allegedly relinquished the known legal right.").

Accordingly, Byrne's acceptance of the 2022 LTIP payment does not bar his claims regarding Ameris's LTIP calculations for that year. At most, Ameris's waiver theory raises disputed factual issues that must be resolved at trial.

### 2.    Triable Issues of Fact Also Preclude Summary Judgment

#### (a)    Disputed Facts Exist as to Whether the LTIP Cash Awards were "Discretionary"

Next, even if Ameris were correct that the "discretionary" versus "non-discretionary" nature of a bonus mattered for purposes of sections 201–203, summary judgment should still be denied because there are disputes of fact as to whether the LTIP Cash Awards, as available to Byrne, were discretionary. There are genuine disputes over whether Byrne and Ameris agreed that, as part of Byrne's negotiated compensation, LTIP payments were *guaranteed* to Byrne whenever EBT thresholds were met. (SGI 39.) Indeed, Ameris's effort to recharacterize the LTIP as a purely discretionary bonus does not square with how the LTIP was negotiated, documented, or implemented with respect to Byrne. (SGI 7, 122–127, 143.) As to

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9                    -12-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

Byrne, LTIP participation was not an optional benefit or a discretionary afterthought—it was a component of the compensation package he negotiated in connection with the Balboa acquisition. (*Id.*)

Section 3 of Byrne's Employment Agreement sets forth six categories of "Compensation and Benefits," including Base Salary, Bonus, and Incentive Program. (SGI 28, 31–32, 125.) The Incentive Program is addressed separately in Section 3.3, which provides that "[c]oncurrent with the Start Date, the Company has established a cash bonus long term incentive program (the 'LTIP') and the Executive is expected to participate in the LTIP." (SGI 144.) The Agreement then expressly distinguishes the LTIP from the separate "Bonus" program, stating that the two are "separate and distinct compensation programs." (SGI 145.) That language reflects a negotiated compensation structure, not a discretionary or spot bonus. (SGI 144–146.)

The context of Balboa's acquisition further confirms this point. Ameris sought to retain Byrne as Chief Executive Officer of the Balboa Division and to align his incentives with Balboa's post-acquisition performance. (SGI 124.) The LTIP was discussed and implemented for precisely that purpose. (SGI 124–125, 127.) Consistent with the Plan's terms, LTIP payments were contingent on the achievement of defined performance thresholds and, of course, were only guaranteed if performance metrics were met. (SGI 16, 17, 147.) But that understanding does not transform the LTIP into a discretionary bonus. It reflects the basic premise of a performance-based incentive: payment turns on results, not on the employer's later grace.

Moreover, not only was Byrne's annual participation in the LTIP guaranteed (SGI 144), so was his percentage of the available LTIP pool (SGI 39). Byrne negotiated, as part of the acquisition and his employment, that each period that performance metrics were met, Byrne would receive "62.54%" of the total LTIP pool. (SGI 39.)

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9

-13-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

1    Accordingly, Ameris's attempt to categorize Byrne's LTIP Cash Awards as

2    mere "discretionary bonuses" ignores both the structure of the Employment

3    Agreement and the realities of the deal Ameris struck with Byrne. (SGI 124–127.)

4    Therefore, the Agreement and the extrinsic evidence about Byrne's compensation

5    create triable issues of fact as to whether LTIP participation was a guaranteed

6    component of his compensation. (SGI 39, 124–127, 148.) Those factual disputes

7    preclude summary judgment. *See Barlow v. Ground*, 943 F.2d 1132, 1134 (9th Cir.

8    1991) (holding that when the non-moving party presents evidence on which a

9    reasonable jury could resolve a material factual issue in its favor, summary

10    judgment must be denied).

11          **(b)    Disputed Facts Exist as to Whether there was a "Fixed**
12                 **Allocation Formula" for Determining Byrne's LTIP**
                   **Cash Awards**

13    For the same reasons, disputed facts also exist as to whether there was a

14    "fixed allocation formula" for determining Byrne's LTIP Cash Award each year. In

15    its motion, Ameris argues that it is undisputed there was no "fixed allocation

16    formula" applicable to Byrne or anyone else, and as a result Byrne cannot

17    demonstrate that he earned a specific amount from the LTIP Pool, or satisfy the

18    ascertainability requirement under Labor Code section 200." Mot. at 16. But this is

19    wrong.

20    The evidence reflects that Byrne's LTIP percentage allocation was established

21    and agreed upon in connection with Ameris's acquisition of Balboa Capital. (SGI

22    39.) Byrne negotiated and was guaranteed a 62.54% allocation of the LTIP pool for

23    each year in which the applicable performance threshold was met. (*Id.*) Byrne's

24    fixed allocation is supported by deposition testimony, identical percentage

25    allocations attributed to Byrne in the 2022 and 2023 LTIP workbooks, Byrne's and

26    Rasmussen's sworn declarations, and contemporaneous email communications with

27    Ameris personnel confirming fixed percentage allocations for other Balboa

28    executives as well. (*Id.*)

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9                    -14-                    Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

1       Because Byrne's allocation—62.54% of an LTIP pool—was fixed by a

2  specific, individualized calculation, it was "ascertainable" for purposes of Labor

3  Code section 200. *See Wentzo v. Signavio, Inc.*, No. CV 21-09968 TJH (JCX), 2024

4  WL 3191228, at *8 (C.D. Cal. Apr. 29, 2024) (incentive compensation constitutes

5  earned wages where its value is "ascertainable at the time [it is] granted").

6             **(c)**       **Disputes of Fact Exist as to Whether Ameris Properly**

7                          **Calculated EBT and thus Cash Awards were "Earned"**

8       Disputes of fact also exist as to whether Ameris properly calculated EBT.

9  Ameris argues in its motion that "[e]ven if an LTIP Cash Award, once earned,

10  qualifies as wages, Byrne's claim fails because there is no evidence that any earned

11  amounts remained unpaid at the time of termination." Mot. at 16. But Ameris fails

12  to meet its burden to establish this as a point that is undisputed, as this issue is rife

13  with disputed material facts, including how EBT was calculated and whether

14  Ameris's methodology complied with the LTIP's terms. (SGI 23, 41–45, 47–50, 57–

15  63, 70, 74.) Indeed, this is the key issue on which Byrne's and Ameris's experts

16  offer differing opinions. (SGI 19, 20, 89, 119, 134–135, 152–153.)

17       *First*, the parties dispute whether Ameris applied the correct framework for

18  calculating EBT under the LTIP. (SGI 23, 47.) The LTIP measures performance

19  using "Actual Earnings Before Tax" as calculated under the Pioneer 1Q21

20  Operating Model, subject to a limited number of defined assumptions. (SGI 23,

21  120.) Only one of those assumptions refers to GAAP methodology, and it applies to

22  initial direct costs. (SGI 21–22, 134, 152.) The remaining assumptions do not

23  reference GAAP. (*Id.*) The LTIP also states that its general premise is to "materially

24  follow past practice," meaning Balboa's historical practices before the Ameris

25  acquisition. (SGI 23, 135.) This matters because Byrne contends that, in 2023,

26  Ameris incorrectly applied GAAP broadly across the LTIP calculation rather than

27  limiting GAAP to the specific area identified in the Plan. (SGI 19, 21–22, 47.)

28  Ameris, on the other hand, reads the LTIP to require a global application of GAAP

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9                -15-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

when calculating EBT under the LTIP. (SGI 19, 47.) Thus, whether Ameris's approach complies with the LTIP's structure and assumptions is a factual dispute. (SGI, 23, 11, 135.)

*Second*, there is a factual dispute over whether Ameris's 2023 methodology materially departed from Balboa's past practices. (SGI 50–56, 61–70.) Byrne testified that Balboa historically evaluated performance for incentive purposes using internal operating metrics that reflected the long-term economics of its equipment leasing business, not consolidated GAAP financial reporting prepared for external audiences. (SGI 119.) Ameris's LTIP calculation methodology applied GAAP accounting treatments, which differed from Balboa's historical practices and reduced Earnings Before Tax for LTIP purposes. (SGI 150.) Ameris disputes Byrne's interpretation and contends its calculations were proper. (SGI 50–56, 61–70.) Resolving this involves weighing competing evidence and credibility determinations, which cannot be done on summary judgment. (*Id.*)

For these reasons, triable issues of fact exist as to whether Ameris properly calculated EBT and whether the LTIP performance threshold was satisfied.

### (d) Disputed Facts Exist as to Whether Ameris's Conduct was "Willful" under Labor Code § 203

Finally, Ameris argues that even if it fails on any of its other arguments, at a minimum summary judgment should be granted on Byrne's claim for waiting time penalties under Labor Code § 203 because Ameris denied Cash Award payments to Byrne at the time of his termination "in good faith," therefore negating a finding of "willfulness." Mot. at 17. This is wrong.[4]

"A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when

---

[4] Moreover, and importantly, regardless of whether Ameris is correct, this argument only pertains to Byrne's claim for "waiting time penalties" under **Labor Code § 203** and does <u>not</u> apply to his claim to recoup the amount of his unpaid LTIP Cash Awards under **§ 201**.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9                                              -16-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

1  those wages are due." *Naranjo v. Spectrum Sec. Servs., Inc*., 88 Cal. App. 5th 937,

2  944, (2023). "However, a good faith dispute that any wages are due will preclude

3  imposition of waiting time penalties under Section 203." *Id*. A purported "good faith

4  dispute" will not defeat willfulness where the employer's position is unsupported by

5  any evidence, rests on unreasonable interpretations, or is asserted despite awareness

6  of contrary facts. *Id*. at 945.

7      Here, Ameris does not argue that the its failure to pay was not a deliberate act.

8  *See* Mot. at 18–19. Instead, Ameris relies on section 203's "good-faith dispute"

9  defense by asserting that it "thoroughly reviewed Byrne's concerns, swiftly

10  addressed any alleged errors, and explained why they were unfounded." Mot. at 19.

11  But internal communications between Ameris's executives create triable issues of

12  fact as to whether they knowingly miscalculated the LTIP in contravention of the

13  Plan's plain language, raising serious doubts as to how 'thorough' Ameris's

14  investigation of Byrne's complaints really was. *See Diaz v. Grill Concepts Servs.,*

15  *Inc*., 23 Cal. App. 5th 859, 869 (2018) (affirming that a failure to "follow through

16  properly on its investigation" can demonstrate evidence of willfulness).

17      The record reflects that Ameris withheld Cash Award payments while fully

18  aware that Byrne disputed both the calculation methodology and the resulting

19  conclusion that no LTIP pool existed. (SGI. 41–45, 47–50, 57–63.) Byrne raised

20  concerns about Ameris's LTIP calculations repeatedly and over an extended period

21  of time. (SGI 36, 47.) Those concerns remained unresolved, yet Ameris continued to

22  apply the challenged methodology and to withhold payment without certifying

23  performance under its unsupported interpretation of the Plan. (SGI 15, 11, 47, 70.)

24  Indeed, even after Byrne later challenged Ameris's interpretation of how EBT

25  should be calculated under the Plan, Ameris, fully aware that its approach was

26  contested, continued to deny payments. (SGI 19, 47–60, 61, 70.) On this record, a

27  reasonable jury could conclude that Ameris made a conscious decision to withhold

28  compensation it understood might be owed under the LTIP while advancing a

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

4935-5387-5337.9                                                    -17-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

contested interpretation of the Plan's performance framework. Summary judgment should therefore be denied. *See In re Taco Bell Wage & Hour Actions*, 2011 WL 4479730, at \*5 (E.D. Cal. Sept. 26, 2011) ("Willfulness raises an inherently fact intensive inquiry focusing on state of mind and surrounding circumstances.").

**B.    Ameris Is Not Entitled To Summary Judgment On Section 1102.5**

Next, Ameris is not entitled to summary judgment on Byrne's Second Cause of Action for whistleblower retaliation under Labor Code § 1102.5(b).[5] Section 1102.5 prohibits retaliation against employees who disclose information they reasonably believe "discloses a violation of state or federal" law to a person "with authority over" them. *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 709 (2022). The statute "reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation." *Id.*

Here, summary judgment cannot be granted because triable issues of fact exist whether Byrne's protected activity contributed to his termination and whether Ameris terminated Byrne for legitimate, independent reasons. Additionally, independent of any disputed fact, Ameris's Motion must be denied as a matter of law because Byrne engaged in protected activity by consistently disclosing Ameris's failure to pay earned wages that ultimately resulted in his termination.

**1.    Triable Issues of Fact Exist on the Section 1102.5 Claim Because it is Disputed Whether Protected Activity was a "Contributing Factor" for Byrne's Termination**

The record presents triable issues of disputed facts as to whether Byrne's protected activity was a contributing factor in Ameris's decision to terminate his employment. Under section 1102.5, a plaintiff need not prove that his or her protected activity was the sole or even primary reason for his termination. *Lawson*, 12 Cal. 5th at 712. Instead, a plaintiff need only show that protected activity was a "contributing factor" to an adverse employment action. *Id.* The inquiry is not

[5] Ameris also raises arguments about section 1102.5(c); however, Byrne's Complaint is not based on that subdivision.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4935-5387-5337.9                                                    -18-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

1  whether the disclosed legal violation ultimately occurred, but whether the employee

2  "reasonably believed" one had occurred. *Killgore v. SpecPro Professional Services,*

3  *LLC,* 51 F.4th 973, 988 (9th Cir. 2022); Lab. Code § 1102.5(b). Here, disputed facts

4  exist as to whether Byrne raising complaints to Ameris was a "contributing factor"

5  for his termination.

6      Beginning in 2023 and continuing into 2024, Byrne repeatedly raised

7  concerns about Ameris's LTIP calculations and the resulting failure to pay

8  compensation he believed had been earned under the Plan. (SGI 36, 44–50.) Those

9  concerns remained unresolved. (SGI 42–61.) As the LTIP dispute persisted, Byrne's

10  working relationship with Ameris leadership deteriorated, particularly with respect

11  to autonomy and unresolved compensation issues. (SGI 27, 36, 47–50.)

12      In 2024, Ameris terminated Byrne's employment. (SGI 112.) The termination

13  followed Byrne's sustained efforts to challenge Ameris's LTIP methodology and to

14  secure payment of compensation he believed was owed under the Plan. (SGI 74–76,

15  90–94, 101–109.) Although Ameris has offered various explanations for the

16  termination, the timing and sequence of events permit a reasonable inference that

17  Byrne's complaints of unpaid compensation were a contributing factor in that

18  decision. (SGI 36, 47–50, 74–76, 101–109.) *See, e.g.*, *Dowell v. Contra Costa*

19  *County,* 928 F.Supp.2d 1137, 1156 (N.D. Cal. 2013) ("Causation may be inferred

20  from circumstantial evidence, including 'the employer's knowledge that the

21  [employee] engaged in protected activities and the proximity in time between the

22  protected action and allegedly retaliatory employment decision.'".)

23      Moreover, under section 1102.5, if a plaintiff satisfies his or her burden of

24  showing that the protected activity at issue was a contributing factor for their

25  termination—which, as shown above, Byrne will be able to do at trial—the burden

26  shifts to the employer to prove by clear and convincing evidence that it would have

27  taken the same action "for legitimate, independent reasons" even absent the

28  protected activity. *Lawson*, 12 Cal. 5th at 712. Whether the defendant can meet this

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9                    -19-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

1  heightened burden presents classic questions of intent, motive, and credibility—

2  issues that ordinarily cannot be resolved on summary judgment. *See Harris v.*

3  *Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including

4  questions of intent, should be left to the jury."); *Volland v. Mobile Mini, Inc.*, WL

5  2898864 at *3 (D. Ariz., July 16, 2012) (court denied summary judgment in an

6  employee discrimination case, considering the importance of "zealously guarding an

7  employee's right to [a] full trial" "[b]ecause credibility determinations and motive

8  are particularly important considerations[.]")

9       Here, at the time of Byrne's termination, Ameris asserted that it had

10  terminated Byrne "without cause" and offered to maintain Byrne's eligibility to

11  participate in the LTIP, despite no longer being employed with the bank. (SGI 113).

12  Yet now that the stated reason for Byrne's termination no longer suits Ameris's

13  litigation needs, it attempts to retroactively claim that it had "legitimate,

14  independent reasons [to terminate Byrne], regardless of any LTIP calculation

15  complaints." Mot. at 24. Ameris's oscillating excuses for terminating Byrne alone

16  establish the existence of a disputed material fact sufficient to defeat summary

17  judgment. *See Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 569 (9th Cir.

18  2004) (affirming that "[w]hen a company, at different times, gives different and

19  arguably inconsistent explanations [regarding its reasons for terminating an

20  employee], a jury may infer that the articulated reasons are pretextual.").

21       Due to Ameris's inconsistency, a jury may reasonably infer that Ameris's

22  vaguely articulated "independent reasons" for terminating Byrne's employment are

23  nothing but pretext, rendering summary judgment inappropriate. Accordingly,

24  Ameris's motivations for terminating Byrne remain in dispute, precluding summary

25  judgment before trial.

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4935-5387-5337.9                    -20-                    Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

## 2. Ameris is not Entitled to Judgment on the Section 1102.5 Claim as a Matter of Law Because Byrne Engaged in Protected Activity by Disclosing What He Had Reasonable Cause to Believe was a Violation of California Labor Law

Ameris is also wrong on the law. First, Ameris incorrectly argues that Byrne did not engage in protected activity. Mot. at 20. This is wrong. California labor law protects employees from retaliation when they disclose information that they have reasonable cause to believe "discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Lab. Code § 1102.5 (b). An employee engages in protected activity when he discloses information based on a reasonably grounded belief that the employer's conduct may violate the law. *Ross v. County of Riverside*, 36 Cal. App. 5th 580, 592 (2019).

"To have a reasonably based suspicion of illegal activity, the employee must be able to point to some legal foundation for his suspicion—some statute, rule or regulation which may have been violated by the conduct he disclosed." *Id*. The employee need not prove an actual violation or identify the precise statute by name. *Killgore*, 51 F.4th at 988 ("the relevant inquiry is not whether the conduct 'actually violated' any specific statute or regulation, but whether the plaintiff '*reasonably believed* that there was a violation[.]'.") Whether the employee's belief was reasonable "is generally a question of fact to be resolved by a jury." *Edgerly v. City of Oakland*, 211 Cal. App. 4th 1191, 1206 (2012).

Here, Byrne repeatedly raised concerns to Ameris leadership that the company was ***failing to pay compensation he believed had been earned*** under the LTIP. (SGI 44–50, 74–76.) Yet Ameris attempts to reframe Byrne's complaints as mere "accounting disputes" concerning LTIP calculations or past practices. (SGI 47, 43.) Ameris then cites to *Fitzgerald v. EL Dorado Cnty.*, 94 F Supp. 3d 1155, 1172 (E.D. Cal. 2015) and *Love v. Motion Indus., Inc.*, 309 F. Supp. 2d 1128, 1135 (N.D. Cal. 2004) as analogous authority supporting the argument that that Byrne did not engage in protected activity because he had no reasonable cause to believe that his

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4935-5387-5337.9                                                    -21-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

1    complaints of the LTIP calculation constituted violation of a statute, regulation, or

2    other law. Mot. at 20. This is misguided.

3        In *Fitzgerald*, the court found that the "[p]laintiff present[ed] sufficient

4    evidence for a reasonable jury to find that he opposed the rotation policy because he

5    feared potential age discrimination. Because age discrimination is prohibited under

6    FEHA, Plaintiff's allegations, taken as true, provide sufficient evidence to show he

7    was engaged in a protected activity." *Fitzgerald* 94 F Supp. 3d at 1173. Similarly,

8    Byrne's insistence that Ameris accurately calculate the LTIP because he believed

9    Ameris was withholding wages in violation of California labor law is sufficient to

10   establish Byrne engaged in protected activity. And *Love*, 309 F. Supp. 2d at 1135 is

11   clearly distinguishable because in that case, the court found that the conduct of

12   which the plaintiff complained merely involved employee safety and was not tied to

13   any statute or other law at all. (Court stating "Plaintiff does not cite any statute, rule,

14   or regulation that may have been violated by the disclosed conduct. Rather, he

15   argues simply that he reasonably believed that the activity violated some unnamed

16   statute, rule, or regulation. … Plaintiff's silence is telling and indicates a lack of any

17   foundation for the reasonableness of his belief.") In stark contrast, complaining

18   about unpaid wages is clearly tied to the Labor Code, including section 200.

19       Ameris then cites to *La v. San Mateo Cnty. Transit Dist.* No. 14-CV-01768-

20   WHO, 2014 WL 4632224, at *1 (N.D. Cal. Sept. 16, 2014) to argue that "GAAP

21   regulations do not equate to state or federal statutory or regulatory law." Ameris's

22   argument is misleading because it misstates the nature of Byrne's complaints. (SGI

23   44–50, 74–76.) Byrne did not complain simply that Ameris applied GAAP

24   incorrectly in the abstract. (SGI 19, 21–23.) He complained that Ameris's approach

25   resulted in the denial of earned compensation under the governing plan—again,

26   resulting in the underpayment of wages. (SGI 36, 44–50, 74–76, 101–109.)

27       Ameris's reliance on *Carter v. Escondido Union High Sch. Dist.* and *Patten v.*

28   *Grant Joint Union High Sch. Dist.* is likewise unavailing as both are distinguishable

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

4935-5387-5337.9                    -22-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

because none of the disclosures at issue in either case alleged disclosures of the employer's wrongdoing that could form the basis of a retaliation claim. *See Carter*, 148 Cal. App. 4th 922, 934–35 (2007) (holding that complaints about a football coach recommending a protein shake to a student were not actionable bases for whistleblower retaliation); *Patten*, 134 Cal. App. 4th 1378, 1385 (2005) (holding that staffing decisions and merely forwarding student complaints about inappropriate conduct of a teacher were not actionable bases for whistleblower retaliation). Lastly, Ameris's reliance on *Hays v. Cnty. of Los Angeles*, 2020 WL 1465826, at *1 (Cal. Ct. App. Mar. 26, 2020) (an unpublished state court decision), again fails because, in that case, the plaintiff "admitted that she did not believe the [defendant's] conduct violated any statute or regulation."). In contrast, Byrne has always maintained the impropriety of Ameris's failure to pay earned wages, conduct that he believed violated, and in reality unambiguously violates, California labor law. (SGI 47–58, 151.) Ameris is not entitled to judgment as a matter of law.

## C.    Ameris is Not Entitled to Summary Judgment on Byrne's Wrongful Termination and UCL Claims

Ameris argues that "[b]ecause [Byrne] cannot establish liability under Labor Code §§ 201–203 or 1102.5, his derivative claims fail as a matter of law." (Mot. at 25). Ameris's argument fails again for two reasons. First, for the reasons explained above, summary judgment should be denied as to Bryne's claims under Labor Code §§ 201–203 and 1102.5(b). Second, and independently, even if summary judgment could be granted as to those claims, Ameris's argument that the Wrongful Termination and UCL claims are purely derivative is wrong.

### 1.    Byrne's Common Law Wrongful Termination Claim is Independently Viable as a Matter of Law

Byrne's Cause of Action for Wrongful Termination is not purely derivative of his retaliation claim under Labor Code § 1102.5(b) given that the two claims have distinct elements. Under § 1102.5(b), a plaintiff first must establish "a prima facie

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9

-23-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

case of retaliation" by showing "(1) the plaintiff engaged in protected activity, (2) the defendant subjected the plaintiff to an adverse employment action, and (3) there is a causal link between the two." *Ross*, 36 Cal. App. 5th at 592. At that point, the employer must "provide a legitimate, nonretaliatory explanation for its acts, and . . . the plaintiff [must] show this explanation is merely a pretext for the retaliation." *Id.* at 591. In contrast, wrongful discharge in violation of public policy requires that a plaintiff establish that (1) there was an employment relationship, (2) the employer discharged the plaintiff, (3) a violation of public policy was a substantial motivating reason or plaintiff's discharge, (4) the plaintiff was harmed, and (5) the discharge was a substantial factor in causing the harm. CACI No. 2430, *Wrongful Discharge in Violation of Public Policy*, (Judicial Council of Cal. Civ. Jury Instructions (2025)). Moreover, and most importantly, while Ameris argues that Byrne's section 1102.5 claim fails because Byrne purportedly did not know that he was complaining about a violation of a statute, regulation, or other law—and again, the requirements are not as stringent as Ameris represents—no such requirement exists at all for a wrongful termination in violation of public policy claim. CACI No. 2430.

### 2. UCL Claim is Independently Viable as a Matter of Law

Similarly, Byrne's UCL claim reaches conduct outside Labor Code §§ 201, 203 and 1102.5, and includes "any unlawful, unfair, or fraudulent business act or practice." *In re Tobacco II Cases,* 46 Cal. 4th 298, 311 (2009) (citing Bus. & Prof. 17200). "Its coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1146 (2000). Moreover, "a practice may be deemed unfair even if not specifically proscribed by some other law." *Id.*

Here, disputed material facts exist as to (1) whether Ameris intentionally altered the formulae used to calculate the LTIP in order to prevent Balboa Division from meeting benchmarks it otherwise would have; (2) whether Ameris made knowingly made false representations to Byrne designed specifically to induce him

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9

-24-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

1  into proceeding with the acquisition of Balboa Capital; and (3) whether Ameris has

2  a broader policy of making representations concerning available compensation to

3  potential business partners (like Byrne), while never intending to honor such

4  representations. Any one of these alleged practices do not depend on Byrne

5  establishing his other Labor Code claims, yet each allegation independently would

6  constitute unfair business practices under the UCL. Because Byrne can establish his

7  UCL claim independent of the alleged Labor Code violations, the UCL claim is not

8  purely derivative and therefore must survive summary judgment.

9  **D.    Ameris is Not Entitled to Summary Judgment on Punitive Damages**

10  Ameris's final argument regarding punitive damages fails because the record

11  contains disputed facts from which a reasonable jury could find "malice, fraud, or

12  oppression" under Civil Code section 3294. *Butte Fire Cases*, 24 Cal. App. 5th

13  1150, 1159 (2018). For purposes of this Opposition, Byrne need only show a triable

14  issue of fact as to whether Ameris had actual knowledge of the risk of harm its

15  conduct created and, in the face of that knowledge, failed to take steps it knew

16  would reduce or eliminate that harm. *Id.* Those facts exist here.

17  The record contains disputed facts from which a reasonable jury could find

18  malice, fraud, or oppression. There is evidence that Ameris induced Byrne to sell

19  Balboa based on representations about the LTIP that were not honored. (SGI 21–

20  127, 129.) Ameris knowingly applied LTIP calculations that departed from the

21  agreed framework and resulted in the denial of compensation Byrne contends was

22  earned under the Plan. (SGI 47–56.) Byrne's termination followed, and was

23  motivated by, his continued insistence that Ameris pay LTIP compensation he

24  believed was owed. (SGI 47–56, 112.) Ameris's assertion that it addressed Byrne's

25  concerns and terminated him for independent reasons turns on disputed factual

26  issues and credibility determinations that cannot be resolved on summary judgment.

27  **IV.    CONCLUSION**

28  Based on the above, this Court should deny Ameris's Motion in its entirety.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-5387-5337.9

-25-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT

1  Dated: January 23, 2026

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
MATTHEW SESSIONS
STACEY A. VILLAGOMEZ
MADISON E. LARSEN


By:_____*/s/ Matthew Sessions*_____
     MATTHEW SESSIONS
     Attorneys for Plaintiff
     PATRICK BYRNE

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4935-5387-5337.9                                    -26-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION TO
DEFENDANT AMERIS BANK'S MOTION FOR
SUMMARY JUDGMENT