MATTHEW SESSIONS (BAR NO. 307098)
STACEY A. VILLAGOMEZ (BAR NO. 317081)
MADISON E. LARSEN (BAR NO. 364953)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
2010 Main Street, 8th Floor
Irvine, California 92614-7214
Phone:  (949) 553-1313
Fax:  (949) 553-8354
E-Mail:  msessions@allenmatkins.com
        svillagomez@allenmatkins.com
        mlarsen@allenmatkins.com

Attorneys for Plaintiff
PATRICK BYRNE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>AMERIS BANK, a Georgia corporation,<br><br>Defendant. | Case No. 8:24-cv-01989-MWC-JDE<br><br>ASSIGNED FOR ALL PURPOSES TO<br>Judge Michelle Williams Court<br><br>**PLAINTIFF PATRICK BYRNE'S STATEMENT OF GENUINE ISSUES AND ADDITIONAL FACTS**<br><br>Date:  February 13, 2026<br>Time:  1:30 p.m.<br>Ctrm:  6A<br><br>Disc. Cutoff:  November 28, 2025<br>Trial Date:    June 1, 2026 |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

**STATEMENT OF GENUINE ISSUES**

Plaintiff Patrick Byrne ("Plaintiff") submits this Statement of Genuine Issues in support of his Opposition to Defendant Ameris Bank's ("Defendant") Motion for Summary Judgment.

Plaintiff disputes Defendant's characterization of the law and facts. Many of Ameris's purported "facts" constitute legal argument, advocacy, or disputed interpretations of evidence rather than undisputed facts suitable for a separate statement. Plaintiff further disputes any asserted fact that depends on contested interpretations of the LTIP, accounting methodology, intent, or credibility.

Plaintiff's responses are based on the cited evidence and should be read in conjunction with Plaintiff's Opposition, supporting declarations, and Compendium of Evidence. Where necessary, Plaintiff includes additional facts demonstrating the existence of triable issues of material fact that preclude summary judgment.

I.   **FIRST CAUSE OF ACTION FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

Plaintiff disputes Defendant's characterization of the law and facts set forth in its Separate Statement. Defendant's prefatory statements constitute legal argument and advocacy rather than statements of undisputed fact, and are therefore improper in a separate statement. Plaintiff's responses to Defendant's asserted facts below are provided solely for purposes of this motion and without adopting Defendant's framing or legal conclusions. Plaintiff's legal arguments are set forth in the Opposition.

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 1. | In 1988, Byrne founded Balboa Capital, an equipment leasing company, where he served as its CEO until December 2021. Defendant Ameris Bank's Compendium of Exhibits in Support of its Motion for | Undisputed. |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | Summary Judgment, or in the Alternative, for Partial Summary Judgment ("COE"), Exh. 1, Deposition of Patrick Byrne Vol. I ("Byrne Dep."), 46:4-14, 47:19-25, 50:6-51:2, 52:22-24. | |
| 2. | Byrne became the sole owner of Balboa Capital around 2015 and retained sole ownership until its sale to Ameris in December 2021. COE, Exh. 1, Byrne Dep., 51:25-52:21, 53:15-18. | Undisputed. |
| 3. | Byrne, who is not a CPA and holds no accounting, credentials, considers himself a visionary entrepreneur. COE, Exh. 1, Byrne Dep., 48:25-49:2, 50:10-13, 53:19-23. | Undisputed. |
| 4. | As CEO of Balboa Capital, Byrne oversaw finance, loan operations, and the company's strategic direction, reporting to no one as it was privately owned. COE, Exh. 1, Byrne Dep., 51:3-18, 53:24-54:4, 54:18-55:23. | Undisputed in part / **Disputed in part.** Byrne served as CEO of Balboa Capital and had broad executive responsibilities in addition to those listed. Although Balboa was privately owned, Byrne did not "report to no one" and was accountable to his employees and team. Further, the cited evidence does not establish that the listed functions constituted the full scope of Byrne's responsibilities as CEO. Sources: Ameris COE, Exh. 1, Byrne Dep. 55:3-8; Declaration of Patrick Byrne ("Byrne Decl.") ¶¶ 2-3. |
| 5. | After extensive negotiations, Ameris and Byrne executed a Stock Purchase Agreement (the "SPA") on December 10, 2021, under which Ameris acquired | Undisputed. |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-3-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
|  | 100% of Balboa Capital for approximately $186 million. COE, Exh. 1, Byrne Dep., 57:8-23, 60:7-61:3, 62:7-10, 67:21-68:6; COE, Exh. 2, Deposition of 30(b)(6) James LaHaise ("30(b)(6) Dep."), 20:20-21:3; Declaration of James LaHaise in support of Defendant's Motion for Summary Judgment, or Alternatively, For Partial Summary Judgment ("LaHaise Decl."), Para. 2. |  |
| 6. | ███████████████████ COE, Exh. 1, Byrne Dep., 63:10-64:9, 66:13-18. | Undisputed. |
| 7. | With counsel, Byrne and Ameris negotiated and agreed to the LTIP and an LTIP Award Agreement (the "Award Agreement"). COE, Exh. 1, Byrne II Dep., 179:8-181:17, 179:17-19, 181:5-17; COE, Exh. 2, 30(b)(6) Dep., 52:17-22; COE, Exh. 3, Balboa Capital Long-Term Cash Incentive Plan ("LTIP"), at AMERIS000221-233. | Undisputed. |
| 8. | The LTIP covered annual performance periods for 2022, 2023, and 2024. COE, Exh. 1, Byrne II Dep., 180:3-6. | Undisputed. |
| 9. | James LaHaise ("LaHaise"), Ameris's Chief Strategy Officer, testified that the LTIP is an incentive program designed to reward participants if they are eligible and approved to be included in payouts under the Plan. | Undisputed in part / **disputed in part**. It is undisputed that LaHaise testified as to his understanding of the LTIP's general purpose. It is disputed that this testimony establishes the operative terms of the LTIP or limits Byrne's rights under the Plan. This is because the LTIP's eligibility criteria, |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-4-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | COE, Exh. 2, 30(b)(6) Dep., 47:24-48:19; COE, Exh. 3, LTIP, AMERIS000221, section 1.1. | performance metrics, calculation methodology, and payment obligations are governed by the written Plan and Award Agreement - not by post hoc characterizations offered in deposition testimony. Sources: Ameris COE, Exh. 3, LTIP § 1.1, AMERIS000221; Ameris COE, Exh. 4, AMERIS000738; Byrne COE, Exh. 59, PLAINTIFF001137-1146; Ameris COE. Exh. 6, AMERIS001562-65; Ameris COE, Exh. 4, AMERIS000738; Byrne Decl. ¶¶ 10-14; Declaration of Jacquie Emert ("Emert Decl."), ¶ 7; Declaration of Robert Rasmussen ("Rasmussen Decl."), ¶¶ 5-9. |
| 10. | Put simply, if the Balboa Division beats its projected profitability targets during 2022, 2023, and 2024, which Bryne was convinced it could do, it could be entitled to additional bonus award payments for each annual performance period. COE, Exh. 2, 30(b)(6) Dep., 48:9-19; LaHaise Decl., Para. 3. | Undisputed. |
| 11. | Ameris's Compensation Committee (the "Committee") has broad authority and discretion to administer the LTIP as expressly delineated in the LTIP, including but not limited to construe and interpret the Plan and apply its provisions, to determine who shall participate in the Plan and the Performance Criteria that will be used to establish the Performance | **Disputed.** Plaintiff disputes that Ameris's Compensation Committee possesses "broad authority and discretion" as characterized, or that such authority is "expressly delineated" in the LTIP. While the LTIP assigns the Committee administrative responsibilities, it also imposes substantive constraints on the |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | Goals, to adjust or modify the calculation of a Performance Goal for a Performance Period, and "to exercise discretion to make any and all other determinations which it determines to be necessary or advisable for the administration of the Plan."<br><br>COE, Exh. 3, LTIP, AMERIS000222-223, sections 2, 3.1, 3.2, 3.4, & 6. | exercise of that authority, including defined performance criteria, a specified Earnings Before Tax-based performance formula, threshold targets, and required post-period calculation and certification of earned Cash Bonus Awards.<br><br>The LTIP does not authorize the Committee to disregard the Plan's express performance framework, retroactively alter earned results, or withhold payment of awards once performance goals are achieved. Consistent with these constraints, Ameris's own expert has acknowledged that once the LTIP pool is established based on performance, it must be paid out, confirming that payment under the LTIP is not discretionary. Ameris's expert further opined that Plaintiff, and not solely Ameris's Compensation Committee, has discretion to administer the LTIP.<br><br>Sources:<br><br>Ameris COE, Exh. 3, LTIP §§ 2, 3.1, 3.2, 3.4, 6-7, AMERIS000222-224;<br><br>Ameris COE, Exh. 1, Byrne II Dep. 179:9-16, 192:22-25;<br><br>Ameris COE. Exh. 6, AMERIS001562-1565;<br><br>Byrne Decl. ¶¶ 10-16, 20, 25-27;<br><br>Rasmussen Decl., ¶¶ 5-9;<br><br>Byrne COE, Exh. 55, AMERIS001187;<br><br>Byrne COE, Exh. 56, AMERIS001198;<br><br>Byrne COE, Exh. 60, AMERIS001202-1206. |
| 12. | The Committee may delegate all or part of its authority and powers under the Plan to one or more employees of Ameris. | Undisputed. |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-6-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | COE, Exh. 3, LTIP, AMERIS000223, section 3.4. | |
| 13. | In this instance, the Committee delegated such authority and powers to LaHaise, who - consistent with the LTIP's "recommendation" - consulted with Byrne regarding the distribution of Cash Bonus Awards under the Plan.<br><br>COE, Exh. 5, Declaration of James LaHaise ("LaHaise Dep."), 139:25-141:17, 145:9-146:2; COE, Exh. 3, LTIP, AMERIS000222, section 3.1. | **Disputed.**<br><br>Defendant relies solely on Mr. LaHaise's testimony to assert that the Compensation Committee "delegated" its authority to him. The LTIP itself does not provide for such a delegation. Rather, Section 3.1 permits the Committee to consult with management and participants regarding bonus allocations, while reserving authority to review, calculate, and certify LTIP performance and awards to the Committee.<br><br>No Committee resolution, written delegation, meeting minutes, or other contemporaneous corporate action reflects any transfer of the Committee's authority to Mr. LaHaise. Consistent with the LTIP's text, the evidence reflects Ameris's consultation with Byrne regarding allocations. It does not reflect a delegation of the Committee's authority under the Plan.<br><br>Sources:<br><br>Ameris COE, Exh. 3, LTIP § 3.1, AMERIS000222;<br><br>Byrne COE, Exh. 29, PLAINTIFF001137-1146;<br><br>Byrne Decl. ¶ 8;<br><br>Rasmussen Decl., ¶¶ 5-9. |
| 14. | All decisions made by the Committee, and its delegates, are final and binding on the Company and the Participants.<br><br>COE, Exh. 3, LTIP, AMERIS000223, section 3.3. | **Disputed.**<br><br>The purported fact misstates the LTIP. Section 3.3 provides that "[a]ll decisions made by the Committee pursuant to the provisions of the Plan shall be final and binding on the Company and the Participants." The LTIP does not state that decisions made by |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-7-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | "the Committee and its delegates" are final and binding, nor does it extend finality to actions taken through informal consultation or outside the Committee's express authority under the Plan.<br><br>Accordingly, the LTIP limits final and binding effect to decisions actually made by the Compensation Committee in accordance with the Plan's provisions, and does not confer finality on actions taken by non-Committee personnel or on interpretations offered outside the Plan's defined decision-making process.<br><br>Sources:<br>Ameris COE, Exh. 3, LTIP § 3.3, AMERIS000223. |
| 15. | After a Performance Period is completed, the Committee (or its delegate) is required to review and certify whether the Performance Goals were achieved and calculate the Cash Bonus Awards based upon the Performance Formula.<br>COE, Exh. 3, LTIP, AMERIS000224, section 7. | **Disputed.**<br>The LTIP requires the Compensation Committee—not a delegate—to review and certify whether the Performance Goals have been achieved and to calculate and certify the amount of any Cash Bonus Awards. Section 7 assigns these responsibilities to the Committee itself and does not authorize delegation of the Committee's certification duties to non-Committee personnel.<br><br>Sources:<br>Ameris COE, Exh. 3, LTIP § 7, AMERIS000224. |
| 16. | No right to a Cash Bonus Award exists until it is paid, and participation in one Performance Period does not guarantee future participation.<br>COE, Exh. 3, LTIP, AMERIS000224-25, section 10.4. | Undisputed / **Clarification provided.**<br>The asserted "fact" is not a factual proposition but a paraphrase of contract language offered to advance a legal interpretation of the LTIP. To the extent Defendant contends that Section 10.4 |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2                                    -8-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | eliminates the obligation to calculate, certify, and pay earned awards under the LTIP's Performance Formula, Plaintiff disputes that legal interpretation. Section 10.4 does not negate the Plan's express requirements governing performance measurement, certification, and payment of earned Cash Bonus Awards. <br><br> Sources: <br><br> Ameris COE, Exh. 3, LTIP § 10.4, AMERIS000224-25; <br><br> Ameris COE, Exh. 1, Byrne II Dep. 192:22-193:1. |
| 17. | Byrne testified he understood that LTIP awards were not guaranteed every year, to the extent that the Balboa Division did not meet the required threshold targets and he acknowledged as much in an email noting, *"Given the high probability of a downturn in the economy in 2023, we encourage the managers to use these [LTIP] bonuses to tamper down expectations for large raises in 2023. We will let everyone know that something like this may be available next year but there are no promises and it would only occur if we are able to drive long-term profitability...."* <br><br> COE, Exh. 6, AMERIS001562-65; COE, Exh. 1, Byrne II Dep., 185:8-188:3; 191:17-192:21, 192:22-193:1. | **Disputed.** <br><br> Byrne testified that LTIP awards were contingent on the Balboa Division meeting defined performance thresholds—not that earned awards were discretionary or optional once those thresholds were achieved. The quoted email addressed managing expectations for potential future bonuses in light of economic uncertainty and does not state that LTIP payments could be withheld if the applicable performance targets were met. <br><br> Sources: <br><br> Ameris COE, Exh. 6, AMERIS001562-65; <br><br> Ameris COE, Exh. 1, Byrne II Dep. 185:8-188:3, 191:17-193:1; <br><br> Byrne Decl. ¶¶ 13, 19; <br><br> Rasmussen Decl., ¶ 9. |
| 18. | Balboa is a division of Ameris, which is a publicly traded company governed by the Sarbanes-Oxley Act of 2002 ("SOX"), a U.S. federal law enacted to protect investors by | Undisputed / **Clarification provided.** <br><br> Ameris is a publicly traded company subject to the Sarbanes-Oxley Act. This fact is not material |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | improving the accuracy and reliability of corporate disclosures.<br><br>Declaration of Nicole Stokes in support of Defendant Ameris Bank's Motion for Summary Judgment, or in the Alternative, For Partial Summary Judgment ("Stokes Decl."), Para. 2; COE, Exh. 7, Deposition of Nicole Stokes ("Stokes Dep."), 98:21-99:2. | to any issue presented on summary judgment. |
| 19. | The Balboa Division is required to follow Generally Accepted Accounting Principles ("GAAP"), the accounting standards that govern the preparation of financial statements.<br><br>Stokes Decl., Para. 3; COE, Exh. 7, Stokes Dep., 109:2-110:7, 110:15-111:12 ["…LTIP calculation is based on earnings before tax, and [Balboa Division is] a part of [Ameris]. And that's part of a publicly traded company that has to follow GAAP]. | **Disputed.**<br><br>The cited evidence does not establish that the Balboa Division was required to calculate LTIP performance in accordance with GAAP. To the extent Ameris contends that Balboa's status as part of a publicly traded company imposes a GAAP requirement on LTIP calculations, that contention is unsupported by the LTIP's text. The LTIP is a contractual incentive plan governed by its own defined assumptions and performance formula, and does not incorporate GAAP except where expressly stated. Plaintiff's forensic accounting expert, Deborah Dickson, testified that incentive plans such as the LTIP are not subject to GAAP.<br><br>Sources:<br><br>Ameris COE, Exh. 3, LTIP §§ 10.1, 10.4, AMERIS000224-25;<br><br>Byrne Decl. ¶¶ 12, 14, 17-20;<br><br>Byrne COE Exh. 61, Deposition of Maryellen Sebold, 39:21-42:12, 45:23-46:6; 48:23-49:11;<br><br>Byrne COE Exh. 62, Deposition of Deborah Dickson, 33:5-34:2, 48:3-50:12; 51:1-52:13, 52:23-53:11. |
| 20. | The LTIP and Award Agreement expressly state that cash bonus | **Disputed.** |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | awards are subject to all applicable laws and required regulatory approvals.<br>COE, Exh. 7, Stokes Dep., 109:2-110:7; COE, Exh. 3, LTIP, AMERIS000224, 229. | This purported fact overstates the terms of the LTIP and Award Agreement. Section 10.1 of the LTIP and Section 9 of the Award Agreement expressly provide, "<u>Compliance with Legal Requirements.</u> This Agreement and the granting of Cash Bonus Awards shall be subject to all applicable federal and state laws, rules and regulations, and to such approvals by any regulatory or governmental agency as may be required."<br><br>Ameris' phrasing is inaccurate because the cited provisions merely require compliance with applicable law and regulatory requirements. Notably, it does not incorporate GAAP, mandate GAAP-based calculations, or otherwise alter the LTIP's express contractual methodology for calculating cash bonus awards.<br><br>Sources:<br>Ameris COE, Exh. 3, LTIP at § 10.1; Award Agreement § 9, AMERIS000224-226;<br>Byrne COE Exh. 60, Deposition of Maryellen Sebold, 39:21-42:12, 45:23-46:6; 48:23-49:11;<br>Byrne COE Exh. 62, Deposition of Deborah Dickson, 33:5-34:2, 48:3-50:12; 51:1-52:13, 52:23-53:11. |
| 21. | Byrne and Ameris also agreed to key assumptions in the LTIP Award Agreement, including that "[i]nitial direct costs will be calculated using GAAP methodology."<br>COE, Exh. 3, LTIP, AMERIS000227-28; COE, Exh. 1, Byrne II Dep., 183:10-23. | Undisputed. |
| 22. | Byrne testified that he understood Initial Direct Costs ("IDC") would | Undisputed. |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | be calculated in accordance with GAAP.<br><br>COE, Exh. 3, LTIP, AMERIS000227-28; COE, Exh. 1, Byrne II Dep., 183:10-184:8. | |
| 23. | The LTIP's primary performance criteria is the Balboa Division's annual Earnings Before Tax ("EBT"), as defined in the Pioneer 1Q21 Operating Model ("Pioneer Model") which includes Balboa Capital's "Historical" (pre-acquisition 2017-2020) and "Projected" (2021-2025) financial data.<br><br>COE, Exh. 3, LTIP, AMERIS000227, 228, 233-34; COE, Exh. 1, Byrne II Dep., 181:13-182:23, 184:9-185:7. | **Disputed.**<br><br>The LTIP Award Agreement measures performance using the Balboa Division's Earnings Before Tax ("EBT") as defined by reference to the Pioneer 1Q21 Operating Model. The Pioneer Model incorporates Balboa's historical, pre-acquisition performance and applies specified contractual assumptions and adjustments to define a modified EBT metric for LTIP purposes. EBT under the LTIP is therefore calculated pursuant to the Plan and Award Agreement's defined framework, not by reference to Balboa's general financial statements or a standalone application of GAAP.<br><br>The LTIP's primary performance criteria is the Balboa Division's annual "adjusted" Earnings Before Tax ("EBT"), which applies the key assumption in the LTIP agreement to the Balboa Division's financials to compute the "adjusted" annual Earnings Before Tax ("EBT") and uses the accounting methodologies that are consistent with the Pioneer 1Q21 Operating Model ("Pioneer Model").<br><br>Sources:<br><br>Ameris COE, Exh. 3, LTIP at §§ 4, 5, 6 & Exs. A-B, AMERIS000227-234;<br><br>Byrne Decl. ¶¶ 8-12;<br><br>Byrne COE Exh. 60, Deposition of Maryellen Sebold, 39:21-42:12, 45:23-46:6; 48:23-49:11; |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | Byrne COE Exh. 62, Deposition of Deborah Dickson, 33:5–34:2, 48:3–50:12; 51:1–52:13, 52:23–53:11. |
| 24. | For each year, 35% of EBT above the threshold is allocated to the LTIP bonus pool.<br><br>COE, Exh. 3, LTIP, AMERIS000227-28. | Undisputed. |
| 25. | On the same day the SPA was executed, Byrne signed an Employment Agreement (the "Agreement") to serve as CEO of the Balboa Division of Ameris from December 10, 2021 until December 31, 2024.<br><br>COE, Exh. 8, AMERIS000238-259; COE, Exh. 1, Byrne Dep., 68:7-9, 68:15-18, 70:18-72:14. | Undisputed. |
| 26. | <br><br><br><br><br>COE, Exh. 8, AMERIS000238. | Undisputed. |
| 27. | As the CEO of the Balboa Division, Byrne reported to LaHaise, marking the first time he had a supervisor since founding Balboa Capital in 1988.<br><br>COE, Exh. 1, Byrne Dep., 72:23-73:4; 72:15-22 ("shall report directly to the chief strategy officer of the company."); COE, Exh. 8, AMERIS000238, section 2.1 ("shall have such responsibilities and duties as the chief strategy officer of the company may assign from time to time"); COE, Exh. 9, AMERIS000235. | Undisputed / **Clarification provided.**<br><br>Byrne was also eligible for a $150,000 quarterly bonus if the Balboa Division met the adjusted EBT targets described in the LTIP Agreement, which applies the LTIP's key assumptions to the Balboa Division's financials and uses accounting methodologies consistent with the Pioneer 1Q21 Operating Model.<br><br>Sources:<br>Ameris COE, Exh. 3, LTIP, AMERIS000221-234; |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | Ameris COE, Exh. 8, Employment Agreement, AMERIS000239. |
| 28. | Pursuant to the Agreement, Byrne's initial base salary in 2022 was ▮▮▮▮▮▮▮, and he received a 3% increase each subsequent year. COE, Exh. 8, AMERIS000239, section 3.1; COE, Exh. 1, Byrne Dep., 73:5-74:7. | Undisputed. |
| 29. | ▮▮▮▮▮▮▮▮▮▮▮▮ COE, Exh. 8, AMERIS000239, section 3.2. | Undisputed. |
| 30. | Although the Balboa Division did not always meet those quarterly targets, Byrne received, personally, a ▮▮▮▮ bonus each quarter he worked at Ameris. COE, Exh. 8, AMERIS000239, section 3.2; COE, Exh. 5, LaHaise Dep., 128:4-129:3, 131:7-134:21; LaHaise Decl., Para. 6. | Undisputed in part / **Disputed in part.** It is undisputed that Byrne received quarterly bonuses pursuant to his Employment Agreement. It is disputed that the Balboa Division did not meet the applicable quarterly performance targets, as Ameris paid Byrne quarterly bonuses tied to adjusted EBT targets under the Pioneer operating model, and the cited evidence does not establish that those targets were not achieved for the quarters in which bonuses were paid. Sources; Byrne Decl. ¶ 6; Ameris COE, Exh. 8, Employment Agreement § 3.2, AMERIS000239. |
| 31. | ▮▮▮▮▮▮▮▮▮▮▮▮ | Undisputed. |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-14-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | ████████████████<br><br>COE, Exh. 10, AMERIS000006-10; COE, Exh. 1, Byrne Dep., 86:20-88:4, 88:11-89:5; COE, Exh. 11, AMERIS000011-16. | |
| 32. | ████████████████<br><br>COE, Exh. 12, AMERIS000035; COE, Exh. 1, Byrne Dep., 89:23-90:23. | Undisputed. |
| 33. | Byrne had a written Job Description and acknowledged in deposition that because Ameris is a highly regulated publicly traded financial institution with legal and regulatory obligations, as CEO of the Balboa Division, he was responsible for setting short-and long-term goals with the executive team, ensuring compliance with applicable laws and regulations, and exercising strong managerial, financial, and communication skills.<br>COE, Exh. 9, AMERIS000235-237; COE, Exh. 1, Byrne Dep. 78:7-22, 80:11-16, 80:18-83:24, 84:4-16. | Undisputed / **Clarification provided.**<br>Byrne acknowledged the existence of a written job description, which by its terms describes the general nature and level of work performed and is not intended to be an exhaustive list of all responsibilities, duties, or skills required for the position.<br><br>Sources:<br>Ameris COE, Exh. 9, AMERIS000235-237 |
| 34. | Ameris maintains anti-retaliation and whistleblower protections policies in its Code of Business Conduct and Ethics, which prohibit retaliation and provide reporting procedures.<br>COE, Exh. 13, AMERIS000420-421; LaHaise Decl., at Paras. 20-21. | Undisputed. |
| 35. | The Code of Business Conduct and Ethics provides a procedure for employees to report concerns, prohibits whistleblower retaliation. | Undisputed. |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | COE, Exh. 13, AMERIS000422-24; LaHaise Decl., at Paras. 20-21; COE, Exh. 14, AMERIS000435; COE, Exh. 15, AMERIS000490-492. | |
| 36. | Byrne acknowledged these policies and was aware of the reporting avenues, and despite raising LTIP calculation methodology related disputes for over a year before his termination, he never complained of retaliation during his employment.<br><br>COE, Exh. 1, Byrne II Dep., 117:6-118:11, 120:1-4; COE, Exh. 16, AMERIS000103-104, 352-367; LaHaise Decl. Paras. 22-23. | **Disputed.**<br><br>The asserted fact improperly combines multiple distinct propositions, including Byrne's awareness of company policies, the substance and timing of his LTIP-related complaints, and the absence of a formal complaint labeled as "retaliation." The cited evidence does not establish that Byrne failed to engage in protected activity, nor does it establish that he was required to characterize his complaints as "retaliation" in order to invoke statutory protections. The absence of a complaint expressly labeled as retaliation is not an affirmative fact and is not dispositive of Byrne's retaliation claim.<br><br>Byrne informed Phil Silva, Jacquie Emert, and Robert Rasmussen that he believed he was being retaliated against. After observing how Ameris handled Rasmussen and other executives, and given the direct involvement of Ameris's most senior leadership, Byrne did not believe it was prudent to raise those concerns further within Ameris.<br><br>Sources:<br><br>Byrne Decl. ¶¶ 24-27.<br><br>Byrne COE, Exh. 64, PLAINTIFF 001531-001533. |
| 37. | At the close of 2022, the 2022 LTIP pool was approximately $9 million.<br><br>COE, Exh. 6, AMERIS001562-65; COE, Exh. 1, Byrne II Dep., | **Undisputed / Clarification provided.**<br><br>The $9 million figure is based on Ameris's calculation. To the extent Ameris purports to apply this |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-16-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| | SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|---|
| | | 187:12-188:18, 195:11-19; COE, Exh. 4, AMERIS000738. | conclusion to Byrne, the fact is disputed. |
| | 38. | At *no time* during Byrne's email communications with Ameris's director of compensation, accounting personnel, or LaHaise regarding the 2022 LTIP pool did Byrne raise any concerns about Ameris's calculation methodology or dispute the 2022 pool amount.<br><br>COE, Exh. 1, Byrne II Dep., 193:4-195:9, 197:19-198:9, 202:23-203:10; COE, Exh. 6, AMERIS001562-65; COE, Exh. 17, AMERIS001780-81 ("The 2022 LTIP payout calculation was final, and payments were distributed per your recommendations. You raised no dispute or request for an adjustment in your disbursement of the 2022 payout.") | **Disputed.**<br><br>The asserted fact overstates the record and improperly characterizes the absence of a specific email objection as an affirmative admission. Byrne raised concerns regarding Ameris's LTIP calculation methodology and treatment of the LTIP pool through multiple communications and discussions, including outside the limited set of emails cited by Defendant. The cited statement that the 2022 LTIP payout calculation was "final" reflects post-distribution administration of the 2022 payout and does not establish that Byrne agreed with Ameris's calculation methodology or waived objections to the manner in which the LTIP pool was calculated.<br><br>Sources:<br><br>Ameris COE, Exh. 3, LTIP, AMERIS000221-234;<br><br>Byrne Decl. ¶¶ 13-14, 28. |
| | 39. | On February 15, 2023, Byrne received and accepted his 2022 LTIP award of over $5.6 million - more than 62% of the total pool available for distribution - per his own recommendation.<br><br>COE, Exh. 6, AMERIS001562-65; COE, Exh. 1, Byrne II Dep., 187:12-188:18, 193:4-195:9, 195:11-19, 197:19-198:9, 202:23-203:10; COE, Exh. 19, AMERIS000068. | **Disputed.**<br><br>It is disputed that Byrne's 2022 LTIP award was made "per his own recommendation," as Byrne's LTIP percentage allocation was established and agreed upon in connection with Ameris's acquisition of Balboa Capital. In particular, Byrne's negotiated percentage allocation, through explicit agreement with Ameris, was a guaranteed 62.54% of the LTIP pool each year that performance thresholds were met. This is confirmed by deposition testimony, the identical allocation included to Byrne in the 2022 and 2023 LTIP workbooks. Byrne's and |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | Rasmussen's sworn declarations, and email communications with Ameris personnel. |
| | | Sources: |
| | | Ameris COE, Exh. 3, LTIP § 3.1, AMERIS000222; |
| | | Ameris COE, Exh. 6, AMERIS001562-65; |
| | | Byrne COE, Exh. 56, AMERIS001198. |
| | | Byrne COE, Exh. 60, AMERIS001202-1206; |
| | | Ameris COE, Exh. 1, Byrne II Dep. 179:8-180:6 ("[we] prenegotiated the splits between the LTIP pool, between myself, Rob Rasmussen, Phil Silva, with the remainder to be distributed to other employees, as it was done in 2023 for the 2022 performance period."); |
| | | Byrne Decl. ¶ 8; |
| | | Rasmussen Decl., ¶¶ 5-9. |
| 40. | Byrne later awarded himself an additional bonus of $12,150.29, which was pulled from another participating employee's 2022 LTIP bonus award allocation. COE, Exh. 18, AMERIS001560-61; COE, Exh. 1, Byrne II Dep., 199:2-200:6 | **Disputed.** Byrne did not unilaterally "award himself" an additional bonus. He redistributed remaining funds in the 2022 LTIP pool as required under the LTIP's distribution framework. Sources: Ameris COE, Exh. 1, Byrne II Dep., 199:8-23; Byrne COE, Exh. 56, AMERIS001198. Byrne COE, Exh. 60, AMERIS001202-1206; Byrne Decl. ¶ 8; Rasmussen Decl., ¶¶ 5-9. |
| 41. | Byrne testified that he made the "decision" on how the LTIP pool was allocated and acknowledged | **Disputed.** This statement mischaracterizes Byrne's testimony and the LTIP |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-18-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| | SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|---|
| | | that no one at Ameris overturned his allocations because "there wasn't the ability, because we had already agreed upon that." COE, Exh. 1, Byrne II Dep., 188:19-191:07, 191:8-16. | allocation process. The distribution of the 2022 LTIP pool was governed by an allocation framework agreed upon in connection with Ameris's acquisition of Balboa Capital, under which fixed percentage allocations were established for certain participants and the remaining portion of the pool was subject to allocation. The referenced adjustment reflected administration of that agreed framework and did not constitute Byrne unilaterally awarding himself additional compensation or reallocating another employee's earned award. Sources: Ameris COE, Exh. 1, Byrne II Dep. 190:7-191:16, 199:2-200:6; Byrne COE, Exh. 56, AMERIS001198. Byrne COE, Exh. 60, AMERIS001202-1206; Byrne Decl. ¶ 8; Rasmussen Decl., ¶¶ 5-9. |
| | 42. | Byrne first raised issues with Ameris's LTIP calculation methodology around mid-2023 and only thereafter attempted to retroactively challenge Ameris's *2022* LTIP calculation and seek additional LTIP money for 2022. COE, Exh. 20, AMERIS001207-08; COE, Exh. 17, AMERIS001780-81. | **Disputed.** This statement mischaracterizes both the timing and nature of Byrne's concerns. Byrne's entitlement to his 2022 LTIP award was governed by the LTIP's contractual terms and the pre-acquisition allocation framework, not by when disputes over calculation methodology were discussed. Byrne's later communications regarding LTIP calculations sought enforcement of the agreed methodology and allocations and do not establish a "retroactive" challenge to the 2022 LTIP pool or a belated attempt to seek additional compensation. Sources: |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-19-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | Ameris COE, Exh. 1, Byrne II Dep. 190:7-191:16; Byrne Decl. ¶¶ 13-14; Rasmussen Decl. ¶¶ 7-9. |
| 43. | All of Byrne's proposed changes and revisions to the LTIP calculations challenge Ameris's established calculation items such as overhead allocations, repossessions, depreciation of pre-acquisition assets, charge-offs, tax benefits, stipulated judgments, and interim rents.<br><br>LaHaise Decl., Para. 9; see also COE, Exh. 20, AMERIS001207-08; COE, Exh. 22, AMERIS001981; COE, Exh. 1, Byrne II Dep., 166:3-4, 200:10-204:14; COE, Exh. 23, AMERIS001661-62; COE, Exh. 24, AMERIS001435-1439; COE, Exh. 25, AMERIS002283; COE, Exh. 26, AMERIS001806-1809; COE, Exh. 27, AMERIS001036-1045; COE, Exh. 49, AMERIS2040-2043; COE, Exh. 28, AMERIS001695; COE, Exh. 29, AMERIS001047; COE, Exh. 30, AMERIS001413; COE, Exh. 34, AMERIS000785; COE, Exh. 17, AMERIS001782; COE, Exh. 37, AMERIS002243-59. | **Disputed.**<br><br>This statement mischaracterizes Byrne's position and the evidence. Byrne does not dispute that the identified categories were considered in connection with LTIP calculations. Rather, he disputes whether Ameris's post-acquisition assumptions, accounting treatments, and methodological adjustments applied to those categories were consistent with the LTIP's defined assumptions, the Pioneer operating model, and the pre-acquisition allocation framework governing LTIP performance.<br><br>Sources:<br><br>Ameris COE, Exh. 1, Byrne II Dep. 200:10-204:14;<br><br>Byrne Decl., ¶¶ 15-20, 23;<br><br>Emert Decl., ¶ 5;<br><br>Ameris COE, Exh. 3, LTIP §§ 4-7, AMERIS000227-234. |
| 44. | In April 2023, Sufhan Majid ("Majid"), Ameris's Director of Accounting, provided Byrne with the Balboa Division's 2023 Q1 LTIP estimate, which showed that the quarterly EBT target *was not met*.<br><br>COE, Exh. 20, AMERIS001207-08. | Undisputed in part / **Disputed in part.**<br><br>It is undisputed that Majid sent Byrne an email in April 2023 attaching a 2023 Q1 LTIP estimate.<br><br>It is disputed that this estimate establishes as an undisputed fact that the Balboa Division failed to meet the quarterly EBT target. The estimate was preliminary, and as reflected in the cited correspondence, Byrne |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-20-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | contemporaneously raised concerns regarding Ameris's LTIP calculation methodology and the figures reflected in that estimate.<br><br>Sources:<br>Ameris COE, Exh. 20, AMERIS001207-08;<br>Ameris COE, Exh. 1, Byrne II Dep. 190:7-191:16;<br>Byrne Decl. ¶¶ 15-21. |
| 45. | Majid was responsible for preparation of the LTIP calculations, which included pulling data from the general ledger via a reporting software, which was sent to Byrne quarterly for review.<br>COE, Exh. 21, Deposition of Sufhan Majid ("Majid Dep."), 21:22-23:8. | Undisputed. |
| 46. | To track the key inputs to the LTIP, Ameris maintained two cost centers for Balboa Division, i.e., cost center 890 tracks components of the LTIP while cost center 891 tracks all other Balboa related financial activity.<br>COE, Exh. 7, Stokes Dep., 76:19-77:11. | Undisputed. |
| 47. | Upon realizing that that the Balboa Division had failed to meet the Q1 estimated target - which threatened Byrne's LTIP payment - in or around June 2023, Byrne began a campaign of incessantly demanding changes to the LTIP calculations that were inconsistent with GAAP, Ameris's accounting controls, and the terms of the LTIP and Award Agreement.<br>LaHaise Decl., at Paras. 9-12, 14-16; see also COE, Exh. 20, AMERIS001207-08; COE, | **Disputed.**<br>This statement is argumentative and improperly characterizes both the evidence and Byrne's conduct. Byrne did not accept that any LTIP performance target had been definitively missed, and the cited materials reflect preliminary estimates that Byrne contemporaneously questioned. Byrne did not engage in any "campaign" or make demands inconsistent with GAAP, Ameris's accounting controls, or the LTIP |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | Exh. 22, AMERIS001981; COE, Exh. 1, Byrne II Dep., 166:3-4, 200:10-204:14; COE, Exh. 23, AMERIS001661-62; COE, Exh. 24, AMERIS001435-1439; COE, Exh. 25, AMERIS002283; COE, Exh. 26, AMERIS001806-1809; COE, Exh. 27, AMERIS001036-1045; COE, Exh. 49, AMERIS2040-2043; COE, Exh. 28, AMERIS001695; COE, Exh. 29, AMERIS001047; COE, Exh. 30, AMERIS001413; COE, Exh. 34, AMERIS000785; COE, Exh. 17, AMERIS001782; COE, Exh. 37, AMERIS002243-59. | and Award Agreement. Rather, Byrne raised good-faith concerns regarding Ameris's LTIP calculation methodology and whether the assumptions and adjustments applied were consistent with the LTIP's contractual terms, the Pioneer operating model, and established past practices.<br><br>Sources:<br><br>Ameris COE, Exh. 1, Byrne II Dep. 200:10-204:14;<br><br>Byrne Decl. ¶¶ 13-20, 23-26;<br><br>Rasmussen Decl. ¶¶ 5-9;<br><br>Emert Decl., ¶ 11;<br><br>Byrne COE, Exh. 61, Deposition of Maryellen Sebold, 39:21-42:12, 45:23-46:6; 48:23-49:11;<br><br>Byrne COE Exh. 62, Deposition of Deborah Dickson, 33:5-34:2, 48:3-50:12; 51:1-52:13, 52:23-53:11; 36:4-38:24, 40:16-42, 44:13-45:23 |
| 48. | On **June 5, 2023**, Byrne e-mailed LaHaise, asserting that Ameris improperly allocated over $3 million in overhead for the Balboa Division in the **2022** LTIP and sought to "add back" those costs, arguing the Division employee salaries in certain departments should be excluded because they reported to Ameris rather than directly to him.<br><br>COE, Exh. 20, AMERIS001207-08. | Undisputed in part / **Disputed in part.**<br><br>It is undisputed that Byrne emailed LaHaise on June 5, 2023 regarding the 2022 LTIP calculation and used the phrase "add back" in reference to certain overhead costs.<br><br>It is disputed that the email reflects a demand inconsistent with the LTIP or improper accounting. As reflected in the email, Byrne's request was grounded in the Purchase and Sale Agreement, the pre-acquisition presentation of Balboa's cost structure, and the historical treatment of those expenses for LTIP performance calculations..<br><br>Sources:<br><br>Ameris COE, Exh. 20, AMERIS001207-08; |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-22-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | Byrne Decl. ¶¶ 12-13, 15-20, 22-23. |
| 49. | He made the same claims for Q1 2023, alleging improper overhead treatment, changes to repossession accounting, and excluded income that caused the LTIP target to be missed. COE, Exh. 20, AMERIS001207-08. | **Disputed.** Byrne did not assert that Ameris's accounting "caused" the LTIP target to be missed. Rather, he questioned whether Ameris's treatment of overhead, repossessions, and income recognition in the Q1 2023 LTIP calculation was consistent with the LTIP's contractual terms and the pre-acquisition assumptions and practices reflected in the Pioneer operating model. Sources: Ameris COE, Exh. 20, AMERIS001207-08; Byrne Decl. ¶¶ 15-19. |
| 50. | Byrne submitted his own revised LTIP calculations for 2022 and Q1 2023 and demanded that he be paid an additional ***$1.1 million*** for 2022 and $150,000 for Q1 2023. COE, Exh. 20, AMERIS001207-08. | Undisputed in part / **Disputed in part.** It is undisputed that Byrne provided revised LTIP calculations for 2022 and Q1 2023 reflecting amounts that would be payable under his proposed methodology. It is disputed that this communication constituted a "demand" for payment, as the email reflects Byrne's effort to explain and support his calculation methodology and to seek resolution regarding the proper application of the LTIP. Sources: Ameris COE, Exh. 20, AMERIS001207-08; Byrne Decl. ¶¶ 13-25. |
| 51. | LaHaise responded the next day, disagreed with Byrne's revisions, and proposed discussing the issue. COE, Exh. 20, AMERIS001207-08. | Undisputed. |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 52. | On July 24, 2023, Byrne e-mailed Majid again claiming errors in the 2022 LTIP calculations and demanding *an additional $1,248,354 in his July 30 payroll,* with no reference to other Plan participants.<br><br>COE, Exh. 22, AMERIS001981; COE, Exh. 1, Byrne II Dep., 200:10-204:14. | Undisputed in part / **Disputed in part.**<br><br>It is undisputed that Byrne emailed Majid on July 24, 2023 regarding revisions to the 2022 LTIP calculation and provided revised calculations reflecting amounts under his proposed methodology. It is disputed that the email constituted a unilateral "demand" for payment or reflected a self-serving request limited to Byrne's own compensation. As reflected in the email, Byrne identified specific calculation issues under the LTIP and sought correction of those calculations consistent with the Plan's methodology. Byrne intended for his advocacy for payment under the LTIP served to benefit all Plan participants, including himself.<br><br>Sources:<br><br>Ameris COE, Exh. 22, AMERIS001981;<br><br>Byrne Decl., ¶¶ 15-24. |
| 53. | Byrne repeated that the salaries for the Balboa Division Accounting, IT and Marketing departments were erroneously included in overhead and should be "added back" to align with the SPA and past practice.<br><br>COE, Exh. 22, AMERIS001981; COE, Exh. 1, Byrne II Dep., 201:3-204:14. | Undisputed in part / **Disputed in part.**<br><br>It is undisputed that Byrne referenced "add backs" relating to certain Accounting, IT, and Marketing salaries in his July 24, 2023 email, based on his interpretation of the SPA and historical practice.<br><br>It is disputed that Byrne was conceding those costs were erroneously included, as opposed to expressing a disagreement over how those expenses should be treated for LTIP calculation purposes under the Plan.<br><br>Sources:<br><br>Ameris COE, Exh. 22, AMERIS001981; |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | Ameris COE, Exh. 1, Byrne II Dep., 201:3-204:14; Byrne Decl., ¶¶ 15-24; Byrne COE, Exh. 62 Declaration of Deborah Dickson, 36:4-38:24, 40:16-42, 44:13-45:23. |
| 54. | That same day, Byrne e-mailed five purported issues with the Q2 2023 LTIP: changes to repossession accounting; revision of Q2 quarterly net charge-offs; adjustment to the provision and formula; and reiterated that the Balboa Division departments overhead should be "added back," and that the depreciation for pre-acquisition assets was wrongly deducted. COE, Exh. 23, AMERIS001661-62. | Undisputed / **Clarification provided.** It is undisputed that on July 24, 2023, Byrne emailed Ameris identifying several items affecting the Q2 2023 LTIP calculation. For clarity, the email reflects Byrne's articulation of methodological issues regarding how those items were treated for LTIP purposes under the Plan and pre-acquisition assumptions, not an admission of accounting error or improper conduct. <u>Sources</u>: Ameris COE, Exh. 23, AMERIS001661-62 Byrne Decl., ¶¶ 15-24. |
| 55. | Byrne argued that based on his own revised calculations, the LTIP targets for Q1 and Q2 2023 were both met and asked that his quarterly bonuses be included in his July 30 payroll. COE, Exh. 23, AMERIS001661-62. | Undisputed. |
| 56. | In the following months, Byrne repeatedly raised the same LTIP issues, seeking accounting changes based on past practices, which were addressed by accounting personnel, Stokes, and LaHaise. COE, Exh. 24, AMERIS001435-1439; COE, Exh. 49, AMERIS2040-2043; COE, Exh. 25, AMERIS002283; COE, | Undisputed. |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-25-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | Exh. 1, Byrne II Dep., 166:3-4; Stokes Decl. 4-7, 9; LaHaise Decl., Paras. 9-11, 14-16. | |
| 57. | David Sparacio ("Sparacio"), Ameris's Controller, explained that Byrne's position on the interim rent issue was incorrect because the LTIP requires GAAP-based calculations, while Byrne had historically used a cash-basis approach.<br><br>COE, Exh. 26, AMERIS001806-1809. | Undisputed in part / **Disputed in part.**<br><br>It is undisputed that Sparacio expressed his view that interim rent under the LTIP should be calculated on a GAAP basis and that this differed from Byrne's position.<br><br>It is disputed that the LTIP required GAAP-based treatment of interim rent or that Byrne's position was incorrect, as the LTIP does not mandate GAAP-based calculations and instead governs LTIP performance based on its defined terms and assumptions.<br><br>Sources:<br><br>Ameris COE, Exh. 3, LTIP, AMERIS000227;<br><br>Ameris COE, Exh. 26, AMERIS001806-1809;<br><br>Byrne Decl., ¶¶ 15-24;<br><br>Byrne COE Exh. 62, Deposition of Deborah Dickson, 33:5-34:2, 48:3-50:12; 51:1-52:13, 52:23-53:11. |
| 58. | Additionally, Majid also told Byrne that his "old method" or "past practices" were not GAAP-compliant, and Sparacio emphasized that Ameris cannot allow business units to set accounting policy, and the accounting department cannot make changes as requested by Byrne during book closing given the established guidance and the conservative nature of the business practices.<br><br>COE, Exh. 27, AMERIS001036-1045. | Undisputed in part / **Disputed in part.**<br><br>It is undisputed that Majid and Sparacio communicated their views regarding GAAP compliance, accounting policy, and the timing of potential changes during the book-closing process.<br><br>It is disputed that these statements establish that Byrne's past practices were non-compliant with GAAP, that the LTIP required GAAP-based treatment of the disputed items, or that Byrne was attempting to set accounting policy. As reflected in the correspondence, the parties |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2                                    -26-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | expressed differing views regarding accounting treatment and the proper application of the LTIP, and no agreement was reached.<br><br>Sources:<br>Ameris COE, Exh. 27, AMERIS001036-1045;<br>Ameris COE, Exh. 3, LTIP at §§ 1.1, 7, AMERIS000227-228;<br>Byrne COE Exh. 62, Deposition of Deborah Dickson, 33:5-34:2, 48:3-50:12; 51:1-52:13, 52:23-53:11; 36:4-38:24, 40:16-42, 44:13-45:23. |
| 59. | Both Stokes and LaHaise carefully reviewed but disagreed with Byrne's proposed changes and adjustments, noting that they reflected incorrect assumptions, were not compliant with GAAP, and rehashed issues previously discussed and **agreed upon** with Byrne.<br>COE, Exh. 24, AMERIS001435 (Stokes stating "I do not agree with these adjustments. Would you like to set up a time next week to discuss?"); COE, Exh. 28, AMERIS001695; COE, Exh. 29, AMERIS001047 (LaHaise stating "Your statement…is wholly inaccurate and quite counterproductive…adjustments to the calculation you have made have been not mutually agreed to by us…."); COE, Exh. 30, AMERIS001413; COE, Exh. 23, AMERIS001661-62; COE, Exh. 24, AMERIS2040- 2043; COE, Exh. 25, AMERIS002282-83; COE, Exh. 7, Stokes Dep., 70:14-77:18, 93:8-19 94:18-95:5, 95:6-100:8 ("…We discovered in the end of '22, beginning of '23 that Balboa Capital had not been following GAAP on the way they accounted for repossessions. And so we made the accounting | Undisputed in part / **Disputed in part.**<br>It is undisputed that Stokes and LaHaise disagreed with Byrne regarding his proposed LTIP calculation adjustments.<br>It is disputed that their disagreement establishes that Byrne's assumptions were incorrect, that his position was not compliant with the LTIP, or that the issues raised had been previously resolved or agreed upon. The cited communications reflect differing views regarding accounting treatment and the proper application of the LTIP's performance assumptions, not an undisputed determination that Byrne's methodology was improper.<br><br>Sources:<br>Ameris COE, Exh. 3, LTIP at §§ 1.1, 7, AMERIS000227-228;<br>Ameris COE, Exh. 24, AMERIS001435; |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | adjustment to follow GAAP, per the agreement that we would follow GAAP. And so that is the adjustment that he is proposing under non-GAAP. And we said we were calculating the LTIP under GAAP, pursuant to the agreement…."). | Ameris COE, Exh. 29, AMERIS001047;<br><br>Byrne Decl., ¶¶ 15-24;<br><br>Byrne COE Exh. 62, Deposition of Deborah Dickson, 33:5-34:2, 48:3-50:12; 51:1-52:13, 52:23-53:11. |
| 60. | Stokes testified that she spoke to Byrne at various times regarding her disagreement with Byrne's requested LTIP adjustments and revisions, and she and LaHaise even flew to California in summer of 2023 to meet with Byrne in person to address these issues.<br><br>COE, Exh. 7, Stokes Dep., 92:22-93:19; 223:18 - 224:24; LaHaise Decl., Para. 16; Stokes Decl., Para. 9; COE, Exh. 30, AMERIS001413. | Undisputed in part / **Disputed in part.**<br><br>It is undisputed that Stokes testified she discussed her disagreement with Byrne regarding proposed LTIP adjustments and that she and LaHaise traveled to California in the summer of 2023 and met with Byrne in person.<br><br>It is disputed that the primary purpose of that visit was to address LTIP issues, or that the in-person discussions resolved the parties' disagreement regarding the proper application of the LTIP. Such meetings were primarily held to address a range of operational, accounting, and performance issues<br><br>Sources:<br><br>Ameris COE, Exh. 7, Stokes Dep. 92:22-93:19, 223:18-224:24;<br><br>LaHaise Decl. ¶ 16;<br><br>Stokes Decl. ¶ 9; COE, Exh. 30, AMERIS001413;<br><br>Byrne Decl., ¶ 21;<br><br>Emert Decl., ¶ 10. |
| 61. | Ultimately, the Balboa Division did not meet the 2023 LTIP EBT, and therefore no funds were allocated to the 2023 LTIP pool.<br><br>COE, Exh. 33, AMERIS000739; COE, Exh. 3, LTIP, AMERIS000221-233. | **Disputed.**<br><br>Byrne disputes that the Balboa Division failed to meet the 2023 LTIP EBT under the methodology and key assumptions required by the LTIP and the past practices as defined in the Pioneer operating model. Byrne further disputes that no funds should have been allocated |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-28-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | to the 2023 LTIP pool, as Ameris's conclusion rests on disputed post-acquisition accounting treatments and calculation assumptions that Byrne consistently challenged as inconsistent with the LTIP and past practice.<br><br>Sources:<br>Ameris COE, Exh. 1, Byrne II Dep. 200:10-204:14;<br>Ameris COE, Exh. 33, AMERIS000739;<br>Byrne Decl., ¶¶ 15-24;<br>Byrne COE, Exh. 62, Deposition of Deborah Dickson, 36:4-38:24, 40:16-42, 44:13-45:23. |
| 62. | On January 10, 2024, after the 2023 books had officially closed, Majid emailed the final 2023 LTIP calculation to Byrne.<br>COE, Exh. 34, AMERIS000786; COE, Exh. 1, Byrne II Dep., 209:20-210:19. | Undisputed. |
| 63. | On January 15, 2024, Byrne repeated his six objections and demanded *$3,037,750*, citing issues with (1) stipulated judgments; (2) depreciation of pre-acquisition assets; (3) Accounting, IT, and Marketing overhead; (4) tax benefits; (5) interim rent; and (6) repossession accounting changes.<br>COE, Exh. 34, AMERIS000785; COE, Exh. 1, Byrne II Dep., 210:20-215:6; 211:9-23, 212:25-213:5. | Undisputed / **Clarification provided.**<br>It is undisputed that on January 15, 2024, Byrne again raised six objections to the LTIP calculations and identified $3,037,750 as the amount reflected under his calculations, based on issues involving stipulated judgments, depreciation, overhead, tax benefits, interim rent, and repossession accounting.<br><br>Sources:<br>Ameris COE, Exh. 34, AMERIS000785;<br>Ameris COE, Exh. 1, Byrne II Dep. 210:20-215:6; 211:9-23, 212:25-213:5. |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-29-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| | SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|---|
| | 64. | In response to the six issues above, Sparacio stated, "once again we in accounting do not have the authority to adjust the LTIP calculation. The adjustments need to be directed to [LaHaise,] so we will take no action on these."<br><br>COE, Exh. 35, AMERIS002151; COE, Exh. 36, AMERIS002155 ("We do not have the authority to change the LTIP calculation so none of these changes will be made.") | Undisputed in part / **Disputed in part.**<br><br>It is undisputed that on January 15, 2024, Byrne raised six objections to Ameris's LTIP calculations and identified $3,037,750 as the amount reflected under his calculations, based on issues involving stipulated judgments, depreciation of pre-acquisition assets, Accounting, IT, and Marketing overhead, tax benefits, interim rent, and repossession accounting. For clarity, Byrne did not "demand" payment, but instead articulated his position regarding the proper application of the LTIP methodology and the resulting calculations.<br><br>Sources:<br><br>Ameris COE, Exh. 35, AMERIS002151;<br><br>Ameris COE, Exh. 36, AMERIS002155. |
| | 65. | On January 29, 2024, Byrne sent *another* email to LaHaise, stating that he revised the *2022* LTIP calculation *again* and now claiming that he was owed $1,457,057.<br><br>COE, Exh. 37, AMERIS002243-59; COE, Exh. 17, AMERIS001782. | Undisputed. |
| | 66. | Byrne testified that the dispute concerned customer "security deposits," which he claimed were accounted for differently than pre-acquisition.<br><br>COE, Exh. 1, Byrne II Dep., 219:10-220:18; Stokes Decl., Para. 9. | Undisputed. |
| | 67. | Two days later, on January 31, 2024, Byrne forwarded all his January LTIP emails to LaHaise, demanding payments based on his recalculations: (1) $2,024,765 for | Undisputed / **Clarification provided.**<br><br>It is undisputed that on January 31, 2024, Byrne forwarded his January |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-30-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | security deposits; (2) $1,457,057 for the 2022 LTIP; and (3) $3,037,750 for the 2023 LTIP.<br><br>COE, Exh. 17, AMERIS001782; COE, Exh. 1, Byrne II Dep., 217:11-220:18. | LTIP-related emails to LaHaise and identified amounts reflected under his recalculations, including $2,024,765 relating to security deposits, $1,457,057 relating to the 2022 LTIP, and $3,037,750 relating to the 2023 LTIP. For clarity, the communication reflected Byrne's articulation of his calculation methodology and resulting figures, not a unilateral demand for payment.<br><br>Sources:<br>Ameris COE, Exh. 17, AMERIS001782;<br>Ameris COE, Exh. 1, Byrne II Dep., 217:15-218:13. |
| 68. | Byrne declined to discuss his disputes by phone, therefore LaHaise emailed him on February 5, 2024, addressing each topic raised in Byrne's January emails in reliance on Stoke's analysis, explaining, in detail, why no additional amounts were owed:<br><br>(1) Security Deposits:<br><br>No compensation is owed, as the SPA's purchase-price adjustment process was followed;<br><br>(2) 2022 LTIP<br><br>Byrne's claimed $3 million in employee overhead are direct operating costs of the Division and these employees preform their daily duties based on direction given by Byrne or a manager within the Division; no LTIP adjustment is warranted;<br><br>The SPA does not impose post-acquisition staffing or reporting requirements;<br><br>The 2022 LTIP was final, paid per Byrne's recommendations, and undisputed at the time; | Undisputed in part / **Disputed in part.**<br><br>It is undisputed that on February 5, 2024, LaHaise sent Byrne an email responding to the LTIP issues Byrne had raised in January 2024.<br><br>It is disputed that Byrne refused to discuss the issues by phone, or that LaHaise's email established that no additional amounts were owed or resolved the parties' disputes regarding the proper application of the LTIP and related agreements.<br><br>Sources:<br>Ameris COE, Exh. 17, AMERIS001780-81;<br>Ameris COE, Exh. 1, Byrne II Dep. 226:10-227:11;<br>Byrne Decl., ¶ 29. |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-31-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | Depreciation of pre-acquisition assets was properly included in the Pioneer Model; no adjustment to the LTIP is warranted. | |
| | (3) 2023 LTIP | |
| | Adjustment for stipulated judgments is accepted; | |
| | No adjustment is warranted for depreciation of pre-acquisition assets or claimed $6.5 million overhead (direct operating costs); | |
| | LTIP is based on EBT and tax impacts are irrelevant; | |
| | The accounting for interim rent changed due to ASC842 and was identified in due diligence; No further adjustment is warranted. | |
| | Adjustment is accepted for one-time change to 120-day charge off. | |
| | COE, Exh. 17, AMERIS001780-81 ("Pat, since you did not wish to discuss these topics via conference call, below is my response to your email addressed me to dated 1/31/24 with a subject: Summary of compensation owed."); COE, Exh. 1, Byrne II Dep., 226:10-227:11; COE, Exh. 34, AMERIS000785-94; COE, Exh. 23, AMERIS001661-62; COE, Exh. 25, AMERIS002282-83; COE, Exh. 7, Stokes Dep., 70:14-77:18; 94:18-100:8; COE, Exh. 24, AMERIS001435-1439; COE, Exh. 49, AMERIS2040-2043. | |
| 69. | While Ameris rejected most of Byrne's incorrect assumptions and miscalculations, it made two adjustments to the 2023 LTIP EBT calculation per Byrne's request. COE, Exh. 17, AMERIS001780-81; COE, Exh. 1, Byrne II Dep., 223:15-21. | Undisputed in part / **Disputed in part.** It is undisputed that Ameris made two adjustments to the 2023 LTIP EBT calculation. It is disputed that Byrne's assumptions or calculations were incorrect, or that Ameris properly rejected the remaining issues, as |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-32-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | Byrne consistently disputed the methodology and assumptions underlying Ameris's LTIP calculations.<br><br>Sources:<br>Ameris COE, Exh. 17, AMERIS001780-81;<br>Ameris COE, Exh. 1, Byrne II Dep. 223:15-21. |
| 70. | However, even with those adjustments, the final 2023 EBT calculation was still below the 2023 LTIP EBT threshold.<br>COE, Exh. 17, AMERIS001780-81. | **Disputed.**<br>Byrne disputes that the final 2023 EBT calculation fell below the 2023 LTIP threshold. Ameris's conclusion rests on disputed assumptions, accounting treatments, and methodological inputs that Byrne consistently challenged as inconsistent with the LTIP's terms, the Pioneer operating model, and pre-acquisition practices.<br><br>Sources:<br>Ameris COE, Exh. 1, Byrne II Dep. 200:10-204:14;<br>Byrne COE, Exh. 57, AMERIS001414. |
| 71. | On March 11, 2024, Byrne e-mailed LaHaise, stating that his position on outstanding LTIP payments "has not changed."<br>COE, Exh. 17, AMERIS001776. | Undisputed. |
| 72. | LaHaise replied, noting nothing had changed from his original response in March and invited Byrne to schedule a discussion.<br>COE, Exh. 17, AMERIS001776. | Undisputed. |
| 73. | Byrne responded that "unless you are presenting an offer then talking about it anymore is a waste of time." | Undisputed. |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | COE, Exh. 17, AMERIS001776. | |
| 74. | LaHaise also emailed on May 6, 2024, confirming Byrne was not owed any additional 2022 or 2023 LTIP payments and that the matter was closed. That same day, Byrne e-mailed LaHaise again, asserting the *Q1 2024* LTIP was miscalculated, repeated previously rejected issues, and requested payment based on his own revisions. COE, Exh. 38, AMERIS001110-1111; LaHaise Decl., Para. 14. | Undisputed in part / **Disputed in part.** It is undisputed that on May 6, 2024, LaHaise and Byrne exchanged emails regarding LTIP calculations, including issues relating to Q1 2024. It is disputed that Byrne was not owed any additional LTIP payments or that the matter was "closed," and it is further disputed that Byrne merely repeated issues that had been resolved, as Byrne continued to challenge Ameris's LTIP methodology and calculations. Sources: Ameris COE, Exh. 38, AMERIS001110-1111; LaHaise Decl. ¶ 14; Byrne Decl., ¶¶ 15-24. |
| 75. | At the time of Byrne's termination in June 2024, the 2024 year-end LTIP pool (if any) had not yet been calculated and it was uncertain whether EBT would exceed the threshold. COE, Exh. 39, AMERIS001792-95; COE, Exh. 3, LTIP, AMERIS000222 ("performance periods"). | **Disputed.** Ameris calculated the 2024 year-end LTIP results and reflected a funded LTIP pool. Under the LTIP's distribution framework, any amounts owed were not due until the following year, and Byrne disputes that his entitlement under the 2024 LTIP was "uncertain" at the time of his termination. Sources: Ameris COE, Exh. 39, AMERIS001792-95; Ameris COE, Exh. 3, LTIP §§ 3.1, 7, AMERIS000222-224; Byrne Decl., ¶¶ 30-31. |
| 76. | In 2023, after realizing that a profit in 2023 was unlikely due to the Balboa Division's anticipated financial performance, Byrne | **Disputed.** This statement is argumentative, speculative, and mischaracterizes the evidence. Byrne disputes that he |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-34-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | became increasingly preoccupied with challenging Ameris's LTIP EBT calculation methodology to revise the numbers so that it would appear the target was met. This preoccupation caused Byrne to lose focus on the actual performance of the Balboa Division, which ultimately suffered, and it failed to meet the year-end target.<br><br>COE, Exh. 33, AMERIS000739; COE, Exh. 3, LTIP, AMERIS000221-233; COE, Exh. 5, LaHaise Dep., 188:6-13; LaHaise Decl., at Para. 11. | "realized" the LTIP target would not be met, that he became "preoccupied" with LTIP issues, or that he sought to revise calculations to make performance "appear" to meet any target. Byrne further disputes that his conduct caused any decline in the Balboa Division's performance or that the Division failed to meet year-end targets due to his actions. The cited materials reflect disagreement over LTIP calculation methodology, not evidence of manipulation, distraction from operations, or causation of any alleged performance decline.<br><br>Sources:<br><br>Ameris COE, Exh. 33, AMERIS000739;<br><br>Ameris COE, Exh. 40, AMERIS000097;<br><br>Ameris COE, Exh. 5, LaHaise Dep., 188:6-13;<br><br>Byrne Decl. ¶¶ 15-24;<br><br>Rasmussen Decl., ¶¶ 12-13. |
| 77. | In his annual performance review for 2023, Byrne's performance issues were formally documented, with substantial constructive feedback from LaHaise.<br><br>LaHaise Decl., at Para. 12. | Undisputed in part / **Disputed in part.**<br><br>It is undisputed that Byrne received a 2023 annual performance review from LaHaise that included feedback.<br><br>It is disputed that the review establishes that Byrne had performance issues or reflects undisputed deficiencies in his performance, as the feedback consisted of LaHaise's subjective assessments and did not document any failure by Byrne to meet established performance goals for 2023.<br><br>Sources:<br><br>LaHaise Decl. ¶ 12;<br><br>Byrne Decl. ¶ 27; |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2                                    -35-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | Rasmussen Decl., ¶¶ 12-13; Ameris COE, Exh. 40, AMERIS000096. |
| 78. | During his employment, Byrne was given annual performance reviews by his direct supervisor, LaHaise. COE, Exh. 40, AMERIS000095-100; COE, Exh. 41, AMERIS000088-92. | Undisputed. |
| 79. | LaHaise noted in Byrne's first (2022) performance review that integrating Balboa Capital, a long-time private company, into a publicly traded financial institution was "challenging." COE, Exh. 41, AMERIS000088-92. | Undisputed. |
| 80. | Likewise, Stokes testified that "it was certainly a difficult relationship [with Byrne]" and "...a progression of difficulty that started along the whole path." COE, Exh. 7, Stokes Dep., 229:20-231:17; 233:24-234:23. | Undisputed in part / **Disputed in part.** It is undisputed that Stokes testified regarding her subjective perception of her working relationship with Byrne, including describing it as "difficult." It is disputed that this testimony establishes deficiencies in Byrne's performance or conduct, as it reflects Stokes's personal impressions rather than objective performance metrics, documented misconduct, or contemporaneous disciplinary findings. Sources: Ameris COE, Exh. 7, Stokes Dep., 229:20-231:17; 233:24-234:23; Rasmussen Decl., ¶¶ 12-13. |
| 81. | The review noted that the Balboa Division did not generate a profit for 2023, and adjusted loan losses totaled approximately ███████ ████████████ which | Undisputed in part / **Disputed in part.** It is undisputed that the 2023 performance review noted that the Balboa Division did not generate a profit in 2023 and referenced |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-36-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | prevented the Balboa Division from exceeding the 2023 LTIP EBT target.<br><br>COE, Exh., AMERIS000097; COE, Exh. 1, Byrne II Dep., 270:6-272:2; COE, Exh. 7, Stokes Dep., 218:14-25; COE, Exh. 47, AMERIS001544-48. | adjusted loan losses of approximately ██████<br><br>It is disputed that these figures establish that the Balboa Division failed to exceed the 2023 LTIP EBT target or that they prevented the LTIP threshold from being met.<br><br>Sources:<br><br>Ameris COE, Exh, 39, AMERIS000097;<br><br>Ameris COE, Exh. 1, Byrne II Dep., 270:6-272:2;<br><br>Ameris COE, Exh. 7, Stokes Dep., 218:14-25;<br><br>Ameris COE, Exh. 47, AMERIS001544-48. |
| 82. | Stokes testified that she was unhappy with the ██████ in charge-offs and confirmed that Byrne, as head of Balboa Capital, was responsible for those losses.<br><br>COE, Exh. 7, Stokes Dep., 218:14-25. | Undisputed in part / **Disputed in part.**<br><br>It is undisputed that Stokes testified regarding her dissatisfaction with the level of charge-offs.<br><br>It is disputed that her testimony establishes that Byrne was responsible for those losses or that the charge-offs were attributable to his conduct.<br><br>Sources:<br><br>Ameris COE, Exh. 7, Stokes Dep., 218:14-25. |
| 83. | LaHaise also observed that Byrne was dissatisfied with the level of autonomy he had in leading the Balboa Division, which contributed to strained relationships with some company leaders.<br><br>COE, Exh. 40, AMERIS000100; COE, Exh. 1, Byrne II Dep., 273:8-275:21; COE, Exh. 2, 30(b)(6) Dep. 168:20-25, 183:23-184:5; COE, Exh. 7, Stokes Dep., 220:2-221:7. | Undisputed in part / **Disputed in part.**<br><br>It is undisputed that LaHaise testified regarding his perception of Byrne's dissatisfaction with his level of autonomy.<br><br>It is disputed that this testimony establishes that Byrne's conduct caused strained relationships or that any such dissatisfaction was improper or outcome-determinative. Further, in Byrne's cited testimony, he explicitly stated '[m]y only |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-37-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | unhappiness was not about the level of my autonomy." Sources: Ameris COE, Exh. 40, AMERIS000100; Ameris COE, Exh. 1, Byrne II Dep. 273:8-275:21. Ameris COE, Exh. 2, 30(b)(6) Dep. 168:20-25, 183:23-184:5; Rasmussen Decl., ¶¶ 12-13; Emert Decl., ¶¶ 11-12. |
| 84. | Despite these issues, LaHaise noted that Ameris hoped Byrne would continue in a long-term leadership role but that he would need to decide whether he wished to do so. COE, Exh. 40, AMERIS000100; COE, Exh. 1, Byrne II Dep., 273:8-275:21; COE, Exh. 2, 30(b)(6) Dep. 133:18-20, 134:24-135:1; COE, Exh. 7, Stokes Dep., 220:2-221:7; COE, Exh. 17, AMERIS001781 ("…To follow up on our conversation during your 2023 performance review, you stated that you may not wish to continue in the role of CEO of the Balboa Capital division. If this is still the case, it will require considerable coordination to assure no impact to the Balboa Capital division's performance. Please confirm back to me your plans for remaining with the company, or not, by 2/08/24.") | Undisputed. |
| 85. | Byrne's professional relationship with his direct supervisor, LaHaise, became strained when Byrne - rather than focusing on the Balboa Division's performance - repeatedly insisted on changing LTIP calculations based on incorrect assumptions, despite Ameris providing reasoning and confirmation that his revisions | **Disputed.** This asserted fact is argumentative and mischaracterizes the evidence. Byrne disputes that he ignored the Balboa Division's performance, "insisted" on changes based on incorrect assumptions, or that his conduct caused strain in his relationship with LaHaise. |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-38-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | were neither GAAP-compliant nor consistent with the terms of the LTIP.<br><br>COE, Exh. 2, 30(b)(6) Dep., 183:23-184:5, 188:9-189:18; COE, Exh. 17, AMERIS001776; COE, Exh. 24, AMERIS001435 (Stokes stating "I do not agree with these adjustments. Would you like to set up a time next week to discuss?)"; COE, Exh. 28, AMERIS001695; COE, Exh. 29, AMERIS001047 (LaHaise stating "Your statement…is wholly inaccurate and quite counterproductive…adjustments to the calculation you have made have been not mutually agreed to by us…."); COE, Exh. 30, AMERIS001413; COE, Exh. 23, AMERIS001661-62; COE, Exh. 25, AMERIS002282-83; COE, Exh. 24, AMERIS2040-2043; COE, Exh. 7, Stokes Dep., 70:14-77:18, 93:8-19, 94:18-95:5, 95:6-100:8 ("…We discovered in the end of '22, beginning of '23 that Balboa Capital had not been following GAAP on the way they accounted for repossessions. And so we made the accounting adjustment to follow GAAP, per the agreement that we would follow GAAP. And so that is the adjustment that he is proposing under non-GAAP. And we said we were calculating the LTIP under GAAP, pursuant to the agreement….") | Byrne raised good-faith questions regarding the LTIP calculation methodology and its consistency with the LTIP's terms. Ameris' disagreement with his position does not render his assumptions incorrect or that his assumptions necessitate being GAAP-compliant. Further, Byrne was consistently focused on the Balboa Division's performance. In Byrne's 2023 performance evaluation by LaHaise, it indicated that Byrne "met expectations" in all categories. LaHaise included comments regarding Byrne's performance, such as "[Byrne] [i]s attentive in all interactions including customers, direct reports and colleagues." And "Pat [Byrne] is an active leader and strives every day to improve the division."<br><br>Sources:<br><br>Ameris COE, Exh. 2, 30(b)(6) Dep. 183:23-184:5;<br><br>Ameris COE, Exh. 40, AMERIS000095-100;<br><br>Byrne Decl., ¶ 27;<br><br>Byrne COE, Exh. 61, Deposition of Maryellen Sebold, 39:21-42:12, 45:23-46:6; 48:23-49:11;<br><br>Byrne COE Exh. 62, Deposition of Deborah Dickson, 33:5-34:2, 48:3-50:12; 51:1-52:13, 52:23-53:11. |
| 86. | LaHaise noted that based on his interactions with Byrne, including their discussions, Byrne's conduct, and his attitude, it became clear to LaHaise that Byrne did not want | Undisputed in part / **Disputed in part.**<br><br>It is undisputed that LaHaise testified regarding his personal |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | to continue in the role of Division CEO. <br><br> COE, Exh. 2, 30(b)(6) Dep., 190:8-11; LaHaise Decl., at Paras. 10-15. | perception based on his interactions with Byrne. <br><br> Byrne never stated that he intended to resign or that he did not want to continue as Division CEO. LaHaise's testimony reflects his own interpretation, not an undisputed fact about Byrne's intent or mental state. <br><br> Sources: <br><br> Ameris COE, Exh. 2, 30(b)(6) Dep. 190:8-11; <br><br> Ameris COE, Exh. 1, Byrne II Dep. 273:8-275:21; <br><br> Byrne COE, Exh. 58, AMERIS001521; <br><br> Byrne Decl., ¶ 32; <br><br> Rasmussen Decl., ¶ 16. |
| 87. | Stokes also experienced a strained work relationship with Byrne, stating that Byrne stopped responding to her emails and phone calls, stopped attending meetings, and stopped taking meeting requests from Stokes' assistant. <br><br> COE, Exh. 7, Stokes Dep., 220:2-221:7; Stokes Decl. at Para. 9. | Undisputed in part / **Disputed in part.** <br><br> It is undisputed that Stokes testified regarding her perception that Byrne became less responsive in certain communications. <br><br> It is disputed that Byrne stopped communicating with Stokes, stopped attending meetings, or refused meeting requests, or that any perceived change in responsiveness constituted misconduct. Stokes's testimony reflects her subjective impressions rather than objective evidence that Byrne ceased performing his responsibilities or disengaged from his role. <br><br> Sources: <br><br> Ameris COE, Exh. 7, Stokes Dep. 220:2-221:7; Stokes Decl. ¶ 9; <br><br> Ameris COE, Exh. 1, Byrne II Dep. 273:8-275:21. |
| 88. | Byrne also failed to follow internal controls and procedures, | **Disputed.** |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-40-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | even directly instructing employees to process loans in a manner that did not conform with established GAAP accounting controls that had been explained to him.<br><br>COE, Exh. 7, Stokes Dep., 220:2-221:7; COE, Exh. 2, 30(b)(6) Dep., 184:7-185:4; COE, Exh. 43, Deposition of Heather Parker ("Parker Dep.") 65:3-12; COE, Exh. 45, AMERIS002131; Stokes Decl., Para. 9-10. | This asserted fact mischaracterizes the evidence. Byrne disputes that he failed to follow internal controls or instructed employees to process loans in violation of GAAP or Ameris's accounting procedures.<br><br>The cited testimony reflects disagreement over accounting treatment and internal review processes, not evidence that Byrne circumvented or directed violations of established controls. No evidence establishes that any instruction by Byrne was implemented, resulted in non-compliant loan processing, or affected Balboa's financial statements or LTIP calculations.<br><br>Sources:<br><br>Byrne Decl. ¶ 22;<br><br>Rasmussen Decl., ¶¶ 14-15;<br><br>Emert Decl., ¶¶ 11-12;<br><br>Byrne COE Exh. 62, Deposition of Deborah Dickson, 33:5-34:2, 48:3-50:12; 51:1-52:13, 52:23-53:11. |
| 89. | For example, in or around May 2024, Ameris's Controller, Sparacio, advised Byrne regarding Ameris's decision to make changes to the IDC process to remain GAAP compliant regarding purchased loans, which Byrne questioned and attempted to circumvent it, suggesting that the Division recharacterize the purchased loans and "book as individual deals" rather than using "the code for portfolio purchases" to avoid the impact of Ameris's IDC process change, in direct violation of GAAP and Ameris's internal accounting controls and compliance requirements.<br><br>COE, Exh. 44, AMERIS001784-1787; Stokes Decl., Para. 9. | **Disputed.**<br><br>Byrne did not attempt to circumvent Ameris's IDC process, violate GAAP, or direct employees to disregard internal accounting controls. Byrne questioned Ameris's proposed IDC process change and raised issues regarding its application to purchased loans, but no alternative approach was implemented and no recharacterization of loans occurred. The cited communications reflect a disagreement regarding accounting treatment, not an effort to evade controls or compliance requirements.<br><br>Sources:<br><br>Ameris COE, Exh. 44, AMERIS001784-1787; |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-41-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | Stokes Decl., Para. 9; Byrne Decl., ¶ 22; Rasmussen Decl., ¶ 14; Emert Decl., ¶¶ 11-12; Byrne COE, Exh. 61, Deposition of Maryellen Sebold, 39:21-42:12, 45:23-46:6; 48:23-49:11; Byrne COE Exh. 62, Deposition of Deborah Dickson, 33:5-34:2, 48:3-50:12; 51:1-52:13, 52:23-53:11. |
| 90. | Stokes raised these concerns to LaHaise and the Chief Compliance Officer, Bill McKendry. Stokes Decl., at Paras. 7, 9. | Undisputed. |
| 91. | Phil Silva ("Silva"), President of the Balboa Division, who had worked with and reported to Byrne for 17 years including before the acquisition, testified that his friendship and partnership with Byrne also changed over time. COE, Exh. 46, Deposition of Phil Silva ("Silva Dep.), 22:3-10, 80:10-24. | Undisputed in part / **Disputed in part.** It is undisputed that Silva testified regarding changes in his personal relationship with Byrne. It is disputed that this testimony establishes misconduct, performance deficiencies, or causation. Sources: Ameris COE, Exh. 46, Silva Dep., 22:3-10, 80:10-24. |
| 92. | For example, in multiple e-mails, Byrne repeatedly undermined Silva in front of other Division employees, questioning his opinions regarding LTIP. COE, Exh. 47, AMERIS001547-49; COE, Exh. 1, Byrne II Dep., 253:11-258:1. | **Disputed.** This asserted fact mischaracterizes the cited emails. Byrne disputes that he "undermined" Silva or acted improperly in front of other employees. The emails reflect professional disagreement regarding LTIP-related issues and calculation methodology, not conduct intended to undermine Silva or his role. Disagreement over LTIP issues does not constitute misconduct or insubordination. This statement is further disputed because Byrne served in a supervisory role over Silva, and the cited communications |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-42-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | reflect supervisory oversight and discussion of LTIP-related issues within the scope of that role. <br><br> Sources: <br><br> Ameris COE, Exh. 47, AMERIS001547-49; <br><br> Ameris COE, Exh. 1, Byrne II Dep., 253:11-258:1; <br><br> Byrne Decl., ¶¶ 24-25. |
| 93. | Silva called Byrne's behavior "incredibly disrespectful," noting that he had no time to spend on negativity. <br> COE, Exh. 48, AMERIS001524-25. | Undisputed in part / **Disputed in part.** <br><br> It is undisputed that Silva expressed his personal opinion regarding Byrne's conduct, including characterizing it as "incredibly disrespectful." It is disputed that this subjective characterization establishes undisputed misconduct, improper behavior, or a violation of company policy by Byrne. Silva's statement reflects his individual perception and reaction, not an objective fact regarding Byrne's conduct. <br><br> Sources: <br><br> Ameris COE, Exh. 48, AMERIS001524-25; <br><br> Ameris COE, Exh. 1, Byrne II Dep. 253:11-258:1; <br><br> Rasmussen Decl., ¶14; <br><br> Emert Decl., ¶¶ 9-12. |
| 94. | Silva further emphasized, "With regards to [LaHaise] and Ameris... I have been very clear with them and you that we are a much better company with you ... **They want you to be here if you want to be here** ..." <br> COE, Exh. 48, AMERIS001524-25 (emphasis added). | Undisputed. |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2                                    -43-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 95. | According to Silva, Byrne had become increasingly "paranoid" and "really unhappy," and that he was in conflict with multiple individuals across different levels of Ameris.<br><br>COE, Exh. 46, Silva Dep., 14:20 -15:5-17. | **Undisputed in part / Disputed in part.**<br><br>It is undisputed that Silva testified regarding his personal perceptions of Byrne, including characterizing him as "paranoid" and "really unhappy." It is disputed that these subjective characterizations are accurate or that they establish that Byrne was, in fact, unhappy or in conflict with multiple individuals across different levels of Ameris. Silva's testimony reflects his personal impressions rather than objective evidence of Byrne's conduct, mental state, or relationships.<br><br>Sources:<br><br>Ameris COE, Exh. 46, Silva Dep. 14:20-15:17;<br><br>Ameris COE, Exh. 1, Byrne II Dep. 273:8-275:21;<br><br>Byrne Decl., ¶ 25. |
| 96. | Silva wrote to Byrne in a separate e-mail that, "The LTIP seems to have been the impetus for the breakage of our relationship."<br><br>COE, Exh. 1, Byrne II Dep., 259:3-10 (Byrne agreed that the LTIP became the "impetus for the breakage" of his relationship with Silva); COE, Exh. 47, AMERIS001544-46. | Undisputed. |
| 97. | On February 5, 2024, Byrne sent an e-mail to the Balboa Division management team - consisting of 11 employees - openly expressing his disagreement with Ameris's 2023 EBT and LTIP calculations, without sharing Ameris's explanations.<br><br>COE, Exh. 47, AMERIS001547-48; COE, Exh. 1, Byrne II Dep., 256:23-16. | **Undisputed in part / Disputed in part.**<br><br>It is undisputed that Byrne emailed the Balboa Division management team on February 5, 2024 regarding his disagreement with Ameris's 2023 EBT and LTIP calculations.<br><br>It is disputed that the email was misleading, inappropriate, or improper, or that Byrne was required to include Ameris's explanations in that communication. |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-44-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | The email reflects Byrne's articulation of his position regarding LTIP calculations, not misconduct. <br><br> Sources: <br><br> Ameris COE, Exh. 47, AMERIS001547-48; <br><br> Ameris COE, Exh. 1, Byrne II Dep. 256:23-257:16. |
| 98. | On March 1, 2024, Byrne claimed approximately *$6.5 million* was "past due," and questioned LaHaise, "...if you don't find what I am doing valuable, please let me know...if the feeling is not mutual, please suggest how we move forward." LaHaise replied that he had told Byrne during the 2023 performance review that he wanted Byrne to remain Division CEO, explained that Byrne's LTIP assumptions were incorrect, and no payments were due, and proposed a call or in person meeting at Ameris's headquarters, including Ameris's CEO if needed. <br><br> COE, Exh. 17, AMERIS001778; <br> COE, Exh. 1, Byrne II Dep., 234:11-235:13. | Undisputed / **Clarification provided.** <br><br> It is undisputed that Byrne and LaHaise exchanged emails on March 1, 2024 regarding Byrne's LTIP calculations and Byrne's role, and that LaHaise proposed a call or in-person meeting to discuss the issues. |
| 99. | Byrne refused LaHaise's offer of a call or in person meeting at Ameris's headquarters. <br><br> COE, Exh. 1, Byrne Dep., 235:19-236:3; 238:5-8. | **Disputed.** <br><br> Byrne did not refuse an offer of a call or in-person meeting. Rather, Byrne questioned whether such a discussion would be productive in the absence of any indication that Ameris was willing to revisit its position regarding the LTIP calculations. The cited testimony does not establish that Byrne declined to meet or refused to engage. <br><br> Sources: <br><br> Ameris COE, Exh. 1, Byrne Dep. 235:19-236:3; 238:5-8; |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | Ameris COE, Exh. 17, AMERIS001776. |
| 100. | Because the LTIP only covered the three- year period from 2022 through 2024, LaHaise sent Byrne a template for a 2025 incentive plan on December 7, 2023, to allow ample time for discussion. COE, Exh. 50, AMERIS001562-63; COE, Exh. 1, Byrne II Dep., 249:12-250:17. | **Disputed.** The cited evidence does not establish that LaHaise sent Byrne a template for a 2025 incentive plan on December 7, 2023, or that the communication reflected a finalized or proposed 2025 incentive plan intended for adoption. The communication is mischaracterized as a "template" for a 2025 plan. Sources: *See* Ameris COE, Exh. 50; Ameris COE, Exh. 1, Byrne II Dep. 249:12-250:17. |
| 101. | Thereafter, according to Byrne, Ameris and Byrne discussed the 2025 incentive plan nearly weekly for "seven months," but were unable to reach an agreement. COE, Exh. 1, Byrne II Dep., 235:14-18, 236:13-18, 243:17-25, 244:1-20, 249:12-250:17, 251:5-12. | **Disputed.** Byrne disputes that Ameris and Byrne engaged in near-weekly discussions regarding a 2025 incentive plan for seven months. Byrne further disputes that there was a proposed or operative 2025 incentive plan on which the parties were unable to reach agreement. Byrne testified that no formal offer or proposed 2025 incentive plan was ever presented to him. Sources: Ameris COE, Exh. 1, Byrne II Dep. 235:14-18; 236:13-18; 243:17-25; 244:1-20; 249:12-250:17; 251:5-12. |
| 102. | As Byrne's Employment Agreement was set to expire at the end of 2024, LaHaise sent the required notice of non-renewal in March 2024 to both Byrne and Silva, along with an intent to transition Byrne to a senior management agreement consistent with those of Ameris's other seniormost executives. | **Disputed.** It is undisputed that LaHaise sent Byrne a notice of non-renewal in March 2024. It is disputed that the notice was required. It is further disputed that the document reflected or constituted a senior management agreement. Sources: |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-46-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | COE, Exh. 51, AMERIS001752-53; COE, Exh. 1, Byrne II Dep., 240:5-245:2; COE, Exh. 2, 30(b)(6) Dep., 164:22-165:4, 165:20-166:2, 169:21-170:6; LaHaise Decl., Para. 13. | Ameris COE, Exh. 51, AMERIS001752-53; Ameris COE, Exh. 1, Byrne II Dep., 238:21-239:25, 240:5-245:2; Ameris COE, Exh. 2, 30(b)(6) Dep., 164:22-165:4, 165:20-166:2, 169:21-170:6. |
| 103. | Byrne understood that this non-renewal notice was not a termination of his employment, but simply notice that the terms of the existing Agreement would not be extended, as the parties had been negotiating a new senior management agreement since January 2024.<br><br>COE, Exh. 51, AMERIS001752-53; COE, Exh. 1, Byrne II Dep., 238:21-239:25, 240:5-245:2; COE, Exh. 2, 30(b)(6) Dep., 164:22-165:4, 165:20-166:2, 169:21-170:6. | **Disputed.**<br><br>Byrne did not understand the non-renewal notice to be part of negotiations for a new role, and no new agreement or offer was made.<br><br>Sources:<br>Ameris COE, Exh. 52;<br>Ameris COE, Exh. 1, Byrne II Dep., 238:21-239:25, 240:5-245:2;<br>Ameris COE, Exh. 2, 30(b)(6) Dep., 164:22-165:4, 165:20-166:2, 169:21-170:6. |
| 104. | On March 11, 2024, four days later, LaHaise followed up by emailing Byrne a draft senior management agreement for his review, which would have continued his employment and CEO role at the Balboa Division.<br><br>LaHaise Decl., Para. 13; COE, Exh. 52, AMERIS001754-1769; COE, Exh. 1, Byrne II Dep., 242:4-22. | **Disputed.**<br><br>Byrne disputes that the draft senior management agreement would have continued his employment or CEO role, especially because the purported agreement was merely a form without any information tethering it to Byrne himself. It is further disputed that any purported agreement "would have continued his employment and CEO role at the Balboa Division," particularly because the terms of his existing role as CEO was already specifically negotiated and contracted for in the existing Employment Agreement.<br><br>Sources:<br>Ameris COE Exh. 52;<br>Ameris COE, Exh. 1, Byrne II Dep., 238:21-239:25, 240:5-245:2; |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-47-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | Ameris COE, Exh. 2, 30(b)(6) Dep., 164:22-165:4, 165:20-166:2, 169:21-170:6. |
| 105. | Byrne never signed the proposed agreement.<br>LaHaise Decl., Para. 13. | Undisputed. |
| 106. | Byrne did not consult an attorney regarding this draft, even though he had sought legal review for his prior agreements with Ameris.<br>COE, Exh. 1, Byrne II Dep., 244:1-20. | **Disputed.**<br>This purported fact is disputed to the extent it suggests that review from an attorney was mandatory or somehow required. Byrne did not consult an attorney because there was no substantive agreement or material terms from Ameris to Byrne for an attorney to review.<br>Sources:<br>Ameris COE, Exh. 1, Byrne II Dep., 244:1-20. |
| 107. | Byrne further testified that he thought the senior management agreement "didn't seem like it was real" and that he "didn't know what was...behind it."<br>COE, Exh. 1, Byrne II Dep., 244:1-20. | Undisputed. |
| 108. | The same draft senior management agreement was also offered to Silva and was signed by him.<br>LaHaise Decl., Para. 13. | **Disputed.**<br>Although a document was sent, it did not constitute a "senior management agreement" and instead was a form Severance Protection and Restrictive Covenants Agreement.<br>Sources:<br>Ameris COE Exh. 52;<br>Ameris COE, Exh. 1, Byrne II Dep., 238:21-239:25, 240:5-245:2;<br>Ameris COE, Exh. 2, 30(b)(6) Dep., 164:22-165:4, 165:20-166:2, 169:21-170:6. |
| 109. | Leading up to his termination, Byrne was generally | **Disputed.** |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | uncooperative, repeatedly claiming Ameris did not want him to continue as Division CEO.<br><br>COE, Exh. 1, Byrne II Dep., 227:15-229:12, 229:25-230:9, 233:8-234:21, 248:19-24; COE, Exh. 2, 30(b)(6) Dep. 190:4-11. | The cited evidence does not establish that Byrne was "uncooperative" leading up to his termination. Byrne disputes that he acted uncooperatively or obstructed Ameris in any respect. The cited testimony reflects disagreements regarding LTIP issues and Byrne's perception of Ameris's position, not evidence that Byrne refused to cooperate or failed to perform his duties as Division CEO.<br><br>Sources:<br>Ameris COE, Exh. 1, Byrne II Dep. 227:15-229:12; 229:25-230:9; 233:8-234:21; 248:19-24;<br>Ameris COE, Exh. 2, 30(b)(6) Dep. 190:4-11;<br>Ameris COE, Exh. 40, AMERIS000095-100;<br>Emert Decl., ¶¶ 11-12. |
| 110. | On June 24, 2024, LaHaise e-mailed Byrne and Silva an agenda for a meeting the next day, which Byrne cancelled at the last minute.<br>LaHaise Decl., Para. 18; COE, Exh. 53, AMERIS002284-85. | Undisputed in part / **Disputed in part.**<br>It is undisputed that on June 24, 2024, LaHaise emailed Byrne and Silva an agenda for a meeting scheduled for the following day. It is disputed that Byrne's cancellation of the meeting was improper.<br>Sources:<br>Ameris COE, Exh. 53, AMERIS002284-85;<br>Ameris COE, Exh. 54, AMERIS002286-88. |
| 111. | Silva noted that if Byrne had remained engaged and positive, he could have been a strong leader, but unfortunately, he had become the opposite.<br>COE, Exh. 46, Silva Dep., 10:14 - 11:12, 86:20 - 87:2. | **Disputed.**<br>The cited evidence does not stand for this proposition whatsoever. This purported fact must be disregarded.<br><br>Sources: |

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | Ameris COE, Exh. 46, Silva Dep., 10:14 - 11:12, 86:20 - 87:2. |
| 112. | Ameris terminated Byrne's employment with a formal notice sent to Byrne on June 27, 2024, effective June 30.<br><br>COE, Exh. 39, AMERIS001792-97; LaHaise Decl., Para. 18; COE, Exh. 2, 30(b)(6) Dep., 177:4-23 | Undisputed. |
| 113. | Although designated "without cause," which would have allowed Byrne to collect severance under his Employment Agreement, Ameris had multiple legitimate reasons for its decision, including but not limited to: the Balboa Division's failure to meet expected financial results under Byrne's leadership; Byrne's strained and unproductive working relationships with employees across Ameris; and Byrne's failure to follow - and attempts to circumvent - internal accounting controls and processes.<br><br>COE, Exh. 8, AMERIS000238-259; COE, Exh. 39, AMERIS001792-97; COE, Exh. 2, 30(b)(6) Dep., 168:16-169:4; 177:4-179:8; 183:2-190:16; COE, Exh. 43, Parker Dep., 65:3-12; LaHaise Decl., Para. 19. | **Disputed.**<br><br>This asserted fact is argumentative and improperly characterizes disputed issues as established reasons for Byrne's termination. Ameris designated Byrne's termination as "without cause," and Byrne disputes that Ameris had legitimate reasons for its decision. Indeed, Ameris even offered to maintain Byrne's eligibility to participate in the LTIP, despite no longer being employed with Ameris. Byrne further disputes each asserted basis, including any claim that the Balboa Division failed to meet expected financial results due to his leadership, that his working relationships were strained or unproductive, or that he failed to follow or attempted to circumvent internal accounting controls. The cited materials reflect Ameris's post-hoc characterizations and opinions, not undisputed facts.<br><br>Sources:<br><br>Byrne Decl., ¶¶ 30, 32;<br><br>Ameris COE, Exh. 39, AMERIS001792-97;<br><br>Ameris COE, Exh. 40, AMERIS000095-100;<br><br>Ameris COE, Exh. 41, AMERIS000088-92. |
| 114. | Byrne testified that he first saw the June 27, 2024 termination e-mail on June 28, 2024 and claimed he | Undisputed. |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-50-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | had not received "any advanced warning...the courtesy of a call, or anything like that, no previous communication or any indication that I was going to be terminated." COE, Exh. 1, Byrne II Dep., 133:11- 136:7; COE, Exh. 39, AMERIS001792-95. | |
| 115. | *However, his testimony was directly contradicted by the undisputed record.* Before sending the June 27 termination e-mail, LaHaise scheduled a call with Byrne during which he personally informed Byrne of Ameris's termination decision. LaHaise Decl., Para. 18; COE, Exh. 54, AMERIS002286-88. | **Disputed.** Byrne disputes that he was informed of his termination prior to receiving the June 27 termination email. The parties dispute what was said during the referenced call and whether any termination decision was communicated to Byrne at that time. Accordingly, the record on this issue is disputed and does not establish that Byrne was informed of his termination before June 27. Sources: Byrne Decl., ¶ 33. |
| 116. | During that call, Byrne requested that his legal counsel be copied on the termination notice and provided LaHaise his counsel's contact information that same day. LaHaise Decl., Para. 18; COE, Exh. 54, AMERIS002288. | Undisputed. |
| 117. | After their call, LaHaise sent Byrne a formal Notice of Termination confirming the June 30 effective date. LaHaise Decl., Para. 18; COE, Exh. 39, AMERIS001792-95; COE, Exh. 1, Byrne II Dep., 136:15-137:20. | Undisputed. |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-51-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

## II.   SECOND CAUSE OF ACTION FOR RETALIATION IN VIOLATION OF LABOR CODE §1102.5

Plaintiff disputes Defendant's characterization of the law and facts set forth in its Separate Statement. Defendant's prefatory statements constitute legal argument and advocacy rather than statements of undisputed fact, and are therefore improper in a separate statement. Plaintiff's responses to Defendant's asserted facts as set forth herein are provided solely for purposes of this motion and without adopting Defendant's framing or legal conclusions. Plaintiff's legal arguments are set forth in the Opposition.

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
|  | See Defendant's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 1-117, which are incorporated herein by reference. | See Plaintiff's Response to Defendant's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 1-117, which are incorporated herein by reference. |

## III.   THIRD CAUSE OF ACTION FOR FAILURE TO PAY ALL WAGES DUE AT TERMINATION

Plaintiff disputes Defendant's characterization of the law and facts set forth in its Separate Statement. Defendant's prefatory statements constitute legal argument and advocacy rather than statements of undisputed fact, and are therefore improper in a separate statement. Plaintiff's responses to Defendant's asserted facts as set forth herein are provided solely for purposes of this motion and without adopting Defendant's framing or legal conclusions. Plaintiff's legal arguments are set forth in the Opposition.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2                -52-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | See Defendant's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 1-117, which are incorporated herein by reference. | See Plaintiff's Response to Defendant's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 1-117, which are incorporated herein by reference. |

## IV.    FOURTH CAUSE OF ACTION FOR VIOLATION OF BUSINESS & PROFESSIONS CODE §17200

Plaintiff disputes Defendant's characterization of the law and facts set forth in its Separate Statement. Defendant's prefatory statements constitute legal argument and advocacy rather than statements of undisputed fact, and are therefore improper in a separate statement. Plaintiff's responses to Defendant's asserted facts as set forth herein are provided solely for purposes of this motion and without adopting Defendant's framing or legal conclusions. Plaintiff's legal arguments are set forth in the Opposition.

| SSUF No. | Defendant's Uncontroverted Fact and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | See Defendant's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 1-117, which are incorporated herein by reference. | See Plaintiff's Response to Defendant's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 1-117, which are incorporated herein by reference. |

## STATEMENT OF ADDITIONAL FACTS

Pursuant to Federal Rule of Civil Procedure 56(c), Plaintiff Patrick Byrne ("Plaintiff") submits this Statement of Additional Facts in support of his Opposition to Defendant Ameris Bank's ("Defendant") Motion for Summary Judgment.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2                    -53-                    Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

Concurrently with this filing, Plaintiff has filed a Statement of Genuine Disputes in support of his Opposition. That Statement of Genuine Disputes clearly states which of Defendant's facts Plaintiffs believe to be disputed.

Defendant's Motion for Summary Judgment is located at ECF No. 93. Defendant's Statement of Uncontroverted Facts, which accompanies the motion for summary judgment, is located at ECF No. 93-2.

| Fact No. | Defendant's Additional Fact | Evidence |
|---|---|---|
| 118. | Balboa is a nationwide equipment leasing and financing company whose performance is driven by multi-year lease portfolios and underwriting models. | Byrne Decl., ¶ 2. |
| 119. | During the period before Ameris's acquisition, the company had a long operating history with relatively predictable performance driven by established lease portfolios and underwriting models, and it consistently evaluated profitability using internal metrics that reflected the long-term nature of its equipment leasing business and were used for management compensation, incentive planning, and performance evaluation well before the acquisition | Byrne Decl., ¶ 3; Emert Decl., ¶¶ 4-5; Byrne COE Exh. 62, Deposition of Deborah Dickson, 33:5-34:2, 48:3-50:12; 51:1-52:13, 52:23-53:11. |
| 120. | The foregoing practices established Balboa's past practice. | Byrne Decl., ¶ 3. Emert Decl., ¶¶ 4-5; Byrne COE, Exh. 62, Deposition of Deborah Dickson, 36:4-38:24, 40:16-42, 44:13-45:23. |
| 121. | In 2021, Ameris Bank ("Ameris" or "Defendant") pursued the acquisition of Balboa. | Byrne Decl., ¶ 4. |
| 122. | Before agreeing to sell Balboa to Ameris, Byrne evaluated multiple acquisition opportunities from other banks and financial institutions. | Byrne Decl., ¶ 7. |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-54-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| Fact No. | Defendant's Additional Fact | Evidence |
|---|---|---|
| 123. | Those proposals were very close in terms of price and structure but differed in incentives for Byrne's and the other approximately 180 employees of Balboa. | Byrne Decl., ¶ 7. |
| 124. | As part of Ameris' acquisition of Balboa, it sought to retain Byrne in a leadership role and to align his compensation incentives with the Division's post-acquisition performance. | Byrne Decl., ¶¶ 5-6. |
| 125. | The Employment Agreement included the Balboa Capital Long-Term Cash Incentive Plan ("LTIP") as a material component of Byrne's compensation, distinct from his base salary and quarterly bonuses. | Ameris COE, Exh. 8, Employment Agreement, AMERIS000238-259; Ameris COE, Exh. 3, LTIP, AMERIS000221-233; Byrne Decl., ¶¶ 5-6. |
| 126. | The LTIP was material to Byrne's decision to sell Balboa to Ameris and to remain with the company after the acquisition. | Byrne Decl., ¶¶ 6-7. |
| 127. | The LTIP was discussed during the acquisition as a means of rewarding performance and maintaining the continuity of Balboa's leadership after the sale to Ameris. | Byrne Decl., ¶¶ 5, 9; Rasmussen Decl., ¶¶ 5, 10-11; Emert Decl., ¶¶ 6-8. |
| 128. | Several months before the acquisition and following the Following Ameris's acquisition, Byrne communicated to Balboa's key leaders, including to Robert Rasmussen and Phil Silva, that the LTIP was an important component of their post-acquisition compensation. | Byrne Decl., ¶¶ 6, 8-9. |
| 129. | Senior and mid-level leaders relied on those representations when deciding to remain with the company. | Byrne Decl., ¶ 9; Rasmussen Decl., ¶¶ 5-9; Emert Dec., ¶ 7 |
| 130. | Byrne used the LTIP as a tool to retain, motivate, and reward Balboa personnel at all levels. | Byrne Decl., ¶ 9; Rasmussen, ¶ 8. |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-55-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| Fact No. | Defendant's Additional Fact | Evidence |
|---|---|---|
| | while also providing him with a direct incentive to drive strong performance following the acquisition. | |
| 131. | Ameris implemented the LTIP as a formal, written incentive plan covering Byrne and other eligible participants in the Balboa Division. | Byrne Decl., ¶¶ 6-7; Rasmussen Decl., ¶¶ 5-9, 12. |
| 132. | The stated purpose of the LTIP is to link the interests of participants with those of the company by creating a direct relationship between performance measurements and individual bonus payouts. | Ameris COE, Exh. 3, LTIP at § 1.1, AMERIS000221-233. |
| 133. | The LTIP establishes the operative incentive framework, while the Award Agreement is the individual instrument that applies that framework to a particular participant and year. | Ameris COE, Exh. 3, LTIP, AMERIS000227-228. |
| 134. | The key assumptions in the LTIP Award Agreement, contain six defined "Key Assumptions" and only one of those assumptions references GAAP methodology. | Ameris COE, Exh. 3 at AMERIS000227-228; Byrne COE. Exh. 61, Deposition of Maryellen Sebold, 39:21-42:12, 45:23-46:6; 48:23-49:11. |
| 135. | The Award Agreement adds that the general premise of the LTIP is to materially follow Balboa's past practice, meaning Balboa's practices before Ameris's acquisition. | Ameris COE, Exh. 3, LTIP at fn. 3, AMERIS000228. Byrne COE, Exh. 61, Deposition of Maryellen Sebold at 47:2-25. Byrne COE, Exh. 62, Deposition of Deborah Dickson, 36:4-38:24, 40:16-42, 44:13-45:23. |
| 136. | The LTIP also establishes a framework for allocating the bonus pool, including fixed percentage allocations for certain participants, including Byrne. | Byrne Decl., ¶ 8; Rasmussen Decl. ¶¶ 6-8; Ameris COE, Exh. 3, LTIP at AMERIS000228, which includes a placeholder for Byrne's "Cash Bonus Award" percentage. |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-56-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| Fact No. | Defendant's Additional Fact | Evidence |
|---|---|---|
| 137. | The LTIP framework was established prior to Ameris' acquisition of Balboa. | Byrne Decl., ¶ 8; Rasmussen Decl. ¶ 5; Emert Decl., ¶ 6. |
| 138. | After completing each performance period, Ameris's Compensation Committee is required to review and certify whether the performance goals have been achieved and, if so, calculate and certify the amount of cash bonus awards earned under the LTIP's formula. | Ameris COE, Exh. 3, LTIP, AMERIS000221-233. |
| 139. | Cash bonus awards are then paid as soon as administratively practicable following certification, and no later than March 15 of the following calendar year. | Ameris COE, Exh. 3, LTIP, AMERIS000221-233. |
| 140. | Ameris calculated Balboa's EBT for LTIP purposes and paid the LTIP bonus pool for the 2022 performance period. | Byrne Decl., ¶ 13. |
| 141. | Byrne did not undertake an independent recalculation of EBT for LTIP purposes at that time because there was no reason for me to do so: the certified outcome was that the performance threshold had been met, and LTIP payments were made in accordance with that conclusion | Byrne Decl., ¶ 13. |
| 142. | Byrne was surprised to learn that Ameris determined that Balboa failed to meet the threshold to support a payment under the terms of the 2023 LTIP. | Byrne Decl., ¶ 15. |
| 143. | As part of the Ameris acquisition, Byrne negotiated a compensation package that included participation in the LTIP as a material component of his post-acquisition compensation. | Byrne Decl., ¶¶ 5-10; Ameris COE, Exh. 8, Employment Agreement at §§ 3, 3.3, AMERIS000239. |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-57-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| Fact No. | Defendant's Additional Fact | Evidence |
|---|---|---|
| 144. | Section 3.3 of the Employment Agreement establishes the LTIP and provides that Byrne is expected to participate. | Ameris COE, Exh. 8 at §§ 3, 3.3, AMERIS000239; Ameris COE, Exh. 3, LTIP, AMERIS000221-233. |
| 145. | The Employment Agreement expressly distinguishes the LTIP from the separate bonus program, stating that the LTIP and the bonus are "separate and distinct compensation programs." | Ameris COE, Exh. 8, Employment Agreement at §§ 3, 3.3, AMERIS000239. Ameris COE, Exh. 3, LTIP, AMERIS000221-233. |
| 146. | The Employment Agreement does not condition Byrne's LTIP participation on Ameris's future election to offer the program and does not reserve discretion to deny Byrne LTIP participation irrespective of performance. | Ameris COE, Exh. 8, Employment Agreement at §§ 3, 3.3, AMERIS000239. |
| 147. | Consistent with the Plan's terms, LTIP payments were contingent on the achievement of defined performance thresholds and were not guaranteed for every performance period. | Ameris COE, Exh. 3, LTIP, AMERIS000221-233. |
| 148. | LTIP participation was a bargained-for component of Byrne's compensation package negotiated in connection with the Balboa acquisition. | Byrne Decl. ¶¶ 4-9; Ameris COE, Exh. 8, Employment Agreement at §§ 3, 3.3, AMERIS000239. Ameris COE, Exh. 3, LTIP, AMERIS000221-233. |
| 149. | The changes Byrne observed regarding Byrne included, among other things, the treatment of overhead expenses, interim rent, stipulated judgments, repossessions, and the calculation of the allowance for loan losses. | Byrne Decl. ¶ 18; Ameris COE, Exh. 20, AMERIS001207-08; Ameris COE, Exh. 23, AMERIS001661-62. |
| 150. | In calculating 2023 LTIP performance, Ameris applied accounting treatments to items including overhead expenses, interim rent, stipulated judgments, repossessions, and the allowance | Byrne Decl. ¶¶ 18-21; Ameris COE, Exh. 4, 2022 LTIP Calculation, AMERIS000738; |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-58-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS

| Fact No. | Defendant's Additional Fact | Evidence |
|---|---|---|
| | for loan losses that differed from Balboa's pre-acquisition practices and reduced Earnings Before Tax for LTIP purposes. | Ameris COE, Exh. 33, 2023 LTIP Calculation, AMERIS000739;. <br><br> Byrne COE, Exh. 61, Deposition of Maryellen Sebold, at 39:24-70-22; 69:24-70:22. |
| 151. | Byrne raised concerns that Ameris's LTIP calculation methodology resulted in the non-payment of compensation he contended was earned, by himself and other personnel, under the terms of the LTIP. | Byrne Decl. ¶¶ 15-24, 28; <br><br> Ameris COE, Exh. 22, AMERIS001981; <br><br> Ameris COE, Exh. 23, AMERIS001661-62; <br><br> Ameris COE, Exh. 24, AMERIS001435-1439. |
| 152. | Ameris could not identify any provision in the LTIP expressly authorizing the application of GAAP accounting principles to all components of the EBT calculation. | Byrne COE, Exh. 9, Deposition of Maryellen Sebold, 39:21-42:12, 45:23-46:6; 48:23-49:11. <br><br> Byrne COE Exh. 62, Deposition of Deborah Dickson, 33:5-34:2, 48:3-50:12; 51:1-52:13, 52:23-53:11. |
| 153. | Ameris' sole support for the application of application of GAAP accounting principles to all components of the EBT calculation rests on Section 9 of the Award Agreement, which provides, "9. Compliance with Legal Requirements. This Agreement and the granting of Cash <br><br> Bonus Awards shall be subject to all applicable federal and state laws, rules and regulations, and <br><br> to such approvals by any regulatory or governmental agency as may be required." | Byrne COE, Exh. 61, Deposition of Maryellen Sebold, 39:21-42:12, 45:23-46:6; 48:23-49:11. <br><br> Byrne COE Exh. 62, Deposition of Deborah Dickson, 33:5-34:2, 48:3-50:12; 51:1-52:13, 52:23-53:11; <br><br> Ameris COE, Exh. 3, LTIP § 9, AMERIS000229 |
| 154. | The LTIP contains no language providing that acceptance of a payment constitutes a waiver, release, or accord and satisfaction. | Ameris COE, Exh. 3, LTIP, AMERIS000221-233. |
| 155. | The Plan does not require participants to acknowledge the correctness of Ameris's calculations as a condition of payment, nor does it state that | Ameris COE, Exh. 3, LTIP, AMERIS000221-233. |

| Fact No. | Defendant's Additional Fact | Evidence |
|---|---|---|
| | acceptance of payment resolves disputes regarding how performance metrics are calculated in later performance periods. | |
| 156. | Both before and after the acquisition, Byrne remained highly involved in the management of Balboa, and he consistently participated in operational discussions, strategic planning, and performance oversight. | Rasmussen Decl., ¶14; Emert Decl., ¶¶ 9-12. |
| 157. | Balboa personnel viewed Byrne as hardworking and focused, even throughout the post-acquisition period. | Rasmussen Decl., ¶ 14; Emert Decl., ¶ 11. |
| 158. | Byrne never instructed his colleagues or employees to violate accounting controls, compliance requirements, or internal procedures. | Rasmussen Decl., ¶ 14; Emert Decl., ¶ 15. |
| 159. | Byrne's communications with other Balboa personnel reflected a desire to address what he believed were discrepancies in how the LTIP was being calculated and applied. | Emert Decl., ¶ 12. |

Dated: January 23, 2026

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
MATTHEW SESSIONS
STACEY A. VILLAGOMEZ
MADISON E. LARSEN

By: _____/s/ Matthew Sessions_____
MATTHEW SESSIONS
Attorneys for Plaintiff
PATRICK BYRNE

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-2829-9654.2

-60-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S STATEMENT OF
GENUINE ISSUES AND ADDITIONAL FACTS