# EXHIBIT 62

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PATRICK BYRNE,                )
an individual,                )   CASE No:
                              )   8:24-cv-01989-MWC (JDEx)
        PLAINTIFF,            )
                              )
    vs.                       )
                              )
                              )
AMERIS BANK,                  )
a Georgia corporation,        )
                              )
                              )
                              )
                              )
        DEFENDANT.            )
_____/

DEPOSITION OF DEBORAH DICKSON,

taken on behalf of Defendant via Zoom.  Beginning at

2:00 p.m. and ending at 5:00 p.m. PST on January 15th,

2026, before Victor Telles, Certified Shorthand

Reporter, CSR No. 14695.

Deborah Dickson                                                January 15, 2026

```
 1                          --oOo--

 2     A P P E A R A N C E S:

 3     FOR THE PLAINTIFF:

 4              ALLEN MATKINS
                    BY:  STACEY VILLAGOMEZ
 5                       ATTORNEY AT LAW
                2010 Main Street, 8th Floor
 6              Irvine, CA 92614
                Telephone: 213-622-5555
 7              svillagomez@allenmatkins.

 8

 9


10
       FOR THE DEFENDANT:
11

12              NUKK-FREEMAN & CERRA
                    BY:  NANA J. YEE
13                       ATTORNEY AT LAW
                550 West C St Suite 910
14              San Diego, CA 92101
                Telephone: (619) 292-0515
15              nyee@nfclegal.com

16

17

18

19

20

21

22

23

24

25
```

Deborah Dickson                                                   January 15, 2026

```
 1                           INDEX
 2                           --o0o--
 3                                                        PAGE
 4     EXAMINATION: MS. YEE                                 6
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Deborah Dickson                                              January 15, 2026

1   assumptions on which my calculations are based, that
2   GAAP calculations apply to initial direct costs, but not
3   to the other calculations included in that LTIP
4   agreement or in the LTIP award.
5          Q.    BY MS. YEE:  Understood.  So your opinion
6   is not based upon an accounting standard or
7   requirement on what the law requires Ameris to do;
8   correct?
9          MS. VILLAGOMEZ:  Objection.  Form.
10  Argumentative.  Calls for a legal conclusion.
11         THE WITNESS:  That's a complex question
12  because first of all, Ms. Sebold is claiming that
13  everything should be based on GAAP.  The GAAP is not the
14  law; neither federal law nor state law requires GAAP.
15  Only GAAP is required for formal financial statements
16  for public companies.  It's not required for
17  calculations that are made, such as a "Long-Term Cash
18  Incentive Plan", or something along that line.
19       BY MS. YEE:
20       Q    So what's the basis for that conclusion you
21  just told us?
22       A    I've been working with GAAP probably 40 years
23  now.  I know when to apply it and when not to apply it.
24  GAAP is used for formal financial statements.  It is not
25  used for calculations of any type, of any nature, unless

Deborah Dickson                                                                 January 15, 2026

```
 1   there's a specific agreement somewhere that says, "GAAP
 2   must be used in every part of that calculation."
 3        Q    So is that conclusion also based on, besides
 4   your experience you just talked about, is it also based
 5   on the LTIP agreement in this case at issue?
 6        A    Well, we're kind of talking about different
 7   things.  I'm talking about when GAAP might be applied
 8   and not be applied.  So perhaps you can narrow your
 9   question for me.
10        Q    So let me ask you this and see if this makes
11   it narrow.  For the LTIP agreement in this case, so if
12   GAAP doesn't apply, which is, I understand, that's your
13   opinion and conclusion.  If GAAP doesn't apply to the
14   LTIP-related calculations in this case, then what should
15   apply?
16             MS. VILLAGOMEZ:  Objection.  Form.  Improper
17   hypothetical.  Assumes facts.
18             THE WITNESS:  I'm not really sure what you're
19   asking.  Are you asking for a standard somewhere?  What
20   are you asking?
21        BY MS. YEE:
22        Q    Because you're saying that GAAP doesn't apply
23   --
24             MS. VILLAGOMEZ:  Objection.  Misstates --
25   ///
```

Deborah Dickson							January 15, 2026

```
 1            THE WITNESS:  Could you ask the question one
 2   more time, please?
 3         BY MS. YEE:
 4         Q    So if GAAP, like you concluded, doesn't apply,
 5   then what applies, based on the LTIP agreement.  Because
 6   you mentioned that we should look at the terms in plain
 7   language of the LTIP.
 8              What would apply to LTIP calculations?  And
 9   you said there were several places in the LTIP agreement
10   that we can go through.
11              MS. VILLAGOMEZ:  Objection.  Form.
12   Mischaracterizes prior testimony.  Go ahead.
13              THE WITNESS:  May I refer you to the
14   "Long-Term Cash Incentive Plan Award Agreement," page 1.
15    And you can see on page 1, there are six key
16   assumptions, six "Key Assumptions."  Those are the
17   calculations that I believe apply.  For instance, "Key
18   Assumption a." says, "Initial direct costs," commonly
19   referred to as IDC, "will be calculated using GAAP
20   methodology."
21              So clearly right there, it tells me as a CPA,
22   as an expert, as one making calculations, if I should
23   apply GAAP there.  "B. Key Assumption" says, "The
24   interest cost used will be 1%."  So now I know, in my
25   calculations, that I should be looking at 1 percent, not
```

Deborah Dickson                                           January 15, 2026

```
 1   more, not less.  Under "c." --
 2        Q.   BY MS. YEE:  Okay.  So hold on.  Let me
 3   ask you this.  I don't want to -- I can see the
 4   document.  I think we all have the document.  But
 5   that -- we can see the six key assumptions here.
 6            But does any of the key assumptions here --
 7   well, anywhere in the LTIP say how, for example, interim
 8   rent, stipulated judgment, or repossessions should be
 9   determined?  Does it say it in the LTIP agreement?
10        A    Those specific items are not addressed in the
11   LTIP agreement.  But I look at those as part of -- in
12   particular, sub item "e.", which says, "Balboa," and
13   that would mean the Balboa division when the LTIP
14   agreement is being calculated, "will bear all direct
15   costs incurred in its operations."  And so, what I'm
16   looking at there is, what are the appropriate direct
17   costs that should be included in an LTIP calculation,
18   versus indirect costs that should not be included.
19        BY MS. YEE:
20        Q    So if GAAP doesn't apply to those items I just
21   mentioned, so what applies?  Can you clarify that for
22   me?
23            MS. VILLAGOMEZ:  Objection.  Form.  Misstates
24   witness's testimony.
25            THE WITNESS:  If you look at the bottom of
```

Deborah Dickson									January 15, 2026

1   page 2, of this agreement also --
2            MS. YEE:  Please, can you give me the Bates
3   range?
4            THE WITNESS:  Yes.  It's AMERIS000228.
5       Q    BY MS. YEE:  Are you looking at the
6   footnote?
7       A    Yes, I see a great deal of guidance there.  In
8   the footnote, it says -- the second sentence says, "The
9   general premise of the LTIP is to materially follow past
10  practice, which this calculation is maintaining."  And
11  so, in those instances that you identified, plus a
12  couple of others I reviewed, what was the past practice
13  Balboa pre-acquisition versus the way that Ameris is
14  treating the numbers, subsequent to the acquisition.
15      Q    Is this the -- this "footnote 3," to -- I
16  believe, subsection "f." under the "Key Assumptions" on
17  page AMERIS000228, is this the only place that says --
18  what refers to "past practice"?
19      A    I think so, but this is a pretty important
20  sentence because it refers to not just item "f.", but it
21  refers to the entire agreement.  It says the "general
22  premise," "general" and "premise" of the LTIP is to
23  "materially follow past practice."  That gives me a
24  great deal of guidance right there.
25      Q    Well, that's your interpretation; right?  That

Deborah Dickson                                                January 15, 2026

```
 1   calculations are based on her incorrect interpretation
 2   of the LTIP agreement; correct?
 3           MS. VILLAGOMEZ:  Objection.  Document speaks
 4   for itself.
 5           THE WITNESS:  That is correct.
 6       BY MS. YEE:
 7       Q   You also just told me that your opinion is
 8   that the LTIP requires adherence to past practices;
 9   correct?
10       A   It says the general premise of the LTIP is to
11   materially follow past practice.
12       Q   Okay?
13       A   Yes.
14       Q   So tell me about -- what's -- what do you
15   mean -- what do you believe it to mean, "past practice"?
16       A   Okay.  Past practice, in the accounting world,
17   would be the methodology that an entity is using to make
18   computations.  Even in GAAP and non-GAAP accounting,
19   there are different ways to make calculations.  So you
20   will see that -- for instance, there's cash-basis
21   accounting.  Cash-basis essentially means you recognize
22   revenue when it's physically received in the bank
23   account, or it means you book your expenses when they're
24   actually paid.
25           Versus accrual-based accounting, which is part
```

1  of GAAP accounting, which means you recognize revenue
2  when a service is performed or when something is sold.
3  So it's very different.  So you'll see that.  And so the
4  question was -- remind me the remainder of your
5  question.
6        Q    Which is, you know, based on -- because you
7  didn't mention past practices at several places in the
8  report.  So what does past practice mean to you?
9        A    So to clarify that, based on what I just said,
10 Balboa Capital, pre-acquisition, was handling some of
11 its accounting affairs in one manner, and my
12 understanding would be -- based on particular on this
13 footnote, that when the LTIP calculation is computed, it
14 should be using the same type of accounting methodology
15 consistently all the way through the LTIP calculation.
16           Versus what appears to be happening is that
17 Balboa Capital, pre-acquisition, computed certain items
18 using one methodology, and then when it was acquired by
19 a public company, the public company started computing
20 those items based on GAAP, which would be entirely
21 appropriate for the company to do.
22           But adjustments need to be made to the
23 calculation to convert that GAAP methodology back to the
24 same past practice methodology that was used before.
25 And once those adjustments are made, then the LTIP

1  calculation can be looked at to determine whether the
2  thresholds were met.
3      Q    Okay, let me make sure I understand.  When you
4  say -- when you say "past practices" in your report,
5  I'll ask you what you while you are sitting here
6  testifying about it.
7           Do you mean Balboa Capital's historical
8  practices, prior to acquisition?  I believe that's what
9  you said.  But I just want to confirm.
10     A    That's correct.
11     Q    So you meant Balboa Capital's past practices
12 when it was a privately held company; correct?
13     A    Correct.
14     Q    So you -- but in your report, I don't believe
15 you identified which specific accounting practices
16 constitute past practice; correct?
17          MS. VILLAGOMEZ:  Objection.  Form.
18          THE WITNESS:  I believe that I did.  And I can
19 certainly testify to any of those, but I called those
20 out in my changes, for instance.
21     BY MS. YEE:
22     Q    Well, can you just focus on your report first?
23  We can get to the other parts.
24     A    Sure.
25     Q    Do you see anywhere that where you define,

Deborah Dickson                                                     January 15, 2026

```
 1                    inconsistent with Balboa's past
 2                    practices.  Per discussions with
 3                    Mr. Byrne, Balboa's past practices
 4                    were to recognize interim rent when
 5                    cash was received.  However,
 6                    Ameris's accounting method change
 7                    post-acquisition recognized interim
 8                    rent as lease income over the lease
 9                    term."
10          So therefore, "This accounting change lowers
11   revenues and therefore lowers EBT under the LTIP."
12   There is an example for you.
13       Q    So your understanding of the past practices is
14   based entirely on what Mr. Byrne told you his past
15   practices were; correct?
16            MS. VILLAGOMEZ:  Objection.  Form.
17   Mischaracterizes testimony.  Argumentative.
18            THE WITNESS:  That's not correct.
19       BY MS. YEE:
20       Q    But the example you just gave me, you read it.
21   It says, "Per discussions with Mr. Byrne, Balboa's past
22   practice" was this.
23            MS. VILLAGOMEZ:  Objection.  Argumentative.
24       BY MS. YEE:
25       Q    Is that correct?
```

Deborah Dickson                                                January 15, 2026

```
 1         A    That doesn't mean that's the only thing I
 2   looked at.
 3         Q    So what else did you look at?  Can you point
 4   it to me from this paragraph 31?
 5         A    Sure.  For instance, on the interim rent, I
 6   reviewed the schedules related to the calculation of
 7   interim rent that I have used in my computation.  And I
 8   understand that the Bates would be AMERIS792.
 9         Q    What document is that?
10         A    It's called "Account Drilldown."
11         Q    Does that have anything to do with the past
12   practice?
13         A    Yes.  It shows the change in interim rent.
14   The -- and you can see that schedule supports my numbers
15   on my -- in the back of my workbook here.
16         Q    Does that document talks about Balboa's past
17   practices?
18              MS. VILLAGOMEZ:  Objection.  Form.
19              THE WITNESS:  Well, you know, you're not going
20   to find verbiage on all these.  When you look at a case,
21   you don't necessarily see verbiage.  You see numbers.
22   And you see how things are calculated.  And that's where
23   you arrive at the numbers.
24         BY MS. YEE:
25         Q    So -- but you did not identify here, in your
```

Deborah Dickson                                                                                         January 15, 2026

```
 1   asking her -- objection.  Form.  Argumentative.
 2             THE WITNESS:  It's not correct.
 3        BY MS. YEE:
 4        Q    Are you stating that these past practices are
 5   of Balboa Capital pre-acquisition were not
 6   GAAP-compliant?
 7             MS. VILLAGOMEZ:  Objection.  Form.
 8             THE WITNESS:  I'm not stating that.  And
 9   what's actually very interesting is that Balboa Capital
10   had an audit every year, as does Ameris.  And the
11   audited financial statements done by a big,
12   well-recognized national firm show that they were
13   GAAP-compliant every year.
14             In financial statements and in GAAP
15   statements, there are frequently more than one way to
16   handle accounting matters, and that's evidenced by --
17   you'll see that in footnotes one and two in the back of
18   formal financial statements.  You'll see where the
19   accountants are required to identify the different GAAP
20   procedures that are used.  And of the different GAAP
21   procedures, how the company selects to use the
22   procedures, which GAAP procedures they apply, and what
23   their thought process is.
24             So it's -- it's not black-and-white, at all.
25   And so, additionally, I want to tell you that remember,
```

Deborah Dickson                                                January 15, 2026

```
 1   Balboa Capital pre-acquisition was a private company.
 2   And then Ameris, as you know, is a public company.  And
 3   so, if the LTIP agreement requires that the calculations
 4   be made on past practices -- frequently GAAP
 5   requirements for private companies are different than
 6   GAAP requirements for public companies.  And also, the
 7   GAAP requirements for private companies and GAAP
 8   companies or put into use, or required to be used, at
 9   different times.
10            You will find that throughout the issues that
11   are dealt with in this particular case.  I'm going to
12   give you a couple of examples.  An example would be what
13   we call "ASC842."  So that's Accounting Standards
14   Codification, C-O-D-I-F-C-A-T-I-O-N.  So you can
15   understand the word.  And so ASC842 has to do with
16   leases.  Public companies were required to implement the
17   leasing standard in, I believe, 2019; whereas private
18   companies, such as Balboa Capital before acquisition,
19   were not required to implement the leasing standard
20   until 2022.
21            And then another set of GAAP standards that
22   are different here are going to be ASC606, which is
23   going to be revenue recognition.  Private companies were
24   required to implement ASC606 in approximately 2019.  And
25   public companies were not required -- let me say -- we
```

Deborah Dickson                                                        January 15, 2026

1   reverse that.  Public companies were required to
2   implement ASC606 in approximately 2019; whereas private
3   companies were not required to implement it until 2023.
4           So there's a lot of variation with the
5   application of GAAP.  And private companies frequently,
6   legally, legitimately, every way possible meet their
7   audit requirements.  They're GAAP requirements, but the
8   requirements are different sometimes than the
9   requirements for public companies.  So when you're
10  trying to follow past practices for a private company,
11  there are differences that need to be taken into account
12  in the LTIP calculation.
13      BY MS. YEE:
14      Q   So I'm trying to -- I'm a little bit confused,
15  but I'm trying to understand.  You seem to put these two
16  concepts, you know, what we we're talking about, your
17  opinions, opposite of each other.  Which by that, I
18  meant past practices versus GAAP, to support your
19  conclusion that GAAP doesn't cover every aspect of the
20  LTIP calculations; correct?
21          MS. VILLAGOMEZ:  Objection.  Misstates
22  testimony.  Form.
23          THE WITNESS:  I'm not clear on your question.
24  Could you restate it, please?
25  ///

Deborah Dickson                                              January 15, 2026

```
 1        BY MS. YEE:
 2        Q    What I'm trying to say is: when we we're
 3   talking about the LTIP, and then our expert talked about
 4   that it needs to follow GAAP, which you disagreed, you
 5   seem to put those two concepts opposite of each other;
 6   past practices versus GAAP.  You even referred me to
 7   some of the language, you know, in the LTIP agreement,
 8   which you believe it should follow; past practices
 9   versus GAAP.
10             So I'm trying to understand.  Are those two
11   completely different concepts, or now -- because now
12   you're trying to say that because of this LTIP report in
13   2020, Balboa's past practice were actually
14   GAAP-compliant, but in a somewhat different way.  I'm
15   just trying to understand.
16             How do you put these two opposite of each
17   other, and then you are trying to reconcile this
18   inconsistency?
19             MS. VILLAGOMEZ:  Objection.  Form.
20   Argumentative.
21             THE WITNESS:  I disagree that there's any
22   inconsistency there.  What I'm trying to explain to you
23   is -- first of all, according to LTIP agreement, the way
24   I understand it, none of the calculations are required
25   to be under GAAP methodology, with the exception of the
```

Deborah Dickson                                                January 15, 2026

```
 1   initial direct costs.  However, I am explaining that
 2   Balboa Capital, pre-acquisition, was GAAP-compliant,
 3   just so you understand that.  But the LTIP agreement
 4   calculations, themselves, do not fall under the GAAP
 5   umbrella because they're not required to, other than the
 6   IDC.
 7            And I'm also just trying to explain to you
 8   that it can appear confusing to a non-accountant because
 9   regardless of whether you're using GAAP or you're not
10   using GAAP, GAAP applied to private companies at
11   different time periods, and in different ways, than it
12   did to public companies.  And so my calculations
13   straighten that out for us.
14       BY MS. YEE:
15       Q    So what you're trying to say is that even if
16   Balboa Capital, pre-acquisition, was GAAP-compliant, but
17   because the LTIP, again in your opinion, doesn't require
18   GAAP for every single aspect of the LTIP calculations,
19   that's why it doesn't need to follow GAAP.  It only
20   needs to follow past practice, whatever that means.
21            MS. VILLAGOMEZ:  Objection.  Mischaracterizes
22   her prior testimony.  Form.
23            THE WITNESS:  I'm not really clear what you
24   said there.  But to reiterate, I believe that when
25   making the calculations for the LTIP, I need to look at
```

Deborah Dickson                                            January 15, 2026

1   the past practices of Balboa Capital pre-acquisition.
2   How did they make -- make their computations to meet
3   their numbers?  And so, the same methodology should be
4   used after acquisition, whether it's GAAP or whether it
5   isn't, whether -- if Balboa was computing some of these
6   items on GAAP before acquisition.  If that was their
7   past practice, then they needed to compute it the same
8   way after acquisition.  If they were computing some of
9   these pre-acquisition non-GAAP because they didn't have
10  anything to do with GAAP, those items needed to be
11  computed the same exact way post-acquisition.
12       BY MS. YEE:
13       Q    Well, would you agree with me, if they were
14  already GAAP-compliant before acquisition as their past
15  practices, then why would there be an issue of not
16  following GAAP under the LTIP agreement?
17       A    That's pretty basic.  Because, again, nothing
18  is required to be GAAP, with the exception of the IDC.
19  And the calculations are not based on GAAP.  GAAP has
20  nothing to do with long-term incentive plans.
21       Q    Okay.  I'm not just talking about any
22  incentive plan; right?  Did you analyze whether a
23  private company, and again, I'm talking specifically
24  about Balboa Capital before acquisition.
25            Can that company, Balboa Capital, lawfully