MATTHEW SESSIONS (BAR NO. 307098)
STACEY A. VILLAGOMEZ (BAR NO. 317081)
MADISON E. LARSEN (BAR NO. 364953)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
2010 Main Street, 8th Floor
Irvine, California 92614-7214
Phone: (949) 553-1313
Fax: (949) 553-8354
E-Mail: msessions@allenmatkins.com
        svillagomez@allenmatkins.com
        mlarsen@allenmatkins.com

Attorneys for Plaintiff
PATRICK BYRNE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an Individual,<br><br>   Plaintiff,<br><br>   vs.<br><br>AMERIS BANK, a Georgia corporation,<br><br>   Defendant. | Case No. 8:24-cv-01989-MWC-JDE<br><br>ASSIGNED FOR ALL PURPOSES TO Judge Michelle Williams Court<br><br>**DECLARATION OF PATRICK BYRNE IN SUPPORT OF OPPOSITION TO DEFENDANT AMERIS BANK'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: February 13, 2026<br>Time: 1:30 p.m.<br>Ctrm: 6A<br><br>Disc. Cutoff: November 28, 2025<br>Trial Date: June 1, 2026 |

# DECLARATION OF PATRICK BYRNE

I, Patrick Byrne, declare as follows:

1. I am the plaintiff in this action. I have personal knowledge of the facts stated below and could competently testify to them if called as a witness. I submit this declaration in support of my Opposition to Defendant Ameris Bank's Motion for Summary Judgment.

### A. Balboa's Business and Historical Performance

2. I founded Balboa Capital ("Balboa") in 1988 and served as its Chief Executive Officer for more than thirty years. In that role, I oversaw Balboa's strategic direction, financial performance, and senior leadership. Balboa operates nationwide as an equipment leasing and financing company whose performance is driven by multi-year lease portfolios and underwriting models. A true and correct copy of a 2021 Project Pioneer Memorandum describing my role at Balboa, with bates label PLAINTIFF 000435-000498, is attached to the Compendium of Evidence as **Exhibit 63**.

3. During the entire period before Ameris's acquisition, the company had a long operating history with relatively predictable performance. That performance was driven by established lease portfolios and underwriting models. Balboa evaluated profitability using consistent internal metrics that reflected the long-term nature of its equipment leasing business, and this approach was critical to Balboa's business model. Those metrics were used consistently for management compensation, incentive planning, and performance evaluation long before the Ameris acquisition. This established Balboa's past practice.

### B. The Ameris Acquisition and the LTIP as a Material Inducement

4. In 2021, Ameris Bank pursued and ultimately acquired Balboa in December 2021. Before agreeing to sell Balboa to Ameris, Byrne evaluated multiple acquisition opportunities from other banks and financial institutions.

5. In connection with the acquisition, Ameris sought to retain me in a leadership role, and I agreed to remain as Chief Executive Officer. At closing, I entered into a written Employment Agreement governing my post-acquisition role and compensation. A true and correct copy of an August 2, 2021 Letter of Interest from Ameris Bank to Balboa, with bates label PLAINTIFF01137-01146, is attached to Plaintiff's Compendium of Evidence as **Exhibit 59**.

6. As part of the acquisition, Ameris implemented the Balboa Capital Long-Term Cash Incentive Plan ("LTIP"), a multi-year incentive plan tied to the Balboa Division's post-acquisition performance. My compensation package included participation in the LTIP as a material, bargained-for component of my compensation, distinct from base salary and quarterly bonuses.

7. The LTIP was a significant factor in my decision to sell Balboa to Ameris and to remain with the company following the acquisition. Before agreeing to sell Balboa to Ameris, I evaluated multiple acquisition opportunities from other banks and financial institutions. The proposals that I received for Balboa were very close in terms of price and structure but differed in incentives for Byrne's and the other approximately 180 employees of Balboa.

8. The LTIP pool allocation framework was established prior to the acquisition and included fixed percentage allocations for certain participants, including myself. My negotiated percentage allocation, through explicit agreement with Ameris, was a guaranteed 62.54% of the LTIP pool each year that performance thresholds were met. This arrangement was also explicitly discussed with Robert Rasmussen and Phil Silva, each of whom also received fixed percentage allocations of the LTIP pool. The remainder of the pool would then be allocated by me within pre-established framework. A true and correct copy of my email referencing Mr. Rasmussen's and Mr. Silva's fixed percentage allocations, with bates label AMERIS001198, are attached to Plaintiff's Compendium of Evidence as **Exhibit 56**. A true and correct copy of my February 10, 2023 email thread with Laura

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4938-7676-0454.1   -3-   DECLARATION OF PATRICK BYRNE IN SUPPORT OF OPPOSITION TO DEFENDANT AMERIS BANK'S MOTION FOR SUMMARY JUDGMENT

Rodriguez reflecting the Bank's approval of my LTIP payouts to Balboa Capital Personnel, with bates label AMERIS001202-001206, is attached to Plaintiff's Compendium of Evidence as **Exhibit 60**.

9. Several months before the acquisition and following the acquisition, I communicated to Balboa's key leaders, with Robert Rasmussen and Phil Silva present, that the LTIP was an important component of their post-acquisition compensation. Senior and mid-level leaders relied on those representations when deciding to remain with the company. I used the LTIP as a tool to retain, motivate, and reward Balboa personnel at all levels following the acquisition.

### C. My Understanding of the LTIP

10. Based on the communications and materials provided before and during the acquisition, I understood that LTIP awards were tied to Balboa's financial performance as measured under the LTIP and the Pioneer operating model, and that awards would be payable if the applicable performance targets were achieved. My Award Agreement covered annual performance periods for calendar years 2022, 2023, and 2024, and the LTIP remained in effect throughout those periods.

11. The LTIP provided that earnings before taxes ("EBT") was to be calculated in a manner that materially followed Balboa's past practice prior to Ameris's acquisition.

12. Prior to the acquisition, Balboa evaluated profitability and performance using consistent internal operating metrics that reflected the long-term economics of its equipment leasing business, rather than GAAP financial reporting prepared for external purposes. Those internal operating metrics constituted Balboa's historical past practice and formed the baseline reflected in the LTIP's performance framework and the Pioneer operating model.

### D. The Balboa Division's Early Performance at Ameris.

13. In 2022, Balboa performed strongly. Ameris calculated and paid LTIP awards for the 2022 performance period, including awards to me and to other

Allen Matkins Leck Gamble Mallory & Natsis LLP
4938-7676-0454.1
-4-
DECLARATION OF PATRICK BYRNE IN SUPPORT OF OPPOSITION TO DEFENDANT AMERIS BANK'S MOTION FOR SUMMARY JUDGMENT

Balboa employees. My understanding at the time was that these payments confirmed that Balboa's performance satisfied the threshold required under the governing LTIP framework. Accordingly, I did not undertake an independent recalculation of EBT for LTIP purposes at that time because there was no reason for me to do so: the certified outcome was that the performance threshold had been met, and LTIP payments were made in accordance with that conclusion.

14. I did not understand acceptance of the 2022 LTIP payment to constitute agreement with Ameris's methodology for future performance periods or a waiver of my right to object to subsequent changes in calculation methodology. At the time, Ameris had not disclosed to me that it intended to apply GAAP globally to LTIP EBT calculations or to depart from the Pioneer model assumptions.

### E. Ameris' Calculations of the LTIP and My Objections.

15. Beginning in 2023, I learned that Ameris had determined that the Balboa Division failed to meet the LTIP performance threshold and that no LTIP payment would be made for that year. This conclusion was surprising to me because my understanding of Balboa's performance was that it had improved compared to the prior year.

16. After learning of Ameris's determination, I requested and reviewed the LTIP workbooks prepared by Ameris for the 2022 and 2023 performance periods. Based on that review, I learned that Ameris had applied calculation approaches that differed from the assumptions and practices reflected in the Pioneer Q1 2021 Operating Model and Balboa's historical past practices.

17. In particular, Ameris appeared to take the position that GAAP accounting principles applied globally to the LTIP Earnings Before Tax calculation, rather than only where expressly identified in the LTIP. That position was inconsistent with how the LTIP had been explained to me during the acquisition and with my understanding of how LTIP performance was to be measured.

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4938-7676-0454.1   -5-   DECLARATION OF PATRICK BYRNE IN SUPPORT OF OPPOSITION TO DEFENDANT AMERIS BANK'S MOTION FOR SUMMARY JUDGMENT

18. The changes I observed included, among other things, the treatment of overhead expenses, interim rent, stipulated judgments, repossessions, and the allowance for loan losses. In my experience, these items had historically been treated in a manner that reflecting Balboa's accounting methodologies prior to the acquisition. Ameris's revised approaches materially reduced Balboa's reported Earnings Before Tax for LTIP purposes, even though the underlying performance of the business had not declined to the same degree.

19. I raised concerns regarding these calculations because I believed they departed from the express terms of the LTIP and from Balboa's past practices. My objections were not based on a disagreement with GAAP as an accounting framework, but on my understanding that Ameris was applying GAAP selectively and in a manner inconsistent with the LTIP's key assumptions as defined in the LTIP agreement. Under my calculations, the threshold EBT for 2023 had been satisfied and thus payment was required. A true and correct copy of a July 24, 2023 email thread reflecting my concerns from me to James LaHaise and copying others, with bates label AMERIS0014104, is attached to Plaintiff's Compendium of Evidence as **Exhibit 57**.

20. When I raised these concerns, Ameris responded by asserting that the LTIP calculations were required to follow GAAP and that the performance threshold therefore had not been satisfied. Ameris did not state that it was exercising discretion under the LTIP, nor did it identify any provision authorizing it to override the Pioneer operating model or materially depart from Balboa's historical practices. Following my discussions, James LaHaise acknowledged that the 2022 LTIP calculation required an adjustment, and he issued a reconciliation. Still, the reconciliation did not fully resolve the inconsistencies that I had raised as to the 2022 LTIP Pool calculation. A true and correct copy of my April 28, 2022 email exchange with Mr. LaHaise is attached to Plaintiff's Compendium of Evidence as **Exhibit 55**.

21. In or around the summer of 2023, Ms. Stokes and Mr. LaHaise traveled to California and met with me in person. During that meeting, I reiterated my concerns regarding Ameris's LTIP calculation methodology and its consistency with the LTIP Agreement, the Pioneer operating model, and pre-acquisition practices. No agreement was reached, and my concerns remained unresolved following that meeting.

22. Throughout this period, my focus remained on operating the Balboa Division and improving its performance. I did not attempt to manipulate or revise LTIP calculations to make performance appear to meet any target, nor did I instruct any employee to violate Ameris's internal controls or accounting procedures.

23. From my perspective, the dispute was not about accounting theory, but about whether the LTIP would be administered as promised—by materially following Balboa's past practices – or whether Ameris could redefine performance after the fact in a manner that reduced or eliminated earned incentives.

24. I raised these concerns repeatedly and in good faith because the LTIP affected not only my compensation, but also the compensation of other Balboa leaders who relied on the LTIP when deciding to remain with the company following the acquisition.

**F.  Ameris' Responses to My Concerns and Eventual Termination**

25. After I raised concerns regarding the LTIP calculations both verbally and in writing, including through multiple emails in 2023 and 2024, my relationship with Ameris leadership deteriorated. I was increasingly portrayed as difficult or disruptive, even though my focus remained on Balboa's performance and the integrity of the LTIP process. While I did not characterize my concerns as "retaliation" while still employed, I repeatedly raised substantive objections to the LTIP calculations and their impact on compensation through the channels available to me. For example, I did not undermine Mr. Phil Silva in any communication, nor did I have any intention of doing so. I did not believe that my LTIP-related

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4938-7676-0454.1    -7-    DECLARATION OF PATRICK BYRNE IN SUPPORT OF OPPOSITION TO DEFENDANT AMERIS BANK'S MOTION FOR SUMMARY JUDGMENT

1  discussions with him or others were inappropriate or unprofessional. A true and
2  correct copy of a January 19, 2024 email I received from Phil Silva, with bates label
3  PLAINTIFF 001531-001533, is attached to the Compendium of Evidence as
4  **Exhibit 64**.

5      26.    I understood my repeated objections to the LTIP calculations and their
6  impact on employee compensation to be good-faith complaints regarding
7  compensation practices and compliance with the governing incentive plan. I raised
8  these concerns to address problematic compensation practices affecting multiple
9  employees.

10      27.    My 2023 annual performance review did not document that I failed to
11  meet the performance goals that were established for me or for the Balboa Division
12  at the beginning of the year. The goals referenced in the review were not goals that
13  had been set for me at the outset of 2023, and I achieved the operational and
14  financial objectives that had actually been established for that year.

15      28.    Although I did not always memorialize my concerns in the specific
16  email chains Ameris now cites, I raised concerns regarding Ameris's LTIP
17  calculation methodology and treatment of the LTIP pool through multiple
18  communications and discussions, including with Ameris personnel involved in
19  compensation and accounting. Ameris did not meaningfully address the substance
20  of my concerns. Instead, the same disputed methodologies continued to be applied.

21      29.    In early February 2024, Mr. LaHaise sent me a written response to the
22  LTIP issues I had raised. I did not refuse to discuss these issues by phone, and I
23  remained willing to engage regarding the proper application of the LTIP. Mr.
24  LaHaise's February 5, 2024 email reflected Ameris's position, but it did not resolve
25  my disputes regarding the LTIP calculations or the amounts owed.

26      30.    In 2024, Ameris issued a non-renewal notice regarding my
27  employment, while at the same time continuing to engage in discussions with me

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4938-7676-0454.1      -8-      DECLARATION OF PATRICK BYRNE IN SUPPORT OF OPPOSITION TO DEFENDANT AMERIS BANK'S MOTION FOR SUMMARY JUDGMENT

about my role and responsibilities. These mixed messages reinforced my belief that the compensation disputes had strained my relationship with Ameris leadership.

31. At the time of my termination in June 2024, my entitlement under the 2024 LTIP was not uncertain. My entitlement to the 2024 LTIP was guaranteed according to my Employment Agreement, not on continued employment through year-end.

32. Ultimately, Ameris terminated my employment. I do not understand this decision to have been based on performance issues. Indeed, I was informed that my termination was determined to be "without cause," but it followed my repeated objections to Ameris's LTIP calculations and my efforts to secure proper compensation for Balboa employees. Ameris did not terminate me for performance deficiencies, relationship issues, or any failure to follow internal controls, and I dispute that any of those asserted reasons accurately reflect my conduct or the Balboa Division's performance. I would have liked to continue in the role of Division CEO. A true and correct copy of my February 28, 2024 email to Phil Silva regarding this subject, with bates label AMERIS001521, is attached to Plaintiff's Compendium of Evidence as **Exhibit 58**.

33. I was not informed that my employment was being terminated prior to receiving Ameris's June 27, 2024 termination email.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 23, 2026, at Dana Point, California.

Signed by:

*Patrick Byrne*

083090AFE8BE43A...

PATRICK BYRNE

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4938-7676-0454.1    -9-    DECLARATION OF PATRICK BYRNE IN SUPPORT OF OPPOSITION TO DEFENDANT AMERIS BANK'S MOTION FOR SUMMARY JUDGMENT