MATTHEW SESSIONS (BAR NO. 307098)
STACEY A. VILLAGOMEZ (BAR NO. 317081)
MADISON E. LARSEN (BAR NO. 364953)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
2010 Main Street, 8th Floor
Irvine, California 92614-7214
Phone: (949) 553-1313
Fax: (949) 553-8354
E-Mail: msessions@allenmatkins.com
        svillagomez@allenmatkins.com
        mlarsen@allenmatkins.com

Attorneys for Plaintiff
PATRICK BYRNE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>AMERIS BANK, a Georgia corporation,<br><br>Defendant. | Case No. 8:24-cv-01989-MWC-JDE<br><br>ASSIGNED FOR ALL PURPOSES TO Judge Michelle Williams Court<br><br>**DECLARATION OF JACQUIE EMERT IN SUPPORT OF OPPOSITION TO DEFENDANT AMERIS BANK'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: February 13, 2026<br>Time: 1:30 p.m.<br>Ctrm: 6A<br><br>Disc. Cutoff: November 28, 2025<br>Trial Date: June 1, 2026 |

**DECLARATION OF JACQUIE EMERT**

I, Jacquie Emert, declare as follows:

1. I am an individual over the age of eighteen and competent to testify. I have personal knowledge of the facts set forth in this declaration. If called as a witness, I could and would testify competently thereto. I submit this declaration in support of Plaintiff Patrick Byrne's ("Byrne") Opposition to Defendant Ameris Bank's ("Ameris") Motion for Summary Judgment. Unless otherwise stated, the facts set forth below are based on my personal involvement, observations, and communications in the ordinary course of my duties at Balboa Capital ("Balboa").

2. I began working at Balboa in or around April 1989, just one year after the company was founded. Over the course of my employment at Balboa, I served in various roles, including my last role as Vice President of Loan Operations for the Balboa Capital division of Ameris. Prior to Ameris's acquisition of Balboa I was the manager of accounting operations. I worked closely with Mr. Byrne and other members of Balboa's senior leadership for decades.

3. During the period when Balboa was privately held, I had responsibility for significant aspects of Balboa's accounting processes. Through this work, I became very familiar with Balboa's historical business practices, internal controls, and performance metrics.

**A.   Balboa's Operations and Oversight Prior to the Ameris Acquisition**

4. Prior to Ameris's acquisition of Balboa, Balboa operated with substantial internal controls and external oversight. Balboa regularly worked with lenders, auditors, rating agencies, and regulatory and compliance professionals, including with respect to accounting practices, tax compliance, and lease administration.

5. In my experience, Balboa's accounting and operational practices were well established and consistently applied over time, including Balboa's internal performance metrics. Balboa's pre-acquisition internal operational metrics and

LAW OFFICES
Allen Matkins Leck Gamble Mallory & Natsis LLP

4917-4553-9977.2   -2-   DECLARATION OF JACQUIE EMERT IN SUPPORT OF OPPOSITION TO DEFENDANT AMERIS BANK'S MOTION FOR SUMMARY JUDGMENT

incentive plans were not required to conform to GAAP as they served a different purpose than external financial reporting.

### B. The LTIP and Communications During the Acquisition

6. During the period leading up to Ameris's acquisition of Balboa, I was aware that a Long-Term Cash Incentive Plan ("LTIP") at issue was discussed as a significant component of the post-acquisition compensation structure for Balboa's leadership.

7. Based on my discussions with Mr. Byrne and my involvement in Balboa's leadership communications, I understood that the LTIP was intended to reward strong performance following the acquisition and was discussed internally as an important component of post-acquisition compensation.

8. I also understood that the LTIP pool allocation framework, including fixed percentages for certain participants, such as Mr. Byrne, and a remaining portion subject to allocation by Mr. Byrne, was established prior to the acquisition and was not determined after the fact.

### C. Interactions with Ameris Personnel

9. During 2023 and 2024, Ameris personnel, including members of senior leadership, periodically visited Balboa's offices. In connection with those visits, I assisted with scheduling, logistics, and meeting arrangements, and I was generally aware of the topics being discussed.

10. Based on my involvement, meetings with Ameris personnel during these visits addressed a range of operational, accounting, and performance issues. In my experience, Mr. Byrne's concerns regarding LTIP calculations were not resolved during these visits and remained an ongoing point of disagreement.

### D. Mr. Byrne's Conduct and Leadership

11. Throughout the post-acquisition period, Mr. Byrne remained actively engaged in the leadership of the Balboa Division. In my experience, he continued to

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4917-4553-9977.2   -3-   DECLARATION OF JACQUIE EMERT IN SUPPORT OF OPPOSITION TO DEFENDANT AMERIS BANK'S MOTION FOR SUMMARY JUDGMENT

focus on Balboa's performance and to advocate for compensation that he believed was consistent with the LTIP and with Balboa's historical practices.

12. I did not observe Mr. Byrne disengaging from his role or instructing employees to disregard Ameris's policies or procedures. To the contrary, his communications reflected a desire to address what he believed were discrepancies in how the LTIP was being calculated and applied by Ameris.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 23, 2026, at Huntington Beach, California.

_____
JACQUIE EMERT