Stacy L. Fode, Esq. (SBN 199883)
sfode@nfclegal.com
Nana J. Yee, Esq. (SBN 272783)
nyee@nfclegal.com
**NUKK-FREEMAN & CERRA, P.C.**
550 West C Street, Suite 910
San Diego, CA 92101
Telephone: 619.292.0515
Facsimile: 619.566.4741

Attorneys for Defendant
AMERIS BANK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>AMERIS BANK, a Georgia corporation,<br><br>Defendant. | Case No. 8:24-cv-01989-MWC (JDEx)<br><br>**REPLY IN SUPPORT OF DEFENDANT AMERIS BANK'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT AS TO EACH OF PLAINTIFF'S CLAIMS**<br><br>Judge: Hon. Michelle Williams Court<br>Date: February 13, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 6A<br><br>Discovery Cut-Off: November 28, 2025<br>Pretrial Conference: May 22, 2026<br>Trial Date: June 1, 2026 |

---

*PATRICK BYRNE v. AMERIS BANK*                                                         Case No. 8:24-01989
Reply in Support of Defendant's Motion for Summary Judgment

# TABLE OF CONTENTS

I. SUMMARY OF REPLY ................................................................................... 1

II. BYRNE FAILS TO RAISE A TRIABLE ISSUE OF FACT AS TO ANY CLAIM .... 2

   A. Byrne's Claim for Unpaid Wages Fails as a Matter of Law ..................... 2

      *1. Byrne has not pled a breach of contract claim and cannot litigate one in opposition to summary judgment to manufacture a triable issue of fact.* .......... 2

      *2. The LTIP is a discretionary, post-closing incentive plan—not mandatory compensation—and Byrne's new 62.54% assertion is inadmissible.* ............... 3

      *3. Byrne's Opposition misstates both Ameris's argument and the law.* ................ 5

      *4. Disagreement over accounting methods does not create a triable issue of fact.* 7

      *5. Byrne's acceptance of the 2022 LTIP payment does not make it wages.* ......... 8

      *6. Byrne was not entitled to an LTIP award for 2022-2024 and the undisputed facts show that Ameris acted in good faith.* ....................................................... 9

   B. Byrne's Claim for Whistleblower Retaliation Fails as a Matter of Law ................... 9

   C. Byrne's Claim for Wrongful Termination Fails as a Matter of Law ...................... 12

   D. Byrne's Claim Under UCL and For Punitives Fail as a Matter of Law ................. 12

III. CONCLUSION ............................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*Barton v. Alexander Hamilton Life Ins. Co. of Am.*
   110 Cal.App.4th 1640 (2003) .................................................................. 12

*Bruni v. The Edward Thomas Hosp. Corp.*
   64 Cal. App. 5th 247 (2021) ................................................................... 12

*Coleman v. Quaker Oats Co.*
   232 F.3d 1271 (9th Cir. 2000) .................................................................. 5

*Edgerly v. City of Oakland*
   211 Cal. App. 4th 1191 (2012) ............................................................... 10

*F.T.C. v. Publ'g Clearing House, Inc.*
   104 F.3d 1168 (9th Cir. 1997) ............................................................ 5, 12

*FPI Dev., Inc. v. Nakashima*
   (1991) 231 Cal. App. 3d 367 ................................................................... 3

*Great Minds v. Office Depot, Inc.*
   945 F.3d 1106 (9th Cir. 2019) .................................................................. 3

*Kempf v. Barrett Bus. Servs., Inc.*
   336 F. App'x 658 (9th Cir. 2009) ............................................................ 7

*Killgore v. SpecPro Pro. Servs., LLC*
   51 F.4th 973 (9th Cir. 2022) .................................................................. 10

*Mondragon v. Let's Do Lunch, Inc.*
   No. B321440, 2025 WL 1088010 (Cal. Ct. App. Apr. 11, 2025) ............ 12

*Neisendorf v. Levi Strauss & Co.*
   143 Cal. App. 4th 509 (2006) .................................................................. 6

*Pickern v. Pier 1 Imps. (U.S.), Inc.*
   457 F.3d 963 (9th Cir. 2006) .................................................................. 3

*Rosenthal-Zuckerman v. Epstein, Becker & Green Long Term Disability Plan*
   39 F. Supp. 3d 1103 (C.D. Cal. 2014) ..................................................... 3

*Ross v. Cnty. of Riverside*
  36 Cal. App. 5th 580 (2019) ....................................................................................... 10
*Schachter v. Citigroup, Inc.*
  47 Cal. 4th 610 (2009) ............................................................................................. 6, 7
*Smith v. Level 3 Commc'ns Inc.*
  2015 WL 833614 (N.D. Cal. Feb. 24, 2015) ................................................................ 6
*Villiarimo v. Aloha Island Air, Inc.*
  281 F.3d 1054, 1059 n.5 (9th Cir. 2002) ...................................................................... 5
*Wentzo v. Signavio, Inc.*
  No. CV 21-09968 TJH (JCX), 2024 WL 3191228 (C.D. Cal. Apr. 29, 2024) ............ 4, 7

**Statutes**

Labor Code § 1102.5 ......................................................................................................... 11

## I. SUMMARY OF REPLY

Plaintiff Patrick Byrne's ("Byrne") Opposition is based on a lawsuit he did not file. Recognizing the fatal deficiencies in his employment claims, Byrne attempts to repackage his employment dispute as a breach of contract claim, raising issues with not only the formation, intent, and interpretation of the long-term incentive plan ("LTIP"), but also the underlying sale of his business, Balboa Capital, *in 2021*. Byrne understands that raising new claims at the summary judgment phase—after discovery has closed and with this Court having already denied his request to amend his Complaint—would be highly prejudicial to Defendant Ameris Bank ("Ameris") and instead attempts to circumvent these due process concerns by bootstrapping a breach of contract theory into his Labor Code claim.

Byrne's wage claims fail as a matter of law because it is undisputed that LTIP Cash Awards are discretionary, contingent, and unascertainable, and therefore not earned wages. Understanding that he bears the burden of proof and cannot establish his discretionary bonus under the LTIP was reasonably ascertainable, Byrne improperly asserts, for the *first time* in his Opposition, that he was entitled to an agreed-upon and fixed percentage of the LTIP pool for each performance period. By lobbing this "Hail Mary" argument, Byrne asks the Court to ignore the fact that, despite extensive discovery, he never testified to this alleged entitlement, never disclosed it in written discovery, and no such entitlement appears anywhere in document production. In fact, the governing LTIP Award Agreement itself—which he negotiated and accepted with the assistance of legal counsel—does not include this 62.5% amount and is intentionally **blank** on the amount of allocation. Byrne cannot now rewrite the LTIP to manufacture a guaranteed bonus.

Similarly, Byrne understands his Labor Code § 1102.5 whistleblower claim fails because his challenges to Ameris's accounting methodology and LTIP calculations *at the time* are not protected activity. Byrne nevertheless argues that he reasonably believed his complaints were of a legal violation, as the statute requires. But if that were true, where is

---

*PATRICK BYRNE v. AMERIS BANK*  Case No. 8:24-01989
Reply in Support of Defendant's Motion for Summary Judgment  Page 1

the contemporaneous evidence of this whistleblower complaint? In fact, Byrne admits in his Opposition—and it is *undisputed*—that the contemporaneous communications and evidence of his alleged whistleblowing "reflect differing views regarding accounting treatment and the proper application of the LTIP's performance assumptions" and "a disagreement regarding accounting treatment…." (Response to Defendant's's Separate Statement of Undisputed Facts ["Resp. SSUF"] 59, 89.) California law is clear that such disputes do not constitute whistleblowing and cannot be retroactively recharacterized as wage complaints simply because Byrne hoped the outcome might increase his own compensation. Byrne's whistleblower theory also fails for an independent reason: it is *undisputed* that Byrne demanded adoption of a non-GAAP accounting methodology that Ameris, a publicly traded company, could not lawfully adopt. Rather than accept the determination of Ameris's CFO and his supervisor (also a C-Suite executive), Byrne insisted he knew better. Lastly, it is *undisputed* that Byrne never raised retaliation concerns at any time to his supervisor, Ameris leadership, or Human Resources. (Resp. SSUF 36.)

For these same reasons, Byrne's wrongful termination claim fails for lack of any independent statutory or public policy violation, and his UCL claim likewise collapses as wholly derivative and unsupported by evidence. Absent viable underlying claims, his demand for punitive damages also fails.

In sum, Byrne's claims rest on a single, self-serving dispute over LTIP calculations, unsupported by admissible evidence. However, the law does not convert disagreements over accounting methodology, speculative LTIP interpretations, or internal business disputes into actionable employment claims. Lacking any triable issue of fact, Byrne cannot avoid summary judgment and Ameris's Motion must be granted in full.

## II. BYRNE FAILS TO RAISE A TRIABLE ISSUE OF FACT AS TO ANY CLAIM

### A. Byrne's Claim for Unpaid Wages Fails as a Matter of Law

*1. Byrne has not pled a breach of contract claim and cannot litigate one in opposition to summary judgment to manufacture a triable issue of fact.*

Byrne's Opposition is peppered with arguments relating to the formation, drafting, intent, and interpretation of the LTIP, repeatedly asserting that Ameris "misapplied" its terms. For example, Byrne argues that the LTIP "was a material part of Ameris's acquisition proposal and factored into Byrne's decision to select Ameris over other potential acquiring companies," that it "was a negotiated component of [his] compensation," that his objections "focused on whether the EBT calculation complied with the LTIP's defined assumptions and performance framework" and that "Ameris's methodology departed from the LTIP's express terms and from [Balboa Capital]'s historical practices…." (Dkt. 108 at 1, 3, 6 *passim*.)

These arguments improperly attempt to inject a breach of contract theory that **Byrne did not plead in his Complaint and that this Court expressly denied leave to add**. (Dkt. Nos. 1, 87). It is black-letter law that a plaintiff may not raise new claims for the first time in opposition to summary judgment. *See*, *e.g.*, *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (affirming district court's rejection of allegations presented for first time in opposition to summary judgment); *FPI Dev., Inc. v. Nakashima* (1991) 231 Cal. App. 3d 367, 381-82. This rule reflects fundamental due process principles: a defendant must have notice of the claims alleged and an opportunity to conduct discovery and defend against them. Absent a *pled* breach of contract claim, Byrne's disagreement with Ameris's interpretation, administration, or calculation of the LTIP is legally irrelevant, outside the scope of his pleadings, and cannot create a triable issue of fact.[1] Accordingly, Byrne's breach-of-contract arguments should be disregarded.

### 2. *The LTIP is a discretionary, post-closing incentive plan—not mandatory compensation—and Byrne's new 62.54% assertion is inadmissible.*

Byrne next attempts to recast the LTIP as mandatory compensation allegedly

---

[1] Even if a breach of contract claim were properly before the Court (it is not), interpretation of the LTIP would still be a legal question. *See Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) (under California law, contract interpretation is a question of law.); *Rosenthal-Zuckerman v. Epstein, Becker & Green Long Term Disability Plan*, 39 F. Supp. 3d 1103, 1106 (C.D. Cal. 2014) (same).

---

promised as part of his employment and negotiated in connection with the Stock Purchase Agreement ("SPA"). That argument fails as a matter of law. Although Byrne's employment agreement states he was "expected to participate" in a "separate and distinct" long-term incentive plan, any right to payment is governed solely by—and contingent upon—the LTIP itself. (SSUF 10, 16-17.) The LTIP is a standalone, post-closing incentive plan, **not** part of the SPA or guranteed compensation. Funding of any LTIP cash pool and any individual award depends entirely on the LTIP's express terms and discretionary conditions. (SSUF 10, 16-17.) Because such incentive payments are not fixed by any method of calculation nor are they otherwise "ascertainable," they do not constitute earned wages under Labor Code § 200. *Wentzo v. Signavio, Inc.,* No. CV 21-09968 TJH (JCX), 2024 WL 3191228, at *5 (C.D. Cal. Apr. 29, 2024).

    Byrne attempts to sidestep this settled law and transform contingent incentive compensation into a fixed-percentage individual award by introducing a new and unsupported theory: that he negotiated an "explicit agreement" which "guaranteed" a fixed 62.54% share of the LTIP pool each year. (Dkt. 108 at 13-15; Resp. SSUF 39.) This assertion appears for the *first time* in his Opposition and finds no support in the governing agreements or the evidentiary record. Indeed, the Bates-stamped materials Byrne cites in support of this novel theory do **not** reference any such percentage. (*Id.*) Further, this alleged "62.54% entitlement" appears nowhere in the pleadings, written discovery responses, deposition testimony of Byrne[2], or any document produced in fulsome discovery. When Byrne was asked in discovery for the complete factual basis of his wage claims, he never identified any fixed percentage or contractual right; instead, Byrne stated only that Ameris allegedly failed to pay him monies due from the 2022 and 2023 LTIP awards and had not timely paid the 2024 LTIP. (See Exhibit A to Reply

---

[2] At his deposition, Byrne merely testified that the LTIP pool was "pre-negotiated" among himself, Rob Rasmussen, and Phil Silva, with the remainder allocated to other employees—never that he had an explicit agreement with Ameris to a fixed 62.54% individual award. (Resp. SSUF 39).

---

*PATRICK BYRNE v. AMERIS BANK*                   Case No. 8:24-01989
Reply in Support of Defendant's Motion for Summary Judgment      Page 4

Declaration of Stacy Fode.)

This new assertion also directly contradicts the governing LTIP Award Agreement, which clearly leaves any individual allocation **blank**.[3] (SSUF 9-10, 17.) The Award Agreement also vests the Committee or its delegate with discretion over eligibility, calculation, allocation, and awards. (SSUF 11, 12, 14.) Byrne's new assertion is facially implausible: no incentive plan allocates a fixed majority percentage of the bonus pool to a single employee irrespective of performance or plan conditions. (SSUF 9-12, 16-17.)

Because Byrne failed to disclose this theory during discovery, he cannot manufacture a triable issue through a self-serving declaration or rely on another unsupported, objectionable declaration parroting the same percentage.[4] The Ninth Circuit has repeatedly rejected similar attempts to defeat summary judgment through self-serving declarations, post-hoc factual claims that contradict prior sworn testimony, and theories that were never disclosed in discovery. *See F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (uncorroborated, conclusory, and self-serving affidavit insufficient to create a genuine issue of material fact); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 n.5, 1061 (9th Cir. 2002) (same); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir. 2000) (exclusion proper where plaintiff failed to disclose theory during discovery). Byrne's late-breaking 62.54% assertion is therefore inadmissible.

### 3. Byrne's Opposition misstates both Ameris's argument and the law.

Byrne incorrectly argues that all bonus or incentive compensation, whether discretionary or nondiscretionary, automatically constitutes "wages" under the Labor

---

[3] See Dkt. 93.6, Exh. 3 (AMERIS000228): "Cash Bonus Award: [**NUMBER**]% of the Incentive Pool (if any) established for each Performance Period."

[4] Byrne submitted a nine-page declaration attempting to "correct" and supplement his deposition testimony and prior discovery responses. He also relies on declarations from two former employees. Ameris incorporates by reference its detailed Evidentiary Objections to these declarations.

Code. (Dkt. 108 at 8-10.) While mischaracterizing the cases cited by Ameris[5], Byrne relies on cases recognizing the uncontroversial principle that incentive compensation constitutes wages only if the employee satisfies all conditions precedent and the amount is "fixed or ascertained by [some method of calculation]." (Dkt. 108. at 8-10.) Ameris does not dispute that principle. Rather, its position—squarely supported by California law—is that incentive compensation is not payable under Labor Code §§ 201–203 unless it was earned, vested, and ascertainable. (Dkt. 93.1 at 15-18); *Neisendorf v. Levi Strauss & Co.*, 143 Cal. App. 4th 509, 523-24 (2006) (incentive compensation constitutes wages only after all conditions precedent are satisfied; if conditions unmet at termination, the compensation is not earned or payable under §§ 201–203); *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 621-22 (2009) (same.)

Here, the undisputed evidence establishes that Byrne never earned a vested right to any specific LTIP payment at the time of his termination. As set forth in Ameris's Motion, all material aspects of the LTIP—including eligibility, performance criteria, allocation of the LTIP pool, and the fact and amount of any individual award—were subject to Ameris's discretion. (SSUF 11, 12, 14.) The LTIP's conditions precedent governed only whether a pool would be funded, not whether any individual was entitled to an award, including Byrne. (SSUF 9-10, 17.) Accordingly, the cases Byrne cites are inapposite, as each involved a specific target or threshold amount for the individual employee.[6] Here, by contrast, even if the Balboa Division met the condition precedent

---

[5] For example, he asserts that the issue in *Smith v. Level 3 Commc'ns Inc.*, 2015 WL 833614 (N.D. Cal. Feb. 24, 2015) "was whether an employee's commissions had been 'earned' at the time of termination, not whether they were 'discretionary.'" (Dkt. 108 at 10.) This blatantly ignores the express language from *Smith* that "***[t]he issue is whether*** the 'commissions' that plaintiff had banked ***under Level 3's incentive compensation plan*** constituted 'earned wages,' entitling her to payment when she was terminated, or whether ***these 'commissions' constituted a discretionary bonus, not entitling her to payment***." 2015 WL 833614, at *2.

[6] *See, e.g., Neisendorf*, 143 Cal. App. 4th at 521 ("there is a target amount established each year *for every employee*" (emphasis added)); *Kempf v. Barrett Bus. Servs., Inc.*, 336

---

*PATRICK BYRNE v. AMERIS BANK*  Case No. 8:24-01989
Reply in Support of Defendant's Motion for Summary Judgment  Page 6

(i.e., the EBT threshold) necessary to fund an LTIP pool, Byrne's individual incentive, if any, remained discretionary, unvested, and not reasonably ascertainable. Such contingent compensation does not constitute wages under California law. See *Wentzo*, 2024 WL 3191228, at *5; *Neisendorf*, 143 Cal. App. 4th at 518.

Nor does Byrne's reliance on SSUF 39 create a triable issue of fact. (Dkt. 108 at 12.) SSUF 39 reflects only that Byrne received a 2022 LTIP award exceeding $5.6 million—over 62% of the pool—based on his own recommendation and does not establish any contractual guarantee or condition precedent entitling him to future payments. The LTIP expressly provides that no Cash Award is owed unless and until paid, and participation in one performance period does not guarantee participation in any future period. (SSUF 16.) At most, Byrne held a contingent expectation of a discretionary bonus.

### 4. *Disagreement over accounting methods does not create a triable issue of fact.*

The Opposition identifies no computational error, data misstatement, or violation of accounting principles in Ameris's EBT calculation under the LTIP. Instead, Byrne argues that the calculation was incorrect because Ameris did not follow the accounting methodology *he* believes reflects Balboa Capital's pre-acquisition "past practice." (Dkt. 108 at 15). Critically, this contention does not raise a factual dispute—it merely presents a legal and methodological disagreement that cannot defeat summary judgment on the claims pled.

The undisputed record shows that the LTIP Award Agreement contains a single footnote referencing one aspect of the LTIP: "Note to Sellers: Balboa has an established CECL model and vendor, which will apply to the Balboa Capital division. The general premise of the LTIP is to materially follow past practices, which this calculation is

---

F. App'x 658, 662 (9th Cir. 2009) (employer did not dispute employee satisfied conditions precedent under the bonus plan); *Schachter*, 47 Cal. 4th at 614-21 (holding that, where an employee elected to receive restricted stock—subject to a two-year vesting period—in lieu of a set percentage of salary under the incentive plan and failed to satisfy the vesting period, neither the stock nor the percentage of his annual compensation were wages as he only had a "contingent rights" to the stock, not an entitlement).

maintaining." (Dkt. 108 at 15-16.) This footnote does not, and cannot, impose a global "past practice" obligation on Ameris, nor does it define any accounting methodology. Byrne instead points to the Pioneer 1Q21 Operating Model ("Pioneer Model") as a supposed baseline for "past practice," but the Pioneer Model contains *no discussion or detail of, or any reference to, any accounting methodology*. (SSUF 23.) In any event, Byrne's unilateral interpretation of an undefined contractual reference is insufficient to create a triable issue of fact.

Byrne's global "past practice" methodology also conflicts with Ameris's obligations as a publicly traded financial institution. The LTIP Award Agreement expressly references the use of GAAP (SSUF 21, 22), and both the LTIP and Award Agreement expressly mandate compliance with all applicable state and federal law and banking regulations and vest Ameris with sole discretion over LTIP administration, including interpreting and applying its provisions. (SSUF 11, 20.) Nothing in the LTIP or Award Agreement prohibits the use of GAAP, and alleged, undefined past practices cannot override unambiguous plan terms or regulatory requirements. No court will entertain a theory that would require a public traded company to calculate incentive compensation in a matter divorced from GAAP-accounting and applicable regulatory mandates.[7]

### 5. *Byrne's acceptance of the 2022 LTIP payment does not make it wages.*

Byrne's reliance on Labor Code §§ 206.5 and 219 is misplaced. (Dkt. 108 at 11.) Ameris does not contend that Byrne executed a release of wages or waived statutory rights upon receipt of his 2022 LTIP payment. The issue is whether any *additional* LTIP amounts were owed "wages" in the first place. They were not. Sections 206.5 and 219 do not transform contingent incentive compensation into earned wages, nor do they override plan terms reserving discretion over payment and calculation for Ameris. Byrne's

---

[7] The Opposition makes only a passing reference to Byrne's expert, Debora Dickson. (Dkt. 108 at 15.) Any reliance on Dickson's opinions or testimony should be disregarded because they are the subject of Ameris's pending motion to exclude on both procedural grounds and under Rule 702 and *Daubert*. Thus, references to Dickson fall outside the scope of this Motion and cannot create a triable issue of fact.

acceptance of a discretionary 2022 LTIP payment therefore does not establish that any additional alleged amounts were earned, vested, or payable upon termination.

### 6. Byrne was not entitled to an LTIP award for 2022-2024 and the undisputed facts show that Ameris acted in good faith.

Assuming *arguendo* that the LTIP award, once earned, is a wage, Byrne has failed to raise a triable issue of fact that any such "wages" for 2022 through 2024 were owed when his employment ended on June 30, 2024. It is undisputed that Byrne received and accepted his 2022 LTIP award based on Ameris's calculations applied in the ordinary course under the LTIP. (SSUF 39.) For 2023, Ameris calculated the LTIP in good faith and determined the Balboa Division did not meet its EBT target, resulting in no payout. (SSUF 61.) The undisputed record further shows that Ameris's CFO, CSO, and accounting staff carefully reviewed and considered Byrne's challenges to the LTIP calculations and explained why his interpretation was incorrect and non-GAAP compliant. (SSUF 36; 56-60.) Byrne therefore cannot establish "willfulness" under Labor Code § 203. As to any alleged entitlement to a 2024 LTIP award, Byrne was terminated in June before earning any award, as the year-end LTIP pool had not been calculated, was not ascertainable, and remained subject to future determination and allocation. (SSUF 75.) Accordingly, Byrne's wage claims fail as a matter of law.

### B. Byrne's Claim for Whistleblower Retaliation Fails as a Matter of Law

Byrne's argument that his alleged "protected activity" was a contributing factor in Ameris's decision to terminate his employment fails because his LTIP challenges do not constitute protected activity. (Dkt. 108 at 18–20.) The undisputed record shows that Byrne's repeated emails reflected nothing more than disagreements with Ameris's accounting methodology and his own subjective interpretation of the LTIP and Award Agreement. (SSUF 43, 47-50, 52-56, 63, 65-67) His emails did not disclose illegal activity or a reasonably based suspicion of illegality as required under § 1102.5. Critically, Byrne offers no evidence to the contrary and cannot point to any email in which he mentioned a legal foundation, statute, rule, or regulation that he believed

---

*PATRICK BYRNE v. AMERIS BANK*  Case No. 8:24-01989
Reply in Support of Defendant's Motion for Summary Judgment  Page 9

Ameris had violated. *See Ross v. Cnty. of Riverside*, 36 Cal. App. 5th 580, 592 (2019).[8]

Byrne's reliance on *Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973 (9th Cir. 2022) is misplaced. While *Killgore* holds that a plaintiff need not prove an actual violation of a specific statute or regulation, the employee in that case expressly questioned the legality of the instructions he received and stated his concerns that there were multiple violations of the National Environmental Policy Act to his supervisor. *Id.* at 981. By contrast, Byrne made no complaints about legality or any alleged violations of law; those assertions surfaced only *after* this litigation began.

Byrne also cites *Edgerly v. City of Oakland*, 211 Cal. App. 4th 1191 (2012) for the proposition that a reasonable belief is a question of fact. (Dkt. 108 at 21.) However, in *Edgerly*, the plaintiff, a city administrator, presented no evidence that she told anyone she believed that the Mayor's reimbursement requests violated any law. *Id.* at 1206. Here, as Ameris has argued and Byrne concedes, there is likewise no evidence that Byrne believed, at the time of his "complaints," that Ameris was acting unlawfully—he merely disagreed with accounting methods. *Edgerly* therefore does not support Byrne's position.

Although Byrne now attempts to recharacterize his longstanding disagreement over accounting methodology as a wage claim, the record shows that Byrne's communications to Ameris were limited to, for example, the following assertions:

"Ameris changed the accounting specific to repossessions, accelerating charge-offs" (SSUF 42); "Depreciation for pre-acquisition assets has been erroneously deducted" (SSUF 43); and "The accounting of interim rent was changed which is not consistent with past practices" (SSUF 43).

None of these statements constitutes protected activity. Nor can Byrne retroactively convert a dispute over LTIP calculations into a wage-law complaint, as an LTIP award is not automatically "wages" and Byrne cites no legal authority stating otherwise. As noted

---

[8] In *Ross*, the plaintiff disclosed information he reasonably believed involved violations of law, including due process and ethical rules. *Id.* at 592-93. Byrne, by contrast, raised no legal concerns and disputed only accounting methodology.

above, the LTIP pool is funded only if the Balboa Division meets annual EBT thresholds under a defined formula, and even then, any individual award remains discretionary and subject to approval. Byrne's disputes over whether Division-level performance metrics were met under Ameris's accounting methodology therefore concern *accounting* matters, not nonpayment of wages to individuals. Such disputes are not illegal, and any speculative financial impact on Byrne does not amount to a Labor Code violation. As such, no triable issue exists as to whether Byrne engaged in protected activity.

Even if Byrne's "complaints" were "protected," he was not insulated from discipline. The undisputed evidence shows he was not terminated for raising challenges to LTIP calculations, but for persistently pushing a non-GAAP accounting methodology that Ameris could not adopt, attempting to override internal accounting controls for his personal benefit, and—through that conduct—creating strained and unproductive working relationships across Ameris while leading a Division that failed to meet financial expectations. (SSUF 113.) Labor Code § 1102.5 does not protect an employee's insistence on adopting unreasonable or unlawful business practices.

Moreover, the contributing-factor standard cannot be satisfied by speculation. Byrne argues that because his termination was labeled "without cause," Ameris must have fabricated its legitimate reasons after the fact. (Dkt. 108 at 20.) That argument misrepresents both the record and the law. The undisputed evidence shows that Byrne was terminated without cause to preserve his eligibility for severance under a release agreement—a benefit to Byrne, not evidence of pretext. (SSUF 113.) A "without cause" designation does not negate legitimate grounds for termination or preclude an employer from relying on documented performance issues. Byrne declined severance and instead filed this lawsuit, but that choice does not convert a good-faith severance designation into evidence of retaliation. Nor does Byrne present any evidence—direct or circumstantial—that his accounting challenges played a role in the termination decision. The undisputed record instead shows multiple, independent, and legitimate reasons for termination unrelated to any alleged protected activity. (SSUF 113.) In addition, there is no temporal

link: Byrne's termination occurred more than a year after his purported whistleblowing, far too long to support an inference of causation. (Dkt. 93.1 at 23-24.) Byrne ignores this dispositive issue in his Opposition and therefore waives it.

### C. Byrne's Claim for Wrongful Termination Fails as a Matter of Law

Byrne's attempt to preserve his wrongful termination claim as independently viable fails as a matter of law. He identifies no statute or regulation underpinning this claim, which is fatal. *See Bruni v. The Edward Thomas Hosp. Corp.*, 64 Cal. App. 5th 247, 257 (2021) (claim for wrongful termination in violation of public policy must be "tethered to fundamental policies that are delineated in constitutional or statutory provisions"); *Mondragon v. Let's Do Lunch, Inc.*, No. B321440, 2025 WL 1088010, at *3 (Cal. Ct. App. Apr. 11, 2025) (a wrongful termination claim requires a constitutional or statutory violation). For that reason alone, the claim fails. To the extent he relies on Labor Code § 1102.5, it is premised on the *same retaliatory theory* and fails as a matter of law.

### D. Byrne's Claim Under UCL and For Punitives Fail as a Matter of Law

Byrne invokes the UCL's "sweeping" language but offers no admissible evidence of any unlawful, unfair, or fraudulent practice. (Dkt. 108 at 24-25.) His claim is derivative of failed wage and retaliation claims, and he cites nothing showing allegedly altered LTIP calculations, false representations, or systemic misrepresentations. Conclusory allegations and attorney-crafted arguments cannot create a triable issue. *F.T.C.*, 104 F.3d at 1171. As such, summary judgment is warranted. Additionally, Byrne's demand for punitive damages should be dismissed as the undisputed record shows that Byrne's claims stem solely from a disagreement over LTIP calculations, insufficient to establish the requisite malice or intent to harm by clear and convincing evidence. *Barton v. Alexander Hamilton Life Ins. Co. of Am.*, 110 Cal.App.4th 1640, 1644 (2003).

### III. CONCLUSION

For all these reasons, Ameris asks the Court to grant its motion for summary judgment as to all causes of action, or, in the alternative, for partial summary judgment as to each of Byrne's claims, and for all other relief this Court deems just and proper.

Dated: January 30, 2026         **NUKK-FREEMAN & CERRA**

By: _s/Stacy L. Fode_
Stacy L. Fode, Esq.
Nana J. Yee, Esq.
Attorney for Defendant
AMERIS BANK