Stacy L. Fode, Esq. (SBN 199883)
sfode@nfclegal.com
Nana J. Yee, Esq. (SBN 272783)
nyee@nfclegal.com
**NUKK-FREEMAN & CERRA, P.C.**
550 West C Street, Suite 910
San Diego, CA 92101
Telephone: 619.292.0515
Facsimile: 619.566.4741

Attorneys for Defendant
AMERIS BANK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an individual, | Case No. 8:24-cv-01989-MWC (JDEx) |
| Plaintiff, | **DEFENDANT AMERIS BANK'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE OPINIONS AND TESTIMONY FROM PLAINTIFF'S EXPERT DEBORAH DICKSON UNDER FRE 702 AND DAUBERT** |
| vs. | |
| AMERIS BANK, a Georgia corporation, | |
| Defendant. | |
| | Judge: Hon. Michelle Williams Court
Date: March 13, 2026
Time: 1:30 p.m.
Place: Courtroom 6A |
| | Discovery Cut-Off: November 28, 2025
Pretrial Conference: May 22, 2026
Trial Date: June 1, 2026 |

---

*Patrick Byrne v. Ameris Bank*                                                                    Case No. 8:24-01989
Defendant Ameris Bank's Motion *In Limine* No. 2 to Exclude Opinions and Testimony from Plaintiff's Expert Deborah Dickson Under Fre 702 And Daubert

## I. PRELIMINARY STATEMENT

This motion seeks to exclude the opinions and testimony of Plaintiff Patrick Byrne's ("Byrne") economic expert, Deborah Dickson ("Dickson"), as set forth in her January 2, 2026 expert report ("Dickson Report") under Federal Rule of Evidence ("FRE") 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("*Daubert*") and its progeny. Rather than reflect sound economic methodology and calculations, the Dickson Report hinges upon Ms. Dickson's contractual interpretation of the terms of the Long-Term Inventive Plan ("LTIP") and Award Agreement (as informed by Byrne's self-serving statements to her). The Dickson Report is also based on unsubstantiated and undocumented assumptions, for example, attributing 100% of the LTIP Incentive Pool ("LTIP Pool") to Byrne, even though Byrne himself claims that he was only entitled to a portion of it. Further, while Defendant Ameris Bank ("Ameris") moves *in limine* to exclude Ms. Dickson's opinions for purposes of trial and otherwise, it respectfully requests advanced hearing prior to the Final Pretrial Conference (set for May 22, 2026) because the relief it seeks relates to its pending Motion for Summary Judgment, which is currently scheduled for hearing on February 13, 2026. (Dkts. 22, 93.)[1]

## II. FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to this Court's Scheduling Order (Dkt. No. 22), the deadline for initial expert disclosures was December 5, 2025. Declaration of Stacy L. Fode ("Fode Decl.") ¶ 3. The parties later stipulated, with Court approval, to extend the rebuttal and expert discovery cut-off to January 2, 2026. (Dkts. 88, 92); Fode Decl. ¶ 9.

On December 5, 2025, Byrne disclosed Dickson as an initial expert witness ("Byrne Disclosure") but failed to serve an initial expert report, as required by Fed. R. Civ. P. 26(a)(2)(B). Fode Decl. ¶¶ 4, 7, Ex. A. Despite this omission, Byrne never sought a stipulation or leave of Court to submit a late initial report. Fode Decl. ¶ 12. On the other

---

[1] This Motion is being filed together with Defendant's related Motion *in Limine* No. 1, which seeks to exclude Ms. Dickson's report and testimony as untimely pursuant to Rule 26(a)(2)(B) and Rule 37(c).

hand, and in accordance with the Court-ordered deadline and Rule 26, Ameris disclosed its designated economic expert, MaryEllen Sebold ("Sebold") and timely produced her expert report on December 5, 2025. Fode Decl. ¶ 8.

On December 26, 2025, Ameris filed a Motion for Summary Judgment as to all of Byrne's claims. (Dkt. 93.) On January 2, 2026, the *rebuttal* report deadline, Byrne provided Dickson's expert report to Ameris's counsel. Fode Decl. ¶ 10, Ex. B ("Dickson Report"). While the Dickson Report includes affirmative opinions and is titled as "Rule 26(a)(2)(B) Expert Report" (for witnesses who will "present evidence"), Byrne's counsel designated Dickson as a "rebuttal expert," not an initial expert as indicated in the Byrne Disclosure and Report. Fode Decl. ¶¶ 13, 15, Exs. B, C, D; Fed. R. Civ. P. 26(a)(2)(A).

Because Byrne served the Dickson Report on the rebuttal report deadline (January 2) and offered Dickson for deposition as a "rebuttal" expert the day before expert discovery closed (on January 16), Ameris had no opportunity to formally rebut Dickson's opinions. Fode Decl. ¶¶ 10, 15, 17. On January 23, 2026, Byrne filed his Opposition to Ameris's Motion for Summary Judgment. (Dkt. 108). On January 28, 2026, Ameris advised Byrne's counsel in writing of its intent to seek exclusion of Dickson's opinions and testimony as untimely, irrelevant and inadmissible under FRE 702 and *Daubert*. Fode Decl. ¶ 25, Ex. F. On January 29, 2026, the parties held a Rule 7-3 meet and confer, during which Byrne's counsel confirmed that Byrne would not stipulate to exclusion. Fode Decl. ¶ 27.

### III.  LEGAL ARGUMENT

#### A.  Applicable Legal Standard Pursuant to FRE 702 and *Daubert*

FRE 702 provides that an expert witness's testimony will be admitted only if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and

---

*Patrick Byrne v. Ameris Bank*   Case No. 8:24-01989
Defendant Ameris Bank's Motion *In Limine* No. 2 to Exclude Opinions and Testimony from Plaintiff's Expert Deborah Dickson Under Fre 702 And Daubert   Page 2

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*See also Daubert*, 509 U.S. at 589-95 (the trial court acts as a "gatekeeper" to ensure through a preliminary determination that proffered expert evidence is both relevant and reliable). The proponent of the expert opinion must establish admissibility by a "preponderance of proof." *Daubert*, 509 U.S. at 592 n.10; *see also* FRE 702.

For the relevancy prong, expert testimony must be "relevant to the task at hand," *Daubert*, 509 U.S. at 597, meaning that it "logically advances a material aspect of the proposing party's case," *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*"). Expert testimony must "relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." *Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (citing *Daubert*, 509 U.S. at 590).

The Advisory Committee's Notes on the 2000 amendment to FRE 702 list additional factors relevant to the reliability inquiry that courts have considered, both before and after *Daubert*, which include: "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion" and "[w]hether the expert has adequately accounted for obvious alternative explanations." (Internal citations and quotation marks omitted). Determining admissibility under FRE 702 is within the sound discretion of the district court, as to which the Ninth Circuit gives "broad discretion." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 158 (1999).

**B. Dickson's Opinions and Testimony Should Be Excluded Pursuant to FRE 702 and *Daubert*.**

Dickson's opinions and testimony should be excluded at the time of trial because they: (i) improperly interpret contract language (a legal determination); (ii) are based on assumptions from conversations with, and calculations by, Byrne that are not supported by any documents or facts; (iii) incorrectly allocate 100% of the LTIP pool to Byrne

without basis; and (iv) fail to consider Defendant's alternative interpretation and analysis of Byrne's damage claim.

### 1. Dickson's Opinions and Testimony Should Be Excluded Because They Impermissibly Interpret a Legal Contract.

It is improper for an expert to interpret a contract in his or her expert opinion. *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) (trial court erred in permitting expert testimony regarding parties' legal obligations under the contract; expert testimony "cannot be used to provide legal meaning or interpret the policies as written."). Such matters of law are "inappropriate subjects for expert testimony." *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992); *see also Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1320-21 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021) ("[T]he question of interpretation of [a] contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony." (internal quotation marks and citation omitted)).

Byrne offered Dickson as an expert witness "to testify at trial ***regarding Defendant's calculations of the LTIP at issue in this case as well as economic damages suffered by Plaintiff*** as a result of the incident . . . ." Fode Decl. ¶ 5, Ex. A. (emphasis added). However, the opinions Dickson expressed in her report are not based upon Defendant's calculation of the LTIP or Byrne's economic damages; instead, they are results-driven conclusions based upon Byrne's *legal interpretation* of the LTIP and Award Agreement, specifically, whether Generally Accepted Accounting Principles ("GAAP") apply to it.

During her deposition, Dickson conceded that she is not a lawyer and was not retained as a legal expert. Fode Decl., Ex. E (Deposition of Deborah Dickson ("Dickson Dep.") at 32:12-14. However, Dickson testified that she disagreed with Sebold's calculations ***because they were based on Sebold's incorrect interpretation of the LTIP agreement's terms in applying GAAP***. *See id.* at 32:15-33:4; 39:16-40:5 (emphasis added). Dickson further testified that her opinion was that the LTIP's terms instead required calculations to be made in accordance with "past practice." *Id.* at 37:20-39:5;

40:7-13. As a result (and as discussed further below), Dickson did not even attempt to calculate Byrne's damages applying GAAP because, in her view, the LTIP agreement "doesn't call for [GAAP] in the plain language of the agreement."[2] *Id.* at 56:24-57:7.

Whether the LTIP agreement's terms require application of GAAP is a legal question for the Court. Dickson's opinion as to what the LTIP agreement "calls for" is an improper interpretation of the contract. Therefore, her opinions and testimony must be excluded at the time of trial. *McHugh*, 164 F.3d at 454; *Aguilar*, 966 F.2d at 447; *Aya Healthcare Servs.*, 613 F. Supp. 3d at 1320-21.

### 2. Dickson's Opinions and Testimony Should Be Excluded Because They Are Not Based on Evidence, But Rather Byrne's Uncorroborated Statements and Belief as to What He is Owed.

The Court should also exclude Dickson's opinions and testimony regarding Byrne's LTIP damages because her opinions fail to meet the reliability requirements of *Daubert* and FRE 702 as they are not "based on sufficient facts or data," nor are they "the product of reliable principles and methods." FRE 702(b)-(c). An expert's opinions are not reliable where the expert bases her conclusions on "mere subjective beliefs or unsupported speculation." *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994). "An opinion based on . . . unsubstantiated and undocumented information is the antithesis of the scientifically reliable expert opinion admissible under *Daubert* and Rule 702." *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998).

///

---

[2] Ms. Dickson also criticizes Ms. Sebold for utilizing GAAP because it is mentioned just once (in the main body of the LTIP). However, Ms. Dickson conceded during her deposition that "past practice" is similarly mentioned just once in the LTIP, *in a footnote to one "Key Assumption."* Dickson Dep. at 38:15-39:5. When asked why she did not include any analysis as to why Ameris's post-acquisition accounting treatment was incorrect, Ms. Dickson stated: "It's not that Ameris's post-acquisition accounting is incorrect, it just different, you know. Their treatment is a GAAP treatment. That's different than private company methodologies that were used pre-acquisition." *Id*. at 99:15-23.

---

*Patrick Byrne v. Ameris Bank* | Case No. 8:24-01989
Defendant Ameris Bank's Motion *In Limine* No. 2 to Exclude Opinions and Testimony
from Plaintiff's Expert Deborah Dickson Under Fre 702 And Daubert           Page 5

In determining the reliability of proffered expert testimony, the district court's task "is to analyze not what the experts say, but what basis they have for saying it." *Daubert II*, 43 F.3d at 1316. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). To avoid this disconnect, the proponent of expert testimony must "explain the methodology the experts followed to reach their conclusions [and] point to any external source to validate that methodology." *Daubert II*, 43 F.3d at 1319.

Consistent with Byrne's argument that the LTIP's terms required Ameris to apply "past practice" (not GAAP) in calculating earnings before tax ("EBT"), Dickson points to the Balboa Division's so-called "past practice" to justify Byrne's claimed adjustments to the LTIP EBT calculation for several categories, including (for example) stipulated judgments, interim rent, and repossessions. However, nowhere in the LTIP (or elsewhere) is the alleged "past practice" or accounting treatment of stipulated judgments, interim rent or repossessions defined, which Dickson admitted in her deposition. Dickson Dep. at 37:2-18; 39:6-9. In fact, Dickson could not cite *any* evidence of Balboa's purported "past practices." Therefore, she simply cites to **her own conversations with Byrne and Byrne's own calculations based upon what he claimed were "past practices**." For example:

| Quote from Dickson's Expert Report | Citation |
|---|---|
| "Plaintiff argued that Ameris changed the accounting of Balboa's stipulated judgments post-acquisition, which is inconsistent with Balboa's past practices. ***Per discussions with Mr. Byrne,*** stipulated judgments occur when a loan has defaulted, and a new agreement has been entered into with the defaulted customer." | Dickson Report at 6, ¶ 30 (regarding stipulated judgments) |
| "I reviewed the supporting work schedules provided by Mr. Byrne and tied out **his calculation** of this adjustment." | Dickson Report at 6, ¶ 30 (regarding stipulated judgments) |
| "Mr. Byrne asserted that Ameris changed the accounting of interim rent post-acquisition, which is inconsistent | Dickson Report at 7, ¶ 31 (regarding interim rent) |

| | |
|---|---|
| with Balboa's past practices. ***Per discussions with Mr. Byrne,*** Balboa's past practices were to recognize interim rent when cash was received." | |
| "I reviewed the supporting work schedules provided by Mr. Byrne and tied out ***Mr. Byrne's calculation*** of this adjustment." | Dickson Report at 7, ¶ 31 (regarding interim rent) |
| "Mr. Byrne argued that Ameris changed the accounting specific to Balboa's repossessions in Q1 2023, which is inconsistent with Balboa's past practices. ***Per discussions with Mr. Byrne,*** repossessions are loans that have defaulted in which the equipment has subsequently been picked up and sold." | Dickson Report at 7, ¶ 32 (regarding repossessions) |
| "I reviewed the supporting work schedules provided by Mr. Byrne and tied out ***Mr. Byrne's calculation*** of this adjustment." | Dickson Report at 7, ¶ 32 (regarding repossessions) |

Dickson Report at 6-7, ¶¶ 30-32 (emphasis added); *see also* Dickson Dep. at 42:25-46:6.[3]

No evidence corroborating these "discussions" with Byrne or supporting Byrne's "calculations"—such as Balboa accounting memos, financial statements, or policies and procedures—is cited. *Id.* When asked to acknowledge that her report did not identify ***any*** documentation memorializing "past practices," Dickson responded: "My report is designed to discuss my thought process. It's not designed to identify every document." Dickson Dep. at 45:25-46:6. This does not satisfy *Daubert*. *See*, *e.g.*, *Bakst v. Cmty. Mem'l Health Sys., Inc.*, 2011 WL 13214315, at *20 (C.D. Cal. Mar. 7, 2011) (damages calculations failed to satisfy *Daubert* where they were "based on factual assumptions that are entirely unsupported in the record"); *id.* at *19, n.70 ("Absent a sufficient factual foundation, or where 'there is simply too great an analytical gap between the data and the opinion proffered,' a court may exclude an expert's opinion as impermissibly speculative." (quoting *General Elec. Co.*, 522 U.S. at 146).

---

[3] When pressed as to whether her understanding of "past practices" was based on anything other than what Byrne told her, Ms. Dickson attempted to cite documents that do not reference Balboa's "past practice," and then stated: "Well, you know, you're not going to find verbiage on all these." Dickson Dep., 44:13-45:23.

### 3. Dickson's Calculation of Byrne's Economic Damages Incorrectly Allocates 100% of the LTIP Incentive Pool to Byrne.

Dickson's calculation of Byrne's damages contains another significant and fatal error. Dickson calculated Mr. Byrne's alleged LTIP Cash Bonus Award as **100% of the LTIP Incentive Pool** for each Performance Period. Dickson Report at 8, ¶¶ 37-38; *id.* at Ex. 3 & 4. There is no evidentiary support whatsoever for Dickson's assumption that Byrne was entitled to 100% of the LTIP Incentive Pool for *any* Performance Period, which Dickson effectively admitted during her deposition. *See* Dickson Dep. at 61:24-62:15 (agreeing that the LTIP "does not specify how much any individual employee specifically receives" because allocations from the LTIP Incentive Pool are "discretionary").

While she attributed 100% of her calculated LTIP Incentive Pool for each Performance Period as "due" to **Byrne**, Dickson admittedly did *not* analyze how the LTIP Incentive Pool should or would be allocated to Byrne and other Balboa Division employees because she did not have "allocation instructions." *Id.* at 62:17-63:23. Dickson testified that obtaining allocation information was "not [her] responsibility." *Id.* at 62:21-63:5. When pressed on this point, Dickson claimed that **she did not calculate specific dollar amounts owed to Byrne as an individual**. *Id.* at 63:24-64:16. That was false, however. The Dickson Report contains the following opinions, none of which are supportable:

> 37. Based on my analysis, I computed that **Plaintiff is due** an additional $1,486,005 in cash bonus awards for calendar year 2022.
>
> 38. Based on my analysis I calculated that **Plaintiff is due** $4,237,396 in cash bonus awards for calendar year 2023.
>
> 39. Separate from the LTIP cash bonus analyses, I computed that **Mr. Byrne is due** $2,024,765 related to security deposits terminated pre-acquisition.

Dickson Report at 8, ¶¶ 37-39 (emphasis added). When asked how she could calculate Plaintiff's entitlement to incentive pool funds without knowing his allocation, Dickson testified it was her "understanding is that it's up to . . . Mr. Byrne[] to make the decisions

---

as to how those funds are distributed," assuming, without basis, that Byrne had authority to distribute all funds in the pool. Dickson Dep. at 63:7-64:25.

Had Dickson inquired as to the allocation of the LTIP Incentive Pool, she would have learned that Byrne never received, nor was he ever entitled to receive, 100% of the LTIP Incentive Pool for any Performance Period. In fact, in connection with his Summary Judgment Opposition, ***Byrne swore under oath that he was entitled to only 62.54% (not 100%)*** of the LTIP Incentive Pool, and that the number was agreed upon in advance. (Dkt. No. 108-8, Byrne Opposition for Summary Judgment, Decl. of Byrne at 3, ¶ 8).[4]

Even if a jury found for Byrne on liability, the jury could very well misunderstand that Dickson's calculations were erroneously based upon the entire LTIP Incentive Pool—not just the portion of that amount due to Byrne. An expert's opinions are not reliable where, as here, the expert bases their conclusions on "mere subjective beliefs or unsupported speculation" or "unsubstantiated and undocumented information." *Claar*, 29 F.3d at 502; *Cabrera*, 134 F.3d at 1423. Here, Dickson's opinions and testimony are unreliable and will not assist (but rather will confuse) the trier of fact, and should therefore be excluded.

### 4. Dickson's Opinions and Testimony Should Be Excluded Due to Her Failure to Consider Defendant's Alternative Analysis of Byrne's Damages.

Finally, Dickson's expert opinions and testimony should be excluded because she did not consider or perform calculations in accordance with Defendant's alternative theory for calculating damages—specifically, the application of GAAP. *See, e.g.*, FRE 702 advisory committee's note (2000 amendment) (courts may consider whether expert has accounted for obvious alternative explanations in determining whether expert testimony is reliable). At minimum, Dickson should have performed calculations assuming the application of GAAP, because she was aware that Ameris (and its economic expert,

---

[4] Defendant disputes Byrne's sworn statement that he was ***entitled*** to 62.54% (or any specific percentage) of the LTIP Incentive Pool for any year.

*Patrick Byrne v. Ameris Bank*                                                                 Case No. 8:24-01989
Defendant Ameris Bank's Motion *In Limine* No. 2 to Exclude Opinions and Testimony
from Plaintiff's Expert Deborah Dickson Under Fre 702 And Daubert          Page 9

Sebold) claims that GAAP applies.[5] If the Court finds that GAAP applies to the LTIP calculations, Dickson's report and testimony are completely irrelevant, as she does not substantively dispute Sebold's GAAP-based calculations. Indeed, Dickson testified that ***it was not necessary for her to do so***. *See* Dickson Dep. at 56:5-14. Dickson also testified that she thought it was unnecessary to perform an alternative calculation applying GAAP because, under her interpretation of the LTIP's terms, ***"it doesn't call for [GAAP] in the plain language of the agreement."*** *See id*. at 56:24-57:7 (emphasis added). Finally, Dickson ***refused to answer*** when asked to concede that her report offered no opinion regarding the accuracy of Ameris's GAAP calculations. *Id*. at 57:9-14.

Dickson's opinions (both in her report and deposition) do not consider (let alone rebut) the possibility that the methodology offered by Defendant's expert—specifically, the application of GAAP—could be a viable methodology for calculating damages that the Court ultimately accepts.[6] Because Dickson failed to account for obvious alternative explanations, her opinions and testimony should be excluded.

## IV.   CONCLUSION

For these reasons, Ameris requests that the Court grant this motion to exclude Dickson's opinions and testimony for all purposes, including motion practice and trial, and permit advanced hearing to resolve the issues raised herein in connection with Ameris's pending Motion for Summary Judgment.

Dated:  February 6, 2026           **NUKK-FREEMAN & CERRA**
                                   By:
                                   */s/Stacy L. Fode*
                                   Stacy L. Fode, Esq.
                                   Nana J. Yee, Esq.
                                   Attorneys for Defendant
                                   AMERIS BANK

---

[5] Whether GAAP applies based on the LTIP agreement's terms is a legal decision for the court as it is a contractual issue. It is not an issue to be determined by an economic expert. *See infra* at § III(C)(1).

[6] Ms. Dickson's failure to rebut the calculations of Defendant's expert further doom Byrne's attempt to cast her as a "rebuttal" witness.

---