UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:24-cv-01989-MWC-JDE                                    Date: February 13, 2026

Title:    Patrick Byrne v. Ameris Bank

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (In Chambers) The Court DENIES IN PART and GRANTS IN PART Defendant's Motion for Summary Judgment (Dkt. 93)    <span style="color:red">REDACTED</span>**

Before the Court is a motion for summary judgment ("Motion") filed by Defendant Ameris Bank ("Defendant" or "Ameris"). *See* Dkts. # 93 (Not. Mot.), 105-15 ("*MSJ*"). In support of their Motion, Defendant filed a Separate Statement of Undisputed Facts, Dkt. # 105-16 ("*DSUF*"); the Declarations of Stacy Fode, Dkt. # 93-3 ("*Fode Decl.*"), James LaHaise, Dkt. # 93-4 ("*LaHaise Decl.*"), and Nicole Stokes, Dkt. # 93-5 ("*Stokes Decl.*"); and a compendium of exhibits, Dkt. # 93-6.

Plaintiffs Patrick Byrne ("Plaintiff" or "Byrne") opposed.  Dkt. # 108 ("*Opp.*").  In support of his Opposition, Plaintiff filed a Statement of Genuine Issues and Additional Facts, Dkt. # 110-1 ("*PSUF*"); a compendium of exhibits, Dkt. # 108-2; and supporting declarations, Dkts. # 108-7–108-10.

Defendant replied, Dkt. # 114 ("*Reply*"), and filed a Reply to Plaintiff's Response to Defendant's Separate Statement and Response to Plaintiff's Statement of Additional Facts, Dkt. # 114-2 ("*PSUF Opp.*").  Defendant also submitted a supplementary Declaration of Stacy Fode, Dkt. # 114-1, and evidentiary objections to Plaintiff's supporting declarations, Dkts. # 114-3–114-5.

The Court finds the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  Having considered the papers, the Court **DENIES IN PART** and **GRANTS IN PART** Defendant's motion for summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:24-cv-01989-MWC-JDE                              Date: February 12, 2026

Title:    Patrick Byrne v. Ameris Bank

I.    Background

The Court has reviewed the parties' Separate Statements, the responses thereto, and the underlying evidence and objections.[1] Evidence submitted by the parties includes the agreements at issue; party, witness, and expert declarations and/or deposition transcripts[2]; email correspondence; tax returns; and other documents. Except as noted below, the following material facts are sufficiently supported by admissible evidence and "admitted to exist without controversy" for purposes of the Motion. L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R. Civ. P. 56(e)(2) (where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

A.    Factual Background

i.    Background and Acquisition

In 1988, Plaintiff Patrick Byrne founded Balboa Capital, an equipment leasing company. *PSUF* ¶ 1. He served as its CEO until its sale to Ameris in December 2021. *Id.* Plaintiff was also the sole owner of Balboa Capital from 2015 to 2021. *Id.* ¶ 2. As CEO of Balboa Capital, Plaintiff's executive responsibilities included overseeing finance, loan

---

[1] Both parties raise evidentiary objections on grounds such as relevance, lack of foundation, misstating the documents, and offering legal conclusions. At this stage, the Court is concerned with the admissibility of the relevant facts at trial and not the form of these facts as presented on a motion for summary judgment. *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021); *see also Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, 889 F. Supp. 2d 1198, 1215 (E.D. Cal. 2012) ("Objections to evidence on the ground that the evidence is irrelevant, speculative, argumentative, vague and ambiguous, or constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself."). To the extent the Court relies upon evidence to which either party objects, the objections are **OVERRULED**. To the extent the Court does not, the objections are **DENIED** as moot.

[2] In reply to Plaintiff's statement of genuine disputes, Defendant objects to testimony from Plaintiff's proffered expert, Ms. Dickson, for Plaintiff's failure to timely disclose Ms. Dickson's initial expert report, and for failing to satisfy expert admissibility requirements under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See PSUF Opp.* The Court finds Defendant's arguments surpass an evidentiary objection and, thus, declines to rule on the matter without the benefit of full briefing.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:24-cv-01989-MWC-JDE                          Date: February 12, 2026

Title:    Patrick Byrne v. Ameris Bank

operations, and the company's strategic direction. *Id.* ¶ 4. According to Plaintiff, before Ameris acquired Balboa Capital in December 2021, Balboa Capital had relatively predictable performance driven by established lease portfolios and underwriting models, and it evaluated profitability using internal metrics reflecting the long-term nature of its business. *Id.* ¶ 119. Thus, according to Plaintiff, it was Balboa Capital's past (pre-acquisition) practice to use those metrics for management compensation, incentive planning, and performance evaluation. *Id.* ¶¶ 119–120.

In 2021, Ameris sought to acquire Balboa Capital, which would become the Balboa Division of Ameris. *Id.* ¶¶ 18, 121. Ameris also sought to retain Plaintiff in a leadership role by aligning his compensation incentives with the Balboa Division's performance. *Id.* ¶¶ 124, 127. Represented by counsel, Plaintiff and Ameris negotiated an Employment Agreement that incorporated the Balboa Capital Long-Term Cash Incentive Plan ("LTIP" or "Plan") as a material component of Plaintiff's compensation. *Id.* ¶¶ 7, 125, 145, 148; *see Fode Decl.*, Ex. 3 ("*LTIP*"). The LTIP was distinct from Plaintiff's base salary and quarterly bonuses. *LaHaise Decl.*, Ex. 8 (Byrne's Employment Agreement) § 3.3 ("[T]he Company has established a cash bonus long term incentive program (the 'LTIP') and the Executive is expected to participate in the LTIP. For the avoidance of doubt, the LTIP and the Bonus are separate and distinct compensation programs."). Plaintiff used the LTIP as a tool to retain, motivate, and reward Balboa personnel at all levels. *Id.* ¶¶ 128–130.

After extensive negotiations, Ameris and Plaintiff executed a Stock Purchase Agreement on December 10, 2021, under which Ameris acquired 100% of Balboa Capital for approximately $186 million. *Id.* ¶ 5. The LTIP was material to Plaintiff's decision to sell Balboa Capital to Ameris and remain with the company. *Id.* ¶¶ 126, 143.

        *ii.    LTIP Mechanics*

Ameris implemented the LTIP as a formal, written incentive plan designed to "link the interests of Participants," including Plaintiff, "with those of the Company by creating a direct relationship between key Company performance measurements and individual bonus payouts." *Id.* ¶¶ 131, 144; *LTIP* § 1.1.

The LTIP's primary performance criteria is the Balboa Division's annual Earnings Before Tax ("EBT"), as defined in the Pioneer 1Q21 Operating Model ("Pioneer Model") which includes Balboa Capital's "Historical" (2017-2020 (pre-acquisition)) and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 8:24-cv-01989-MWC-JDE | Date: February 12, 2026 |
| Title: | Patrick Byrne v. Ameris Bank | |

"Projected" (2021-2025) financial data.  PSUF ¶ 23.  The LTIP allocates 35% of EBT above threshold to the LTIP bonus pool.  PSUF ¶¶ 23–24, 136.

Under the LTIP, "[f]ollowing the completion of a Performance Period, [Ameris's Compensation] Committee shall review and certify in writing whether, and to what extent, the Performance Goals for the Performance Period have been achieved and, if so, calculate and certify in writing the amount of the [LTIP] Cash Bonus Awards earned for the Performance Period based upon the Performance Formula, including each Participant's individual Cash Bonus Award for the Performance Period."  *LTIP* § 7; *see PSUF* ¶ 138.  Cash Bonus Awards are to be paid as soon as administratively practicable following certification, and no later than March 15 of the following calendar year.  *LTIP* § 8.3; *PSUF* ¶ 139.  The instrument applying the LTIP framework to a particular participant and year is called the Award Agreement.  *PSUF* ¶ 133; *see LTIP* at AMERIS000227-231 ("*Award Agreement*").

Section 10.1 of the LTIP and Section 9 of the Award Agreement provide that "the granting of Cash Bonus Awards shall be subject to all applicable federal and state laws, rules and regulations, and to such approvals by any regulatory or governmental agency as may be required."  *See LTIP* § 10.1, *Award Agreement* § 9.  Of the six defined "Key Assumptions" in the Award Agreement, one assumption references Generally Accepted Accounting Principles (GAAP) methodology.  *PSUF* ¶ 134.

### a.    *Ameris Compensation Committee*

Under the LTIP, the Committee has authority "to construe and interpret the Plan and apply its provisions", *LTIP* § 3.2(a); "to determine when Cash Bonus Awards are to be granted under the Plan," *id.* § 3.2(d); "from time to time select, subject to the limitations set forth in the Plan, those Participants to whom Cash Bonus Awards shall be granted," *id.* § 3.2(e); to establish the Performance Periods, *id.* § 3.2(g); "to exercise discretion to make any and all other determinations which it determines to be necessary or advisable for the administration of the Plan," *id.* § 3.2(j); to "select the Performance Criteria that will be used to establish the Performance Goal(s)," *id.* § 6; and, "in its sole discretion, to adjust or modify the calculation of a Performance Goal for a Performance Period," *id*.  The LTIP provides that, "[f]or purposes of the allocation of Cash Bonus Awards under the Plan, the Company will recommend that the Committee consult Patrick Byrne," *LTIP* § 3.1, but "[a]ll decisions made by the Committee pursuant to the provisions of the Plan shall be final and binding on the Company and the Participants," *id.* § 3.3, *PSUF* ¶ 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:24-cv-01989-MWC-JDE                    Date: February 12, 2026

Title:    Patrick Byrne v. Ameris Bank

The LTIP further provides that no right to a Cash Bonus Award exists until it is paid. *PSUF* ¶ 16; *see LTIP* § 10.4 ("Participant shall not have any right to any Cash Bonus Award under the Plan until such Cash Bonus Award has been paid to such Participant, and participation in the Plan in one Performance Period does not connote any right to become a Participant in the Plan in any future Performance Period"). Finally, the LTIP permits the Committee to "delegate all or part of its authority and powers under the Plan to one or more employees of the Company." *Id.* § 3.4; *PSUF* ¶¶ 12, 15. At deposition, LaHaise testified that the Committee delegated to him authority to administer the plan. *Fode Decl.*, Ex. 5 (LaHaise Dep. Tr.), 139:25-141:17.

> iii.    *Disagreement over 2022, 2023, and 2024 LTIP Bonus (or "LTIP Cash Award") Calculations*

After Ameris acquired Balboa, Byrne entered into a multi-year Employment Agreement to serve as CEO of the Balboa Division. *LaHaise Decl.*, Ex. 8. As CEO of Balboa Division, Plaintiff reported to LaHaise. *PSUF* ¶ 27. Pursuant to the Employment Agreement, Byrne's base salary in 2022 was $▮▮▮▮▮ annually, and he received a ▮▮▮▮▮ increase each subsequent year. *Id.* ¶ 28. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮. *Id.* ¶ 29. Although the parties dispute whether Balboa Division missed any quarterly performance targets, Plaintiff received the $▮▮▮ bonus each quarter he worked at Ameris. *See PSUF Opp.* ¶ 30.[3]

The LTIP covered annual performance periods for 2022, 2023, and 2024. *PSUF* ¶ 8; *see LTIP* at AMERIS000227. At the close of the 2022 performance period, Ameris calculated Balboa's EBT for LTIP purposes and paid the LTIP bonus pool of approximately $9 million. *PSUF* ¶¶ 37, 140. On February 15, 2023, Plaintiff received a 2022 LTIP Cash Award of over $5.6 million, or more than 62% of the distribution pool, per his recommendation. *Id.* ¶ 39.[4] At deposition, Plaintiff testified that he decided on the

---

[3] 

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 31. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶ 32.

[4] The parties dispute whether Byrne had negotiated receiving a guaranteed 62.54% of the LTIP pool, *see PSUF Opp.* ¶ 39, or whether he was not entitled to any specific percentage of the pool

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:24-cv-01989-MWC-JDE                                   Date: February 12, 2026

Title:      Patrick Byrne v. Ameris Bank

distribution of the 2022 LTIP pool, and Ameris did not have the ability to overturn his allocations per agreement. *PSUF* ¶ 41. Plaintiff did not independently recalculate EBT for LTIP purposes at that time. *Byrne Decl.* ¶¶ 13–14.

In April 2023, Sufhan Majid, Ameris's Director of Accounting, prepared and emailed Plaintiff a preliminary 2023 Q1 LTIP estimate under which the Balboa Division failed to meet the quarterly EBT target. *PSUF* ¶¶ 44–45. Plaintiff was surprised. *Id.* ¶ 142. Around mid-2023, Plaintiff began raising issues with Ameris's LTIP calculation methodology and challenging its 2022 LTIP calculation. *Id.* ¶ 42. Plaintiff challenged whether Ameris's calculation methodology and adjustments were consistent with the LTIP's Key Assumptions, the Pioneer operating model, and the pre-acquisition allocation framework governing LTIP performance, in the following categories: overhead allocations, repossessions, depreciation of pre-acquisition assets, charge-offs, tax benefits, stipulated judgments, and interim rents. *PSUF Opp.* ¶ 43. Defendant asserts Plaintiff's proposed changes are inconsistent with GAAP, Ameris's accounting controls, and the terms of the LTIP and Award Agreement. *Id.* ¶ 47.

For example, on June 5, 2023, Plaintiff e-mailed LaHaise seeking to "add back" over $3 million improperly allocated to overhead for the Balboa Division in the 2022 LTIP. *PSUF* ¶ 48; *LaHaise Decl.*, Ex. 20. Plaintiff asserted that Balboa Division salaries of employees that report to Ameris rather than to Plaintiff should be excluded, "consistent with the verbiage in the Purchase and Sale Agreement," with "how it was initially presented to us" by Ameris pre-acquisition, and "with how traditionally these departments have been viewed (as indirect costs or corporate overhead)." *LaHaise Decl.*, Ex. 20. He made the same claims for Q1 2023, alleging improper overhead treatment, changes to repossession accounting, and excluded income. *PSUF* ¶ 49; *LaHaise Decl.*, Ex. 20. Plaintiff submitted his revised LTIP calculations for 2022 and Q1 2023 and requested Ameris adjust the LTIP calculation accordingly, release the corrected 2022 LTIP bonus amount, and include his ██████████ bonus based on the attainment of the Q1 goal in his next paycheck. *PSUF* ¶ 50; *LaHaise Decl.*, Ex. 20. LaHaise responded the next day, disagreed with Plaintiff's revisions, and proposed discussing the issue. *PSUF* ¶ 51.

On July 24, 2023, Plaintiff e-mailed Ameris again regarding requested revisions to the 2022 LTIP calculations. *PSUF* ¶ 52; *LaHaise Decl.* Ex. 22. Byrne repeated that the

---

because the Award Agreement purposefully left any individual award percentage blank, *see LTIP* at AMERIS000228.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:24-cv-01989-MWC-JDE                    Date: February 12, 2026

Title:      Patrick Byrne v. Ameris Bank

salaries for the Balboa Division Accounting, IT and Marketing departments were not
overhead and should be "added back" to align with the SPA and past practice. *PSUF* ¶ 53.
Plaintiff stated, based on his revisions, he was owed an additional $1,248,354, and he asked
for the money to be paid out in his July 30, 2023 payroll. *PSUF* ¶ 52; *LaHaise Decl.*, Ex.
22. That same day, Byrne e-mailed Ameris identifying five purported issues with the Q2
2023 LTIP: changes to repossession accounting; revision of Q2 quarterly net charge-offs;
adjustment to the provision and formula; that the Balboa Division departments overhead
should be "added back"; and that the depreciation for pre-acquisition assets was wrongly
deducted. *PSUF* ¶ 54; *LaHaise Decl.* Ex. 23. Byrne argued that based on his revised
calculations, the LTIP targets for Q1 and Q2 2023 were both met and asked that his
quarterly bonuses be included in his July 30 payroll. *PSUF* ¶ 55.

    In the following months, Byrne raised the same LTIP issues, seeking accounting
changes based on past practices. *Id.* ¶ 56. Nicole Stokes, LaHaise, and other Ameris
accounting personnel addressed the issues. *Id.* ¶¶ 56, 59. For example, David Sparacio,
Ameris's Controller, stated in an email to LaHaise, Majid and Stokes that Plaintiff's
position on the interim rent issue was incorrect because the LTIP "clearly states it is based
on GAAP financials, which is not consistent with [Plaintiff's] past practices . . . accounting
for interim rent on a cash basis." *Id.* ¶ 57; *LaHaise Decl.*, Ex. 26. Majid also told Plaintiff
his "old method" or "past practices" were not GAAP-compliant, and Sparacio told Plaintiff
that Ameris could not allow business units to set accounting policy, nor could the
accounting department make Plaintiff's requested changes during book closing given the
established guidance and conservative nature of the business practices. *Id.* ¶ 58; *LaHaise
Decl.*, Ex. 27, AMERIS001036–1045. Stokes spoke to Plaintiff at various times regarding
Plaintiff's requested LTIP revisions, and she and LaHaise met with Plaintiff in person in
the summer of 2023 to address these and other issues. *PSUF Opp.* ¶ 60. Ultimately,
Ameris concluded the Balboa Division did not meet the 2023 LTIP EBT, and, therefore,
no funds were allocated to the 2023 LTIP pool. *PSUF* ¶ 61.

    On January 10, 2024, after the 2023 books had officially closed, Majid emailed
Plaintiff the final 2023 LTIP calculation. *Id.* ¶ 62. On January 15, 2024, Plaintiff
demanded $3,037,750, citing issues with (1) stipulated judgments; (2) depreciation of pre-
acquisition assets; (3) Accounting, IT, and Marketing overhead; (4) tax benefits; (5) interim
rent, and (6) repossession accounting changes. *Id.* ¶ 63. Sparacio responded, "[O]nce
again we in accounting do not have the authority to adjust the LTIP calculation. The
adjustments need to be directed to [LaHaise,] so we will take no action on these." *Id.* ¶ 64.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:24-cv-01989-MWC-JDE                          Date: February 12, 2026

Title:    Patrick Byrne v. Ameris Bank

On January 29, 2024, Plaintiff emailed LaHaise stating that he revised the 2022 LTIP calculation again and now claimed that he was owed $1,457,057. *Id.* ¶ 65. Plaintiff has testified that the dispute concerned customer "security deposits," which he believed were accounted for differently pre-acquisition. *Id.* ¶ 66. On January 31, 2024, Plaintiff forwarded all his January LTIP emails to LaHaise and demanded the following payments based on his recalculations: (1) $2,024,765 for security deposits; (2) $1,457,057 for the 2022 LTIP; and (3) $3,037,750 for the 2023 LTIP. *Id.* ¶ 67.

LaHaise emailed Plaintiff on February 5, 2024, addressing each topic raised in Plaintiff's January emails and concluding no additional amounts were owed. *Id.* ¶ 68; *LaHaise Decl.*, Ex. 17, AMERIS001780-81. While Ameris rejected most of Plaintiff's calculations, it made two adjustments to the 2023 LTIP EBT calculation. *PSUF* ¶ 69. Ameris concluded the final 2023 EBT calculation was still below the 2023 LTIP EBT threshold. *Id.* ¶ 70.

On March 11, 2024, Plaintiff e-mailed LaHaise, stating that his position on outstanding LTIP payments "has not changed." *Id.* ¶ 71. LaHaise replied, noting nothing had changed from his original response in March and invited Byrne to schedule a discussion. *Id.* ¶ 72. Plaintiff responded, "unless you are presenting an offer then talking about it anymore is a waste of time." *Id.* ¶ 73. LaHaise also emailed on May 6, 2024, stating Byrne was not owed any additional 2022 or 2023 LTIP payments and that the matter was closed. *Id.* ¶ 74. That same day, Plaintiff e-mailed LaHaise again, asserting the Q1 2024 LTIP was miscalculated, repeating the previously rejected issues, and requesting payment based on his revisions. *Id.* ¶ 75.

iv.    *Job Performance and Termination*

According to Plaintiff's job description, Plaintiff was responsible for setting short- and long-term goals with the executive team, ensuring compliance with applicable laws and regulations, and exercising strong managerial, financial, and communication skills. *See LaHaise Decl.*, Ex. 9 (Balboa CEO job description).

During his employment, Byrne was given annual performance reviews by his direct supervisor, LaHaise. *PSUF* ¶ 78. LaHaise stated in Byrne's first (2022) performance review that integrating Balboa Capital, a long-time private company, into a publicly traded financial institution was "challenging." *Id.* ¶ 79. Likewise, Stokes testified that, for her,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:24-cv-01989-MWC-JDE                                Date: February 12, 2026

Title:      Patrick Byrne v. Ameris Bank

"it was certainly a difficult relationship [with Byrne]" and " . . . a progression of difficulty that started along the whole path." *Id.* ¶ 80.

In Plaintiff's 2023 performance review, LaHaise documented Plaintiff's purported performance issue and gave substantial constructive feedback. *PSUF* ¶ 77; *LaHaise Decl.*, Ex. 40. The review stated that the Balboa Division did not generate a profit for 2023; that adjusted loan losses totaled approximately ██████████ ; and that the Balboa Division did not meet the 2023 LTIP EBT target. *PSUF* ¶ 81.[5] LaHaise also stated Plaintiff was dissatisfied with his level of autonomy in leading the Balboa Division, which contributed to strained relationships with some company leaders. *Id.* ¶ 83. Despite these issues, LaHaise stated Ameris hoped Plaintiff would continue in a long-term leadership role but that he would need to decide whether he wished to do so. *Id.* ¶ 84. LaHaise also included positive comments regarding Plaintiff's performance, such as that "[Byrne] [i]s attentive in all interactions including customers, direct reports and colleagues," and "Pat [Byrne] is an active leader and strives every day to improve the division." *LaHaise Decl.*, Ex. 40. At deposition, LaHaise testified that, based on his interactions with and observations of Plaintiff, he believed Plaintiff did not want to continue in the role of Division CEO. *PSUF* ¶ 86; *Fode Decl.*, Ex. 2 (30(b)(6) Dep. Tr.) 190:8-11.[6] Stokes testified that she experienced a strained work relationship with Byrne, and Byrne had stopped responding to her emails and phone calls, attending meetings, and taking meeting requests from Stokes' assistant. *PSUF* ¶ 87.

One point of strain was the parties' disagreement over accounting and internal review processes. *See id.* ¶¶ 88–90. For example, in or around May 2024, Sparacio advised Plaintiff regarding Ameris's decision to make changes to the initial direct costs process to remain GAAP compliant regarding purchased loans. *Id.* ¶ 89. Plaintiff questioned the proposed change and suggested the Division recharacterize the purchased loans and "book as individual deals" rather than using "the code for portfolio purchases." *Id.*; *Stokes Decl.*, Ex. 44. Stokes attests that Plaintiff's suggestion violates GAAP and Ameris's internal accounting controls and compliance requirements. *Stokes Decl.* ¶ 9. Stokes raised her concerns to LaHaise and Bill McKendry, Ameris's Chief Compliance Officer. *PSUF* ¶ 90.

---

[5] Stokes testified that she was unhappy with the $██████ in charge-offs and stated that Byrne, as head of Balboa Capital, was responsible for those losses. *Id.* ¶ 82.

[6] Plaintiff disputes that he ever stated any intent to resign as Division CEO. *PSUF* ¶ 86; *Fode Decl.*, Ex. 1 (Byrne II. Dep. Tr.) 274:21-257:21.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:24-cv-01989-MWC-JDE                          Date: February 12, 2026

Title:      Patrick Byrne v. Ameris Bank

Phil Silva, President of the Balboa Division, had worked with and reported to Plaintiff for 17 years, including before the acquisition. *Id.* ¶ 91. Silva testified that his friendship and partnership with Plaintiff also changed over time. *Id.* Plaintiff questioned Silva's opinions regarding LTIP in front of other Division employees. *Id.* ¶ 92. Silva called Plaintiff's behavior "incredibly disrespectful" and said he had no time to spend on negativity. *Id.* ¶ 93. Silva stated, "With regards to [LaHaise] and Ameris . . . I have been very clear with them and you that we are a much better company with you . . . They want you to be here if you want to be here . . . " *Id.* ¶ 94. Silva testified that Plaintiff had become increasingly "paranoid" and "really unhappy," and was in conflict with multiple individuals across different levels of Ameris. *Id.* ¶ 95. Silva wrote to Plaintiff in an e-mail, "The LTIP seems to have been the impetus for the breakage of our relationship." *Id.* ¶ 96.

On February 5, 2024, Plaintiff sent an e-mail to the Balboa Division management team, consisting of 11 employees, openly expressing his disagreement with Ameris's 2023 EBT and LTIP calculations, without sharing Ameris's explanations. *Id.* ¶ 97.

On March 1, 2024, Byrne claimed approximately $6.5 million was "past due," and questioned LaHaise, " . . . if you don't find what I am doing valuable, please let me know . . . if the feeling is not mutual, please suggest how we move forward." *Id.* ¶ 98. LaHaise replied that he had told Byrne during the 2023 performance review that he wanted Byrne to remain Division CEO, that Byrne's LTIP assumptions were incorrect, and that no payments were due. *Id.* He proposed a call or in person meeting at Ameris's headquarters, including Ameris's CEO if needed. *Id.* Byrne did not participate in the meeting. *PSUF Opp.* ¶ 99. Because the LTIP only covered the three-year period from 2022 through 2024, LaHaise sent Byrne an email on December 7, 2023, regarding the "2024 budget and LTIP potential." *Id.* ¶ 100. Plaintiff and Ameris discussed the 2025 LTIP incentive plan nearly weekly for seven months, though Plaintiff testified that Ameris never presented a formal offer or proposed plan. *Id.* ¶ 101.

Plaintiff's Employment Agreement was set to expire at the end of 2024. *PSUF* ¶ 102. On March 7, 2024, LaHaise sent a notice that Ameris would not be renewing the Employment Agreement. *LaHaise Decl.*, Ex. 51. On March 11, 2024, LaHaise emailed Plaintiff a document titled "Severance Protection and Restrictive Covenants Agreement," which LaHaise described as a "senior management agreement," for his review. *PSUF* ¶ 104. Plaintiff never signed the proposed agreement. *Id.* ¶ 105. Plaintiff did not consult an attorney regarding this draft, even though he had sought legal review for his prior

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:24-cv-01989-MWC-JDE                        Date: February 12, 2026

Title:    Patrick Byrne v. Ameris Bank

agreements with Ameris.  *Id.* ¶ 106.  Plaintiff testified that he thought the senior management agreement "didn't seem like it was real" and that he "didn't know what was . . . behind it."  *Id.* ¶ 107.  The same draft document was also offered to Silva, who signed it.  *Id.* ¶ 108.  On June 24, 2024, LaHaise e-mailed Plaintiff and Silva an agenda for a meeting the next day; Plaintiff cancelled at the last minute.  *Id.* ¶ 110.

Ameris terminated Byrne's employment with a formal notice sent to Byrne on June 27, 2024, effective June 30, 2024.  *Id.* ¶¶ 112, 117.

Ameris maintains anti-retaliation and whistleblower protections policies in its Code of Business Conduct and Ethics, which prohibit retaliation and provide reporting procedures.  *Id.* ¶¶ 34–35.  Plaintiff acknowledged these policies and was aware of the reporting avenues.  *Id.* ¶ 36.  Defendant asserts that, despite raising LTIP calculation methodology related disputes for over a year before his termination, Plaintiff never reported or complained of retaliation during his employment.  *Id.*  Plaintiff admits he "did not characterize [his] concerns as 'retaliation' while employed."  Dkt. # 108-8 ("*Byrne Decl.*") ¶ 25.  However, Plaintiff attests that he was "increasingly portrayed as difficult or disruptive," and that he "repeatedly raised substantive objections to the LTIP calculations . . . through the channels available to me."  *Id.* ¶ 28.

    B.    Procedural Background

On September 16, 2024, Plaintiff filed his complaint against Defendant asserting four causes of action: (1) wrongful termination, in violation of public policy; (2) retaliation, in violation of California Labor Code § 1102.5; (3) failure to pay all wages due at termination, in violation of Labor Code §§ 201–203; and (IV) violation of California Business & Professions Code § 17200 (Unfair Competition Law ("UCL")).  Dkt. # 1 (Compl.).  On December 26, 2025, Defendant moved for summary judgment.  *See D. MSJ.*

II.    Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 8:24-cv-01989-MWC-JDE | Date: February 12, 2026 |
| Title: | Patrick Byrne v. Ameris Bank | |

responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In judging evidence at the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence. *Id.* at 255. Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence must be capable of presentation at trial in a form that would be admissible. *See* Fed. R. Civ. P. 56(c)(2). "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001); *see also Fed. Deposit Ins. Corp. v. N.H. Ins. Co.*, 953 F.2d 478, 485 (9th Cir. 2001) (stating that "the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment") (internal quotation marks and citation omitted). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

III.    Discussion

   A.    Count III: Failure to Pay All Wages at Termination (Labor Code §§ 201-203)

Plaintiff brings claims for unpaid earned wages at the time of termination under Labor Code § 201, and for waiting time penalties under § 203.

Under California law,

> When an employment relationship comes to an end, the [California] Labor Code requires employers to promptly pay any unpaid wages to the departing employee. The law establishes different payment deadlines depending on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.     8:24-cv-01989-MWC-JDE                          Date: February 12, 2026

Title:       Patrick Byrne v. Ameris Bank

> manner of departure.... Labor Code section 202 specifies the
> default deadline for paying employees who [ ] resign:
> immediately at the time of quitting, if the employee has given
> sufficient advance notice, and within 72 hours if the employee
> has not. (Id., § 202, subd. (a).)

*Naranjo v. Spectrum Security Services, Inc.*, 13 Cal. 5th 93, 105–06 (2022). Defendant moves for summary judgment on Plaintiff's unpaid wages claim on three grounds.

>           *i.      Whether the LTIP Cash Award Is a "Wage"*

First, Defendant argues that LTIP awards are "discretionary bonuses," not wages due upon termination under Labor Code §§ 201–203, because the employer retained discretion "both as to the fact of payment and as to the amount." *Mot.* 15–16 ("The undisputed evidence shows that all material aspects of an LTIP cash bonus award— including eligibility, calculation, and even the existence or amount of any payment—were determined on a discretionary basis.") (citing *DSUF* ¶¶ 11, 12, 14)).

Labor Code § 200(a) defines wage as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Lab. Code § 200(a). In *Schachter v. Citigroup, Inc.*, the California Supreme Court construed the term "wages" broadly to include not only periodic monetary earnings but "[i]ncentive compensation, such as bonuses and profit-sharing plans." 47 Cal. 4th 610, 618 (2009); *see also Davis v. Farmers Ins. Exch.*, 245 Cal.App.4th 1302, 1331 & n.20 (2016) (stating Labor Code's wage payment provisions apply to "highly-compensated executives," and "wages include not just salaries earned hourly, but also bonuses, profit-sharing plans, and commissions."). "Only when an employee satisfies the condition(s) precedent to receiving incentive compensation . . . can that employee be said to have earned the incentive compensation (thereby necessitating payment upon resignation or termination)." *Schachter*, 47 Cal. 4th at 621. *See also Neisendorf v. Levi Strauss & Co.*, 143 Cal.App.4th 509, 522 (2006) (stating, "once a bonus has been promised as part of the compensation for service, and the employee fulfills all the agreed-to conditions, the promised bonus is considered wages that must be paid.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.     8:24-cv-01989-MWC-JDE                                    Date: February 12, 2026

Title:       Patrick Byrne v. Ameris Bank

Under *Schachter* and *Neisendorf*, the LTIP Cash Award is properly considered incentive compensation that, if Plaintiff satisfied the conditions precedent to receiving the LTIP cash award, needed to be paid upon termination. *See Schachter*, 47 Cal. 4th at 621.

> ii.     *Whether any earned amount of Plaintiff's LTIP Cash Award Remains Unpaid*

Second, Defendant argues that no earned amount of Plaintiff's LTIP Cash Award remains unpaid. *Mot.* 16–18. The Court finds there exists a triable issue of fact as to whether Plaintiff was not paid earned wages upon termination.

Primarily, disputes of fact remain as to whether Ameris properly calculated Balboa Division's EBT. Whether Ameris's methodology complied with the LTIP's terms remains disputed, and both sides proffer expert reports with differing opinions. *See, e.g.*, *PSUF* ¶¶ 19–20, 23, 41–44, 47–50, 57–63, 70, 74, 134–135. A reasonable jury could agree with Plaintiff's proposed LTIP revisions based on the Purchase and Sale Agreement, the pre-acquisition presentation of Balboa's cost structure, and the historical treatment of those expenses.

Defendant also argues no further LTIP Cash Award is warranted because the Plan states Committee decisions are final and binding, and no right to an Award exists until the Award has been paid. *Mot.* 17. The LTIP permits the Committee to designate its duties to an employee, and Mr. LaHaise testified that he was designated by Ameris to make the determination. *Fode Decl.*, Ex. 5 (LaHaise Dep. Tr.), 139:25–141:17. But a reasonable jury could find that Mr. LaHaise's determinations were not final and binding, and that the LTIP guarantees Plaintiff's LTIP Cash Award whenever EBT thresholds were met.

As to the 2022 LTIP award, Defendant argues that "Byrne received and accepted his 2022 LTIP Award of over $5.6 million—an amount he personally recommended and allocated to himself—in February 2023 without disputing the calculation or raising any errors at the time." *Mot.* 17, citing *PSUF* ¶ 39. To the extent accepting the award suggests Plaintiff believed the award was properly calculated, Plaintiff's purported belief does not impact whether earned wages were not paid.

Next, the parties dispute Plaintiff's entitlement under the 2024 LTIP because Plaintiff was terminated in June 2024, before the year-end LTIP pool had been calculated. *See PSUF Opp.* ¶ 75. Plaintiff argues in his Separate Statement that "Ameris calculated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:24-cv-01989-MWC-JDE                         Date: February 12, 2026

Title:    Patrick Byrne v. Ameris Bank

the 2024 year-end LTIP results and reflected a funded LTIP pool.  Under the LTIP's distribution framework, any amounts owed were not due until the following year. . . ".  *See PSUF ¶ 75.*  However, Plaintiff does not include this argument in his briefing, *see Opp.*, and arguments made within a separate statement of facts may be disregarded.  Moreover, an unpaid wages claim requires that the employer promptly pay wages earned and unpaid at the time of termination.  *See* Labor Code §§ 201, 202.

Since "any amounts owed were not due until the following year," *see PSUF ¶ 75,* the 2024 LTIP Award is not available under this cause of action.

   *iii.  Whether Defendant is subject to waiting time penalties*

If an employer "willfully fails to pay" in accordance with sections 201 or 202, it is subject to statutory "waiting time" penalties. Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").  Ameris argues it cannot be held liable for waiting time penalties under § 203(a) because any failure to timely pay final wages was not "willful" but the result of a "good faith dispute." *Mot.* 18–19.

The California Code of Regulations defines the relevant terms as follows:

> A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due. However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203.
>
> (a) Good Faith Dispute. A "good faith dispute" that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist.  Defenses presented which, under all the circumstances, are unsupported by any evidence, are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. | 8:24-cv-01989-MWC-JDE | Date: February 12, 2026 |
| Title: | Patrick Byrne v. Ameris Bank | |

unreasonable, or are presented in bad faith, will preclude a finding of a "good faith dispute."

8 Cal. Code Regs. § 13520; *see also Hill v. Walmart Inc*., No. 21-15180, 2022 WL 1218776, at *4 (9th Cir. Apr. 26, 2022) ("An important rationale behind allowing a good faith defense in this context is to prevent employers from being penalized in genuine cases of uncertainty." (quotations omitted)); *Diaz v. Grill Concepts Servs., Inc*., 23 Cal.App.5th 859, 868 (2018) ("[A]n employer's failure to pay is not willful if that failure is due to [ ] uncertainty in the law . . . "). The existence of a good faith dispute is determined by an objective standard. *See Diaz*, 23 Cal.App.5th at 874. Whether an employer's violation "was willful is a question of fact properly submitted to a jury." *Huss v. City of Huntington Beach*, 317 F. Supp. 2d 1151, 1160 (C.D. Cal. 2000).

Defendant's legal position—that Plaintiff was entitled only to $5.6 million in 2022 and none in 2023 and 2024—would preclude any recovery by Plaintiff on his unearned wage claims. Therefore, the Court must determine whether Defendant's position was asserted in good faith. *Cf. Hill*, 2022 WL 1218776, at *4 ("[T]he operative question is simply whether, based on the state of the law when Hill's photo shoots occurred, Walmart has presented an objectively reasonable defense that is not marred by bad-faith conduct.").

Plaintiff argues that the evidence shows Defendant was aware of the proper methodology to calculate the LTIP, yet Defendant continued to utilize methodology inconsistent with the Plan's plain language. *Opp.* 16–18. A rational jury could review the numerous emails Plaintiff sent to Defendant regarding purported miscalculations, as well as internal communications among Ameris employees discussing his contentions, and determine that Defendant willfully performed the LTIP calculations improperly. *See, e.g.*, *PSUF* ¶¶ 47–50, 57–63. On the present record, the Court cannot find, as a matter of law, that Ameris had a good faith dispute as to whether any wages were due earlier than they were paid. Consequently, on the waiting time penalties claim, summary judgment in favor of either party is precluded.

Plaintiff is not entitled to recover the 2024 LTIP Cash Award as unpaid wages as a matter of law, so the Court **GRANTS IN PART** summary judgment as to this aspect of Plaintiff's unpaid wages claim. Because triable issues of fact remain as to whether Ameris failed to pay all wages due to Plaintiff at termination, the Court **DENIES IN PART** summary judgment on this claim in all other respects.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:24-cv-01989-MWC-JDE                          Date: February 12, 2026

Title:     Patrick Byrne v. Ameris Bank

     B.     <u>Count II: Retaliation (Labor Code § 1102.5)</u>

     To state a claim under Labor Code § 1102.5, a plaintiff must show: (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) a causal link between the two. *Suarez v. Bank of Am. Corp.*, No. 18-CV-01202-MEJ, 2018 WL 2431473, at *15 (N.D. Cal. May 30, 2018). Even if proven, the employer prevails if it shows by clear and convincing evidence that the action was taken for legitimate, independent reasons. *Id.*; Cal. Lab. Code § 1102.6.

     *i.     Whether Byrne engaged in protected activity*

     California Labor Code § 1102.5(b)[7] prohibits an employer from "retaliating against an employee for sharing information the employee 'has reasonable cause to believe . . . discloses a violation of state or federal statute' or of 'a local, state, or federal rule or regulation' with a government agency, with a person with authority over the employee, or with another employee who has authority to investigate or correct the violation." *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 709 (2022) (quoting Cal. Lab. Code. § 1102.5(b)). "The employee 'need not prove an actual violation of law; it suffices if the employer fired [her] for reporting [her] reasonably based suspicions of illegal activity." *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1029 (S.D. Cal. 2017) (alterations original) (quoting *Ferrick v. Santa Clara Univ.*, 231 Cal. App. 4th 1337, 1345 (2014)). "To have a reasonably based suspicion of illegal activity, the employee must be able to point to some legal foundation for his suspicion—some statute, rule or regulation which may have been violated by the conduct he disclosed." *Id.* Whether the employee's belief was reasonable "is generally a question of fact to be resolved by a jury." *Edgerly v. City of Oakland*, 211 Cal. App. 4th 1191, 1206 (2012).

     Defendant argues this claim is subject to summary judgment because Plaintiff did not make a protected disclosure under § 1102.5(b). *Mot.* 20–22. Defendant asserts that Plaintiff's complaints concerned Ameris's LTIP accounting calculations and not violations of the law. *Id.* 22. Drawing all reasonable inferences in the light most favorable to the nonmoving party, a jury could find Plaintiff had a reasonably-based suspicion of illegal activity, because Plaintiff reported to Ameris several times that its failure to calculate the LTIP under the methodology and key assumptions required by the LTIP and the past

---

[7] Plaintiff's retaliation claim arises out of Labor Code § 1102.5(b), and not (c). *Opp.* 18 n. 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:24-cv-01989-MWC-JDE                    Date: February 12, 2026

Title:    Patrick Byrne v. Ameris Bank

practices as defined in the Pioneer operating model was depriving eligible employees of earned wages. *See, e.g.*, PSUF ¶¶ 48–50; *LaHaise Decl.*, Ex. 20.

Defendant's cases do not warrant a different result.[8] In *Carter v. Escondido Union High Sch. Dist.*, 148 Cal. App. 4th 922, 934–35 (2007), the court held that a teacher's report about a football coach's recommendation that a student take creatine, which resulted in the student's hospitalization, was not protected activity under § 1102.5, in part because "the record is devoid of anything that would support a conclusion that [the teacher's] belief" that the coach had violated a statute or regulation "was 'reasonable'." Here, unlike taking creatine, withholding wages is unlawful, so Plaintiff's belief that Defendant's conduct constituted "illegal activity" is not unreasonable.

Finally, Defendant's argument that Plaintiff's complaints concerned "fairness" and not illegality is conclusory, *see Mot.* 22, and a reasonable jury could find Plaintiff reported Defendant's LTIP calculations as a suspected violation of the law.

    *ii.    Whether the LTIP discrepancies were a contributing factor in his termination*

Under section 1102.5, a plaintiff need not prove that his or her protected activity was the sole or even primary reason for his termination. *Lawson*, 12 Cal. 5th at 712. Instead, a plaintiff need only show that protected activity was a "contributing factor" to an adverse employment action. *Id.*

Defendant argues Plaintiff cannot establish a genuine dispute of material fact as to causation, because there "is no evidence linking his alleged whistleblowing (his LTIP calculation complaints) to his termination, which occurred more than a year later." *Mot.* 23–24. Defendant points out that after raising his LTIP concerns, Plaintiff remained Division CEO, received quarterly bonuses and salary increases, and was repeatedly assured that Ameris wanted him to continue in that role. *Id.*

Here, a reasonable factfinder could conclude that Plaintiff's termination in June 2024 was causally connected to his LTIP complaints. For example, in *Miglani v. Edwards Lifesciences, LLC*, No. 18-CV-01983-LB, 2018 WL 6265007, at *4 (C.D. Cal. Jan. 8,

---

[8] Nor may the Court rely on *Hays v. Cnty. of Los Angeles*, No. B291542, 2020 WL 1465826 (Cal. Ct. App. Mar. 26, 2020), an unpublished state court decision. *See Mot.* 22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 8:24-cv-01989-MWC-JDE | Date: February 12, 2026 |
| Title: | Patrick Byrne v. Ameris Bank | |

2018), the court held "[t]he temporal break of almost a year . . . does not give rise to an inference of causality." *See Mot.* 24. But here, the timeline supports a finding of causality, because Plaintiff regularly raised concerns about the LTIP calculations from mid-2023 until at least May 2024, just before his termination. *See, e.g.*, *PSUF* ¶¶ 74–75; *Dowell v. Contra Costa County*, 928 F.Supp.2d 1137, 1156 (N.D. Cal. 2013) ("Causation may be inferred from circumstantial evidence, including 'the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.'"). And while Defendant highlights neutral to favorable employment actions that occurred after Plaintiff began reporting his concerns, Plaintiff was also subsequently given negative feedback on his performance review, the substance of which he disputes. *See PSUF* ¶ 77.

Accordingly, disputed facts exist as to whether Plaintiff raising complaints to Ameris was a "contributing factor" for his termination.

>     iii.    *Whether Ameris had legitimate, independent reasons for Byrne's termination*

Defendant summarily states, even if Plaintiff could establish a claim under § 1102.5, the undisputed evidence shows Ameris would have terminated Plaintiff for legitimate, independent reasons, regardless of any LTIP calculation complaints. *See Mot.* 14. Defendant does not expound on the argument in its Motion, *see id.*, but facts in the Separate Statement offered as legitimate, independent reasons for Plaintiff's termination include the Balboa Division's failure to meet expected financial results under Plaintiff's leadership; Plaintiff's strained and unproductive working relationships with employees across Ameris; and Plaintiff's failure to follow—and attempts to circumvent—internal accounting controls and processes, *see DSUF* ¶ 113.

On the other hand, Ameris designated Plaintiff's termination as "without cause"— though Defendant disputes the designation's significance. *PSUF* ¶ 113; *see Reply* 11. Plaintiff substantively disputes Defendant's proffered grounds for termination. *See PSUF* ¶ 113. Further, Defendant's characterization of "strained" relationships between Plaintiff and various employees is based on each person's subjective observations, *see id.*, which are properly subject to a jury's credibility determination, *see Liberty Lobby*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.     8:24-cv-01989-MWC-JDE                            Date: February 12, 2026

Title:       Patrick Byrne v. Ameris Bank

     For these reasons, the Court **DENIES** Defendant's motion for summary judgment
as to Plaintiff's retaliation claim.

    C.    <u>Count I: Wrongful Termination in Violation of Public Policy; Count IV:
        Violation of UCL</u>

     Defendant argues that Plaintiff's claims for (1) wrongful termination in violation of
public policy and (2) violation of the UCL, Cal. Bus. & Prof. Code § 17200, are both wholly
derivative of his Labor Code claims. *See Mot.* 24–25. Plaintiff argues that the claims are
not purely derivative because the claims have distinct elements, and because the UCL
reaches conduct beyond Labor Code violations. *Opp.* 23–25.

     Courts often consider claims for wrongful termination in violation of public policy
as derivative of claims for retaliation. *See, e.g., Killgore v. SpecPro Pro. Servs., LLC*, 51
F.4th 973, 982 (9th Cir. 2022) (regarding plaintiff bringing section 1102.5 retaliation claim,
stating that he "further alleges a claim of wrongful termination in violation of public policy
that is derivative of his statutory retaliation claims"); *Tribble v. Raytheon Co.*, 414 Fed.
App'x 98, 100 (9th Cir. 2011) (holding wrongful termination in violation of public policy
derivative of claims relying on underlying statutes, because "the common law cause of
action cannot be broader than the . . . statute on which it depends[.]").

     Nonetheless, to the extent the claim is derivative, the Court has denied summary
judgment on Plaintiff's retaliation claim, so summary judgment as to the wrongful
termination claim is also **DENIED**.

     As to the UCL claim, in addition to the fact that the Court is denying summary
judgment on the foregoing claims, California's UCL permits civil recovery for "any
unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or
misleading advertising . . ." Cal. Bus. & Prof. Code § 17200; *see also Treefrog Devs., Inc.
v. Nu-X Ventures, LLC*, No. 22-CV-225 TWR (MDD), 2022 WL 17085925, at *6 (S.D.
Cal. Nov. 17, 2022) ("Lawful conduct can still be unfair if it '(1) offends public policy; (2)
is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to [the]
consumer.'").

     Plaintiff has raised at least a triable issue of whether Defendant utilizes business
practices outside of Labor Code violations that a reasonable jury could find "unfair," such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:24-cv-01989-MWC-JDE                          Date: February 12, 2026

Title:       Patrick Byrne v. Ameris Bank

as whether Ameris intentionally altered the LTIP methodology to prevent Balboa Division from meeting its threshold targets.  *See Opp.* 24–25.

Thus, the Court **DENIES** summary judgment on Plaintiff's UCL claim.

IV.   Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** the Motion only as to recovery for the 2024 LTIP Cash Award on Plaintiff's unpaid wages claim.  It **DENIES IN PART** Defendant's motion for summary judgment in all other respects.


**IT IS SO ORDERED.**


                                                                                     :

**Initials of Preparer**     TJ