MATTHEW SESSIONS (BAR NO. 307098)
STACEY A. VILLAGOMEZ (BAR NO. 317081)
MADISON E. LARSEN (BAR NO. 364953)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
2010 Main Street, 8th Floor
Irvine, California 92614-7214
Phone:  (949) 553-1313
Fax:  (949) 553-8354
E-Mail:  msessions@allenmatkins.com
         svillagomez@allenmatkins.com
         mlarsen@allenmatkins.com

Attorneys for Plaintiff
PATRICK BYRNE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an Individual,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>AMERIS BANK, a Georgia corporation,<br><br>　　　　　Defendant. | Case No. 8:24-cv-01989-MWC-JDE<br><br>ASSIGNED FOR ALL PURPOSES TO<br>Judge Michelle Williams Court<br><br>**PLAINTIFF PATRICK BYRNE'S OPPOSITION TO DEFENDANT AMERIS BANK'S MOTION IN LIMINE NO. 2 TO EXCLUDE OPINIONS AND TESTIMONY FROM PLAINTIFF'S EXPERT DEBORAH DICKSON UNDER FRE 702 AND *DAUBERT***<br><br>Date:　March 13, 2026<br>Time:　1:30 p.m.<br>Ctrm:　6A<br><br>Disc. Cutoff:　　　　November 28, 2025<br>Pretrial Conference:　May 22, 2026<br>Trial Date:　　　　　June 1, 2026 |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

4900-5040-3470.9

Case No.  8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION
TO DEFENDANT AMERIS BANK'S
MOTION IN LIMINE NO. 2

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. LEGAL ARGUMENT ..........................................................................................2

    A. Ms. Dickson's Report is Within the Permissible Scope of Rebuttal Expert Testimony Because it Opines on Topics *Directly Opined on By Ameris's Own Expert* ........................................2

        1. Ameris Invited and Opened the Door to the Opinion they Now Challenge By Offering an Opinion on the Same Topic in Sebold's Report ..................................................2

        2. At a Minimum, Any Challenge to Ms. Dickson's Opinion Should be Considered "Waived" ...............................5

        3. To the Extent the Court has Concerns about the Scope of Ms. Dickson's (and likewise Ms. Sebold's) Opinions, Their Testimony Should be Limited, Rather than Excluded ................................................................5

    B. Ms. Dickson's Opinions Are Based on Corporate Knowledge and Ameris's Own Financial Records ..............................6

    C. Ameris's "100% Allocation" Argument Does Not Warrant Exclusion ..............................................................................................10

    D. A Rebuttal Expert is Not Required to Perform Calculations Under the Opposing Party's Theory ...................................................11

III. CONCLUSION .................................................................................................12

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4900-5040-3470.9

(i)

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION
TO DEFENDANT AMERIS BANK'S
MOTION IN LIMINE NO. 2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Int'l Longshoremen's Union Local No. 10*,
966 F.2d 443 (9th Cir. 1992) ........................................................................... 2

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
613 F.Supp.3d 1308 (S.D. Cal. 2020) ............................................................. 2

*Baker v. SeaWorld Entertainment, Inc.*,
423 F.Supp.3d 878 (S.D. Cal. 2019) ............................................................... 3

*Bakst v. Community Memorial Health System, Inc.*,
2011 WL 13214315 (C.D. Cal. 2011) ............................................................. 8

*Cabrera v. Cordis Corp.*,
134 F.3d 1418 (9th Cir. 1998) ......................................................................... 9

*City of Pomona v. SQM N. Am. Corp.*,
750 F.3d 1036 (9th Cir. 2014) ......................................................................... 4

*Claar v. Burlington Northern Railroad Co.*,
29 F.3d 499 (9th Cir. 1994) ............................................................................. 9

*Erhart v. BofI Holding, Inc.*,
445 F.Supp.3d 831 (S.D. Cal. 2020) ............................................................... 7

*General Electric Co. v. Joiner*,
522 U.S. 136 (1997) ......................................................................................... 9

*Gutzalenko v. City of Richmond*,
2026 WL 102608 (N.D. Cal. 2026) ............................................................ 5, 6

*Hardeman v. Monsanto Co.*,
997 F.3d 941 (9th Cir. 2021) ......................................................................... 11

*Houserman v. Comtech Telecomms. Corp.*,
509 F. Supp. 3d 1301 (W.D. Wash. 2020) ..................................................... 7

*Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*,
340 F.Supp.3d 934 (N.D. Cal. 2018) .............................................................. 2

*In re Joint E. & S. Dist. Asbestos Litig.*,
52 F.3d 1124 (2d Cir. 1995) ............................................................................ 4

*In re REMEX Inc. Securities Litigation*,
702 F.Supp.2d 1202 (S.D. Cal. 2010) ............................................................. 4

*J.M. ex rel. Pineda v. Bratton*,
333 F.App'x 188, 189 (9th Cir. 2009) ............................................................. 3

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4900-5040-3470.9

(ii)

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION
TO DEFENDANT AMERIS BANK'S
MOTION IN LIMINE NO. 2

**Page(s)**

*Krause v. Cnty. of Mohave*,
   459 F.Supp.3d 1258 (D. Ariz. 2020) ............................................................... 5

*McHugh v. United Serv. Auto. Ass'n*,
   164 F.3d 451 (9th Cir. 1999) ........................................................................... 2

*Morgan v. Sundance, Inc.*,
   596 U.S. 411 (2022) ........................................................................................ 5

*San Francisco Baykeeper v. City of Sunnyvale*,
   627 F.Supp.3d 1085 (N.D. Cal. 2022) ............................................................ 6

*Stanley v. Novartis Pharms. Corp.*,
   11 F.Supp.3d 987 (C.D. Cal. 2014) .............................................................. 11

*TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*,
   2016 WL 7042085 (C.D. Cal. 2016) ............................................................... 3

*United States v. Sepulveda-Barraza*,
   645 F.3d 1066 (9th Cir. 2011) ......................................................................... 3

**Statutes**

Fed. R. Civ. P. 26(a)(2)(D)(ii) .............................................................................. 11

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4900-5040-3470.9

(iii)

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION
TO DEFENDANT AMERIS BANK'S
MOTION IN LIMINE NO. 2

## I. INTRODUCTION

This case presents a straightforward mathematical dispute. Plaintiff Patrick Byrne alleges that—in connection with the sale of his company, Balboa Capital, to Defendant Ameris Bank—Ameris agreed to pay him 62.54% of an annual "LTIP Pool" that would be based on Balboa's performance each year post-acquisition, so long as certain accounting thresholds were met. Byrne alleges that for fiscal years 2022 and 2023, Ameris miscalculated both (1) whether those accounting thresholds were met and (2) the amount of the LTIP Pool. Accordingly, Defendant Ameris engaged an expert, Maryellen Sebold, to provide calculations addressing those two allegations. Likewise, Byrne engaged an expert, Deborah Dickson, to rebut the opinions and calculations of Ameris's expert.

Rather than simply let the jury weigh the credibility of each party's expert, Ameris attempts to unjustly malign Ms. Dickson's credibility via its Motion in *Limine* No. 2 ("MIL No. 2"), premised on unfounded and inappropriate *Daubert* challenges. It argues that Ms. Dickson's opinions should be excluded because primarily because it claims one of the topics on which she opines—where the relevant contract in this case calls for "GAAP" versus "non-GAAP" accounting—is outside the proper scope of expert testimony. This is plainly wrong for several reasons, not the least of which is that it was Ameris's own expert, Ms. Sebold, who first opined on the exact same issue, and Ms. Dickson is simply rebutting that opinion. Ameris's Motion should be denied.

Finally, Ameris's request for an "advanced hearing" on this Motion in Limine is moot. The Court has already ruled on Ameris's Motion for Summary Judgment. (Dkt. 123.) Accordingly, there is no basis to deviate from the Scheduling Order. Plaintiff respectfully requests that this Motion be heard in accordance with the Court's established schedule at the Final Pretrial Conference on May 22, 2026. (Dkt. 107.)

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4900-5040-3470.9                    -1-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION
TO DEFENDANT AMERIS BANK'S
MOTION IN LIMINE NO. 2

## II. LEGAL ARGUMENT.

### A. Ms. Dickson's Report is Within the Permissible Scope of Rebuttal Expert Testimony Because it Opines on Topics *Directly Opined on By Ameris's Own Expert*

#### 1. Ameris Invited and Opened the Door to the Opinion they Now Challenge By Offering an Opinion on the Same Topic in Sebold's Report

Ameris's primary argument in its motion is that Ms. Dickson's rebuttal expert report improperly opines on the proper interpretation of a "legal contract."[1] (MIL No. 2 4:3–5:8). This argument is frankly shocking given that it was first Ameris's own expert who explicitly opined on the same subject matter, stating upfront in her report that one of the four items upon which she was opining was that "Byrne's requested adjustments were not supported by . . . the terms of the LTIP agreement." (Sebold Report ¶ 12.)

Courts consistently recognize that when a party introduces expert testimony on a subject, the opposing party must be permitted to respond with competing expert analysis, otherwise the jury would hear a one-sided expert narrative, the very result Rule 702 and the adversarial process are designed to prevent. As courts have explained, "[t]he proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F.Supp.3d 934, 996 (N.D. Cal. 2018). Indeed, "rebuttal evidence must be on the 'same subject matter' of the other parties' initial disclosure." *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*,

---

[1] To supports its argument that Ms. Dickson is improperly opining on contract interpretation, Ameris cites to three cases: (1) *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999); (2) *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992); and (3) *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F.Supp.3d 1308, 1320-21 (S.D. Cal. 2020), aff'd, 9 F.4th 1102 (9th Cir. 2021). However, all three cases are inapposite as none of them address another party inviting or opening the door to the very testimony that party later tried to exclude.

2016 WL 7042085, at *4 (C.D. Cal. 2016); *see also Baker v. SeaWorld Entertainment, Inc.*, 423 F.Supp.3d 878, 896 (S.D. Cal. 2019) ("Rebuttal testimony is proper as long as it addresses the same subject matter that the initial experts address.").

Accordingly, when a party "open[s] the door through his own expert's testimony about" a certain topic, it is "not improper for the district court to allow [the opposing party's] own expert to give his own assessment." *J.M. ex rel. Pineda v. Bratton*, 333 F.App'x 188 (9th Cir. 2009) (holding that party had "opened the door through his own expert's testimony about the existence of incidents of aggressive behavior in his medical records," thereby allowing the opposing party's expert to opine on the same topic); *see also, e.g., United States v. Sepulveda-Barraza*, 645 F.3d 1066, 1073 (9th Cir. 2011) (holding that court properly allowed government's expert testimony on a specific topic when defendant "opened the door to such testimony by noticing his intent to call" his own expert to testify on the same topic.)

Here, Ameris invited and effectively opened the door to Ms. Dickson's testimony when its own expert, Ms. Sebold, provided affirmative testimony on how to interpret "the terms of the LTIP agreement." (Sebold Report ¶ 12.) That Ms. Dickson's opinions are merely responding directly to Ms. Sebold opinions is made abundantly clear by statements and opinions made throughout Ms. Sebold's report:

- "Opinion 3: Byrne's requested adjustments were not supported by GAAP or the terms of the LTIP agreement." (*Id*.)
- "Byrne's request to include additional revenue is not supported by the facts. The LTIP Agreement clearly states the calculation is based on GAAP." (*Id*. at ¶ 75.)
- "As such, Byrne's requested adjustments are inconsistent with the LTIP agreement." (*Id*. at ¶ 81.)
- "I conclude that the LTIP model properly included these employees." (*Id*. at ¶ 91.)
- "I concluded this adjustment is not supported by the terms of the LTIP." (*Id*. at ¶ 97.)
- "The LTIP agreement specifically states the agreement must follow GAAP. As such, I conclude that Byrne's request to adjust interim rent did not comply with the terms of the LTIP agreement." (*Id*. at ¶ 104.)

- "As the LTIP agreement clearly states the calculation should follow GAAP, I concluded the request should not be included in the LTIP calculation." (*Id.* at ¶ 110.)

Further, during her deposition, Ms. Sebold repeatedly confirmed that she would be opining on her interpretation of the LTIP agreement:

- "Q. Right. I understand that. But it's your interpretation then that Paragraph 9 as it's drafted requires that GAAP methodology would be applied to the entire LTIP? … [Ms. Sebold] … Yes, I do." (Sebold Depo. at 45:23–46:4.)

- "And, again, going to the interpretation of that provision within the LTIP … I was able to determine that … [t]his is what had been agreed to by the parties and clearly was their interpretation of what was called for in the LTIP …" (*Id.* at 53: 20–54: 3.)

- "But I will tell you what the intent of the parties appears to have been from review of the calculations that were done, what seemingly is the agreement of the parties to that calculation." (*Id.* at 54:16–19.)

- "Q.· ·So sitting here today, your opinion that GAAP governs the LTIP is based on your interpretation of Paragraph 9; correct? … [Ms. Sebold] … I think the answer is yes. Because that paragraph is very clear as to what this award needs to follow,…" (*Id.* at 62:23–63:3.)

Accordingly, this case presents nothing more than a classic "battle of the experts" that have competing methodologies and whose credibility must be evaluated by the jury. The Court's role in this situation is to let the jury decide who is right. "Trial courts should not arrogate the jury's role in 'evaluating the evidence and the credibility of expert witnesses' by "simply cho[o]s[ing] sides in [the] battle of the experts." *In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124, 1135 (2d Cir. 1995). "Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge." *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) ("A district court should not make credibility determinations that are reserved for the jury."); *see also, e.g.*, *In re REMEX Inc. Securities Litigation*, 702 F.Supp.2d 1202, 1227–28 (S.D. Cal. 2010) (finding that when there are two competing expert opinions as to whether a particular accounting valuation violated GAAP, the question is appropriate for the jury to decide.)

### 2. At a Minimum, Any Challenge to Ms. Dickson's Opinion Should be Considered "Waived"

At a minimum, Ameris has waived any ability to challenge Ms. Dickson's opinions on the exact same topic that their expert first disclosed. Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022). "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." *Id*.

Here, it is clear that Ameris intentionally relinquished any right to challenge the opinion of Ms. Dickson by first proffering Ms. Sebold's report knowing that she would be interpreting the LTIP agreement. Ms. Sebold was tasked with, and in fact did, interpret the LTIP agreement in accordance with Ameris's view of the case. By doing so, Ameris has waived any right to exclude Ms. Dickson's rebuttal to the same.

### 3. To the Extent the Court has Concerns about the Scope of Ms. Dickson's (and likewise Ms. Sebold's) Opinions, Their Testimony Should be Limited, Rather than Excluded

"The Court's role under Federal Rule of Evidence and *Daubert* is to ensure that expert testimony is reliable, relevant, and not prejudicial. The Court is not to resolve disputes over credibility and persuasiveness at this stage. **Where an expert is qualified based on experience, and the methodology used is not facially unreasonable, the appropriate remedy is often limiting the scope and framing of the testimony, rather than wholesale exclusion**." *Gutzalenko v. City of Richmond*, 2026 WL 102608, at *3 (N.D. Cal. 2026) (emphasis added). This is a common practice utilized by district courts. *See, e.g.*, *Krause v. Cnty. of Mohave*, 459 F.Supp.3d 1258, 1270–71 (D. Ariz. 2020) (limiting the plaintiff's expert's testimony by excluding testimony as to the reasonableness of a police officer's action, but permitting "opinions on the issues that derive from his expertise in police practices that falls short of legal conclusion."); *San Francisco Baykeeper v. City of Sunnyvale*,

LAW OFFICES
Allen Matkins Leck Gamble Mallory & Natsis LLP

4900-5040-3470.9 -5-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION
TO DEFENDANT AMERIS BANK'S
MOTION IN LIMINE NO. 2

627 F.Supp.3d 1085, 1093–94 (N.D. Cal. 2022) (permitting plaintiff's expert to present some cost estimates, but not others, because the latter were not supported by data in the record.).

As an example, in *Gutzalenko*, the defendant's expert was expected to testify regarding "law enforcement own training, tactics, decision making, and evaluation of use of force." *Gutzalenko*, 2026 WL 102608, at *3. In ruling to limit the defendant's expert's testimony, the court noted that the defendant's expert's experience "is sufficient to qualify him as an expert on police practices, training, tactical decision making, and how officers are trained to perceive and respond to developing threats … [defendant's expert] … may not, however, invoke scientific or medical terminology, including the discipline of "force science," to import a scientific foundation for his opinions." *Id*. Rather than exclude the defendant's expert's testimony, the court limited the scope of the testimony to what the expert was deemed qualified to opine on. *Id*.

Faced with an analogous situation, if the Court finds that neither Ms. Sebold, nor Ms. Dickson, may opine on the proper interpretation of the LTIP, the Court should similarly limit rather than exclude both experts' testimony. Without regard to interpreting the LTIP agreement, both experts may provide vital assistance to the jury in understanding both general accounting principles and the accuracy of each expert's calculations. As such, any concerns regarding either experts' proposed testimony warrants limitation, not exclusion.

**B.  Ms. Dickson's Opinions Are Based on Corporate Knowledge and Ameris's Own Financial Records.**

Ameris next attempts in its Motion to recast a substantive accounting disagreement as a Rule 702 defect by isolating language in Ms. Dickson's report referencing her discussions with Mr. Byrne. Specifically, Ameris claims that Ms. Dickson relies on an undefined concept of Balboa's "past practices" to justify adjustments to the LTIP EBT calculation. It contends that Ms. Dickson's opinions

LAW OFFICES
Allen Matkins Leck Gamble Mallory & Natsis LLP

4900-5040-3470.9                                        -6-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION
TO DEFENDANT AMERIS BANK'S
MOTION IN LIMINE NO. 2

rest improperly and exclusively on conversations with Mr. Byrne regarding his understanding of those "past practices." When the full record is considered, that argument fails for multiple reasons.

First, Rule 703 permits an expert to base an opinion on facts or data "that the expert has been made aware of," including information supplied by others, if experts in the field would reasonably rely on such information. Fed. R. Evid. 703. In forensic accounting and damages analysis, reliance on corporate personnel is standard practice. Courts have recognized this reality. For example, in *Erhart v. BofI Holding, Inc.*, 445 F.Supp.3d 831, 835 (S.D. Cal. 2020), the court held that experts may go as far as even relying on inadmissible hearsay (which Byrne's testimony at trial would not be) if experts in the field would reasonably rely on such facts or data in forming an opinion. So long as the expert applies her own training and experience to the materials and reaches an independent judgment on such testimony—rather than merely serving as a conduit for testimonial hearsay—the testimony is admissible. *See id.* That is precisely what occurred here.

In preparing her report, Ms. Dickson consulted Mr. Byrne to understand the historical accounting practices referenced in the LTIP's requirement that EBT calculations materially follow past practice. (*See e.g.*, Dickson Report at ¶ 30.) Her reliance on him was sound: Mr. Byrne founded Balboa and served as its CEO for more than three decades. (Dkts. 108-8 at ¶ 2.) He also oversaw the accounting methodologies at issue prior to Ameris's acquisition. (*Id.* at ¶ 12.) Consulting the executive who implemented those practices is consistent with forensic accounting methodology. *See, e.g., Houserman v. Comtech Telecomms. Corp.*, 509 F. Supp. 3d 1301 (W.D. Wash. 2020) (recognizing expert reliance on accounting standards and internal financial practices as proper methodology). Ms. Dickson did not simply adopt Byrne's views wholesale: she independently calculated proposed adjustments and rejected at least two where her calculations differed from Mr. Byrne's. (Dickson Report ¶¶ 26, 28.) For these reasons, Ameris's criticism of Ms. Dickson's

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4900-5040-3470.9    -7-    Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION
TO DEFENDANT AMERIS BANK'S
MOTION IN LIMINE NO. 2

consultations with Mr. Byrne concerning Balboa's "past practices" does not call into question the reliability of her methodology.

With this backdrop, Ms. Dickson then supported her primary opinions with Ameris's own financial records. Her report identifies the 2022 and 2023 LTIP Workbooks and supporting schedules she reviewed. (Dickson Report, Exhibit 2 at p. 15.) She explains that she "analyzed the 2022 and 2023 LTIP Workbooks to calculate Balboa's Earnings Before Taxes" and determined reported EBT before adjustments using Ameris's reported figures and underlying data, with calculations that "follow the terms of the LTIP Agreement." (*Id.* ¶¶ 18, 21; Exs. 3-4.) She also reviewed the supporting work schedules and tied out the adjustments reflected in those workbooks, including, but not limited to, stipulated judgments, interim rent, and repossessions. (*Id.* ¶¶ 30-32.) Ms. Dickson's computations followed the plain language formulas expressly stated in the LTIP Agreement. In short, her opinions are derived directly from Ameris's own financial documents and internal accounting materials.

None of the cases Ameris cites in its brief compel exclusion of Ms. Dickson's report based on this methodology. Specifically, Ameris cites a series of cases for the proposition that damages calculations must be excluded when the underlying assumptions are unsupported by the record, but Ameris fails to acknowledge how factually distinguishable those cases are from this one. First, in *Bakst v. Community Memorial Health System, Inc.*, 2011 WL 13214315, at *19-20 (C.D. Cal. 2011), a labor and employment case, the plaintiff's damages expert calculated lost compensation based on the assumption that the plaintiff would have obtained a hospital CEO position, despite no evidence that he had applied for or been rejected from such employment. The court excluded the opinion because the damages model rested on a speculative future event entirely unsupported by the record. *Id.* at *20. Here, by contrast, Ms. Dickson analyzes historical accounting treatment that was actually implemented at Balboa and is reflected in Ameris's own financial records. Unlike *Bakst*, this case concerns established, historical accounting treatment that

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4900-5040-3470.9                    -8-                    Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION
TO DEFENDANT AMERIS BANK'S
MOTION IN LIMINE NO. 2

Balboa actually implemented, not speculative future treatments.

Ameris also relies on *Claar v. Burlington Northern Railroad Co.*, 29 F.3d 499, 500 (9th Cir. 1994), a toxic tort case, in which the Ninth Circuit affirmed exclusion where the plaintiffs' experts failed to identify which specific chemicals allegedly caused which plaintiffs' injuries and admitted they had not reviewed the relevant scientific literature before forming their opinions. The court held that the experts failed to articulate a reliable scientific basis or discernible methodology linking the alleged exposures to the claimed injuries. *Id.* at 502. In *Cabrera v. Cordis Corp.*, a products liability case, the Ninth Circuit likewise affirmed exclusion where the expert failed to identify objective sources or demonstrate that he applied a recognized scientific method to support his conclusions. 134 F.3d 1418, 1423 (9th Cir. 1998). Those cases involved speculation or the absence of discernible methodology. Here, by contrast, Ms. Dickson identified the governing LTIP framework, analyzed Ameris's financial data, and applied established accounting principles to quantify the impact of identified accounting treatments.

Finally, Ameris cites to *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) for the proposition that exclusion is appropriate when there is "too great an analytical gap between the data and the [expert] opinion proffered." But in *Joiner*, which is a chemical workplace exposure case, the expert extrapolated from studies on infant mice injected with massive doses of chemicals to conclude that low-level exposure caused cancer in an adult human, despite the material differences in species, dosage, exposure method, and disease. The Supreme Court affirmed exclusion because the animal studies did not support the causation opinion offered. *Id.* at 146. That gap does not exist here. Ms. Dickson relied on Ameris's own financial records and used those numbers to recalculate EBT under the LTIP's express framework and formula. Her process was clear, straightforward, and can be followed step-by-step. Ameris simply disagrees with whether those same financial records should be interpreted under GAAP or under the LTIP's defined structure. That disagreement

reflects a substantive dispute over the LTIP's terms, not a methodological flaw by Ms. Dickson warranting exclusion under Rule 702.

### C. Ameris's "100% Allocation" Argument Does Not Warrant Exclusion.

Next, Ameris argues in its motion that Ms. Dickson's report and testimony should be excluded because, according to Ameris, "Dickson calculated Mr. Byrne's alleged LTIP Cash Bonus Award as 100% of the LTIP Incentive Pool for each Performance Period." (MIL No. 2 at 8:4-5.) This again is entirely untrue. In Exhibits 3 and 4 to her report, Ms. Dickson specifically states her calculations for the "Total Incentive Pool Cash Award Bonus" and the "Total Underpaid Incentive Pool Cash Bonus Award", not what Mr. Byrne is owed individually. Ms. Dickson further made this clear in her deposition:

> "Q   But your report, you did not analyze how the cash bonus award pool would be allocated; correct?
>
> A   Correct . . .
>
> Q   You did not analyze whether plaintiff would receive any portion of the pool; correct?
>
> A   I did not analyze how the pool would be allocated among plaintiff and any other place." (Dickson Depo. At 62:12-20.)

In other words, allocation was not her assignment. She calculated the size of the pool and the amount allegedly underpaid—not how that pool would be distributed among participants. Ameris's characterization of Ms. Dickson's opinions is therefore unsupported by the record. The point is further confirmed by comparing the "Underpaid Incentive Pool Cash Bonus Award[s]" in Exhibits 3 and 4 with the figures identified in paragraphs 37 and 38 of her report. In both instances, the numbers perfectly align.

To the extent Ameris points to individuals portions of Ms. Dickson's report where she seemingly allocates 100% of the Pool to Byrne, at most Ameris's argument raises a drafting issue that goes to the weight of the evidence, not Ms. Dickson's

LAW OFFICES
Allen Matkins Leck Gamble Mallory & Natsis LLP

4900-5040-3470.9                -10-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION
TO DEFENDANT AMERIS BANK'S
MOTION IN LIMINE NO. 2

credibility. A minor clerical mistake does not render an otherwise reliable methodology inadmissible, particularly where the underlying calculations are consistent and unaffected. *See Hardeman v. Monsanto Co.*, 997 F.3d 941, 961 (9th Cir. 2021) (holding that "a minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method does not render expert testimony inadmissible"). The Ninth Circuit makes clear that exclusion is appropriate only where the analysis rests on a faulty methodology, not where a report contains an isolated, and thoroughly addressed drafting discrepancy.

### D.  A Rebuttal Expert is Not Required to Perform Calculations Under the Opposing Party's Theory

Lastly, Ameris argues that Ms. Dickson's opinions and testimony "should be excluded because she did not consider or perform calculations in accordance with Defendant's alternative theory for calculating damages - specifically, the application of GAAP." (MIL No. 2 at 9:16-21.) That argument misunderstands the role of Ms. Dickson as a rebuttal expert.

A rebuttal expert is not required to adopt or apply the same methodology as the opposing expert. *See, e.g.,* Fed. R. Civ. P. 26(a)(2)(D)(ii) (rebuttal testimony is permitted to "contradict or rebut evidence on the same subject matter identified by another party's expert"). Instead, a rebuttal expert must address the opposing expert's opinions and provide a reasoned basis for disagreement. *See Stanley v. Novartis Pharms. Corp.*, 11 F.Supp.3d 987, 1001 (C.D. Cal. 2014) (experts "'need not rule out every potential cause in order to satisfy *Daubert*,' as long as the expert's testimony 'address[es] obvious alternative causes and provide[s] a reasonable explanation for dismissing specific alternate factors identified by the defendant.'") Ms. Dickson's report satisfies that standard. She expressly addressed Ms. Sebold's application of GAAP, analyzed the LTIP's governing framework, and explained why GAAP does not control the EBT calculation under the LTIP structure. She did not ignore Ameris's alternative theory — she engaged with it and explained why it was inconsistent with

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4900-5040-3470.9 -11-

Case No. 8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S OPPOSITION
TO DEFENDANT AMERIS BANK'S
MOTION IN LIMINE NO. 2

the contractual framework. That is precisely the function of rebuttal testimony, not a basis for exclusion.

Even so, the failure to adopt Ameris's GAAP interpretation is not a methodological flaw or a proper basis for a *Daubert* challenge in this case. At most, the parties disagree about which accounting treatment applies to calculating the EBT under the terms of the LTIP agreement. "Therefore, to the extent [Ameris] argues that [Ms. Dickson] did not adequately rule out additional factors, this is a credibility determination that goes to the weight and the admissibility of [her] opinions" that can be addressed on cross-examination at trial. *Stanley*, 11 F.Supp.3d at 1001.

## III. CONCLUSION

Based on the foregoing, Ameris's Motion should be denied.

Dated: February 20, 2026

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
MATTHEW SESSIONS
STACEY A. VILLAGOMEZ
MADISON E. LARSEN


By:     */s/ Matthew Sessions*
    MATTHEW SESSIONS
    Attorneys for Plaintiff
    PATRICK BYRNE