Stacy L. Fode, Esq. (SBN 199883)
sfode@nfclegal.com
Nana J. Yee, Esq. (SBN 272783)
nyee@nfclegal.com
**NUKK-FREEMAN & CERRA, P.C.**
550 West C Street, Suite 910
San Diego, California 92101
Telephone: 619.292.0515
Facsimile: 619.566.4741

Attorneys for Defendant
AMERIS BANK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an individual, | Case No. 8:24-cv-01989-MWC (JDEx) |
| Plaintiff, | **DEFENDANT AMERIS BANK'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |
| vs. | |
| AMERIS BANK, a Georgia corporation, | |
| Defendant. | Judge: Hon. Michelle Williams Court<br>Place: Courtroom 6A |
| | Pretrial Conference: May 22, 2026<br>Trial Date: June 1, 2026 |

*Patrick Byrne v. Ameris Bank*                                        Case No. 8:24-01989
DEFENDANT AMERIS BANK'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW

Defendant Ameris Bank ("Ameris") hereby submits this Memorandum of Contentions of Fact and Law pursuant to Rule 16-4 of the Local Rules of the United States District Court for the Central District of California.

**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

## I.   INTRODUCTION

Plaintiff Patrick Byrne ("Byrne"), a former employee of Defendant Ameris Bank ("Ameris"), filed an employment lawsuit against Ameris in September 2024. Byrne was the founder and 100% owner of a privately held company, Balboa Capital Corporation ("Balboa" or "Balboa Capital"), that was sold to Ameris in December 2021 resulting in approximately *186 million dollars* paid to Byrne. During the sale, Byrne and his lawyers negotiated a lucrative employment deal for Byrne to become CEO of the Balboa Division of Ameris.  Byrne also negotiated a three-year Long-Term Incentive Plan ("LTIP" or "Plan") that covers Division employees including himself. Now, Byrne shockingly alleges he should have been paid *more* during his time at Ameris. Byrne also contends that he was terminated in retaliation for challenging Ameris's accounting methodology for calculating the LTIP award pool. However, the undisputed evidence demonstrates that Byrne's termination had nothing to do with his unfounded accounting complaints and everything to do with the Balboa Division's uneven financial performance and Byrne's own deteriorating leadership, increasingly negative attitude, and disengagement from the business.

Before its acquisition by Ameris, Byrne operated Balboa autocratically, maintaining strict control over all core functions. After the acquisition, Byrne struggled with the transition from sole owner to Division executive within a publicly traded financial institution. He repeatedly expressed frustration when Ameris exercised appropriate and mandatory financial oversight over the Balboa Division. Over time, Byrne allowed his frustration to seep into professional relationships with senior colleagues and leaders across Ameris. Interactions became strained and contentious. Instead of demonstrating executive leadership, he openly badmouthed Ameris, its leaders,

---

*Patrick Byrne v. Ameris Bank*                                      Case No. 8:24-01989
DEFENDANT AMERIS BANK'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                                         Page 2

and its processes. Byrne disengaged from the Division he was expected to lead, and in the months preceding his termination, he was neither present nor performing in the manner expected of a highly compensated corporate executive.

Byrne now attempts to recast himself as a whistleblower and employee advocate, claiming that he repeatedly pursued alleged LTIP "underpayments" on behalf of himself and other Balboa Division employees. The evidence demonstrates the opposite. Byrne's relentless emails contained creative but incorrect arguments regarding the LTIP calculations, which were all addressed by Ameris. However, his complaints, which started over a year prior to his termination in June 2024, were focused exclusively on *seeking millions of dollars in additional LTIP payments for himself*. Byrne's claim is personal and driven not by protected activity, but by his own greed and resentment over his loss of unilateral control over Balboa.

Byrne alleges Ameris is liable for wrongful termination, retaliation, failure to pay wages, and business code violations. Ameris denies Byrne's allegations and denies that Byrne is entitled to any damages.  At trial, the evidence will show that:

- Byrne's claim for wrongful termination (First Cause of Action) fails because Byrne identifies no statute or regulation underpinning this claim and to the extent he relies on Labor Code § 1102.5, it is premised on the same retaliatory theory and fails as a matter of law.

- The Second Cause of Action (retaliation in violation of Labor Code §1102.5) also fails because Byrne did not make any protected disclosure under Labor Code §1102.5(b), did not engage in any protected activity, and there is no evidence linking his alleged complaints about the LTIP to his termination. Even if Byrne could establish a claim under Labor Code §1102.5, Ameris can prove that Ameris would have terminated Byrne for legitimate, independent reasons, regardless of any LTIP methodology complaints.

- Ameris did not fail to pay Byrne wages at termination (Third Cause of Action) because the LTIP award is a discretionary bonus, not wages. As to his alleged 2022

---

*Patrick Byrne v. Ameris Bank*                                          Case No. 8:24-01989
DEFENDANT AMERIS BANK'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                                          Page 3

LTIP award, no earned amounts remain unpaid. As to the asserted 2023 LTIP award, the Balboa Division did not satisfy the conditions precedent necessary to create a LTIP pool. Even assuming arguendo that the LTIP constitutes wages (it does not), Byrne's claims still fail because all undisputed amounts were timely paid, there was no willful nonpayment, and a good-faith dispute existed regarding the LTIP methodology.

- Finally, Byrne offers no admissible evidence of any unlawful, unfair, or fraudulent practice, and this claim is derivative of failed wage and retaliation claims, as discussed above.

Accordingly, Byrne's claims cannot be proven and are baseless.

## II.   CLAIMS AND DEFENSES [L.R. 16-4.1(A)-(C)]

Below is a summary of the claims at issue in this case, along with a brief summary of key evidence in support of Ameris's case. However, this is not intended to be an exhaustive summary of all such evidence.

### A.   Failure to Pay All Wages at Termination (Labor Code §§201 and 203) (Third Cause of Action)[1]

Byrne claims that Ameris failed to pay wages in the form of the LTIP Award. To prevail under Labor Code § 201, Byrne must prove all of the following:

1. That the LTIP provided for incentive compensation subject to specific conditions or requirements;
2. That Byrne satisfied all conditions required to earn the LTIP award, including any applicable performance thresholds or criteria under the Plan;
3. That, as a result of satisfying those conditions, the LTIP award became earned wages; and
4. That Ameris failed to pay those earned wages when they were due.
5. The amount of Byrne's earned but unpaid wages.

---

[1] The Causes of Action have been ordered specifically for the ease of the Court's review.

*Patrick Byrne v. Ameris Bank*                                    Case No. 8:24-01989
DEFENDANT AMERIS BANK'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                                    Page 4

*See* Judicial Council of California Civil Jury Instructions ("CACI") No. 2700. "Wages" includes all amounts for labor performed by an employee, whether the amount is calculated by time, task, piece, commission, or some other method. *Id.* To be considered "wages," the amount must be "ascertainable," meaning fixed by a method of calculation at the time that it was granted. *Wentzo v. Signavio, Inc.*, No. CV-21-09968 TJH (JCX), 2024 WL 3191228, at *5 (C.D. Cal. Apr. 29, 2024). Bonuses are not considered "wages" if they are discretionary and there is no fixed allocation formula. *See Frausto v. Bank of Am., N.A.*, No. 18-CV-01983-LB, 2019 WL 5626640, at *5-6, 9 (N.D. Cal. 2019) (holding discretionary bonuses are not wages and granting summary judgment for employer under Lab. Code §§ 201–203); *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1133 (C.D. Cal. 2011) (excluding discretionary bonuses from regular rate of pay for computing overtime); *N.L.R.B. v. Electro Vector, Inc.*, 539 F.2d 35, 37-38 (9th Cir. 1976) (holding discretionary bonuses are not earned wages; *Prachasaisoradej v. Ralphs Grocery Co.* (2007) 42 Cal.4th 217, 226–230.

Byrne also claims that he is entitled to recover a penalty based on Ameris's alleged failure to pay his wages and LTIP bonus payments when due after Byrne's employment ended. Ameris was required to pay Byrne all wages owed on the date that Byrne's employment ended. To recover this penalty, Byrne must prove both of the following:

1. That Byrne's employment with Ameris ended; and

2. That Ameris willfully failed to pay Byrne all wages when due.

A failure is "willful" if the employer intentionally withholds wages when due, but not where the employer maintains a good-faith dispute as to whether wages are due. There is no willful failure to pay wages if the employer and employee have a good faith dispute as to whether and when the wages were due.

Byrne must also prove the following:

1. Byrne's daily wage rate at the time his employment with Ameris ended; and

2. That Ameris never paid Byrne all wages.

*See* CACI No. 2704.

---

*Patrick Byrne v. Ameris Bank*                                    Case No. 8:24-01989
DEFENDANT AMERIS BANK'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                                       Page 5

## Ameris's Defenses and Key Evidence in Support Thereof

a. *Byrne cannot establish that the LTIP award is "wages" or that he earned the LTIP award by fulfilling the required condition precedent.*

There is no evidence that the LTIP award is a component of Byrne's regular annual salary or his "wages"; rather, it is a discretionary, post-closing incentive plan that covers approximately 150 Balboa Division employees, including Byrne, and the LTIP is designed to reward participants **if** they are eligible and approved to be included in payouts under the Plan. Further, the LTIP only covered a limited performance period for 2022, 2023, and 2024, as explicitly specified therein.

For context, after extensive negotiations, Ameris and Byrne executed a Stock Purchase Agreement (the "SPA") on December 10, 2021, under which Ameris acquired 100% of Balboa Capital for approximately $186 million. With counsel, Byrne and Ameris also negotiated and agreed to the LTIP and an LTIP Award Agreement (the "Award Agreement"). The LTIP sets forth performance criteria, thresholds, and formulas for calculating potential cash awards and the primary performance metric is the Balboa Division's annual earnings before tax ("EBT"). If the Division exceeds the EBT threshold, 35% of the excess is allocated to the incentive pool, which may be distributed to approved participants. Notably, no individual participant (including Byrne) is entitled to automatic or mandatory cash award, as it depends entirely on the LTIP's express terms and discretionary conditions. In fact, the LTIP Award Agreement clearly leaves individual allocations **blank**: "Cash Bonus Award: [NUMBER]% of the Incentive Pool (if any) established for each Performance Period." Consistent with the above structure, and as is typical for written incentive plans of this type, the LTIP grants Ameris's Compensation Committee (the "Committee") broad authority to administer the Plan, including interpreting terms, determining participants, setting performance goals, and making all other necessary determinations. The Committee delegated responsibility for the LTIP to Chief Strategy Officer James LaHaise, who consulted with Byrne on individual award distributions under the Plan. All decisions made by the Committee, and

*Patrick Byrne v. Ameris Bank*                                                    Case No. 8:24-01989
DEFENDANT AMERIS BANK'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                                            Page 6

its delegates, are final and binding, and no right to a cash bonus award exists until it is paid, and participation in one Performance Period under the Plan does not guarantee future participation.

Further, Balboa is a division of Ameris, a publicly traded company governed by the Sarbanes-Oxley Act of 2002 and therefore is required to follow Generally Accepted Accounting Principles ("GAAP"), the accounting standards that govern the preparation of financial statements. Additionally, the LTIP and Award Agreement expressly state that cash bonus awards are subject to all applicable laws and required regulatory approvals.

The evidence shows that Byrne received and accepted his 2022 LTIP Award of over $5.6 million - an amount he personally recommended and allocated to himself - in February 2023 without disputing the calculation or raising any errors at the time. However, Byrne subsequently claims that Ameris should have applied a different accounting methodology that allegedly would have produced a larger pool. Even assuming arguendo that the pool should have been larger (which Ameris disputes), **Byrne cannot establish, and there is no evidence, that he personally would have received a higher payout**.  The evidence expressly shows that <u>the LTIP does not create a direct or automatic correlation between the total pool and any individual participant's award</u>, and there is no evidence establishing a fixed entitlement to a specific additional amount.

The same terms apply to the 2023 LTIP. The LTIP expressly conditioned any incentive payment on the Balboa Division meeting defined EBT thresholds. The evidence shows that Ameris calculated the 2023 LTIP in good faith based on the terms of the LTIP and determined the Balboa Division did not meet the 2023 EBT target, and therefore no LTIP incentive pool was created or funded and thus no individual payout was owed to anyone including Byrne. The evidence further shows Ameris reviewed each challenge raised by Byrne, made adjustments where appropriate, and explained why no error existed. In other words, because the condition precedent to payment was not satisfied, no wages were earned. Without earned wages, there can be no violation of Labor Code section 201.

To establish Labor Code section 203, Byrne must establish that Ameris willfully failed to pay wages that are due to Byrne. As discussed above, Byrne was paid his 2022 award, and no 2023 incentive vested. At a minimum, the evidence shows that the parties' dispute reflects a good faith disagreement over contractual interpretation and accounting methodology, which precludes a finding of willfulness. Accordingly, Byrne will not be able to establish his unpaid wage claim and his waiting time penalties claim also lacks merit.

### B.     Retaliation in Violation of Labor Code §1102.5 (Second Cause of Action)

Byrne claims that Ameris retaliated against him in violation of the California Labor Code for his alleged "whistleblowing" activities, based on his contention he was discharged because of his complaints regarding the LTIP accounting methodology.

To establish this claim, Byrne must prove all of the following are more likely true than not true:

1. That Ameris was Byrne's employer;

2. That Byrne disclosed information to a person with authority over Byrne or an employee with authority to investigate, discover, or correct legal violations;

3. That Byrne had reasonable cause to believe that the information disclosed a violation of a state or federal statute or violation of a local, state, or federal rule or regulation;

4. That Ameris discharged Plaintiff;

5. That Byrne's disclosure of information that he reasonably believed that Ameris violated a state or federal statute was a contributing factor in Ameris's decision to discharge Byrne;

6. That Byrne was harmed; and

7. That Ameris's conduct was a substantial factor in causing Byrne's harm.

*See* CACI No. 4603.

A "contributing factor" is any factor, which alone or in connection with other

---

*Patrick Byrne v. Ameris Bank*                                     Case No. 8:24-01989
DEFENDANT AMERIS BANK'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                                        Page 8

factors, tends to affect the outcome of a decision. A contributing factor can be proved even when other legitimate factors also contributed to the employer's decision. *Id.*

The disclosure of policies or conduct that an employee believes to be merely unwise, wasteful, gross misconduct, or the like, is not protected. Instead, Byrne must have reasonably believed that Ameris's policies or conduct violated federal, state, or local statutes, rules, or regulations.

To have a reasonable belief of illegal activity, the employee must identify a legal statute, or regulation allegedly violated. *See Fitzgerald v. El Dorado Cnty.*, 94 F. Supp. 3d 1155, 1172 (E.D. Cal. 2015); *Love v. Motion Indus., Inc.*, 309 F.Supp.2d 1128, 1135 (N.D. Cal. 2004)).

Complaints about accounting methods are not considered protected activity under the law unless they are tied to a violation of a law. A plaintiff does not engage in protected activity by disclosing violations of or deviations from Generally Accepted Accounting Principles ("GAAP"). GAAP are non-mandatory accounting guidelines, and not state or federal law. *See La v. San Mateo Cnty. Transit Dist.*, No. 14-CV-01768-WHO, 2014 WL 4632224, at *6 (N.D. Cal. Sept. 16, 2014); *Dauth v. Convenience Retailers, LLC*, No. C 13-00047 MEJ, 2013 WL 5340396 (N.D. Cal. Sept. 24, 2013) ("GAAP regulations do not equate to state or federal statutory or regulatory law" and "GAAP does not establish mandatory procedures, but rather a "wide range of acceptable procedures" an accountant may apply when preparing a financial statement); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1020–21 (5th Cir. 1996).

Complaints in the context of internal personnel matters are not protected activity under the law. *See Carter v. Escondido Union High Sch. Dist.*, 148 Cal. App. 4th 922, 934-35 (2007); *Patten v. Grant Joint Union High Sch. Dist.,* 134 Cal.App.4th 1378, 1385 (2005). Complaints about contracts or contract terms are not considered protected activity under the law. *See Sherman v. Pepperidge Farm, Inc.*, No. 8:22-CV-01781 JWH (ADS), 2023 WL 5207458, at *6 (C.D. Cal. Apr. 28, 2023); *Smith v. Wells Fargo Bank, N.A.,* 135 Cal. App. 4th 1463, 1484 (2005) ("Contractual duties are voluntarily undertaken by

the parties to the contract, not imposed by state [or federal] law.")).

Byrne must also provide evidence linking his alleged whistleblowing to his termination. A temporal break between the alleged whistleblowing and termination does not support an inference of causation. *See Tawatari-Tsuneta v. CVS Rx Servs., Inc.*, No. 8:22-CV-02251-AH-(JDEX), 2025 WL 1090392, at *7 (C.D. Cal. Mar. 6, 2025) (finding a seven-month lapse between the protected activity and termination to be too long, and citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002), for "citing cases holding that four, five, and eight months were too long a period to infer causation"); *Miglani v. Edwards Lifesciences, LLC*, No. 18-CV-01983-LB, 2018 WL 6265007, at *4 (C.D. Cal. Jan. 8, 2018) ("The temporal break of almost a year . . . does not give rise to an inference of causality.")).

Even if Byrne proves that his disclosure of information of an unlawful act was a contributing factor to his discharge, Defendant Ameris is not liable if it proves by clear and convincing evidence that it would have discharged Byrne anyway at that time for legitimate, independent reasons. *See* CACI No. 4604.

### Ameris's Defenses and Key Evidence in Support Thereof

#### a. *Byrne cannot establish that he made any protected disclosure under § 1102.5(b)*

Byrne cannot establish the first element of his cause of action. There is no evidence that, when Byrne disputed the LTIP methodology, he reasonably believed he was reporting a violation of any state or federal law, rule, or regulation. To the contrary, the evidence shows that Byrne's complaints concerned Ameris's LTIP accounting calculations he believed were inconsistent with "past practices" or his subjective interpretation of the LTIP. Such complaints were not disclosures of illegal activity and do not constitute protected activity. Deviating from alleged past practices does not violate any law, rule, or regulation. In fact, Byrne never expressly told Ameris that its 2022, 2023, or 2024 LTIP calculations were unlawful or deprived employees of wages, and never requested waiting-time penalties.

///

---

*Patrick Byrne v. Ameris Bank*                                    Case No. 8:24-01989
DEFENDANT AMERIS BANK'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                                    Page 10

### b. *Byrne cannot establish that he engaged in protected activity under § 1102.5(b)*

There is no evidence that Byrne refused to engage in any unlawful activity or that the conduct he opposed would have violated any law or regulation. At most, Byrne disputed Ameris's LTIP calculations as inconsistent with "past practices" or his own subjective views - neither of which is unlawful. In fact, the evidence shows that Byrne's proposed accounting changes would have violated GAAP and Ameris's internal accounting controls.

### c. *Byrne cannot establish a causal link between any protected activity and his termination.*

Byrne cannot establish the third element of this cause of action. There is no evidence linking his alleged whistleblowing (his LTIP calculation complaints) to his termination, which occurred more than a year later – too long to support an inference of causation. Moreover, the evidence shows that after raising his LTIP concerns, Byrne remained Division CEO, received quarterly bonuses and salary increases, and was repeatedly assured that Ameris wanted him to continue in that role.

### d. *Ameris has legitimate, non-retaliatory reasons for Byrne's termination, which he will be unable to show to be pretext.*

Byrne will be unable to show that his termination was due to the fact that he made complaints about the LTIP calculations, as Ameris has legitimate, non-retaliatory, and independent reasons for Byrne's termination, including but not limited to: the Balboa Division's failure to meet expected financial results under Byrne's leadership; Byrne's strained and unproductive working relationships with employees across Ameris; and Byrne's failure to follow - and attempts to circumvent - internal accounting controls and processes.

### C. **Wrongful Termination in Violation of Public Policy (Third Cause of Action)**

Plaintiff Byrne claims he was discharged from employment for reasons that violate public policy. An employer may terminate an at-will employee for any lawful reason, or

---

*Patrick Byrne v. Ameris Bank*                                    Case No. 8:24-01989
DEFENDANT AMERIS BANK'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                                      Page 11

for no reason at all. However, an employer may not terminate an employee for a reason that violates a fundamental and well-established public policy set forth in a specific law, such as a statute or constitutional provision. For example, it is a violation of public policy to retaliate against an employee for engaging in protected activity. Not all workplace complaints or disagreements, including disputes about compensation or incentive plans, is considered protected activity.

In this case, Byrne contends that he was discharged because of his complaints regarding the LTIP accounting methodology. To establish his claim for wrongful discharge in violation of public policy, Byrne must prove all of the following:

1. That Byrne was employed by Ameris;

2. That Ameris discharged Byrne;

3. That Byrne's complaints about the methodology of the LTIP constituted protected activity;

4. That Byrne's complaints about the methodology of the LTIP were a substantial motivating reason for his discharge;

5. That Byrne was harmed; and

6. That the discharge was a substantial factor in causing Byrne harm.

If Byrne did not engage in protected conduct, then the discharge did not violate public policy.

*See* CACI No. 2430; *see also Casella v. SouthWest Dealer Services, Inc.* (2007) 157 Cal.App.4th 1127, 1138–1139; *Stevenson v. Superior Ct.*, 16 Cal. 4th 880, 889-890 (1997); *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1090 (1992); *Ferrick v. Santa Clara Univ.*, 231 Cal. App. 4th 1337, 1357 (2014).

A "substantial motivating reason" is one that actually contributed to the discharge. It must be more than remote or trivial, but it need not be the sole reason for the decision. *See* CACI No. 2507.

Additionally, a claim for wrongful termination in violation of public policy must be based on a policy that: (1) is set forth in a constitutional or statutory provision; (2)

---

*Patrick Byrne v. Ameris Bank*                                          Case No. 8:24-01989
DEFENDANT AMERIS BANK'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                                          Page 12

existed at the time of discharge; and (3) affect the public at large, rather than only the interests of the individual employee or employer. *See Stevenson v. Superior Ct.*, 16 Cal. 4th 880, 889-890 (1997); *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1090 (1992); *Ferrick v. Santa Clara Univ.*, 231 Cal. App. 4th 1337, 1357 (2014); *Jennings v. Marralle,* 8 Cal.4th 121, 135–36 (1994); *Neufeld v. Winco Holdings, Inc.*, No. 1:14-CV-1505 DAD-JLT, 2016 WL 815649, at *5 (E.D. Cal. Mar. 2, 2016), *aff'd,* 699 F. App'x 659 (9th Cir. 2017); *Magana v. Lab'y Corp. of Am.*, No. CV2011583PAPLAX, 2021 WL 4233901, at *8 (C.D. Cal. Aug. 16, 2021); *Batres v. HMS Host USA, Inc.*, No. SACV1001458CJCAJWX, 2012 WL 13049884, at *5 (C.D. Cal. Sept. 25, 2012).

### **Ameris's Defenses and Key Evidence in Support Thereof**

Byrne cannot prove that he was wrongfully terminated in violation of public policy because he identifies no statute or regulation underpinning this claim, which is fatal. To the extent he relies on Labor Code § 1102.5, it is entirely derivative of the retaliation claim, which fails as a matter of law, as discussed below.

### **D.     Violation of Business and Professions Code §17200 ("UCL")**

California's Business and Professions Code section 17200 et seq, otherwise known as California's "Unfair Competition Law" or the "UCL", does not proscribe any specific conduct, but broadly prohibits "unfair competition." By proscribing "any unlawful business practice," Section 17200 "borrows" violations of other laws and treats them as unlawful that the unfair competition law makes independently actionable. Byrnes' UCL claim is premised on his failed wage and retaliation claims, as discussed above. As such, each of Ameris's defenses to those claims will apply with equal force.

## **III.    AMERIS'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES [L.R. 16-4.1(D)-(F)]**

Ameris has no counterclaims. The following are the affirmative defenses Ameris has plead and plans to pursue at this time:

### **A.     First Affirmative Defense: Failure to State a Claim**

**Factual Basis:** Byrne's Complaint as a whole, and each purported cause of

---

*Patrick Byrne v. Ameris Bank*                                      Case No. 8:24-01989
DEFENDANT AMERIS BANK'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                                         Page 13

action alleged therein, fails to state facts sufficient to constitute a cause of action against Ameris upon which relief may be granted.

**Elements:** The elements of each of Byrne's claims, and Ameris's evidence in opposition to each claim, are detailed above.

**Key Evidence:** See evidence detailed above.

### B.    Third Affirmative Defense: At-Will Employment

**Factual Basis:** Ameris alleges that Byrne is not entitled to any damages or other relief because Byrne was an at-will employee whose employment could be terminated at any time.

**Elements:** An employment relationship may be ended by either the employer or the employee, at any time, for any reason, or for no reason at all. This is called "at-will employment." *See* CACI No. 2400.

**Key Evidence:** Testimony of Ameris representative(s) and documentary evidence will establish that Byrne was an at-will employee who could be terminated at any time for any reason or for no reason at all.

### C.    Fourth Affirmative Defense: Failure to Mitigate Damages

**Factual Basis:** Any recovery of damages on Byrne's Complaint, or any purported cause of action alleged therein, is barred by Byrne's failure to exercise reasonable diligence to mitigate his alleged damages, if any, in connection with the matters referred to in the Complaint, and such failure to mitigate bars and/or diminishes Byrne's recovery, if any, against Ameris.

**Elements:** Byrne has a duty to use reasonable efforts to mitigate damages. *See* Ninth Circuit Model Jury Instructions: Civil §5.3 (2007). The elements of an affirmative defense of mitigation of damages are: (1) Byrne failed to use reasonable efforts to mitigate damages; and (2) the amount by which damages would have been mitigated. *Id.*; *see also* CACI 3963. Moreover, the doctrine of avoidable consequences precludes a person injured by another's wrongful conduct from recovering damages that the injured person "could have avoided by reasonable effort or expenditure." An

employer has the burden of pleading and proving the doctrine of avoidable consequences as an affirmative defense.

**Key Evidence:** Testimony of Byrne and Ameris representative(s) will establish that Byrne failed to mitigate damages during and after employment. Despite Ameris's policies requiring employees to report retaliation, whistleblower, and alleged wrongful conduct and providing several avenues to do so, Byrne did not make such a report.

### D.      Seventh Affirmative Defense: Doctrine of Waiver

**Factual Basis:** Any recovery of damages on Byrne's Complaint, or any purported cause of action alleged therein, is barred by Byrne's waiver of any dispute over the 2022 LTIP calculation as he accepted it without disputing the calculation at that time.

**Elements:** The voluntary relinquishment or abandonment — express or implied — of a legal right or advantage. The party alleged to have waived a right must have had both knowledge of the existing right and the intention of forgoing it.

**Key Evidence:** Testimony of Byrne and Ameris representative(s) and documentary evidence will establish that Byrne accepted the 2022 LTIP payout without disputing the calculations at that time.

### E.      Eighth Affirmative Defense: Doctrine of Consent

**Factual Basis:** Any recovery of damages on Byrne's Complaint, or any purported cause of action alleged therein, is barred by Byrne's consent to the 2022 LTIP calculation as he accepted it without disputing the calculation at that time.

**Elements:** A voluntary yielding to what another proposes or desires; agreement, approval, or permission regarding some act or purpose, especially given voluntarily by a competent person; legally effective assent.

**Key Evidence:** Testimony of Byrne and Ameris representative(s) and documentary evidence will establish that Byrne consented to the 2022 LTIP payout without disputing the calculations at that time.

### F.      Ninth Affirmative Defense: Unclean Hands

---

*Patrick Byrne v. Ameris Bank*                                              Case No. 8:24-01989
DEFENDANT AMERIS BANK'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                                          Page 15

**Factual Basis:** Byrne comes to this Court with unclean hands, and is, therefore, barred from recovery under this Complaint, or any cause of action thereof.

**Elements:** In accordance with the maxim that no one can take advantage of his or her own wrong, those who seek the aid of equity must come into court in good faith. *Samuelson v. Ingraham,* 272 Cal.App.2d 804 (1969). Any unconscionable conduct that relates to the transaction may give rise to the defense of unclean hands and bar relief. *Id; Aguayo v. Amaro,* 213 Cal.App.4th 1102, 1110 (2013) (any conduct that violates conscience, good faith or other equitable standards of conduct is sufficient to invoke the doctrine of unclean hands).

**Key Evidence:** Testimony from Byrne and other Ameris's representative(s) will establish that Byrne's unauthorized transfer of thousands of pages of confidential, trade secret, proprietary Ameris documents, continued failure to return company laptop, and circumventing internal accounting controls and failing to follow the directions of accounting personnel and management, all of which constituted violations of Ameris policies, for which he would have been terminated had Ameris been aware of it.

### G.    Tenth Affirmative Defense: Defendant's Actions Were Not Willful

**Factual Basis:** Any recovery of damages under Labor Code section 203, or any purported cause of action alleged in Byrne's Complaint is barred by Ameris's good faith efforts to review Byrne's concerns regarding the LTIP, address any alleged errors, and explain why they are unfounded.

**Elements:** Labor Code § 203(a) imposes waiting time penalties only where the failure to timely pay final wages is "willful." A failure is willful if the employer intentionally withholds wages when due, but not where the employer maintains a good-faith dispute as to whether wages are due. 8 C.C.R. § 13520. A good-faith dispute includes any "defense, based in law or fact which, if successful, would preclude any recovery" by the employee, even if that defense is ultimately unsuccessful. *Id.* "[T]he operative question is simply whether, based on the state of the law when [the alleged violations occurred], [the defendant] has presented an objectively reasonable defense that

is not marred by bad-faith conduct." *Hill v. Walmart Inc.*, 32 F.4th 811, 817 (9th Cir. 2022); *see also Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1204 (2008) ("So long as no other evidence suggests the employer acted in bad faith, presentation of a good faith defense, based in law or fact, will negate a finding of willfulness."); *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 584 (2010) ("There is no willful failure to pay wages if the employer and employee have a good faith dispute as to whether and when the wages were due.").

**Key Evidence:** Testimony of Byrne and Ameris representative(s) and documentary evidence will establish that Byrne cannot show any willful nonpayment of the LTIP, amid a good-faith dispute over the LTIP calculation method.

### H.    Eleventh Affirmative Action: Good Faith

**Factual Basis:** Any recovery of damages under Labor Code section 203, or any purported cause of action alleged in Byrne's Complaint is barred by Ameris's good faith efforts to review Byrne's concerns regarding the LTIP, address any alleged errors, and explain why they are unfounded.

**Elements:** Labor Code § 203(a) imposes waiting time penalties only where the failure to timely pay final wages is "willful." A failure is willful if the employer intentionally withholds wages when due, but not where the employer maintains a good-faith dispute as to whether wages are due. 8 C.C.R. § 13520. A good-faith dispute includes any "defense, based in law or fact which, if successful, would preclude any recovery" by the employee, even if that defense is ultimately unsuccessful. *Id.* "[T]he operative question is simply whether, based on the state of the law when [the alleged violations occurred], [the defendant] has presented an objectively reasonable defense that is not marred by bad-faith conduct." *Hill v. Walmart Inc.*, 32 F.4th 811, 817 (9th Cir. 2022); *see also Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1204 (2008) ("So long as no other evidence suggests the employer acted in bad faith, presentation of a good faith defense, based in law or fact, will negate a finding of willfulness."); *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 584 (2010) ("There is no willful failure to pay wages

---

if the employer and employee have a good faith dispute as to whether and when the wages were due.").

**Key Evidence:** Testimony of Byrne and Ameris representative(s) and documentary evidence will establish that Byrne cannot show any willful nonpayment of the LTIP, amid a good-faith dispute over the LTIP calculation method.

## I.    Twelfth Affirmative Defense: Proper Exercise of Management's Discretion

**Factual Basis:** Any and all conduct of which Byrne complains of and which is attributed to Ameris or Ameris's employees was a just and proper exercise of management's discretion on the part of Ameris, and was undertaken in good faith for legitimate, non-retaliatory reasons unrelated to Byrne's alleged complaints, or any other unlawful factor.

**Elements:** Even if Byrne proves that his disclosure of information of an unlawful act was a contributing factor to his discharge, Ameris is not liable if it proves by clear and convincing evidence that it would have discharged Byrne anyway at that time for legitimate, independent reasons. *See* CACI No. 4604. A legitimate, non-discriminatory reason is any reason unrelated to Byrne's complaints. Poor job performance is a legitimate, nondiscriminatory reason to terminate employment. *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 661 (9th Cir. 2002).

**Key Evidence:** Testimony from Byrne and other Ameris's representative(s) and documentary evidence will establish that Ameris had the discretion to terminate Byrne at-will.

## J.    Fifteenth Affirmative Defense: After-Acquired Evidence

**Factual Basis:** Byrne's Complaint, and each cause of action pled therein, is barred in whole or in part by the doctrine of after-acquired evidence. are barred to the extent that Ameris has discovered facts, or may later discover facts, which, if known to Ameris prior to Byrne's termination, would have created additional grounds or bases for a decision to discharge Byrne. As a matter of law, the after-acquired evidence doctrine

*Patrick Byrne v. Ameris Bank*                                          Case No. 8:24-01989
DEFENDANT AMERIS BANK'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                                          Page 18

bars Byrne's recovery for such claims and/or cuts off damages for such claims.

**Elements:** Ameris must establish (1) that Byrne engaged in misconduct, (2) that Byrne's misconduct was sufficiently severe that Ameris would have discharged him because of that misconduct alone had Ameris known of it, and (3) that Ameris would have discharged Byrne for his misconduct as a matter of settled company policy. CACI No. 2506.

**Key Evidence:** Testimony from Byrne and other Ameris's representative(s) will establish that Byrne's unauthorized transfer of thousands of pages of confidential, trade secret, proprietary Ameris documents, continued failure to return company laptop, and circumventing internal accounting controls and failing to follow the directions of accounting personnel and management, all of which constituted violations of Ameris policies, for which he would have been terminated had Ameris been aware of it.

**K.    Eighteenth Affirmative Defense: Failure to State a Claim for Punitive Damages**

**Factual Basis:** Byrne fails to state facts sufficient to support an award of punitive damages against Ameris.

**Elements:** To obtain punitive damages, Byrne must demonstrate with clear and convincing evidence that an officer, director, or managing agent of Ameris had advance knowledge of oppressive, malicious, or fraudulent acts and consciously disregarded, authorized, or ratified it. *See College Hospital v. Superior Court*, 8 Cal. 4th 704, 721 (1994); *Virtanen v. O'Connell*, 140 Cal. App. 4th 688 (2006).

As the appellate court explained in *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000), "the law does not impute every employee's malice to the corporation. Instead, the punitive damage statute requires proof of malice among corporate leaders," specifically "officers, directors, or managing agents." *Id.* (cleaned up); *see Yeager v. Corr. Corp. of Am.*, 944 F. Supp. 2d 913, 931 (E.D. Cal. 2013) ("[T]he evidence must demonstrate an officer, director or managing agent of Ameris committed, authorized or ratified an act of malice, oppression or fraud to create a genuine issue of material fact on

punitive damages.").

**Key Evidence:** Testimony of Byrne and Ameris representative(s) and documentary evidence will establish that Ameris thoroughly reviewed Byrne's concerns about LTIP calculations, swiftly addressed any alleged errors, and explained why they were unfounded. Beyond Byrne's conclusory assertions, there is no evidence that Ameris's GAAP-compliant LTIP calculations were fraudulent or intentionally improper. Instead, the evidence establishes that Byrne was informed his proposed revisions were incorrect and non-GAAP-compliant. The evidence will also establish Byrne's termination was due to the Balboa Division's uneven financial performance and Byrne's own deteriorating leadership, increasingly negative attitude, and disengagement from the business.

### L.     Twentieth Affirmative Defense: Not Entitled to Attorneys' Fees

**Factual Basis:** Byrne's Complaint as a whole, and each purported cause of action alleged therein, fails to state facts sufficient to constitute a cause of action against Ameris upon which relief may be granted and that Byrne is entitled to attorneys' fees.

**Elements:** The elements of each of Byrne's claims, and Ameris's evidence in opposition to each claim, are detailed above and in section VIII.

**Key Evidence:** See evidence detailed above.

### M.     Twenty-First Affirmative Defense: Doctrine of Avoidable Consequences

**Factual Basis:** Byrne's Complaint, and each alleged cause of action contained therein, is barred in whole or in part by the doctrine of avoidable consequences. Byrne unreasonably failed to take advantage of preventive or corrective opportunities provided by Ameris in its written policies or to avoid harm otherwise. A reasonable use of Ameris's procedures would have prevented some or all of the harm Byrne alleges to have suffered. (*See, e.g., Faragher v. City of Boca Raton* (1998) 524 U.S. 775, 807; *State Dept. of Health Services v. Sup. Ct. (McGinnis)* (2003) 31 Cal.4th 1026, 1043.)

**Elements:** The doctrine of avoidable consequences is a simple concept that precludes a person injured by another's wrongful conduct from recovering damages that

the injured person "could have avoided by reasonable effort or expenditure." An employer has the burden of pleading and proving the doctrine of avoidable consequences as an affirmative defense.

**Key Evidence:** Testimony of Byrne and Ameris representative(s) and documentary evidence will establish that despite Ameris's policies requiring employees to report retaliation, whistleblower, and alleged wrongful conduct and providing several avenues to do so, Byrne did not make such a report.

N.    **Twenty-Second Affirmative Defense: Failure to Exhaust Internal Remedies**

**Factual Basis:** Byrne's Complaint, and each alleged cause of action contained therein, is barred in whole or in part by failure to exhaust internal remedies. Byrne unreasonably failed to take advantage of preventive or corrective opportunities provided by Ameris in its written policies or to avoid harm otherwise. A reasonable use of Ameris's procedures would have prevented some or all of the harm Byrne alleges to have suffered. (*See, e.g., Faragher v. City of Boca Raton* (1998) 524 U.S. 775, 807; *State Dept. of Health Services v. Sup. Ct. (McGinnis)* (2003) 31 Cal.4th 1026, 1043.)

**Elements:** The doctrine of avoidable consequences is a simple concept that precludes a person injured by another's wrongful conduct from recovering damages that the injured person "could have avoided by reasonable effort or expenditure."

**Key Evidence:** Testimony of Byrne and Ameris representative(s) and documentary evidence will establish that despite Ameris's policies requiring employees to report retaliation, whistleblower, and alleged wrongful conduct and providing several avenues to do so, Byrne did not make such a report.

O.    **Twenty-Fifth Affirmative Defense: Failure to Fulfill Obligations**

**Factual Basis:** Byrne's Complaint, and each alleged cause of action contained therein, is barred in whole or in part by failure to fulfill obligations under the LTIP and Award Agreement. The Balboa Division did not satisfy the conditions precedent necessary to create a LTIP pool.

**Elements:** Amounts of wages alleged "earned" depend on "the specific terms of the bonus plan and general contract principles." *Beckman v. Umpqua Bank*, No. CIVS06-1205 RRBGGH, 2007 WL 2418686, at *2 (E.D. Cal. Aug. 24, 2007). Under California law, incentive payments are not earned wages until all conditions precedent are met. *Wentzo v. Signavio, Inc.*, No. CV 21-09968 TJH (JCX), 2024 WL 3191228, at *5 (C.D. Cal. Apr. 29, 2024).

**Key Evidence:** Testimony of Byrne and Ameris representative(s) and documentary evidence will establish that the Balboa Division did not satisfy the conditions precedent necessary to create a LTIP pool in 2023 and no wages were earned and therefore owed.

**P.    Twenty-Sixth Affirmative Defense: Alleged Acts Were Not Wrongful Termination**

**Factual Basis:** Ameris alleges that Byrne's recovery in this action is barred because Ameris's alleged acts and/or omissions do not constitute wrongful termination as that term has been defined and construed by relevant statutes and case law.

**Elements:** The elements of Byrne's wrongful termination claim are outlined above.

**Key Evidence:** Testimony from Byrne and Ameris representatives, and documentary evidence will establish that Byrne's termination was unrelated to any public policy or statutorily protected activity.

**Q.    Twenty-Seventh Affirmative Defense: No Damages Suffered**

**Factual Basis:** Ameris alleges that Byrne has not suffered any damage as a result of any actions or omissions of Ameris or its agents, and Byrne is thus barred from asserting any cause of action against Ameris.

**Elements:** The elements of Byrne's claims are outlined above.

**Key Evidence:** As set forth above, Byrne's claims are meritless, and the claims and legal contentions are not warranted by existing law or fact.

///

### R. Twenty-Eighth Affirmative Defense: Comparative Fault

**Factual Basis:** Ameris alleges that Byrne's action and misconduct, which included Byrne's own deteriorating leadership, increasingly negative attitude, disengagement from the business contributed to the Balboa Division's uneven financial performance and led to his termination.

**Elements:** Comparative fault is conduct that falls below the legal standard established to protect others against unreasonable risk of harm, except for conduct that is intentionally, wantonly, or willfully disregardful of others' rights.

**Key Evidence:** Testimony of Byrne and Ameris representative(s) and documentary evidence will establish that Byrne's termination was due to the Balboa Division's uneven financial performance which was in part caused by Byrne's own deteriorating leadership, increasingly negative attitude, and disengagement from the business.

### S. Thirty-First Affirmative Defense: No Public Policy Violation

**Factual Basis:** Ameris alleges that no employment decisions made regarding Byrne violated any well-defined public policy embodied in a constitution, statute, or regulation.

**Elements:** "[T]he cases in which violations of public policy are found generally fall into four categories: (1) refusing to violate a statute; (2) performing a statutory obligation (3) exercising a statutory right or privilege; and (4) reporting an alleged violation of a statute of public importance." *Gantt v. Sentry Insurance,* 1 Cal.4th 1083, 1092 (1992).

**Key Evidence:** The key evidence in opposition to Byrne's public policy argument is outlined above.

### T. Thirty-Third Affirmative Defense: Lack of Malice

**Factual Basis:** The Complaint, and each cause of action alleged therein, fails to allege facts sufficient to support allegations of oppression, fraud and/or malice; therefore, Byrne is not entitled to recover any punitive or exemplary damages and any

allegations with respect thereto, and the prayer for relief, should be stricken.

**Elements:** The Complaint and the purported causes of action alleged therein, fails to allege facts sufficient to allow recovery of punitive or exemplary damages from Ameris under Civil Code Section 3294, which requires clear and convincing evidence that it has been guilty of oppression, fraud or malice.

**Key Evidence:** Testimony of Byrne and Ameris representative(s) and documentary evidence will establish that Ameris thoroughly reviewed Byrne's concerns about LTIP calculations, swiftly addressed any alleged errors, and explained why they were unfounded. Beyond Byrne's conclusory assertions, there is no evidence that Ameris's GAAP-compliant LTIP calculations were fraudulent or intentionally improper. Instead, the evidence establishes that Byrne was informed his proposed revisions were incorrect and non-GAAP-compliant.

U.  **Thirty-Fifth Affirmative Defense: No Retaliatory Conduct**

**Factual Basis:** Ameris alleges that Byrne is not entitled to any damages or other relief because at no time did Ameris engage in retaliatory conduct, as that term has been respectively defined and construed by relevant statutes and case law.

**Elements:** The elements of Byrne's retaliation claim are outlined above.

**Key Evidence:** The key evidence in opposition to Byrne's retaliation claims is outlined above.

V.  **Thirty-Sixth Affirmative Defense: Failure to State a Claim for Retaliation**

**Factual Basis:** Byrne fails to state a claim for retaliation upon which relief can be granted because Byrne never engaged in protected activity within the meaning of the applicable statutes, including, but not limited to, Labor Code section 1102.5.

**Elements:** The elements of Byrne's retaliation claim are outlined above.

**Key Evidence:** The key evidence in opposition to Byrne's retaliation claims is outlined above.

///

*Patrick Byrne v. Ameris Bank*                                  Case No. 8:24-01989
DEFENDANT AMERIS BANK'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                          Page 24

**W.     Fortieth Affirmative Defense: Damages Reduced Pursuant to California Civil Code Section 1431.2**

**Factual Basis:** Ameris alleges that, to the extent liability is established, Ameris is entitled to an offset against any award of back pay in an amount equal to any and all interim earnings by Byrne from other employers and/or other sources and any and all additional sums that constitute interim earnings that Byrne could have earned had he made reasonable efforts to mitigate his alleged damages, and/or monies owed to Ameris under contract.

**Elements:** Byrne has a duty to use reasonable efforts to mitigate damages. See Ninth Circuit Model Jury Instructions: Civil §5.3 (2007). The elements of an affirmative defense of mitigation of damages are: (1) Byrne failed to use reasonable efforts to mitigate damages; and (2) the amount by which damages would have been mitigated. *Id.*; *see also* CACI 3963.

**Key Evidence:** Testimony of Byrne and documentary evidence will establish that Byrne has made no efforts to mitigate his alleged damages or pay amounts owed to Ameris under contract.

**X.     Forty-First Affirmative Defense: Employer Exercised Care to Prevent and Correct Retaliation**

**Factual Basis:** Ameris cannot be held liable for the injuries alleged by Byrne because Ameris exercised reasonable care to prevent and correct promptly any alleged unlawful behavior.

**Elements:** Byrne must prove (1) that he was subjected to retaliation in the course of employment, (2) that Ameris failed to take all reasonable steps to prevent the retaliation, (3) that he was harmed, and (4) that Ameris's failure to take all reasonable steps to prevent retaliation was a substantial factor in causing his harm. CACI 2527.

**Key Evidence:** As set forth above, testimony and documentary evidence will establish that Byrne was not subject to retaliation, and as such, Ameris cannot be held liable for failing to prevent same, and, while employed, Byrne failed to report while

employed through the company's available channels that he believed he was retaliated against.

### Y.    Forty-Second Affirmative Defense: Business Necessity

**Factual Basis:** To the extent Byrne claims or establishes he was subject to an adverse employment action or decision, Ameris asserts that any such action or decision was based on legitimate and non-retaliatory reasons and/or there was a reasonable belief that the action was justified based on evidence separate and apart from any protected disclosures. In the event Byrne shows retaliation was a motivating factor in any or all actions taken by Ameris, Ameris had legitimate and non-retaliatory reasons which would have led it to make the same decisions at the time.

**Elements:** A legitimate, non-discriminatory reason is any reason unrelated to Byrne's complaints. Poor job performance is a legitimate, nondiscriminatory reason to terminate employment. *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 661 (9th Cir. 2002).

**Key Evidence:** Testimony of Byrne and Ameris representative(s) and documentary evidence will establish that Byrne's termination was due to the Balboa Division's uneven financial performance and Byrne's own deteriorating leadership, increasingly negative attitude, and disengagement from the business.

### Z.    Forty-Third Affirmative Defense: Damages Off-Set

**Factual Basis:** Ameris alleges that, to the extent liability is established, Ameris is entitled to an offset against any award of back pay in an amount equal to any and all interim earnings by Byrne from other employers and/or other sources and any and all additional sums that constitute interim earnings that Byrne could have earned had he made reasonable efforts to mitigate his alleged damages, and/or monies owed to Ameris under contract.

**Elements:** Byrne has a duty to use reasonable efforts to mitigate damages. See Ninth Circuit Model Jury Instructions: Civil §5.3 (2007). The elements of an affirmative defense of mitigation of damages are: (1) Byrne failed to use reasonable

---

efforts to mitigate damages; and (2) the amount by which damages would have been mitigated. Id.; *see also* CACI 3963.

**Key Evidence:** Testimony of Byrne and documentary evidence will establish that Byrne has made no efforts to mitigate his alleged damages or pay amounts owed to Ameris under contract.

## AA.    Forty-Fifth Affirmative Defense: Failure to Perform Responsibilities

**Factual Basis:** To the extent Byrne claims or establishes he was subject to an adverse employment action or decision, Ameris asserts that any such action or decision was based on his failure to perform his duties as CEO of the Balboa Division.

**Elements:** Poor job performance is a legitimate, nondiscriminatory reason to terminate employment. *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 661 (9th Cir. 2002).

**Key Evidence:** Testimony of Byrne and Ameris representative(s) and documentary evidence will establish that Byrne's termination was due to the Balboa Division's uneven financial performance and Byrne's own deteriorating leadership, increasingly negative attitude, and disengagement from the business.

## BB.    Forty-Sixth Affirmative Defense: Good Faith Dispute of Compensation

**Factual Basis:** Any recovery of damages under Labor Code section 203, or any purported cause of action alleged in Byrne's Complaint is barred by Ameris's good faith efforts to review Byrne's concerns regarding the LTIP, address any alleged errors, and explain why they are unfounded.

**Elements:** Labor Code § 203(a) imposes waiting time penalties only where the failure to timely pay final wages is "willful." A failure is willful if the employer intentionally withholds wages when due, but not where the employer maintains a good-faith dispute as to whether wages are due. 8 C.C.R. § 13520. A good-faith dispute includes any "defense, based in law or fact which, if successful, would preclude any recovery" by the employee, even if that defense is ultimately unsuccessful. *Id.* "[T]he operative question is simply whether, based on the state of the law when [the alleged

violations occurred], [the defendant] has presented an objectively reasonable defense that is not marred by bad-faith conduct." *Hill v. Walmart Inc.*, 32 F.4th 811, 817 (9th Cir. 2022); *see also Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1204 (2008) ("So long as no other evidence suggests the employer acted in bad faith, presentation of a good faith defense, based in law or fact, will negate a finding of willfulness."); *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 584 (2010) ("There is no willful failure to pay wages if the employer and employee have a good faith dispute as to whether and when the wages were due.").

**Key Evidence:** Testimony of Byrne and Ameris representative(s) and documentary evidence will establish that Byrne cannot show any willful nonpayment of the LTIP, amid a good-faith dispute over the LTIP calculation method.

### CC.    Forty-Seventh Affirmative Defense: No Waiting Time Penalties

**Factual Basis:** Byrne is not entitled to any award of waiting time penalties under any statute, theory or case law authority including Labor Code sections 201, 202, and 203.

**Elements:** The elements of Byrne's waiting time penalties claim are outlined above.

**Key Evidence:** The key evidence in opposition to Byrne's waiting time penalties claim is outlined above.

### DD.    Forty-Eighth    Affirmative    Defense:    Reservation    of    Additional Affirmative Defenses

**Factual Basis:** Byrne's Complaint as a whole, and each purported cause of action alleged therein, fails to state facts sufficient to constitute a cause of action against Ameris upon which relief may be granted.

**Elements:** The elements of each of Byrne's claims, and Ameris's evidence in opposition to each claim, are detailed above.

**Key Evidence:** See evidence detailed above.

///

## IV.    ANTICIPATED EVIDENTIARY ISSUES [L.R. 16-4.1(H)]

Subject to additional information to be obtained between now and before trial, Ameris has filed and intends to file the following motions *in limine*:

| No. | Motion |
|---|---|
| 1 | To Exclude Report And Testimony From Plaintiff's Expert Deborah Dickson As Untimely |
| 2 | To Exclude Opinions And Testimony From Plaintiff's Expert Deborah Dickson Under FRE 702 And Daubert |
| 3 | To Exclude As Untimely Produced Documents And Information After The Close Of Fact Discovery |
| 4 | To Exclude Any Claim For Or Entitlement To Any 2024 LTIP Cash Award |
| 5 | To Preclude Testimony From Irrelevant Apex Executives Who Plaintiff Seeks to Bring to Trial |

## V.    ISSUES OF LAW [L.R. 16-4.1(I)]

The legal issues germane to this case are detailed above.

## VI.    BIFURCATION OF ISSUES [L.R. 16-4.3]

Ameris requests that, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, this Court bifurcate the liability and punitive damages issues at trial into two distinct phases. Phase One would address liability and focus on the central question of whether Ameris is liable to Byrne for wrongful termination, retaliation, and failure to pay wages. If there is a liability determination in Phase One, Ameris seeks an order requiring Phase Two to commence immediately afterwards, for the purpose of allowing the same jury to determine punitive damages, if any. Bifurcation is necessary to avoid prejudice to Ameris. Considering together evidence of liability with testimony regarding Ameris's financial position, as is necessary for determining the propriety of an award for punitive damages, may lead the jury to find Ameris liable simply due to exposure to its financial condition. Additionally, bifurcation is necessary to avoid jury confusion, and will likely save time and judicial resources.

*Patrick Byrne v. Ameris Bank*                                    Case No. 8:24-01989
DEFENDANT AMERIS BANK'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                                    Page 29

The Ninth Circuit has long held that a trial court may separate a trial into liability and damages phases under Rule 42(b). *Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686, 697 (9th Cir. 1977); *McCray v. Westrock Servs., LLC*, No. CV 21-9853-DMG (RAOx), 2023 WL 4681371, at *2 (C.D. Cal. July 12, 2023) ("It is the Court's normal practice to bifurcate trials into two phases"). Similarly, the California Supreme Court has long recognized that evidence of a defendant's wealth can induce fact finders to abandon their objectivity and return a verdict based on passion and prejudice. *See Adams v. Murakami*, 54 Cal.3d 105, 121 (Cal. 1991) ("Requiring a defendant to prove his or her own financial condition may improperly taint the jury's decision whether to impose punitive damages in the first instance ...."); see also *Farmy v. College Housing, Inc.*, 48 Cal.App.3d 166 (Ct. App. 1975) (reversing award of compensatory damages based upon prejudicial effect of evidence relating to wealth of defendant). Because the financial condition of an alleged tortfeasor is an "important factor in determining the propriety of an award for punitive damages," without bifurcation, the jury will concurrently hear testimony about Ameris's liability and wealth. *Ferraro v. Pacific Fin. Corp.*, 8 Cal.App.3d 339, 349 (Ct. App. 1970).

As such, Ameris submits that bifurcation is appropriate in this matter.

## VII.    JURY TRIAL [L.R. 16-4.4]

Byrne has timely requested a jury trial.

However, Byrne's Fourth Claim of Action (Violation of Business and Professions Code §17200) should be tried separately to the Court and not to the jury. Byrne's claim under California's Unfair Competition Law, Bus. & Prof. Code § 17200, is equitable and must be tried to the Court, not a jury. The UCL provides only equitable remedies and does not allow recovery of legal damages. *See Nationwide Biweekly Admin., Inc. v. Superior Court*, 9 Cal.5th 279, 303–04 (2020); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144–45 (2003). Because the claim is equitable in nature, there is no constitutional or statutory right to a jury trial. *Nationwide Biweekly*, 9 Cal.5th at 303–04.

Accordingly, the Court should resolve Byrne's UCL claim in a bench proceeding, separate from the jury's consideration of Plaintiff's legal claims. *See* Fed. R. Civ. P. 39(a)(2). To avoid juror confusion and ensure an orderly presentation of evidence, Ameris respectfully requests that the Court confirm before trial that the UCL claim will not be submitted to the jury and instead will be decided by the Court at a time following argument.

## VIII. ATTORNEYS' FEES [L.R. 16-4.5]

- Claim 1: Wrongful Termination in Violation of Public Policy does not authorize attorneys' fees to prevailing plaintiff.
- Claim 2: Retaliation in Violation of Labor Code §1102.5 authorizes attorneys' fees to prevailing plaintiff.
- Claim 3: Failure to Pay All Wages at Termination (Labor Code §§201 and 203) authorizes attorneys' fees to prevailing plaintiff.
- Claim 4: Violation of Business and Professions Code §17200 does not authorize attorneys' fees to prevailing plaintiff.

## IX. ABANDONMENT OF ISSUES [L.R. 16-4.6]

Without waiving Ameris's defenses set forth above and as determined between now and trial, Ameris abandons the following Affirmative Defenses:

Second Affirmative Defense: Statute of Limitations; Fifth Affirmative Defense: Estoppel; Sixth Affirmative Defense: Doctrine of Laches; Thirteenth Affirmative Defense: Exclusive Remedy; Fourteenth Affirmative Defense: Actions Were Reasonable; Sixteenth Affirmative Defense: Uncertainty; Seventeenth Affirmative Defense: No Knowledge of Violations; Nineteenth Affirmative Defense: Punitive Damages Unconstitutional; Twenty-Third Affirmative Defense: Failure to Exhaust Administrative Remedies; Twenty-Fourth Affirmative Defense: Justification and Privilege; Twenty-Ninth Affirmative Defense: *In Pari Delicto*; Thirtieth Affirmative Defense: Ratification; Thirty-Second Affirmative Defense: Lack of Proximate Cause; Thirty-Fourth Affirmative Defense: Frivolous Claims; Thirty-Eighth Affirmative Defense: Unjust Enrichment;

Thirty-Ninth Affirmative Defense: No Formal Complaint; Forty-Fourth Affirmative Defense: Assumption of the Risk; Forty-Ninth Affirmative Defense: Reserves Right to Amend Answer.

Dated:  April 17, 2026                              **NUKK-FREEMAN & CERRA**


                                    By:     */s/Stacy L. Fode*
                                            Stacy L. Fode, Esq.
                                            Nana J. Yee, Esq.
                                            Attorney for Defendant
                                            AMERIS BANK

---

*Patrick Byrne v. Ameris Bank*                                    Case No. 8:24-01989
DEFENDANT AMERIS BANK'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                                    Page 32