MATTHEW SESSIONS (BAR NO. 307098)
STACEY A. VILLAGOMEZ (BAR NO. 317081)
MADISON E. LARSEN (BAR NO. 364953)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
2010 Main Street, 8th Floor
Irvine, California 92614-7214
Phone:  (949) 553-1313
Fax:  (949) 553-8354
E-Mail:  msessions@allenmatkins.com
         svillagomez@allenmatkins.com
         mlarsen@allenmatkins.com

Attorneys for Plaintiff
PATRICK BYRNE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an Individual,<br><br>             Plaintiff,<br><br>      vs.<br><br>AMERIS BANK, a Georgia corporation,<br><br>             Defendant. | Case No. 8:24-cv-01989-MWC-JDE<br><br>ASSIGNED FOR ALL PURPOSES TO<br>Judge Michelle Williams Court<br><br>**MEMORANDUM OF CONTENTIONS OF LAW AND FACT UNDER LOCAL RULES 16-2 AND 16-4**<br><br>Disc. Cutoff:  November 28, 2025<br>Trial Date:      June 1, 2026 |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5                    -1-

Case No. 8:24-cv-01989-MWC-JDE
MEMORANDUM OF CONTENTIONS OF
LAW AND FACT

## I.    Introduction

Plaintiff Patrick Byrne ("Plaintiff" or "Byrne") submits this memorandum of contentions of law and fact. On April 10, 2026, in compliance with the Court's civil trial order and Local Rule 16-2, counsel for Byrne and Defendant Ameris Bank held an in person meet-and-confer, agreeing to jointly prepare this memorandum of contentions of law and fact to streamline disputed issues and reduce the volume of material that the Court must analyze.

## II.    Byrne's Claims [*L.R. 16-4.1*]

Where applicable in this memorandum of contentions of law and fact, Byrne cites the joint statement of undisputed and disputed facts in connection with Ameris's summary judgment motion, or exhibits presented at depositions in this case.

Byrne brings the following claims[1]:

**Claim 1**: Ameris wrongfully terminated Byrne in violation of public policy for Byrne's complaints regarding Ameris's failure to pay all Balboa employees the compensation they were due under the Balboa Capital Long-Term Incentive Plan ("LTIP").

**Claim 2**: Ameris willfully and unlawfully retaliated against Byrne, in violation of California Labor Code § 1102.5, for Byrne lodging repeated complaints with Ameis executives concerning Ameris's failure to pay all Balboa employees the compensation they were due under the Balboa Capital LTIP.

**Claim 3**: Ameris willfully failed to pay Byrne all wages due to him upon his termination on June 30, 2024.

**Claim 4**: Ameris violated the California Labor Code and deliberately miscalculated the LTIP Pool to intentionally deprive Balboa employees, including Byrne, from receiving additional compensation under the LTIP that was offered by

---

[1]    In addition to the four claims pleaded in Byrne's Complaint, Byrne plans to amended to pleadings to the proof at trial to plead a Breach of Contract Claim for Ameris's breach of the LTIP by failing to pay the earned amounts under the agreement.

4926-4117-1352.5

Ameris pre-acquisition and was a substantial factor in Byrne's ultimate decision sell Balboa Capital to Ameris.

**A.     Claim One: Wrongful termination in violation of public policy, based on Ameris unlawfully terminating Byrne's employment for lodging repeated complaints concerning Ameris's failure to pay Byrne and other Balboa employees earned wages under the LTIP**

1.     <u>Required Elements to Prove Claim One:</u>

(a)     Byrne was employed by Ameris;

(b)     Ameris discharged Byrne;

(c)     Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, were a substantial motivating reason for Byrne's discharge;

(d)     Byrne was harmed; and

(e)     The discharge was a substantial factor in causing Byrne harm.

Adapted from Cal. Civ. Jury Instr. ("CACI") No. 2430.

2.     <u>Summary of Byrne's Expected Evidence:</u>

(a)     Byrne became an employee of Ameris following Ameris's acquisition of Balboa Capital

Testimony from Patrick Byrne, Jim LaHaise, and Nicole Stokes, and corroborating documents (e.g., Byrne's Employment Agreement and the Balboa Capital LTIP Agreement with Ameris). As part of Ameris's acquisition of Balboa Capital, Byrne signed a three-year Employment Agreement to serve as the CEO of the Balboa Division of Ameris Bank. Further, Byrne and Ameris agreed to the LTIP that would result in additional compensation to Byrne if the Balboa Division met certain performance metrics.

(b)     Ameris discharged Byrne, effective June 30, 2024

Testimony from Patrick Byrne and Jim LaHaise confirming Byrne's

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4926-4117-1352.5

-2-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

termination, effective June 30, 2024. Corroborating termination letter transmitted to Byrne on or about June 27, 2024, and email correspondence from Phil Silva to Balboa staff discussing Byrne's departure from Balboa.

(c)     Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, were a substantial motivating reason for Byrne's discharge

Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP.,  Separate testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson discussing the LTIP and appropriate calculations under the LTIP. Corroborating documents (e.g., emails, internal financial Excel spreadsheets, performance reviews, termination letter) further establishing that Byrne's termination resulted directly from his advocacy on behalf of himself and all Balboa employees for their earned wages, and that Ameris is now offering after-the-fact explanations to justify that decision.

(d)     Byrne was harmed

Testimony from Patrick Byrne confirming that his termination eliminated his primary source of income, including Ameris's ongoing failure to him wages he had earned. Additional testimony from Byrne, Robert Rasmussen, Jacquie Emert, and Dr. Anthony Reading will further address the emotional impact of Ameris's conduct on Byrne, including the stress caused by the nonpayment of LTIP wages and Byrne's sense of responsibility for other Balboa employees. This testimony will also show that Byrne made substantial efforts to raise and resolve these issues internally, but his termination foreclosed any ability to do so and forced him to pursue costly litigation to recover what he is owed. Corroborating documents (e.g., emails) demonstrating

Ameris's willful failure to properly calculate the LTIP Pool.

(e)    The discharge was a substantial factor in causing Byrne harm.

Testimony from Patrick Byrne confirming that his termination eliminated his primary source of income, including Ameris's ongoing failure to him wages he had earned. Additional testimony from Byrne, Robert Rasmussen, Jacquie Emert, and Dr. Anthony Reading will further address the emotional impact of Ameris's conduct on Byrne, including the stress caused by the nonpayment of LTIP wages and Byrne's sense of responsibility for other Balboa employees. This testimony will also show that Byrne made substantial efforts to raise and resolve these issues internally, but his termination foreclosed any ability to do so and forced him to pursue costly litigation to recover what he is owed. Corroborating documents (e.g., emails) demonstrating Ameris's willful failure to properly calculate the LTIP Pool.

3.    Relevant Issues of Law:

(a)    Whether Ameris violated public policy by withholding earned wages from Byrne and other employees

Byrne asserts that Ameris violated public policy by withholding earned wages from Byrne and by taking adverse employment actions against Byrne for the latter complaining to Ameris executives about the withheld wages.

(b)    Whether Ameris violated public policy by terminating Byrne after he raised concerns about its inaccurate LTIP Pool calculations and failure to pay employees the wages they had earned.

Byrne asserts that Ameris violated public policy by taking adverse employment actions against Byrne for Byrne disclosing to Ameris executives about withheld wages.

///

///

///

///

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5                    -4-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

**B.**   **Claim Two: Retaliation in Violation of Labor Code § 1102.5 for Ameris terminating Byrne in response to Byrne's repeated complaints to Ameris executives concerning Ameris's failure to pay earned wages.**

1.   Required Elements to Prove Claim Two:

(a)   Ameris was Byrne's employer;

(b)   Byrne complained to a person with authority over Byrne or an employee with authority to investigate, discover, or correct legal violations or noncompliance that Ameris was wrongfully withholding wages owed to Byrne;

(c)   Byrne had reasonable cause to believe that the information disclosed nonpayment of wages was a violation of California labor laws;

(d)   Ameris discharged Byrne;

(e)   Byrne's complaints were a contributing factor in Ameris's decision to discharge Byrne;

(f)   Byrne was harmed; and

(g)   Byrne's conduct was a substantial factor in causing Byrne's harm.

*See* CACI No. 4603.

2.   Summary of Byrne's Expected Evidence:

(a)   Ameris was Byrne's employer

Testimony from Patrick Byrne, Jim LaHaise, and Nicole Stokes, and corroborating documents (e.g., Byrne's Employment Agreement and the Balboa Capital LTIP Agreement with Ameris). As part of Ameris's acquisition of Balboa Capital, Byrne signed a three-year Employment Agreement to serve as the CEO of the Balboa Division of Ameris Bank. Further, Byrne and Ameris agreed to the LTIP that would result in additional compensation to Byrne and other Balboa employees if the Balboa Division met certain performance metrics.

///

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4926-4117-1352.5

-5-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

(b)   Byrne complained to a person with authority over Byrne or an employee with authority to investigate, discover, or correct legal violations or noncompliance that Ameris was wrongfully withholding wages owed to Byrne

Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP. Separate testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson discussing the LTIP and appropriate calculations under the LTIP. Corroborating documents (e.g., emails, internal financial Excel spreadsheets, performance reviews, termination letter) further establishing that Byrne's termination resulted directly from his advocacy on behalf of himself and all Balboa employees for their earned wages, and that Ameris is now offering after-the-fact explanations to justify that decision.

(c)   Byrne had reasonable cause to believe that the information disclosed a violation of California labor law

Testimony from Patrick Byrne as to his state of mind and beliefs concerning Ameris allegedly violating California labor law by intentionally miscalculating the LTIP Pool to prevent Balboa employees from receiving earned wages. Separate testimony from Patrick Byrne and Deborah Dickson, and corroborating documents (e.g., emails, internal financial Excel spreadsheets, performance reviews, termination letter, Byrne's 2024 W-2) demonstrating Ameris's failure to properly calculate the LTIP Pool, resulting in Byrne and Balboa employees not receiving earned wages.

(d)   Ameris discharged Byrne

Testimony from Patrick Byrne and Jim LaHaise confirming the June 27, 2024 meeting between the two where Jim LaHaise notified Patrick Byrne of his termination. Corroborating documents (e.g., emails and termination letter) showing

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5                                          -6-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

that Patrick Byrne was terminated by Ameris, effective June 30, 2024.

(e)     Byrne's complaints were a contributing factor in Ameris's decision to discharge Byrne.

Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP. Separate testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson discussing the LTIP and appropriate calculations under the LTIP. Corroborating documents (e.g., emails, internal financial Excel spreadsheets, performance reviews, termination letter) further establishing that Byrne's termination resulted directly from his advocacy on behalf of himself and all Balboa employees for their earned wages, and that Ameris is now offering after-the-fact explanations to justify that decision.

3.     Relevant Issues of Law:

(a)     Whether Byrne engaged in protected activity under California Labor Code § 1102.5

Byrne asserts that his reporting of Ameris's failure to pay earned wages in violation of California labor law constitutes protected activity pursuant to California Labor Code section 1102.5.

**C.     Claim Three: Willful Failure to Pay All Wages Due at Termination**

1.     Required Elements to Prove Claim Three:

(a)     Byrne was employed by, and performed work for, Ameris;

(b)     Ameris owes Byrne wages under the terms of the employment; and

(c)     The amount of unpaid wages.

*See* CACI No. 2700.

///

Byrne must also prove the following:

  (d) Byrne's employment with Ameris ended; and

  (e) Ameris willfully failed to pay Byrne all wages when due.

Byrne must also prove the following:

  (f) Byrne's daily wage rate at the time his employment ended; and

  (g) The date on which Ameris finally paid Byrne all wages due/that Ameris never paid Byrne all wages.

*See* CACI No. 2704.

 2. Summary of Byrne's Expected Evidence:

  (a) Byrne was employed by, and performed work for, Ameris

Testimony from Patrick Byrne, Jim LaHaise, and Nicole Stokes, and corroborating documents (e.g., the Balboa Capital LTIP with Ameris) establishing that when Patrick Byrne sold his company, Balboa Capital, to Ameris Bank in which Balboa became a division of Ameris, Balboa's employees became employees of Ameris. Specifically, as to Byrne, he signed a three-year employment agreement to remain the CEO of Balboa. As part of his compensation, Byrne and Ameris agreed to a LTIP that would result in additional compensation if Balboa met certain performance metrics.

  (b) Ameris owes Byrne wages under the terms of the employment

Testimony from Patrick Byrne and Deborah Dickson discussing the LTIP agreement, its relevant provisions, how these provisions should have worked in practice, how Ameris intentionally miscalculated the LTIP Pool in 2022 and 2023, how to properly characterize the accounting inputs going into the LTIP Pool calculation, the application (or lack thereof) to the LTIP Pool calculation, and what the accurate LTIP Pool calculation is. Corroborating documents (e.g., emails, Balboa internal financial Excel spreadsheets) showing the relevant LTIP Agreement and its appropriate interpretation and application to the Balboa Capital LTIP Pool.

///

(c)    The amount of unpaid wages

Testimony from Patrick Byrne and Deborah Dickson articulating the appropriate method of calculating the LTIP Pool, what the actual LTIP Pool should have been for 2022 and 2023, and how much of the LTIP Pool for 2022 and 2023 is owed specifically to Byrne. Corroborating documents (e.g., emails, internal financial Excel spreadsheets, and Balboa Capital LTIP) providing the needed data to accurately calculate the Balboa Capital LTIP Pool for 2022 and 2023.

(d)    Byrne's employment with Ameris ended

Testimony from Patrick Byrne and Jim LaHaise confirming Byrne's termination, effective June 30, 2024. Corroborating termination letter transmitted to Byrne on or about June 27, 2024, and email correspondence from Phil Silva to Balboa staff discussing Byrne's departure from Balboa.

(e)    Ameris willfully failed to pay Byrne all wages when due

Testimony from Patrick Byrne and Deborah Dickson discussing the LTIP agreement, its relevant provisions, how these provisions should have worked in practice, how Ameris intentionally miscalculated the LTIP Pool in 2022 and 2023, how to properly characterize the accounting inputs going into the LTIP Pool calculation, the application (or lack thereof) to the LTIP Pool calculation, and what the accurate LTIP Pool calculation is. Corroborating documents (e.g., emails, Balboa internal financial documents) showing the relevant LTIP Agreement and its appropriate interpretation and application to the Balboa Capital LTIP Pool. Testimony from Patrick Byrne and Deborah Dickson articulating the appropriate method of calculating the LTIP Pool, what the actual LTIP Pool should have been for 2022 and 2023, and how much of the LTIP Pool for 2022 and 2023 is owed specifically to Byrne. Corroborating documents (e.g., emails, internal financial Excel spreadsheets, and Balboa Capital Long-Term Incentive Plan) providing the needed data to accurately calculate the Balboa Capital LTIP Pool for 2022 and 2023. Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and

Sufhan Majid, confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP.  Separate testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson discussing the LTIP and appropriate calculations under the LTIP. Corroborating documents (e.g., emails, internal financial Excel spreadsheets, performance reviews, termination letter) further establishing that Byrne's termination resulted directly from his advocacy on behalf of himself and all Balboa employees for their earned wages, and that Ameris is now offering after-the-fact explanations to justify that decision.

(f)     Byrne's daily wage rate at the time his employment ended

By the time of Byrne's termination on June 24, 2024, his base salary had increased twice under the agreement's 3% annual escalation provision: first to $360,500 effective December 31, 2022, and then to $371,315 effective December 31, 2023. In addition to this salary, Byrne received quarterly bonuses of $150,000. Using this final salary figure, Byrne's daily wage rate was approximately $3,735 ($971,315 / 260 work days), which supports a maximum waiting time penalty of $112,050 based on the statutory limit of 30 days.

(g)     The date on which Ameris finally paid Byrne all wages due/that Ameris never paid Byrne all wages.

To date, Ameris has not paid Byrne all the wages he is owed.

3.     Relevant Issues of Law:

(a)     Whether Ameris's actions were willful, entitling Byrne to waiting time penalties under Labor Code section 203.

Byrne asserts that at all relevant times, Ameris's conduct, including failing to pay earned wages, reducing Byrne's job responsibilities, and ultimately discharging him, were all done willfully, with complete knowledge of the relevant facts, and with the intent to harm Byrne.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5                                    -10-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

**D.    Claim Four: Violation of Business & Professions Code § 17200 for deliberately miscalculating the LTIP Pool to prevent Byrne and other Balboa employees from receiving earned wages.**

1.    <u>Required Elements to Prove Claim Four:</u>

(a)    Unlawful Prong:

(i)    Ameris's conduct amounts to "violations of . . . laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." *Farmers Ins. Exch. v. Superior Ct*., 2 Cal. 4th 377, 383 (1992).

(b)    Unfair Prong:

(i)    "With regard to the "unfair" prong of the UCL, "a business practice is 'unfair' if (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves." *Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 97 Cal. App. 5th 192, 201, 315 (2023).

(c)    Fraudulent Prong:

(i)    "A fraudulent business practice is one in which " ' " 'members of the public are likely to be "deceived." *Morgan v. AT&T Wireless Servs., Inc*, 177 Cal. App. 4th 1235, 1254 (2009).

Requested relief: Byrne is entitled to injunctive relief to prevent Ameris from continuing these unlawful and unfair practices. Ameris's conduct reflects a broader practice of manipulating EBT calculations and compensation structures in a manner that impacts not only Byrne, but other employees subject to the LTIP. Absent an

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5                                                    -11-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

injunction, Ameris remains free to continue applying these same practices, resulting in ongoing harm. An injunction requiring Ameris to calculate EBT consistent with the LTIP and to materially follow past practices is necessary to prevent future violations and ensure that employees receive the compensation they are owed.  In addition, Byrne is entitled to restitution and disgorgement of amounts wrongfully withheld under the LTIP, including compensation derived from Ameris's improper EBT calculations.

    2.    <u>Summary of Byrne's Expected Evidence:</u>

    (a)    Unlawful Prong:

    (i)    Ameris's conduct amounts to "violations of . . . laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." *Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377, 383 (1992).

Testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson discussing how Ameris calculated the LTIP, why Ameris's LTIP Pool calculation is incorrect, and what the accurate LTIP Pool calculation is. Corroborating documents (e.g., emails, internal financial Excel spreadsheets, performance reviews, termination letter) further establishing that Byrne's termination resulted directly from his advocacy on behalf of himself and all Balboa employees for their earned wages, and that Ameris is now offering after-the-fact explanations to justify that decision. Testimony from Patrick Byrne and Deborah Dickson discussing the LTIP agreement, its relevant provisions, how these provisions should have worked in practice, how Ameris intentionally miscalculated the LTIP Pool in 2022 and 2023, how to properly characterize the accounting inputs going into the LTIP Pool calculation, the application (or lack thereof) to the LTIP Pool calculation, and what the accurate LTIP Pool calculation is. Corroborating documents

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5

-12-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

(e.g., emails, Balboa internal financial Excel spreadsheets) showing the relevant LTIP Agreement and its appropriate interpretation and application to the Balboa Capital LTIP Pool.

    (b)    Unfair Prong:

        (i)    "With regard to the "unfair" prong of the UCL, "a business practice is 'unfair' if (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves." *Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 97 Cal. App. 5th 192, 201, 315 (2023).

    (c)    Fraudulent Prong:

        (i)    "A fraudulent business practice is one in which " ' " 'members of the public are likely to be "deceived." *Morgan v. AT&T Wireless Servs., Inc*, 177 Cal. App. 4th 1235, 1254 (2009).

3.    Relevant Issues of Law:

    (a)    Whether Ameris's representations to Byrne prior to Ameris's acquisition of Balboa regarding the LTIP is actionable under the fraudulent prong of the UCL.

Byrne asserts that Ameris's conduct is actionable under the fraudulent prong of the UCL.

    (b)    Whether Ameris deliberately miscalculating the accounting inputs comprising the LTIP Pool is actionable under the fraudulent prong of the UCL.

Byrne asserts that Ameris's conduct is actionable under the fraudulent prong of the UCL.

///

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4926-4117-1352.5

-13-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

**E.     Damages**

Plaintiff plans to pursue all damages available to him by law, including but not limited to, punitive damages, damages for pain and suffering, and attorneys' fees.

**III.    Defendant's Affirmative Defenses [L.R. 16-4.1(f)]**

Defendant Ameris Bank has plead and intends to pursue the following affirmative defenses:

**A.     First Affirmative Defense – Failure to State a Claim**: Ameris contends Byrne's Complaint fails to state facts sufficient to constitute a cause of action against Ameris upon which relief may be granted.

1.     Elements Required to Prove the First Affirmative Defense:

    (a)     Byrne did not allege facts sufficient to sustain his cause of action for wrongful termination in violation of public policy.

    (b)     Byrne did not allege facts sufficient to sustain his cause of action for retaliation.

    (c)     Byrne did not allege facts sufficient to sustain his cause of action for willful failure to pay all wages due at termination.

    (d)     Byrne did not allege facts sufficient to sustain his cause of action for violations of Business & Profession code § 17200.

*See* CACI No. 4603; CACI No. 4606; CACI No. 2430; CACI No. 2507.

2.     Summary of Byrne's Expected Evidence:

For all elements listed above, Byrne alleges all facts sufficiently in the complaint, as explained above in section II.

**B.     Third Affirmative Defense – At-Will Employment**: Ameris contends Byrne's Complaint fails to state facts sufficient to constitute a cause of action against Ameris upon which relief may be granted.

1.     Elements required to Prove the Fourth Affirmative Defense

    (a)     An employment relationship may be ended by either the employer or the employee, at any time, for any reason, or for no reason at

all. This is called "at-will employment." An employment relationship is not "at will" if the employee proves that the parties, by words or conduct, agreed that the employee would be discharged only for good cause.

*See* Caci No. 2400.

2.    Summary of Byrne's Expected Evidence:

Testimony from Patrick Byrne, Robert Rasmussen, Jim LaHaise, and corroborating evidence (Employment Agreement), confirming that Bryne was not an at-will employee.

**C.    Fourth Affirmative Defense – Failure to Mitigate Damages**: Ameris contends any recovery of damages on Byrne's Complaint is barred by Byrne's failure to exercise reasonable diligence to mitigate his alleged damages.

1.    Elements Required to Prove the Fourth Affirmative Defense:

(a)    Byrne failed to use reasonable efforts to mitigate damage; and

(b)    The amount by which damages would have been mitigated.

*See* Ninth Circuit Model Jury Instructions § 5.3.

2.    Summary of Byrne's Expected Evidence:

(a)    Byrne failed to use reasonable efforts to mitigate damages.

Testimony from Patrick Byrne confirming he made reasonable efforts to mitigate damages.

(b)    The amount by which damages would have been mitigated.

Testimony from Patrick Byrne confirming Byrne's repeated complaints to Ameris regarding the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP, resulting in significant lost wages to Byrne.

///

///

///

**D.**    **Seventh Affirmative Defense'– Doctrine of Waiver**:   Ameris contends any recovery of damages on Byrne's Complaint, or any purported cause of action alleged therein, is barred by Byrne's waiver of any dispute over the 2022 LTIP calculation as he accepted it without disputing the calculation at that time.

1.    Elements Required to Prove the Seventh Affirmative Defense:

(a)    That Byrne knew Ameris was required to pay the earned LTIP wages; and

(b)    That Byrne freely and knowingly gave up his right to have Ameris perform these obligations.

*See* CACI. No. 36.

2.    Summary of Byrne's Expected Evidence:

(a)    That Byrne knew Ameris was required to pay the earned LTIP wages; and

Testimony from Patrick Byrne and Deborah Dickson, as well as supporting documents, discussing the LTIP agreement, its relevant provisions, how these provisions should have worked in practice, and Ameris's failure to properly calculate the LTIP Pool.

(b)    That Byrne freely and knowingly gave up his right to have Ameris perform these obligations.

Testimony from Patrick Byrne, as well as supporting documents, discussing the LTIP agreement, its relevant provisions, how these provisions should have worked in practice, and how Ameris's failure to properly calculate the LTIP Pool did not result in a waiver.

///

///

///

///

///

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4926-4117-1352.5

-16-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

E. **Eighth Affirmative Defense – Doctrine of Consent**: Ameris contends any recovery of damages on Byrne's Complaint, or any purported cause of action alleged therein, is barred by Byrne's consent to the 2022 LTIP calculation as he accepted it without disputing the calculation at that time.

1.    Elements Required to Prove the Eighth Affirmative Defense:

   (a)    Ameris contends that the doctrine of consent is a "voluntary yielding to what another proposes or desires; agreement, approval, or permission regarding some act or purpose, especially given voluntarily by a competent person; legally effective assent."

2.    Summary of Byrne's Expected Evidence:

Testimony from Patrick Byrne, as well as supporting documents, discussing ""the LTIP agreement, its relevant provisions, how these provisions should have worked in practice, and how Ameris's failure to properly calculate the LTIP Pool did not result in consent.

F. **Ninth Affirmative Defense – Unclean Hands**: Ameris contends Byrne comes to Court with unclean hands, and is, therefore, barred from recovery under this Complaint, or any cause of action thereof.

1.    Elements Required to Prove the Ninth Affirmative Defense:

   (a)    Ameris contends, "[i]n accordance with the maxim that no one can take advantage of his or her own wrong, those who seek the aid of equity must come into court in good faith. Any unconscionable conduct that relates to the transaction may give rise to the defense of unclean hands and bar relief."

*See Samuelson v. Ingraham*, 272 Cal. App. 2d 804 (1969); *Aguayo v. Amaro*, 213 Cal. App. 4th 1102, 1110 (2013).

2.    Summary of Byrne's Expected Evidence:

Testimony from Patrick Byrne and Deborah Dickson confirming that Ameris made several material changes to how Ameris calculated the LTIP Pool and how these

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4926-4117-1352.5                                    -17-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

changes significantly impacted the LTIP Pool calculations, to which Byrne raised in good faith. Corroborating documents (e.g., emails, internal financial Excel spreadsheets) demonstrating "that Ameris made decisions that deviated from Balboa's past practices and in violation of the LTIP Agreement, and that Ameris made these decisions despite Byrne's repeated good faith efforts to explain why Ameris was wrong.

**G.      Tenth Affirmative Defense – Defendant's Actions Were Not Willful**: Ameris contends Byrne's Complaint is barred because the conduct of Ameris was not willful.

1.      <u>Elements Required to Prove the Tenth Affirmative Defense</u>:

(a)      Ameris did not know that it was incorrectly calculating the LTIP Pool; and

(b)      Ameris did not intend to incorrectly calculate to LTIP Pool.

*See Munoz v. Express Auto Sales*, 222 Cal. App. 4th Supp. 1, 10 (2014).

2.      <u>Summary of Byrne's Expected Evidence</u>:

(a)      Ameris did not know that it was incorrectly calculating the LTIP Pool

Testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, and Sufhan Majid confirming that Ameris reviewed, considered, and rejected the majority of Byrne's requested LTIP Pool adjustments, confirming Ameris's knowledge with regard to the inaccuracy of its LTIP Pool calculations. Corroborating documents evidencing Ameris's knowledge with regard to the inaccuracy of its LTIP Pool calculations.

(b)      Ameris did not intend to incorrectly calculate to LTIP Pool.

Testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, and Sufhan Majid confirming that Ameris reviewed, considered, and rejected the majority of Byrne's requested LTIP Pool adjustments, confirming Ameris's knowledge with regard to the inaccuracy of its LTIP Pool calculations. Corroborating documents evidencing Ameris's knowledge with regard to the inaccuracy of its LTIP Pool calculations.

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4926-4117-1352.5                                     -18-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

**H.      Eleventh Affirmative Defense – Good Faith**: Ameris contends Byrne's Complaint is barred because Ameris, at all relevant times, acted in good faith and did not therefore commit any unlawful act against Byrne.

    1.      Elements Required to Prove the Eleventh Affirmative Defense:

        (a)      Ameris did not intentionally alter the accounting principles and LTIP methodology to prevent Balboa from meeting the LTIP benchmark; and

        (b)      Ameris did not make these changes with the express purpose of calculating the LTIP Pool incorrectly.

*See* Rest. 2d Contracts (Tent. Draft Nos. 1–7) § 231, com. a".; *Careau & Co. v. Sec. Pac. Bus. Credit, Inc*., 222 Cal. App. 3d 1371, 1393 (1990) (citing *Neal v. Farmers Ins. Exchange*, 21 Cal. 3d 910, 921–922, n. 5 (1978)).

    2.      Summary of Byrne's Expected Evidence:

        (a)      Ameris did not intentionally alter the accounting principles and LTIP methodology to prevent Balboa from meeting the LTIP benchmark.

Testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson confirming that Ameris made several material changes to how Ameris calculated the LTIP Pool and how these changes significantly impacted the LTIP Pool calculations. Corroborating documents demonstrating that Ameris made decisions that deviated from Balboa's past practices and in violation of the LTIP Agreement, and that Ameris made these decisions despite Byrne's repeated efforts to explain why Ameris was wrong.

        (b)      Ameris did not make these changes with the express purpose of calculating the LTIP Pool incorrectly.

Testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson confirming that Ameris made several material changes to how Ameris calculated the LTIP Pool and how these changes

significantly impacted the LTIP Pool calculations. Corroborating documents demonstrating that Ameris made express decisions that deviated from Balboa's past practices and in violation of the LTIP Agreement, and that Ameris made these decisions despite Byrne's repeated efforts to explain why Ameris was wrong.

**I.    Twelfth Affirmative Defense – Proper Exercise of Management's Discretion**: Ameris contends Byrne's Complaint is barred because Ameris's LTIP calculations and its decision to terminate Byrne was a just and proper exercise of Ameris's discretion and is unrelated to Byrne's alleged protected activity.

1.    Elements Required to Prove the Twelfth Affirmative Defense:

(a)    The purpose of Ameris's actions is to operate the business safely and efficiently; and

(b)    Ameris's exercise of its managerial discretion substantially accomplishes this business purpose.

*See* CACI No. 2503.

2.    Summary of Byrne's Expected Evidence:

(a)    The purpose of Ameris's actions was to operate the business safely and efficiently.

Testimony from Patrick Byrne and Deborah Dickson discussing the changes Ameris made to how it calculated the LTIP Pool and how these changes served no safety or efficient business purpose and were done to undermine the expectations arising from the original purchase agreement in which Ameris purchased Balboa Capital from Byrne.

(b)    Ameris's exercise of its managerial discretion substantially accomplishes this business purpose.

Testimony from Patrick Byrne and Deborah Dickson discussing the changes Ameris made to how it calculated the LTIP Pool and how these changes served no legitimate business purpose and were done to undermine Byrne's expectations arising

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5

-20-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

from the original purchase agreement in which Ameris purchased Balboa Capital from Byrne. Corroborating documents 'demonstrating Ameris's failure to properly calculate the LTIP Pool.

**J.      Fifteenth Affirmative Defense – After-Acquired Evidence**: Ameris contends Byrne's Complaint is barred because Ameris has discovered facts, or may later discover facts, which, if known to Ameris prior to Byrne's discharge, would have created additional grounds or bases for a decision to discharge Byrne.

1.      Elements Required to Prove the Fifteenth Affirmative Defense:

(a)      That Byrne removed and retained Ameris's confidential and proprietary trade secrets in violation of his employment agreement and Ameris's internal policies.

(b)      Byrne's misconduct was sufficiently severe that Ameris would have discharged him because of that misconduct alone had Ameris known of it; and

(c)      Ameris would have discharged Byrne for his misconduct as a matter of settled company policy.

*See* CACI No. 2506.

2.      Summary of Byrne's Expected Evidence:

(a)      Byrne removed and retained Ameris's confidential and proprietary trade secrets in violation of his employment agreement and Ameris's internal policies.

Testimony from Patrick Byrne, as well as corroborating documents, will demonstrate that Byrne was not circumventing internal policies.

(b)      Byrne's misconduct was sufficiently severe that Ameris would have discharged him because of that misconduct alone had Ameris known of it.

Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5                                      -21-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP, establishing that Ameris cannot reasonably argue that it was not aware that its LTIP Pool calculations were incorrect when it continuously chose to deny Balboa employees their earned wages, and that it terminated Byrne for another non-retaliatory purpose, such as any alleged misconduct.

        (c)    Ameris would have discharged Byrne for his misconduct as a matter of settled company policy.

Testimony from Patrick Byrne and Debroah Dickson, as well as corroborating documents, will demonstrate that Byrne was not circumventing internal accounting controls nor failing to follow the directions of accounting personnel and management. Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP, establishing that Ameris cannot reasonably argue that it was not aware that its LTIP Pool calculations were incorrect when it continuously chose to deny Balboa employees their earned wages, and that it terminated Byrne for another non-retaliatory purpose, such as an allegation related to a matter of company policy.

**K.**    **Eighteenth Affirmative Defense – Failure to State a Claim for Punitive Damages**: Ameris contends Byrne is not entitled to punitive damages because he failed to allege facts sufficient to support an award of punitive damages.

    1.    <u>Elements Required to Prove the Eighteenth Affirmative Defense</u>:

        (a)  **Malice:**

            (i)    Ameris's conduct was intended to cause injury to Byrne, or despicable conduct; and

///

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5

-22-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

      (ii)    Which is carried on by Ameris with a willful disregard of the rights or safety of Byrne. (A person acts with knowing disregard when the person is aware of the probable dangerous consequences of the person's conduct and deliberately fails to avoid those consequences.)

  (b)  **Oppression:**

      (i)    Ameris's conduct was despicable;

      (ii)    Ameris's conduct subjected Byrne to cruel and unjust hardship; and

      (iii)    Ameris acted with conscious disregard of Byrne's rights.

  (c)  **Fraud:**

      (i)    Ameris's conduct amounts to an intentional misrepresentation, deceit, or concealment of a material fact;

      (ii)    The material fact is known to Ameris; and

      (iii)    Ameris's conduct is undertaken with the intention of depriving Byrne of property or legal rights or otherwise causing injury.

*See* Cal. Civ. Code § 3294.

2.    <u>Summary of Byrne's Expected Evidence:</u>

**<u>Malice:</u>** Testimony from Patrick Byrne and Deborah Dickson discussing the LTIP agreement, its relevant provisions, how these provisions should have worked in practice, how Ameris intentionally miscalculated the LTIP with a willful disregarding of Byrne's rights, causing injury to Byrne. Corroborating documents 'demonstrating Ameris's failure to properly calculate the LTIP Pool.

**<u>Oppression:</u>** Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's

failure to properly calculate performance metrics under the LTIP, establishing Ameris's actions were despicable and in conscious disregard of Byrne's rights when it continuously chose to deny Balboa employees their earned wages. Corroborating documents demonstrating Ameris's knowing failure to properly calculate the LTIP Pool.

Testimony from Patrick Byrne, Robert Rasmussen, Jacquie Emert, and Dr. Anthony Reading, regarding the cruel and unjust emotional toll Ameris's knowing failure to pay-out LTIP bonuses inflicted on Byrne and how Byrne undertook substantial efforts to raise his disputes internally, and that his termination precluded any further efforts to resolve this matter internally, forcing Byrne to resort to expensive litigation to recover what he is owed. Corroborating documents (e.g., emails) demonstrating Ameris's willful failure to properly calculate the LTIP Pool. Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP, establishing that Ameris cannot reasonably argue that it was not aware that its LTIP Pool calculations were incorrect when it continuously chose to deny Balboa employees their earned wages.

**Fraud:** Testimony from Patrick Byrne regarding the representations made to him by Ameris during the negotiations prior to executing the purchase agreement in which Ameris acquired Balboa Capital from Byrne. Corroborating documents evidencing Ameris's representations to Byrne.

Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP, establishing that Ameris cannot reasonably

argue that it was not aware that its LTIP Pool calculations were incorrect when it continuously chose to deny Balboa employees their earned wages

Testimony from Patrick Byrne and Deborah Dickson discussing the LTIP agreement, its relevant provisions, how these provisions should have worked in practice, how Ameris intentionally miscalculated the LTIP Pool in 2022 and 2023, how to properly characterize the accounting inputs going into the LTIP Pool calculation, the application (or lack thereof) to the LTIP Pool calculation, and what the accurate LTIP Pool calculation is, and how these changes served no legitimate business purpose and were done to undermine Byrne's expectations arising from the original purchase agreement in which Ameris purchased Balboa Capital from Byrne. Corroborating documents 'demonstrating Ameris's failure to properly calculate the LTIP Pool.

**L.    Twentieth Affirmative Defense – Not Entitled to Attorneys'**: Ameris Contends Byrne is not entitled to attorneys' fees because he failed to allege facts sufficient to support an award of attorneys' fees.

1.    <u>Elements Required to Prove the Twentieth Affirmative Defense</u>:

(a)    Ameris contends that Byrne failed to allege facts sufficient to establish his entitlement to an award of attorney's fees.

2.    <u>Summary of Byrne's Expected Evidence</u>:

(a)    Byrne failed to allege facts sufficient to establish his entitlement to an award of attorney's fees.

Testimony from Patrick Byrne regarding the specifics of his claims, as explained above in Section II. Corroborating documents 'establishing that Byrne alleged facts sufficient to demonstrate his entitlement to attorney's fees under California Labor code sections 218.5 and 1102.5.

///

///

///

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5

-25-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

**M.      Twenty-First Affirmative Defense – Avoidable Consequences**: Ameris contends Byrne's Complaint is barred by the doctrine of avoidable consequences because a reasonable use of Ameris's procedures would have prevented some or all of the harm Byrne alleges to have suffered.

        1.      <u>Elements Required to Prove the Twenty-First Affirmative Defense</u>:

            (a)      Byrne could have, but did not, take steps to avoid the damages he now seeks to recover.

*See State Dep't of Health Servs. v. Superior Ct.*, 31 Cal. 4th 1026, 1043–44 (2003).

        2.      <u>Summary of Byrne's Expected Evidence</u>:

            (a)      Byrne could have, but did not, take steps to avoid the damages he now seeks to recover.

Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's extensive efforts in raising to Ameris executives the bank's failure to properly calculate the LTIP, including identifying the specific adjustments that needed to be made, establishing that Ameris cannot reasonably argue that it was not aware that its LTIP Pool calculations were incorrect when it continuously chose to deny Balboa employees their earned wages. Corroborating documents 'demonstrating Ameris's failure to properly calculate the LTIP Pool, resulting in Balboa employees not receiving earned wages. Separate testimony from Patrick Byrne discussing Ameris's decisions that resulted in a material reduction in his responsibilities as the CEO of Balboa post-acquisition.

**N.      Twenty-Second Affirmative Defense – Failure to Exhaust Internal Remedies**: Ameris contends Byrne failed to exhaust the internal remedies available to him to address and resolve his pending claims.

        1.      <u>Elements Required to Prove the Twenty-Second Affirmative Defense</u>:

///

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5                                         -26-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

(a)    Ameris contends that the doctrine of avoidable consequences is a concept that "precludes a person injured by another's wrongful conduct from recovering damages that the injured person could have avoided by reasonable effort or expenditure."

2.    Summary of Byrne's Expected Evidence:

Testimony from Patrick Byrne demonstrating substantial efforts to raise and resolve issues internally, but his termination foreclosed any ability to do so. Corroborating documents (e.g., emails) demonstrating Ameris's willful failure to properly calculate the LTIP Pool and dismissal of Byrne's complaints regarding the failure to pay wages to him and other employees.

**O.    Twenty-Fifth Affirmative Defense – Failure to Fulfill Obligations**: Ameris contends Byrne's Complaint is barred by California Labor Code §§ 2854 and 2856 because Byrne failed to use ordinary care and diligence in the performance of his employment duties and failed to comply substantially with the reasonable directions of Ameris.

1.    Elements Required to Prove the Twenty-Fifth Affirmative Defense

(a)    Ameris issued a direction/order;

(b)    Byrne did not substantially comply;

(c)    Substantial compliance was not impossible or unlawful; and

(d)    Substantial compliance would not impose new and unreasonable burdens upon Byrne.

Adapted from California Labor Code §§ 2854, 2856.

2.    Summary of Byrne's Expected Evidence:

(a)    Ameris issued a direction/order.

Testimony from Patrick Byrne.

(b)    Byrne did not substantially comply.

Testimony from Patrick Byrne and Deborah Dickson discussing the LTIP agreement, its relevant provisions, how these provisions should have worked in

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4926-4117-1352.5                    -27-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

practice, how Ameris intentionally miscalculated the LTIP Pool, how to properly characterize the accounting inputs going into the LTIP Pool calculation demonstrating Byrne's substantial compliance with the LTIP requirements and satisfaction of the conditions precedent.

(c)    Substantial compliance was not impossible or unlawful.

Testimony from Patrick Byrne that he substantially complied with all of Ameris's possible or legal orders.

(d)    Substantial compliance would not impose new and unreasonable burdens upon Byrne.

Testimony from Patrick Byrne that he substantially complied with all of Ameris's possible or legal orders, any that anything he allegedly did not comply with would have been a new and unreasonable burden.

**P.    Twenty-Sixth Affirmative Defense – Alleged Acts Were Not Wrongful Termination**: Ameris contends Byrne's Complaint is barred because Ameris's actions in discharging Byrne does not constitute wrongful termination.

1.    <u>Elements Required to Prove the Twenty-Sixth Affirmative Defense</u>:

(a)    Byrne was employed by Ameris;

(b)    Ameris discharged Byrne;

(c)    Byrne's complaints regarding unpaid wages was a substantial motivating reason for Byrne's discharge;

(d)    Byrne was harmed; and

(e)    Discharge was a substantial factor in causing harm.

2.    <u>Summary of Byrne's Expected Evidence</u>:

(a)    Byrne was employed by Ameris.

Testimony from Patrick Byrne, Jim LaHaise, and Nicole Stokes, and corroborating documents'. As part of Ameris's acquisition of Balboa Capital, Byrne signed a three-year Employment Agreement to serve as the CEO of the Balboa Division of Ameris Bank.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5

-28-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

(b)     Ameris discharged Byrne.

Testimony from Patrick Byrne and Jim LaHaise confirming Byrne's termination, effective June 30, 2024. Corroborating termination letter transmitted to Byrne on or about June 27, 2024'.

(c)     Byrne's complaints regarding unpaid wages was a substantial motivating reason for Byrne's discharge.

Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP.  Separate testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson discussing the LTIP and appropriate calculations under the LTIP. Corroborating documents further establishing that Byrne's termination resulted directly from his advocacy on behalf of himself and all Balboa employees for their earned wages, and that Ameris is now offering after-the-fact explanations to justify that decision.

(d)     Byrne was harmed.

Testimony from Patrick Byrne confirming that his termination eliminated his primary source of income, including Ameris's ongoing failure to him wages he had earned. Additional testimony from Byrne, Robert Rasmussen, Jacquie Emert, and Dr. Anthony Reading will further address the emotional impact of Ameris's conduct on Byrne, including the stress caused by the nonpayment of LTIP wages and Byrne's sense of responsibility for other Balboa employees. This testimony will also show that Byrne made substantial efforts to raise and resolve these issues internally, but his termination foreclosed any ability to do so and forced him to pursue costly litigation to recover what he is owed.

(e)     Discharge was a substantial factor in causing harm.

Testimony from Patrick Byrne confirming that his termination eliminated his

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5                    -29-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

primary source of income, including Ameris's ongoing failure to him wages he had earned. Additional testimony from Byrne, Robert Rasmussen, Jacquie Emert, and Dr. Anthony Reading will further address the emotional impact of Ameris's conduct on Byrne, including the stress caused by the nonpayment of LTIP wages and Byrne's sense of responsibility for other Balboa employees. This testimony will also show that Byrne made substantial efforts to raise and resolve these issues internally, but his termination foreclosed any ability to do so and forced him to pursue costly litigation to recover what he is owed.

**Q.    Twenty-Seventh Affirmative Defense – No Damages Suffered**: Ameris contends Byrne has not suffered any damage as a result of any actions or omissions of Ameris or its agents, and Byrne is thus barred from asserting any cause of action against Ameris.

    1.    <u>Elements Required to Prove the Twenty-Seventh Affirmative Defense</u>:

        (a)    Ameris contends "[c]omparative fault is conduct that falls below the legal standard established to protect others against unreasonable risk of harm, except for conduct that is intentionally, wantonly, or willfully disregardful of others' rights."

    2.    <u>Summary of Byrne's Expected Evidence</u>:

**R.    Twenty-Eighth Affirmative Defense – Comparative Fault**: Ameris contends Byrne is not entitled to recover damages, or, any recovery should be reduced, under the doctrine of comparative fault, as a result of Byrne's own acts and/or omissions.

    1.    <u>Elements Required to Prove the Twenty-Eighth Affirmative Defense</u>:

        (a)    Ameris contends that "[c]omparative fault is conduct that falls below the legal standard established to protect others against unreasonable risk of harm, except for conduct that is intentionally, wantonly, or willfully disregardful of others' rights.

///

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5

-30-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

2.      Summary of Byrne's Expected Evidence:

Testimony from Patrick Byrne and Jim LaHaise confirming Byrne's termination, effective June 30, 2024. Corroborating termination letter transmitted to Byrne on or about June 27, 2024, and email correspondence from Phil Silva to Balboa staff discussing Byrne's departure from Balboa.  Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, were a substantial motivating reason for Byrne's discharge. Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid and corroborating documents establishing that Byrne's termination resulted directly from his advocacy on behalf of himself and all Balboa employees for their earned wages, and that Ameris is now offering comparative fault as an after-the-fact explanations to justify their illegal termination decision.

**S.      Thirty-First Affirmative Defense –  No Public Policy Violation**: Ameris contends Byrne's Complaint is barred because no employment decisions made regarding Byrne violated any well-defined public policy.

1.      Elements Required to Prove the Thirty-First Affirmative Defense:

(a)      Ameris's calculation of the LTIP Pool did not deprive Byrne of earned wages; or

(b)      Ameris discharging Byrne does not constitute wrongful termination.

*See Vasquez v. Franklin Mgmt. Real Est. Fund, Inc.*, 222 Cal. App. 4th 819, 831 (2013).

2.      Summary of Byrne's Expected Evidence:

(a)      Ameris's calculation of the LTIP Pool did not deprive Byrne of earned wages.

Testimony from Patrick Byrne and Deborah Dickson discussing the LTIP agreement, its relevant provisions, how these provisions should have worked in

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

practice, how Ameris intentionally miscalculated the LTIP Pool in 2022 and 2023, how to properly characterize the accounting inputs going into the LTIP Pool calculation, the application (or lack thereof) to the LTIP Pool calculation, and what the accurate LTIP Pool calculation is, and how these changes served no legitimate business purpose and were done to undermine Byrne's expectations arising from the original purchase agreement in which Ameris purchased Balboa Capital from Byrne. Corroborating documents 'demonstrating Ameris's failure to properly calculate the LTIP Pool.

(b) Ameris discharging Byrne does not constitute wrongful termination.

Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP. Separate testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson discussing the LTIP and appropriate calculations under the LTIP. Corroborating documents further establishing that Byrne's termination resulted directly from his advocacy on behalf of himself and all Balboa employees for their earned wages, and that Ameris is now offering after-the-fact explanations to justify that decision. Testimony from Patrick Byrne confirming that his termination eliminated his primary source of income, including Ameris's ongoing failure to him wages he had earned. Additional testimony from Byrne, Robert Rasmussen, Jacquie Emert, and Dr. Anthony Reading will further address the emotional impact of Ameris's conduct on Byrne, including the stress caused by the nonpayment of LTIP wages and Byrne's sense of responsibility for other Balboa employees. This testimony will also show that Byrne made substantial efforts to raise and resolve these issues internally, but his termination foreclosed any ability to do so and forced him to pursue costly litigation

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-4117-1352.5

-32-

Case No. 8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

to recover what he is owed. Corroborating documents demonstrating Ameris's willful failure to properly calculate the LTIP Pool.

**T.    Thirty-Third Affirmative Defense – Lack of Malice**: Ameris contends the Complaint, and each cause of action alleged therein, fails to allege facts sufficient to support allegations of oppression, fraud and/or malice; therefore, Byrne is not entitled to recover any punitive or exemplary damages and any allegations with respect thereto, and the prayer for relief, should be stricken.

1.    <u>Elements Required to Prove the Thirty-Third Affirmative Defense</u>:

(a)    Ameris contends that the "Complaint and purported causes of action alleged therein, fails to allege facts sufficient to allow recovery of punitive or exemplary damages from Ameris under Civil Code Section 3294, which requires clear and convincing evidence that it has been guilty of oppression, fraud or malice."

2.    <u>Summary of Byrne's Expected Evidence</u>:

(a)    **Malice:**

Testimony from Patrick Byrne and Deborah Dickson discussing the LTIP agreement, its relevant provisions, how these provisions should have worked in practice, how Ameris intentionally miscalculated the LTIP with a willful disregarding of Byrne's rights, causing injury to Byrne. Corroborating documents demonstrating Ameris's failure to properly calculate the LTIP Pool.

**U.    Thirty-Fifth Affirmative Defense – No Retaliatory Conduct**: Ameris contends Byrne is not entitled to recover any damages because Ameris did not engage in any retaliatory conduct with regard to any employment decision relating to Byrne.

1.    <u>Elements Required to Prove the Thirty-Fifth Affirmative Defense</u>:

(a)    Ameris was Byrne's employer;

///

///

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5

-33-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

(b)     Byrne complained to a person with authority over Byrne, or an employee with authority to investigate, discover, or connect legal violation/noncompliance of a state statute;

(c)     Byrne had reasonable cause to believe that the conduct he complained of violated California labor law;

(d)     Ameris discharged Byrne; and

(e)     Byrne's complaints were a contributing factor in Ameris's decision.

*See* CACI No. 4603.

2.     Summary of Byrne's Expected Evidence:

(a)     Ameris was Byrne's employer

Testimony from Patrick Byrne, Jim LaHaise, and Nicole Stokes, and corroborating documents'. As part of Ameris's acquisition of Balboa Capital, Byrne signed a three-year Employment Agreement to serve as the CEO of the Balboa Division of Ameris Bank.

(b)     Byrne complained to a person with authority over Byrne, or an employee with authority to investigate, discover, or connect legal violation/noncompliance of a state statute

Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP.  Separate testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson discussing the LTIP and appropriate calculations under the LTIP. Corroborating documents further establishing that Byrne's termination resulted directly from his advocacy on behalf of himself and all Balboa employees for their earned wages, and that Ameris is now offering after-the-fact explanations to justify that decision.

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4926-4117-1352.5

-34-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

(c)    Byrne had reasonable cause to believe that the conduct he complained of violated California labor law

Testimony from Patrick Byrne as to his state of mind and beliefs concerning Ameris allegedly violating California labor law by intentionally miscalculating the LTIP Pool to prevent Balboa employees from receiving earned wages. Separate testimony from Patrick Byrne and Deborah Dickson, and corroborating documents 'demonstrating Ameris's failure to properly calculate the LTIP Pool, resulting in Byrne and Balboa employees not receiving earned wages.

(d)    Ameris discharged Byrne

Testimony from Patrick Byrne and Jim LaHaise confirming the June 27, 2024 meeting between the two where Jim LaHaise notified Patrick Byrne of his termination. Corroborating documents showing that Patrick Byrne was terminated by Ameris, effective June 30, 2024.

(e)    Byrne's complaints were a contributing factor in Ameris's decision.

Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP.  Separate testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson discussing the LTIP and appropriate calculations under the LTIP. Corroborating documents further establishing that Byrne's termination resulted directly from his advocacy on behalf of himself and all Balboa employees for their earned wages, and that Ameris is now offering after-the-fact explanations to justify that decision.

///

///

///

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5

-35-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

**V.    Thirty-Sixth Affirmative Defense – Failure to State a Claim for Retaliation**: Ameris contends Byrne's claim for Retaliation is barred because Byrne did not engage in protected activity within the meaning of the applicable statutes, including but not limited to, Labor Code section 1102.5.

1.    Elements Required to Prove the Thirty-Sixth Affirmative Defense:

(a)    Ameris was Byrne's employer;

(b)    Byrne disclosed to a person with authority over Byrne, or an employee with authority to investigate, discover, or connect legal violation/noncompliance of a state statute;

(c)    Byrne had reasonable cause to believe that the conduct he complained of violated California labor law;

(d)    Ameris discharged Byrne; and

(e)    Byrne's disclosure was a contributing factor in Ameris's decision.

*See* CACI No. 4603.

2.    Summary of Byrne's Expected Evidence:

(a)    Ameris was Byrne's employer.

Testimony from Patrick Byrne, Jim LaHaise, and Nicole Stokes, and corroborating documents'. As part of Ameris's acquisition of Balboa Capital, Byrne signed a three-year Employment Agreement to serve as the CEO of the Balboa Division of Ameris Bank. Further, Byrne and Ameris agreed to the LTIP that would result in additional compensation to Byrne and other Balboa employees if the Balboa Division met certain performance metrics.

(b)    Byrne disclosed to a person with authority over Byrne, or an employee with authority to investigate, discover, or connect legal violation/noncompliance of a state statute.

Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4926-4117-1352.5                    -36-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP.  Separate testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson discussing the LTIP and appropriate calculations under the LTIP. Corroborating documents further establishing that Byrne's termination resulted directly from his advocacy on behalf of himself and all Balboa employees for their earned wages, and that Ameris is now offering after-the-fact explanations to justify that decision.***

(c)    Byrne had reasonable cause to believe that the conduct he complained of constituted a violation of California labor law.

Testimony from Patrick Byrne as to his state of mind and beliefs concerning Ameris allegedly violating California labor law by intentionally miscalculating the LTIP Pool to prevent Balboa employees from receiving earned wages. Separate testimony from Patrick Byrne and Deborah Dickson, and corroborating documents 'demonstrating Ameris's failure to properly calculate the LTIP Pool, resulting in Byrne and Balboa employees not receiving earned wages.

(d)    Ameris discharged Byrne.

Testimony from Patrick Byrne and Jim LaHaise confirming the June 27, 2024 meeting between the two where Jim LaHaise notified Byrne of his termination. Corroborating documents showing that Byrne was terminated by Ameris, effective June 30, 2024.

(e)    Byrne's complaints were a contributing factor in Ameris's decision.

Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP.  Separate testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4926-4117-1352.5                                    -37-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

discussing the LTIP and appropriate calculations under the LTIP. Corroborating documents further establishing that Byrne's termination resulted directly from his advocacy on behalf of himself and all Balboa employees for their earned wages, and that Ameris is now offering after-the-fact explanations to justify that decision.

**W.    Fortieth Affirmative Defense – Damages Reduced Pursuant to California Civil Code Section 1431.2**: Ameris contends, to the extent liability is established, Ameris is entitled to an offset against any award of back pay in an amount equal to any and all interim earnings by Byrne from other employers and/or other sources and any and all additional sums that constitute interim earnings that Byrne could have earned had he made reasonable efforts to mitigate his alleged damages, and/or monies owed to Ameris under contract.

1.    Elements Required to Prove the Fortieth Affirmative Defense:

(a)    Byrne failed to use reasonable efforts to mitigate damages; and

(b)    The amount by which damages would have been mitigated.

*See* Ninth Circuit Model Jury Instructions § 5.3; *see also* CACI No. 3963.

2.    Summary of Byrne's Expected Evidence:

(a)    Byrne failed to use reasonable efforts to mitigate damages

Testimony from Patrick Byrne confirming he made reasonable efforts to mitigate damages.

(b)    The amount by which damages would have been mitigated.

Testimony from Patrick Byrne confirming Byrne's repeated complaints to Ameris regarding the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP, resulting in significant lost wages to Byrne.

///

///

///

///

**X.    Forty-First Affirmative Defense – Employer Exercised Care to Prevent and Correct Retaliation': Ameris contends Ameris cannot be held liable for the injuries alleged by Byrne because Ameris exercised reasonable care to prevent and correct promptly any alleged unlawful behavior.**

1.    Elements Required to Prove the Forty-First Affirmative Defense:

Ameris contends that Byrne must prove:

(a)    That he was subjected to retaliation in the course of employment;

(b)    That Ameris failed to take all reasonable steps to prevent the retaliation,

(c)    That he was harmed, and

(d)    That Ameris's failure to take all reasonable steps to prevent retaliation was a substantial factor in causing his harm.

*See* CACI No. 2527.

2.    Summary of Byrne's Expected Evidence:

(a)    That he was subjected to retaliation in the course of employment;

Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP. Separate testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson discussing the LTIP and appropriate calculations under the LTIP. Corroborating documents further establishing that Byrne's termination resulted directly from his advocacy on behalf of himself and all Balboa employees for their earned wages, and that Ameris is now offering after-the-fact explanations to justify that decision.

(b)    That Ameris failed to take all reasonable steps to prevent the retaliation,

Testimony from Patrick Byrne and Robert Rasmussen confirming that Ameris

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-4117-1352.5

-39-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

failed to take all reasonable steps to prevent the retaliation.

(c)     That he was harmed, and

Testimony from Patrick Byrne confirming that his termination eliminated his primary source of income, including Ameris's ongoing failure to him wages he had earned. Additional testimony from Byrne, Robert Rasmussen, Jacquie Emert, and Dr. Anthony Reading will further address the emotional impact of Ameris's conduct on Byrne, including the stress caused by the nonpayment of LTIP wages and Byrne's sense of responsibility for other Balboa employees. This testimony will also show that Byrne made substantial efforts to raise and resolve these issues internally, but his termination foreclosed any ability to do so and forced him to pursue costly litigation to recover what he is owed.

(d)     That Ameris's failure to take all reasonable steps to prevent retaliation was a substantial factor in causing his harm.

Testimony from Patrick Byrne and Robert Rasmussen confirming that Ameris failed to take all reasonable steps to prevent the retaliation. Documents demonstrating that Byrne and Ameris agreed to the LTIP that would result in additional compensation to Byrne and other Balboa employees if the Balboa Division met certain performance metrics, and Byrne's termination was a substantial factor in both his economic and emotional harm.

**Y.     Forty-Second Affirmative Defense – Business Necessity**: Ameris Contends any adverse employment action or decision relating to Byrne was based on legitimate and non-retaliatory reasons and/or Ameris had a reasonable belief that the action was justified based on evidence separate and apart from any protected disclosures.

1.     <u>Elements Required to Prove the Forty-Second Affirmative Defense</u>:

(a)     Byrne was employed by Ameris;

(b)     An adverse employment action was taken against Byrne;

(c)     Retaliatory motives were a contributing factor in the adverse

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5

-40-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

employment decision; and

(d)    The adverse employment action would have occurred for legitimate, independent reasons, regardless of the employee engaging in protected activity.

*See* Cal. Lab. Code § 1102.6.

2.    <u>Summary of Byrne's Expected Evidence</u>:

(a)    Byrne was employed by Ameris

Testimony from Patrick Byrne, Jim LaHaise, and Nicole Stokes, and corroborating documents (e.g., Byrne's Employment Agreement and the Balboa Capital LTIP Agreement with Ameris). As part of Ameris's acquisition of Balboa Capital, Byrne signed a three-year Employment Agreement to serve as the CEO of the Balboa Division of Ameris Bank. Further, Byrne and Ameris agreed to the LTIP that would result in additional compensation to Byrne and other Balboa employees if the Balboa Division met certain performance metrics.

(b)    An adverse employment action was taken against Byrne

Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP.  Separate testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson discussing the LTIP and appropriate calculations under the LTIP. Separate testimony from Patrick Byrne discussing Ameris's decisions that resulted in a material reduction in his responsibilities as the CEO of Balboa post-acquisition.

(c)    Retaliatory motives were a contributing factor in the adverse employment decision.

Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's repeated complaints

to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP. Separate testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson discussing the LTIP and appropriate calculations under the LTIP. Corroborating documents (e.g., emails, internal financial Excel spreadsheets, performance reviews, termination letter) further establishing that Byrne's termination resulted directly from his advocacy on behalf of himself and all Balboa employees for their earned wages, and that Ameris is now offering after-the-fact explanations to justify that decision.

> (d) The adverse employment action would have occurred for legitimate, independent reasons, regardless of the employee engaging in protected activity

Testimony from Patrick Byrne, Phil Silva, and Jim LaHaise regarding both Byrne and Ameris's intentions to have Byrne continue as CEO of the Balboa division of Ameris. Corroborating documents (e.g., emails and performance reviews) demonstrating that both Byrne and Ameris explicitly indicate their respective intent to keep Byrne as CEO of the Balboa division of Ameris. If not for Byrne's complaints regarding the LTIP, Byrne would not have been terminated.

**Z.** **Forty-Third Affirmative Defense – Damages Off-Set**: Ameris contends that, to the extent liability is established, Ameris is entitled to an offset against any award of back pay in an amount equal to any and all interim earnings by Byrne from other employers and/or other sources and any and all additional sums that constitute interim earnings that Bryne could have earned had he made reasonable efforts to mitigate his alleged damages, and/or monies owed to Ameris under contract.

1. <u>Elements Required to Prove the Forty-Third Affirmative Defense</u>:

   (a) Byrne failed to use reasonable efforts to mitigate damages; and

   (b) The amount by which damages would have been mitigated.

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4926-4117-1352.5

Case No. 8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

*See* Ninth Circuit Model Jury Instructions § 5.3; *see also* CACI No. 3963.

2.      Summary of Byrne's Expected Evidence:

(a)     Byrne failed to use reasonable efforts to mitigate damages

Testimony from Patrick Byrne confirming he made reasonable efforts to mitigate damages.

(b)     The amount by which damages would have been mitigated.

Testimony from Patrick Byrne confirming Byrne's repeated complaints to Ameris regarding its ongoing violations of the California Labor Code, including the failure to pay earned wages, resulting from Ameris's failure to properly calculate performance metrics under the LTIP, resulting in significant lost wages to Byrne.

**AA.   Forty-Fifth Affirmative Defense – Failure to Perform Responsibilities**:

Ameris contends Byrne's recovery, if any, is barred because Byrne failed to follow internal control and procedures in violation of GAAP procedures.

1.      Elements Required to Prove the Forty-Fifth Affirmative Defense:

(a)     Ameris contends that poor job performance is a legitimate, nondiscriminatory response to terminate employment.

*See Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 661 (9th Cir. 2002).

2.      Summary of Byrne's Expected Evidence:

(a)     Poor job performance is a legitimate, nondiscriminatory response to terminate employment.

Testimony from Patrick Byrne and Deborah Dickson, and corroborating documents, demonstrating Ameris's incorrect application of GAAP procedures to internal compensation programs, and Byrne's extensive efforts in raising to Ameris executives the bank's failure to properly calculate the LTIP, were not a failure to follow internal control and procedures, nor a violation of GAAP. Testimony from Patrick Byrne and corroborating documents demonstrating that Byrne did not have poor job performance, and in-fact exceeded the goals of the LTIP.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5                                    -43-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

**BB. Forty-Sixth Affirmative Defense – Good Faith Dispute of Compensation**: Ameris contends Byrne's Complaint for failure to pay all wages allegedly due to Byrne's discharge was not willful and/or there existed a good faith dispute as to the amount of compensation, owed, if any.

    1.    <u>Elements Required to Prove the Forty-Sixth Affirmative Defense</u>:

        (a)    Ameris presents a defenses based on law or fact; and

        (b)    This defense, if successful, would reduce Byrne's recovery in whole, or in part.

*See* Cal. Code Regs. tit. 8, § 13520.

    2.    <u>Summary of Byrne's Expected Evidence</u>:

        (a)    Ameris presents a defenses based on law or fact

Testimony from Patrick Byrne, Heather Parker, Robert Rasmussen, Jim LaHaise, Nicole Stokes, and Sufhan Majid, confirming Byrne's extensive efforts in raising to Ameris executives the bank's failure to properly calculate the LTIP, including identifying the specific adjustments that needed to be made, establishing that Ameris cannot reasonably argue that it was not aware that its LTIP Pool calculations were incorrect when it continuously chose to deny Balboa employees their earned wages. Corroborating documents 'demonstrating Ameris's failure to properly calculate the LTIP Pool, resulting in Balboa employees not receiving earned wages. Testimony from Patrick Byrne and Deborah Dickson discussing the changes Ameris made to how it calculated the LTIP Pool and how these changes served no legitimate business purpose and were done to undermine Byrne's expectations arising from the original purchase agreement in which Ameris purchased Balboa Capital from Byrne. Corroborating documents 'demonstrating Ameris's failure to properly calculate the LTIP Pool. Testimony from Patrick Byrne and Deborah Dickson discussing the LTIP agreement, its relevant provisions, how these provisions should have worked in practice, how Ameris intentionally miscalculated the LTIP Pool in 2022 and 2023, how to properly characterize the accounting inputs going into the

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4926-4117-1352.5 -44-

Case No. 8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

LTIP Pool calculation, the application (or lack thereof) to the LTIP Pool calculation, and what the accurate LTIP Pool calculation is. Corroborating documents showing the relevant LTIP Agreement and its appropriate interpretation and application to the Balboa Capital LTIP Pool.

(b)    This defense, if successful, would reduce Byrne's recovery in whole, or in part.

Testimony from Patrick Byrne and Deborah Dickson confirming that Ameris made several material changes to how Ameris calculated the LTIP Pool and how these changes significantly impacted the LTIP Pool calculations, to which Byrne raised in good faith. Corroborating documents demonstrating that Ameris made decisions that deviated from Balboa's past practices and in violation of the LTIP Agreement, and that Ameris made these decisions despite Byrne's repeated good faith efforts to explain why Ameris was wrong, preventing any contentions of a good faith dispute.

**CC.    Forty-Seventh Affirmative Defense – No Waiting Time Penalties**: Byrne is not entitled to waiting time penalties under any statute, theory or case law authority including Labor Code sections 201, 202, and 203.

1.    <u>Elements Required to Prove the Forty-Seventh Affirmative Defense</u>:

(a)    Ameris did not fail to pay Byrne wages; and/or

(b)    Ameris did not willfully fail to pay Byrne wages.

*See* Cal. Code Regs. tit. 8, § 13520

2.    <u>Summary of Byrne's Expected Evidence</u>:

(a)    Ameris did not fail to pay Byrne wages

Testimony from Patrick Byrne and Deborah Dickson discussing the LTIP agreement, its relevant provisions, how these provisions should have worked in practice, how Ameris intentionally miscalculated the LTIP Pool in 2022 and 2023, how to properly characterize the accounting inputs going into the LTIP Pool calculation, the application (or lack thereof) to the LTIP Pool calculation, and what the accurate LTIP Pool calculation is, and how these changes served no legitimate

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4926-4117-1352.5

-45-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

business purpose and were done to undermine Byrne's expectations arising from the original purchase agreement in which Ameris purchased Balboa Capital from Byrne.

(b)  Ameris did not willfully fail to pay Byrne wages

Testimony from Patrick Byrne and Deborah Dickson discussing the LTIP agreement, its relevant provisions, how these provisions should have worked in practice, how Ameris intentionally miscalculated the LTIP Pool in 2022 and 2023, how to properly characterize the accounting inputs going into the LTIP Pool calculation, the application (or lack thereof) to the LTIP Pool calculation, and what the accurate LTIP Pool calculation is, and how these changes served no legitimate business purpose and were done to undermine Byrne's expectations arising from the original purchase agreement in which Ameris purchased Balboa Capital from Byrne. Separate testimony from Patrick Byrne, Jim LaHaise, Nicole Stokes, Sufhan Majid, Maryellen Sebold, and Deborah Dickson discussing the LTIP and appropriate calculations under the LTIP. Corroborating documents (e.g., emails, internal financial Excel spreadsheets, performance reviews, termination letter) further establishing that Byrne's termination resulted directly from his advocacy on behalf of himself and all Balboa employees for their earned wages, and that Ameris is now offering after-the-fact explanations to justify that decision.

**DD. Forty-Eighth Affirmative Defense – Reservation of Additional Affirmative Defenses**: Ameris contends that Byrne's complaint as a whole, and each purported cause of action alleged therein, fails to state facts sufficient to constitute a cause of action against Ameris upon which relief may be granted.

1.  <u>Elements Required to Prove the Forty-Eighth Affirmative Defense</u>:

(a)  Byrne did not state facts sufficient to constitute a cause of action for wrongful termination in violation of public policy.

(b)  Byrne did not state facts sufficient to constitute a cause of action for retaliation.

(c)  Byrne did not state facts sufficient to constitute a cause of action

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5                                   -46-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

for willful failure to pay all wages due at termination.

(d)    Byrne did not state facts sufficient to constitute a cause of action for violations of Business & Profession code § 17200.

*See* CACI No. 4603; CACI No. 4606; CACI No. 2430; CACI No. 2507.

2.    <u>Summary of Byrne's Expected Evidence:</u>

Byrne states all facts sufficiently in the complaint, as explained above in section II.

## IV.    Anticipated Evidentiary Issues [*L.R. 16-4.1(h)*]

At this time, the following anticipated evidentiary issues will be demonstrated in Plaintiff's Motions in Limine:

1.    <u>Plaintiff's Motion In Limine to Exclude All or Part of Defendant's Expert Maryellen Sebold's Opinions and Testimony under FRE 702 and Daubert.</u>

2.    <u>Plaintiff's Motion In Limine to Designate Deborah Dickson and Plaintiff's Affirmative Expert</u>

3.    <u>Plaintiff's Motion In Limine to Exclude Defendant Ameris Bank's Evidence Supporting the Dictionary Nature of Wages</u>

## V.    Issues of Law [*L.R. 16-4.1(i)*]

Not waiving any potential or unforeseen legal issues, this memorandum addresses the legal issues currently relevant and germane to this case.

## VI.    Bifurcation of Issues [*L.R. 16-4.3*]

Byrne does not currently seek bifurcation, but reserves the right to address the sequencing of legal and equitable issues at trial. The Court may resolve the UCL claim after the jury's verdict while being bound by the jury's factual findings on common issues. *See Nationwide Biweekly Admin., Inc. v. Superior Ct.*, 9 Cal. 5th 279 (2020) (UCL claims are equitable and tried to the court); *Hoopes v. Dolan*, 168 Cal. App. 4th 146 (2008) (court is bound by jury's factual findings on overlapping issues when deciding equitable claims); *Orange Cnty. Water Dist. v. Alcoa Glob. Fasteners, Inc.*,

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4926-4117-1352.5

-47-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT

12 Cal. App. 5th 252 (2017) (no mandatory bifurcation; sequencing of legal and equitable claims is within the court's discretion).

## VII.   Jury Trial [*L.R. 16-4.4*]

Byrne contends that, except for the Fourth Claim, all issues in this case should be decided by a jury.  Byrne's Fourth Claim under California's Unfair Competition Law, however, is equitable in nature and may adjudicated by the Court.

## VIII.   Attorneys' Fees [*L.R. 16-4.5*]

If Byrne prevails on his failure to pay earned wages at discharge and/or retaliation, he is entitled to attorneys' fees under California Labor Code sections 218.5 and 1102.5(j), respectively.

Dated:  April 17, 2026

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
MATTHEW T. SESSIONS
STACEY A. VILLAGOMEZ
MADISON E. LARSEN

By: _____
MATTHEW T. SESSIONS
Attorneys for Plaintiff
PATRICK BYRNE

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4926-4117-1352.5

-48-

Case No.  8:24-cv-01989-MWC-JDE
JOINT MEMORANDUM OF CONTENTIONS
OF LAW AND FACT