# EXHIBIT A



# Rule 26 (a)(2)(B) Expert Report of
# Deborah Dickson, CPA, CFE, CFF, MAFF

In the Matter of:

Patrick Byrne, Plaintiff,

v.

Ameris Bank, a Georgia Corporation, Defendant.

_____

United States District Court, Central District of California, Southern Division
Case No. 8:24-cv-01989

January 2, 2026



ACCOUNTANT'S LETTER

Matthew T. Sessions, Esq.
Stacey A. Villagomez, Esq.
Allen Matkins Leck Gamble Mallory & Natsis, LLP
2010 Main Street, 8th Floor
Irvine, California 92614-7214

In the Matter of:
Patrick Byrne, Plaintiff, v. Ameris Bank, a Georgia Corporation, Defendant
Case Number: 8:24-cv-01989

Dear Mr. Sessions and Ms. Villagomez:

I have performed the procedures enumerated below, to assist you with respect to the analysis of various documents and preparation of calculations that will be presented to the Court in connection with the above referenced case. This engagement was performed in accordance with standards established by the American Institute of Certified Public Accountants. Attached as Exhibit 1 to my report is my curriculum vitae which summarizes my qualifications as a damages expert, along with a list of matters in which I have testified in the past four years.

The procedures I performed are summarized as follows:
1. I read and analyzed documents provided to me, which documents included various pleadings, financial records, and the Expert Report of Ms. Maryellen Sebold dated December 5, 2025.
2. I analyzed and calculated Plaintiff's unpaid long-term cash incentive plan awards resulting from Defendant's alleged improper calculations.
3. I analyzed and calculated underpaid acquisition proceeds to Plaintiff resulting from Defendant's alleged accounting changes related to security deposits post-acquisition.

My findings and calculations are presented in the accompanying exhibits. If I receive additional relevant information, I may prepare a supplementary report after the date of this report. Smith Dickson, Certified Public Accountants, LLP is being compensated for services at rates between $225 and $550 per hour, no part of which is in any way contingent upon my opinions or the outcome of this matter.

I was not engaged to, and did not perform an audit, the objective of which would be the expression of an opinion on specified elements, accounts, or items. Accordingly, I do not express such an opinion. Had I performed additional procedures, other matters might have come to my attention that should have been reported to you.

*Deborah Dickson*

Deborah Dickson, CPA, CFE, CFF, MAFF
Managing Partner
Smith Dickson, Certified Public Accountants, LLP
January 2, 2026

**Table of Contents**

I.   Case Summary ..................................................................................................................1

II.  Assignments.....................................................................................................................2

III. Documents and Information Considered........................................................................2

IV. Summary of Opinions ....................................................................................................3

V.  Procedures Performed and Bases for Opinions.............................................................3

VI. Assumptions ...................................................................................................................7

VII. Conclusions ...................................................................................................................8

VIII.Exhibits..........................................................................................................................9

    Exhibit 1 – Deborah Dickson Curriculum Vitae and Schedule of Testimony..............9

    Exhibit 2 – List of Documents and Information Considered ....................................15

    Exhibit 3 – Calculation of Total Incentive Pool Cash Bonus Award for 2022. .........16

    Exhibit 4 – Calculation of Total Incentive Pool Cash Bonus Award for 2023. .........17

    Exhibit 5 – Calculation of Adjusted Provision for Loan Losses per LTIP for Balboa Capital.....................18

I. **Case Summary**

1. The following is a summary of the background of this litigation primarily based on Plaintiff's Complaint and various financial records provided to date, which form the basis of my understanding of the material facts in this matter and is not intended to represent any form of opinions or legal conclusions of mine.

2. Plaintiff, Patrick Byrne, founded Balboa Capital Corporation (hereafter "Balboa") in 1988 as a premier small to medium-sized business finance company, offering equipment financing solutions to businesses nationwide.[1] For 33 years, Patrick Byrne served as the CEO of Balboa until the company was acquired in 2021.[2]

3. Defendant, Ameris Bank ("Ameris"), acquired Balboa on December 10, 2021.[3] Pursuant to the Stock Purchase Agreement ("Purchase Agreement"), Balboa would continue to operate in California as a division of Ameris. Additionally, Balboa employees would continue working for Balboa and performing the same job duties as before the acquisition, except that the Balboa employees were now considered employees of Ameris. Patrick Byrne entered into an Employment Agreement with Ameris beginning on December 10, 2021, and ending on December 31, 2024 (the "Initial Term"), during which the parties agreed that Patrick Byrne would continue to serve as the CEO of Balboa.[4]

4. On December 10, 2021, the parties agreed to the Balboa Capital Long—Term Cash Incentive Plan ("LTIP Agreement"). Pursuant to the LTIP Agreement, eligible employees of the Balboa division of Ameris would have the potential for cash bonus awards based on the achievement of certain performance goals by Balboa during the Performance Periods (that is, calendar years 2022, 2023, and 2024).[5]

5. The performance goals for the bonus award would be measured using the annual Earnings Before Tax ("EBT") under the LTIP of the Balboa division of Ameris, excluding amounts allocated to the Incentive Pool and the Retention Pool. The LTIP Agreement contains "Exhibit A" which is referred to as the "Pioneer 1Q21 Operating Model" ("Pioneer Model").[6] The Pioneer Model contains Balboa's historical income statements and balance sheets for the years 2017 through 2020, as well as Balboa's projected income statements and balance sheets for the years 2021 through 2025. Per the LTIP Agreement, the calculation of EBT must include the application of the Pioneer Model, and no costs of a type not contemplated by the Pioneer Model will be allocated to Balboa. Additionally, the LTIP Agreement provides the six following Key Assumptions in calculating Balboa's EBT under the LTIP:

    i. *Initial direct costs will be calculated using GAAP methodology.*
    ii. *The interest cost used will be 1%.*
    iii. *There will be no allocation of indirect Company expenses to Balboa by the Company, and there will be no transfer pricing between the Company and Balboa.*
    iv. *For the performance period, Balboa will not be charged for any other cost of capital other than 1% cost of funds on the average outstanding balance on all earning assets.*
    v. *Balboa will bear all direct costs incurred in its operations, and the Company will pass through at actual cost without markup any discounts relating to Balboa's operations that the Company enjoys with suppliers and vendors.*
    vi. *The allowance for loan losses calculations and expenses for Balboa will be the greater of (i) actual net charge-offs or (ii) 1.25% of net investment in direct financing leases.*

---

[1] Plaintiff 000908-000971 – Project Pioneer, p. 5
[2] *Id.* at p. 53
[3] Ameris000132-000218 – Stock Purchase Agreement dated 12/10/21, p. 1
[4] Ameris000238 – Employment Agreement, p. 1
[5] Ameris000221-000234 – LTIP Agreement, p.7
[6] *Id.* at pp. 13-14

6. A footnote per the LTIP Agreement states, "The general premise of the LTIP is to materially follow past practice, which this calculation is maintaining."[7]

7. Under Plaintiff's Employment Agreement, he is entitled to an individual quarterly bonus, which is separate from the LTIP, but follows the same methodology in the LTIP.[8] Section 3.2 of Plaintiff's Employment Agreement states that the earnings under the LTIP are calculated based on the methodologies contained in the Pioneer 1Q21 Operating Model "regardless of what financial results may be achieved under the Company's financial reporting methodologies or requirements."

8. Patrick Byrne asserts that Defendant failed to properly calculate the earnings under the LTIP so as to reduce and/or eliminate the payment of cash bonus awards as agreed upon in the LTIP Agreement. Plaintiff complained repeatedly with Ameris regarding the improper calculation of the bonus awards from June 2023 through June 30, 2024, when Ameris terminated his employment.[9]

9. Defendant's expert, Ms. Maryellen Sebold, opined that no additional cash bonus awards are due under the LTIP Agreement for calendar years 2022 and 2023.[10] She was silent as to any opinions related to any cash bonus awards for calendar year 2024; I understand that the LTIP workbook for 2024 was not produced by Defendant, so I reserve the right to prepare a supplemental report if this document is produced in the future. Additionally, Ms. Sebold opined that no additional payment is due to Plaintiff related to security deposit income pre-acquisition.

## II. Assignments

10. On November 25, 2025, the Law Office of Esperanza Cervantes Anderson, APC retained me and those working under my supervision, to perform expert accounting services related to their representation of Plaintiff in the matter styled *Patrick Byrne. v. Ameris Bank*, pending in the Central District of California Southern Division as case number 8:24-cv-01989.

11. In my capacity as an economic damages expert, I was tasked with gaining sufficient knowledge of the background, claims, and issues pertinent to my assignments, which included the analysis of financial data and other information to form opinions within a reasonable degree of certainty. Specifically, I was asked to analyze and quantify any economic damages suffered by Plaintiff due to Defendant's alleged actions. I was also asked to respond to the opinions and comments expressed by Ms. Sebold.

12. In preparing this report, I performed analyses sufficient to render my opinions in this matter, which I detail later. If asked to, I may prepare a supplemental report or perform further analyses to reach other opinions, since my analyses and findings expressed in this report may change due to the production of any future relevant discovery, testimony, or other evidence.

## III. Documents and Information Considered

13. In reaching my opinions expressed herein, I considered the documents and information listed in Exhibit 2 of my report.

---

[7] *Id.* at p. 8
[8] Ameris000239 – Employment Agreement, p. 2
[9] Plaintiff's Complaint for Damages dated 9/16/24, p. 3
[10] Expert Report of Maryellen Sebold dated 12/5/25, p. 2

## IV. Summary of Opinions

14. After reviewing Balboa's financial records, as well as Ms. Sebold's initial report dated December 5, 2025, I performed analyses (detailed later in my report) to reach the following opinions with respect to Plaintiff's damages:

**Ms. Sebold's 2022 and 2023 EBT Calculations Are Based on Incorrect Interpretation of the LTIP Agreement**

   a. After reviewing Ms. Sebold's report dated December 5, 2025, I found that her opinions were based on an incorrect interpretation of the LTIP Agreement—namely with respect to the application of Generally Accepted Accounting Principles ("GAAP") and calculation of the allowance for loan losses. As I will detail in my report, Ms. Sebold's misapplication of these terms materially impact her calculations of Balboa's EBT for calendar years 2022 and 2023.

**LTIP Cash Bonuses Owed for Calendar Years 2022 and 2023[11]**

   b. As of the date of this report, I computed that Plaintiff is due an additional $1,486,005 in underpaid cash bonus awards for calendar year 2022, pursuant to the LTIP Agreement (see Exhibit 3).

   c. As of the date of this report, I calculated that Plaintiff is due $4,237,396 in cash bonus awards for calendar year 2023, pursuant to the LTIP Agreement (see Exhibit 4).

**Underpaid Acquisition Proceeds**

   d. Separate from the LTIP cash bonus analyses, I computed that Mr. Byrne is due $2,024,765 related to security deposits under the terms of the Purchase Agreement.

## V. Procedures Performed and Bases for Opinions

15. The following sections of my report establish the foundation for and detail my analyses of Plaintiff's damages.

**Bases for Patrick Byrne's Damages Claims**

16. Based on Plaintiff's Complaint, I recognize that Mr. Byrne contends that he suffered economic harm resulting from Defendant's incorrect calculations of the LTIP in the years 2022, 2023, and 2024, as well as Defendant's incorrect computations of security deposits when it acquired Balboa. Accordingly, I prepared my calculations under the presumption that Defendant, Ameris Bank, will be found liable for Plaintiff's damages.

**Comments Regarding Ms. Sebold's Report Dated December 5, 2025**

17. Summarily, Ms. Sebold concluded that no additional LTIP payment is due to Mr. Byrne for calendar year 2022, and that Balboa's 2023 EBT did not meet the threshold for award for the 2023 Performance Period. Ms. Sebold did not address the 2024 LTIP calculation in her report, although she noted that she "reviewed the LTIP workbooks in 2022, 2023, and 2024 [...]."[12] Further, Ms. Sebold concluded that Mr. Byrne's requests for adjustments to the LTIP calculations, as well as his request for adjustments to unclaimed security deposits that relate to the purchase of Balboa, *are not supported by GAAP*. Therefore, Ms. Sebold's initial report purports that no additional payments are due to Mr. Byrne. As I will establish, however, Ms. Sebold's conclusions are premised on a faulty interpretation of the LTIP Agreement.

18. **Analysis of Balboa's Earnings Before Taxes in the Years 2022 and 2023** – Like Ms. Sebold, I analyzed the 2022 and 2023 LTIP Workbooks to calculate Balboa's Earnings Before Taxes for the years 2022 and 2023 (see Exhibits 3 and 4, respectively). Ms. Sebold and I appear to agree that the financial statements contained in the LTIP workbooks differ from the Balboa financial statements, as she stated in her report that, "A separate 891 Balboa

---

[11] At this time, I am unable to calculate any cash bonus awards still owing for calendar year 2024 due to incomplete financial records produced thus far

[12] Expert Report of Maryellen Sebold dated 12/5/25, p. 7

cost center includes all other Balboa related data that is not part of the LTIP calculation."[13] This is an indication that the LTIP financial statements existed for the *discrete* purpose of determining Plaintiff's eligibility for cash bonus awards, the calculations of which did not necessitate following GAAP.

19. **Misapplication of the Terms of the LTIP Agreement (GAAP Methodology)** – Ms. Sebold relied on the assumption that ***all parts of the LTIP calculation must follow GAAP***, which misstates the LTIP Agreement. Ms. Sebold based her calculations and opinions on this faulty interpretation of the LTIP Agreement. Of the six Key Assumptions previously noted in paragraph 5 of my report, *the only mention of GAAP in the LTIP Agreement pertains to Key Assumption "a." which states that "Initial direct costs will be calculated using GAAP methodology.*" Some of Ms. Sebold's misstatements regarding this issue included in her report are as follows:
    a. *"Based on my review, Byrne's request to include additional revenue is not supported by the facts. The LTIP Agreement clearly states the calculation is based on GAAP."[14]*
    b. *"Consistent with GAAP and the LTIP agreement, the Company recorded depreciation expense for these assets. As such, Byrne's requested adjustments are inconsistent with the LTIP agreement."[15]*
    c. *"Byrne stated that interim rent should be recognized when the cash is received. However, his request does not follow GAAP. The LTIP agreement specifically states the agreement must follow GAAP. As such, I concluded that Byrne's request to adjust interim rent did not comply with the terms of the LTIP agreement."[16]*
    d. *"As the LTIP agreement clearly states the calculation should follow GAAP, I concluded the request should not be included in the LTIP calculation."[17]*

20. **Misapplication of the Terms of the LTIP Agreement (Calculation of Allowance for Loan Losses)** – One of the Key Assumptions in calculating Balboa's annual EBT under the LTIP is the calculation of "the allowance for loan losses calculations and expenses for Balboa" as defined in the LTIP Agreement.[18] Although this calculation is clearly defined in the LTIP Agreement, Ms. Sebold did not follow the calculation and instead relied on Ameris' version of the calculation. Further, Ms. Sebold was inconsistent in her report in that she stated, "The formula correctly calculates the provision for losses on direct financing leases as shown in the Pioneer Model and defined in the agreement as 'The allowance for loan losses calculations and expenses for Balboa will be the greater of (i) actual net charge-offs or (ii) 1.25% of net investment in directing financing leases.'"[19] However, she also stated in her report that her calculation is "*based on the greater of 1.25% of loan growth + actual net charge offs to maintain 1.25% on portfolio* or actual net charge offs" (emphasis added).[20] This is a clear departure from the terms of the LTIP Agreement. To demonstrate the impact of the interpretation of this calculation, I calculated Balboa's allowance for loan losses for the years 2022 and 2023 as follows:
    a. **Calendar year 2022**
        i. **Scenario A** – Following the terms of the LTIP Agreement = $12,699,802
        ii. **Scenario B** – Following Ameris' calculation = $13,512,269
        iii. Difference of $812,467

    b. **Calendar year 2023**
        i. **Scenario A** – Following the terms of the LTIP Agreement = $39,535,276
        ii. **Scenario B** – Following Ameris' calculation = $42,950,464
        iii. Difference of $3,415,188

---

[13] *Id.*

[14] *Id.* at p. 14

[15] *Id.*

[16] *Id.* at p. 18

[17] *Id. at p. 19*

[18] Ameris000221-000234 – LTIP Agreement, p.8

[19] Expert Report of Maryellen Sebold dated 12/5/25, p. 10

[20] *Id. at p. 8*

**Analysis of Balboa's EBT Under the LTIP for the Years 2022 and 2023**

21. Per the Balboa LTIP Workbooks prepared by Ameris for the years 2022 and 2023, I calculated Balboa's reported EBT under the LTIP was $62,706,883 in 2022 and $50,015,526 in 2023 before any potential adjustments (see Exhibits 3 and 4, respectively). My calculations follow the terms of the LTIP Agreement, including the calculation for the provision for loan losses, which are detailed in Exhibit 5.

22. For illustrative purposes, Exhibit 5 also includes Ameris' calculation of the adjusted provision for loan losses for Balboa to demonstrate the difference in our calculations, as noted in the preceding paragraph. In calculating the provision for loan losses for Balboa, I noted that the purported charge-offs significantly increased in the year 2023, jumping from $7,113,922 in 2022 to $41,422,276 in 2023 (a roughly six-fold increase). The LTIP Workbooks also include adjustments to the charge-offs to add back $1,100,000 in 2022 and to decrease charge-offs by $1,887,000 in 2023. However, I have not received documents to support these adjustments. The LTIP Workbooks refer to an "LLR file" which I have not been able to tie out as I have not received the document.[21] At this time, my calculations are based on the information contained in the 2022 and 2023 LTIP Workbooks and I have not been able to check the accuracy of the underlying calculations of the net charge-offs. Therefore, the calculations are only as accurate as the LTIP Workbooks provided to me.

**Analysis of Mr. Byrne's Adjustments to Balboa's EBT Under the LTIP for the Years 2022 and 2023**

23. **Mr. Byrne's Adjustments to the 2022 EBT Under the LTIP** – Per Mr. Byrne's email to Ameris dated January 29, 2024, Plaintiff requested at the least the following adjustments to be made to EBT under the LTIP, which I detail in the subsequent paragraphs. These are the most current and known adjustments to the 2022 EBT calculation based on the documents currently provided, but I am aware that Plaintiff may request further adjustments in the future.
     a. **Mr. Byrne's Requested Adjustments to the 2022 EBT Under the LTIP**:
          i. Overhead departments' compensation = $3,361,733
          ii. Tax benefits to Ameris = $596,295
          iii. Depreciation for pre-acquisition assets = $210,576
          iv. Interest paid on other borrowings = $575,232[22]

24. **Mr. Byrne's Adjustments to the 2023 EBT Under the LTIP** – Per Mr. Byrne's email to Ameris dated January 15, 2024, he requested at the least the following adjustments to be made to EBT under the LTIP, which I discuss in the subsequent paragraphs. These are the most current and known adjustments to the 2023 EBT calculation based on the documents currently provided; however, I understand that Plaintiff may request further adjustments in the future.
     a. **Mr. Byrne's Requested Adjustments to the 2023 EBT Under the LTIP**:
          i. Inconsistent accounting of stipulated judgments = $554,191
          ii. Depreciation for pre-acquisition assets = $145,741
          iii. Overhead departments' compensation = $6,505,966
          iv. Tax benefits to Ameris = $1,398,874
          v. Inconsistent accounting of interim rent = $1,974,174
          vi. Inconsistent accounting of repossessions = $1,457,448

25. **Overhead departments' compensation** – Mr. Byrne argued that an adjustment to EBT should be made in 2022 and 2023 for overhead compensation expenses improperly allocated to Balboa as the employees at issue began reporting to Ameris post-acquisition and not to Balboa. This is evidenced in Ms. Heather Parker's deposition transcript dated November 17, 2025, in which she agreed that the following departments began reporting to Ameris Bank after the acquisition of Balboa: Balboa's credit department, IT department,

---

[21] I understand "LLR file" to mean loan loss reserve file

[22] This adjustment is based on the 2022 LTIP Workbook and was not requested by Mr. Byrne in his email dated 1/29/2024.

marketing, and accounting department.[23] Additionally, Ms. Parker stated that while she was a risk manager, she began reporting to both Mr. Byrne and Mike Helmus at Ameris and that her job responsibilities transitioned over the first quarter after the acquisition of Balboa into her new role in risk management.[24]

26. Overhead departments' compensation at issue includes the following departments: Accounting, Information Services, Marketing, Credit Equipment, and Credit FBL. Mr. Byrne contended that these departments should be classified as indirect costs rather than direct costs. ***Per Key Assumption "c." of the LTIP Agreement, "There will be no allocation of indirect Company expenses to Balboa by the Company […]."*** I reviewed the supporting work schedules provided by Mr. Byrne and tied out the overhead expenses in the workbook to Mr. Byrne's requested adjustment. I agree that apart from the Credit Equipment and Credit FBL departments, these departments represent an indirect cost and therefore should be added back to the computation of EBT under the LTIP. As a result, my calculation of Balboa Capital's Adjusted EBT under the LTIP for 2023 reflects an adjustment for overhead compensation that is roughly $1.3 million lower than Plaintiff's requested total (that is, $6,505,966 requested by Mr. Byrne versus $5,206,634 per my calculation).

27. **Tax benefits to Ameris** – Mr. Byrne claimed that an adjustment to EBT under the LTIP should be made in 2022 and 2023 for tax benefits to Ameris based on a special type of contract for which the IRS grants tax incentives. Ms. Sebold's calculations do not reflect these tax savings. Although the calculation of Balboa's EBT under the LTIP is based on pre-tax earnings, the special type of contracts that give rise to these tax benefits are core to Balboa's operations and therefore should be reflected in the calculation of EBT. I reviewed the supporting work schedules provided by Mr. Byrne and tied out Mr. Byrne's calculation of the uncredited tax benefits Ameris received.

28. **Depreciation for pre-acquisition assets** – Mr. Byrne argued that Ameris erroneously deducted depreciation for pre-acquisition assets that were purchased by Defendant in the calculation of EBT under the LTIP. I reviewed the supporting work schedules provided by Mr. Byrne; however, it is my understanding that the assets in question were being depreciated pre-acquisition. As Ameris was following Balboa's past accounting practices which follows the terms of the LTIP Agreement, I have excluded this adjustment in my calculations of EBT under the LTIP.

29. **Interest paid on other borrowings** – Per the 2022 LTIP Workbook, the calculation of EBT under the LTIP includes a deduction for "interest paid on other borrowings." Per Key Assumption "d." of the LTIP Agreement, "For the performance period of this agreement, Balboa will not be charged for any other cost of capital other than 1% cost of funds on the average outstanding balance on all earnings assets." As the expense "interest on other borrowings" is separate from the 1% cost of funds expense, I have included an adjustment to add back the expense to EBT, pursuant to the terms of the LTIP Agreement.

30. **Inconsistent accounting of stipulated judgments** – Plaintiff argued that Ameris changed the accounting of Balboa's stipulated judgments post-acquisition, which is inconsistent with Balboa's past practices. Per discussions with Mr. Byrne, stipulated judgments occur when a loan has defaulted, and a new agreement has been entered into with the defaulted customer. This issue impacts the calculation for the provision for loan losses in the calculation of EBT under the LTIP. Ameris' accounting change post-acquisition related to this issue results in an increased provision for loan losses, and therefore a reduction to Balboa's calculated EBT under the LTIP. I reviewed the supporting work schedules provided by Mr. Byrne and tied out his calculation of this adjustment. I noted that Ms. Sebold did not agree to this adjustment in her report due to her contention that the request does not follow GAAP; however, she acknowledged that James LaHaise of Ameris Bank responded to Plaintiff via email on February 5, 2024, agreeing with Mr. Byrne's "request to adjust the LTIP EBT by $554,191."[25] As noted previously, the LTIP Agreement's only mention of complying to GAAP is in the calculation

---

[23] Deposition of Heather J. Parker dated 11/17/2025, p. 126

[24] *Id. at pp. 92 & 96*

[25] Expert Report of Maryellen Sebold dated 12/5/25, p. 13

of initial direct costs. Further, the LTIP Agreement states that the "general premise of the LTIP is to materially follow past practice."[26] Therefore, I have included this adjustment in my calculations of EBT under the LTIP.

31. **Inconsistent accounting of interim rent** – Mr. Byrne asserted that Ameris changed the accounting of interim rent post-acquisition, which is inconsistent with Balboa's past practices. Per discussions with Mr. Byrne, Balboa's past practices were to recognize interim rent when cash was received. However, Ameris' accounting method change post-acquisition recognized interim rent as lease income over the lease term. This accounting change lowers revenues and therefore lowers EBT under the LTIP. I reviewed the supporting work schedules provided by Mr. Byrne and tied out Mr. Byrne's calculation of this adjustment. I noted that Ms. Sebold rejected Mr. Byrne's adjustment citing GAAP. As stated previously, however, the LTIP Agreement's only mention of GAAP is limited to the calculation of initial direct costs. Further, the LTIP Agreement states that the "general premise of the LTIP is to materially follow past practices."[27] Therefore, I have included this adjustment in my calculations of EBT under the LTIP.

32. **Inconsistent accounting of repossessions** – Mr. Byrne argued that Ameris changed the accounting specific to Balboa's repossessions in Q1 2023, which is inconsistent with Balboa's past practices. Per discussions with Mr. Byrne, repossessions are loans that have defaulted in which the equipment has subsequently been picked up and sold. This issue impacts the calculation for the provision for loan losses in the calculation of EBT under the LTIP. Ameris' accounting change post-acquisition related to this issue results in an increased provision for loan losses, and therefore a reduction to Balboa's calculated EBT under the LTIP. I reviewed the supporting work schedules provided by Mr. Byrne and tied out Mr. Byrne's calculation of this adjustment. I noted that Ms. Sebold excluded Mr. Byrne's adjustment, again citing GAAP; however, as previously noted, the LTIP Agreement's only mention of GAAP pertains to the calculation of initial direct costs. Further, the LTIP Agreement states that the "general premise of the LTIP is to materially follow past practices."[28] Therefore, I have included this adjustment in my calculations of EBT under the LTIP.

**Analysis of Mr. Byrne's Request from Ameris of Underpaid Acquisition Proceeds**

33. **Mr. Byrne's Request Based on Security Deposits** – Per Mr. Byrne's email to Ameris dated January 27, 2024, Plaintiff requested $2,024,765 for Ameris' underpayment of acquisition proceeds. This issue is separate and apart from the calculation of the LTIP cash bonus awards previously discussed. Per Ms. Sebold's initial report, Ms. Sebold argued that this issue pertains to GAAP guidance. Per review of RSM's audit report of Balboa's 2020 financial statements, Balboa was GAAP complaint immediately prior to Ameris' acquisition of Balboa.[29]

34. Per discussions with Mr. Byrne, it was Balboa's policy pre-acquisition to "take all security deposits into income 120 days after the termination of a contract." As the security deposits at issue were terminated before Balboa's acquisition, it is incorrect to subsequently alter the accounting methods put in place by Balboa. I reviewed and tied out Mr. Byrne's requested adjustment to the supporting work schedules provided related to this issue. Per the terms of the Stock Purchase Agreement, the "Final Base Purchase Price" was "equal to (a) (3.1 multiplied by the Final Shareholders' Equity Position) (b) minus the aggregate amount of the Final Company Transaction Expenses." As this issue would have resulted in additional $653,150 in income to Balboa at the date of acquisition, the total underpaid acquisition proceeds equal $2,024,765 ($653,150 x 3.1).

## VI. Assumptions

35. I identified any additional assumptions throughout my report, and I assumed that all the records furnished to me are complete and accurate.

---

[26] Ameris000221-000234 – LTIP Agreement, p.8
[27] Ameris000221-000234 – LTIP Agreement, p.8
[28] Ameris000221-000234 – LTIP Agreement, p.8
[29] Plaintiff 278-301 – RSM Audit Report of Balboa Capital Corporation and Subsidiaries for 12/31/2020

## VII. Conclusions

### Ms. Sebold's 2022 and 2023 EBT Calculations Based on Incorrect Interpretation of the LTIP Agreement

36. After reviewing Ms. Sebold's report dated December 5, 2025, including the analysis of Balboa's LTIP cash bonuses for the years at issue, I found that the report misapplied the terms of the LTIP Agreement, resulting in incorrect calculations of Balboa's LTIP cash bonuses for calendar years 2022 and 2023, as well as an inappropriate dismissal of Mr. Byrne's request for adjustments to Balboa's EBT calculations under the LTIP.

### LTIP Cash Bonuses Owed for Calendar Years 2022 and 2023

37. Based on my analysis, I computed that Plaintiff is due an additional $1,486,005 in cash bonus awards for calendar year 2022.

38. Based on my analysis I calculated that Plaintiff is due $4,237,396 in cash bonus awards for calendar year 2023.

### Underpaid Acquisition Proceeds

39. Separate from the LTIP cash bonus analyses, I computed that Mr. Byrne is due $2,024,765 related to security deposits terminated pre-acquisition.



# Deborah Dickson, CPA, CFE, CFF, MAFF

Deborah Dickson is an experienced CPA and expert witness, with over 30 years in the accounting profession, including more than 15 years in litigation support services and expert testimony as a forensic accountant.

---

**EXPERIENCE**   **Smith Dickson, Certified Public Accountants, LLP**                      *Irvine, CA*

*Managing Partner*                                                                      *1982 - Present*

- Provides forensic accounting, litigation support services and expert witness testimony with an emphasis on business disputes including fraud and embezzlement, intellectual property, real estate, trust and estate, employment, and personal injury
- Works as a forensic expert witness in Federal, State, Probate, and Family Law Courts; in arbitrations; and as a court appointed referee - providing asset and fraudulent expense tracing; economic damage analysis; lost profits and unjust enrichment calculations; forensic accounting; business valuations; financial/tax records analysis; and expert testimony
- Personally handles the tax and accounting matters for high-end business clients and owners – advising on strategic business planning, tax planning and compliance, bank financing negotiations, and financial statement presentation
- Frequently involved with due diligence and structuring of business buy/sell deals
- Is a popular speaker on subjects such as tax planning and buying/selling businesses

**PricewaterhouseCoopers, LLP (formerly Coopers & Lybrand)**            *Newport Beach, CA*

*Director of Entrepreneurial Services*                                                  *1979 - 1982*

- Provided consulting services for mid-sized companies
- Developed systems and internal controls
- Supervised audits of financial statements as well as business tax returns
- Prepared proposals and presentations to company officers

**Deloitte, LLP (formerly Touche Ross)**                                     *Newport Beach, CA*

*Senior Auditor*                                                                        *1977 - 1979*

- Audited large, public entities and smaller, closely held organizations

**Union Bank**

*Management Track and Internal Auditor*                                                      *1977*

- Conducted surprise bank audits on offices in San Francisco, Orange, Fullerton, Newport Beach and Los Angeles



| | | |
|---|---|---|
| **EDUCATION** | **Golden Gate University** | *San Francisco, CA* |
| | *Master's Program in Taxation courses* | *1990 – 1991* |

**California State University, Fullerton** — *Fullerton, CA*
*Graduate Accounting Program courses* — *1979 -1982*

**Brigham Young University** — *Provo, UT*
*Bachelor of Science Degree in Finance/Marketing* — *1973 – 1977*

*Certifications:*

- *CFE credential (Certified Fraud Examiner)* issued by the Association of Certified Fraud Examiners (ACFE). The CFE credential denotes proven expertise in fraud prevention, detection, and deterrence. CFEs are trained to identify the warning signs and red flags that indicate evidence of fraud and fraud risk. CFEs combine knowledge of complex financial transactions with an understanding of methods, law, and how to resolve allegations of fraud.
- *CFF credential (Certified in Financial Forensics)* issued by the American Institute of Certified Public Accountants (AICPA). The CFF credential is granted exclusively to CPAs who demonstrate considerable expertise in forensic accounting through their knowledge, skills, and experience.
- *MAFF credential (Master Analyst in Financial Forensics)* issued by the National Association of Certified Valuators and Analysts (NACVA). The MAFF credential is designed to provide assurance to the legal community—the primary users of litigation consulting services— that the designee possesses a level of experience and knowledge deemed acceptable by the Institute to provide competent and professional financial forensic support services.

## ACHIEVEMENTS AND ACTIVITIES

*Courts where expert testimony has been given:*

- U.S. District Court – Orange and Los Angeles Counties
- Superior Court – San Diego, San Bernardino, Riverside, Orange, Los Angeles, and Salt Lake Counties
- Probate Court – Los Angeles County
- Family Law Court – Orange and Riverside Counties
- Private, binding, and voluntary arbitration – multiple Counties and States

*Professional Affiliations*

- Forensic Expert Witness Association, *State of California Past President*
- Orange County Management Association, *Past President*
- J. Reuben Clark Law Society, Board Member, *Chief Financial Advisor*
- Association of Certified Fraud Examiners (ACFE), Member
- CSCPA Litigation Services Committee, Member – Sections: Economic Damages, Fraud
- Orange County Bar Association, Tax and Litigation Divisions, Associate Member
- Orange County CPA Litigation Services Committee, Member
- American Institute of Certified Public Accountants, Member
- California Society of Certified Public Accountants, Member
- Marriott School of Management, Senior Alumni Board Member
- Women Presidents' Organization, Member

- Business Valuation Certificate -   AICPA
- Segerstrom Center for the Arts, Business Leadership Council  Member
- ProVisors,  Member
- National Association of Certified Valuation Analysts (NACVA), Member
- United Way, Tocqueville Society,  Member
- Arts Orange County, Past Treasurer

### *Honors and Awards*
- 2016 Lifetime Achievement Award presented by National Association of Women Business Owners
- IRS Southern California Advisory Committee: One of nine CPA and law firms in Southern California selected to advise IRS Laguna Niguel Service Center on policies affecting Southern California business and individual taxpayers
- University of California, Irvine – Nominated the Amelia Earhart Corporate Award Winner.
- Orange County Business Journal "Style File" (2019)
- Segerstrom Concert Hall – two solo organ performance shows

### *Speaking Engagements*

Ms. Dickson is a frequent speaker and workshop leader on topics of a financial and tax nature. Some of her presentations include:

- AICPA National Accounting Conference: Ms. Dickson was recognized as one of the leading CPAs in the profession and was invited to give a two-hour presentation, following the AICPA vice chairman.
- Ms. Dickson speaks annually to CEO University on tax planning strategies.
- Ms. Dickson provides annual presentations on tax law updates to the Women President's Organization, banks, and other professional groups.

### *Media*
Articles
- Orange County Business Journal: "Special Report on Accounting Firms." Ms. Dickson was quoted in this special OCBJ Q&A with top leaders of the county's accounting firms.
- Marriott School of Management Exchange Magazine. Ms. Dickson's career and accomplishments were highlighted in a full-page picture and article.
- OC Business Journal: "How the Pandemic Has Impacted OC Businesses." Ms. Dickson's expert opinion was quoted in this article alongside data offered by the region's top analysts.
- Orange County Metro Magazine: "Money Detectives – On the Case with OC's Forensic Accountants." Ms. Dickson's forensic CPA activities, quotes, and picture were the subject of a two-page article.
- See smithdickson.com for articles written by Ms. Dickson

Radio
- Ms. Dickson was interviewed live on the June 6, 2013 "Critical Mass for Business" radio show. She discussed the impact of the tax code changes on closely held businesses, as well as some mitigating positive effects of changes in depreciation and other areas in the new tax code. (www.octalkradio.net).
- Ms. Dickson gave a January 8, 2013 live interview on UC Irvine's radio station, www.kuci.org, distilling the effects of the American Tax Payer Relief Act of 2012 on individuals and their businesses. (http://www.kuci.org/talk/).



**Deborah Dickson, CPA, CFE, CFF, MAFF**
**Schedule of Testimony – Last Four Years**

| Date | Name | Case No. | Jurisdiction |
|---|---|---|---|
| 10/20/25 | Saskia Boisot, Petitioner v. Keran Kumar, Respondent | 21FL010417N Trial Testimony | Superior Court of California San Diego County |
| 09/30/25 | Saskia Boisot, Petitioner v. Keran Kumar, Respondent | 21FL010417N Deposition Testimony | Superior Court of California San Diego County |
| 09/09/25 | Saskia Boisot, Petitioner v. Keran Kumar, Respondent | 21FL010417N Deposition Testimony | Superior Court of California San Diego County |
| 10/02/24 | Creative Realty Partners, Inc., a California corporation, Claimant, v. Michaelson Real Estate Group, LLC, a Florida limited liability company, and Does 1 through 25, inclusive, Respondents | JAMS Ref. No. 1220068055 Arbitration Testimony | Los Angeles County, Duval County, Florida |
| 08/15/24 | Creative Realty Partners, Inc., a California corporation, Claimant, v. Michaelson Real Estate Group, LLC, a Florida limited liability company, and Does 1 through 25, inclusive, Respondents | JAMS Ref. No. 1220068055 Deposition Testimony | Los Angeles County, Duval County, Florida |
| 03/22/24 | Primevere LLC, a California limited liability company; Ahura LLC, a California limited liability company; and Zibasara LLC, a California limited liability company v. Rezidential Development, Inc., a California corporation; Reza Dadashi, an individual; and DOES 1-50, inclusive, And related Action and Cross-Action | 30-2021-01203514 Related Action: 30-2021-01233257 Deposition Testimony | Superior Court of California Orange County Central Justice Center |
| 12/19/23 | Willis Hammell, an individual, and as beneficiary; Nelson L. Hammell, Jr., an individual, and as beneficiary; Jon Anderson, an individual, and as beneficiary v. Janet Basilio, individually, and as Trustee of the Anderson Survivors Trust, dated January 28, 1985; and DOES 1-10 | PRIN2101586 Trial Testimony | Superior Court of California Riverside County, Palm Springs |



## Deborah Dickson, CPA, CFE, CFF, MAFF
## Schedule of Testimony – Last Four Years

| Date | Name | Case No. | Jurisdiction |
|---|---|---|---|
| 11/08/23 | M.A Silva Corks USA, LLC And Neil Foster v. M.A. Silva Corticas, S.A.; M.A. Silva Holdings, Inc.; Manuel Alves DA Silva, Sr.; Jose´ Duarte Tavares DA Silva; Cork Partners International Ltd.; Iberian Cork International Ltd. | 3:22-cv-4345-HSG Deposition Testimony | United State District Court Northern District of California San Francisco Division |
| 9/05/23 | Suzanne Yorgason, an individual v. Ken Allen Lamphear, an individual | 22LBCV00356 Trial Testimony | Superior Court of California Los Angeles County |
| 10/26/22 | Abousari v. GZ&S, Inc. | 30-2018-00996531-CU-BC-CJC Arbitration Testimony | Superior Court of California Orange County |
| 09/20/22 | D&D Greek v. Great Greek Franchising | 2:20-CV-09770-MWF-SK Trial Testimony | United States District Court Central District of California Los Angeles County |
| 08/09/22 | The Barsam Trust, Dated February 4, 1987, As Amended and Restated on April 7, 1999 | 30-2018-01037231-PR-TR-CJC Deposition Testimony | Superior Court of California Orange County Probate Division |
| 03/23/22 | D&D Greek v. Great Greek Franchising | 2:20-CV-09770-MWF-SK Deposition Testimony | United States District Court Central District of California Los Angeles County |
| 07/13/21 | Hill Phoenix, Inc. v. Classic Refrigeration SoCal, Inc. et al. | 8:19-cv-00695-DOC (JDEx) Trial Testimony | United States District Court Central District of California Orange County |
| 04/30/21 04/29/21 04/28/21 | Chik Pui Wong, an individual v. Yim Pooi Wong, individually and as trustee of Yim Pooi Wong Revocable Trust Dated 8/1/1998 amended 10/31/14, et al., Defendants | BC655122 Trial Testimony | Superior Court of California Los Angeles County Central District |
| 03/19/21 | Chik Pui Wong, an individual v. Yim Pooi Wong, individually and as trustee of Yim Pooi Wong Revocable Trust Dated 8/1/1998 amended 10/31/14, et al., Defendants | BC655122 Deposition Testimony | Superior Court of California Los Angeles County Central District |
| 02/23/21 02/22/21 | Polaris Blue Holdings, LLC v. Mark Friedman | BC587482 Trial Testimony | Superior Court of California Central District of California Los Angeles County |



## Deborah Dickson, CPA, CFE, CFF, MAFF
## Schedule of Testimony – Last Four Years

| Date | Name | Case No. | Jurisdiction |
|---|---|---|---|
| 05/15/20 | Hill Phoenix, Inc v. Classic Refrigeration SoCal, Inc et al. | 8:19-cv-00695-DOC (JDEx) Deposition Testimony | United States District Court Central District of California Orange County |
| 10/21/19 | UL LLC v. ManSeeManWant | 2:17-cv-08166 Deposition Testimony | United States District Court Central District of California Los Angeles County |
| 08/06/19 | David Starr and Thomas Hunt v. Jeffrey C. Mayhew | 011800024636 Arbitration Testimony | American Arbitration Assoc. Los Angeles Regional |
| 07/25/19 | Maria Hernandez v. The Chugh Firm | BC608106 Deposition Testimony | Superior Court of California County of Los Angeles Central District |
| 07/01/19 | David Starr and Thomas Hunt v. Jeffrey C. Mayhew | 011800024636 Deposition Testimony | American Arbitration Assoc. Los Angeles Regional |
| 04/19/19 | AKM Consulting Engineers, Inc., v. City of Huntington Beach | 30-2017-00902740 Deposition Testimony | Superior Court of California Orange County |
| 03/22/19 | Andrew Brown v. Waterworks Aquatics | 30-2017-00934038-CU-MC-CJC Deposition Testimony | Superior Court of California Orange County |

**Patrick Byrne & Ameris Bank**

Exhibit 2

| Documents and Information Considered | |
|---|---|
| **Bates** | **Description** |
| None | Complaint dated 2024.09.16 |
| Ameris 221-234 | Final LTIP Agreement |
| Plaintiff 1147 | Excel spreadsheet of Exhibit A to LTIP Agreement (Operating Model) |
| Ameris 238-259 | Byrne Employment Agreement |
| Ameris 2164 | 2022 Balboa LTIP Workbook and various Balboa financials |
| Ameris 2124 | 2023 Balboa LTIP Workbook and various Balboa financials |
| Plaintiff 278-301 | Balboa Consolidated Financial Report (2020 Audited Financials) |
| Plaintiff 102-243 | Project Pioneer - Stock Purchase Agreement (Executed) |
| Ameris 1202-1206 | Email Approved 2022 LTIP Payouts |
| Ameris 1125-1126 | Email from Mr. Byrne to Ameris re Summary of Compensation Owed |
| Ameris 2245 | Email from Mr. Byrne to Ameris regarding 2022 LTIP Adjustments |
| Ameris 785-794 | Email from Mr. Byrne to Ameris regarding 2023 LTIP Adjustments |
| None | Expert Report of Ms. Sebold dated 12/5/2025 |
| None | Deposition transcript of Heather Parker dated 11/17/2025 |
| Plaintiff 908-971 | Project Pioneer - Financial Summary of Balboa |
| Ameris 0790 | Spreadsheet of various employees compensation for years 2022-2023 |
| Ameris 791 | SuperTrump spreadsheet |
| Ameris 789 | Ameris Bank Depreciation Report as of 2023.12.31 |
| Ameris 2148 | Ameris Bank Depreciation Report as of 2023.06.30 |
| Ameris 792 | Interim Rent spreadsheet |
| Ameris 793 | Charge offs Processed via Closed Orders spreadsheet |
| Ameris 2249-2254 | Email Fw Security Deposits dated 2024.01.27 |
| Ameris 1132-1133 | Various spreadsheets related to Security Deposits |
| Ameris 1810-1814 | Email December 2023 LTIP 2024.01.30 |
| Ameris 0788 | Stipulated Judgment adjustment spreadsheet |

Ex. 2 Docs & Info. Considered

Patrick Byrne v. Ameris Bank

Exhibit 3

## CALCULATION OF TOTAL INCENTIVE POOL CASH BONUS AWARD FOR 2022

**1. Balboa Capital Earnings Before Taxes ("EBT")**

| | | | |
|---|---|---|---|
| **Total Revenues** | | $ | **111,049,186** |
| Less: Interest Expense (Funds Transfer Pricing) | | | (7,846,075) |
| Less: Interest Paid on Other Borrowings | | | (575,232) |
| Less: Adjusted Provision for Loan Losses | | | (12,699,802) |
| Greater of the Following: | | | |
| 1) Actual Net Charge-offs | $ | 8,213,922 | |
| 2) 1.25% of Net Investment in Direct Financing Leases | | 12,699,802 | |
| Less: Total SG&A Expenses | | | (27,221,194) |
| **EBT** | | | **62,706,883** |

**2. Adjustments to EBT**

| | | | |
|---|---|---|---|
| Add: Overhead Departments' Compensation | | | 3,361,733 |
| Accounting | | 712,867 | |
| Information Services | | 2,347,152 | |
| Marketing | $ | 301,714 | |
| Add: Tax Benefits to Ameris | | | 596,295 |
| Add: Interest Paid on Other Borrowings | | | 575,232 |
| **Adjusted EBT** | | | **67,240,143** |

**3. Threshold for Award**

| | | | |
|---|---|---|---|
| Less: Threshold for Award | | | (37,000,000) |
| **Adjusted EBT Above/(Below) Threshold** | | | **30,240,143** |
| x Performance Formula % | | | 35% |
| **Total Incentive Pool Cash Bonus Award** | | $ | **10,584,050** |
| Less: Total Incentive Pool Calculated by Ameris Bank | | | (9,098,045) |
| **Total Underpaid Incentive Pool Cash Bonus Award** | | $ | **1,486,005** |

Ex. 3 2022 LTIP Bonus Calc

**Patrick Byrne v. Ameris Bank**                                                                                           Exhibit 4

| CALCULATION OF TOTAL INCENTIVE POOL CASH BONUS AWARD FOR 2023 | | | |
|---|---|---|---|

**1. Balboa Capital Earnings Before Taxes ("EBT")**

| | | | |
|---|---|---|---|
| **Total Revenues** | | $ | **134,298,750** |
| Less: Interest Expense (Funds Transfer Pricing) | | | (10,902,273) |
| Less: Interest Paid on Other Borrowings | | | - |
| Less: Adjusted Provision for Loan Losses | | | (39,535,276) |
| Greater of the Following: | | | |
| 1) Actual Net Charge-offs | $ | 39,535,276 | |
| 2) 1.25% of Net Investment in Direct Financing Leases | | 16,529,857 | |
| Less: Total SG&A Expenses | | | (33,845,675) |
| **EBT** | | | **50,015,526** |

**2. Adjustments to EBT**

| | | | |
|---|---|---|---|
| Add: Inconsistent Accounting of Stipulated Judgments | | | 554,191 |
| Add: Overhead Departments' Compensation | | | 5,206,634 |
| Accounting | | 1,030,773 | |
| Information Services | | 3,744,833 | |
| Marketing | $ | 431,028 | |
| Add: Tax Benefits to Ameris | | | 1,398,874 |
| Add: Inconsistent Accounting of Interim Rent | | | 1,974,174 |
| Add: Inconsistent Accounting of Repossessions | | | 1,457,448 |
| **Adjusted EBT** | | | **60,606,847** |

**3. Threshold for Award**

| | | | |
|---|---|---|---|
| Less: Threshold for Award | | | (48,500,000) |
| **Adjusted EBT Above/(Below) Threshold** | | | **12,106,847** |
| | | | |
| x Performance Formula % | | | 35% |
| **Total Incentive Pool Cash Bonus Award** | | $ | **4,237,396** |
| | | | |
| Less: Total Incentive Pool Calculated by Ameris Bank | | | - |
| | | | |
| **Total Underpaid Incentive Pool Cash Bonus Award** | | $ | **4,237,396** |

Ex. 4 2023 LTIP Bonus Calc

Exhibit 5

| CALCULATION OF ADJUSTED PROVISION FOR LOAN LOSSES PER LTIP FOR BALBOA CAPITAL | | |
|---|---|---|
| | 12/31/22 | 12/31/23 |
| **Calculation 1 - Actual Net Charge-Offs** | | |
| Charge-offs per LTIP Calculation Excels | $ 7,113,922 | $ 41,422,276 |
| + Total Charge-off Adjustments, Tax Adjusted | 1,100,000 | (1,887,000) |
| **Actual Net Charge-offs** | **$ 8,213,922** | **$ 39,535,276** |
| | | |
| **Calculation 2 - 1.25% of Net Investment in Direct Financing Leases** | | |
| Net Investment in Direct Financing Leases | $ 1,015,984,138 | $ 1,322,388,565 |
| x 1.25% | 1.25% | 1.25% |
| **1.25% of Net Investment in Direct Financing Leases** | **$ 12,699,802** | **$ 16,529,857** |
| | | |
| **Calculation 3 - Ameris' Calculation** | | |
| Year-to-date Loan Growth (Loans Held for Investment) | $ 334,353,098 | $ 273,215,007 |
| x 1.25% | 1.25% | 1.25% |
| 1.25% of Loan Growth | 4,179,414 | 3,415,188 |
| + Allowance for loan losses | 8,232,855 | 41,422,276 |
| Subtotal | 12,412,269 | 44,837,464 |
| + Total Charge-off Adjustments, Tax Adjusted | 1,100,000 | (1,887,000) |
| **1.25% of Loan Growth + Actual Net Charge-offs to Maintain 1.25% on Portfolio** | **$ 13,512,269** | **$ 42,950,464** |

Ex. 5 Provision for Loan Losses