Stacy L. Fode, Esq. (SBN 199883)
sfode@nfclegal.com
Nana J. Yee, Esq. (SBN 272783)
nyee@nfclegal.com
**NUKK-FREEMAN & CERRA, P.C.**
550 West C Street, Suite 910
San Diego, California 92101
Telephone: 619.292.0515
Facsimile: 619.566.4741

Attorneys for Defendant
AMERIS BANK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an individual, | Case No. 8:24-cv-01989-MWC (JDEx) |
| Plaintiff, | **DEFENDANT AMERIS BANK'S MOTION *IN LIMINE* NO. 5 TO PRECLUDE PLAINTIFF FROM CALLING OR ELICITING IRRELEVANT TESTIMONY AT TRIAL FROM APEX EXECUTIVES** |
| vs. | |
| AMERIS BANK, a Georgia corporation, | |
| Defendant. | |

Judge: Hon. Michelle Williams Court
Date: May 22, 2026
Time: 1:30 p.m.
Place: Courtroom 6A

Discovery Cut-Off: November 28, 2025
Pretrial Conference: May 22, 2026
Trial Date: June 1, 2026

---

*Patrick Byrne v. Ameris Bank*                                    Case No. 8:24-01989
Defendant Ameris Bank's Motion *In Limine* No. 5 To Preclude Plaintiff from Calling or Eliciting Irrelevant Testimony at Trial from Apex Executives

## I.  PRELIMINARY STATEMENT

Defendant Ameris Bank ("Ameris") respectfully moves *in limine* to preclude Plaintiff Patrick Byrne ("Byrne") from calling or eliciting irrelevant testimony at trial from Ameris's high-level "Apex" executives who have no personal knowledge of the underlying issues in this case and whose testimony would serve no purpose other than harassment and abuse of the judicial process.

Byrne's trial witness list includes nine (9) high-level irrelevant "Apex" executives, specifically: **H. Palmer Proctor**, Ameris CEO; **Jody Spencer**, Ameris Corporate Executive Vice-President and Chief Legal Officer; **Doug Strange**, Ameris Corporate Executive Vice-President and Chief Credit Officer; **Jon Edwards**, Ameris's prior Corporate Executive Vice-President and Chief Credit Officer; **Michael Pierson**, Ameris Corporate Executive Vice-President and Chief Governance officer; and the following members of Ameris' Board of Directors: **Leo J. Hill**, **William Stern, Rodney Bullard, and Daniel Jeter** (collectively, "Apex Executives").

Ameris's Motion *in Limine* should be granted as Byrne fails to meet the heighted standard for compelling executive testimony, based on the following: (1) the Apex Executives are high-level corporate officers who lack any personal, non-repetitive knowledge of the facts at issue in this case, and courts have consistently cautioned against the abuse and harassment inherent in targeting these highest-ranking executives for testimony. Notably, the Court already prohibited Byrne from deposing Hill and strictly limited Proctor's deposition (who testified that he had no relevant knowledge). Byrne never sought to depose the remaining executives, none of whom have relevant testimony; (2) Byrne has already conducted six depositions of Ameris's employees, including knowledgeable high-level executives, and Ameris has already identified four other executives who are prepared to testify at trial; (3) Spencer—Ameris's Chief Legal Officer—should not be called at trial because Byrne has not demonstrated the propriety and need for in-house counsel's testimony and never sought his deposition during discovery; (4) any trial testimony from Apex Executives should be excluded under

*Patrick Byrne v. Ameris Bank*                                              Case No. 8:24-01989
Defendant Ameris Bank's Motion *In Limine* No. 5 To Preclude Plaintiff from Calling or
Eliciting Irrelevant Testimony at Trial from Apex Executives                         Page 1

Federal Rule of Evidence 403 as prejudicial, cumulative, and causing undue delay; and (5) none of the Apex Executives can be compelled to appear at trial in any event, as they are non-California residents who reside and work outside of California.[1]

For these reasons, Ameris respectfully requests that the Court grant this Motion and preclude Byrne from calling the Apex Executives or eliciting their testimony at trial.

## II. PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

During discovery, Byrne conducted six depositions—for approximately 33 hours total—of Ameris executives and employees who were involved in Byrne's employment and/or compensation, including James LaHaise (Ameris's Chief Strategy Officer), Byrne's direct supervisor who was deposed twice—once in his personal capacity and once as Ameris's Fed. R. Civ. P. 30(b)(6) representative; Nicole Stokes (Ameris's CFO); Phil Silva (President of the Balboa Division[2]); Sufhan Majid (Ameris's Director of Accounting); and Heather Parker (Senior Vice President of Loan Relations of the Balboa Division). (Declaration of Stacy L. Fode ("Fode Decl.") ¶ 4.)

LaHaise's deposition testimony concerned a broad range of subjects, including, but not limited to, Ameris's acquisition of Balboa Capital; the Long-Term Incentive Plan ("LTIP"); Ameris's calculation of Balboa Division's earnings for purposes of the LTIP; Byrne's employment at Ameris, including his performance issues, compensation and termination; Byrne's alleged complaints and challenges to Ameris's LTIP calculations; and his working relationships with Ameris's senior management and other colleagues. (Dkt. Nos. 93-4, 93-8, 93-11) (Fode Decl. ¶ 5, Ex. A.) Notably, LaHaise testified that, as

---

[1] Ameris reserves the right to move to quash any trial subpoenas that exceed Rule 45(c)'s geographical limits. *See* Fed. R. Civ. P. 45(d)(3)(A)(ii); Fed. R. Civ. P. 45(c)(1) (subpoena may require trial attendance within 100 miles of where a person resides, is employed, or regularly transact business in person or "within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense").

[2] At the time of its 2021 sale to Ameris, Balboa Capital Corporation ("Balboa" or "Balboa Capital") was wholly owned by Byrne. After the acquisition, Balboa became an Ameris division ("the Balboa Division"), later renamed Ameris Bank Equipment Finance.

---

*Patrick Byrne v. Ameris Bank*                                   Case No. 8:24-01989
Defendant Ameris Bank's Motion *In Limine* No. 5 To Preclude Plaintiff from Calling or
Eliciting Irrelevant Testimony at Trial from Apex Executives                   Page 2

Byrne's direct supervisor and Ameris's CSO, he was the ultimate decision-maker as to the individual allocation of the LTIP Awards and Byrne's termination. (Fode Decl. ¶ 6). Silva (whose deposition lasted 10 hours) testified that he had worked with and reported to Byrne for 17 years, including before the acquisition, and that his friendship and partnership with Byrne changed over time. (Dkt. No. 93-52). (Fode Decl. at ¶ 7). Stokes' deposition testimony addressed her working relationship with Byrne, compliance with U.S. generally accepted accounting principles ("GAAP") and the accounting standards, Byrne's repeated challenges to Ameris's LTIP calculations and her review and responses to the same, and Ameris's established calculation methodology, including treatment of various accounting items. (Dkt. No. 93-5, 93-13) (Fode Decl. at ¶ 8). Majid, who was responsible for preparing the LTIP calculations, testified to his involvement with pulling data from the general ledger via reporting software and his correspondence with Byrne regarding LTIP calculations. (Fode Decl. at ¶ 9) Parker's deposition testimony included her working relationship with Byrne and Byrne's non-compliance with Ameris's internal accounting processes, among other topics. (*Id.* at ¶ 10.)

On October 29, 2025, Byrne unilaterally noticed the depositions of Proctor and Hill. (Fode Decl. ¶ 11, Ex. B, C.) Ameris filed an *Ex Parte* Application for Issuance of a Protective Order to preclude Byrne from deposing Proctor and Hill. (Dkt. 78). Magistrate Judge John D. Early agreed with Ameris and found that Hill lacks first-hand, non-repetitive knowledge of the pertinent facts but allowed a limited 45-minute deposition of Proctor on two narrowly defined topics: (1) Plaintiff's termination; and (2) Plaintiff's compensation under the LTIP. (Dkt. 81.) Proctor's deposition testimony confirmed his lack of personal knowledge regarding these categories. Indeed, Proctor testified that LaHaise made the decision to terminate Byrne **without** any input from Proctor and that LaHaise did not need Proctor's permission to terminate Byrne. (Fode Decl. ¶ 15.)[3]

---

[3] The Deposition Transcript of H. Palmer Proctor is confidential under the Protective Order (Dkt. No. 29). Ameris will provide relevant excerpts to the Court for in camera review at the Final Pretrial Conference or at such other time as the Court may direct.

*Patrick Byrne v. Ameris Bank*                                      Case No. 8:24-01989
Defendant Ameris Bank's Motion *In Limine* No. 5 To Preclude Plaintiff from Calling or Eliciting Irrelevant Testimony at Trial from Apex Executives                    Page 3

Proctor further testified (1) he has no recollection of seeing the LTIP agreement while Byrne was employed by Ameris, (2) any LTIP payouts would have been calculated by the Ameris accounting team and approved by LaHaise (not Proctor), and (3) he has no recollection of Byrne making LTIP-related complaints. (*Id.* at ¶ 16.)

Other than Proctor, Hill, LaHaise, Stokes, Silva, Majid, and Parker, Byrne never sought depositions of or directed written discovery to any of the other high-level Ameris executives whose trial attendance he now seeks to compel. (Fode Decl. ¶ 17.)

On April 10, 2026, the parties met and conferred regarding this issue and were unable to reach a compromise. Fode Decl. ¶ 18. Later that day, Byrne served a trial witness list naming the nine Apex Executives at issue, along with 31 other individuals.[4] (Fode Decl. ¶ 19, Ex. D.) In contrast, Ameris's witness list[5] contains only 13 individuals, four of whom are high-level executives including LaHaise, Stokes, Ross Creasy (Chief Information Officer), and Bill McKendry (Chief Risk Officer). Fode Decl. ¶ 20.

## III.   LEGAL STANDARD

Courts recognize the potential for abuse when parties seek testimony from an organization's "apex" high-level executives. *See, e.g., Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) (noting "that such discovery creates a tremendous potential for abuse or harassment"); *Lisa Vargas v. Cnty. of Los Angeles*, 2020 WL 10052399, at *1 (C.D. Cal. June 4, 2020) (same); *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2006 WL 2578277 (N.D. Cal. 2006) (high-level corporate officers can be protected from depositions when the officer has no first-hand knowledge of the facts or testimony would be repetitive). The so-called "apex doctrine" recognizes that high-level executives "may be removed from the daily subjects of the

---

[4] Byrne has listed 41 witnesses for a three-day trial, which is grossly disproportionate to the needs of this case and likely to result in cumulative testimony. This motion addresses only the Apex Executives. Ameris reserves all objections to other witnesses, including but not limited to, relevance, cumulation, undue consumption of time, and geographical limitations under Fed. R. Civ. P. 45.

[5] See Ameris's trial witness list filed concurrently herewith.

---

*Patrick Byrne v. Ameris Bank*                                    Case No. 8:24-01989
Defendant Ameris Bank's Motion *In Limine* No. 5 To Preclude Plaintiff from Calling or Eliciting Irrelevant Testimony at Trial from Apex Executives                    Page 4

litigation" and "would spend an inordinate amount of time tending to pending litigation, if limitations were not placed on plaintiffs' ability to take their deposition." *Est. of Kamren Nettles v. LA. Cnty. Sheriff's Dep't*, 2025 WL 4055991, at *1 (C.D. Cal. Dec. 12, 2025) (internal quotations omitted). Accordingly, "[i]n determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive methods." *Apple, Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). If the party seeking the testimony cannot demonstrate these factors, that party bears "a heavy burden" of persuasion and typically must establish "extraordinary circumstances" to show an apex deposition should be permitted. *Houseton v. Cnty. Of Los Angeles*, 2024 WL 4797225, at *1 (C.D. Cal. Mar. 20, 2024).

Although typically applied to depositions, the apex doctrine may also "protect a senior executive from being compelled to appear at trial." *See Pinn, Inc. v. Apple, Inc.*, 2021 WL 4775969, at *3-4 (C.D. Cal. Sept. 10, 2021) (citing *Reddy v. Nuance Commc'ns, Inc.*, 2015 WL 4648008, at *4 (N.D. Cal. Aug. 5, 2015)). Further, Federal Rule of Evidence 403 allows the exclusion of relevant evidence whose probative value is substantially outweighed by the risks of unfair prejudice, confusion, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

## IV.  LAW & ARGUMENT

### A.  The Apex Executives, Who Lack First-Hand, Non-Repetitive Knowledge of the Facts at Issue, Should Not be Required to Testify at Trial.

Byrne cannot show that any of the Apex Executives have first-hand, non-repetitive knowledge of the relevant facts or that less intrusive methods have been exhausted:[6]

**Leo Hill** (**Board Member**): This Court expressly overruled Byrne's request to depose Hill, finding that Hill "does not . . . ha[ve] first-hand, non-repetitive knowledge of facts at issue". (Dkt. 81, p. 5.) Likewise, Hill should not be compelled to testify at trial.

---

[6] For example, Byrne could have served written discovery requests to the Apex Executives or sought their depositions during discovery, yet he chose not to do so.

**Palmer Proctor (Chief Executive Officer)**: Although the Court permitted a limited deposition of Proctor on two subjects—the LTIP awards and the termination decision—Proctor testified under oath that he had no role in deciding the LTIP Awards or in the decision to terminate Byrne, and he lacks any unique personal knowledge regarding the calculation and approval of Byrne's LTIP Awards or any complaints Byrne made about them. Proctor should therefore not be compelled to testify at trial.

**Doug Strange** (Chief Credit Officer); **Jon Edwards** (prior Chief Credit Officer); **Michael Pierson** (Chief Governance Officer); **William Stern** (Board Member); **Rodney Bullard** (Board Member); **Daniel Jeter** (Board Member); and **Jody Spencer** (Chief Legal Officer – also addressed below): The remaining Apex Executives who were not deposed in this case similarly lack first-hand, non-repetitive knowledge of facts at issue. Byrne has proffered no evidence during discovery or in his trial witness disclosure that these witnesses' expected testimony would be relevant or necessary to the claims at issue. Despite ample opportunity, Byrne never sought discovery from any of these executives. Compelling these un-deposed witnesses to testify at trial would cause substantial prejudice to Ameris, which had no opportunity to preview or prepare for their testimony, and would amount to trial by ambush, undermining the fundamental purpose of discovery and circumventing the Court's discovery schedule. *See Pinn*, 2021 WL 4775969, at *3.

Accordingly, Ameris respectfully requests that the Court preclude these witnesses from testifying at trial in the interest of fairness and the orderly administration of justice. The Apex Executives should not face at trial the harassment and undue burden at trial that was not permitted during discovery. *See Pinn*, 2021 WL 4775969, at *4 ("[T]he apex doctrine presumes that compelling the witness to testify would be burdensome.")

**B. Byrne Has Already Obtained Testimony from Numerous Ameris Executives and Employees, and Ameris's Own Witness List Already Includes High-Level Executives Who Are Prepared to Testify at Trial.**

This Court should preclude irrelevant and unnecessary testimony from the Apex Executives at issue. In *Thomas v. IBM*, 48 F.3d 478, 483-84 (10th Cir. 1995), the court upheld a protective order where the defendant's chairman lacked personal knowledge of

---

*Patrick Byrne v. Ameris Bank*  Case No. 8:24-01989
Defendant Ameris Bank's Motion *In Limine* No. 5 To Preclude Plaintiff from Calling or Eliciting Irrelevant Testimony at Trial from Apex Executives  Page 6

facts in dispute and plaintiff did not show that the chairman had information unavailable from other personnel. Likewise, in *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979), the court affirmed an order vacating the deposition notice of the defendant's president, who had no direct knowledge of facts, and ordered plaintiff first to depose other employees that defendant indicated had more knowledge. *See also Celerity*, 2007 WL 205067, at *3 ("Where a high-level decision maker 'removed from the daily subjects of the litigation' has no unique personal knowledge of the facts at issue, a deposition of the official is improper," especially where the information can be obtained through less intrusive discovery or depositions of lower-level employees); *Baine v. General Motors, Corp.*, 141 F.R.D. 332, 334-35 (M.D. Ala. 1991) (same).

Here, as discussed in detail above, Byrne has already deposed six Ameris executives and employees with direct knowledge of the facts underlying his claims, amounting to approximately 33 hours of sworn testimony. Byrne had ample opportunity during those depositions to explore every aspect of his claims, including, but not limited to, decisions regarding his LTIP Awards, his termination, and his internal complaints. Against that backdrop, compelling nine more Apex Executives who have no pertinent knowledge of his claims to testify at trial would serve no legitimate evidentiary purpose and would amount to nothing more than needless cumulation and harassment.

Moreover, any claimed need for testimony from the nine Apex executives is further undermined by the fact that Ameris has already listed four high-level executives on its trial list who are fully capable of addressing and testifying the relevant issues in this case. Any testimony Byrnes seeks to elicit from nine additional Apex Executives would be entirely cumulative—if not wholly irrelevant—given the testimony these four executives (along with Ameris's other witnesses) will already provide.

### C. Byrne Failed to Meet His Burden to Obtain Attorney Spencer's Testimony.

Byrne identifies Spencer, Ameris's Chief Legal Officer, as a trial witness, broadly and vaguely stating that Spencer would "testify regarding his experience with Byrne and any nonprivileged discussions he had with Ameris executives regarding the dispute." This

request is improper, unsupported, and harassing, and should be denied.

*First,* Spencer's proposed testimony is both irrelevant under Federal Rule of Evidence 401 and unfairly prejudicial under Rule 403. Spencer was not a decision-maker on any of the claims at issue in this case. For example, he had no role in calculating or approving Byrne's LTIP Awards, no role in the decision to terminate Byrne, and no role in responding to any of Byrne's internal complaints. Any involvement Spencer had in matters relating to Byrne's employment was solely in his capacity as Ameris's in-house counsel; as such, his communications and work product that are privileged. Byrne has never challenged Ameris's privilege designations or the redactions for documents involving Spencer, and he cannot now circumvent those protections by calling Spencer at trial. Even assuming Spencer could offer any non-privileged testimony, its probative value would be minimal and substantially outweighed by the risk of unfair prejudice, confusion of the issues, misleading the jury, and undue delay. *See* Fed. R. Evid. 403.

*Second,* courts disfavor compelling testimony from opposing or in-house counsel, particularly where the testimony implicates privileged material or where the information is available from other sources. As this Court observed, "[l]awyers should not be called to testify in cases where their client is a party because doing so compromises the standards of the legal profession." *Mustang Mktg., Inc. v. Chevron Prods. Co.*, 2006 WL 5105559, at *3 (C.D. Cal. Feb. 28, 2006) (citing *Mass. Mut. Life Ins. Co. v. Cerf,* 177 F.R.D. 472, 479 (N.D. Cal. 1998)). Accordingly, such testimony should be available only where (1) no other means exist to obtain the information; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the case. *Id.*

Byrne cannot satisfy any prong of this test, let alone all three. As an initial matter, Byrne has not shown, nor can he show, that the information he seeks from Spencer is unavailable from other witnesses, documents, or discovery sources. Byrne has already deposed six Ameris executives and employees with direct knowledge of his claims over approximately 33 hours of sworn testimony, and he has obtained extensive document discovery. In addition, Byrne has failed to identify with any specificity what non-

---

*Patrick Byrne v. Ameris Bank*                                    Case No. 8:24-01989

Defendant Ameris Bank's Motion *In Limine* No. 5 To Preclude Plaintiff from Calling or Eliciting Irrelevant Testimony at Trial from Apex Executives                    Page 8

privileged testimony Spencer could offer. His vague description of Spencer's anticipated testimony—"experience with Byrne and any nonprivileged discussions"—is a transparent attempt to place Ameris's Chief Legal Officer on the witness stand and then probe the boundaries of privilege in front of the jury. <u>This alone is improper</u>. Any testimony regarding Spencer's internal discussions with Ameris executives and employees about the dispute at issue would inherently risk invading the attorney-client privilege and work product doctrine. Finally, Byrne has not demonstrated, and cannot demonstrate, that Spencer's testimony is crucial to his claims. Byrne had ample opportunity during discovery to pursue Spencer's testimony if it were truly critical, yet never noticed Spencer's deposition, never propounded discovery seeking Spencer's testimony, and never challenged the privilege redactions applied to documents involving Spencer. Byrne cannot now demand Spencer's testimony for the first time at trial.

*Third,* calling Spencer as a witness would cause substantial prejudice and confusion. As Ameris's Chief Legal Officer, Spencer is actively involved in managing this litigation. He is expected to be present at trial in his capacity as Ameris's senior legal representative. Placing him on the witness stand would blur the line between advocate and witness, confuse the jury about his role, and create a serious risk of jurors conflating privileged legal advice with factual testimony. This prejudice cannot be cured through limiting instructions. *See* Fed. R. Evid. 403.

*Fourth,* Byrne's attempt to call Ameris's Chief Legal Officer at trial is precisely the type of harassing and abusive tactic that courts have repeatedly cautioned against. *See Celerity*, 2007 WL 205067, at *3; *Affinity Labs of Tex. v. Apple, Inc.,* 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011) ("Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment.") Targeting Ameris's Chief Legal Officer—who had no decision-making role and was only involved as counsel—reflects a effort to intimidate and burden Ameris rather than obtain relevant, admissible testimony.

Accordingly, Byrne's attempt to call Spencer at trial is improper, unsupported by the governing legal standard, and poses a substantial risk of prejudice, privilege invasion, and jury confusion. The Court should preclude Spencer from testifying at trial.

### D.  FRE 403 Precludes the Apex Executives' Testimony at Trial.

Even if the Court were to find that any limited relevance exists as to the Apex Executives, their testimony should nonetheless be excluded under Federal Rule of Evidence 403 because any probative value is substantially outweighed by the danger of unfair prejudice, undue delay, confusion, and cumulative evidence.

Requiring the Apex Executives to testify at trial would be unfairly prejudicial and unduly intrusive to Ameris's operations. These witnesses lack personal, non-duplicative knowledge of the facts at issue. As a result, their testimony would not meaningfully advance the resolution of the issues but rather would risk misleading the jury and diverting focus from relevant witnesses and evidence.

Allowing Byrne to call multiple Apex Executives would also cause undue delay and waste trial time, as their testimony would be cumulative of other Ameris witnesses with actual knowledge of relevant facts. Ameris has already identified four high-level executives who will testify at trial on the relevant issues, and Byrne has already deposed other Ameris witnesses who were directly involved in the underlying issues, rendering the Apex Executives' proposed testimony unnecessary. *See Shorter v. Baca*, 2023 WL 6194295, at \*7 (C.D. Cal. Feb. 27, 2023) (granting motion *in limine* as to "individuals [with] no personal knowledge of Plaintiff's claims in this action" because "the probative value of their testimony does not outweigh the potentially misleading and prejudicial effect on the jury"). Accordingly, under Federal Rule of Evidence 403, the Court should exclude all testimony from the Apex Executives identified on Byrne's trial witness list.

### V.    CONCLUSION

For these reasons, Ameris requests that the Court grant this motion to preclude the testimony of the Apex Executives.

///

Dated:  April 17, 2026

**NUKK-FREEMAN & CERRA**

By:

*/s/Stacy L. Fode*

Stacy L. Fode, Esq.
Nana J. Yee, Esq.
Attorneys for Defendant
AMERIS BANK