MATTHEW T. SESSIONS (BAR NO. 307098)
STACEY A. VILLAGOMEZ (BAR NO. 317081)
MADISON E. LARSEN (BAR NO. 364953)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
2010 Main Street, 8th Floor
Irvine, California 92614-7214
Phone: (949) 553-1313
Fax: (949) 553-8354
E-Mail: msessions@allenmatkins.com
        svillagomez@allenmatkins.com
        mlarsen@allenmatkins.com

Attorneys for Plaintiff
PATRICK BYRNE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an Individual,<br><br>        Plaintiff,<br><br>    vs.<br><br>AMERIS BANK, a Georgia corporation,<br><br>        Defendant. | Case No.  8:24-cv-01989-MWC-JDE<br><br>ASSIGNED FOR ALL PURPOSES TO<br>Judge Michelle Williams Court<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF PATRICK BYRNE'S MOTION IN LIMINE NO. 1 TO ALLOW PLAINTIFF'S EXPERT, DEBORAH DICKSON TO TESTIFY IN BYRNE'S CASE-IN-CHIEF**<br><br>Date:  May 22, 2026<br>Time:  1:30 p.m.<br>Ctrm:  6A<br><br>Disc. Cutoff:          November 28, 2025<br>Pretrial Conference:  May 22, 2026<br>Trial Date:            June 1, 2026 |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-8215-5166.5

Case No.  8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S MOTION IN
LIMINE NO. 1

## I.     INTRODUCTION

During the pre-trial meet and confer process, counsel for Defendant Ameris Bank ("Ameris") represented to counsel for Plaintiff Patrick Byrne ("Byrne") that Ameris will seek to exclude Byrne's forensic accounting expert, Deborah Dickson from testifying in Byrne's case-in-chief because Byrne's former counsel failed to serve a report from Ms. Dickson alongside Byrne's expert disclosures. However, exclusion is not warranted because Ms. Dickson's testimony is vital to the fundamental issues in this case, and the late production of her report was ultimately harmless.

Two core issues at trial will be (1) how to interpret Balboa Capital's Long-Term Incentive Plan ("LTIP") Agreement and (2) how to calculate Byrne's damages. Both Ms. Dickson, and Ameris's expert, Maryellen Sebold, were retained to address these very issues. Although Ameris belatedly received Ms. Dickson's expert report, Ms. Dickson was timely disclosed by Byrne, including a detailed description of her anticipated testimony, her qualifications, and a commitment to presenting her for deposition. Indeed, not only was Ameris able to complete a comprehensive deposition of Ms. Dickson, its own expert, Ms. Sebold, was able to review Ms. Dickson's report and testified to rebuttal arguments in her own deposition. Consequently, Ameris has not suffered any prejudice from the late disclosure of Ms. Dickson's expert report.

Thus, balancing that against the importance of Ms. Dickson's testimony to Mr. Byrne's case, she should be permitted to testify in his case-in-chief. *See Gaffron v. United States*, 2016 WL 3042667, at *3 (S.D. Cal. Feb. 24, 2016) ("Considering the five factors" that courts consider when evaluating late expert disclosures, "the Court finds the factors militate against the 'Draconian' remedy of exclusion . . . [because] . . .[t]he Court is persuaded this is a just result in light of Gaffron's disclosure of the relevant experts during the discovery period and the limited delay, if any, it has

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-8215-5166.5                                    -1-

Case No.   8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S MOTION IN LIMINE NO. 1

caused").[1]

## II.    BACKGROUND

On December 5, 2025, the parties exchanged their respective expert witness disclosures. As part of his disclosure, Byrne identified Ms. Dickson as a retained expert that "is expected to testify at trial regarding Defendant's calculations of the LTIP at issue in this case as well as economic damages suffered by Plaintiff as a result of the incident." Declaration of Matthew Sessions ("Sessions Decl."), Ex. A ("Expert Disclosure") at 3. Unfortunately, Byrne mistakenly did not serve Ameris with an expert report from Ms. Dickson as required under Rule 26. Despite not including a report, Byrne's initial expert disclosure identified Ms. Dickson as a retained expert and provided significant detail regarding her anticipated testimony at trial. On January 2, 2026, Byrne provided Ameris with Ms. Dickson's report and confirmed her availability to sit for deposition on January 15, 2026.

## III.    ARGUMENT

### A.    Legal Standard – The Court Has Discretion to Allow Ms. Dickson To Testify As An Affirmative Expert In Byrne's Case-in-Chief

"Rule 26(a) of the Federal Rules of Civil Procedure requires parties to disclose the identity of any person who may be used as an expert witness 'at the times and in the sequence that the court orders.'" *Gaffron*, 2016 WL 3042667, at *2 (S.D. Cal. Feb. 24, 2016). "If a party fails to make the disclosures required by Rule 26(a), 'the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial,'" *id*. (citing Fed. R. Civ. P. 37(c)(1)), "unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless," *Cont'l Lab. Products, Inc. v. Medax Int'l, Inc.,* 195 F.R.D. 675, 676 (S.D. Cal. 2000)

---

[1] In opposition to Ameris's Motion in Limine No. 1, Byrne took the position that at a minimum, Ms. Dickson should be permitted to be called as a rebuttal witness, because that was the issue Ameris had raised through that motion. However, Byrne maintains that even if the present motion is denied, Ms. Dickson still may be called as a rebuttal expert, but this should be moot because the Court should allow her testimony in Byrne's case-in-chief.

(quoting *Finley v. Marathon Oil Co.,* 75 F.3d 1225, 1230 (7th Cir. 1996)).

Indeed, in the context of excluding expert testimony, courts have explained that "[e]xclusionary sanction[s] based on discovery violations are generally improper absent undue prejudice to the opposing side." *Gaffron,* 2016 WL 3042667, at *2 (S.D. Cal. Feb. 24, 2016). "Thus, the plain text of the rule provides that if an appropriate motion is made and a hearing has been held, the court does have discretion to impose other, less drastic, sanctions." *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1117 (N.D. Cal. 2021), aff'd in part, appeal dismissed in part, 2023 WL 4704891 (9th Cir. July 24, 2023); *see, e.g., Wendt v. Host Int'l, Inc.,* 125 F.3d 806, 814 (9th Cir. 1997) ("The district court, may, in its discretion, impose reasonable monetary sanctions upon appellants' former counsel for failure to comply with [expert] discovery rules"); *see also In re Hill*, 775 F.2d 1385, 1387 (9th Cir. 1985) ("when any court is considering the imposition of sanctions for non-jurisdictional, procedural defaults and deficiencies in the management of litigation, the selection of the sanction to be imposed must take into consideration the impact of the sanction and the alternatives available to achieve assessment of the penalties in conformity with fault. Absent such consideration, there is an abuse of discretion").

**B.     Analysis – The Record Here Weighs Heavily In Favor Of Allowing Ms. Dickson To Testify As An Affirmative Expert**

"In determining whether exclusion of evidence under Rule 37 is appropriate, some courts consider the following factors: '(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.'" *Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 626 (S.D. Cal. 2015) (denying motion to exclude untimely disclosed expert report). Here, each factor weighs heavily in favor of the Court allowing Ms. Dickson to testify affirmatively in Byrne's case-in-chief.

**1.      Surprise to the Party Against Whom the Evidence Would Be Offered**

First, the record demonstrates that Ameris was not surprised when Ms. Dickson's report was disclosed for several reasons, including the fact that Byrne timely served his expert disclosure that identified Ms. Dickson as Byrne's retained expert and the subjects on which she would be testifying; nearly all the material evidence Ms. Dickson relied on originated from Ameris; and the opinions Ms. Dickson will testify to have been argued to Ameris both before and throughout this case.

As an initial matter, as discussed above, on December 5, 2025—the date on which expert disclosures were due—Byrne timely disclosed the identity, qualifications, and subject matters of testimony for Ms. Dickson, making clear, in relevant part, that she would be testifying as follows:

> [R]egarding Defendant's calculations of the LTIP at issue in this case as well as economic damages suffered by Plaintiff as a result of the incident, including but not necessarily limited to loss of past and future earnings, loss of earnings potential, lost value of benefits, benefit packages, and other employee compensation and/or incentives as they relate to loss of income and/or earnings capacity, and the present value for all future economic damages (whether wages, benefits, medical expenses or otherwise). Also, assuming a bifurcated trial, if the jury makes a finding of malice, fraud or oppression, Ms. Dickson will testify to issues regarding Defendant's and/or their related entities' financial condition, ability to pay and/or net worth for purposes of determining an appropriate amount of punitive damages.

*See* Expert Disclosure at 3.

Furthermore, as reflected in Ms. Dickson's report, the vast majority of the materials Ms. Dickson relied on in reaching her opinions were created by and produced from Ameris itself. Thus, by the time Ms. Dickson's report was ultimately produced, Ameris was already well aware of what her testimony would be about and was readily familiar with the underlying materials. Under these circumstances, courts routinely find a lack of surprise. *See, e.g., Century Sur. Co. v. L for Lofts, LLC,* 2025

WL 235585, at *5 (C.D. Cal. Jan. 6, 2025) (finding that the defendants were not surprised by the plaintiff's late discovery disclosure because the material evidence were the defendant's own documents); *Gaffron,* 2016 WL 3042667, at *3 ("[T]he Court finds that . . . the United States will not be surprised by evidence on reasonable value in light of Gaffron's ***timely identification of experts*** who would provide opinions on this subject") (emphasis added); *Lanard Toys Ltd. v. Novelty, Inc.,* 375 F. App'x 705, 713 (9th Cir. 2010) (finding that the plaintiff's technical violation of Rule 26(a)(2)(B) did not cause "surprise" because the plaintiff timely served a "preliminary" expert declaration containing detailed information about the challenged expert that permitted the defendant to take steps to contend with the anticipated testimony); *Baum v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 4411496, at *3 (D. Nev. Aug. 16, 2016) (holding that the defendant would not be prejudiced because it received a description of the plaintiffs' expert's anticipated testimony a week after the expert exchange deadline). The Court should find the same here. Indeed, Ameris clearly had sufficient notice of the issues to be addressed by each party's expert because even before any expert disclosures were exchanged, Ameris was able to retain its own forensic accounting expert to perform their own independent analysis that anticipated every issue addressed by Ms. Dickson's yet to be produced report and testimony. Indeed, Ms. Sebold's conclusions perfectly encapsulate the core dispositive disputes in this case:

> Opinion 1: The 2022 LTIP calculation is $8,713,045 based on the Performance Formula for the 2022 Performance Period resulting in no additional payment due to Byrne beyond the amount he was paid.
>
> Opinion 2: The 2023 LTIP calculation did not meet the Threshold for Award for the 2023 Performance Period resulting in zero payment due to Byrne.
>
> Opinion 3: Byrne's requested adjustments were not supported by GAAP or the terms of the LTIP [A]greement.
>
> Opinion 4: Ameris's recording of unclaimed security deposits that were acquired in the Balboa transaction are supported by GAAP and accounting principles.

*See* Sessions Decl., Ex. B ("Sebold Report") at ¶¶ 10–13.

Finally, the lack of surprise if further evident from the indisputable fact that the opinions and subject matters on which Ms. Dickson will testify have been argued to Ameris throughout Byrne's employment, outlined in Byrne's Complaint, and have been the primary subject of nearly every deposition in this case. *See Bixby v. KBR, Inc.,* 282 F.R.D. 521, 532 (D. Or. 2011) (allowing admission of untimely expert report, in part, because "the opinions expressed in the untimely report were consistent in every particular with the theory of causation that plaintiffs have alleged since the inception of this action").

### 2.    Ability of the Party to Cure the Surprise

Second, to the extent there was a surprise to Ameris, any "surprise" has long since been cured. Ameris was able to complete a 3-hour comprehensive deposition of Ms. Dickson in which Ameris was able to question Ms. Dickson about every opinion she intends to offer at trial. Sessions Decl. ¶ 4.

Moreover, at no point since Ms. Dickson's deposition has Ameris indicated that it sought to depose Ms. Dickson again, and/or submit a rebuttal report. Indeed, this is likely because Ameris's own expert, Ms. Sebold, had ample opportunity to, and indeed did, provide rebuttal to every aspect of Ms. Dickson's report in her deposition. *See* Sessions Decl., Ex. C ("Sebold Dep.") at 82: 2–6 ("Q. . . . So other than what we've discussed, do you have any criticisms of Ms. Dickson's January 2 report? A. Yes, I do. Q. Let's discuss your first criticism. A. Well, I can basically go through one by one . . . .").

Furthermore, if Ameris truly believed that there remained any surprise that has not been cured, Ms. Sebold could submit a supplemental report further responding to Dickson's claims by the May 1, 2026 deadline, but to date, she has not done so. *See Century Sur. Co.*, 2025 WL 235585 at *5 (finding that despite the plaintiff having the burden to produce its own documents, the defendant "no doubt had the opportunity to

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-8215-5166.5                                                    -6-

Case No.   8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S MOTION IN
LIMINE NO. 1

cure any prejudice by simply asking Century's counsel about the production"). Here, Ameris has had ample opportunity to discuss possible solutions with Byrne if it believed it did not sufficiently depose Ms. Dickson, but Ameris has chosen not to, instead seeking to gain an unfair advantage at trial through a "gotcha." This seeming lack of interest in curing any alleged surprise should further weigh in favor of permitting Ms. Dickson to testify at trial.

### 3. Extent to which Allowing the Evidence would Disrupt Trial

Third, allowing Ms. Dickson to testify would in no way disrupt the trial. Courts commonly identify trial continuances, the need to reopen discovery, and interference with the court's docket as identifiable disruptions to trial that would weigh against harmlessness. *See Stewart,* 2025 WL 2093112 at *5 (providing overview of case law addressing the likelihood of disruption of the trial factor). But here, nothing of the sort needs be done to cure Ameris's alleged prejudice—there is no need for (nor has Ameris ever even suggested) a trial continuance or reopening discovery. This is unsurprising, given that even if the Court were to reopen discovery, there is nothing more Ameris could learn from Ms. Dickson that it did not already discuss with her at her deposition on January 15, 2026.

Additionally, it will be more disruptive to trial to exclude Ms. Dickson's testimony than to permit her to testify. While the latter leads to no identifiable disruption, the former will require Byrne to elicit otherwise duplicative testimony from other witnesses to testify about the relevant accounting principles at issue.

### 4. Importance of the Evidence

Fourth, Ms. Dickson's testimony should be permitted in Byrne's case-in-chief because she will testify to the most fundamental issues in this case: in particular, (1) the foundational accounting principles to be applied to the LTIP calculations, (2) the credibility of Ameris and Ms. Sebold regarding their repeated false assertion that Ameris was required by law to apply GAAP to all aspects of the LTIP calculation, (3) the numerous accounting errors and methodological changes Ameris made, in

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-8215-5166.5                    -7-

Case No.   8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S MOTION IN
LIMINE NO. 1

contravention of the LTIP Agreement, when calculating the 2022 and 2023 LTIP Pools, (4) the specific performance metrics in the LTIP Agreement that actually required applying GAAP, and (5) the proper LTIP Pool calculation and Byrne's resulting damages. Each of these key areas of testimony are essential to Byrne's ability to prosecute his claims. In particular, excluding Ms. Dickson deprives Byrne of being able to present a disinterested expert that can articulate these issues to a jury. Such a serious sanction cannot be warranted when the party who seeks exclusion only does so for the sake of exclusion, not because it has suffered any tangible prejudice. *See, e.g., Pac. Indem. Co. v. Nidec Motor Corp.,* 203 F. Supp. 3d 1092, 1097 (D. Nev. 2016) (finding the plaintiff's failure to timely disclose its expert "was not completely harmless . . . However, the untimely disclosure was not sufficiently prejudicial . . . to justify excluding [the plaintiff's expert]; that remedy is too harsh under the circumstances. Doing so would, . . . amount to dismissal of [the plaintiff's] claims"); *Galentine v. Holland Am. Line-Westours*, Inc., 333 F. Supp. 2d 991, 994 (W.D. Wash. 2004) (finding that "potential prejudice that [the defendant] claims it will suffer is not so severe as to warrant exclusion, especially given the possibility of ameliorating that prejudice through various means").

Moreover, the fact that Ms. Dickson's testimony is critical to the foundational issues of this case strongly counsels against excluding her testimony, especially when, to the extent the Court even believes any sanctions are warranted, less drastic sanctions are available. *See, e.g.,. Pineda v. City & Cnty. of San Francisco*, 280 F.R.D. 517, 523 (N.D. Cal. 2012) ("Although Plaintiffs' failure to timely comply with Rule 26(a)(2)(C) is neither substantially justified nor harmless, and the Defendant's objections have merit, the Court nonetheless will not impose the harsh sanction of excluding all thirteen of Plaintiffs' non-retained experts from testifying at trial. . . . The Court will afford Plaintiffs the opportunity to provide an amended Rule 26(a)(2)(C) disclosure summarizing the opinions of three non-retained experts and the facts that support those opinions.").

### 5.   Explanation for the Failure

Finally, the "Explanation for the Failure" factor once again weighs in favor of inclusion because the failure to timely submit a report was due to a simple timing error and not as a result of any malice or gamesmanship on behalf of Mr. Byrne. Indeed, Byrne did not attempt to hide Ms. Dickson's identity or the topics she was retained to opine on in his initial expert disclosure. *See, e.g., Century Sur. Co.*, 2025 WL 235585 at *5 (The Court credits the absence of bad faith as a factor in finding a lack of prejudice or surprise to the defendants).

Given the totality of the circumstances present, the Court should not permit Byrne to suffer the consequences for his former counsel's error, especially when that error did not result in any prejudice to Ameris.

## IV.   CONCLUSION

For the reasons stated herein, the Court should grant Byrne's Motion in Limine No. 1, allowing Byrne's forensic accounting expert, Ms. Dickson, to testify as an affirmative expert in Byrne's case-in-chief.

Dated:  April 17, 2026

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
MATTHEW T. SESSIONS
STACEY A. VILLAGOMEZ
MADISON E. LARSEN

By: _____
MATTHEW T. SESSIONS
Attorneys for Plaintiff
PATRICK BYRNE

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4935-8215-5166.5

-9-

Case No.  8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S MOTION IN
LIMINE NO. 1