# EXHIBIT B

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA SOUTHERN DIVISION**

Patrick Byrne, an individual,

Plaintiff,

V.

Ameris Bank, a Georgia corporation,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No.: 8:24-cv-01989**

# EXPERT REPORT OF
# MARYELLEN SEBOLD

**December 5, 2025**

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025

## TABLE OF CONTENTS

**A.     INTRODUCTION**............................................................................................**1**

**B.     SUMMARY OF OPINIONS**.........................................................................**2**

**C.     ASSIGNMENT APPROACH** .....................................................................**2**

**D.     CASE BACKGROUND** ..............................................................................**3**

**E.     GAAP ACCOUNTING STANDARDS** ...................................................**6**

**F.     LTIP ANALYSIS** ......................................................................................**7**

**G.     BYRNE EMAIL ADJUSTMENT REQUESTS** ....................................**12**

**H.     EXPERT OPINIONS**................................................................................**21**

**I.     CONCLUSION** ..........................................................................................**22**

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025

## List of Exhibits

## A-1. Curriculum Vitae of Maryellen Sebold

## B-1. List of Documents Relied Upon

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 1

# A. INTRODUCTION

1.  I, Maryellen Sebold, am a Partner in the Financial Advisory Services group of Resolution Economics, LLC in the firm's Los Angeles, California office. My expert qualifications, including my testimony over the past four years and publications I have authored over the past ten years, are described in my Curriculum Vitae, attached hereto as **Exhibit A-1**.[1]

    1.1.  I have had experience over the past 35 years with national, regional, and local public accounting firms. I specialize in litigation consulting in areas including forensic accounting, damage calculations and analysis and bankruptcy and litigation support. I have provided forensic accounting services in various forms of business litigation, including consumer class actions, tracing of funds, and investigation into misappropriation of assets.

    1.2.  I earned a Bachelor of Science degree from Ithaca College. I am a Certified Public Accountant (CPA), licensed and in good standing in the states of California and New York, Certified in Financial Forensics (CFF), and a Certified Insolvency and Restructuring Advisor (CIRA).

    1.3.  I have provided analyses and reports in Federal Court, State Court, and arbitration proceedings, and have testified as an expert at deposition, arbitration and trial.

    I previously served on the AICPA Council. I am a member of the California Society of CPAs and previously served on its Board. I am a member of the Association of Insolvency and Restructuring Advisors and a past president of the California CPA Education Foundation.

2.  I am qualified to render the opinions set forth in this report based on my education, training in accounting, finance, financial analysis, and forensic accounting, and my professional experience in providing forensic accounting services, performing complex financial modeling, conducting document reviews, and quantifying financial damages. I was retained by Nukk-Freeman & Cerra, P.C. (or "Counsel"), and Ameris Bank ("Ameris," "Defendant," or "Company") on November 25, 2025.

3.  I understand the Complaint for Damages (the "Complaint") relates to claims made by Plaintiff against Defendant for (i) Wrongful Termination in Violation of Public Policy, (ii) Retaliation in Violation of Labor Code §1102.5, (iii) Failure to Pay All Wages Due at Termination, and (iv) Violation of Business & Professions Code §17200.[2]

4.  This report summarizes my analyses and expert opinions, which are based upon the records produced by the parties to this matter and produced to me as of the date of this report, including, but not limited to, pleadings, financial information, and other records and reports. In addition, I was retained to rebut the Plaintiff's claimed damages, the calculation of the 2022, 2023, and 2024 LTIP awards, Plaintiff's requested adjustments to those awards, the requirements of GAAP and other accounting principles, and any other categories of Plaintiff or Plaintiff's experts anticipated testimony related to the accounting of Plaintiff's claimed damages.

---

[1] *See Exhibit A-1 for the Curriculum Vitae of Maryellen Sebold.*
[2] The Complaint, Patrick Byrne, an individual, Plaintiff, v. Ameris Bank, a Georgia corporation, Defendant dated September 16, 2024.

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 2

5.  I reserve the right to update, modify, or supplement this report, should I be provided with additional information. I also reserve the right to respond to and opine on the assertions or opinions of the Plaintiff and its experts.

6.  My expert opinions are based upon the facts and information in this case and my experience in similar matters. Further, this report is prepared for the specific purposes discussed herein and may not be appropriate for other purposes. Please note that minor differences in reported amounts as shown in this report and all supporting exhibits, should any exist, are the result of rounding.

7.  I have received assistance from professional staff at Resolution Economics, who have worked under my direction. No part of my or Resolution Economics fees or reimbursements of expenses are contingent upon the outcome of this case, or any opinions expressed herein. Hourly rates to prepare this report are as follows: Maryellen Sebold, $795 per hour, and Resolution Economics professional staff, $120 - $795, per hour.

8.  To the best of my knowledge, neither I, nor any Partner or employee of Resolution Economics, have any personal dealings or relationships with the parties to this matter. Resolution Economics does not hold or represent any adverse interest to the Plaintiff, Defendant, or any other party to this matter.

# B. SUMMARY OF OPINIONS

9.  Based on my analyses set forth in this report, I have reached the following conclusions and expert opinions.

10. **Opinion 1:** The 2022 LTIP calculation is $8,713,045 based on the Performance Formula for the 2022 Performance Period resulting in no additional payment due to Byrne beyond the amount he was paid.[3]

11. **Opinion 2:** The 2023 LTIP calculation did not meet the Threshold for Award for the 2023 Performance Period resulting in zero payment due to Byrne.

12. **Opinion 3:** Byrne's requested adjustments were not supported by GAAP or the terms of the LTIP agreement.

13. **Opinion 4**: Ameris's recording of unclaimed security deposits that were acquired in the Balboa transaction are supported by GAAP and accounting principles.

# C. ASSIGNMENT APPROACH

14. Upon formal designation by Counsel to assist in the matter, I, along with staff working under my direction, performed the following analyses and procedures:

---

[3] Byrne was paid $5,690,261 (AMERISO001562 to AMERIS001565) and $12,150.29 (AMERIS001560).

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 3

---

- ➢ Reviewed the Complaint for Damages ("the Complaint") filed by Patrick Byrne, Plaintiff, against Ameris Bank, Defendant, on September 16, 2024.
- ➢ Reviewed the following agreements:
  - o Stock Purchase Agreement by and among Ameris Bank, Balboa Capital Corporation, Patrick E. Byrne, and The Patrick E. Byrne Revocable Trust U/T/A dated February 23, 2001, and The Patrick E. Byrne Irrevocable Trust U/T/A dated July 22, 2021, dated as of December 10, 2021.
  - o Employment Agreement entered into by Ameris Bank and Patrick Byrne dated December 10, 2021.
  - o Balboa Capital Long-Term Cash Incentive Plan dated December 10, 2021.
- ➢ Reviewed the following depositions:
  - o Patrick Byrne Deposition Testimony, Volume I dated October 20, 2025, and related exhibits.
  - o Patrick Byrne Deposition Testimony, Volume II dated October 27, 2025, and related exhibits.
  - o Nicole Stokes Deposition Testimony dated November 3, 2025, and related exhibits.
  - o Sufhan Majid Deposition Testimony dated November 4, 2025, and related exhibits.
  - o James LaHaise Deposition Testimony in his capacity as a corporate designee dated November 5, 2025, and related exhibits.
- ➢ Reviewed the following financial statements:
  - o Balboa Capital Audited Financial Statements for years ended 2018, 2019, 2020.
  - o Ameris Bancorp Audited Financial Statements for the years ended 2021, 2022, 2023, and 2024.
- ➢ Researched U.S. GAAP Accounting Standards.
- ➢ Gained an understanding of the facts and circumstances outlined in the Complaint including interviews with Nicole Stokes and James LaHaise.
- ➢ Reviewed the documents summarized in **Exhibit B-1**.

# D. CASE BACKGROUND

15. Plaintiff – Patrick Byrne ("Byrne" or "Plaintiff"), an individual and former CEO of Balboa Capital (a division of Ameris Bank), resident of Orange County, California.

16. Defendant – Ameris, a Georgia corporation with its principal place of business in Atlanta, Georgia. Ameris is a provider of banking and financial services, including personal and business banking, lending, and wealth management solutions.

## Background and Timeline

17. Byrne founded Balboa Capital ("Balboa") in 1988 and served as its Chief Executive Officer ("CEO") through December 2021. On December 10, 2021, Ameris acquired Balboa pursuant to a Stock Purchase Agreement.[4] The Stock Purchase Agreement sets out the purchase price, closing

---

[4] Stock Purchase Agreement by and among Ameris Bank, Balboa Capital Corporation, Patrick E. Byrne, and The Patrick E. Byrne Revocable Trust U/T/A dated February 23, 2001, and The Patrick E. Byrne Irrevocable Trust U/T/A dated July 22, 2021 dated as of December 10, 2021.

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 4

mechanics, representations and warranties, employee and seller restrictions, indemnification, and dispute resolution.

18. Balboa is a division of Ameris which is a public company subject to Sarbanes-Oxley ("SOX") regulations. SOX refers to the Sarbanes-Oxley Act of 2002, a U.S. federal law enacted to protect investors by improving the accuracy and reliability of corporate disclosures. The Ameris financial statements, which include the Balboa division, are subject to those regulations.

19. On December 10, 2021, Byrne entered into an Employment Agreement ("the Agreement") with Ameris, under which he served as CEO of the Balboa division.[5] The agreement established an initial term from December 10, 2021, through December 31, 2024, with an automatic renewal provision for successive one-year periods unless either party provided notice of non-renewal at least 30 days prior to the end of the term.

20. The Employment Agreement includes a pdf exhibit for the ██████████████████████ (████████ Model"). This model includes historical and projected financial statements, key performance metrics, and standardized methodologies for calculating earnings and other financial results.

21. The Employment Agreement detailed Byrne's compensation and benefits, including a base salary of $350,000 per year, eligibility for a $150,000 payment each calendar quarter if Balboa's financial results met the adjusted earnings before tax targets set forth in the ██████ Model, and participation in a Long-Term Incentive Plan.

22. On December 10, 2021, Ameris implemented a Long-term Cash Inventive Plan ("LTIP") for Balboa employees.[6] The LTIP is designed to align the interests of key employees of the Balboa division, including Byrne, with those of Ameris by linking payouts to the achievement of specific financial performance goals. The plan covers annual performance periods for 2022, 2023, and 2024. The primary performance metric is Balboa's annual Earnings Before Tax ("EBT"), as defined in the ████████████.

23. EBT is calculated using specific assumptions, including:

➢ "Initial direct costs will be calculated using GAAP methodology.
➢ The interest cost used will be ███.
➢ There will be no allocation of indirect Company expenses to Balboa by the Company, and there will be no transfer pricing between the Company and Balboa.
➢ For the performance period of this agreement, Balboa will not be charged for any other cost of capital other than the ███ cost of funds on the average outstanding balance on all earning assets.
➢ Balboa will bear all direct costs incurred in its operations, and the Company will pass through at actual cost without markup any discounts relating to Balboa's operations that the Company enjoys with suppliers and vendors.
➢ Allowance for loan losses calculations and expenses for Balboa will be the greater of (i) actual net charge-offs or (ii) ██████ of net investment in direct financing leases."[7]

24. Per the LTIP Agreement, for each year, 35% of EBT above the threshold is allocated to the LTIP cash pool ("Incentive Pool"). Each participant receives a percentage of the Incentive Pool, with specific percentages determined at Byrne's discretion. Payments are paid as soon as performance is certified, but no later than March 15 of the following year. Participants must be employed on the

---

[5] Employment Agreement entered into by Ameris Bank and Patrick Byrne dated December 10, 2021.
[6] Balboa Capital Long-Term Cash Incentive Plan dated December 10, 2021.
[7] AMERIS000227

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 5

25. The LTIP includes following definitions:

> "Performance Formula: 35% of EBT above the Threshold for Award will be allocated to the Balboa Capital Long-Term Cash Incentive Plan (the "Plan") cash bonus award pool for that Performance Period (the "Incentive Pool")"[8]

> "Threshold for Award: 2022 = EBT of ███████; 2023 = EBT of ████████ 2024 = EBT of ████████ [9]

> "Performance Periods: Each individual calendar year 2022, 2023 and 2024"[10]

26. To track the key inputs to the LTIP, the Company maintained two cost centers for Balboa. Cost center 890 tracks components of the LTIP while cost center 891 tracks all other Balboa related transactions.[11]

27. Between June 2023 through June 2024, Byrne alleges he repeatedly complained to Ameris about improper calculation of earnings and unpaid inventive compensation under the LTIP.[12]

28. On January 15, 2024, Byrne sent an email to Sufhan Majid, Ameris's Director of Accounting, in response to Ameris's calculation of the 2023 LTIP. In his email, Byrne raised several objections to Ameris's accounting methods, asserting that they were inconsistent with past practices and the terms of the LTIP agreement. Specifically, Byrne identified issues related to changes in the accounting treatment of stipulated judgments, depreciation for pre-acquisition assets, allocation of overhead costs, tax benefit calculations, interim rent accounting, and the handling of repossessions. He contended that these changes resulted in lower reported income and, consequently, a reduced LTIP payout. Byrne provided a revised calculation, concluding that the correct LTIP payout for 2023 should have been $3,037,750.[13]

29. On January 27, 2024, Byrne sent an email to Jim LaHaise ("LaHaise"), Ameris's Chief Strategy Officer, regarding the treatment of security deposits related to deals that had terminated prior to Ameris's acquisition of Balboa. In the email, Byrne provided updated spreadsheets identifying specific deals and calculated the total amount of pre-acquisition security deposits that he asserted should be recognized as additional pre-tax income. He claimed that, according to the terms of the Stock Purchase Agreement, Ameris owed a substantial sum, initially calculated at $5,023,693 and later revised to $2,024,765, based on these deposits. Byrne requested prompt payment of the calculated amount.[14]

30. On January 29, 2024, Byrne sent an email to LaHaise, regarding the calculation of the 2022 LTIP payout. In the email, Byrne identified several issues with Ameris's calculation of the 2022 LTIP, including the improper allocation of overhead compensation for Accounting, IT, and Marketing, the deduction of depreciation for pre-acquisition assets, and the exclusion of tax benefits to Ameris. Byrne attached supporting spreadsheets and a revised LTIP calculation, concluding that an additional payout of $1,457,057 was owed for 2022.[15]

---

[8] AMERIS000228
[9] AMERIS000228
[10] AMERIS000227
[11] Nicole Stokes Deposition Testimony dated November 3, 2025 (Page 76).
[12] In addition to the three emails discussed below, I reviewed other correspondence between Byrne and Ameris.
[13] AMERIS000785-AMERIS000794
[14] AMERIS001131.1-AMERIS001131.6
[15] AMERIS001127

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 6

31. On June 30, 2024, Byrne's employment was terminated by Ameris.

## Nature of Complaint[16]

32. Wrongful Termination in Violation of Public Policy: Byrne claims he was terminated for complaining about Ameris's alleged intentional miscalculation of Balboa's earnings, which deprived employees of earned compensation, in violation of California public policy.

33. Retaliation in Violation of California Labor Code §1102.5: Byrne alleges he was retaliated against and terminated for raising concerns about violations of the California Labor Code, specifically regarding the calculation and payment of the Balboa LTIP.

34. Failure to Pay All Wages Due at Termination: Byrne claims Ameris failed to pay him all wages and bonuses earned prior to his termination, in violation of California Labor Code §201 and 203.

35. Violation of California Business & Professions Code §17200 (Unfair Competition Law): Byrne alleges Ameris engaged in unlawful, unfair, and fraudulent business practices by depriving employees of earned bonuses and retaliating against him for his complaints.

36. The Complaint seeks economic and non-economic damages, punitive damages, restitution, attorneys' fees, and injunctive relief.

# E. GAAP ACCOUNTING STANDARDS

37. As the LTIP references employment of Generally Accepted Accounting Principles ("GAAP"), I have summarized the key standards discussed in my report.

38. GAAP is a set of rules and standards that companies in the United States must follow when preparing their financial statements. GAAP is designed to ensure that financial information is reported in a clear, consistent, and transparent manner, so that investors, regulators, and other stakeholders can accurately understand and compare the financial health and performance of different organizations.[17]

39. GAAP covers a wide range of accounting topics, including how to record revenue and expenses, how to value assets and liabilities, and how to present financial statements such as the balance sheet, income statement, and cash flow statement. The main goal of GAAP is to ensure financial reports are reliable and comparable from one company to another and from one period to the next.

40. GAAP is established and maintained by the Financial Accounting Standards Board ("FASB"), an independent organization recognized by the U.S. government. Ameris reports financial statements in the Form 10-K which states: "Ameris has established certain accounting and financial reporting policies to govern the application of accounting principles generally accepted in the United States of America ("GAAP") in the preparation of its financial statements."[18]

---

[16] The Complaint, Patrick Byrne, an individual, Plaintiff, v. Ameris Bank, a Georgia corporation, Defendant dated September 16, 2024.
[17] Financial Accounting Standards Board
[18] Ameris Bancorp Form 10-K filed on February 28, 2023 (Page 30).

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 7

41. The LTIP outlines key assumptions for calculating EBT under the agreement, specifying that "Initial direct costs will be calculated using GAAP methodology." [19] The agreement also includes a footnote stating, "Applying GAAP should have a neutral impact on projected results, as Balboa has been accelerating the amortization of initial direct costs to offset prior deferrals." [20]

42. The following key U.S. GAAP standards will be addressed in detail throughout this report:

   ➢ ASC 326 – Financial Instruments – Credit Losses
   ➢ ASC 360 – Property, Plant, and Equipment
   ➢ ASC 405 – Liabilities
   ➢ ASC 450 – Contingencies
   ➢ ASC 606 – Revenue from Contracts with Customers
   ➢ ASC 842 – Leases

# F. LTIP ANALYSIS

## LTIP Excel Workbook

43. The Company conducts an analysis of the LTIP and whether the Company will be required to pay the LTIP at the end of the year. The analysis is performed in Microsoft Excel workbooks and based on the formulas detailed in the LTIP Agreement. I reviewed the LTIP workbooks in 2022, 2023, and 2024 as described in the following section.

### 2023 LTIP Calculation

44. In 2023, the Company calculated a "Total LTIP EBT" of ▮▮▮▮▮. This result fell short of the established Performance Goal for 2023 EBT, which was set at ▮▮▮▮▮. Consequently, no payment was awarded for 2023, and no accrual was recorded as of December 31, 2023.

45. I reviewed the supporting 2023 LTIP Workbook[21] to understand the Company's calculations. Based on my discussions with Nicole Stokes ("Stokes"), Chief Financial Officer ("CFO") of Ameris, and review of her deposition, I understand the supporting sources in the 2023 LTIP Workbook are based on an export of the cost center "00890 - BALBOA CAPITAL" which includes detail to calculate the LTIP. A separate 891 Balboa cost center includes all other Balboa related data that is not part of the LTIP calculation. The supporting sources within the workbook are income statements and balance sheets for month to date ("MTD"), quarter to date ("QTD"), and year to date ("YTD").

46. The 2023 LTIP Workbook that I reviewed ties back to the analysis discussed in the Stokes deposition.[22]

47. The 2023 LTIP Workbook is calculated based on the following key inputs: "Income before taxes," "Provision for Loan Losses," "Adjusted Provision @ ▮▮▮", and "LTIP Target."

---

[19] AMERIS000227
[20] AMERIS000227
[21] AMERIS002124
[22] AMERIS000739

**Expert Report of Maryellen Sebold**

Patrick Byrne v. Ameris Bank

United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989

December 5, 2025

Page 8

48. Income Before Taxes is calculated based on net income plus income taxes as shown in the 2023 income statement and the LTIP Workbook formulas.



|  | YTD Actual Dec 2023 |
|---|---|
| Net Income | $ ███████ |
| Income taxes | ███████ |
| Income Before Taxes | ███████ |

49. Provision for Loan losses is based on the income statement line item which totals ███████

50. The "Adjusted Provision @ ██████" is based on the greater of "██████ of loan growth + actual net charge offs to maintain ██████ on portfolio" or "actual net charge offs."

➤ The first calculation for ██████ of loan growth + actual net charge offs to maintain ██████ on portfolio" is based on the "Balance Sheet Dec 2023 YTD" tab which provides the YTD change in balance sheet account "Loans Held for Investment, Net of Unearned Income" and the December 2023 ending balance for "Allowance for Loan Losses". In addition, the formula includes an "Adjustment to net charge-off" of ███████. The resulting calculation of ███████ is shown in the table below.




|  | 2023 |  |
|---|---|---|
| YTD Change (Loans Held for Investment) | $ ███████ | [a] |
| Percent of loan growth | ████ | [b] |
| 1.25 Percent of actual loan growth | ████ | [c] = [a x b] |
| Allowance for Loan Losses | ████ | [d] |
| Subtotal | ████ | [e] = [c + d] |
| Total charge off adjustments, tax adjusted | ████ | [f] |
| 1.25% of loan growth + actual net chargeoffs to maintain 1.25% on portfolio | ████ | [g] = [e - f] |

➤ The second calculation for "actual net charge offs" is based on charge offs calculated by month from Q1 2023 to Q4 2023. Total charge is equal to ███████ as of year-end December 31, 2023. Similar to the calculation above, the formula includes a reduction for the "adjustment to net charge-off" of ███████ Overall, the calculation starts with Q1 allowance for loan losses of ██████ based on the balance sheet. In Q2, the Company calculates Q2 charge offs less Q2 recoveries and adds back the Q1 allowance for loan losses. The workbook then provides monthly calculations from July 2023 to December 2023 which perform the same calculations but on a monthly basis.

➤ An alternative formula is calculating the change in "Allowance for Loan Losses" month to month or quarter to quarter. For example, Allowance for Loan Losses in Q2 2023 of ██████ less Allowance for Loan Losses in Q1 of ██████ equals ██████ calculated in the model. See below my summary of the total charge-offs.

Expert Report of Maryellen Sebold
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 9



| | Dec 2023 |
|---|---|
| Actual Net Charge-Offs Q1 2023 | $ ███████ |
| Actual Net Charge-Offs Q2 2023 | ███████ |
| Adjustments to net charge-off | ███████ |
| Actual Net Charge-Offs Q3 2023 | ███████ |
| Actual Net Charge-Offs Q4 2023 | ███████ |
| Total | ███████ |

➢ As the formula is based on the greater of the two calculations below, the 2023 LTIP model concludes on the "Adjusted Provision @ ███ percent" of ██████████.

51. To calculate the "Total LTIP EBT," the formula adds "Income before taxes" with "Provision for Loan Losses," and subtracts the "Adjusted Provision" resulting in the total of ████████. See the following table for the calculation:

| | AMERIS002124 12/31/2023 |
|---|---|
| Income before taxes | $ ███████ |
| Provision for Loan Losses | ███████ |
| Total Before Provision | ███████ |
| Adjusted Provision @ 1.25% | ███████ |
| Total LTIP EBT | ███████ |
| LTIP target thru 12/31/2023 | ███████ |

52. As the 2023 LTIP target is ████████, the performance goal threshold is not met and no payment or accrual is recorded.

53. I understand the Company agreed to adjustments requested by Byrne in an effort to resolve the dispute. The updated calculation increased the Total LTIP EBT to ████████.[23] However, this updated calculation did not meet the LTIP target. I will discuss Byrne's requested adjustments later in this report.

54. Based on my calculation, the 2023 LTIP calculation of ████████ did not meet the Threshold for Award of ████████ for the 2023 Performance Period. Thus, no payment is due to Byrne.

55. I confirmed and recalculated the Company's 2023 LTIP target and note the formulas follow the LTIP agreement.

➢ The model correctly calculates EBT as "defined as actual annual earnings before tax as identified as "Actual Earnings Before Tax" in the Pioneer 1Q21 Operating Model."[24]
➢ The 2023 Threshold for Award is ████████ as stated in the agreement[25].

---

[23] AMERIS002163
[24] AMERIS000227
[25] AMERIS000228

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 10

---

➢ The formula correctly calculates the provision for losses on direct financing leases as shown in the ▮▮▮▮▮▮▮▮▮ and defined in the agreement as "The allowance for loan losses calculations and expenses for Balboa will be the greater of (i) actual net charge-offs or (ii) ▮▮▮▮ of net investment in direct financing leases."[27]

<u>2022 LTIP Calculation</u>

56. In 2022, the Company calculated a "Total LTIP EBT" of ▮▮▮▮▮▮▮ The calculated amount met the established Performance Goal for 2022 EBT, which was set at ▮▮▮▮▮▮▮ As such, payments were awarded for 2022.

57. The Company recorded the LTIP Accrual of $9,100,000[28] and the pool totaled $9,098,045.[29] I understand the payment was overpaid after the Company investigated charge-offs after the recording of the payment. After adjusting for the charge-off, the company determined the LTIP was overpaid by $384,999.84.[30]

58. I reviewed the supporting 2022 LTIP Workbook[31] to understand the Company's calculations. Based on my discussion with Stokes and review of her deposition, I understand the supporting sources in the 2022 LTIP Workbook are based on an export of the cost center "00890 - BALBOA CAPITAL" which includes detail to calculate the LTIP. The supporting sources are income statements and balance sheets for month to date ("MTD"), quarter to date("QTD"), and year to date ("YTD").

59. The 2022 LTIP Workbook is calculated based on the following key inputs: "Income before taxes," "Provision for Loan Losses," "Adjusted Provision @ ▮▮▮▮▮, and "LTIP Target."

60. Income Before Taxes is calculated based on Net Income plus Income taxes as shown in the 2022 income statement and the LTIP Workbook formulas.

|  | YTD Actual Dec 2022 |
|---|---|
| Net Income | $ ▮▮▮▮▮▮ |
| Income taxes | ▮▮▮▮▮▮ |
| Income Before Taxes | ▮▮▮▮▮▮ |

61. Provision for Loan losses is based on the income statement line item which totals ▮▮▮▮▮▮.

62. The "Adjusted Provision @ ▮▮▮▮▮" is based on the greater of ▮▮▮▮ of loan growth + actual net charge offs to maintain ▮▮▮ on portfolio" or "actual net charge offs."

➢ The first calculation for "▮▮▮▮ of loan growth + actual net charge offs to maintain ▮▮▮ on portfolio" is based on the "Balance Sheet Dec 2022 YTD" tab which provides the YTD change in balance sheet account "Loans Held for Investment, Net of Unearned Income" and the December 2022 ending balance for "Allowance for Loan Losses". In addition, the formula includes an

---

[26] AMERIS000233
[27] AMERIS000228
[28] AMERIS000738
[29] AMERIS001564
[30] AMERIS002164
[31] AMERIS002164

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 11

addition of $1,100,000 for a charge-offs adjustment. The resulting calculation of $13,512,269 is shown in the table below.



| | Dec 2022 | |
|---|---|---|
| YTD Change (Loans Held for Investment) $ | ██████████ | [a] |
| Percent of loan growth | ██████ | [b] |
| 1.25 Percent of actual loan growth | █████ | [c] = [a x b] |
| Allowance for Loan Losses | █████ | [d] |
| Subtotal | █████ | [e] = [c + d] |
| Total charge off adjustments, tax adjusted | █████ | [f] |
| 1.25% of loan growth + actual net chargeoffs to maintain 1.25% on portfolio | █████ | [g] = [e + f] |

> ➤ The second calculation for "actual net charge offs" is based on charge-offs calculated by month from Q1 2022 to Q4 2022. Total charge-offs equal ████████ as of year-end December 31, 2022. The total is based on the balance sheet account, allowance for loan losses. For example, "Actual Net Charge-offs Q1" is based on the March 2022 Balance Sheet for Balboa. The Allowance for Loan Losses totals ████████ as of March 2022 which ties to the amount calculated in the LTIP analysis. This formula is not used in the overall LTIP calculation.

> ➤ As the formula is based on the greater of the two calculations below, the 2022 LTIP model concludes on the "Adjusted Provision @ ███ percent" of ████████.

63. To calculate the "Total LTIP EBT," the formula adds "Income before taxes" with "Provision for Loan Losses," and subtracts the "Adjusted Provision" resulting in the total of ████████.

64. As the 2022 LTIP target is ████████, the performance goal threshold is met, and an accrual is recorded. Based on the formula, the LTIP calculation is $8,713,045 after calculating the EBT Above Threshold and applying 35 percent as stated in the LTIP Agreement. See table below for the entire calculation.

| | AMERIS002164 12/31/2022 |
|---|---|
| Income Before Taxes | $ ██████ |
| Provision for Loan Losses | ██████ |
| Total Before Provision | ██████ |
| Adjusted Provision @ 1.25% | ██████ |
| Total LTIP EBT | ██████ |
| LTIP target thru 12/31/2022 | ██████ |
| EBT Above Threshold | ██████ |
| Performance Percent | 35% |
| LTIP | 8,713,045 |

65. I note the Company recorded a larger accrual of $9,100,000 and the pool for 2021 was $9,098,045[32]. As noted in the workbook, the Company overpaid approximately $385,000[33] for the LTIP.

---

[32] AMERIS001564
[33] $9,098,045 minus $8,713,045 (AMERIS002164)

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 12

66. The 2022 LTIP calculation is $8,713,045 based on the Performance Formula for the 2022 Performance Period. As Byrne was paid based on the pool $9,098,045, no additional payment due to Byrne. I concluded the following:

➤ The model correctly calculates EBT as "defined as actual annual earnings before tax as identified as "Actual Earnings Before Tax" in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [34]
➤ The 2022 Threshold for Award is ▮▮▮▮▮▮▮ as stated in the agreement. [35]
➤ The formula correctly calculates the provision for losses on direct financing leases as shown in the ▮▮▮▮▮▮▮ and defined in the agreement as "The allowance for loan losses calculations and expenses for Balboa will be the greater of (i) actual net charge-offs or (ii) ▮▮▮▮ of net investment in direct financing leases." [37]

# G. BYRNE EMAIL ADJUSTMENT REQUESTS

## Byrne Email Summary

67. From 2022 to 2024, Byrne received emails from the Company with the LTIP calculations and the current LTIP workbook. I reviewed emails to Byrne and his responses to the emails. Throughout the period, Byrne requested adjustments to the LTIP calculation. This section summarizes the key email requests and the amount requested.

68. On January 31, 2024, Byrne sent an email summarizing three prior email requests for additional payout of $6,519,572. [38] A summary of his email is shown in the following table. In this section, I will summarize and rebut each of his email requests for adjustments to the LTIP calculation.

| Exhibit 25 - Byrne, Email sent on 1/31/2024, AMERISO001126 | | |
|---|---|---|
| **Description** | **Amount** | **Byrne Reference** |
| 2023 LTIP | $    3,037,750 | See e-mail dated 1/15/24. |
| Security Deposits | 2,024,765 | See e-mail dated 1/27/24. |
| 2022 LTIP | 1,457,057 | See e-mail dated 1/29/24. |
| | 6,519,572 | |

## 2023 LTIP Adjustment Requests

69. The following table summarizes the general categories described in Byrne's adjustment requests and the total amount to adjust as provided in Byne's email dated January 15, 2024. [39]

---

[34] AMERIS000227
[35] AMERIS000228
[36] AMERIS000233
[37] AMERIS000228
[38] AMERISO001126
[39] AMERISO001148

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 13

| Exhibit 28, AMERISO001148 , Email dated 1/15/2024 | | |
|---|---|---|
| Category | | Amount |
| Stipulated judgements not consistent past practices | $ | 554,191 |
| Depreciation for pre acquisition assets erroneously deducted | | 145,741 |
| Overhead compensation for accounting, IT, marketing | | 6,505,966 |
| Tax benefits | | 1,398,874 |
| Interim rent not consistent with past practices | | 1,974,174 |
| Accounting change to repossessions - non consistent past practices | | 1,457,448 |
| | | |
| Amount Requested by Byrne: | $ | 3,037,750 |

Byrne's Allegation of Stipulated Judgments

70. Byrne's email requests the following adjustments to stipulated judgments, stating: "The accounting of stipulated judgments was changed which is not consistent with past practices. This resulted in $554,191 in reduced income. See 99X STIP- original STIP Amount."[40]

71. In an email dated February 5, 2024, LaHaise responds to Byrne agreeing with the change stating, "We agree with your request to adjust the LTIP EBT by $554,191.00 and it is reflected in the final 2023 LTIP calculation." I understand these adjustments were made to resolve the dispute with Byrne, but I conclude these adjustments should not be included in the LTIP calculation.

72. Byrne provided a spreadsheet summarizing the lease number, original amount, and the payment received. The original amount totals $948,533 and the payment received totals 394,242.[41] The difference between these totals is the adjustment requested by Byrne or as stated in the workbook, the "Net amount to receive" of $554,191.

73. Based on discussions with Stokes, these companies with delinquent loans were in bankruptcy and were over 120 days past due to the Company. Bankruptcy is a strong indicator that the collection is doubtful. In addition, partial payments on these overdue balances do not guarantee future payment. GAAP guidance ASC 606-10-55-3[42] states that when collectability is doubtful, the Company may not recognize revenue until collectability is probable or cash is received.

74. Byrne's request to record the entire uncollected balance as revenue does not comply with GAAP. ASC 606 and ASC 326 provide key guidance on revenue recognition and the treatment of credit losses. Specifically, ASC 606-10-25-23[43] requires that revenue be recognized only when it is both earned and realizable. If a stipulated judgment is not collectible, such as in bankruptcy cases, it should not be recognized as income. ASC 326-20-35-8[44] further requires that when a receivable is determined to be uncollectible, it must be written off against the allowance for credit losses, effectively recognizing the loss in earnings. Additionally, ASC 450-30-25-1[45] states that income should not be recognized if its realization depends on future events, such as the successful collection of a judgment.

---

[40] AMERISO001148
[41] AMERIS000788
[42] Financial Accounting Standards Board (FASB), Accounting Standards Codification, Topic 606
[43] Financial Accounting Standards Board (FASB), Accounting Standards Codification, Topic 606
[44] Financial Accounting Standards Board (FASB), Accounting Standards Codification, Topic 326
[45] Financial Accounting Standards Board (FASB), Accounting Standards Codification, Topic 450

75. Based on my review, Byrne's request to include additional revenue is not supported by the facts. The LTIP Agreement clearly states the calculation is based on GAAP.

Byrne's Allegation of Depreciation for Pre-Acquisition Assets

76. Byrne's January 15, 2024, email requests the revision of depreciation, stating "Depreciation for pre-acquisition assets has been erroneously deducted. This is $145,741 in 2023. See CC 890 2023 YTD Depreciation schedule."[46]

77. Stokes provides a response to the depreciation request in her deposition related to a similar depreciation adjustment, stating [**emphasis added**]:

➤ "I remember specifically discussing with Pat Byrne when we were there -- when Jim and I were there -- Jim is also James LaHaise, when we were there July 31 and August 1. So that's what Exhibit 8 is referring -- 8 or 9 is referring to. And during that conversation with Pat Byrne, we explained that the depreciation for pre-acquisition assets should be included, and he actually agreed in that meeting to that when we explained it. That -- his point was that Balboa had bought those fixed assets, and so that he shouldn't be charged for them. However, in that meeting in July, what we explained to him, and he understood, was, **you did buy them from a cash basis perspective, and you put them on your books, and you were depreciating them**. **So you could only take in the expense for the piece that you had depreciated. At acquisition, we took those assets at fair value -- or at book balance. We paid him in the acquisition for those at book balance. And now we were amortizing the remaining book balance per GAAP, and that that was consistent with the** ▮▮▮▮▮▮▮▮. And it was consistent in both places, and there was no adjustment necessary. And he agreed at that trip in California, and he dismissed that one. And then it showed back up in November."[47]

78. Based on my review of the Byrne file supporting his adjustment, the $145,741 is deprecation in 2023. The range of assets he selected have an "In Svc Date" between December 29, 2021, and January 1, 2022. The acquired value of Byrne's selected assets is $423,762.[48]

79. Based on my discussions with Stokes, I understand the service dates of these assets coincide with the Ameris purchase of Balboa and these assets were acquired in the December 2021 transaction. The assets listed by Byrne include office furniture, signs, laptops, and licenses.

80. GAAP provides guidance on depreciating assets and recording depreciation expense on the income statement. ASC 360-10-35-4[49] defines depreciation as a systemic allocation of cost over the asset's useful life. Furniture and computers are depreciable assets under GAAP. These assets should be capitalized at cost and depreciated over their estimated useful life. Depreciation expense begins when the asset is placed in service and continues until the asset is fully depreciated or disposed of.

81. Consistent with GAAP and the LTIP agreement, the Company recorded depreciation expense for these assets. As such, Byrne's requested adjustments are inconsistent with the LTIP agreement.

82. Further, Balboa recorded depreciation expense and maintained a fixed asset balance prior to the acquisition. Per the financial statements, Balboa recorded depreciation and amortization expense of

---

[46] AMERIS002261
[47] Nicole Stokes Deposition Testimony dated November 3, 2025, Page 95-96
[48] AMERIS000789
[49] Financial Accounting Standards Board (FASB), Accounting Standards Codification, Topic 360

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 15

$645,821 in 2020. Furniture, Fixtures and Equipment totaled $14,632,964 and accumulated depreciation of $13,630,038.[50]

83. In addition, Balboa's unaudited balance sheet provides a monthly balance through September 30, 2021, with "Office Furniture & Equipment of $6,316,079 and Accumulated Depreciation & Amortization of $5,703,528, totaling $612,551 of Fixed Assets.[51]

84. I found no evidence that these assets were fully depreciated prior to the acquisition, nor any support for excluding depreciation expense for these assets in 2023.

85. Further, I received a Microsoft Excel workbook of the ▆▆▆▆▆▆▆ produced by Plaintiff ("Plaintiff's ▆▆▆▆ Excel Workbook")[52] which I understand has not been authenticated and there is a dispute as to its admissibility. In addition, I understand the Company has never received or reviewed this workbook. If the workbook is authenticated and admissible, I have the following observations:

   ➢ The Plaintiff's ▆▆▆▆ Excel Workbook includes historical fixed assets and deprecation in the balance sheet or "BS" tab. In addition, projected fixed assets and depreciation are included from Q2 2021 to Q4 2025. For example, Q4 2021 presents "Office Furniture & Equipment" of $15,092,205 and "Accumulated Depreciation" of $14,278,695.
   ➢ The Plaintiff's ▆▆▆▆ Excel Workbook does not include detailed fixed assets but confirms there were fixed assets which were not fully depreciated. As such, it appears reasonable that depreciation expense would continue to be incurred in the LTIP which is counter to Byrne's depreciation request.

Byrne's Allegation of Overhead Compensation for Accounting, IT, and Marketing

86. Byrne requests an adjustment to the LTIP model, stating: "Overhead compensation for Accounting, Credit, IT, and Marketing of $6,505,966 for 2023 needs to be added back. See attached Overhead 2022 and 2023. This is consistent with the verbiage in the Purchase and Sale Agreement, consistent with how it was initially presented to us, consistent with who these departments report to (they all report to the bank's personnel), and consistent with how traditionally these departments have been viewed (as indirect costs or corporate overhead). As previously and consistently communicated, we did not consent to these departments not reporting into Balboa."

87. Byrne attached to the email a listing of employees that he alleges should not be included in overhead. ("Plaintiff's Employee List").[53]

88. However, based on discussions with Stokes and review of her deposition, these employees worked 100 percent on Balboa and were included in the ▆▆▆▆▆▆▆. When asked about this category of adjustments requested by Byrne, Stokes replies in her deposition stating [**emphasis added**]:

   ➢ "…the overhead calculations for accounting, credit, IT, and marketing. So we -- and there's several statements in here that is incorrect or false, including with the verbiage in the purchase and sale agreement. "Consistent with how it was initially presented." That is false. And, "consistent with who these departments report to." So I'll take accounting as an example. All of the direct accountants that are  -- that were doing the accounting for Balboa, **they were in the ▆▆▆▆▆▆▆, and they were working 100 percent on Balboa accounting**. And so they were

---

[50] PLAINTIFF 000292
[51] PLAINTIFF 000302
[52] Plaintiff 1147 - ▆▆▆▆▆▆▆▆▆▆▆
[53] AMERIS000790

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 16

charged to him. What we -- and we had talked about this before the acquisition, that that's how it would be structured. And that when we talked about the indirect costs, that would be that we did not charge Balboa Capital for any costs, such as Sufhan's time, my time, Jim LaHaise's time. **There was no corporate overhead allocation.** Also included to that as an example is accounts payable, where prior to the acquisition, Balboa Capital had their own accounts payable department. That was included as an expense in the ▮▮▮▮▮▮▮▮. But after acquisition, Ameris accounting started preparing all of -- paying all of their invoices through AP, and we did not charge him for any of that time because it was not 100 percent direct cost, but he got the benefit of that in the ▮▮▮▮▮▮▮▮, that in the model, he still had those AP expenses, but he was no longer charged for it. So we agreed our -- our belief is that he was only charged for the direct accounting or for the direct -- direct expenses and was not charged for any of the indirect expenses. So there was no adjustment needed."[54]

➢ Stokes further expands on the reasoning behind some employees not directly reporting into Balboa, explaining "…You know, I'm the CFO of a publicly-traded company, and I'm responsible for the financial statements. And those accountants have to report to me in order for me to be able to sign my SOX certification[55], and that we have to have internal controls. And so some of this moving around was for those internal controls where Pat kept the loan operations, and then the Ameris accounting reported to me for segregation of duties under SOX 404. And he knew that. We absolutely discussed that prior to acquisition."[56]

89. To verify the employees were in fact Balboa employees, I compared the Stock Purchase Agreement employee census on Schedule 3.22(A)[57] to the listing of employees to the attachment provided by Byrne.[58]

90. In addition, I spoke to LaHaise who performed a review of the employees listed in Byrne's supporting document. I understand LaHaise reviewed Ameris's human resources systems. In addition, I understand his review is based on his personal knowledge of Balboa staffing. LaHaise confirmed that each employee listed in Byrne's spreadsheet worked for Balboa.

91. Based on my review, the adjustments to overhead compensation lack adequate support, and I conclude that the LTIP model properly included these employees.

Byrne's Allegation of Tax Benefits

92. Byrne states in his email, "The tax benefits to Ameris was $1,398,874 for 2023. See SuperTrump Portfolio Q1 Q2 Q3 Q4 2022 v2."[59]

93. Stokes provides further insight into his request in her deposition stating, "…he's asking for a tax benefit, but the LTIP is based on pre-tax income. We've already established that earlier today. So the fact that there was a tax benefit is irrelevant because it's all based on pre-tax income. So there was no adjustment needed."[60]

---

[54] Nicole Stokes Deposition Testimony dated November 3, 2025, Page 96-97
[55] SOX Certification is the formal attestation required under the Sarbanes-Oxley Act, that the organization's financial statements and internal controls are accurate and compliant.
[56] Nicole Stokes Deposition Testimony dated November 3, 2025, Page 96-97
[57] Schedule 3.22(A) (PLAINTIFF 000372 to PLAINTIFF 000375)
[58] AMERIS000790
[59] AMERIS0001148
[60] Nicole Stokes Deposition Testimony dated November 3, 2025, Page 99

**Expert Report of Maryellen Sebold**

Patrick Byrne v. Ameris Bank

United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989

December 5, 2025

Page 17

94. The agreement calculates EBT "defined as actual annual earnings before tax as identified as "Actual Earnings Before Tax" in the ███████████████████████████████

95. The ██████████ clearly states, "Adjusted Earnings Before Tax" and does not include any tax benefit line items within the model.[62] Tax expenses and tax benefits are recorded after EBT as supported by the definition of earnings before tax. Thus, tax benefits should not be included in EBT as requested by Byrne.

96. Further, Balboa's audited financial statements clearly show "Provision for income taxes" as a line item after earnings before taxes.[63]

97. Based on my review of the email request and LTIP agreement and other supporting documents, I conclude this adjustment is not supported by the terms of the LTIP. As such, no adjustment should be made to the LTIP calculation.

Byrne's Allegation of Interim Rent

98. Byrne states, "The accounting of interim rent was changed which is not consistent with past practices. This resulted in a $1,974,174 in reduced income. See 12.31.2023 Interim Rent Entry."

99. Stokes's email and deposition explain the following regarding interim rent: "The accounting of interim rent was changed with the impact of ASC842. This pending accounting change was identified in the due diligence process, and the impact was processed in the ██████████ (historical average of ████ was reduced to █████ n the model). Therefore, no impact should be made to the LTIP calculation."[64]

100. Further, Stokes provides additional context in her deposition:

> "Okay. So this is interim rent. This is what we referred to earlier this morning with ASC 842 and the revenue recognition. And so we knew -- and I believe it was in one of the exhibits. It was in Exhibit 7 that this was addressed. So in the ██████████, they were not ASC 842 compliant. Their software was many multiples behind on upgrades. And so we had to upgrade their software to be compliant with ASC 842, but in the ██████████, we realized that. And so we had adjusted from the ██ percent to █ percent. And then it took about a year to get all of those programs updated to be ASC 842 compliant. When those became compliant, we made this change. To be consistent, it was both in the -- in the ██████████ and in the actual results. So there was no LTIP adjustment needed."[65]

101. Interim rent refers to a temporary rental charge applied to the period between the delivery of leased equipment and the start of the regular lease payment schedule. As lease payments are usually structured to start on a fixed date such as the 1st of 15th of the month, the lessee may receive the asset before the official lease term begins. As a result, the Company charges interim rent to cover this stub period between the date of delivery and date of lease payment schedule.

102. Interim rent is considered a lease payment and should be recognized as lease income over the lease term. As such, you generally do not recognize interim rent as revenue immediately upon receipt.

---

[61] AMERIS000227

[62] AMERIS000233, AMERIS000234

[63] PLAINTIFF 000282

[64] AMERIS002172

[65] Nicole Stokes Deposition Testimony dated November 3, 2025, Page 99-100

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 18

---

103. Based on discussions with Stokes, the Company upgraded the Balboa software to correctly account for interim rent based on GAAP. This resulted in the Company accounting for interim rent in accordance with ASC 842.

104. Byrne stated that interim rent should be recognized when the cash is received. However, his request does not follow GAAP. The LTIP agreement specifically states the agreement must follow GAAP. As such, I concluded that Byrne's request to adjust interim rent did not comply with the terms of the LTIP agreement.

105. Further, I reviewed the Plaintiff's ▮▮▮▮▮▮▮ which I understand has not been authenticated and there is a dispute regarding its admissibility. In addition, I understand the Company has never received or reviewed this workbook. If the workbook is authenticated and admissible, I have the following observations:

  ➢ The Plaintiff's ▮▮▮▮▮ provides projections from Q2 2021 to Q4 2025 in the "General Inputs" tab. The Interim Rent projections show the "Total Percentage" of ▮ percent for this projection period which is consistent with Stokes's deposition.

106. Under ASC 842, interim rent represents consideration for the right to use the leased asset during the stub period between delivery and the commencement of the regular lease payment schedule. For finance leases, interim rent is considered part of total lease payments and included in the lessor's net investment in the lease. In accordance with ASC 842-30-25-1 through 25-8,[67] lease income for finance leases is recognized over the lease term using the effective interest method, not immediately upon receipt. This approach aligns with the revenue recognition principle in ASC 606-10-25-23,[68] which requires income to be recognized as performance obligations are satisfied. Therefore, interim rent should be allocated systematically over the lease term rather than recorded as revenue when collected.

Byrne's Allegation Related to Repossessions

107. Byrne states, "A decision was made to change the accounting specific to repossessions in Q1 2023 which is not consistent with past practices, this resulted in additional charge-offs of ▮▮▮▮ in Q3 and Q4. See Deals charged off before 120 for equipment repossessed 12.31.23."

108. Stokes' deposition provides clarification regarding this request:

  ➢ "Okay. So number one, the accounting specific to repossessions. We discovered in the end of '22, beginning of '23 that Balboa Capital had not been following GAAP on the way they accounted for repossessions. And so we made the accounting adjustment to follow GAAP, per the agreement that we would follow GAAP. And so that is the adjustment that he is proposing under non-GAAP. And we said we were calculating the LTIP under GAAP, pursuant to the agreement."

109. Based on my discussion with Stokes, in certain cases when a Balboa loan defaulted, Balboa repossessed the equipment, sold it at auction, and initially recorded the proceeds as prepaid rent. These funds were then applied to the loan to remove its past-due status and delay the charge-off. However, the Company and Stokes adhered to GAAP by selling the repossessed equipment, paying

---

[66] Plaintiff 1147 - ▮▮▮▮▮▮▮
[67] Financial Accounting Standards Board (FASB), Accounting Standards Codification, Topic 842
[68] Financial Accounting Standards Board (FASB), Accounting Standards Codification, Topic 606

off a portion of the loan with the proceeds, and charging off the remainder of the loan. As a result, only actual payments received on these loans would be taken as a recovery of the charge-off.

110. Byrne's request incorrectly records the amounts as revenue. As the LTIP agreement clearly states the calculation should follow GAAP, I concluded the request should not be included in the LTIP calculation.

111. GAAP provides clear guidance on accounting treatment for repossessions. Specifically, ASC 326 addresses the recognition of credit losses on receivables, while ASC 360 governs the valuation of repossessed equipment. Under ASC 326-20-35,69 entities must recognize an allowance for expected credit losses and write off receivables when they are deemed uncollectible, such as after repossession. The write-off reduces the allowance for credit losses and removes the receivable from the books. In addition, ASC 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 requires that if the repossessed equipment is intended for resale, it be classified as "held for sale" and measured at fair value less cost to sell. This ensures that the repossessed asset is accurately reflected on the balance sheet and any impairment is recognized promptly.

## Security Deposits

112. Byrne sent an email dated January 27, 2024, requesting payment for $2,024,765 based on security deposits. His calculation multiplies the total income adjustment by 3.1 based on the Balboa purchase agreement. Byrne states in his email:

➢ "It has come to my attention that the termination dates were not correct on the previous sent first spreadsheet. This has now been corrected in the second spreadsheet. The deals highlighted in the "DEPOSITS TO KEEP" tab terminated pre-acquisition equal $277,844.84 and the deals highlighted in the "NEED TO DECIDE" tab terminated pre-acquisition equal $375,305.16 for a total of $653,150. The $653,150 is additional pretax income pre-acquisition. Therefore, based on our purchase agreement an additional $2,024,765 is owed (See cell E309 on the NEED TO DECIDE tab in the second spreadsheet). It is unnerving that Ameris intentional delayed this analysis for over two years now. Please remit the $2,024,765 at your earliest convenience."

➢ I summarize his request in the following table:

**Exhibit 9 - LaHaise, AMERIS001131.1,  Email dated 1/27/2024**

| Category | Amount |
|---|---|
| Deposits to Keep | $      277,845 |
| Need to Decide | 375,305 |
|  | 653,150 |
|  | 3.1x |
| Amount Requested by Byrne: | 2,024,765 |

113. Based on discussions with Stokes, Balboa historically collected a security deposit at the inception of each lease, recording it as a liability to be addressed at lease termination. Under GAAP, refundable security deposits are required to be returned to the lessee. However, Balboa's practice was to

---

[69] Financial Accounting Standards Board (FASB), Accounting Standards Codification, Topic 326
[70] Financial Accounting Standards Board (FASB), Accounting Standards Codification, Topic 360

recognize these deposits as income if the customer did not request a refund. In contrast, Ameris returns the deposits that are refundable.

114. ASC 842 provides key guidance on the treatment of lease security deposits. Refundable security deposits are not considered lease payments and must be recorded as a liability by the lessor. ASC 842-10-30-5[71] defines lease payments and explicitly excludes refundable deposits from this definition. Because the deposit represents a liability, the lessor is obligated to settle it at the end of the lease term, either by refunding the cash or applying it to legitimate charges such as damages. Additionally, ASC 405-10[72] clarifies that a liability is a present obligation to transfer assets to another party. A refundable security deposit meets this definition because the lessor is required to return the funds unless forfeiture conditions apply. Consequently, at lease termination, the liability must be extinguished, typically through refunding the deposit.

115. Based on my review of Byrne's email, I understand Bryne requested additional payment related to security deposits that he defines as pre-acquisition income based on his review. He requests this additional income should be multiplied by 3.1x based on the Stock Purchase Agreement. I understand Byrne's email request does not impact the LTIP calculation.

116. Ameris does not record refundable lease payments as income as discussed in GAAP guidance stated above. Based on my review, the Ameris methodology for security deposits is the correct accounting treatment.

## 2022 LTIP Adjustment Requests

117. The following table summarizes the general categories of Byrne's adjustment request and the total amount as provided in Byne's email dated January 29, 2024. The three requests follow the same fact pattern as the three categories I discussed in the previous section.

| Exhibit 26, AMERISO01144 , Email dated 1/29/2024 | |
| --- | --- |
| Category | Amount |
| Overhead compensation for accounting, IT, marketing | $ ▮▮▮▮▮▮ |
| Tax benefits | 596,295 |
| Depreciation for pre acquisition assets | 210,576 |
| Amount Requested by Byrne: | 1,457,057 |

### Byrne's Allegation of Overhead Compensation for Accounting, IT, and Marketing

118. Byrne's email states the following: "Overhead compensation for Accounting, IT, and Marketing of ▮▮▮▮▮▮ for Q4 2022 needs to be added back. See attached Overhead 2022 and 2023. This is consistent with the verbiage in the Purchase and Sale Agreement, consistent with how it was initially presented to us, consistent with who these departments report to (they all report to the bank's personnel), and consistent with how traditionally these departments have been viewed (as indirect costs or corporate overhead). As previously and consistently communicated, we did not consent to these departments not reporting into Balboa."

---

[71] Financial Accounting Standards Board (FASB), Accounting Standards Codification, Topic 842
[72] Financial Accounting Standards Board (FASB), Accounting Standards Codification, Topic 405

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 21

119. As previously discussed, the adjustment for overhead compensation should not be included in the LTIP calculation. Based on my discussion with LaHaise, the employees identified in the Plaintiff's Employee List worked 100 percent for Balboa.

120. Based on my review, the adjustments to overhead compensation lack adequate support, and I conclude that the LTIP model should include these employees.

Byrne's Allegation of Tax Benefits

121. Bryne describes his adjustment, stating: "The tax benefits to Ameris were $596,295 for 2022. See SuperTrump Portfolio Q1 Q2 Q3 Q4 2022 v2."

122. As previously discussed, the adjustment for tax benefits should not be included in the LTIP calculation. The LTIP agreement states the calculation is based on earnings before tax. As such, the adjustment requested by Byrne is not supported.

Byrne's Allegation of Depreciation for Pre-Acquisition Assets

123. The email from Byrne says "Depreciation for pre-acquisition assets has been erroneously deducted. This is $210,576 in 2022. See Depreciation 6.30.23."

124. As previously discussed, the adjustment for depreciation should not be included in the LTIP calculation. I found no evidence that these assets were fully depreciated prior to the acquisition, nor any support for excluding depreciation expense for these assets in 2023.

# H. EXPERT OPINIONS

125. Based on my analyses set forth in this report, I have reached the following conclusions and expert opinions.

126. **Opinion 1:** The 2022 LTIP calculation is $8,713,045 based on the Performance Formula for the 2022 Performance Period resulting in no additional payment due to Byrne beyond the amount he was paid.[73]

127. **Opinion 2:** The 2023 LTIP calculation did not meet the Threshold for Award for the 2023 Performance Period resulting in zero payment due to Byrne.

128. **Opinion 3:** Byrne's requested adjustments were not supported by GAAP or the terms of the LTIP agreement.

129. **Opinion 4**: Ameris's recording of unclaimed security deposits that were acquired in the Balboa transaction are supported by GAAP and accounting principles.

---

[73] Byrne was paid $5,690,261 (AMERISO001562 to AMERIS001565) and $12,150.29 (AMERIS001560).

**Expert Report of Maryellen Sebold**
Patrick Byrne v. Ameris Bank
United States District Court for the Central District of California Southern Division - Case No. 8:24-cv-01989
December 5, 2025
Page 22

# I.  CONCLUSION

130. This report is prepared for the specific purposes discussed herein and may not be appropriate for other purposes.

131. I reserve the right to update, modify, or supplement this report, should I be provided with additional information. I also reserve the right to respond to and opine on the assertions or opinions of the Plaintiff and its experts.


Respectfully submitted,

*Maryellen Sebold*

_____

Maryellen Sebold
Partner
Resolution Economics, LLC





## Maryellen Sebold, CPA/CFF, CIRA

Partner, Financial Advisory Services
**Resolution Economics, LLC**
Los Angeles, California
msebold@resecon.com
+1 310 246 3592

## Summary of experience

Maryellen Sebold is a Partner in Resolution Economics, LLC's Financial Advisory Services practice.  She is a Certified Public Accountant, a Certified Insolvency and Restructuring Advisor, and is certified in Financial Forensics. She has more than 30 years of experience in the areas of forensic accounting and fraud investigations, litigation consulting, bankruptcy, and corporate restructuring.

Maryellen has led teams in the development of strategies specific to complex financial fraud matters and internal investigations of public and private companies.  She has performed investigations into allegations of fraud and mismanagement including preparing and evaluating employee dishonesty and fidelity bond claims. She has been involved in investigating misappropriation of assets, Ponzi schemes, and financial statement irregularities, as well as evaluating alter-ego issues.  Maryellen is experienced in calculating economic damages including lost profits, evaluating shareholder and partnership disputes, and analyzing financial matters.

She has been designated as an expert witness and has testified in numerous trials, depositions and arbitrations, applying her specialized knowledge to a wide range of industries, including construction, entertainment, healthcare, insurance, manufacturing, publishing, real estate and property management, securities, and transportation. In the bankruptcy arena, Maryellen has worked with trustees and creditors' committees as a financial advisor in Chapter 7 and 11 matters and has run operating Chapter 11 businesses including a steel fabrication company.  In addition, she has worked with bank syndications in efforts to restructure multimillion-dollar loans made to failing companies.

## Professional credentials and affiliations

- Certified Public Accountant (CPA) in California and New York
- Certified Insolvency & Restructuring Advisor (CIRA)
- Certified in Financial Forensics (CFF)
- American Institute of Certified Public Accountants, Past Council Member
- Association of Insolvency & Restructuring Advisors, Member
- CalCPA - Past Council Member and Past Board Member
- CalCPA - Forensic Services Steering Committee
- CalCPA - Education Foundation - Past President of Board

## Education

- B.S., Accounting, Ithaca College

**Maryellen Sebold, CPA/CFF, CIRA**



## Publications

- "Navigating Global Investigations:  A Comprehensive Playbook", July 2024, published by RSM and by Women's
- "A Helping Hand: The Forensic Accountant's Role in Bankruptcy & Distressed Situations", *2021 California CPA Magazine*, published by CalCPA.
- "2015 Fraud and Forensics: Piercing Through the Deception in a Commercial Fraud Case" (Contributor. Published by ABI in 2015).
- "Bankruptcy Basics" *2009 California CPA Magazine*, published by CalCPA. Excerpt published in the Pacific Coast Business Times (October 23-29, 2009, Vol. 10 No. 33).
- *2002 Business Credit, a publication of the National Association of Credit Management* "Reducing Credit Risk: Are Your Publicly Traded Customers' Financial Statements More Reliable in the Light of New Federal Legislation? A Review of the Sarbanes Oxley Act of 2002 and What it Means to the Credit Professional". (November/December 2002). Also published in *The Trade Vendor Quarterly*, published by Blakeley & Blakeley, LLP (Fall 2002).
- "Fraud: The Real Threat of Identity Theft", *2002 The Witness Chair*, published by CalCPA, (Winter 2002, Issue 25).
- "Fraud: Bankruptcy - The Basics You Need to Know", *2001 The Witness Chair*, published by CalCPA, (Spring 2001, Issue 22).

## Trial Testimony

- **Moement, Inc. v. Groomore, Inc.; Chunliang Lin; Jie Zhang; Songyun Liu**
  *United States District Court for the Central District of California, Case No. 2:22-cv-02871 (May 2025) (Plaintiff)*

- **Green Ltd., LLC v. Port of Des Moines, LLC**
  *Iowa District Court of Polk County, Case No. LACL154866 (March 2025) (Plaintiff)*

- **Jason Baker v. Victor Schittone, The Blackpointe Group, Blackpointe Group Construction & Management, Inc.**
  *Superior Court of the State of California, County of Ventura, Case No. 56-2020-00540188-CU-BY-VTA (November 2024) (Defendant)*

- **Wael Mudawar v. Suheil I. Mudawar**
  *Superior Court of the State of California, County of Los Angeles, East District, Case No. 20PSCV00161 (February 2024) (Plaintiff)*

- **Pacific States Building LP v. IBelieveInSwordfish, Inc.**
  *Superior Court of California, County of San Francisco, Case No. CGC-22-599549 (November 2023) (Plaintiff)*

- **C. Shawn Skillern, M.D. and CSS Enterprises, Inc. v. Li Sheng Kong, M.D.; LSK Enterprises, Inc.; Sydney S. Guo, M.D.; SSG Enterprises, Inc.; Edward N. Li, M.D.; LFC Group, Inc.; West Coast Vascular; Central Coast Vascular, Inc.; Central Coast Cardiovascular ASC, LLC**
  *Superior Court of the State of California, County of Ventura, Case No. 56-2019-00537489-CU-CO-VTA (September 2023) (Plaintiff)*

**Maryellen Sebold, CPA/CFF, CIRA**



- **Daniel J. Snukal, Robert M. Snukal, Mark D. Mittleman, T.C.P. II, LLC d/b/a/ Tacos Puntaa Cabras v. 926 Broadway, LLC, Fortuna Asset Management**
  *Superior Court of the State of California, County of Los Angeles – West District, Case No. 19SMCV00603 (May 2023) (Plaintiff)*

- **Brandon Griffith, Trustee of the Hernandez Family Trust 2016 v. Sara Nicole Dakarman; Sara Nicole Dakarman as executor to the estate of Troud Dakarmejian; IPD, Inc. dba LA Dismantler, dba LA Porsche**
  *Superior Court of the State of California, County of Los Angeles – Northwest District, Case No. LC106162 (October 2022) (Plaintiff)*

- **Paradice Decorating Company v. Ansa Productions, Inc., Lisa Allison Kaz, Terri Toennies, Global Experience Specialists, Inc.**
  *Superior Court of California, County of Los Angeles, West District, Case No. SC122912 (2022) (Plaintiff)*

- **Annex Warehouse Company, Inc. v Nairmac, Inc. dba Premier Coach; TBW, LLC dba Premier Coach of Camarillo; Prestige Bodyworks, Inc.; Clifford Sullivan**
  *Superior Court of the State of California, County of Los Angeles, Case No. 56-2017-00502448-CU-BC-VTA (2019)*

- **Robert G. Harding v The A. Dean Harding Marital and Family Trust Dated December 29, 1994; Ricky Taylor; Estate of Margene Harding; Jill H. Kendal; Jeana H. Vuksinick; and Judith C. Harding**
  *District Court in and for Utah County, State of Utah, Case No. 153100007 (2019) (Defendant)*

- **Richard S. Lough v. Rodger B. Lough**
  *Superior Court of the State of California, County of Orange, Case No. 30-2011-00507232 (2018)*

- **Kate Braganti v. Ravinder S. Grewal and Harinder Singh Nagpal**
  *Superior Court of California, County of Los Angeles, Case No. BC601999 (2018) (Defendant)*

- **Jerry Ross et al. v. Alan C. Fox, et al.**
  *Superior Court of California, County of Los Angeles, Case No. BC 576879 (2018) (Defendant)*

- **Plott Family Revocable Trust**
  *Superior Court of California, County of Los Angeles, Case No. BP 131447 (2018)*

- **Linda DiTomaso v. David Joseph DiTomaso**
  *Superior Court of California, County of Ventura, Case No. D355825 (2017 and 2018) (Plaintiff)*

- **EDF Renewable Energy, Inc. v. County of Suffolk**
  *United States District Court, Eastern District of New York, Case No. CV13-3361 (2016) (Plaintiff)*

- **Mount Olympus Mortgage Company v. Guaranteed Rate, Inc**.
  *Superior Court of the United States of California, Case No. 30-2014-00729438-CU-BT-CJC (2016) (Plaintiff)*

- **Hoskin Hogan v. BP West Coast Products LLC**
  *Superior Court for the State of California, County of Los Angeles, Case No. BC 460880 (2015)*

- **Garth Fisher v. Andre Aboolian,**
  *Superior Court of the State of California, County of Los Angeles, Case No. SC 101274 (2014) (Plaintiff)*

3

**Maryellen Sebold, CPA/CFF, CIRA**



- **Richard S. Lough v. Rodger B. Lough**
  *Superior Court of the State of California, County of Orange, Case No. 30-2011-00507232 (2014)*

- **Farhad Sharim on behalf of Encino Properties, LLC; Farhad Sharim v. Joseph Amin, Aminder Singh Randhawa dba Five Star Laundromat; Net Realty Investments, Inc. and Robert Melamed**
  *Superior Court of California, County of Los Angeles, Case No. LC093219 (2013)*

- **Terri Daniels et al v. Coapt Systems, Inc., Coapt, LLC; MicroAire  Surgical Instruments, LLC; IntegReview, LTD; Robert Elson; David Apfelberg; Laureen DeBuono; Thomas Kanar; Dan Grubman; David Barella; Bader Bellahsene; Charlotte Copeland; Linda Ruedy; David Goldberg; Madeleine Lyell; William Hubbard; Cytophil, Inc.; John Kraczkowsky; Guy Nohra; Alta California Partners III, L.P.; Alta California Management Partners III, LLC; Lowell Sears; Brent Aherns; Canaan Equity III L.P.; Canaan Equity Partners III LLC**
  *Superior Court of California, County of Los Angeles, Case No. BC480849 (2013) (Defendant)*

- **The Garber Family Trust dated 1/11/1996 by David L. Garber and Cynthia Garber, trustees of the Garber Family Trust dated 1/11/1996; The 1999 Nicol Family Trust dated 4/27/1999 by George C. Nicol and Kellye M. Nicol, Trustees of the 1999 Nicol Family Trust dated 4/27/1999; The Jerry Martin Family Revocable trust dated 5/21/1994 by Jerry L. Martin and Peggy J. Martin, Trustees of the Jerry Martin Family Revocable Trust dated 5/12/1994; The Bezjian Family Trust dated 8/31/2009 by Albert H. Bezjian and Terry L. Bezjian, Trustees of the Bezjian Family Trust dated 8/31/2009; and Jeffrey Ludlow and Kathelyn Ludlow v. Edwin F. Moore; E.F. Moore & Company; Edwin Moore and Carolyn Moore, Trustees of the Edwin and Carolyn Moore Revocable Family Trust**
  *Superior Court of California, County of Ventura, Case No. 56-2011-00405066-CU-CO-VTA (2013) (Plaintiff)*

- **C. Richard Knowles and Maria L. Knowles v. Michael Lieberg and Yvonne Beauregard**
  *Superior Court of California, County of Los Angeles, Case No. BC454758 (2012)*

- **John R. Behrmann and Nancy P. Behrmann v. Rao K. Garuda; Joel R. Baker; FFR Financial Insurance Services, LLC et al**.
  *Superior Court of California, County of Santa Barbara, Case No. 1341686 (2012) (Plaintiff)*

- **Karen L. Greenstreet v. Danny L. Greenstreet**
  *Superior Court of California, County of Ventura, Case No. D330908 (2012) (Plaintiff)*

- **The People of the State of California v. Greg Loren Winslow**
  *County of Ventura, Case No. 2009006776 (2011) (Plaintiff)*

- **Jiangsu Guotai International Group Huatai Import and Export Co., Ltd. v. Rechem International, Inc.**
  *Superior Court of California, County of Los Angeles, East Judicial District, Case No. KC 048012 (2010) (Defendant)*

- **The People of the State of California v. Greg Loren Winslow**
  *County of Ventura, Case No. 2009006776 (2009) (Plaintiff)*

- **Iglesia Evangelical Latina, Inc. and Juan A. Reyes v. Southern Pacific Latina American District of the Assemblies of God, et al.**
  *Los Angeles Superior Court, Case No. BC 351174 (2007)*

4

**Maryellen Sebold, CPA/CFF, CIRA**



- **Preliminary Expert Report of Maryellen K. Sebold**
  *In the High Court of Justice, Queen's Bench Division Commercial Court, Claim No. 2004 Folio No. 68 (2005)*

- **APPI, Inc. v. Zornex International**
  *Los Angeles Superior Court, Case No. NC 014146 (1996) (Plaintiff)*

## Arbitration Testimony

- **FPL, LLC v. Kiran Dahya; DKN Hotel, LLC; Venus, L.P.; Jazzy, LLC**
  *Superior Court of the State of California, County of Orange, Case No. 30-2021-01218810-CU-BC-CJC (August 2025) (Plaintiff)*

- **S&H Packing & Sales CO., Inc.; S&H Farms, LLC; Horwath & Co., Inc.; West Coast Marketing, LLC; Violet Street Properties, LLC; Royal Produce Sales Co.; Robert Underwood; Vido Artukovich; Brandon Slavic v. Daniel Horwath; Daniel & Rosa Horwath Family Trust Dated September 1, 2000**
  *Los Angeles Superior Court Case No. BC 695710 (2019) and JAMS Reference No. 1220058835 (2019)*

- **Toyota Tsusho America, Inc. v. Scott Vollero, American Arbitration Association**
  *Los Angeles, CA, Case No. 50-457-T-001142-13 (2015) (Plaintiff)*

- **ABCSP Inc. v. Anthony Nieves et al. and Related Cross-Actions, American Arbitration Association**
  *San Francisco, CA, Case No. 74 114 Y 0020 12 (2013) (Defendant)*

- **John Lercel v. Michael Green, Judicial Arbitration and Mediation Service**
  *Los Angeles, CA, Case No. 1220039665 (2010) (Plaintiff)*

- **Xcorporeal, Inc. v. National Quality Care, Inc., Judicial Arbitration and Mediation Service**
  *Santa Monica, CA, Case No. 1210026747 (2008) (Plaintiff)*

- **Stephen J. Ross v. US Technology Resources, Inc., American Arbitration Association**
  *Los Angeles, CA, Case No. 72 168Y 00105 06HL (2007)*

- **Serra Professional Building v. Serra Community Medical Clinic; Sadayappa Durairaj, Judicial Arbitration and Mediation Service**
  *Los Angeles Superior Court, CA, Case No. 1220031341 (2005)*

## Deposition Testimony

- **FPL, LLC v. Kiran Dahya; DKN Hotel, LLC; Venus, L.P.; Jazzy, LLC**
  *Superior Court of the State of California, County of Orange, Case No. 30-2021-01218810-CU-BC-CJC (June 2025) (Plaintiff)*

- **Preston Clark and Growthpoint Global Inc. v. WindSail Credit Fund L.P.; WindSail GP, LLC; WindSail Capital Fund, L.P.; Crate Modular, Inc.; Michael Rand; Matthew T. O'Rourke; James Pickell; GP Asset Resolution, LLC; WindSail Capital Group, LLC; Commenda Capital, LLC; Commenda Asset Resolution Partners, LLC**
  *Superior Court of the State of California, County of Orange, Case No. 30-2021-01191735-CU-BT-CJC (October 2024) (Defendant)*

**Maryellen Sebold, CPA/CFF, CIRA**



- **American Transportation Systems, Inc. v. Prevost Car (US) Inc.**
  *United States District Court Central District of California, Case No. 2:23-cv-08465 (September 2024) (Defendant)*

- **Moement, Inc. v. Groomore, Inc.; Chunliang Lin; Jie Zhang; Songyun Liu**
  *United States District Court for the Central District of California, Case No. 2:22-cv-02871 (August 2024) (Plaintiff)*

- **Henry Napel v Phillips 66 Company; James Rand; Kurtis Lawshe; Mike Guzman**
  *Los Angeles County Superior Court, Central District, Case No. 23STCV27842 (August 2024) (Defendant)*

- **Green Ltd., LLC v. Port of Des Moines, LLC**
  *Iowa District Court of Polk County, Case No. LACL154866 (June 2024) (Plaintiff)*

- **Pacific States Building, LP v. IBelieveinSwordfish, Inc.**
  *Superior Court of California, County of San Francisco, Case No. CGC-22-599549 (October 2023) (Plaintiff)*

- **Kallman + Thompson + Logan, LLP v. Enfants Riches Deprimes, LLC and Alexander Henry Levy**
  *Superior Court of the State of California, County of Los Angeles, Case No. BC715580 (August 2023) (Plaintiff)*

- **C. Shawn Skillern, M.D. and CSS Enterprises, Inc. v Li Sheng Kong, M.D.; LSK Enterprises, Inc.; Sydney S. Guo, M.D.; SSG Enterprises, Inc.; Edward N. Li, M.D.; LFC Group, Inc.; West Coast Vascular; Central Coast Vascular, Inc.; Central Coast Cardiovascular ASC, LLC**
  *Superior Court of the State of California, County of Ventura, Case No. 56-2019-00537489-CU-CO-VTA (July 2023) (Plaintiff)*

- **Jason Baker v. Victor Schittone, The Blackpointe Group, Blackpointe Group Construction & Management, Inc.**
  *Superior Court of the State of California, County of Ventura, Case No. 56-2020-00540188-CU-BY-VTA (April 2023) (Defendant)*

- **Daniel J. Snukal, Robert M. Snukal, Mark D. Mittleman, T.C.P. II, LLC d/b/a/ Tacos Puntaa Cabras v. 926 Broadway, LLC, Fortuna Asset Management**
  *Superior Court of the State of California, County of Los Angeles – West District, Case No. 19SMCV00603 (April 2023) (Plaintiff)*

- **Wael Mudawar v. Suheil Mudawar, et al.; Suheil Mudawar v. J&S Autobody and Paints, Inc.**
  *Superior Court of California, County of Los Angeles, Pomona Courthouse South, Case no. 20PSCV00161 (January 2023) (Plaintiff)*

- **Juan Carlos Bravo v. Huy Fong Foods, Inc. et al.**
  *Superior Court of California, County of Los Angeles, Central District, Case No. BC706093 (January 2022) (Defendant)*

- **Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.; Gangyou Wang; Alex Wong; Alan Li; Rui Shao; RF Biotech LLC**
  *United States District Court, Northern District of California, Case No. 3-20-CV-04808-WHA (June 2021) (Defendant)*

6

**Maryellen Sebold, CPA/CFF, CIRA**



- **John Bagley v. Ocean Direct, LLC**
  *Employment Arbitration, Case No. MXBWZ (March 2021) (Plaintiff)*

- **JGX, Inc.; Nick Bovis; Bovis Foods, LLC; and SMTM Technology, LLC v. Jon Handlery; Handlery Hotels; Sam Singer; Singer Associates, Inc.**
  *United States District Court, Northern District of California, San Jose Division, Case No. 5:17-cv-00287-BLF (January 2020) (Defendant)*

- **Paradice Decorating Company v. Ansa Productions, Inc., Lisa Allison Kaz, Terri Toennies, Global Experience Specialists, Inc.**
  *Superior Court of California, County of Los Angeles, West District, Case No. SC122912 (2019) (Plaintiff)*

- **Size It, LLC and Mickey Segal v. Asics America Corporation; Asics Corporation; Kevin Wulff; Kenji Sakai; Motoi Oyama; Katsumi Kato**
  *Superior Court of the State of California, County of Los Angeles, Case No. BC597769 (2018) (Plaintiff)*

- **Plott Family Revocable Trust dated March 31, 1999 and its Sub-trusts**
  *Superior Court of the State of California, County of Los Angeles, Case No. BP131447 (2018)*

- **Jerry Ross et al. v. Alan C. Fox et al.**
  *Superior Court of the State of California, County of Los Angeles, Case No. BC576879 (2018) (Defendant)*

- **Natural-Immunogenics Corp., v. Newport Trial Group, a California Corporation, Scott J. Ferrell, Ryan M. Ferrell, Victoria C. Knowles, David Reid, Andrew Lee Baslow, Andrew Nilon, Sam Pfleg, Matthew Dronkers, Taylor Demulder, Sam Schoonover, Giovanni Sandoval**
  *United States District Court, Central District of California, Case 8:15-CV-02034-JVS (JCG) (2017) (Plaintiff)*

- **Winton-Ireland Insurance Agency, Inc. v. Thomas Murphy**
  *Superior Court of California, County of Merced, Case No. 14-CV-00260 (2017) (Plaintiff)*

- **Nolan Lamb v. Certainteed Corporation; Calaveras Asbestos, Ltd.; Borgwarner Morse Tec Inc., Georgia-Pacific LLC; Honeywell International, Inc.; J-M Manufacturing Company, Inc.; Kaiser Gypsum Company, Inc.; Kelly-Moore Pain Company, Inc.; Duro Dyne Corporation; The Pep Boys Mannu Moe & Jack of California; Modesto Sand and Gravel; Genuine Parts Company; Noble Auto Parts Inc.; Sierra Rock Products, Inc.; George W. Reed & Associates, Inc.; J.T. Thorpe & Son, Inc.**
  *Superior Court of California, County of Contra Costa, Case No. C15-00057 (2017) (Defendant)*

- **Amusement Art, LLC v. Life Is Beautiful, LLC; Downtown Las Vegas Management LLC; Live Nation Entertainment Inc.; Ticketmaster, L.L.C.**
  *United States District Court Central District of CA, Case No. 2:14-cv-08290-DDP-JPR (2016) (Plaintiff)*

- **Terry Herbert v. Ford Motor Company, Takata Corporation, Takata Seat Belts, Inc., TK Holdings, Inc., Sylvia Maria Caleres II and Priscilla Stewart**
  *Superior Court of the State of California, County of San Bernardino, Case No. CIV DS1415915 (2016) (Defendant)*

**Maryellen Sebold, CPA/CFF, CIRA**



- **Thomas Anton and Thomas Anton & Associates, Inc. v. Barbich Hooper King Dill Hoffman Accountancy Corporation and Geoffrey King**
  *Superior Court of California, County of Kern, Case No. S-1500-CV 281077 SPC (2016) (Plaintiff)*

- **Mount Olympus Mortgage Company v. Benjamin Anderson, Brian Decker, Jonathan Solek, William Mickley, Diana Fernandez, Shannon Barker, Julie Rodieck, Yvonne Felix, Guaranteed Rate, Inc., an Illinois Corporation**
  *Superior Court of the State of California, County of Orange, Case No. 30-2014-00729438-CU-BT-CJC (2015) (Defendant)*

- **Lorean Barrera v. Pharmavite, LLC**
  *United States District Court Central District of CA, Case No. CV-11-4153 (AGRx) (2015) (Defendant)*

- **Bryan Cave v. Robert Snukal**
  *Superior Court of the State of CA for the County of Los Angeles, Case No. BC539071 (2015) (Defendant)*

- **Noah Bradach v. Pharmavite LLC**
  *United States District Court, Central District of CA, Case No. 2:14-cv-03218-GHK (AGRx) (2015) (Defendant)*

- **Hoskin Hogan v. BP West Coast Products LLC**
  *Superior Court for the State of California, County of Los Angeles, CA, Case No. BC 460880 (2015)*

- **EDF Renewable Development, Inc. v. County of Suffolk**
  *United States District Court, Eastern District of New York, Case No. CV13-3361 (2015) (Plaintiff)*

- **Toyota Tsusho America, Inc. v. Scott Vollero**
  *American Arbitration Association, Los Angeles, CA, Case No. 50-457-T-001142-13 (2015) (Plaintiff)*

- **Garth Fisher v. Andre Aboolian**
  *Superior Court of the State of California, County of Los Angeles, Case No. SC 101274 (2014) (Plaintiff)*

- **Sensys Networks Inc., v. ABX Engineering, Inc. and DOES 1-5**
  *Superior Court of the State of California, County of San Mateo, Case No. CIV 517583 (2014) (Defendant)*

- **AIDS Healthcare Foundation v. Los Angeles County, et a**l.
  *United States District Court, Central District of California, Western Division, Case No. 2:12-cv-10400-PA-AGR (2014) (Defendant)*

- **Richard S. Lough v. Rodger B. Lough**
  *Superior Court of the State of California, County of Orange, Case No. 30-2011-00507232 (2014)*

- **Bar-Kochba Botach v. Yochay Botach**
  *Superior Court of California, County of Los Angeles, Case No. BC480528 (2013) (Defendant)*

8

**Maryellen Sebold, CPA/CFF, CIRA**



- **Terri Daniels et al. vs. Coapt Systems, Inc., Coapt, LLC; MicroAire Surgical Instruments, LLC; IntegReview, LTD; Robert Elson; David Apfelberg; Laureen DeBuono; Thomas Kanar; Dan Grubman; David Barella; Bader Bellahsene; Charlotte Copeland; Linda Ruedy; David Goldberg; Madeleine Lyell; William Hubbard; Cytophil, Inc.; John Kraczkowsky; Guy Nohra; Alta California Partners III, L.P.; Alta California Management Partners III, LLC; Lowell Sears; Brent Aherns; Canaan Equity III L.P.; Canaan Equity Partners III LLC**
  *Superior Court of California, County of Los Angeles, Case No. BC480849 (2013) (Defendant)*

- **The Garber Family Trust dated 1/11/1996 by David L. Garber and Cynthia Garber, trustees of The Garber Family Trust dated 1/11/1996; The 1999 Nicol Family Trust dated 4/27/1999 by George C. Nicol and Kellye M. Nicol, Trustees of the 1999 Nicol Family Trust dated 4/27/1999; The Jerry Martin Family Revocable trust dated 5/21/1994 by Jerry L. Martin and Peggy J. Martin, Trustees of the Jerry Martin Family Revocable Trust dated 5/12/1994; The Bezjian Family Trust dated 8/31/2009 by Albert H. Bezjian and Terry L. Bezjian, Trustees of the Bezjian Family Trust dated 8/31/2009; and Jeffrey Ludlow and Kathelyn Ludlow v. Edwin F. Moore; E.F. Moore & Company; Edwin Moore and Carolyn Moore, Trustees of the Edwin and Carolyn Moore Revocable Family Trust**
  *Superior Court of California, County of Ventura, Case No. 56-2011-00405066-CU-CO-VTA (2013) (Plaintiff)*

- **C. Richard Knowles and Marie L. Knowles v. Michael Lieberg and Yvonne Beauregard**
  *Superior Court of California, County of Los Angeles, Case No. BC454758 (2012)*

- **John R. Behrmann and Nancy P. Behrmann v. Rao K. Garuda; Joel R. Baker; FFR Financial and Insurance Services, LLC et al**.
  *Superior Court of California, County of Santa Barbara, Case No. 1341686 (2012) (Plaintiff)*

- **Jeffrey I. Golden, Chapter 7 Trustee for the Estate of United Law Group Inc. v. Brookstone Law PC, Vito Torchia, Jr. and Damian Kutzner**
  *United States Bankruptcy Court, Central District of California, Santa Ana Division, Case No. 8:10-bk-18945-RK (2011) (Defendant)*

- **SCS Flooring Systems v. Meruelo Maddux – 845 S. Flower Street, LLC**
  *Judicial Arbitration and Mediation, Inc., Santa Monica, Case No. 1210028711 (2011) (Defendant)*

- **King Lombardi Acquisitions, Inc. v. Troop Real Estate, Inc., Rodd Law Feingold, et al**.
  *United States District Court, Central District of California, Western Division, Case No. CV09-03672 (2010) (Defendant)*

- **Barry A. Beitler, Suzanne Laff, Catherine O'Brien, Walter Hermann, Beitler & Associates, Inc., An Apple A Day, LLC, Leaping Lounge Lizards, LLC, 1251 4th Street, LLC v. Jeff Katofsky, Katofsky, LLP, Scenic Bison of Constantinople, Pylon Moo, LLC, Harvey Katofsky, 1045 Gayley, LLC, David Richman, Madison Partners, In Cahoots, LLC, Squeal Like A Pig, LLC, Squat Like A Hen, LLC, 2B Or Not 2B, FYJA, LLC, et al.**
  *Superior Court of California, County of Los Angeles – West District, Case No. SC086224 (2010) (Plaintiff)*

- **Carolyn Masters and Mark E. Moore v. Executive Relocation dba Sirva Relocation, LLC, Sirva Relocation Credit, LLC, Scott Burton, Linda Burton, Gilead Sciences, Inc., Troop Real Estate, Inc., and Laura L. Means, et.al.**
  *Superior Court of California, County of Ventura, Case No. 56-2008-00321433-CU-OR-VTA (2010) (Defendant)*

9

**Maryellen Sebold, CPA/CFF, CIRA**



- **Jiangsu Guotai International Group Huatai Import and Export Co., Ltd. v. Rechem International, Inc.**
  *Superior Court of California, County of Los Angeles, East Judicial District, Case No. KC 048012 (2008) (Defendant)*

- **S&N Associates, LLC, Dr. Neal Lascoe and Dr. Sanjay Lala v. Keith Sinclair, Bruce Hoffman, Greg Schneider and Equis Corporation**
  *Superior Court of California, County of Los Angeles, Case No. BC 341680 (2008)*

- **Gregory J. Parker v. Wendy P. McCaw, et al., ADRS Case No. 06-3548 Los Angeles, JAMS Ref No. 1100048553**
  *Santa Barbara Superior Court, Case No. 1038424. (2008) (Defendant)*

- **Patricia E. Musich v. John J. Marencik**
  *Los Angeles Superior Court, Case No. BC 354701 (2007)*

- **Stephen J. Ross v. US Technology Resources, Inc.**
  *American Arbitration Association, Los Angeles, Case No. 72 168Y 00105 06 HLT (2007*)

- **Voiceboard, Inc. v. Brookstone Telecom; SPX Corporation**
  *Ventura County Superior Court, Case No. CIV 244350 (2007)*

- **Laguna Hills Outpatient Surgery Center, Inc. v. Beverly Graham**
  *Judicial Arbitration and Mediation Service, Orange County, Case No. 1200039107 (2007) (Defendant)*

- **Burlington Northern and Santa Fe Railway Co. v. So. California Regional Rail Authority; Riverside County Transportation Commission; L.A. County Metropolitan Transportation Authority; Orange County Transportation Authority; San Bernardino Assoc. Governments**
  *American Arbitration Assoc., Los Angeles, Case No. 72 199 Y 00108 03 (2006) Defendant)*

- **Clayton Industries, Inc. v. SPX Corporation dba After Market Tool & Equipment Group**
  *American Arbitration Association, Los Angeles, Case No. 72-18165200-SMY (2001) (Defendant)*

10

**Patrick Byrne v. Ameris Bank**
**Exhibit B-1. List of Documents Relied Upon**

| File Name | Document Description |
| --- | --- |
| 13668094 LaHaise.James 30(b)(6), Confidential 110525.fullprint.pdf | James LaHaise Deposition |
| 13668094 LaHaise.James 30(b)(6), Confidential 110525.miniprint.pdf | James LaHaise Deposition |
| EXHIBIT 001 - 13668094 Jim.LaHaise.pdf | Notice of Deposition |
| EXHIBIT 002 - 13668094 Jim.LaHaise.pdf | Stipulated Protective Order |
| EXHIBIT 003 - 13668094 Jim.LaHaise.pdf | Disclosure Schedules |
| EXHIBIT 004 - 13668094 Jim.LaHaise.pdf | Patrick Byrne's Employment Agreement |
| EXHIBIT 005 - 13668094 Jim.LaHaise.pdf | Balboa Capital Long Term Cash Incentive Plan |
| EXHIBIT 006 - 13668094 Jim.LaHaise.pdf | Deal Team Members |
| EXHIBIT 008 - 13668094 Jim.LaHaise.pdf | Re: 2023 annual performance reviews |
| EXHIBIT 009 - 13668094 Jim.LaHaise.pdf | Re: Security Deposits |
| EXHIBIT 011 - 13668094 Jim.LaHaise.pdf | Byrne 2022 Senior Manager Performance Review |
| EXHIBIT 012 - 13668094 Jim.LaHaise.pdf | Byrne 2023 Senior Manager Performance Review |
| EXHIBIT 013 - 13668094 Jim.LaHaise.pdf | Re: Summary of compensation owed |
| EXHIBIT 014 - 13668094 Jim.LaHaise.pdf | Re: LTIP Discussion Points |
| EXHIBIT 015 - 13668094 Jim.LaHaise.pdf | Re: Employment contract |
| EXHIBIT 016 -13668094 Jim.LaHaise.pdf | Re: Employment Agreement dated as of December 10, 2021 |
| EXHIBIT 017 -13668094 Jim.LaHaise.pdf | Senior Management Agreement |
| EXHIBIT 018 - 13668094 Jim.LaHaise.pdf | Re: Notice of termination |
| Deposition Trancript of Patrick Byrne, Volume I - Mini.pdf | Patrick Byrne Deposition |
| Deposition Transcript of Patrick Byrne, Volume II - Mini.pdf | Patrick Byrne Deposition |
| Ex 0001 Patrick Byrne 102025.pdf | Defendant Notice of Deposition |
| Ex 0002 Patrick Byrne 102025.pdf | Ex Parte Application Response |
| Ex 0003 Patrick Byrne 102025.pdf | Ex Parte Application |
| Ex 0004 Patrick Byrne 102025.pdf | Ex Parte Application Response |
| Ex 0005 Patrick Byrne 102025.pdf | Supplemental Responses to Interrogatories |
| Ex 0006 Patrick Byrne 102025.pdf | Byrne v. McFadden Family Trust |
| Ex 0007 Patrick Byrne 102025.pdf | Byrne v. St. Margaret's Episcopal School |
| Ex 0008 Patrick Byrne 102025.pdf | Byrne v. Robert Dilbeck Masonry |
| Ex 0009 Patrick Byrne 102025.pdf | Paul C. Dishno v. Denise Byrne; Patrick Byrne |
| Ex 0010 Patrick Byrne 102025.pdf | Grady-o-Grady Construction, Inc. v. Byrne |
| Ex 0011 Patrick Byrne 102025.pdf | R. Thompson Artworks v. Byrne |
| Ex 0012 Patrick Byrne 102025.pdf | Byrne Employment Eligibility Verification |
| Ex 0013 Patrick Byrne 102025.pdf | Byrne LinkedIn |
| Ex 0014 Patrick Byrne 102025.pdf | Stock Purchase Agreement |
| Ex 0015 Patrick Byrne 102025.pdf | Byrne Employment Agreement |
| Ex 0016 Patrick Byrne 102025.pdf | Ameris Bank CEO Job Description |
| Ex 0017 Patrick Byrne 102025.pdf | Byrne 2022 W-2 |
| Ex 0018 Patrick Byrne 102025.pdf | Byrne 2023 W-2 |
| Ex 0019 Patrick Byrne 102025.pdf | Byrne 2024 W-2 |
| Ex 0020 Patrick Byrne 102025.pdf | Byrne v. Ameris Bank Plaintiff Responses and Objections - Request for Production |
| Ex 0021 Patrick Byrne 102725.pdf | Byrne v. Ameris Bank Civil Minutes |
| Ex 0022 Patrick Byrne 102725.pdf | Byrne v. Ameris Bank Fourth Amended Notice of Deposition of Plaintiff |
| Ex 0023 Patrick Byrne 102725 Confidential.pdf | Byrne - Ameris Bank Confidential Information Agreement |
| Ex 0024 Patrick Byrne 102725 Confidential.pdf | Acceptable Use Policy |
| Ex 0025 Patrick Byrne 102725 Confidential.pdf | Re: Summary of compensation owed |
| Ex 0026 Patrick Byrne 102725 Confidential.pdf | Re: 2022 LTIP Revision |
| Ex 0027 Patrick Byrne 102725 Confidential.pdf | Re: Notice of termination |
| Ex 0028 Patrick Byrne 102725 Confidential.pdf | Re: December 2023 LTIP |
| Ex 0029 Patrick Byrne 102725 Confidential.pdf | Re: Summary of compensation owed |
| Ex 0030 Patrick Byrne 102725 Confidential.pdf | LTIP 5.31.24 |
| Ex 0034 Patrick Byrne 102725 Confidential.pdf | Balboa Capital Long Term Cash Incentive Plan |
| Ex 0035 Patrick Byrne 102725 Confidential.pdf | Re: 2022 LTIP Payouts |
| Ex 0036 Patrick Byrne 102725 Confidential.pdf | 2023 monthly accrual calculation |
| Ex 0037 Patrick Byrne 102725 Confidential.pdf | Re ▮▮▮▮▮ - LTIP |
| Ex 0038 Patrick Byrne 102725 Confidential.pdf | Re: 2022 LTIP Revisions |
| Ex 0039 Patrick Byrne 102725 Confidential.pdf | Re: December 2023 LTIP |
| Ex 0040 Patrick Byrne 102725 Confidential.pdf | Re: Summary of compensation owed |
| Ex 0041 Patrick Byrne 102725 Confidential.pdf | Re: Employment contract |
| Ex 0042 Patrick Byrne 102725 Confidential.pdf | Senior Management Agreement |
| Ex 0043 Patrick Byrne 102725 Confidential.pdf | Re: Employment contract |
| Ex 0044 Patrick Byrne 102725 Confidential.pdf | Re: 2024 budget and LTIP potential |
| Ex 0045 Patrick Byrne 102725 Confidential.pdf | Re: LTIP & Jim Visit Agenda |
| Ex 0046 Patrick Byrne 102725 Confidential.pdf | Byrne 2023 Senior Manager Performance Review |

| File Name | Document Description |
|---|---|
| Ex. 031 - Plaintiff 1098 - Excel Spreadsheet.xlsx | 2022 LTIP Payouts |
| Ex. 032 - Plaintiff 1104 - Excel Spreadsheet.xlsx | 2023 IS and BS |
| Ex. 033 - Plaintiff 1136.xlsx | Income Amortization at PT MISF |
| 2025.04.02 Byrne Resps ROGS Set One.pdf | ROGS Set One |
| 2025.04.02 Byrne Resps to RFPS Set One.pdf | RFPS Set One |
| 2025.08.15 Byrne Supp Resps ROGS-1.pdf | Byrne Supp Resps ROGS |
| 2025.08.15 Byrne Supp Resps to RFPS-1.pdf | Byrne Supp Resps RFPS |
| 2025.09.19 Plaintiff's Second Supplemental Responses to Rogs.pdf | Plaintiff Second Supplemental Responses to ROGS |
| 2024.01.10 - AMERIS002149-50.pdf | Re: December 2023 LTIP |
| 2024.01.15 - AMERIS000785-794.pdf | Re: December 2023 LTIP |
| 2024.01.15 - AMERIS000788.xlsx | LTIP owed calculation |
| 2024.01.15 - AMERIS000789.xls | Ameris Bank Depreciation Expense Report |
| 2024.01.15 - AMERIS000790.xlsx | Workbook |
| 2024.01.15 - AMERIS000791.xlsx | Workbook |
| 2024.01.15 - AMERIS000792.xlsx | Workbook |
| 2024.01.15 - AMERIS000793.xlsx | Balboa - Charge offs Processed via Close Orders |
| 2024.01.15 - AMERIS000794.xlsx | 2022-2023 BS and IS |
| 2024.01.25 - AMERIS002159-67.pdf | Re: December 2023 LTIP |
| 2024.01.25 - AMERIS002163.xlsx | LTIP Accrual |
| 2024.01.25 - AMERIS002164.xlsx | LTIP Accrual |
| 2024.01.25 - AMERIS002166.xlsx | LTIP Accrual |
| 2024.01.25 - AMERIS002167.xlsx | LTIP Accrual |
| 2024.05.14 - AMERIS001784-87.pdf | Re: IDC Change |
| 2024.09.16 [Dkt 1] - Byrne v Ameris Complaint.pdf | Byrne v. Ameris Bank Complaint |
| 13668089 Majid.Sufhan Confidential 110425.fullprint.pdf | Sufhan Majid Deposition |
| 13668089 Majid.Sufhan Confidential 110425.miniprint.pdf | Sufhan Majid Deposition |
| EXHIBIT 001 - 13668089 Sufhan.Majid.pdf | Notice of Deposition |
| EXHIBIT 002 - 13668089 Sufhan.Majid.pdf | Stipulated Protective Order |
| EXHIBIT 003 - 13668089 Sufhan.Majid.pdf | Accounting and Reporting Policy |
| EXHIBIT 003A - 13668089 Sufhan.Majid.pdf | Accounting and Reporting Policy |
| EXHIBIT 004 - 13668089 Sufhan.Majid.pdf | Re: Final LTIP 3-31-2023 |
| EXHIBIT 005 - 13668089 Sufhan.Majid.pdf | Re: LTIP calculation 6.30.2023 estimate |
| EXHIBIT 006 - 13668089 Sufhan.Majid.pdf | Re: LTIP calculation 6.30.2023 estimate |
| EXHIBIT 007 - 13668089 Sufhan.Majid.pdf | Re: LTIP Calculation |
| EXHIBIT 008 - 13668089 Sufhan.Majid.pdf | Re: Q3 2023 LTIP |
| EXHIBIT 009 - 13668089 Sufhan.Majid.pdf | Re: Q3 2023 LTIP |
| EXHIBIT 010 -13668089 Sufhan.Majid.pdf | Re: Interim Rent Question on Open Invoices |
| Deposition Transcript - N. Stokes miniprint.pdf | Stokes Deposition |
| EXHIBIT 002 - 13668085 Nicole.Stokes Non-Confidential.pdf | Employment Agreement |
| EXHIBIT 004 - 13668085 Nicole.Stokes Non-Confidential.pdf | Estimated monthly accrual |
| EXHIBIT 005 - 13668085 Nicole.Stokes Non-Confidential.pdf | Estimated monthly accrual |
| EXHIBIT 006 - 13668085 Nicole.Stokes Non-Confidential.pdf | Estimated monthly accrual |
| EXHIBIT 007 - 13668085 Nicole.Stokes Non-Confidential.pdf | Pats Comments & Nicoles replies in red |
| EXHIBIT 008 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: LTIP Calculation |
| EXHIBIT 009 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: LTIP Calculation |
| EXHIBIT 010 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: Q3 2023 LTIP |
| EXHIBIT 011 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: Tax Pricing Follow-up Call |
| EXHIBIT 012 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: Balboa Mgmt Bonus Accr Mar 2022 |
| EXHIBIT 013 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: Efficiency Ratio |
| EXHIBIT 014 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: Balboa Loan Issue at Year-End and Pat's response |
| EXHIBIT 015 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: Balboa FTP Charge |
| EXHIBIT 016 -13668085 Nicole.Stokes Non-Confidential.pdf | Re: LTIP Calculation |
| EXHIBIT 017 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: 2022 LTIP revisions |
| EXHIBIT 018 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: Adjusted LTIP Calc |
| EXHIBIT 019 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: LTIP Calculation |
| EXHIBIT 020 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: LTIP Calculation |
| EXHIBIT 021 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: LTIP Calculation |
| EXHIBIT 022 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: LTIP Calculation |
| EXHIBIT 023 - 13668085 Nicole.Stokes Non-Confidential.pdf | Notice of Deposition |
| EXHIBIT 024 - 13668085 Nicole.Stokes Non-Confidential.pdf | Stipulated Protective Order |
| EXHIBIT 025 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: Interim Rent Question on Open Invoices |
| EXHIBIT 026 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: December 2023 LTIP |
| EXHIBIT 027 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: December 2023 LTIP |
| EXHIBIT 028 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: December 2023 LTIP |
| EXHIBIT 029 - 13668085 Nicole.Stokes Non-Confidential.pdf | Re: LTIP deferral |

| File Name | Document Description |
|---|---|
| EXHIBIT 003 - 13668085 Nicole.Stokes Non-Confidential.pdf | LTIP Plan |
| AMERIS000841.pdf | LTIP calculation 9.30.22 - sm actual Q3 calc |
| AMERIS000842.xlsx | LTIP calculation 9.30.22 - sm actual Q3 calc .xlsx |
| AMERIS000908.pdf | FW: 2022 and Q1 2023 LTIP calculations |
| AMERIS000911.xlsx | Overhead 2022 and 3.31.23.xlsx |
| AMERIS000912.xlsx | LTIP calculation 12.31.2022 - sm actual Q4_1-9-2023.xlsx |
| AMERIS000917.xlsx | REPOS MONIES APPLIED TO STREAM 4.4.23 UPDATED FOR SALES with inventoried assets.xlsx |
| AMERIS000928.xlsx | Security Deposits preacquistion 6.2.23.xlsx |
| AMERIS000929.xlsx | LTIP calculation 3.31.2023 final.xlsx |
| AMERIS001168.pdf | RE: BALBOA MGMT BONUS ACCR MAR 2022 |
| AMERIS001171.xlsx | LTIP calculation 3.31.22.xlsx |
| AMERIS001172.pdf | LTIP Final.DOC |
| AMERIS001187.pdf | FW: LTIP Calculation |
| AMERIS001190.xlsx | LTIP calculation 3.31.22 - sm review.xlsx |
| AMERIS001193.pdf | BALBOA LTIP Verbiage.docx |
| AMERIS001195.xlsx | LTIP calculation 3.31.22.xlsx |
| AMERIS001196.pdf | LTIP calculation 3.31.22.xlsx |
| AMERIS001197.xlsx | LTIP calculation 3.31.22.xlsx |
| AMERIS001263.pdf | April 2024 LTIP |
| AMERIS001264.xlsx | LTIP calculation 4.30.2024 final.xlsx |
| AMERIS001276.pdf | LTIP Calculation 12/31/2022 |
| AMERIS001277.xlsx | LTIP calculation 12.31.2022 - sm actual Q4_1-9-2023.xlsx |
| AMERIS001361.pdf | RE: LTIP Calculation |
| AMERIS001363.xlsx | Balboa Balance Sheet 890 891 as of 06-30-2023.xlsx |
| AMERIS001383.pdf | FW: LTIP Calculation |
| AMERIS001386.xlsx | REPOS MONIES APPLIED TO STREAM 4.4.23 UPDATED FOR SALES with inventoried assets.xlsx |
| AMERIS001397.xls | Depreciation 6.30.23.xls |
| AMERIS001398.xlsx | Ameris Portfolio Snapshot 06.30.2023_updated 7.13.2023.xlsx |
| AMERIS001410.xlsx | Overhead 2022 and 6.30.23.xlsx |
| AMERIS001411.xlsx | LTIP calculation 6.30.2023 estimate revised 7.23.23.xlsx |
| AMERIS001412.xlsx | LTIP calculation 6.30.2023 estimate revised 8.4.23.xlsx |
| AMERIS001416.pdf | RE: Will you please send the July LTIP calculation when you get a chance. Thank you! |
| AMERIS001417.xlsx | LTIP calculation 7.31.2023 adjusted.xlsx |
| AMERIS001433.pdf | Q3 2023 LTIP |
| AMERIS001434.xlsx | LTIP calculation 9.30.2023 sm actual 10.10.xlsx |
| AMERIS001455.pdf | RE: estimated LTIP |
| AMERIS001457.xlsx | LTIP calculation 10.31.2023 final.xlsx |
| AMERIS001487.pdf | RE: LTIP Final Payout 2.2.23.xlsx |
| AMERIS001510.pdf | LTIP January 2024 |
| AMERIS001511.xlsx | LTIP calculation 1.31.2024 final 2.8.xlsx |
| AMERIS001527.pdf | FW: LTIP calculation 2.292024 final 3.8.xlsx |
| AMERIS001528.xlsx | LTIP calculation 2.292024 final 3.8.xlsx |
| AMERIS001532.pdf | RE: LTIP calculation 3.31.2024 final |
| AMERIS001535.xlsx | Balboa Accrual Schedule 03.2024.xlsx |
| AMERIS001536.xls | CC 890 as of 3.31.24 Depreciation.xls |
| AMERIS001537.xlsx | GL 2350 sales tax payable - 2024.03.31.xlsx |
| AMERIS001538.xlsx | Interim Rent Q12024.xlsx |
| AMERIS001539.xlsx | STIP Deals - Booked vs Cash Received Q1 2024.xlsx |
| AMERIS001540.xlsx | VendorReferralReport - 2022.xlsx |
| AMERIS001541.xlsx | VendorReferralReport - 2023.xlsx |
| AMERIS001542.xlsx | VendorReferralReport - 2024 Q1.xlsx |
| AMERIS001543.xlsx | VendorReferralReport - Mar 2024.xlsx |
| AMERIS001550.pdf | LTIP calculation 5.31.2024 final.xlsx |
| AMERIS001551.xlsx | LTIP calculation 5.31.2024 final.xlsx |
| AMERIS001601.pdf | RE: LTIP Calculation |
| AMERIS001690.pdf | FW: 3-31-2023 LTIP Calculation |
| AMERIS001691.xlsx | LTIP calculation 3.31.2023 final.xlsx |
| AMERIS001695.pdf | RE: LTIP Calculation |
| AMERIS001699.xlsx | LTIP calculation 6.30.2023 adjusted for MHT and Recovery (003).xlsx |
| AMERIS001927.pdf | FW: LTIP calculation through 6/30/22 |
| AMERIS001928.xlsx | LTIP calculation 6.30.22 - sm actual Q2 .xlsx |
| AMERIS001963.pdf | Final LTIP 3-31-2023 |
| AMERIS001964.xlsx | LTIP calculation 3.31.2023 final.xlsx |
| AMERIS001975.pdf | RE: LTIP Calculation |
| AMERIS001981.pdf | 2022 LTIP revisions |

| File Name | Document Description |
|---|---|
| AMERIS001982.xls | Depreciation 6.30.23.xls |
| AMERIS001983.xlsx | Overhead 2022 and 6.30.23.xlsx |
| AMERIS001984.xlsx | LTIP calculation 12.31.2022 - sm actual Q4_1-9-2023 revised 7.23.23.xlsx |
| AMERIS002003.pdf | RE: Adjusted LTIP Calc |
| AMERIS002004.xlsx | LTIP calculation 6.30.2023 adjusted (003).xlsx |
| AMERIS002026.pdf | RE: December 2023 LTIP |
| AMERIS002028.xlsx | LTIP calculation 12.31.2023 sm actual QTD - final.xlsx |
| AMERIS002051.pdf | RE: December 2023 LTIP |
| AMERIS002055.xlsx | LTIP calculation 12.31.2023 final with pat edits 1.25.24 v4.xlsx |
| AMERIS002056.xlsx | LTIP calculation 12.31.2023 final with pat edits 1.14.24 v3.xlsx |
| AMERIS002057.pdf | Adjusted LTIP Calc |
| AMERIS002058.xlsx | LTIP calculation 3.31.2023 adjusted.xlsx |
| AMERIS002059.xlsx | LTIP calculation 6.30.2023 adjusted (003).xlsx |
| AMERIS002062.pdf | RE: December 2023 LTIP |
| AMERIS002067.xlsx | LTIP calculation 12.31.2023 final with pat edits 1.30.24 v4.xlsx |
| AMERIS002089.pdf | RE: LTIP calculation 3.31.2024 final |
| AMERIS002092.xlsx | 12. IDC analysis - Dec 2023_updated 1.12.2024 2024 number backup.xlsx |
| AMERIS002093.pdf | RE: LTIP calculation 3.31.2024 final |
| AMERIS002096.xlsx | Interim Rent Q1 2024.xlsx |
| AMERIS002097.xlsx | STIP Deals - Booked vs Cash Received Q1 2024.xlsx |
| AMERIS002123.pdf | LTIP calculation 8.31.2024 draft.xlsx |
| AMERIS002124.xlsx | LTIP calculation 8.31.2024 draft.xlsx |
| AMERIS002200.pdf | FW: LTIP calculation through 6/30/22 |
| AMERIS002202.xlsx | LTIP calculation 6.30.22 - sm actual Q2 .xlsx |
| AMERIS002243.pdf | RE: Summary of compensation owed |
| AMERIS002249-2266.pdf | FW: Security Deposits |
| AMERIS002255.xlsx | Doc SN Review project SCRUB #2 |
| AMERIS002256.xlsx | Security deposits 1.26.24 |
| AMERIS002260.xlsx | 99X STIP - original STIP amount.xlsx |
| AMERIS002261.xls | CC 890 2023 YTD Depreciation schedule.xls |
| AMERIS002262.xlsx | Overhead 2022 and 2023.xlsx |
| AMERIS002263.xlsx | SuperTrump Portfolio Q1 Q2 Q3 Q4 2022 v2.xlsx |
| AMERIS002264.xlsx | 12.31.2023 Interim Rent Entry.xlsx |
| AMERIS002265.xlsx | Deals charged off before 120 for equipment repossessed 12.31.23.xlsx |
| AMERIS002266.xlsx | LTIP calculation 12.31.2023 final with pat edits 1.14.24.xlsx |
| Plaintiff Prod-2.Part 1 (PLAINTIFF 000035-562).pdf | Plaintiff Prod (PLAINTIFF 00035-562) |
| Plaintiff000102-000386.pdf | Stock Purchase Agreement |
| Plaintiff 1147 - ██████████ | Plaintiff ████████ |
| N/A | Ameris Bankcorp 2021 Form 10-K |
| N/A | Ameris Bankcorp 2022 Form 10-K |
| N/A | Ameris Bankcorp 2023 Form 10-K |
| N/A | Ameris Bankcorp 2024 Form 10-K |