MATTHEW T. SESSIONS (BAR NO. 307098)
STACEY A. VILLAGOMEZ (BAR NO. 317081)
MADISON E. LARSEN (BAR NO. 364953)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
2010 Main Street, 8th Floor
Irvine, California 92614-7214
Phone:  (949) 553-1313
Fax:  (949) 553-8354
E-Mail:  msessions@allenmatkins.com
        svillagomez@allenmatkins.com
        mlarsen@allenmatkins.com

Attorneys for Plaintiff
PATRICK BYRNE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an Individual,<br><br>        Plaintiff,<br><br>    vs.<br><br>AMERIS BANK, a Georgia corporation,<br><br>        Defendant. | Case No.  8:24-cv-01989-MWC-JDE<br><br>ASSIGNED FOR ALL PURPOSES TO<br>Judge Michelle Williams Court<br><br>**PLAINTIFF PATRICK BYRNE'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE ALL OR PART OF DEFENDANT'S EXPERT MARYELLEN SEBOLD'S OPINIONS AND TESTIMONY UNDER FRE 702 AND DAUBERT**<br><br>Date:  May 22, 2026<br>Time:  1:30 p.m.<br>Ctrm:  6A<br><br>Disc. Cutoff:         November 28, 2025<br>Pretrial Conference:  May 22, 2026<br>Trial Date:           June 1, 2026 |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4908-7445-4939.7

Case No.   8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S MOTION IN
LIMINE NO. 2

## I.    INTRODUCTION

Plaintiff Patrick Bryne brings this motion in limine seeking to exclude the testimony of Defendant Ameris Bank's expert, Maryellen Sebold on two independent grounds.

First, Ms. Sebold intends to offer testimony that blatantly misstates the law. Specifically, as reflected in Ms. Sebold's expert report and deposition, she intends to testify to the jury that because Ameris is a "publicly-traded bank" it is "required to follow [Generally Accepted Accounting Principles (GAAP)]" in all aspects of its business, including how it calculates Earnings Before Taxes (EBT) for purposes of calculating LTIP bonuses (a fundamental issue in this case). *See, e.g.* Declaration of Matthew Sessions ("Sessions Decl."), Ex. A ("Sebold Dep.") at 45: 21–22. This is not the law, as the laws and regulations that require publicly-traded institutions to utilize GAAP apply only to calculations used to prepare external facing financial statements, not those used to calculate internal bonuses. Accordingly, it would be extraordinarily prejudicial to Byrne if Ms. Sebold were permitted to incorrectly assert to the jury that Ameris correctly calculated the LTIP Pools in this case because it was purportedly required by law to run its calculations in the manner it did.

Second, and independently, this Court may also exclude Ms. Sebold's testimony for the same reasons Ameris has sought the exclusion of Byrne's own expert witness, Deborah Dickson. In its own motion in limine (Defendant's MIL No. 2) Ameris seeks to exclude Ms. Dickson's testimony on the ground that her testimony (1) seeks to interpret the contractual terms of the LTIP Agreement and (2) relies on purported self-serving statements from Byrne. Dkt. 116. Although Byrne maintains that Ameris's motion should be denied, if the Court were to grant it, the Court must also exclude the testimony of Ameris's expert, Ms. Sebold, for the very same reasons. Indeed, both Ms. Sebold's and Ms. Dickson's reports interpreted Balboa's LTIP Agreement, and Ms. Sebold's opinions rely heavily on the self-serving statements of Ameris's employees.

## II.   LEGAL STANDARD

Under Federal Rules of Evidence, Rule 702 "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not:

(a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)   the testimony is based on sufficient facts or data;

(c)   the testimony is the product of reliable principles and methods; and

(d)   the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

Trial courts act as a gatekeeper to determine whether expert testimony has "a reliable basis in the knowledge and experience of the relevant discipline." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592, 597 (1993).This gatekeeping obligation is critical "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063–64 (9th Cir. 2002). A court may also exclude expert testimony under Rule 403 if its probative value is substantially outweighed by a danger of, among other things, unfair prejudice or misleading the jury. *Daubert*, 509 U.S. at 596. As the U.S. Supreme Court stated, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge, in weighing possible prejudice against probative force under Rule 403 of the present rules, exercises more control over experts than over lay witnesses." *Id.* at 595.

## III.   ARGUMENT

### A.   Ms. Sebold Should be Prohibited from Offering the Opinion that GAAP Accounting is Required As a Matter of Law

The Court should prohibit Ms. Sebold from testifying that Ameris is legally required to use GAAP in all aspects of its calculations under the LTIP because such

an assertion blatantly misstates the law and would be extraordinarily prejudicial to Byrne if Ameris were permitted to present this mischaracterization of the law to the jury.

Where an expert is expected to misrepresent the law in their testimony, courts exclude such opinions under *Daubert* and Rule 702. *See In re Zetia (Ezetimibe) Antitrust Litig.*, 2021 WL 6690348, at *4 (E.D. Va. Aug. 16, 2021) ("A court may exclude expert testimony that seeks to introduce misstatements of law under Federal Rule of Evidence 702."); *United States v. Cunningham*, 679 F.3d 355, 380 (6th Cir. 2012) ("[T]he district judge—the only person in the courtroom vested with the authority to definitively interpret the law—did not abuse his discretion by excluding . . . legal misstatements under Rule 702."); *Herbert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("encourag[ing] exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science . . . , but markedly incorrect law.") (citing *Daubert*, 509 U.S. at 579); *e.g.*, *Personalized Media Commc'ns, LLC v. Zynga, Inc.*, 2013 WL 5962812, at *2 (E.D. Tex. Nov. 7, 2013) ("Because Dr. Fox misstates the law regarding enablement, the Court finds that the subject matter reflected in the Report is not sufficiently reliable and relevant to the issues before the jury, and should thus be excluded under Federal Rule of Evidence 702 and *Daubert*."). That is precisely what Ameris seeks to do through the testimony of Ms. Sebold.

Ever since Byrne first identified Ameris's failure to properly calculate the LTIP to Ameris's executives, Ameris (including now through Ms. Sebold) has continuously relied on some variation of the argument that *Byrne's requested adjustments are wrong because they do not follow GAAP, and because Ameris is a publicly traded company, it must apply GAAP methodology. See, e.g.,* Sebold Dep. at 70: 17–22 ("[P]ublicly traded companies have to follow [ASC] 842.[1] And that is what Ameris

---

[1] ASC 842 is the U.S. accounting standard for leases issued by the Financial Accounting Standards Board

was doing . . . and if that was not done, Mr. Byrne's point is that he would have been entitled to another $1.9 million through the LTIP calculation which is not proper"); Sessions Decl., Ex B ("Stokes Dep.") at 109: 6–7 ("Ameris Bank is a publicly-traded company that has to follow GAAP"); *id.* at 111: 9–12 ("Again, the LTIP calculation is based on earnings before tax, and they are a part of the bank. And that's part of a publicly-traded company that has to follow GAAP"). Ms. Sebold herself used GAAP and the false premise that Ameris is required to apply GAAP to even internal accounting practices as excuses throughout her report and deposition to justify Ameris's refusal to apply Byrne's requested changes to the LTIP calculations:

- "Ameris, like publicly-traded banks, followed GAAP." Sebold Dep. at 37: 8.
- "[Ameris] is a publicly-traded bank which is required to follow GAAP." *Id.* at 45: 21–22.
- "Paragraph 9 [of the LTIP] . . . relates to award being subject to all applicable federal and state laws, rules, and regulations and to such approvals by any regulatory or governmental agency as may be required. So, again, as we've discussed before, GAAP falls under that." *Id.* at 60: 17–21.
- "Ameris is a publicly-traded institution. It is required to follow GAAP. It follows GAAP." *Id.* at 63: 8–10.
- "Byrne's request to record the entire uncollected balance as revenue does not comply with GAAP." Sessions Decl., Ex C ("Sebold Report") at ¶74.
- "GAAP provides guidance on depreciating assets and recording depreciation expense on the income statement. . . . Consistent with GAAP and the LTIP Agreement, the Company recorded depreciation expense for these assets. As such, Byrne's requested adjustments are inconsistent with the LTIP Agreement." *Id.* at ¶¶80–81.
- "Byrne stated that interim rent should be recognized when the cash is received. However, his request does not follow GAAP." *Id.* at. ¶104.

The problem for Ameris and for Ms. Sebold's testimony is that no law or regulation explicitly requires publicly traded companies to use GAAP in all instances. Indeed, federal law and the administrative rules promulgated thereunder do not require GAAP universally and, indeed, plainly anticipate the use of non-GAAP accounting measures in a variety of different instances.

As a baseline, GAAP is only required by law to be used for the purpose of *publicly facing financial statements* filed with the Securities and Exchange Commission ("SEC"). *See* Request for Judicial Notice ("RJN") No. 1, 17 C.F.R. § 210.4-01 (2018) ("Financial statements filed with the Commission which are not prepared in accordance with generally accepted accounting principles will be presumed to be misleading or inaccurate . . .").

Additionally, 17 C.F.R. § 244.100 (2003) ("Regulation G") even contemplates publicly traded companies using non-GAAP measures in certain public facing reports (not applicable here), providing that "[w]henever a registrant . . . publicly discloses material information that includes a non-GAAP financial measure, the registrant must accompany that non-GAAP financial measure with: (1) A presentation of the most directly comparable financial measure calculated and presented in accordance with Generally Accepted Accounting Principles (GAAP); and (2) A reconciliation" of the differences between the non-GAAP financial measure disclosed and the most directly comparable GAAP measure identified in paragraph (1). RJN No. 2.

Consequently, a *non-disclosed* and *non-public-facing* accounting measure agreed to via contract for the discrete purpose of calculating internal performance-related bonuses, such as the LTIP at issue here, is not subject to public reporting requirements and is thus not subject to any legal requirement to use GAAP methodology.[2]

---

[2] Moreover, the 2022 "Pay Versus Performance Rule" promulgated by the SEC explicitly exempted even publicly disclosed executive compensation "target levels that are non-GAAP financial measures" from disclosure under regulation G. RJN No. 3, 17 C.F.R. § 229.402 (b)(5) (2023).

Furthermore, not only is there no law or regulation requiring Ameris to apply GAAP to internal compensation targets, the regulatory framework affirmatively contemplates the opposite. As reflected in the rulemaking record for the SEC's Pay Versus Performance Rule, companies commonly rely on non-GAAP metrics for compensation purposes; indeed, one commenter noted that a 2018 study found that "more than two-thirds of the S&P 500 companies used non-GAAP to establish compensation targets." *Comments on Proposed Rule: Pay Versus Performance*, Release No. 34-94074; File No. S7-07-15, 2022 WL 737064, at *10.

Against that backdrop, allowing Ameris's expert to testify that, because Ameris is a publicly traded company, it is "required to follow GAAP" would misstate the law and create a substantial risk of misleading the jury. Courts routinely exclude expert testimony that rests on incorrect legal premises or purports to instruct the jury on the law. *See M.R. v. City of Azusa*, 2014 WL 12839737, at *4 (C.D. Cal. Oct. 1, 2014) ("If Defendants plan to misstate the law . . . then the Court will not permit it"); *Personalized Media Commc'ns, LLC v. Apple Inc.*, 2013 WL 5962812, at *2 (E.D. Tex. Nov. 7, 2013) ("[D]ue to Dr. Fox's error regarding the law of enablement, the opinion set forth in the Report is methodologically flawed and likely to be misleading to the jury. The Court therefore finds that the Report should also be excluded under Federal Rule of Evidence 403 as its relevance is outweighed by the high risk of prejudice if the opinions contained within are presented to the jury").

Accordingly, Ms. Sebold should be precluded from offering any testimony suggesting that Ameris was legally required to apply GAAP to its internal compensation metrics.

**B.     If the Court were to Exclude Ms. Dickson's testimony, Ms. Sebold should be Excluded for the Same Reasons**

Separately, the Court may also exclude Ms. Sebold's testimony on the same grounds upon which Ameris seeks to exclude Ms. Dickson's testimony, but only if the Court is inclined to grant Ameris's motion.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4908-7445-4939.7                    -6-

Case No.   8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S MOTION IN
LIMINE NO. 2

Ameris's motion is primarily based on the argument that Ms. Dickson's testimony should be excluded because "the Dickson Report hinges upon Ms. Dickson's contractual interpretation of the terms of the Long-Term Incentive Plan ('LTIP') and Award Agreement (as informed by Byrne's self-serving statements to her)." Dkt. 116 at 1. To the extent the Court accepts Ameris's arguments, the Court must also exclude Ms. Sebold's testimony for the very same reasons, as Ms. Sebold (1) interprets the LTIP and (2) does so in part by relying on representations made by Ameris personnel.

### 1. Ms. Sebold Interprets the LTIP Agreement

Ameris asserts that "the opinions Dickson expressed in her report are not based upon Defendant's calculation of the LTIP or Byrne's economic damages; instead, they are results-driven conclusions based upon Byrne's legal interpretation of the LTIP and Award Agreement, specifically, whether Generally Accepted Accounting Principles ('GAAP') apply to it." *Id*. Ameris supports this argument by pointing the Court to Ms. Dickson's deposition testimony where she stated that she did not agree with Ms. Sebold's calculations because they were based on Sebold's incorrect interpretation of the LTIP Agreement's terms in applying GAAP. Sessions Decl., Ex. D ("Dickson Dep.") at 32:15 – 33:4; 39: 16 – 40:2. According to Ameris, the fact that Ms. Dickson determined whether the LTIP's terms require applying GAAP is sufficient to render her testimony improper contractual interpretation and subject to exclusion. *See, e.g.,* Dkt. 116 at 5, ("Whether the LTIP Agreement's terms require application of GAAP is a legal question for the Court. Dickson's opinion as to what the LTIP Agreements "calls for" is an improper interpretation of the contract").

Under Ameris's standard, the Court must also exclude Ms. Sebold's testimony. Ms. Sebold made it abundantly clear in her report that she is interpreting the LTIP Agreement, including determining what the agreement "calls for":

- "Opinion 3: Byrne's requested adjustments were not supported by GAAP or the terms of the LTIP [A]greement." Sebold Report at ¶12.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4908-7445-4939.7                    -7-

Case No.   8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S MOTION IN
LIMINE NO. 2

- "Based on my review, Byrne's request to include additional revenue is not supported by the facts. The LTIP Agreement clearly states the calculation is based on GAAP." *Id*. at ¶75.

- "Consistent with GAAP and the LTIP [A]greement, the Company recorded depreciation expense for these assets. As such, Byrne's requested adjustments are inconsistent with the LTIP [A]greement." *Id*. at ¶81.

- "Based on my review of the email request and LTIP [A]greement and other supporting documents, I conclude this adjustment is not supported by the terms of the LTIP. As such, no adjustment should be made to the LTIP calculation." *Id*. at ¶97.

- "Byrne stated that interim rent should be recognized when the cash is received. However, his request does not follow GAAP. The LTIP [A]greement specifically states the agreement must follow GAAP. As such, I concluded that Byrne's request to adjust interim rent did not comply with the terms of the LTIP [A]greement." *Id*. at ¶104.

- "Byrne's request incorrectly records the amounts as revenue. As the LTIP [A]greement clearly states the calculation should follow GAAP, I concluded the request should not be included in the LTIP calculation." *Id*. at ¶110.

- "The LTIP [A]greement states the calculation is based on earnings before tax. As such, the adjustment requested by Byrne is not supported." *Id*. ¶122.

Further, Ms. Sebold confirmed during her deposition that her opinions relied on her interpretation of the LTIP:

- "Q. Right. I understand that. But it's your interpretation then that Paragraph 9 as it's drafted requires that GAAP methodology would be applied to the entire LTIP? . . . [Ms. Sebold] . . . Yes, I do." Sebold Dep. at 45: 23–46: 4.

- "I have drawn my own opinions based on what I have seen in the records, what the LTIP says, what is called for there in the award, the guidelines that that award sets out." *Id*. at 81: 10–13.

Accordingly, Ms. Sebold interprets the LTIP—just as Ameris accuses Ms. Dickson of doing—and the opinions she will present at trial are explicitly derived from those interpretations. Therefore, to the extent the Court excludes Ms. Dickson's testimony on the grounds that it constitutes improper contract interpretation, it must also exclude Ms. Sebold's testimony for the same reason.

### 2. Ms. Sebold Relies on Self-Serving Statements from Ameris Personnel

Ameris also seeks to exclude Ms. Dickson's "opinions and testimony regarding Byrne's LTIP damages because her opinions fail to meet the reliability requirements

of *Daubert* and FRE 702" by relying on uncorroborated discussions with Byrne identifying Balboa's "past-practices." Dkt. 116 at 6. Ameris's request, again, seems to be made without recognizing or acknowledging that Ms. Sebold likewise extensively relies on numerous statements provided by Ameris's personnel, especially that of Ameris CFO Nicole Stokes and Byrne's supervisor, Ameris CSO Jim LaHaise. *See, e.g.*, Sebold Report ¶14; *id.* ¶ 88 ("However, based on discussions with Stokes and review of her deposition, these employees worked 100 percent on Balboa and were included in the Pioneer Model."); *id.* ¶90 ("LaHaise confirmed that each employee listed in Byrne's spreadsheet worked for Balboa."); Sebold Dep. at 66: 11–15 ("Q. How did you come to that conclusion? . . .A. . . . talking with Nicole Stokes and understanding how the Balboa pre-acquisition is set up.").

This is yet another example of Ameris taking inconsistent positions. On the one hand, it seeks to exclude Ms. Dickson's testimony on the ground that her opinions are informed by discussions with Plaintiff. On the other hand, Ameris seeks to introduce Ms. Sebold's testimony even though her opinions are likewise based on discussions with Defendant. Ameris cannot apply one standard to exclude Plaintiff's expert while invoking a different standard to admit its own.

**3.      Any Exclusion of Ms. Dickson's and Ms. Sebold's Testimony Should be Narrowly Tailored**

Finally, if the Court determines that both experts' anticipated testimony includes improper legal conclusions and reliance on self-serving party statements, the appropriate remedy is a narrowly tailored limitation on both experts' testimony rather than complete exclusion. The district court in *JAS Supply, Inc.*, faced a strikingly similar situation when the plaintiff and the defendant filed dueling motions seeking to exclude each other's expert's  testimony, in part, on the ground that both experts intended to offer legal opinions at trial. *JAS Supply, Inc v. Radiant Customs Services, Inc.*, 2023 WL 6366044, at \*3 (W.D. Wash. Sept. 29, 2023). The court agreed and ordered that neither expert shall offer testimony at trial that purports to provide an

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4908-7445-4939.7                     -9-

Case No.   8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S MOTION IN
LIMINE NO. 2

impermissible legal conclusion or interpretation, but stopped short of entirely excluding both experts. *Id*. at *3–5.

Similarly here, if the Court finds that Ms. Dickson and Ms. Sebold intend to offer improper legal opinions, their testimony should only be limited, not fully excluded. First, if either expert can "cure" their opinions to present them in an admissible form, they should be permitted to do so. *See, e.g., id*. at *4 (accepting untimely supplemental expert report that "modif[ied] the language" of the expert's opinions to present them in an admissible format). Second, both experts will offer vital testimony beyond just how to interpret the LTIP. For example, both experts are expected to offer testimony concerning the calculation of damages. This anticipated testimony would not be tainted by legal conclusions and should be permitted at trial.

## IV.    Conclusion

For the foregoing reasons, the Court should grant Byrne's Motion in Limine No. 2. At a minimum, Ms. Sebold should be precluded from offering any opinion or suggestion that Ameris was legally required to apply GAAP to its internal LTIP calculations as a matter of law, as such testimony would misstate the law and risk misleading the jury. And if the Court is inclined to exclude Ms. Dickson's testimony on the grounds advanced by Ameris in its Motion in Limine No. 2, Ms. Sebold's testimony should be excluded on the same basis.

Dated: April 17, 2026

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
MATTHEW SESSIONS
STACEY A. VILLAGOMEZ
MADISON E. LARSEN


By: _____
MATTHEW T. SESSIONS
Attorneys for Plaintiff
PATRICK BYRNE

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4908-7445-4939.7      -10-      Case No.   8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S MOTION IN
LIMINE NO. 2

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiff Patrick Byrne certifies that this brief contains 3,197 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 17, 2026

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
MATTHEW SESSIONS
STACEY A. VILLAGOMEZ
MADISON E. LARSEN

By: _____
MATTHEW T. SESSIONS
Attorneys for Plaintiff
PATRICK BYRNE

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4908-7445-4939.7                                    -11-

Case No.   8:24-cv-01989-MWC-JDE
PLAINTIFF PATRICK BYRNE'S MOTION IN
LIMINE NO. 2