# EXHIBIT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


PATRICK BYRNE, an individual,   )
 )
        Plaintiff,    )
 )
   vs.          ) Case No. 8:24-cv-01989
             )      MWC-JDE
AMERIS BANK, a Georgia corporation,)
 )
        Defendant.    )
_____)


REMOTE DEPOSITION OF MARYELLEN SEBOLD taken on behalf of Plaintiff, at 9:00 A.M., Thursday, January 15, 2026, before Jennifer Livingston, Certified Shorthand Reporter No. 14087 of the State of California, pursuant to Notice.


THE SULLIVAN GROUP OF COURT REPORTERS
AN ESQUIRE DEPOSITION SOLUTIONS COMPANY

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFF:

ALLEN MATKINS
BY:  STACEY VILLAGOMEZ, ESQ.
2010 Main Street
8th Floor
Irvine, California  92614
(213) 622-5555
(213) 620-8816 (Fax)
Svillagomez@allenmatkins.com

FOR THE DEFENDANT:

NUKK-FREEMAN & CERRA, P.C.
BY:  NANA YEE, ESQ.
550 West C Street
Suite 910
San Diego, California  92101
(619) 842-0267
(619) 566-4741 (Fax)
Nyee@nfclegal.com

ALSO PRESENT:

Patrick Byrne
Jody Spencer
Deborah Dickson

I N D E X

WITNESS                    EXAMINATION                    PAGE

Maryellen Sebold          By Ms. Villagomez                 4


E X H I B I T S

PLAINTIFF'S                                               PAGE

Exhibit 1      Expert report of Maryellen Sebold      13
               dated December 5, 2025

Exhibit 2      Balboa Capital long-term incentive     38
               plan

Exhibit 3      Expert report of Deborah Dickson       82
               dated January 2nd, 2026


QUESTIONS INSTRUCTED NOT TO ANSWER

None.


INFORMATION REQUESTED

None.

THURSDAY, JANUARY 15, 2026; 9:00 A.M.

* * *

THE STENOGRAPHER:  Good morning, everybody. My name is Jennifer Livingston.  I am a California licensed stenographic reporter, License No. 14087.

MARYELLEN SEBOLD,

having been first duly sworn, testified as follows:

EXAMINATION

BY MS. VILLAGOMEZ:

Q.  Good morning, Ms. Sebold.  My name is Stacey Villagomez.  I represent Patrick Byrne, the plaintiff in this action, and I will be taking your deposition today.

Can you please state and spell your name for the record.

A.  Maryellen Sebold, M-a-r-y-e-l-l-e-n, S-e-b-o-l-d.

Q.  And you're represented today by Ms. Nana Yee?

A.  I'm not represented by her.  I'm working with her firm and her client, but she does not represent me.

Q.  Will she be acting as your attorney during this deposition?

A.  No.

Q.  Before we get started -- I'm sure you're familiar with this -- but I want to go over some ground rules for the deposition.

prepared as staff financial statements, were they?

MS. YEE:  Overbroad.  Lacks foundation.

THE WITNESS:  The LTIP workbooks were schedules prepared which were a segment Ameris's business that related Balboa, the company that they acquired.  They were set up like financials, you know, income statements, balance sheets, et cetera.  And Ameris, like publicly-traded banks, followed GAAP.  So the elements of LTIP that I have seen of the LTIP were GAAP compliant.

BY MS. VILLAGOMEZ:

Q.   But the LTIP workbooks were not prepared for external financial reporting; correct?

A.   Correct.

MS. YEE:  Misstates her prior testimony.

MS. VILLAGOMEZ:  I'm sorry.  Did somebody object?

MS. YEE:  Yes, I did.  Misstates her prior testimony and vague.

MS. VILLAGOMEZ:  I'm sorry.  I didn't see your mouth move.

BY MS. VILLAGOMEZ:

Q.   So the LTIP workbooks were not audited financial statements; correct?

A.   Correct.

as follows:

"QUESTION:  Can you identify any applicable federal and state laws, rules, and regulations and approvals by any regulatory or governmental agency that requires application of GAAP to incentive plans?")

MS. YEE:  Same objections.

THE WITNESS:  It's a question that doesn't really make sense.  I mean, what we're saying is that GAAP does fall under rules and regulations, regulatory or governmental agency, so it by default is -- would fall under that, so your question --

BY MS. VILLAGOMEZ:

Q.  I'm asking which of those.

So, for example, do you know what federal law requires application of GAAP to incentive plans?

A.  It doesn't say that it has to be all of them.  This is a regulatory agency.  So they have rules and regulations that -- in this case, for example, this is a bank.  This is a publicly-traded bank which is required to follow GAAP.

Q.  Right.  I understand that.  But it's your interpretation then that Paragraph 9 as it's drafted requires that GAAP methodology would be applied to the

entire LTIP?

MS. YEE: Misstates her prior testimony. Overbroad.

THE WITNESS: Yes, I do.

BY MS. VILLAGOMEZ:

Q. Thank you.

I would like to turn to Ameris 00228, the next page over, and I'll direct your attention to Footnote No. 3, the last sentence.

"The general premises of the LTIP is to materially follow the past practice which this calculation is maintaining."

Do you see that?

A. I do.

Q. Did you consider this language in your analysis?

A. Yes. But I think you need to look at the entirety of the footnote starting with the first sentence which says, "Balboa has an established CECL model and vendor which will apply to the Balboa Capital division. The general premise of the LTIP is to materially follow past practice which this calculation is maintaining." So I do -- I do understand there's language around past practice, and I assume -- I assumed that that past practice had to do with Balboa's past

MS. YEE:  Vague.  Overbroad.  Lacks foundation.

THE WITNESS:  I will go back, again, and point you to Paragraph 9 of the award which I've read into the record before.

BY MS. VILLAGOMEZ:

Q.  Understood.

So just for sake of clarity, when you say "the LTIP agreement clearly states that the calculation is based on GAAP," you're not relying on a provision within the LTIP provision itself that requires an application of GAAP globally?  You're referring to Paragraph 9 in the award agreement?

MS. YEE:  Misstates her prior testimony. Document speaks for itself.  Asked and answered.

THE WITNESS:  So I am going back to Paragraph 9 which, again, relates to award being subject to all applicable federal and state laws, rules, and regulations and to such approvals by any regulatory or governmental agency as may be required.  So, again, as we've discussed before, GAAP falls under that; therefore, this reference to the stipulated judgment had to be in compliance with GAAP.

BY MS. VILLAGOMEZ:

Q.  I'll turn to Paragraph 74, the first sentence,

MS. YEE:  Misstates her prior testimony.  Overbroad.

THE WITNESS:  I think the answer is yes.  Because that paragraph is very clear as to what this award needs to follow, and it specifically talks about applicable federal and state laws, rules, and regulations and approvals by regulatory or governmental agencies as may be required.  And Ameris is a publicly-traded institution.  It is required to follow GAAP.  It follows GAAP.  It follows all of these ASCs that are referenced with respect to any of the disagreements that Mr. Byrne had with respect to adjustments to the LTIP.  And those are what I applied in determining whether the treatment of Ameris to the proposed adjustments was appropriate or not.

BY MS. VILLAGOMEZ:

Q.   Last question before break.

You cannot identify any express language in the LTIP that mandates an application of GAAP, can you?

A.   Yes, I can.

MS. YEE:  Asked and answered multiple times.

BY MS. VILLAGOMEZ:

Q.   I see that you're reading into --

I understand your position with respect to Paragraph 9.  I have no confusion regarding that.  I'm

compensation for accounting, IT, and marketing.

Do you recall your opinions with respect to these Paragraphs 118 to 120?

A.   I do.   And this is, again, with respect to the 2022 LTIP adjustment.

Q.   Correct.   In your report in this section, you conclude that the accounting, IT, and marketing entries at issue should be treated as direct Balboa costs for LTIP purposes; correct?

A.   Yes.

Q.   How did you come to that conclusion?

A.   Well, through a number of things; one, reviewing the various documents, talking with Nicole Stokes and understanding how the Balboa pre-acquisition was set up.   Clearly, it was a Balboa entity.   And through these conversations and through review of -- there were various lists that showed employees, et cetera, through discussions with Jim LaHaise that I came to learn as much as there were certain people that were part of the Balboa team that when they moved over to Ameris were still part of the Balboa team and that they were -- the entirety of their job was to serve Balboa interests.   And some of them did not continue to report up through Mr. Byrne but instead reported up to others at Ameris, but, again, if you look

allegation of interim rent.

Do you recall your position with respect to how you analyzed Mr. Byrne's position on interim rent?

A. I do.

Q. And can you just summarize this section for me, please?

A. Sure. So there was request by Mr. Byrne to make adjustments to the LTIP calculation in 2023, and he was claiming that the accounting of interim rent was changed which is not consistent with past practices resulting in 1.974 million in reduced income. And the problem with that is that he was improperly accounting for interim rent. There's, again, another GAAP rule, ASC 842, that dictates how interim rent has to be treated. If you go to Paragraph 106, it talks -- well, there's various paragraphs that talk about it -- that banks have to -- publicly-traded companies have to follow 842. And that is what Ameris was doing. And in doing so -- and if that was not done, Mr. Byrne's point is that he would have been entitled to another $1.9 million through the LTIP calculation which is not proper.

BY MS. VILLAGOMEZ:

Q. And your analysis in this regard of interim rent is based on GAAP requirements; correct -- including

BY MS. VILLAGOMEZ:

Q.   So your damages conclusions as we discussed that Byrne is not entitled to payment as of today's date, that depends on accepting Ameris's interpretation and assumptions with respect to the LTIP; correct?

MS. YEE:  Misstates her prior testimony.

THE WITNESS:  I'll go back to my answer of just before.  I don't think you can limit it to Ameris because I, too, as the expert, have reviewed the analysis.  I have drawn my own opinions based on what I have seen in the records, what the LTIP says, what is called for there in the award, the guidelines that that award sets out.  And based on that, I have also come to these opinions.  So Ameris, yes, the defendant's position based on my independent analysis I agree with to a great extent, and secondly, I've drawn my own conclusions.

BY MS. VILLAGOMEZ:

Q.   And you said you agree with it to a great extent.

Is there any wiggle room where you don't agree with Ameris's calculations?

A.   As I sit here today, no.

Q.   I am done with my questioning with respect to your report.  I now want to turn to Ms. Dickson's

DEPOSITION OFFICER'S CERTIFICATE

I, Jennifer Livingston, hereby certify:

I am a duly qualified Certified Shorthand Reporter, in the state of California, holder of Certificate Number CSR 14087 issued by the Court Reporters Board of California and which is in full force and effect.  (Bus. & Prof. 8016)

I am not financially interested in this action and am not a relative or employee of any attorney of the parties, or of any of the parties.  (Civ. Proc. 2025.320(a))

I am authorized to administer oaths or affirmations pursuant to California Code of Civil Procedure, Section 2093(b) and prior to being examined, the deponent was first placed under oath or affirmation by me. (Civ. Proc. 2025.320, 2025.540(a))

I am the deposition officer that stenographically reported the testimony in the foregoing deposition and the foregoing transcript is a true record of the testimony given. (Civ. Proc. 2025.540(a))

I have not, and shall not, offer or provide any services or products to any party's attorney or third party who is financing all or part of the action without first offering same to all parties or their attorneys attending

the deposition and making same available at the same time to all parties or their attorneys. (Civ. Proc. 2025.320(b))

I shall not provide any service or product consisting of the deposition officer's notations or comments regarding the demeanor of any witness, attorney, or party present at the deposition to any party or any party's attorney or third party who is financing all or part of the action, nor shall I collect any personal identifying information about the witness as a service or product to be provided to any party or third party who is financing all or part of the action.  (Civ. Proc. 2025.320(c))

Dated:  January 20, 2026

_Jennifer Livingston_
_____

JENNIFER LIVINGSTON, CSR No. 14087