Stacy L. Fode, Esq. (SBN 199883)
sfode@nfclegal.com
Nana J. Yee, Esq. (SBN 272783)
nyee@nfclegal.com
**NUKK-FREEMAN & CERRA, P.C.**
550 West C Street, Suite 910
San Diego, California 92101
Telephone: 619.292.0515
Facsimile: 619.566.4741

Attorneys for Defendant
AMERIS BANK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an individual,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>AMERIS BANK, a Georgia corporation,<br><br>　　　　Defendant. | Case No. 8:24-cv-01989-MWC (JDEx)<br><br>**DEFENDANT AMERIS BANK'S OPPOSITION TO PLAINTIFF PATRICK BYRNE'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE ALL OR PART OF DEFENDANT'S EXPERT MARYELLEN SEBOLD'S OPINIONS AND TESTIMONY UNDER FRE 702 AND DAUBERT**<br><br>Judge: Hon. Michelle Williams Court<br>Date: May 22, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 6A<br><br>Discovery Cut-Off: November 28, 2025<br>Pretrial Conference: May 22, 2026<br>Trial Date: June 1, 2026 |

---

*Patrick Byrne v. Ameris Bank*　　　　　　　　　　　　　Case No. 8:24-01989
Defendant Ameris Bank's Opposition to Plaintiff's Motion *In Limine* No. 2 to Exclude All or Part of Defendant's Expert Maryellen Sebold's Opinions and Testimony Under FRE 702 and Daubert

## I.    INTRODUCTION

Plaintiff Patrick Byrne's ("Byrne" or "Plaintiff") Motion in Limine No. 2 ("MIL No. 2" or the "Motion") seeks to exclude the trial testimony of Defendant Ameris Bank's ("Ameris" or "Defendant") economic expert, Maryellen Sebold ("Sebold"), on two grounds. **First**, Byrne falsely claims that Sebold "intends to offer testimony that blatantly misstates the law." **Second**, Byrne contends that if the Court excludes Byrne's economic expert Deborah Dickson ("Dickson"), it must also exclude Sebold for the "same reasons," asserting that Sebold improperly offers a legal interpretation of the Long-Term Incentive Plan ("LTIP" or "Agreement") and further relies "heavily on the self-serving statements of Ameris's employees." Both arguments fail. [1]

The first argument rests on a deliberate mischaracterization of Ms. Sebold's opinions. Byrne <u>claims</u> that Ms. Sebold intends to testify that "because Ameris is a 'publicly-traded bank' it is 'required to follow [Generally Accepted Accounting Principles (GAAP)]' *in all aspects of its business*, including how it calculates Earnings Before Taxes ("EBT") for purposes of calculating LTIP bonuses (a fundamental issue in this case)." Sebold *never* opined or testified that Ameris was required to apply GAAP "in all aspects of its business." What she said - and what she will testify to at trial - is that Ameris, as a publicly traded bank, follows GAAP methodology, and that its calculation of EBT for the LTIP bonus pool was consistent with GAAP. **That is a factual opinion about accounting methodology squarely within Ms. Sebold's expertise as a Certified Public Accountant**. It is not a "misstatement of law."

The second argument is entirely contingent – and Byrne concedes as much, stating that it applies only "if the Court is inclined to grant Ameris's motion [in limine No. 2]." (Dkt. 145 at 6.) Byrne identifies no independent *Daubert* deficiency in Sebold's methodology, qualifications, or reliability. Instead, Byrne draws superficial parallels

---

[1] Byrne's MIL No. 2 should also be denied because Byrne failed to file any notice of motion by the Court-ordered deadline, in violation of Local Rule 7-4. *See* Ameris's Opp. to MIL No. 3, Section III.A.

---

between the two experts that collapse upon examination. Sebold's methodology is the opposite of Dickson's: where Dickson adopted Byrne's legal interpretation of the LTIP including the undefined "past practices" as her analytical premise and relied on Byrne's *off-the-record* statements to support her calculations, Sebold reviewed on *record evidence*, including documents produced in discovery and deposition testimony of witnesses, applied GAAP methodology, analyzed Ameris's accounting records including calculations, and assessed consistency with the LTIP Agreement's express terms. **Referencing the LTIP Agreement is not "contract interpretation"; consulting company personnel about factual matters is not reliance on "self-serving statements."**

Accordingly, this Motion should be denied in its entirety.

## II.    LEGAL ARGUMENT

A *Daubert* motion is designed to attack the expert's methodology, *not* debate whether the expert's ultimate conclusions are correct. Byrne's Motion does the opposite – it repackages Byrne's substantive disagreement with Sebold's conclusions as a challenge to her methodology. The Court should reject it.

### A. Ms. Sebold's Testimony Does Not "Blatantly Misstate[] the Law."

#### 1.  Byrne Mischaracterizes Sebold's Opinions

Byrne's first argument depends on a premise that is simply false: that Sebold "intends to testify to the jury that because Defendant is a 'publicly-traded bank' it is 'required to follow [GAAP]' *in all aspects of its business*," including how it calculates Earnings Before Taxes (EBT) for purposes of calculating LTIP bonuses. (Dkt. 145, at 1, 4 (emphasis added).) Sebold *never* testified or opined that Ameris is required to apply GAAP "in all aspects of its business." **Those are Byrne's words, not Ms. Sebold's.**

Byrne also claims that Sebold "used GAAP and the false premise that Ameris is required to apply GAAP *to even internal accounting practices* as excuses throughout her report and deposition to justify Ameris's refusal to apply Byrne's requested changes to the LTIP calculations". (Dkt. 145, p. 4 (emphasis added)). However, Sebold *never*

offered an opinion that Ameris is required to apply GAAP to "internal accounting practices." In fact, Byrne's counsel never once asked Sebold during her deposition whether Ameris (or any company) is required to apply GAAP to "internal accounting practices." Nor does Sebold's report contain any such statement. **Byrne is asking this Court to exclude Sebold based on testimony she never gave.**

What Ms. Sebold actually stated is straightforward. **First**, her report expressly states that "GAAP is a set of rules and standards that companies in the United States must follow when preparing their financial statements," (Dkt. 145-8, at ¶ 38), and Ameris, as a publicly traded bank, is required to follow GAAP. *See, e.g.,* (Dkt. 145-6 at 37:8, 45:21-22, and 63:8-10.) That statement provides the regulatory context for Sebold's accounting opinions - it is a factual description of the framework in which publicly traded banks operate, the kind of contextual observation accounting experts routinely provide as a foundation for their methodology analysis. *See e.g., U.S. Sec. & Exch. Comm'n v. Jensen*, 835 F.3d 1100, 1105 (9th Cir. 2016); 17 C.F.R. § 210.4-01(a)(1); *Ponce v. S.E.C.*, 345 F.3d 722, 735 (9th Cir. 2003). **Second**, she noted that the LTIP Agreement expressly references the employment of GAAP in the "Key Assumptions" and further opined (as a Certified Public Accountant with GAAP expertise[2]) that Ameris followed GAAP methodology in calculating EBT for the LTIP bonus pool, and that its calculations were consistent with both GAAP and the terms of the LTIP Agreement. (Dkt. 145-8, at ¶¶ 13, 23, 37-66, 110, 126-127, 129.) **Third**, Sebold analyzes the adjustments to EBT requested by Byrne and opines as to whether those adjustments are consistent with GAAP. (Dkt. 145-8, at ¶¶ 4, 12, 67-124, 128.)

Byrne's Motion cites a handful of deposition excerpts in an effort to manufacture a misstatement. But the quoted passages confirm exactly what Ameris contends: Sebold testified that Ameris, as a publicly traded company, follows GAAP (a factual description of Ameris's regulatory environment); that Ameris followed GAAP in its LTIP

---

[2] Byrne has not challenged Ms. Sebold's qualifications and experience with GAAP.

calculations (a factual observation)[3]; and that Byrne's requested adjustments to the LTIP calculations were inconsistent with GAAP (an expert accounting opinion). None of these statements asserts that GAAP is legally mandated for "all aspects" of Ameris's business or for "internal accounting practices" – the premise Byrne needs to undermine Sebold but cannot find in the record.

To be clear, Sebold did not (and will not) testify that the law requires GAAP for incentive plans. She will testify that Ameris uses GAAP-based accounting records and policies, and that GAAP provides the appropriate technical framework to evaluate Byrne's proposed adjustments to the LTIP calculation.

## 2. Sebold's Reliance on GAAP is Proper Expert Methodology, Not a Legal Opinion.

Even setting aside Byrne's mischaracterization, Sebold's reliance on GAAP methodology is precisely the kind of analysis an accounting expert is retained to provide. The LTIP Agreement itself references GAAP in the "Key Assumptions," and a separate provision states that the LTIP is subject to "all applicable federal and state laws, rules and regulations." (Dkt. 145-8, at ¶¶ 23, 37–42.) Sebold reviewed those provisions, applied her expertise in GAAP, and opined that Ameris's calculations were consistent with the Agreement's terms. That is expert accounting analysis - not a legal opinion.

Federal courts have expressly recognized that an expert's "reliance upon GAAP and other industry standards" constitutes reliable and admissible methodology. *See, e.g., Houserman v. Comtech Telecommunications Corp.*, 509 F. Supp. 3d 1301, 1304 (W.D. Wash. 2020); *S.E.C. v. Johnson*, 525 F. Supp. 2d 70, 75 (D.D.C. 2007). An accounting expert who applies GAAP to assess whether a company's financial calculations are accurate is doing exactly what *Daubert* contemplates: applying "reliable principles and methods" to the facts of the case. Fed. R. Evid. 702(c).

---

[3] See (Dkt. 145-8, at ¶¶ 13, 43-66, 126-127, 129.)

Byrne's real complaint is not that Sebold misstated the law, it is that Sebold refused to adopt Byrne's position that Ameris should have departed from GAAP methodology for internal bonus calculations because "no law or regulation explicitly requires publicly traded companies to use GAAP in all instances." (Dkt. 145 at 5.) **But the absence of a legal mandate to use GAAP does not make it improper for a company to do so in a given instance** - and it certainly does not render an expert's opinion that the company's GAAP-consistent methodology was somehow a "misstatement of law." Byrne cites **no** authority for the proposition that Ameris was prohibited from applying GAAP to its LTIP calculations. To the contrary, 17 C.F.R. § 240.13a requires issuers to maintain internal controls over financial reporting, defined to include controls that provide reasonable assurance that "transactions are recorded as necessary to permit preparation of financial statements in accordance with" GAAP. *See* 17 C.F.R. § 240.13a-15(f). A publicly traded bank's decision to apply GAAP-consistent methodology across its financial operations -including bonus pool calculations derived from the same books and records used for public financial statements - is not just permissible; **it is the norm**.

Byrne's argument also rests on an <u>unstated but untenable premise</u>: that a publicly traded bank should maintain separate accounting methodologies - one GAAP-compliant set for public filings and another non-GAAP set for internal calculations like the LTIP bonus pool. **That is not how publicly traded banks operate**. Under the Sarbanes-Oxley Act, public companies must maintain internal controls over financial reporting ("ICFR") designed to produce reliable GAAP-based financial data. *See* Sarbanes-Oxley Act § 404, 15 U.S.C. § 7262; 17 C.F.R. § 240.13a-15. These requirements drive publicly traded banks to maintain a single set of GAAP-based books subject to audit committee oversight, external audit, and regulatory scrutiny. In other words, EBT is not calculated in a vacuum - it flows from the same books and records that Ameris uses for its GAAP-compliant financial statements filed with the SEC. Internal calculations like the LTIP bonus pool are derived from those same records. **Byrne's *own* regulatory citations**

---

*Patrick Byrne v. Ameris Bank*                                    Case No. 8:24-01989
Defendant Ameris Bank's Opposition to Plaintiff's Motion *In Limine* No. 2 to Exclude All or Part of Defendant's Expert Maryellen Sebold's Opinions and Testimony Under FRE 702 and Daubert                                                                Page 5

**confirm this**. The very Regulation G provision Byrne cites, 17 C.F.R. § 244.100 (Dkt. 145 at 5), requires that whenever a company discloses a non-GAAP financial measure, it must be accompanied by a *reconciliation* to the most directly comparable GAAP measure - **underscoring that GAAP is always the baseline from which any departure must be measured and justified**. Ameris did not depart from GAAP, and Sebold's opinion that its GAAP-consistent methodology was sound is well within the bounds of proper expert testimony.

### 3. The Cases Cited by Byrne are Inapposite

Byrne cites numerous out-of-jurisdiction cases for the proposition that "[w]here an expert is expected to misrepresent the law in their testimony, courts exclude such opinions under *Daubert* and Rule 702." (Dkt. 145, p. 3). However, ***none*** of the cases cited by Byrne relate to accounting experts or standards, or even an incentive compensation dispute.  Moreover, all of the cited cases are either highly distinguishable, misrepresented, and/or <u>support denial of Byrne's motion</u>. *See, e.g., In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2021 WL 6690348, at *4 (E.D. Va. Aug. 16, 2021) (court **denied** motion to exclude a pharmaceutical industry expert on the grounds that the expert applied the incorrect definition of "authorized generic" - a legal term central to the antitrust framework the jury would apply - in a class action pharmaceutical antitrust case); *United States v. Cunningham*, 679 F.3d 355, 380 (6th Cir. 2012) (court granted motion to exclude expert attorney offered to testify about the legal standard for criminal intent in a wire fraud prosecution – testimony that directly invaded the province of the court's jury instructions); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) (court commented on trial court's gatekeeping authority in the context of an appeal of a jury verdict in a patent infringement action, noting that experts misstated the legal standard the jury was asked to apply); *Personalized Media Commc'ns, LLC v. Zynga, Inc.*, No. 212CV00068JRGRSP, 2013 WL 5962812, at *2 (E.D. Tex. Nov. 7, 2013) (court excluded expert in patent lawsuit because he utilized the incorrect legal standard to "enablement"); *M.R. v. City of Azusa*, No. CV131510DMGVBKX, 2014 WL

12839737, at *4 (C.D. Cal. Oct. 1, 2014) (court **denied** motion to exclude "fleeing felon" theory at trial in a case involving the police shooting of a fleeing suspect, reasoning that any misstatement could be addressed through a timely objection at trial).

Sebold did not misstate the law in her expert report or during her deposition. She is not purporting to instruct the jury on the governing legal standard. She is testifying – as an accounting expert – that Ameris's methodology was consistent with GAAP and the terms of the LTIP agreement, which plainly references GAAP in its "Key Assumptions" and requires compliance with applicable laws and regulations. **That is a factual and methodological opinion, not a legal one**. Byrne's disagreement with Sebold's conclusions does not justify exclusion and Byrne's cited authority provides no basis for excluding Sebold.

### 4. Byrne's Rule 403 Argument Fails.

Byrne alternatively argues that Sebold's testimony should be excluded under Rule 403 as creating a "substantial risk of misleading the jury." (Dkt. 145 at 6.) Expert accounting testimony about whether a company's calculations complied with GAAP is neither inflammatory nor an invitation to decide the case on an improper basis. Any concern about GAAP's applicability is readily addressed through cross-examination or a limiting instruction, not the drastic remedy of exclusion. See *Daubert*, 509 U.S. at 596.

### B. <u>Byrne's "Symmetry" Argument Fails Because The Two Experts Are Not Comparable</u>

Byrne's second argument is that if the Court excludes Dickson's testimony, it must also exclude Sebold's for the "same reasons." (Dkt. 145 at 6.) This argument is fatally flawed for three independent reasons.

### 1. The Argument is Entirely Contingent

Initially, Byrne concedes that this argument applies only "if the Court is inclined to grant Ameris's motion." (Dkt. 145 at 6.) **That is a remarkable admission**. Byrne is not arguing that Sebold's testimony independently fails *Daubert*. Instead, he is arguing that if the Court agrees with a standard Byrne himself opposes, that standard should also apply

to Sebold. In other words, Byrne's position is: "The Court should deny Ameris's motion to exclude Dickson, but if the Court grants it, the Court must also exclude Sebold under the same reasoning." That is not an affirmative basis for exclusion under Rule 702. It is a contingent argument that identifies no independent deficiency in Sebold's methodology, qualifications, or reliability.

### 2. Sebold Does Not "Legally Interpret" the LTIP Agreement

Byrne contends that Sebold, "just as Ameris accuses Ms. Dickson of doing," interprets the LTIP Agreement.[4] (Dkt. 145 at 8.) **The parallel is superficial**. The distinction is not whether each expert references the LTIP, it is how each uses it in her analysis. As discussed above, Sebold started from the LTIP's express references to GAAP and applicable law, reviewed Ameris's actual accounting records, assessed whether Ameris's calculations complied with those standards, and evaluated Byrne's proposed adjustments against that methodology. That is not "interpreting a contract" - it is applying accounting expertise to the operative documents. If referencing the underlying agreement were enough to constitute improper contract interpretation, no accounting expert could ever testify.

Byrne's own bullet points confirm the distinction. The bullets quote Sebold's report and deposition referencing "the terms of the LTIP [a]greement," what the LTIP Agreement "clearly states," what is "consistent with GAAP and the LTIP [A]greement," and whether Byrne's adjustments are "supported by the terms of the LTIP." (Dkt. 145, p. 7-8). Those are accounting assessments informed by the Agreement's language, not legal conclusions about its meaning.

Unlike Sebold, Dickson did not base her calculations on facts or data as required under *Daubert*, nor was her opinion the product of reliable principles and methods.

---

[4] Byrne's entire argument regarding Sebold's alleged legal interpretation of the LTIP Agreement is a regurgitation of the exact same argument he made in the Opposition to Ameris's Motion to Exclude *Dickson's* testimony, right down to the bullet points referencing Sebold's supposed "legal conclusions." (Dkt. 124, p. 2-4; Dkt. 145, p. 7-8).

---

F.R.E. 702(b)-(c). Dickson disregarded the GAAP methodology expressly referenced in the LTIP in favor of undefined "past practices" that she ***admitted*** at deposition she could not independently verify. (Dkt. 116-1, p. 6.) Instead, Dickson relied upon Byrne's off-the-record statements about what Balboa's "past practices" were, adopted his legal interpretation of the LTIP, and then Dickson then "tied out Mr. Byrne's calculation" (Dkt. 115-4, at ¶ 26-27) - confirming that her analysis started from Byrne's conclusion and worked backward. (Dkt. 116-1, p. 6-7). Dickson further opined that Sebold's "interpretation of the LTIP Agreement as incorporating GAAP methodology was 'faulty'" (Dkt. 116-1 at 4) - a legal opinion (and an incorrect one) about contractual interpretation that falls outside the scope of accounting expertise.

### 3. Sebold's Reliance on Record Evidence Is Categorically Different from Dickson's Reliance on Byrne's Off-the-Record Statements.

Byrne further contends that Sebold "relies heavily on the self-serving statements of Ameris's employees," just as Dickson relied on Byrne's statements. (Dkt. 145, at 1.) This comparison is false.

The **two instances** Byrne cites of Sebold's alleged "reliance" on Ameris personnel involve narrow factual confirmations – not wholesale adoption of a party's litigation theory. Sebold spoke with Nicole Stokes (CFO of Ameris) and James LaHaise (CSO of Ameris) to confirm whether certain employees worked 100% for the Balboa Division, but she did not rely *exclusively* on those conversations. Her report cites Stokes's deposition testimony on this same subject (Dkt. 145-8, at ¶ 88; Dkt. 145, p. 9; Dkt. 145-6, at 66:11–15), and Sebold testified that she also relied on "the various documents," including "various lists that showed employees." (Dkt. 145-6, at 66:11-18.) Under Rule 703, accounting experts routinely consult and confirm with company personnel to understand how calculations were performed and how entities were structured, and then corroborate those statements against the documentary record. That is precisely what Sebold did.

Dickson's reliance on Byrne's statements was fundamentally different. She did not confirm discrete facts against the record. She relied on Byrne's off-the-record,

uncorroborated statements about Balboa's undefined "past practices" as the foundation for her entire framework, adopted Byrne's own calculations wholesale, and "tied out Mr. Byrne's calculation." (Dkt. [Dickson Report ¶ 26; Dkt [Ameris's MIL/Daubert]) At deposition, she admitted she could not independently verify the "past practices" Byrne described. (*Id.* Dickson Dep. at 37:2–28; 39:6–9.) The difference between confirming facts against the record and building an entire expert opinion on a party's self-serving narrative is the difference between reliable methodology and advocacy.

### 4. Byrne's Fallback Request for "Narrow Tailoring" Confirms that Full Exclusion is Unwarranted

Byrne argues in the alternative that if the Court finds both experts offered improper legal conclusions, the remedy should be "narrowly tailored" limitation, not full exclusion, citing *JAS Supply, Inc. v. Radiant Customs Services, Inc.*, 2023 WL 6366044 (W.D. Wash. Sept. 29, 2023). (Dkt. 145 at 9–10.) **This fallback effectively concedes that full exclusion of Sebold is unwarranted –** and under *JAS Supply*'s own framework, Sebold's testimony survives intact because her core opinions that Ameris's LTIP calculations were methodologically sound, consistent with GAAP, and properly calculated - are accounting opinions, not legal conclusions.

The Court should also note the inconsistency in Byrne's position. In the same motion, Byrne argues that Sebold's testimony should be excluded entirely (Dkt. 145 at 6–7), and then three pages later argues that any exclusion should be "limite[d], not fully excluded" (Dkt. 145 at 9). Byrne cannot have both. In any event, neither remedy is warranted because Sebold's methodology satisfies *Daubert* and her opinions are properly admissible under Rule 702.

## IV.   CONCLUSION

For these reasons, Ameris respectfully requests that the Court deny Byrne's Motion in Limine No. 2.

///

///

Dated:  May 1, 2026

NUKK-FREEMAN & CERRA

By:

*/s/Stacy L. Fode*

Stacy L. Fode, Esq.
Nana J. Yee, Esq.
Attorneys for Defendant
AMERIS BANK