MATTHEW T. SESSIONS (BAR NO. 307098)
STACEY A. VILLAGOMEZ (BAR NO. 317081)
MADISON E. LARSEN (BAR NO. 364953)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
2010 Main Street, 8th Floor
Irvine, California 92614-7214
Phone:  (949) 553-1313
Fax:  (949) 553-8354
E-Mail:  msessions@allenmatkins.com
         svillagomez@allenmatkins.com
         mlarsen@allenmatkins.com

Attorneys for Plaintiff
PATRICK BYRNE

Stacy L. Fode, Esq. (SBN 199883)
sfode@nfclegal.com
Nana J. Yee, Esq. (SBN 272783)
nyee@nfclegal.com
**NUKK-FREEMAN & CERRA, P.C.**
550 West C Street, Suite 910
San Diego, CA 92101
Telephone: 619.292.0515
Facsimile: 619.566.4741

Attorneys for Defendant
AMERIS BANK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> AMERIS BANK, a Georgia corporation, <br><br> Defendant. | Case No. 8:24-cv-01989-MWC (JDEx) <br><br> **COMPETING VERDICT FORMS** <br><br> Judge: Hon. Michelle Williams Court <br> Dept.: Courtroom 6A <br><br> Discovery Cut-Off: November 28, 2025 <br> Pretrial Conference: May 22, 2026 <br> Trial Date: June 1, 2026 |

## PLAINTIFF'S PROPOSED VERDICT FORM

Plaintiff Patrick Byrne proposes the following language be given to the jurors for their determination of the award of just compensation in the above-captioned case:

When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout the form. Your answer to each question must be unanimous.

We, the jury, return these unanimous answers as our verdict in this case:

**Claim No. 1:**

### Wrongful Termination in Violation of Public Policy

We answer the questions submitted to us as follows:

1. Was Patrick Byrne's complaining about Ameris Bank's failure to pay earned wages a substantial motivating reason for Ameris Bank's decision to reduce Patrick Byrne's job responsibilities and terminate Patrick Byrne?

    ____ YES ____ NO

**If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions for this claim, and go to question 3.**

2. Did the discharge cause Patrick Byrne harm?

    ____ YES ____ NO

**Answer questions 3.**

[CACI No. VF-2406.  Wrongful Discharge in Violation of Public Policy]

**<u>Claim No. 2:</u>**

**<u>Retaliation in Violation of California Labor Code § 1102.5</u>**

3. Did Patrick Byrne disclose to a person with authority over Patrick Byrne or an employee with authority to investigate, discover, or correct legal violations that Ameris Bank had continuously failed to pay Patrick Byrne, and other Balboa employees, the earned compensation they were owed under the Balboa Capital LTIP?

    ____ YES ____ NO

OR

4. Did Ameris Bank believe that Patrick Byne disclosed to a person with authority over Patrick Byrne or an employee with authority to investigate, discover, or correct legal violations that Ameris Bank had continuously failed to pay Patrick Byrne, and other Balboa employees, the earned compensation they were owed under the Balboa Capital LTIP?

    ____ YES ____ NO

**If your answer to either question 3 OR 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions for this claim, and go to question 9.**

5. Did Patrick Byrne have reasonable cause to believe that his complaints against Ameris Bank disclosed a violation of law?

    ____ YES ____ NO

**If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions for this claim, and go to question 9.**

6. Was Patrick Byrne's complaints against Ameris Bank a contributing factor in Ameris Bank's decision to discharge Patrick Byrne?

    ____ YES ____ NO

**If your answer to question 6 is yes, then answer question 7. If you answered no, stop here, answer no further questions for this claim, and go to question 9.**

7.  Was Patrick Byrne harmed?

_____ YES _____ NO

**If your answer to question 7 is yes, then answer question 8. If you answered no, stop here, answer no further questions for this claim, and go to question 9.**

8.  Was Ameris Bank's conduct a substantial factor in causing Patrick Byrne's harm?

_____ YES _____ NO

**Answer question 9.**

[CACI No. 4603. Whistleblower Protection—Essential Factual Elements (Lab. Code, § 1102.5)]

**Claim No. 3:**

<u>**Nonpayment of Wages**</u>

9.  Does Ameris Bank owe Patrick Byrne wages under the terms of the employment?

    ____ YES ____ NO

**Answer question 10.**

[CACI No. VF-2700.  Nonpayment of Wages (Lab. Code, §§ 201, 202, 218)]


<u>**Waiting Time Penalties**</u>

10. Did Ameris Bank willfully fail to pay the full amount of wages earned by Patrick Byrne on his last day of employment?

    ____ YES ____ NO

**Answer question 11.**


[CACI No. VF-2700. Nonpayment of Wages (Lab. Code, §§ 201, 202, 218); CACI No. VF-2703. Waiting-Time Penalty for Nonpayment of Wages (Lab. Code, §§ 203, 218)]]

**Claim No. 4:**

**Breach of Contract**

11. Did Patrick Byrne and Ameris Bank enter into a contract?

_____ YES _____ NO

**If your answer to question 11 is yes, then answer question 12. If you answered no, stop here, answer no further questions for this claim, and go to question 18.**

12. Did Patrick Byrne do all, or substantially all, of the significant things that the contract required him to do?

_____ YES _____ NO

**If your answer to question 12 is yes, [skip question 13 and] answer question 16. If you answered no, answer question 13 if excuse is at issue, or stop here, answer no further questions for this claim, and go to question 18.**

13. Was Patrick Byrne excused from having to do all, or substantially all, of the significant things that the contract required him to do?

_____ YES _____ NO

**If your answer to question 13 is yes, then answer question 14. If you answered no, stop here, answer no further questions for this claim, and go to question 18.**

14. Did all the conditions that were required for Ameris Bank's performance occur?

_____ YES _____ NO

**If your answer to question 14 is yes, answer question 15. If you answered no, stop here, answer no further questions for this claim, and go to question 18.**

15. Did Ameris Bank fail to do something that the contract required it to do?

_____ YES _____ NO

OR

16. Did Ameris Bank do something that the contract prohibited it from doing?

_____ YES _____ NO

_Patrick Byrne v. Ameris Bank_         Case No. 8:24-01989

COMPETING VERDICT FORMS         Page 6

**If your answer to either question 15 OR 16 is yes, then answer question 17. If you answered no to both options, stop here, answer no further questions for this claim, and go to question 18.**

17. Was Patrick Byrne harmed by Ameris Bank's breach of contract?

_____ YES _____ NO

**Answer question 18.**

[CACI No. VF-300. Breach of Contract]

## <u>DAMAGES</u>

**If you answered YES to either questions 2, 8, 9, OR 17, answer question 18.**

**If you answered YES to question 10, answer question 19.**

**If you answered YES to question 2 OR 8, answer questions 18 AND 20.**

**If you answered NO to questions 2, 8, 9, AND 17, then stop here, answer no further questions and have the presiding juror sign and date this form and return it to the court room attendant.**

18. What are Patrick Byrne's damages?

    a.    **Past economic damages**: Enter the amount below if you find that Ameris Bank is liable to Patrick Byrne under Wrongful Termination in Violation of Public Policy, Retaliation in Violation of California Labor Code § 1102.5, Nonpayment of Wages, **OR** Breach of Contract.

        **$_____**

    b.    **Future economic damages**: Enter the amount below if you find that Ameris Bank is liable to Patrick Byrne under Wrongful Termination in Violation of Public Policy, Retaliation in Violation of California Labor Code § 1102.5, Nonpayment of Wages, **OR** Breach of Contract.

        **$_____**

    c.    **Past noneconomic loss**: Enter the amount below if you find that Ameris is liable to Patrick Byrne under Wrongful Termination in Violation of Public Policy **OR** Retaliation under California Labor Code § 1102.5. [Including pain, mental suffering, loss of enjoyment of

life, inconvenience, grief, anxiety, humiliation, and emotional distress]

$_____

d.    **Future noneconomic loss**: Enter the amount below if you find that Ameris is liable to Patrick Byrne under Wrongful Termination in Violation of Public Policy **OR** Retaliation under California Labor Code § 1102.5. [Including pain, mental suffering, loss of enjoyment of life, inconvenience, grief, anxiety, humiliation, and emotional distress]

$_____

19. Waiting Time Penalties

a.    For how many calendar days following Patrick Byrne's last day of employment did Ameris willfully fail to pay the full amount of Patrick Byrne's wages?

_____ **days.**

b.    What was Patrick Byrne's daily wage rate at the time his employment with Ameris Bank ended?

$_____ **per day.**

[CACI No. VF-2703. Waiting-Time Penalty for Nonpayment of Wages (Lab.Code, §§ 203, 218)]

**TOTAL    $_____**

## PUNITIVE DAMAGES

**Only answer the questions below if you answered yes to Question 4 OR 9 above. If you have answered no to both Question 4 AND 9, stop here, answer no further questions, and have the presiding juror sign and date this form.**

20. Did Ameris Bank engage in the conduct with malice, oppression, or fraud?

_____ YES _____ NO

**If your answer to question 23 is yes, then answer question 24. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

21. What amount of punitive damages, if any, do you award Patrick Byrne?

$_____

[CACI No. VF-3900. Punitive Damages]

**We award Patrick Byrne the following damages:**

**TOTAL    $_____**

[CACI No. VF-300. Breach of Contract; CACI No. VF-3920. Damages on Multiple Legal Theories]

You have now reached the end of the verdict form and should review it to ensure it accurately reflects your unanimous determinations. The Presiding Juror should then sign and date the verdict form in the spaces below and notify the courtroom deputy that you have reached a verdict. The Presiding Juror should retain possession of the verdict form and bring it when the jury is brought back into the courtroom.

Dated: _____        Signed: _____

Presiding Juror

**FACTUAL AND LEGAL BASIS FOR PLAINTIFF'S POSITION:**

Plaintiff proposes that the Court provide the jury with a general verdict form, as stated in the Court's Civil Trial Order, as the parties have been unable to agree upon a special verdict form.  Dkt. 22, at 10:1-9.  In the event the Court prefers to use a special verdict form, Plaintiff's Proposed Verdict Forms substantially follow CACI, the authoritative source of verdict forms for causes of action governed by California law.

Defendant's Proposed Verdict Forms are designed to confuse the issues and will in turn confuse the jury.  Defendant's Proposed Verdict Forms consist of 40 questions, deviate significantly from the model instructions, and attempt to shoehorn in Defendant's preferred themes in an effort to prejudice the jury.

**A. Retaliation Under Labor Code § 1102.5**

Defendant's proposed verdict form suffers from several critical defects with respect to the retaliation claim. Question 4 presents jurors with five options for the "subject matter" of Byrne's disclosure, only one of which constitutes a cognizable element under the statute. Presenting jurors with four legally irrelevant options alongside one viable one is precisely the kind of confusing and misleading framing that a verdict form must avoid. Question 6 asks jurors to assess how much time elapsed between Byrne's disclosure and his termination—a formulation that is both misleading and legally incorrect. Not only does it fail to account for Byrne's multiple disclosures, but it fundamentally misapprehends the law: there is no "temporal" element to a retaliation claim. Timing may be relevant only insofar as it permits a juror to draw an inference of causation; it is not an independent element to be weighed. Question 7 asks whether Byrne received benefits such as bonus compensation, continued employment, or a salary increase prior to his discharge. This inquiry has no basis in any element of any claim at issue in this case and should be stricken in its entirety.

Furthermore, Defendant's Question 11 assumes an affirmative defense that Defendant did not plead in its answer, namely Labor Code section 1102.6.  And

Questions 13 and 14 assume that Byrne's complaints to Ameris were only about the methodology of the LTIP rather than Ameris's failure to pay earned wages.

## B. Wrongful Termination in Violation of Public Policy

With respect to the wrongful termination claim, Questions 12 and 21 improperly conflate liability under Labor Code § 1102.5 with common law wrongful termination in violation of public policy. By structuring the questions to suggest that an affirmative finding on one claim compels an affirmative finding on the other—and vice versa—Defendant's form misstates the law and risks confusing the jury into believing the two claims are legally identical. They are not. Each claim requires its own independent analysis, and a verdict form that collapses the two deprives Plaintiff of a fair and accurate jury determination on each.

## C. Damages for Retaliation and Wrongful Termination

Defendant's proposed Questions 19 and 20 address mitigation of damages and ask jurors to determine whether Byrne sought employment after discharge and what amount Byrne could have reasonably earned from "comparable employment." This framing improperly shifts the burden and injects a mitigation framework into the damages phase in a manner that is argumentative and prejudicial. Mitigation is an affirmative issue for Defendant to raise and substantiate; embedding it as a standalone jury question in this fashion distorts the damages inquiry.

## D. Failure to Pay Wages Under Labor Code §§ 201 and 203

The wage claim section of Defendant's proposed verdict form is defective in multiple respects, spanning both the 2022 and 2023 LTIP Cash Award periods. At the outset, Defendant prefaces the entire section with a bracketed note characterizing the claims as concerning "only the 2022 and 2023 LTIP Cash Awards at issue"—a litigation-driven framing that has no place in a neutral verdict form and improperly colors how jurors will approach the questions that follow. Questions 22, 25, 31, and 35 then ask jurors to determine whether the LTIP constituted a discretionary bonus. This question has already been decided by the Court and is not a matter for the jury to relitigate. Submitting

it again in the verdict form is inconsistent with the Court's prior ruling and invites the jury to second-guess a legal determination that has already been made. Question 27 prejudicially references the fact that Byrne was already paid $5,600,000, injecting a number into the jury's deliberations in a manner that is misleading and likely to anchor or skew the damages analysis. Finally, Questions 28 and 38 ask jurors to fill in the "method of calculation used to determine Byrne's individual share"—a request that is vague, argumentatively framed, and not a proper subject for a special verdict question, which should ask for factual findings rather than invite jurors to construct or articulate a damages methodology.

**E. Other Objections**

Defendant's Questions 1 and 2 ask the jury to decide facts that Defendant has already admitted, as explained in the Proposed Final Pretrial Conference Order.

Defendant's Proposed Verdict Forms do not address punitive damages at all.

**DEFENDANT'S PROPOSED VERDICT FORM**

*We answer the questions submitted to us as follows:*

**PART I: FOUNDATIONAL FACTS**

1. Was Patrick Byrne ("Byrne") employed by Ameris?

_____ Yes        _____ No

*If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.*

2. Was Byrne discharged?

_____ Yes        _____ No

*If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.*

## **PART II: RETALIATION IN VIOLATION OF LABOR CODE § 1102.5**

3. Did Byrne disclose information to a person with authority over him, or to another employee who had authority to investigate, discover, or correct legal violations or noncompliance?

_____ Yes      _____ No

*If your answer to question 3 is yes, then answer question 4. If you answered no, skip to question 12.*

4. What was the subject matter of Byrne's disclosure? (Check all that apply.)

_____ A dispute over the terms or interpretation of the Long-Term Incentive Plan ("LTIP")

_____ A disagreement about Ameris's accounting methods or calculation methodology

_____ A concern or complaint about a departure from Byrne's past practices as the owner of a privately held company before acquisition by Ameris

_____ An internal personnel or business matter

_____ A violation of a state or federal statute, rule, or regulation

*Answer Question 5.*

5. Did Byrne reasonably believe that the information he disclosed revealed a violation of a state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation?

_____ Yes      _____ No

*If your answer to question 5 is yes, then answer question 6. If you answered no, skip to question 12.*

6. How much time elapsed between Byrne's disclosure and the date of his discharge or termination? _____months

---

*Patrick Byrne v. Ameris Bank*                                    Case No. 8:24-01989
COMPETING VERDICT FORMS                                    Page 15

*Answer Question 7.*

7. After Byrne's disclosure and before his discharge:

    (a) Did Byrne receive a salary increase? __Yes ___No

    (b) Did Byrne receive bonus compensation? __Yes __No

    (c) Was Byrne offered continued employment? __Yes __No

*Answer Question 8.*

8. Was Byrne's disclosure a contributing factor in Ameris's decision to discharge him?

    _____ Yes    _____ No

*If your answer to question 8 is yes, then answer question 9. If you answered no, skip to question 12.*

9. Was Byrne harmed?

    _____ Yes    _____ No

*If your answer to question 9 is yes, then answer question 10. If you answered no, skip to question 12.*

10. Was Ameris's conduct a substantial factor in causing Byrne harm?

    _____ Yes    _____ No

*If your answer to question 10 is yes, then answer question 11. If you answered no, skip to question 12.*

11. Has Ameris proven, by clear and convincing evidence, that it would have discharged Byrne anyway at that time for legitimate, independent reasons?

    _____ Yes    _____ No

*If your answer to question 11 is yes, skip to Question 12. If you answered no, then answer question 12.*

---

*Patrick Byrne v. Ameris Bank*    Case No. 8:24-01989
COMPETING VERDICT FORMS    Page 16

## PART III: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

12. Byrne's wrongful termination claim is derived from the same alleged protected activity underlying his retaliation claim under Labor Code § 1102.5.

- If you found in favor of Ameris on the retaliation claim - that is, if you answered "no" to Questions 3, 5, 8, 9, or 10, or "yes" to Question 11 - then Ameris is not liable to Byrne for wrongful termination in violation of public policy. Skip to Question 17.

- If you found in favor of Byrne on the retaliation claim, then answer Questions 13 through 16 below.

13. Did Byrne's complaints about the methodology of the LTIP constitute protected activity under an applicable legal statute or law?

_____ Yes        _____ No

*If your answer to question 13 is yes, skip to Question 14. If you answered no, skip to question 17.*

14. Were Byrne's complaints about the methodology of the LTIP a substantial motivating reason for Ameris's decision to discharge him?

_____ Yes        _____ No

*If your answer to question 14 is yes, skip to Question 15. If you answered no, skip to question 17.*

15. Was Byrne harmed?

_____ Yes        _____ No

*If your answer to question 15 is yes, skip to Question 16. If you answered no, skip to question 17.*

16. Was the discharge a substantial factor in causing Byrne harm?

_____ Yes        _____ No

*Answer question 17.*

## PART IV: DAMAGES FOR RETALIATION AND WRONGFUL TERMINATION CLAIMS

*[NOTE: Answer Questions 17 through 21 only if you found in favor of Byrne on his retaliation claim - that is, if you answered "yes" to Questions 3, 5, 8, 9, and 10, and "no" to Question 11. If you found in favor of Ameris on the retaliation claim, skip to Question 22.]*

17. Has Ameris proven that, after discharging Byrne, it discovered evidence of misconduct by Byrne that Ameris did not know about at the time of discharge, and that would have led Ameris to discharge Byrne had it known?

_____ Yes        _____ No

*If your answer to question 17 is yes, skip to Question 18. If you answered no, skip to question 19.*

18. On what date did Ameris discover this evidence?

Date: _____

*Answer question 19.*

19. Did Byrne make reasonable efforts to seek comparable employment after his discharge?

_____ Yes        _____ No

*Answer question 20.*

20. What amount has Byrne earned or could reasonably have earned from comparable employment since his discharge?

$_____

*Answer question 21.*

21. What are Byrne's damages for Ameris's retaliation in violation of Labor Code § 1102.5 and wrongful termination in violation of public policy?

*[NOTE: In calculating past economic damages, you must offset any amounts Byrne earned or reasonably could have earned from comparable employment as*

---

*identified in Question 20.]*

*[NOTE: If you answered "yes" to Question 17, any award of past economic damages (lost earnings and benefits) must be limited to the period between Byrne's discharge and the date identified in Question 18. You may not award any future economic damages (lost earnings and benefits).]*

  a. Economic Damages (lost earnings):  $_____

  b. Noneconomic loss (emotional distress): $_____

  TOTAL: $_____

*Answer question 22.*

## PART V: FAILURE TO PAY WAGES AT TERMINATION
## (LABOR CODE §§ 201, 203)

*[NOTE: This section concerns only the 2022 and 2023 LTIP Cash Awards at issue.]*

### A. 2022 LTIP Cash Award

22. Under the terms of the LTIP, was the 2022 LTIP Cash Award a discretionary bonus over which Ameris retained discretion as to the fact and amount of Byrne's individual payment, or was it incentive compensation that Byrne could earn by satisfying specific conditions?

_____ Discretionary bonus            _____ Incentive compensation

*If your answer to question 22 is "Incentive compensation," then answer question 23. If you answer is "Discretionary bonus," skip to question 31.*

23. Did Ameris correctly calculate the Balboa Division's earnings before taxes ("EBT") under the terms of the LTIP for purposes of determining the 2022 LTIP pool?

_____ Yes        _____ No

*If your answer to question 23 is yes, then answer question 31. If you answered no, then answer question 24.*

24. What is the correct total 2022 LTIP pool amount, calculated in accordance with the terms of the LTIP?

$_____

*Answer question 25.*

25. Was Byrne's individual share of the 2022 LTIP pool fixed or ascertainable by a definite method of calculation under the terms of the LTIP, or was it subject to Ameris's discretion?

_____ Fixed or ascertainable        _____ Subject to Ameris's discretion

*If your answer to question 25 is "Fixed or ascertainable," then answer question 26. If you answer is "Subject to Ameris's discretion," skip to question 31.*

---

26. What is the amount of Byrne's individual share of the correct 2022 LTIP pool (as determined in question 24)?

$_____

*Answer question 27.*

27. Ameris paid Byrne approximately $5,600,000 as his 2022 LTIP Cash Award. What is the unpaid portion of Byrne's individual share of the 2022 LTIP pool?

*[NOTE: Subtract the amount Ameris already paid ($5,600,000) from the amount you determined in Question 26.]*

$_____

*If your answer to question 27 is greater than $0, then answer question 28. If it is $0 or less, skip to question 31.*

28. What method of calculation did you use to determine Byrne's individual share in question 26?

_____

*Answer question 29.*

**Waiting Time Penalties for 2022 LTIP Cash Award (Labor Code § 203)**

29. Did Ameris willfully fail to pay Byrne the unpaid portion of the 2022 LTIP Cash Award at the time of his discharge?

_____ Yes     _____ No

*If your answer to question 29 is yes, then answer question 30. If you answered no, skip to question 31.*

30. Did Ameris have a good-faith belief that the disputed 2022 LTIP Cash Award amount was not owed to Byrne?

_____ Yes     _____ No

*Answer question 31.*

26.

**B. 2023 LTIP Cash Award**

31. Under the terms of the LTIP, was the 2023 LTIP Cash Award a discretionary

bonus over which Ameris retained discretion as to the fact and amount of payment, or was it incentive compensation that Byrne could earn by satisfying specific conditions?

_____ Discretionary bonus                _____ Incentive compensation

*If your answer to question 31 is "Incentive compensation," then answer question 32. If you answer is "Discretionary bonus," skip to the signature line.*

32. Did Ameris correctly calculate the Balboa Division's EBT under the terms of the LTIP for 2023?

_____ Yes        _____ No

*If your answer to question 32 is yes, skip to the signature line. If you answered no, then answer question 33.*

33. Under the correct EBT calculation, did the Balboa Division meet the EBT performance threshold such that a total LTIP pool was created for 2023?

_____ Yes        _____ No

*If your answer to question 33 is yes, then answer question 34. If you answered no, skip to the signature line.*

34. What is the correct total 2023 LTIP pool amount, calculated in accordance with the terms of the LTIP?

$_____

*Answer question 35.*

35. Was Byrne's individual share of the 2023 LTIP pool fixed or ascertainable by a definite method of calculation under the terms of the LTIP, or was it subject to Ameris's discretion?

_____ Fixed or ascertainable    _____ Subject to Ameris's discretion

*If your answer to question 35 is "Fixed or ascertainable," then answer question 36. If you answer is "Subject to Ameris's discretion," skip to the signature line.*

36. What is the amount of Byrne's individual share of the 2023 LTIP (as determined in question 34)?

$_____

*Answer question 37.*

37. Did Ameris fail to pay Byrne the 2023 LTIP Cash Award at the time of his termination?

_____ Yes        _____ No

*If your answer to question 37 is yes, then answer question 38. If you answered no, skip to the signature line.*

38. What method of calculation did you use to determine Byrne's individual share in question 36?

_____

*Answer question 39.*

**Waiting Time Penalties for 2023 LTIP Cash Award (Labor Code § 203)**

39. Did Ameris willfully fail to pay Byrne the 2023 LTIP Cash Award at the time of his discharge?

_____ Yes        _____ No

*If your answer to question 39 is yes, then answer question 40. If you answered no, skip to the signature line.*

40. Did Ameris have a good-faith belief that no 2023 LTIP Cash Award amount was owed to Byrne?

_____ Yes        _____ No

Signed: _____

Dated: _____

After this verdict form has been signed, notify the clerk.

**FACTUAL AND LEGAL BASIS FOR DEFENDANT'S POSITION:**

Pursuant to the Court's Civil Trial Order (Dkt. 22 at Section II(B)(4)), Defendant Ameris Bank ("Ameris") submits this statement of position regarding the parties' competing proposed verdict forms. Despite good-faith efforts to reach agreement, the parties were unable to agree on a joint verdict form. **The principal reason is that Plaintiff's proposed verdict form improperly incorporates a breach of contract claim that was never pleaded in this action and that the Court has not permitted. This unpleaded claim is interwoven throughout Plaintiff's proposed form, making it impossible to isolate areas of agreement from areas of disagreement.**

Beyond the breach of contract issue, Plaintiff's proposed verdict form contains **numerous additional deficiencies**: it uses loaded and conclusory language that presupposes disputed facts; it omits essential statutory elements and affirmative defenses; and it conflates distinct claims into single conclusory questions. Ameris's proposed special verdict form corrects each of these deficiencies and is consistent with jury instructions tailored to the facts of this case and supported by governing case law, as well as the applicable legal standards.

Ameris addresses each area of dispute below:

**I.     PLAINTIFF'S VERDICT FORM IMPROPERLY INCLUDES AN UNPLEADED BREACH OF CONTRACT CLAIM**

Plaintiff's proposed verdict form includes an entire section devoted to a breach of contract claim (Plaintiff's Questions 11-17), along with related references in the damages section (Plaintiff's Question 18). This claim was never pleaded in Plaintiff's Complaint (Dkt. 1), and this Court has already denied Plaintiff's request to add a breach of contract claim in December 2025, finding that Plaintiff had not presented evidence supporting amendment to conform to proof and that Ameris would be prejudiced by amendment given the close of fact discovery and the forthcoming dispositive motions deadline. (Dkt. 87.)

A party may not submit to the jury a claim that was never pleaded, and the Court

has not granted Plaintiff leave to amend his Complaint to add a breach of contract claim.

**Ameris's Position: The breach of contract claim and all related language should be removed from the verdict form in its entirety**.

## II. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

### A. Plaintiff's Verdict Form Uses Loaded, Conclusory Language

Plaintiff's Question 1 asks: "Was Patrick Byrne's complaining about Ameris Bank's failure to pay earned wages a substantial motivating reason for Ameris Bank's decision to reduce Patrick Byrne's job responsibilities and terminate Patrick Byrne?" **This question is defective in multiple respects.**

First, it presupposes the very issue in dispute by characterizing Byrne's complaints as being about Ameris's "failure to pay earned wages." **Whether the LTIP payments constitute "earned wages" is a central disputed issue in this case**. The verdict form should not embed Plaintiff's characterization of the facts as a premise of the question. Second, it omits multiple essential elements of a wrongful termination claim under CACI 2430, including: whether Byrne was employed by Ameris; whether Ameris discharged Byrne; whether the complained conduct was a substantial motivating reason for his discharge; whether Byrne was harmed and whether the discharge was a substantial factor in causing harm, etc.

### B. Ameris's Verdict Form Correctly Tracks CACI 2430

Because Plaintiff's wrongful termination claim is derived from the same alleged protected activity underlying his statutory retaliation claim under Labor Code Section 1102.5, the verdict form first directs the jury to consider whether Byrne prevailed on his retaliation claim. If the jury found in favor of Ameris on the retaliation claim, the wrongful termination claim fails as a matter of law, and the jury skips to the next section. If the jury found in favor of Byrne on the retaliation claim, the verdict form then asks the jury to make four additional findings consistent with CACI 2430: (1) whether Byrne's complaints constituted protected activity under an applicable statute; (2) whether those complaints were a "substantial motivating reason" for Ameris's decision to discharge

him, a higher causation standard than the "contributing factor" standard; (3) whether Byrne was harmed; and (4) whether the discharge was a substantial factor in causing Byrne's harm.

Plaintiff's proposed verdict form collapses these elements into a single loaded question that does not track the instruction.

**Ameris's Position:** The Court should adopt Ameris's Questions 12–16, which track the elements of CACI 2430 and the Court's jury instruction, rather than Plaintiff's conclusory single-question approach.

## III.   RETALIATION IN VIOLATION OF LABOR CODE § 1102.5

### A. Plaintiff's Disclosure Questions Presuppose Disputed Facts

Plaintiff's Questions 3 and 4 embed the factual conclusion that Ameris "continuously failed to pay Patrick Byrne, ***and other Balboa employees***, the earned compensation they were owed under the Balboa Capital LTIP." (emphasis added.) Whether Ameris failed to pay earned compensation is the **central factual dispute** in this case. The disclosure question should ask what Byrne disclosed, not presuppose the truth of his allegations. Moreover, this is an individual action brought by Byrne on his own behalf. Byrne does not represent any other current or former employees of Ameris, and no claims have been asserted on behalf of any person other than Byrne. **These inappropriate references and factual allegations must be stricken.**

Plaintiff's Question 4 also adds an alternative "believed" theory - asking whether "Ameris Bank believe[d] that Patrick Byrne disclosed" the information. This alternative does not track the elements of Section 1102.5(b), at all, which requires an actual disclosure, not the *employer*'s belief that a disclosure occurred.

### B. Plaintiff's Verdict Form Omits the Same-Decision Defense

Plaintiff's proposed verdict form entirely omits the same-decision affirmative defense under Labor Code Section 1102.6, which provides that an employer is not liable if it proves by clear and convincing evidence that it would have taken the same action for legitimate, independent reasons. This is a statutory defense that Ameris is entitled to

present to the jury. Its omission from Plaintiff's proposed form is improper.

### C. Ameris's Verdict Form Correctly Tracks CACI 4603

Ameris's proposed verdict form addresses the retaliation claim in Part II. The questions track each element of CACI 4603 including: (1) whether Byrne made a disclosure; (2) the subject matter of the disclosure, to allow the jury to characterize the nature of Byrne's complaints; (3) whether Byrne reasonably believed the disclosure revealed a violation of law; (4) the temporal gap between the disclosure and discharge; (5) whether Ameris took favorable employment actions after the disclosure; (6) whether the disclosure was a contributing factor in the discharge; (7) whether Byrne was harmed; (8) whether Ameris's conduct was a substantial factor in causing harm; and (9) the same-decision defense under Section 1102.6. These questions ask the jury to make factual findings that are directly relevant to the causation analysis.

**Ameris's Position:** The Court should adopt Ameris's Questions 3-11, which use neutral language, track the elements of CACI 4603, include the statutory same-decision defense.

## IV.   NONPAYMENT OF WAGES (LABOR CODE §§ 201, 203)

### A. Plaintiff's Single Conclusory Question Is Inadequate

Plaintiff's Question 9 asks: "Does Ameris Bank owe Patrick Byrne wages under the terms of the employment?" This single conclusory question fails to guide the jury through the analytical steps. It does not ask the jury to determine: (1) whether the LTIP Cash Awards were discretionary bonuses or incentive compensation; (2) whether the EBT was correctly calculated under the terms of the LTIP; (3) whether the total LTIP pool amount was correct; (4) whether Byrne's individual share was fixed or ascertainable or subject to Ameris's discretion; or (5) whether Byrne was owed any specific amount. It also fails to limit the claim to the 2022 and 2023 LTIP Cash Awards, as the Court granted summary judgment in Ameris's favor on the 2024 LTIP Cash Award.

### B. Ameris's Verdict Form Provides the Necessary Analytical Framework

Ameris's proposed verdict form addresses the nonpayment of wages claim in Part V (Questions 22–40), with separate sections for the 2022 and 2023 LTIP Cash Awards.

For each award year, the verdict form guides the jury through the following sequential determinations: (1) whether the LTIP Cash Award was a discretionary bonus or incentive compensation; (2) whether Ameris correctly calculated the Balboa Division's EBT under the LTIP terms; (3) if not, the correct total LTIP pool amount; (4) whether Byrne's individual share of the pool was fixed or ascertainable, or subject to Ameris's discretion; (5) if ascertainable, the amount of Byrne's individual share; (6) for the 2022 award, the unpaid portion after accounting for the approximately $5,600,000 already paid; and (7) the method of calculation used.

This structure is consistent with Ameris's modified CACI 2700 instruction and Special Jury Instruction 1 as well as supporting case law, all of which provide that incentive compensation does not become "wages" unless and until the employee satisfies all conditions required to earn that compensation, and that the considerations include the terms of the LTIP, performance requirements, thresholds, and conditions precedent to payment. In other words, bonuses are not "wages" if they are discretionary and there is no fixed allocation formula.

For the 2023 LTIP, the verdict form includes an additional question (Question 33) asking whether, under the correct EBT calculation, the Balboa Division met the performance threshold such that a pool was created. This reflects the undisputed fact that Ameris determined the 2023 EBT target was not met, and that no pool was created or funded for 2023. Even if the jury disagrees with Ameris's EBT calculation, it must separately determine whether the corrected calculation would have resulted in a pool.

**Ameris's Position:** The Court should adopt Ameris's Questions 22–40, which provide the analytical framework required by the Court's jury instructions and applicable law, rather than Plaintiff's single conclusory question.

## V.   WAITING TIME PENALTIES (LABOR CODE § 203)

### A. Plaintiff's Verdict Form Omits the Good-Faith Dispute Defense

Plaintiff's Question 10 asks only whether Ameris "willfully fail[ed] to pay the full amount of wages earned." **It does not provide any mechanism for the jury to find that**

---

*Patrick Byrne v. Ameris Bank*

COMPETING VERDICT FORMS

Case No. 8:24-01989

Page 28

**Ameris maintained a good-faith dispute as to whether wages were due**. Under 8 C.C.R. Section 13520, a failure to pay is not "willful" if the employer has a good-faith dispute about whether wages are due. See, e.g., *Amaral v. Cintas Corp.* 163 Cal. App. 4th 1157, 1204 (2008) ("So long as no other evidence suggests the employer acted in bad faith, presentation of a good faith defense, based in law or fact, will negate a finding of willfulness."). **This is a complete defense to waiting time penalties, and its omission from Plaintiff's verdict form is improper**.

### B. Plaintiff's Verdict Form Asks the Jury to Calculate the Penalty Amount

Plaintiff's Question 19 asks the jury to determine the number of days and the daily wage rate for purposes of calculating the waiting time penalty. However, the Court's CACI 2704 instruction provides: "I will decide the amount of the penalty, if any, to be imposed." **The penalty calculation is for the Court, not the jury**. The jury's role is limited to making the threshold factual findings of willfulness and good faith.

### C. Ameris's Verdict Form Is Consistent with CACI 2704

Ameris's proposed verdict form addresses waiting time penalties separately for each award year. For each year, the jury is asked two questions: (1) whether Ameris willfully failed to pay (Questions 29 and 39); and (2) whether Ameris had a good-faith belief that the disputed amount was not owed (Questions 30 and 40). The penalty calculation is left to the Court, consistent with CACI 2704.

**Ameris's Position:** The Court should adopt Ameris's waiting time penalty questions, which include the good-faith dispute defense and leave the penalty calculation to the Court as contemplated by CACI 2704.

## VI.   DAMAGES

### A. Plaintiff's Damages Section Is Contaminated by the Unpleaded Breach of Contract Claim

Plaintiff's Question 18 instructs the jury to award economic damages if it finds liability under "Wrongful Termination in Violation of Public Policy, Retaliation in Violation of California Labor Code § 1102.5, Nonpayment of Wages, OR Breach of

Contract." The inclusion of breach of contract as a basis for damages is improper for the reasons stated in Section I above. It also creates a risk that the jury will award damages on the basis of an unpleaded claim.

### B. Plaintiff's Verdict Form Omits Mitigation and After-Acquired Evidence

Plaintiff's damages section contains no reference to Byrne's duty to mitigate damages, no mechanism for the jury to find that Byrne failed to make reasonable efforts to seek comparable employment, and no offset for amounts Byrne earned or could have earned. It also omits the after-acquired evidence defense, which limits damages if the employer discovers post-termination misconduct that would have independently justified termination.

### C. Ameris's Damages Section Is Complete and Properly Structured

Ameris's proposed verdict form addresses damages in Part IV (Questions 17–21). The damages section includes: (1) the after-acquired evidence defense and date of discovery; (2) the mitigation question and mitigation offset amount; and (3) the damages calculation with instructions to offset mitigation amounts and, if applicable, limit economic damages to the period before the after-acquired evidence was discovered. The damages section covers both the retaliation and wrongful termination claims in a single calculation, **with no risk of duplicative recovery**.

**Ameris's Position:** The Court should adopt Ameris's Questions 17–21, which properly account for mitigation, after-acquired evidence, and the prohibition on duplicative damages.

## VII.  PUNITIVE DAMAGES

Plaintiff's Questions 20-21 ask the jury to determine punitive damages liability and amount. **These questions contain multiple defects**. The routing instruction references "question 23" and "question 24," which do not exist. The malice, oppression, or fraud question does not specify the clear and convincing evidence standard required by Civil Code Section 3294(a). The question does not require a finding that an officer, director, or managing agent of Ameris engaged in the conduct, as required by Civil Code Section

3294(b) for corporate defendants. And the question does not contemplate bifurcation of the punitive damages phase, which is standard practice in this District.

Ameris's proposed verdict form does not include punitive damages questions because Ameris anticipates that the Court will bifurcate the punitive damages phase, consistent with standard practice in the Central District of California. If the Court determines that punitive damages should be addressed in Phase 1, Ameris reserves the right to propose appropriate questions that include the clear and convincing evidence standard and the managing agent requirement.

**Ameris's Position:** Punitive damages should be bifurcated and addressed in a separate Phase 2 verdict form. Plaintiff's punitive damages questions are defective and should not be submitted to the jury in their current form.

## VIII.  CONCLUSION

For the foregoing reasons, Ameris respectfully requests that the Court adopt Ameris's proposed special verdict form, or, in the alternative, use a verdict form that: (1) excludes the unpleaded breach of contract claim; (2) tracks the elements of the Court's jury instructions; (3) uses neutral, non-conclusory language; (4) includes the same-decision defense and good-faith dispute defense; (5) includes the after-acquired evidence defense and mitigation offset; (6) provides the analytical framework required for the LTIP cash award and/or wages claim; (7) leaves the waiting time penalty calculation to the Court; and (8) reserves the punitive damages determination for a bifurcated Phase 2 proceeding.

---

*Patrick Byrne v. Ameris Bank*                    Case No. 8:24-01989
COMPETING VERDICT FORMS                                        Page 31