Stacy L. Fode, Esq. (SBN 199883)
sfode@nfclegal.com
Nana J. Yee, Esq. (SBN 272783)
nyee@nfclegal.com
**NUKK-FREEMAN & CERRA, P.C.**
550 West C Street, Suite 910
San Diego, CA 92101
Telephone: 619.292.0515
Facsimile: 619.566.4741


Attorneys for Defendant
AMERIS BANK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>AMERIS BANK, a Georgia corporation,<br><br>Defendant. | Case No. 8:24-cv-01989-MWC (JDEx)<br><br>**DEFENDANT AMERIS BANK'S OPPOSITION TO PLAINTIFF'S POST-TRIAL REQUEST FOR JUDGMENT ON HIS CALIFORNIA UNFAIR COMPETITION LAW CAUSE OF ACTION**<br><br>Judge: Hon. Michelle Williams Court<br>Place: Courtroom 6A<br><br>Trial Date: June 1, 2026 |

## I.    INTRODUCTION

Plaintiff Patrick Byrne's ("Byrne") Motion assumes that establishing liability under California's Unfair Competition Law ("UCL") automatically entitles him to relief under the statute. It does not. Even assuming the Court finds that Ameris violated the UCL, Byrne must still establish that the relief he seeks is authorized by the statute, supported by substantial evidence, and warranted under principles of equity.

He fails to do so. As a preliminary matter, Byrne does not ask the Court to enter an injunction or award a specific amount of restitution. Instead, he asks the Court to create a "clean record" confirming that the UCL provides an "independent" basis supporting recovery of amounts already encompassed by the jury's verdict. California law is clear that the UCL authorizes only two remedies: injunctive relief and restitution. It does not authorize advisory opinions, declaratory judgments, or a "clean record."

Second, Byrne fails to identify any legally cognizable amount of restitution. The only specific dollar amounts referenced in his Motion are the jury's compensatory and punitive damages awards. Not only are damages unavailable under the UCL, but Byrne also never explains what specific portion of either award constitutes restitution. Further, the evidence does not support restitution anywhere near the amount of the jury's awards, and Byrne improperly relies on amounts allegedly withheld from the 2024 LTIP pool, which were not resolved by the jury or encompassed by this Court's previous rulings.

Finally, even assuming that Byrne identified a specific restitutionary amount, this Court is not required to grant any remedy under the UCL. To the contrary, equitable principles weigh against any additional relief. Byrne has already received a substantial legal remedy through the jury's verdict, identifies no ongoing conduct that would warrant injunctive relief, and expressly acknowledges that he does not seek double recovery. Under these circumstances, no further equitable relief is warranted.

For these reasons, Byrne's request for relief under the UCL should be denied.[1]

---

[1] To the extent Byrne is seeking relief under his UCL claim for other employees, such request is barred as a plaintiff may not seek damages on behalf of others who are not

*PATRICK BYRNE v. AMERIS BANK*                    Case No. 8:24-01989
DEFENDANT'S OPPOSITION TO PLAINTIFF'S POST-TRIAL
REQUEST FOR JUDGMENT ON UCL CLAIM                    Page 2

## II.    LEGAL STANDARD

"A UCL action is an **equitable action** by means of which a plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair or unlawful business practices. It is not an all-purpose substitute for a tort or contract action." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000) (emphasis added). As such, damages are not available under the UCL. *Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1266 (1992). Rather, in a private action under the UCL, the only monetary remedy available is restitution, which is measured by what was taken from the plaintiff. *Clark v. Superior Ct.*, 50 Cal. 4th 605, 614–15 (2010). The only other available remedy under the UCL is injunctive relief. Cal. Bus. & Prof. Code § 17203; *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999).

Even if this Court finds that Ameris is liable on Byrne's UCL claim, Byrne is not automatically entitled to relief. *See Cortez*, 23 Cal. 4th at 180. ("Section 17203 does not mandate restitutionary or injunctive relief when an unfair business practice has been shown."). Instead, a court has broad discretion under the UCL to make "such orders or judgments…as may be necessary to restore to any person in interest any money or property" which may have been acquired in violation of the UCL. *Id.*; *see also* Cal. Bus. & Prof. Code § 17203; *Russell v. Kohl's Dep't Stores, Inc.*, No. ED CV 15-1143 RGK (SPX), 2015 WL 12781206, at *2 (C.D. Cal. Oct. 6, 2015).

However, a court's discretion is not "entirely unbounded," because restitution under the UCL "must be of a measurable amount to restore to the plaintiff what has been acquired by violations of the statutes…." *Russell*, 2015 WL 12781206, at *2 (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 700 (2006)). Further, a restitution award under the UCL must be supported by substantial evidence, and a court may not award an amount unsupported by any evidence. *Colgan*, 135 Cal. App. 4th at 698–700. In other words, a court's broad discretion to grant equitable relief does not extend beyond a party's evidentiary showing. *Id.* at 700.

before the court. *See Arias v. Superior Ct.*, 46 Cal. 4th 969, 980 (2009).

Finally, the California Supreme Court has cautioned that "[a] court cannot properly exercise an equitable power without consideration of the equities on both sides of a dispute." *Cortez*, 23 Cal. 4th at 180. Consequently, in deciding whether to grant the remedy sought by a UCL plaintiff, a trial court must permit the defendant to offer "equitable considerations." *Id.* at 180–81.

Accordingly, even where a plaintiff establishes a UCL violation, the court must independently determine whether the requested remedy is authorized by the UCL, supported by substantial evidence, and warranted under equitable principles.

## III. ARGUMENT

### A. Byrne's Requested Remedy Is Beyond the Scope of the UCL

Byrne does not ask this Court to enter an injunction or award a specific amount of restitution. Instead, he requests that the Court "provide a clean record confirming that restitution under the UCL provides an independent, additional basis supporting Ameris's return of the monies unlawfully withheld from him because of Ameris's willful miscalculation of the LTIP bonus pool for performance periods 2022, 2023, and 2024." (Dkt. 238 at 9:12–16.)

In essence, Byrne asks the Court to confirm that the damages already awarded by the jury are independently recoverable under the UCL. Yet, as noted above, it is well-settled that the UCL provides for only two remedies, both equitable in nature: injunctive relief and restitution. Cal. Bus. & Prof. Code § 17203; *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 179. **It does not authorize declaratory relief, advisory opinions, or a "clean record"** (*see id.*)—and, in any event, such advisory opinions are beyond the scope of this Court's constitutional authority. *See Westlands Water Dist. Distribution Dist. v. Nat. Res. Def. Council, Inc.*, 276 F. Supp. 2d 1046, 1050 (E.D. Cal. 2003) (explaining that Article III limits federal jurisdiction to actual cases or controversies and that jurisdiction may not be invoked simply because two litigants have differing views of the law).

Rather, under the UCL, the Court's role is to determine whether Byrne is entitled to the specific relief authorized by § 17203 and, if so, the nature and scope of that relief. Cal.

---

Bus. & Prof. Code § 17203. Because Byrne does not seek a specific restitutionary award or injunctive relief, his request falls outside the limited remedies available under the UCL and should be denied.

### B. Byrne Fails to Identify a Legally Cognizable Restitutionary Amount

Even assuming Byrne seeks restitution under the UCL, he fails to specify the amount of restitution sought. Indeed, the only specific dollar amounts referenced in his Motion are the jury's approximately $16.6 million compensatory damages award and its approximately $63 million punitive damages award. Byrne also asks the Court to rule that "the UCL provides an independent, additional basis supporting Ameris's return of the monies unlawfully withheld from him because of Ameris's willful miscalculation of the LTIP bonus pool for performance periods 2022, 2023, and 2024." (Dkt. 238 at 9:12–16.) However, he does not identify what amount of those underpayments he seeks as restitution, how that amount differs from the jury's damages awards, or what evidence supports a particular restitutionary award. **Byrne's Motion therefore fails to satisfy the basic requirement that restitution be tied to specific, identifiable money or property allegedly acquired through the challenged conduct.** *See Clark*, 50 Cal. 4th at 614–15 (restitution under the UCL is measured by what was taken from the plaintiff). The Court therefore has no basis to determine either the amount or scope of any restitutionary relief.

Further, it is well-settled that damages are not available under the UCL. *Bank of the West*, 2 Cal. 4th at 1266; *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150–51 (2003) (claims for damages not permitted under the UCL); *E.W. French & Sons, Inc. v. Gen. Portland Inc.*, 885 F.2d 1392, 1402 (9th Cir. 1989) (same). Thus, for example, the jury's award of $1,225,000 in non-economic damages (past and future) is not recoverable as restitution, yet Byrne's generalized claim to $16.6 million in restitution necessarily includes that amount. Simply put, Byrne cannot simply _recharacterize_ the jury's damages awards as restitution.

Even if the Court were to attempt to identify a restitutionary amount supported by the evidence, the record does not support restitution approaching either of the damages

---

*PATRICK BYRNE v. AMERIS BANK*                                    Case No. 8:24-01989
DEFENDANT'S OPPOSITION TO PLAINTIFF'S POST-TRIAL
REQUEST FOR JUDGMENT ON UCL CLAIM                                 Page 5

awards—or even the $9 million awarded for past economic loss.

During trial, Byrne's expert, Deborah Dickson, testified that based on her calculations, Ameris owed Byrne the following amounts:

- $890,858 under the LTIP for 2022;
- $2,343,868 under the LTIP for 2023; and
- $4,844,985 under the LTIP for 2024.

(Declaration of Stacy L. Fode ["Fode Dec."] ¶ 3, Ex. A, Trial Tr. June 9, 2026, 117:22–118:9.) In total, Dickson calculated $8,079,711 in unpaid compensation under the LTIP for 2022, 2023, and 2024. (*Id.*) Thus, even under Byrne's own evidence, the maximum amount allegedly attributable to LTIP underpayments is approximately half of the jury's compensatory damages award and below the $9 million awarded for past economic loss. There is no evidence, let alone substantial evidence, supporting a restitutionary award approaching approximately $16.6 million or $63 million. *See Colgan*, 135 Cal. App. 4th at 700 (holding the amount of restitution awarded under the UCL "must be supported by substantial evidence"). Further, Dickson's calculations assumed Byrne is entitled to compensation under the LTIP for 2024, an issue that was neither resolved by the jury nor supported by this Court's prior rulings, as discussed below.

Finally, not only are future damages not recoverable as restitution under the UCL, but there is also no evidence, let alone substantial evidence, to support the jury's award of $6.3 million in future economic loss. An award of future economic loss is measured from the date of the jury's verdict—here, in June 2026. *See Mize-Kurzman v. Marin Cmty. Coll. Dist.*, 202 Cal. App. 4th 832, 873 n.17 (2012) ("[D]amages may include as 'front pay' an award of the salary and benefits a wrongfully…discharged plaintiff would have earned from employment after the trial."), *disapproved on other grounds by People ex rel. Garcia-Brower v. Kolla's, Inc.*, 14 Cal. 5th 719 (2023). Byrne's Employment Agreement, which was admitted into evidence at trial, provided for a three-year term ending in 2024. (Fode Dec. ¶ 5, Ex. C, Joint Trial Ex. 324.) Byrne presented no evidence that he remained contractually entitled to compensation beyond that term, or that he would be entitled to

---

*PATRICK BYRNE v. AMERIS BANK*                                    Case No. 8:24-01989
DEFENDANT'S OPPOSITION TO PLAINTIFF'S POST-TRIAL
REQUEST FOR JUDGMENT ON UCL CLAIM                                          Page 6

future economic damages based on a contract that had long expired by the time of the jury's verdict. Without any evidence showing Byrne's entitlement to *future* damages, the jury's award for future damages cannot serve as the basis for an award of restitution.

### C. The 2024 LTIP Pool Cannot Support Byrne's Requested Relief

Byrne's requested relief relies in part on amounts allegedly owed under the LTIP for 2024. Yet neither the jury's findings nor this Court's prior rulings establish Byrne's entitlement to recover those amounts as restitution under the UCL.

In his Motion, Byrne argues that this Court is bound by the jury's findings of fact. (Dkt. 238, pp. 6–8.) Critically, however, the jury **did not expressly find that Ameris owed Byrne any amounts under the LTIP for 2024.** Instead, the verdict form only referred to amounts owed under the LTIP for 2022 and 2023[2]:

> 14. Does Ameris Bank owe Patrick Byrne wages under the terms of the employment agreement or the LTIP for 2022 or 2023?
>
>    X  Yes              ___ No

 (Dkt. 227, p. 5.) Accordingly, the jury made no factual finding that Ameris owed Byrne compensation under the LTIP for 2024. Byrne therefore cannot invoke the jury's findings as binding upon this Court with respect to the 2024 LTIP.

In any event, this Court previously ruled that any amounts allegedly owed under the LTIP for 2024 could not support Byrne's claim for unpaid wages, because those amounts were not due and payable until *after* his termination. (Dkt. 122, p. 15.) As the Court explained, "an unpaid wages claim requires that the employer promptly pay wages earned and unpaid at the time of termination. See Labor Code §§ 201, 202." (*Id*.)

**This distinction is significant**. Dickson calculated that Ameris allegedly owed Byrne $4,844,985 under the LTIP for 2024. (Fode Dec. Ex. A, Trial Tr. June 9, 2026, 118:4–9.) Excluding that amount reduces Dickson's total calculation from $8,079,711 to

---

[2] The limitation to 2022 and 2023 was intentional. Before the verdict form was submitted to the jury, the parties expressly agreed that the verdict form would only ask whether Ameris owed Byrne wages under the employment agreement or LTIP for 2022 or 2023. (Fode Dec. ¶ 4, Ex. B, Trial Tr. June 10, 2026, 87:13–88:20.)

*PATRICK BYRNE v. AMERIS BANK*                          Case No. 8:24-01989
DEFENDANT'S OPPOSITION TO PLAINTIFF'S POST-TRIAL
REQUEST FOR JUDGMENT ON UCL CLAIM                Page 7

$3,234,726. Thus, even under Byrne's own evidence, the amount potentially recoverable as restitution is dramatically lower than both the jury's $16.6 million compensatory award and Dixon's total LTIP calculation.

### D. Even If UCL Liability Exists, No Further Equitable Relief Is Warranted

Ameris does not dispute that the Court must respect the jury's findings of fact. However, *the jury's findings of fact do not automatically entitle Byrne to equitable relief*. As noted above, this Court is not required to grant any relief to Plaintiff under § 17203 merely because a plaintiff establishes a UCL violation. Rather, the Court retains broad discretion in determining whether to award restitution or injunctive relief. Cal. Bus. & Prof. Code § 17203; *Cortez*, 23 Cal. 4th at 180; *Russell*, 2015 WL 12781206, at *2. The California Supreme Court has recognized that these equitable powers "are to be used to 'prevent' practices that constitute unfair competition and to 'restore to any person in interest' any money or property acquired through unfair practices." *Korea Supply Co.*, 29 Cal. 4th at 1147–48 (quoting Cal. Bus. & Prof. Code § 17203); *see also Cortez*, 23 Cal. 4th at 174 (noting that the "overarching legislative concern [of the UCL] [is] to provide a streamlined procedure for the prevention of ongoing or threatened acts of unfair competition").

Neither purpose would be served by Byrne's requested relief. The jury already awarded Byrne compensation for his alleged economic losses, including amounts he contends were improperly withheld under the LTIP. Byrne identifies no additional money or property that remains to be restored, nor does he seek any relief designed to prevent future misconduct. Indeed, Byrne does not identify any alleged "ongoing or threatened acts of unfair competition" that would be deterred by a restitutionary or injunctive award. See *Cortez*, 23 Cal. 4th at 174.

Moreover, because restitution and injunctive relief are equitable remedies, they are unavailable where—as here—the plaintiff possesses an adequate remedy at law. *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1147 (C.D. Cal. 2021) (citing *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, 2012 WL 13028094, at *2 (C.D. Cal.

*PATRICK BYRNE v. AMERIS BANK*           Case No. 8:24-01989
DEFENDANT'S OPPOSITION TO PLAINTIFF'S POST-TRIAL
REQUEST FOR JUDGMENT ON UCL CLAIM          Page 8

Apr. 4, 2012).) A plaintiff must establish the absence of an adequate remedy at law before obtaining equitable restitution for past harm under the UCL. *Id.* (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).)

Byrne cannot satisfy this burden. He does not contend that the jury's compensatory award is inadequate, nor does he identify any injury for which the law provides no remedy. To the contrary, he expressly acknowledges the jury's $16.6 million compensatory damages award and represents that he "does not seek double recovery." (Dkt. 238 at 9:11.) Thus, **Byrne effectively concedes the adequacy of the legal remedy awarded by the jury**.

Further, because Byrne identifies no separate, specific money or property obtained from him through unfair business practices, any restitution award would necessarily overlap with the relief already awarded by the jury. Given California's public policy disfavoring double recovery (*see Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1005 (9th Cir. 2008); *Kissell Co. v. Gressley,* 591 F.2d 47, 51 (9th Cir. 1979)), the balance of equities weighs against awarding Byrne additional relief.

Accordingly, even if UCL liability exists, Byrne is not automatically entitled to equitable restitution for past harm, and this Court should exercise its discretion and decline to award any additional relief under § 17203.

## IV.    CONCLUSION

In short, even if this Court finds that the jury's findings establish UCL liability, those findings do not establish Byrne's entitlement to restitution, let alone the particular relief he now seeks. Indeed, Byrne's Motion does not identify a specific equitable remedy available under the UCL, and he has not shown that the amount of the jury's compensatory damages award repeated in his Motion is authorized by the statute and supported by substantial evidence. The Court therefore has no basis to determine either the amount or scope of any restitutionary relief, and should decline to exercise its discretion to award such relief. For these reasons, and as set forth above, Byrne's requested relief under the UCL should be denied.

Dated:  June 24, 2026                    **NUKK-FREEMAN & CERRA**

By: _____

Stacy L. Fode, Esq.
Nana J. Yee, Esq.
Attorneys for Defendant
AMERIS BANK

---