ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
MATTHEW T. SESSIONS (BAR NO. 307098)
STACEY A. VILLAGOMEZ (BAR NO. 317081)
MADISON E. LARSEN (BAR NO. 364953)
2010 Main Street, 8th Floor
Irvine, California 92614-7214
Phone: (949) 553-1313
Fax: (949) 553-8354
E-Mail: msessions@allenmatkins.com
svillagomez@allenmatkins.com
mlarsen@allenmatkins.com

Attorneys for Plaintiff
PATRICK BYRNE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BYRNE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AMERIS BANK, a Georgia corporation,<br><br>Defendant. | Case No. 8:24-cv-01989-MWC-JDE<br><br>ASSIGNED FOR ALL PURPOSES TO: Judge Michelle Williams Court<br><br>**PLAINTIFF PATRICK BYRNE'S OPPOSITION TO DEFENDANT AMERIS BANK'S MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FRCP 59(e)**<br><br>Date: October 23, 2026<br>Time: 1:30 p.m.<br>Ctrm: 6A<br><br>Trial Date: June 1, 2026 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 5
II. LEGAL STANDARD .......... 5
III. THE RECORD SUPPORTS THE JURY'S $6.3 MILLION FUTURE-ECONOMIC-DAMAGES AWARD .......... 6
A. Byrne's Established Compensation and Evidence of Continued Employment Support Future Economic Loss .......... 6
B. The Evidence Supports the Amount and Duration of the Award .......... 9
C. Ameris's Remaining Arguments Do Not Warrant Eliminating the Award .......... 11
IV. THE COURT'S PREJUDGMENT-INTEREST AWARD SHOULD STAND .......... 14
A. The Court Properly Awarded Prejudgment Interest On The Full $9 Million Past-Economic-Damages Award .......... 15
B. Any Adjustment Based on the 2024 LTIP Payment Date Should Be Confined to That Component and Period .......... 18
C. The Later Addition of the Contract Claim Does Not Require a June 2026 Interest Start Date .......... 20
V. CONCLUSION .......... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960 (9th Cir. 2013) ... 16

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101 (9th Cir. 2011) ... 6

*Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696 (2017) ... 9, 10

*Bartel v. Chicago Title Insurance Co.*, 111 Cal. App. 5th 655 (2025) ... 20, 21

*Brooktree Corp. v. Advanced Micro Devices, Inc.*, 757 F. Supp. 1088 (S.D. Cal. 1990) ... 17

*Bullis v. Security Pacific National Bank*, 21 Cal. 3d 801 (1978) ... 17

*Candari v. Los Angeles Unified School Dist.*, 193 Cal. App. 4th 402 (2011) ... 12

*Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338 (9th Cir. 1987) ... 8, 13

*DuBarry Int'l, Inc. v. Sw. Forest Indus., Inc.*, 231 Cal. App. 3d 552 (1991) ... 15

*Galindo v. Stoody Co.*, 793 F.2d 1502 (9th Cir. 1986) ... 22

*Hewlett-Packard Co. v. Oracle Corp.*, 65 Cal. App. 5th 506 (2021) ... 18

*Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212 (9th Cir. 1989) ... 20

*Neman v. State Farm General Insurance Co.*, 2021 WL 6775904 (C.D. Cal. Dec. 13, 2021) ... 13, 14

*Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949 (9th Cir. 2008) ... 14

*Oldenkott v. Am. Elec., Inc.*, 14 Cal. App. 3d 198 (1971) ... 8

**Page(s)**

*Padgett v. Wright*,
516 F. App'x 609 (9th Cir. 2013) ........ 14

*Parker v. Twentieth Century-Fox Film Corp.*,
3 Cal. 3d 176 (1970) ........ 12

*Patel v. Penman*,
103 F.3d 868 (9th Cir. 1996) ........ 14

*Prieto v. Paul Revere Life Ins. Co.*,
354 F.3d 1005 (9th Cir. 2004) ........ 21

*Sea Hawk Seafoods, Inc. v. Exxon Corp.*,
484 F.3d 1098 (9th Cir. 2007) ........ 14

*Stein v. Southern California Edison Co.*,
7 Cal. App. 4th 565 (1992) ........ 17

*Villacorta v. Cemex Cement, Inc.*,
221 Cal. App. 4th 1425 (2013) ........ 11, 13

**Statutes**

Cal. Civ. Code § 3287(b) ........ 13, 17, 19

**Rules**

Fed. R. Civ. P. 15(b) ........ 19, 20

Fed. R. Civ. P. 15(b)(2) ........ 19

**Treatises**

Wright & Miller § 1496.1 Relationship Between Rule 15(c) and Other Federal Rules (3d ed.) ........ 19

## I. INTRODUCTION.

Both the facts and the law foreclose Ameris's Rule 59(e) effort to eliminate the jury's $6.3 million award of future economic damages and substantially reduce the Court's prejudgment-interest award. To obtain relief under Rule 59(e), Ameris must establish a manifest error of law or fact or manifest injustice. Ameris's motion does neither.

The jury's future-economic-damages award rests on evidence of Byrne's established compensation and Ameris's pre-termination expressed intention that he continue leading the Balboa Capital Division at Ameris Bank, which Ameris ignores. That Byrne's written employment agreement was set to expire six months after his termination does not conclusively establish when Byrne's earnings would have ended absent Ameris's retaliatory firing. Further, California law does not require a contract or other agreement to establish an employment relationship. The evidence, including Ameris's own statements, permitted an inference that Ameris would have retained Byrne in his CEO role under a new agreement. Nor does the absence of a separate future-loss calculation from Byrne's forensic expert, Deborah Dickson, or a specific request in closing argument resolve whether the evidence supported the award. The question is whether the trial record supplied a reasonably certain basis for future economic loss. It did.

As for prejudgment interest, Ameris's challenge fails because the Court (i) correctly determined that all of Byrne's past economic damages were eligible for prejudgment interest, and (ii) acted within its discretion in selecting the date that Byrne filed this lawsuit as the start date for interest to accrue. These issues provide no basis for the wholesale relief Ameris seeks, and the motion should be denied.

## II. LEGAL STANDARD.

Amending a judgment under Rule 59(e) is "an extraordinary remedy which should be used sparingly." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir.

2011) (citation omitted). Relief generally requires a manifest error of law or fact, newly discovered or previously unavailable evidence, manifest injustice, or an intervening change in controlling law. *Id.* The Court has considerable discretion in deciding whether amendment is warranted. *Id.* Ameris identifies no new evidence or intervening change in controlling law. Instead, it invokes manifest error and manifest injustice. Mot. at 2. Accordingly, Ameris must establish that the future-economic-damages award or the Court's prejudgment-interest determination reflects a manifest error of law or fact or results in manifest injustice.

## III. THE RECORD SUPPORTS THE JURY'S $6.3 MILLION FUTURE-ECONOMIC-DAMAGES AWARD.

### A. Byrne's Established Compensation and Evidence of Continued Employment Support Future Economic Loss.

Ameris contends that Byrne presented no evidence of future economic loss and emphasizes that only six months remained on his Employment Agreement when he was terminated. Mot. at 2-3. This is wrong. The evidence supported the jury's award, including the underlying inference that—but for Ameris's wrongful termination—Byrne would have remained employed by Ameris beyond his initial three-year term.

First, the jury was properly instructed on future economic damages, and the evidence presented provided ample support for the award it returned. The jury found Ameris liable for retaliation and wrongful termination, and it was instructed that it could award future economic damages, including lost wages. Dkt. 227 at p. 7 ("Future economic loss"); Dkt. 223, Instr. 30 ("You should consider… The reasonable value of wages that with reasonable probability will be lost in the future"). Applying those instructions to the evidence presented at trial, the jury was permitted to conclude that Byrne would have remained employed beyond the initial Employment Agreement period absent Ameris's unlawful termination, and to award future economic damages on that finding.

Byrne's evidence provided a concrete compensation baseline with which to award future damages. Byrne's annual compensation alone was approximately $950,000, consisting of a $350,000 base salary and quarterly bonuses of $150,000 (not including future annual LTIP bonuses that Byrne likely would have earned). TT4[1] 13:8-14:9; Fode Decl.[2] Ex. 324 § 3.2. This was not speculative—it was Byrne's compensation for the position Byrne actually held as CEO of Balboa Capital, rather than a projection based on a position he hoped to obtain. Byrne's salary and bonuses were specified in his Employment Agreement. *See* Fode Decl. Ex. 324 §§ 3.1, 3.2. This evidence of Byrne's past earnings, which Ameris ignores in its Motion, allowed the jury to determine an appropriate award to compensate Byrne for his lost future compensation as a result of his wrongful/retaliatory termination.

Second, Ameris's claim that Byrne's employment would only continue for six more months ignores the express terms of the parties' agreement and, more importantly, Ameris's own statements to the contrary. While Byrne's Employment Agreement was near the end of its initial three-year term, it expressly provided that it would automatically renew for additional one-year terms (absent advance written notice to the contrary). *See* Fode Decl. Ex. 324 § 1. And when Ameris did give such notice, Ameris expressly told Byrne that it wanted him to continue as CEO, and that the purpose of the nonrenewal was to give them "plenty of time to work through [their] long term plan together"—not to let Byrne's Employment Agreement expire. TT3 244:11-16 (LaHaise); Fode Decl. Ex. 95. Again, Ameris does not discuss any of this evidence in its Motion.

On its own, that evidence was sufficient for the jury to infer that Ameris would continue to employ Byrne for the "long term." TT3 244:11-16; Fode Decl. Ex. 95.

---

[1] Final Trial Transcript are cited as "TT" with the number of the trial day. Full copies of all cited trial transcripts are attached to the Declaration of Matthew Sessions as Exhibits A–I.

[2] "Fode Decl." refers to the Fode Declaration in support of Ameris's post-trial motions.

And there was more. In July 2023, Stokes, Ameris's CFO and Byrne's superior, told Byrne that she still wanted him to lead Balboa Capital. TT3 86:24-87:13. LaHaise, Ameris's CSO and Byrne's boss, likewise expressed during Byrne's 2023 performance review, just 5 months before Byrne was terminated, that he wanted Byrne to continue as CEO. TT3 243:11-13 ("Q: You told Mr. Byrne in his review for the year 2023 you wanted him to continue as CEO, right? A: Correct.") Rasmussen, Balboa's CRO, testified that after the acquisition, Byrne's work ethic became even stronger because he wanted to ensure the acquisition was successful, and Rasmussen observed that sustained commitment throughout his tenure in 2022 to 2024. TT3 33:11-34:21. Any of this evidence—and certainly all of it, taken together—permitted the jury to find that Ameris intended to continue employing Byrne to lead Balboa Capital for many years to come.

Ameris thus fails to establish that Byrne would have stopped earning compensation from Ameris at the end of December 2024 absent Ameris's retaliatory termination of him. The jury could consider the evidence of contemplated continued employment under his automatically renewable Employment Contract—or Ameris's intended "long term plan" for Byrne's employment (TT3 244:11–16; Fode Decl. Ex. 95)—alongside Byrne's established compensation to determine whether his unlawful discharge caused future economic loss. *See Oldenkott v. Am. Elec., Inc.*, 14 Cal. App. 3d 198, 203–05 (1971) (confirming evidence of renewable employment contract supported awarded damages); *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1348 (9th Cir. 1987) (noting "expert testimony is not required to prove what the plaintiff would receive in future earnings and raises" where plaintiff "testified about his projected earnings based primarily on his own periodic pay increases[.]") Ameris therefore has not shown that the award rests on a manifest error of law or fact or results in manifest injustice.

**B. The Evidence Supports the Amount and Duration of the Award.**

Ameris next argues the future-economic-damages award is speculative because neither Byrne nor Dickson identified losses extending beyond trial. Mot. at 2–4. Ameris's argument fails.

Ameris has not disputed that the jury was correctly instructed it could award wages that "with reasonable probability will be lost in the future," separately from losses incurred through trial. Dkt. 223, Instr. 30; TT6 110:9–17. That standard required a reasonably certain evidentiary basis for both the amount of compensation Byrne would have earned and the period over which he would have earned it. *Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696, 738 (2017) (requiring the plaintiff to prove future economic losses with reasonable certainty ensures that jury's finding is not wholly speculative). There was such evidence.

Byrne's established annual compensation of approximately $950,000 supplied a concrete starting point for valuing his future loss. TT4 13:8-14:9; Fode Decl. Ex. 324 §§ 3.1, 3.2. And, as also discussed above, the evidence showed that Ameris claimed it intended to retain Byrne as CEO of Balboa Capital, and that those earnings would extend beyond the existing contract term and well into the future. *See supra* § III.A. Together, that evidence supported a finding that, absent the retaliatory discharge, Byrne would have continued earning compensation after trial.

That's not all. Byrne also introduced evidence indicating that he would have received further compensation beyond his existing salary and quarterly bonuses. Fode Decl. Ex. 95; Sessions Decl. Exs. 100, 423, 461. Phil Silva, the second in command at Balboa, who assumed Byrne's responsibilities as CEO following his departure (and who accepted defeat regarding LTIP compensation (*see* Sessions Decl. Ex. 100 (Silva writing to Byrne "After reading all of the emails, it is my opinion that the 2023 LTIP is dead and has been for some time"))) testified that he received a $1.25 million LTIP bonus for the 2024 performance period. TT4 129:9–130:24.

Although Silva's award did not definitively prove Byrne's entitlement to an identical payment in subsequent years, it provided context for the incentive compensation associated with the role Byrne lost. Any projection of Byrne's own future incentive compensation must rest on the evidence concerning his anticipated participation and the applicable award terms. *See supra* § III.A; TT4 13:8–14:9; Fode Decl. Ex. 324 §§ 3.1, 3.2; TT5 13:7–24.

*Atkins*, on which Ameris relies, does not require a different result. There, the court vacated future-economic-damages awards projecting earnings through retirement for plaintiffs who had completed only hours or weeks of police-academy training, finding the projections insufficiently supported by evidence that the plaintiffs would complete the necessary training and remain employed through retirement. 8 Cal. App. 5th at 738–40.

Unlike the *Atkins* plaintiffs, Byrne's claim did not rest on speculation about whether he would first obtain a qualification or attain a position he had never held. The duration of his projected loss was instead tied to a position he already occupied and a track record already established. *See supra* § III.A. Silva's assumption of Byrne's role and compensation after his separation further supports the conclusion that, absent the wrongful termination, Byrne would have remained employed at substantial compensation into the future.

Applied to the supported period of future loss, the compensation evidence provides the following basis for the jury's award: Byrne's renewable Employment Agreement and testimony laying out his annual salary and performance based quarterly bonuses (Fode Decl. Ex. 324; TT2 20:13–21:7), testimony and exhibits demonstrating Byrne's payout of over 5.5 million dollars in LTIP compensation for 2022 (TT2 39:3–5, *see* Sessions Decl. Ex. 372), discussions with LaHaise regarding the 2025 LTIP plan (TT3 244:11–16; Fode Decl. Ex. 95), the new CEO's similar compensation structure (TT4 126:1–127:25 ($350,000 annual salary with a 3%

annual increase and performance-based quarterly bonuses)), and the jury instruction allowing the consideration of "[t]he reasonable value of wages that with reasonable probability will be lost in the future" (Dkt. 223, Instr. 30). This calculation supports the amount awarded without assuming that the jury adopted any particular undisclosed formula. Ameris's assertion that the award lacks any evidentiary basis fails to account for that evidence.

### C. Ameris's Remaining Arguments Do Not Warrant Eliminating the Award.

*First*, Ameris attempts to raise a mitigation argument. Ameris claims Byrne cannot recover future damages because he allegedly made no effort to obtain another job, his contractual restrictions expired before trial, and spent some time managing investments. Mot. at 2–3. But that is just Ameris's version of events. The jury could weigh those factors in deciding whether to award future economic damages; they do not compel concluding that the retaliatory discharge caused no future economic loss.

Ameris bore the burden of proving its mitigation defense. The Court instructed the jury that Ameris had to prove by a preponderance of the evidence that Byrne failed to make reasonable efforts to mitigate his damages (through comparable employment) and the amount he could have reduced his damages through such efforts. Dkt. 223, Instr. 31; *see also Villacorta v. Cemex Cement, Inc.*, 221 Cal. App. 4th 1425, 1432 (2013) (employer must establish that employment relied upon to mitigate damages was comparable or substantially similar to the employment lost).

As to efforts to mitigate, Byrne explained why he did not pursue other work, including his understanding that the non-solicitation restriction was longer than a year (TT2 175:21–24), his concerns that Ameris would accuse him of violating restrictive covenants if he sought similar employment (TT2 177:20–178:2), and that he spent a significant amount of his time on investment activities (TT2 178:3–7). That alone was enough to allow the jury to determine that Ameris had failed to meet

its burden to prove a failure to mitigate.

Moreover, that is only half the equation. Even if Ameris were correct that Byrne failed to take reasonable efforts to mitigate his damages, that is not enough to overturn the jury's verdict. As the California Supreme Court has held, "before projected earnings from other employment opportunities not sought or accepted by the discharged employee can be applied in mitigation, the employer must show that the other employment was comparable, or substantially similar, to that of which the employee has been deprived[.]" *Parker v. Twentieth Century-Fox Film Corp.*, 3 Cal. 3d 176, 182 (1970) (affirming summary judgment for plaintiff actress where defendant failed to establish that an alternative role in a different movie that it offered to plaintiff was comparable to the original, bargained-for role); *see also Candari v. Los Angeles Unified School Dist.*, 193 Cal. App. 4th 402, 411 (2011) ("The controlling law is clear. The employer must demonstrate the availability of comparable or substantially similar positions *before* projected earnings of alternative employment opportunities *not sought* by the discharged employee are properly considered").

Thus, *before* the jury could consider whether to reduce Byrne's damages, Ameris was required to show that Byrne's damages *could have been* mitigated by "comparable, or substantially similar," opportunities. *Parker*, 3 Cal. 3d at 182. Ameris, however, did not introduce evidence identifying any specific comparable positions Byrne could have applied for, any employers purportedly hiring for such roles, or any concrete job opportunities available to him during the relevant period. *See TTs generally*. Nor did Ameris present evidence of compensation, duties, or other particulars that would have allowed the jury to find the existence of "comparable, or substantially similar" work and quantifying any mitigation offset. *Id.* In the absence of that evidentiary showing, there is no basis to reduce the jury's award on a mitigation theory. To the extent that Ameris offered any mitigation evidence at all,

the jury was entitled to reject it. Ameris's failure-to-mitigate theory thus does not support overturning the jury's verdict.

*Second*, Ameris also relies on the fact that Dickson calculated unpaid LTIP compensation for 2022 through 2024 without separately calculating future wage loss. Mot. at 3. But the jury also heard, and could rely on, evidence of Byrne's established compensation and Ameris's contemplated continuation of his employment. TT4 13:8–14:9 (LaHaise); TT3 86:24–87:13 (Stokes), 243:11–13 , 244:11–16 (LaHaise); Fode Decl. Ex. 95; Sessions Decl. Exs. 100, 423; *Cassino*, 817 F.2d at 1348 (noting "[E]xpert testimony is not required to prove what the plaintiff would receive in future earnings and raises" where plaintiff "testified about his projected earnings based primarily on his own periodic pay increases[.]") . Ameris fails to address that evidence.

*Third*, Ameris claims that Byrne's decision not to request a specific future-economic-damages figure in closing shows that the award cannot stand. Mot. at 3–4. Not so. The jury was specifically instructed to determine future economic loss, and that attorney argument is not in evidence. Dkt. 223, Instr. 7; Dkt. 227, Question 25(b); *see also* Ninth Cir. Model Civil Jury Instr. 1.20 ("Arguments and statements by lawyers are not evidence."). Ameris has not cited any authority requiring counsel to have argued every issue in the jury instructions and verdict form in order for the jury to return a verdict. All that matters is whether evidence supports the verdict—and here, it does. *Cf. Villacorta,* 221 Cal. App. 4th at 1428, 1432–34 (affirming $198,000 lost-wage award even though the plaintiff's attorney requested only $44,000 in closing, because the evidence supported the greater recovery).

Ameris's authorities on this argument are inapposite. Ameris relies on *Neman v. State Farm General Insurance Co.*, 2021 WL 6775904, at *2 (C.D. Cal. Dec. 13, 2021), which it describes as striking a punitive-damages award because the record contained no evidence of the defendant's financial condition. Mot. at 4. It likewise

invokes *Patel v. Penman*, 103 F.3d 868, 878–79 (9th Cir. 1996), and *Padgett v. Wright*, 516 F. App'x 609, 611–12 (9th Cir. 2013), both of which just confirm that an award unsupported by any evidence cannot stand.[3] Mot. at 4 & n.4. Byrne agrees. The issue is whether the evidence supports *this* award, and the answer is yes.

## IV. THE COURT'S PREJUDGMENT-INTEREST AWARD SHOULD STAND.

California law governs prejudgment interest in this diversity action. *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 961 (9th Cir. 2008) (recognizing prejudgment interest as a substantive component of a plaintiff's claim) (citing *Sea Hawk Seafoods, Inc. v. Exxon Corp.*, 484 F.3d 1098, 1101 (9th Cir. 2007)). The Court awarded interest under California Civil Code sections 3287–3289. Dkt. 253 ¶ 13. In particular, section 3287, subdivision (b) gives the Court discretion to award prejudgment interest on unliquidated contract damages from a date no earlier than the filing of the action. Cal. Civ. Code § 3287(b).

Ameris challenges both the amount eligible for interest and the applicable accrual dates. Both challenges fail. All of the past economic damages were properly considered as contract damages for the specific purpose of determining prejudgment interest, and the Court acted within its discretion in establishing the filing date of this lawsuit as the accrual date for interest.

---

[3] *Neman* is distinguishable because it addresses punitive damages, not future economic damages, and the Defendant's financial condition was not presented. 2021 WL 6775904, at *2. Here, by contrast, the trial included a full punitive-damages phase and sufficient evidence of Ameris's financial condition. TT8 23:5–28:25; Sessions Decl. Exs. 191–193. In *Patel*, the court found "no evidence whatsoever" was presented to the jury showing defendant provided plaintiff the required post-closing notice and opportunity to be heard, and only evidence that supports 'exactly the opposite' was introduced, and thus the court reversed the jury's verdict for defendant on that ground. 103 F.3d 868, 878–879. Here, multiple witnesses testified regarding Byrne's compensation and expectation of continued employment, as exhibits showed that Byrne had an automatically renewable employment contract and plans to work into 2025. *See supra* § III.A. In *Padgett*, the court affirmed a 50(b) judgment on two claims, one where the jury failed to reach a verdict, due to lack of any evidence to support them. 516 F. App'x 609, 611–12. Here, once again, Byrne presented more than sufficient evidence to support the verdict. *See supra* § III.A

### A. The Court Properly Awarded Prejudgment Interest On The Full $9 Million Past-Economic-Damages Award.

Ameris contends prejudgment interest can run on only $8,079,711 of the jury's $9 million past-economic-damages award because, in Ameris's view, only that portion represents contract damages. This position is based on Dickson's calculation of amounts for the 2022–2024 LTIP. Fode Decl. Ex. 175; TT5 117:16–118:9. The verdict, however, awarded a single amount for past economic loss without allocating that recovery by claim or year. Dkt. 227, Question 25(a). It therefore does not expressly establish that the jury adopted Dickson's figures as the entire contractual component and assigned the purported remaining $920,289 exclusively to tort damages. Whether that allocation is warranted depends on the evidence. *See, e.g.*, *DuBarry Int'l, Inc. v. Sw. Forest Indus., Inc.*, 231 Cal. App. 3d 552, 562–63 (1991) (holding that once the fact of damages is established, the jury may approximate the amount based on the evidence and need not calculate the damages with absolute certainty). The record also supports the conclusion that the entire $9 million award represents both tort and contract damages. *See, e.g.*, TT2 46:22–51:17; 65:5–24; 66:2–67:22; 100:4–22 (Byrne); TT4 63:2–14, 90:16–91:8 (LaHaise); TT5 117:19–118:13 (Dickson); Sessions Decl. Exs. 34, 394, 395, 398, 399, 454, 465; Fode Decl. Exs. 324, 482, 545, 546.

The evidence supporting Byrne's contractual loss extended beyond Dickson's summary calculation. Byrne testified concerning the LTIP amounts he believed Ameris owed, and the jury received contemporaneous communications, calculations, and LTIP workbooks addressing those obligations. TT2 46:22–51:17, 66:2–67:22, 68:6–69:6 (Byrne); Fode. Decl. Exs. 371, 482; *see, e.g.*, Sessions Decl. Exs. 34, 394, 395, 398, 399, 454, 465. More specifically, Dickson testified to the total pool amounts, not just Byrne's contractual entitlement to 62.54%. TT5 117:22–118:9. Further, LaHaise testified that Byrne decided how the $9 million dollar pool was

distributed for the 2022 LTIP, suggesting he could have awarded himself more than the promised 62.54%. TT4 30:11–13. In 2022, one employee's LTIP bonus was revoked, and Ameris's head of compensation suggested allocation of extra LTIP funds to Byrne, which Byrne accepted, in addition to his 62.54%. TT2 128:23–131:9 (Byrne); Sessions Decl. Ex. 414. The jury thus could have found that Byrne would have received than his 62.54% baseline from the total LTIP pool. All of this evidence easily supports the additional $920,289 necessary to sustain interest on the full $9 million award.

The Court's subsequent findings also recognized that the past-economic-loss award included unpaid wages and damages for Ameris's breach of contract, including the 2024 LTIP. Dkt. 246 ¶ 38. Those findings establish a contractual component of the recovery. The specific additional evidence identified above—including Ameris's own internal process treating LTIP distributions as subject to Byrne's allocation recommendations, the emails and expert testimony demonstrating full pool amounts, and the 2022 re-allocation of revoked LTIP funds in addition to Byrne's baseline 62.54%—supplies the further basis for treating the full amount as attributable to the contract breach.

Ameris's own authorities permit consideration of the full record; they do not make an expert's calculation conclusive. In *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 975–76 (9th Cir. 2013), the court upheld an allocation between past and future losses for prejudgment-interest purposes under New York law (finding a reasonable basis for allocation in the expert's year-by-year calculations and the verdict's close correspondence to those calculations). *Alaska Rent-A-Car* supports using expert testimony to *interpret* a general award when the record reasonably supports that inference; however, it does not establish that other evidence must be disregarded when determining the amount attributable to a contract breach. *Id.* (explaining that the court may make a "reasonable allocation based upon evidence

in the record that provided good support for the calculation it made.”).

Ameris likewise cites *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 757 F. Supp. 1088, 1100 (S.D. Cal. 1990), aff’d, 977 F.2d 1555 (Fed. Cir. 1992), for the proposition that the Court may allocate a damages award despite the absence of a jury allocation. Mot. at 6. Byrne does not dispute the Court’s authority to make that supported allocation, but it disagrees that Ameris’s proposed allocation accounts for all evidence bearing on the contractual loss. *See Brooktree Corp.*, 757 F. Supp. 1088, 1100 (S.D. Cal. 1990) (analyzing prejudgment interest under a patent statute and conditioning any interest award on the Plaintiff’s submission of data clearly segregating the verdict between patent and non-patent claims).

Ameris’s reliance on the distinction between contract and tort interest does not change the analysis. Ameris invokes *Bullis v. Security Pacific National Bank*, 21 Cal. 3d 801, 814 n.16 (1978), and *Stein v. Southern California Edison Co.*, 7 Cal. App. 4th 565, 572 (1992), which concerned the jury’s role in awarding discretionary interest under section 3288. Mot. at 5–6. Byrne seeks to sustain the Court’s award under section 3287(b) based on the contractual obligations and losses established at trial. The existence of multiple liability findings does not itself identify which dollars were recoverable only in tort.

Finally, counsel’s endorsement of Dickson’s figures in closing does not require treating any damages beyond Dickson’s figures as tort damages for purposes of awarding prejudgment interest. Mot. at 6. The jury was instructed that counsel’s arguments were not evidence. Dkt. 223, Instr. 7; see also Ninth Cir. Model Civil Jury Instr. 1.20 (“Arguments and statements by lawyers are not evidence.”). Counsel’s argument must be considered in context, but it does not substitute for examination of the admitted evidence supporting the award. Because that evidence supports the full $9 million as contractual loss, Ameris has not established that the Court must reduce the principal amount eligible for interest to Dickson’s calculation.

**B. Any Adjustment Based on the 2024 LTIP Payment Date Should Be Confined to That Component and Period.**

Ameris separately argues that interest cannot run on the 2024 LTIP from September 16, 2024 because payment was not due until March 15, 2025. Mot. at 7. It relies on the Award Agreement's payment provision and the Court's summary-judgment determination that the 2024 LTIP was not due until the following year. Fode Decl. Ex. 546 ¶ 4; Dkt. 121/122 at p. 15. That timing issue is distinct from whether the full $9 million award represents contractual loss and whether the later addition of the contract claim requires a June 2026 interest start date.

California Civil Code section 3287(b) authorizes discretionary interest on unliquidated contract damages from a date no earlier than the filing of the action. Cal. Civ. Code § 3287(b). That statutory limit does not automatically make the filing date the appropriate accrual date for every loss. Prejudgment interest compensates an injured party for the loss of use of money during the prejudgment period. *Hewlett-Packard Co. v. Oracle Corp.*, 65 Cal. App. 5th 506, 574 (2021) (explaining the compensatory purpose of prejudgment interest and the court's discretion under section 3287(b)). The payment-date question therefore must be evaluated in light of the particular obligation and the period for which Byrne was deprived of the payment.

Here, Ameris assumes that the Jury's $9 million award included damages for a 2024 LTIP breach, rather than only for 2022 and 2023. Notably, with the general verdict form for the damages portion, it cannot be determined with certainty that any amount of contract damages were allocated for the 2024 calendar year by the jury. But if the Court concludes that the $9 million award includes the 2024 LTIP—admittedly a reasonable conclusion—and that interest on the 2024 LTIP component should begin on March 15, 2025, the resulting adjustment should be confined to interest attributable to that component before that date. Thus, if the Court chooses to allocate contract damages towards the 2024 breach, then the Court should allocate

only $5,396,400[4] of the economic-damages award, representing the same percentage that Dickson attributed to Byrne's 2024 LTIP amount relative to the total suggested three-year award.[5] *See Alaska Rent-A-Car*, 738 F.3d at 975–76 (finding a reasonable basis for allocation in the expert's year-by-year calculations and the verdict's close correspondence to those calculations). The 2024 payment provision does not govern when the 2022 and 2023 LTIP amounts became payable. Nor does it establish that interest on those earlier losses should be postponed until the contract claim was formally added in June 2026. That separate issue is addressed below.

As to Ameris's alternative calculation, it should be rejected because it wrongly incorporates an independent reduction in the principal eligible for interest—from $9 million to $8,079,711—and assigns $4,844,985 to the 2024 LTIP based on Dickson's calculation. Mot. at 8. If the Court agrees that the 2024 LTIP payment was not due until March 15, 2025, that, by itself, would not resolve the principal-amount issue discussed above in Section IV.A. The Court should separately analyze those issues independently by determining the contractual damages principal eligible for interest, the amount, if any, attributable to the 2024 obligation, and the appropriate accrual date for each portion. Accordingly, any relief based on the 2024 payment date should therefore be limited to the corresponding interest adjustment, without reducing the principal award or altering the interest date on the remainder of the award, which is supported by independent grounds.

---

[4] Dickson testified that Byrne's 2024 calendar-year LTIP component was $4,844,985 out of the total suggested award of $8,079,711 for all three years. Dickson's 2024 portion allocated to Byrne equated to 59.96% of the total suggested award. Fode Decl. Ex. 175. The Jury awarded $9 million dollars in economic damages; applying the same 59.96% proportion yields $5,396,400.

[5] Byrne does not concede that any portion of the jury's economic-damages award is attributable exclusively to contract or exclusively to tort; instead, the award is independently supportable under either theory in the alternative.

### C. The Later Addition of the Contract Claim Does Not Require a June 2026 Interest Start Date.

Ameris argues that prejudgment interest on all contractual damages can begin only on June 10, 2026, when the Court permitted Byrne to add his breach-of-contract claim. Mot. at 7–8. Section 3287(b), however, identifies the filing of the action as the earliest permissible accrual date; it does not expressly require interest to begin only when a separately denominated contract claim is added. Cal. Civ. Code § 3287(b). Indeed upon amendment, the contract claim was to be treated as if it always existed in the original pleading. Fed. R. Civ. P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings"); *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 214–15 (9th Cir. 1989) (courts "treat issues tried by the express or implied consent of the parties as raised in the pleading"); *Cf.* Wright & Miller § 1496.1 Relationship Between Rule 15(c) and Other Federal Rules (3d ed.) ("Amendments that fall within Rule 15(b)(2), which deals with issues tried by implied or express consent, are "treated in all respects as if they had been raised by the pleadings" and therefore are protected against a statute-of-limitations defense without aid of relation back under Rule 15(c)."). The Court's selection of an appropriate date therefore requires consideration of the obligations and losses already at issue, rather than reliance solely on the date of the amendment.

Ameris's reliance on *Bartel v. Chicago Title Insurance Co.*, 111 Cal. App. 5th 655, 709 (2025), does not establish a mandatory June 2026 start date. In that case, there was no amendment under Rule 15(b). Rather, *Bartel* affirmed a discretionary award running from the second amended complaint, in which the plaintiff first alleged entitlement to the particular diminution-in-value damages at issue. *Id.* It did not hold that an amended pleading necessarily establishes the earliest permissible

interest date in every case. Rather, *Bartel* emphasized that the court's discretion includes selecting the date from which interest runs, subject to the statutory prohibition against a date preceding the action's filing. *Id.*

Here, Byrne's original complaint already placed Ameris's alleged LTIP underpayments at issue. It alleged that the LTIP provided compensation tied to Balboa's performance, that Ameris manipulated the calculations to avoid paying that compensation, and that eligible employees were deprived of earned income. Dkt. 1 ¶¶ 8–11, 13, 25, 34. The later contract claim sought recovery for those same unpaid contractual obligations. Dkt. 207 ¶¶ 8–11, 47–54. Unlike the amended pleading discussed in *Bartel*, the amendment did not first introduce the earlier LTIP losses into the litigation.

The circumstances surrounding the amendment further support that distinction—because Rule 15(b) allows "pleadings to be amended to reflect the actual issues upon which a case was tried." *Prieto v. Paul Revere Life Ins. Co*., 354 F.3d 1005, 1012 (9th Cir. 2004). In permitting the contract claim, the Court found that "Ameris will not suffer substantial prejudice with this amendment because the facts relevant to the amendment were already known by or within the possession of Ameris" (TT6 30:10–13); that the LTIP "was admitted early in the case and" there was "extensive examination on the LTIP and employment agreement" (TT6 30:16–19), "[t]he central issue in this court is the interpretation of both the employment agreement and the LTIP and the related documents", and that Plaintiff "established implied consent on behalf of Ameris." TT6 31:1–4. The Court also noted that the "answer does state breach of contract, affirmative defenses" and that breach of contract "has been an issue from the very beginning of the case" and is at "the heart of the case", including questioning presented in witnesses' testimony and depositions. TT6 31:4–11; *see also* TT6 29:8–34:1. Further, the Court noted that the contract claim "relate[s] back to the time of the filing of the complaint." TT6 81:19–

22. Those circumstances demonstrate how the issues of the case were actually tried and support retaining the original filing date for contractual losses that had already occurred and were already the subject of Byrne's claims. *See Galindo v. Stoody Co.*, 793 F.2d 1502, 1513 (9th Cir. 1986) (affirming Rule 15(b) amendment where the record was "replete" with evidence on the unpleaded issue and the objecting party's counsel treated the issues as before the court, including when arguing their motion to dismiss and in closing arguments.) The amendment's timing does not demonstrate that the Court's existing interest award rests on manifest error.

Byrne maintains that the Court correctly calculated prejudgment interest. Even if the Court were to conclude that any adjustment is warranted, any modification should be limited to a minor reduction reflecting only that the 2024 LTIP payment did not become due until shortly after the September 2024 complaint was filed. Dkt. 1; Fode Decl. Exs. 545, 546. Ameris's later-pleading argument supplies no categorical reason to postpone interest on the 2022 and 2023 LTIP losses until June 2026. Those payment obligations predated the September 2024 complaint. Ex. 301, LTIP Plan ¶ 8.3; LTIP Agreement ¶ 4 (payment due no later than March 15 of the following year); TT2 39:3–9; 65:1–4 (Byrne). The separate question concerning the 2024 LTIP payment date is addressed in Section IV.B. Neither that question nor the later addition of a contract count requires treating all contractual losses as though they first arose in June 2026. Ameris therefore has not established that the amendment date requires the across-the-board reduction it seeks.

## V. CONCLUSION.

Ameris has not demonstrated any basis to alter the award of future economic damages, or to alter the prejudgment interest award on the grounds that less than $9 million of the past economic loss award represents contract damages or interest that could not begin to run until the Court granted leave to add the breach of contract claim. If the Court determines that the 2024 LTIP payment date warrants an

adjustment, any relief should be confined to interest attributable to that component before March 15, 2025. That limited adjustment would provide no basis to eliminate the jury's future-economic-damages award, reduce the contractual damages eligible for interest, or postpone interest on the earlier LTIP losses until June 10, 2026.

Dated: September 25, 2026

Respectfully submitted,

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
MATTHEW T. SESSIONS
STACEY A. VILLAGOMEZ
MADISON E. LARSEN

By: */s/ Matthew T. Sessions*
MATTHEW T. SESSIONS
Attorneys for Plaintiff
PATRICK BYRNE

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies that this brief complies with the 25-page limit set by court order dated November 21, 2024.

Dated: September 25, 2026

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
MATTHEW T. SESSIONS

By: */s/ Matthew T. Sessions*
MATTHEW T. SESSIONS
Attorneys for Plaintiff
PATRICK BYRNE