# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION - SANTA ANA)

| | |
|---|---|
| PATRICK BYRNE, | ) CASE NO: 8:24-cv-01989-MWC-JDEx |
| | ) |
| Plaintiff, | ) CIVIL |
| | ) |
| vs. | ) Los Angeles, California |
| | ) |
| AMERIS BANK, | ) Monday, June 1, 2026 |
| | ) ( 9:20 a.m. to 10:44 a.m.) |
| Defendant. | ) (11:01 a.m. to 12:12 p.m.) |

FINAL PRETRIAL CONFERENCE

BEFORE THE HONORABLE MICHELLE WILLIAMS COURT,
UNITED STATES DISTRICT JUDGE, PRESIDING

APPEARANCES: SEE PAGE 2

Court Reporter: Recorded; CourtSmart

Courtroom Deputy: T. Jackson

Transcribed by: Exceptional Reporting Services, Inc.
20079 Stone Oak Pkwy.
Suite 1105, PMB 237
San Antonio, TX 78258
361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

APPEARANCES:

For Plaintiff: MATTHEW THOMAS SESSIONS, ESQ.
MADISON LARSEN, ESQ.
ANDREW A. WOOD, ESQ.
SEAN K. BLOKS, ESQ.
Allen Matkins Leck Gamble Mallory & Natsis
2010 Main Street
8th Floor
Irvine, CA 92614

STACEY ANN VILLAGOMEZ, ESQ.
Allen Matkins Leck Gamble Mallory & Natsis
865 S. Figueroa Street
Suite 2800
Los Angeles, CA 90017

JORDAN VICTOR, ESQ.
Ropers Majeski
801 S. Figueroa St.
Suite 2100
Los Angeles, CA 90017

MICHAEL GATES, ESQ.

For Defendant: STACY L. FODE, ESQ.
NANA JIN YEE, ESQ.
Nukk-Freeman & Cerra
550 West C Street
Suite 910
San Diego, CA 92101

ZACHARY BROWER, ESQ.
Nukk-Freeman & Cerra
26 Main Street
Suite 202
Chatham, NJ 07925

Also present: DEVIN RAY, Law Clerk
JODY SPENCER, Ameris Bank

**Los Angeles, California; Monday, June 1, 2026; 9:20 a.m.**

**(Call to Order)**

**THE CLERK:** Calling item number 1, SA CV-24-01989, Patrick Byrne versus Ameris Bank.

Counsel, please state your appearances, start with plaintiff.

**MR. SESSIONS:** Good morning, Your Honor, Matthew Sessions on behalf of the plaintiff.

**THE COURT:** Good morning.

**MS. VILLAGOMEZ:** Stacey Villagomez for the plaintiff.

**THE COURT:** Good morning.

**MS. LARSEN:** Good morning, Your Honor, Madison Larsen for the plaintiff.

**THE COURT:** Good morning.

**MR. WOOD:** Good morning, Your Honor, Andrew Wood on behalf of the plaintiff.

**THE COURT:** Good morning.

**MR. SESSIONS:** And Your Honor, also just so they don't have to come up to the stand, we do have a number of junior associates who have done a lot of work on this case --

**THE COURT:** Okay.

**MR. SESSIONS:** -- so they're here in the courtroom, and depending on what issues might come up today they might speak, so I just will briefly introduce them.

So we have Sean Bloks, Jordan Victor, and Michael

Case 8:24-cv-01989-MWC-JDE Document 279-1 Filed 06/02/26 Page 4 of 106 Page ID #:7310



Gates.

**THE COURT:** Great, thank you. Welcome everyone.

**MS. FODE:** Good morning, Your Honor --

**THE COURT:** Good morning.

**MS. FODE:** -- Stacy Fode appearing on behalf of defendant.

**MS. YEE:** Good morning, Your Honor, Nana Yee on behalf of Ameris Bank.

**THE COURT:** Good morning.

**MS. FODE:** And I will also introduce our associate Zach Brower who's here in the courtroom, our law clerk, Devin Ray, and also our client, Jody Spencer from Ameris Bank.

**THE COURT:** Thank you. Good morning everyone, can welcome.

Okay. So we have a lot of work to do this morning. Before we get into the substance let's talk about -- I know that there were a couple of requests for a table and for library carts, and I don't understand why you need all of that equipment.

Initially I denied the request, but I think I hoped that the word got to you that we would talk about it again, because I don't want to hinder anyone's ability to put on their case, but I also don't want to create barriers for witnesses are coming from the gallery to the witness stand unnecessarily.

**MR. SESSIONS:** From plaintiff's side, Your Honor,

we're fine with whatever the Court's preference is. If we -- on our side if we need our graphics operator to sit right here, for example, we're fine with that.

**THE COURT:** Okay.

**MR. SESSIONS:** But whatever the Court's preference is.

**THE COURT:** And that's fine. That's what usually happens is the graphics operator either sits right where you just indicated or they sit at counsel table closer to the Court, but if that's going to work for you then that would be preferable, because as you can see tight -- the space on the end of the table is somewhat tight for people who are trying to walk from there to here.

**MR. SESSIONS:** That's fine with us, Your Honor.

**THE COURT:** Okay.

**MR. SESSIONS:** From plaintiff's side.

**THE COURT:** Okay, thank you.

And from defense's perspective?

**MS. FODE:** Yes, that was the request from our trial tech was, and I believe she spoke with the -- probably not someone from your office -- but the person that she was put in contact with to talk through the logistics, and I thought that they had suggested a table over there to be out of the way; however, if it's your preference that she sit here that's of course fine.

**THE COURT:** Does she need the extra -- what is she going to be -- I mean like I said, I don't want to hinder anyone's ability to present their case, and this courtroom, this courthouse is pretty technologically advanced, so it's hard for me to conceptualize why you would need to have a separate tech table. But like I said, I want to talk about it because there's something that I don't know.

**MS. FODE:** Yeah, understood. No, I think she was just trying to place herself out of the way by utilizing a table, but if that's not the Court's preference she will set up here and I don't think she has -- it's not like the old days with the big computers or anything, so it's just more I think what she had heard in talking with the tech support from the Court was that she should be out of the way. But that's fine.

And then I think that the request for the cart was mine, and that's just what I've always done going to trial for 28 years is just always have my binders on a little cart so that we could access them for transcripts as well as exhibits.

If that is not the Court's preference, we usually put it out of the way so that it's accessible, if not we will make it work. Whatever your preference is.

**THE COURT:** Well in this case, and that was -- I was -- that question and then another one after that -- I was confused as to why you would need a cart, because in this case I have -- I had already received the thumb drive with all of

the exhibits electronically, so I wasn't sure why you would need the hard copies in the court.

**MS. FODE:** And it may just be, Your Honor, a factor of my age, and that I'm used to the paper exhibits, and also for the transcripts as well if they're going to be impeaching and we need to look at the transcript.

However, again, I don't want to make an issue or, you know, unnecessarily clutter the court, if not we'll make it work and we know the witnesses will have what they need and you have what you need, so that's fine.

**THE COURT:** How many deposition transcripts were -- I mean I know that no one has a crystal ball so you don't know what you're going to need for impeachment -- but how many depositions were taken in the case?

**MS. FODE:** It's probably eight depositions.

**THE COURT:** Okay.

**MS. FODE:** And so -- and less than that being called, some people are being called who didn't have their depositions taken, so it's not voluminous, again, and we can put it here, you know, we can --

**THE COURT:** Okay.

**MS. FODE:** -- make it work, put it at the end of the table.

**THE COURT:** Okay, great. Thank you.

**MS. FODE:** Okay. Thank you.

**THE COURT:** Thank you all for being so flexible with the Court.

Okay. So from -- before we jump in, are there any specific issues from the plaintiff -- I'm going to ask the defendant the same question -- from the parties' perspective that I make sure I put on my list so that we talk about them before you leave today?

**MS. VILLAGOMEZ:** Yes, Your Honor. I just wanted to raise that we provided Ms. Jackson with a USB flash drive this morning that contained plaintiff's exhibits, which just added the sticker on the front page of each of plaintiff's exhibits.

**THE COURT:** Okay. I need you to speak -- move the microphone closer --

**MS. VILLAGOMEZ:** My apologies.

**THE COURT:** -- because I'm having a hard time hearing you.

**MS. VILLAGOMEZ:** Yes.

**THE COURT:** And also we want to make sure that so the proceedings are being recorded and then transcribed, and so if your voice doesn't get picked up on the recording then it's not going to be in the transcript.

**MS. VILLAGOMEZ:** Thank you, Your Honor.

I just intended to advise the Court that this morning we provided Ms. Jackson with a USB flash drive that contained Plaintiff's Exhibits 1 through 190 that just had a sticker on

Case 8:24-cv-01989-MWC-JDE Document 127-1 Filed 06/02/25 Page 10 of 107 Page ID #:8116



the front page of each exhibit.

The version that we had provided last Friday inadvertently failed to include those stamps, so the versions that we provided this morning just contain those.

**THE COURT:** Okay. And I -- Ms. Jackson did give me the thumb drive. I've downloaded them.

What I did -- so let me know if this was a mistake -- what I did was I deleted all of the exhibits that were in the submission that you submitted on Friday and then just copied and pasted from the thumb drive into that exhibit folder.

**MS. VILLAGOMEZ:** Yes, that's correct, Your Honor.

**THE COURT:** Okay. And does the defense have a copy of the exhibits that are properly labeled?

**MS. FODE:** We just received it this morning, so we have not had a chance to do what you did or really look at them, and I did want to just note for the record that because there are several instances of the rules not being followed in your very specific order, that those were due to be Bate stamped, and we spent a lot of time meeting and conferring and exchanging, getting everything ready for that, and so I just want to note it for the record that they are untimely, and we do need the stickers on them, but they were due on the 29th and it creates more confusion and work for our office as well as for the Court.

**THE COURT:** Okay. Did you want to respond to that?

**MS. VILLAGOMEZ:** Yes, Your Honor.

I wanted to advise that yesterday we did provide a link of the exhibits that were included in the USB thumb drive this morning to opposing counsel.

**THE COURT:** Okay. Any other issues from the plaintiff's perspective that we want to make sure we cover in addition to the jury instructions and exhibits and witness list and everything else?

**MS. VILLAGOMEZ:** Yes, Your Honor.

From the final pretrial conference order that was published, it advised that the parties had ten hours of testimony, which was to include opening and closing. We just wanted to get clarification from the Court that that ten hours per side does not include opening and closings.

**THE COURT:** It does not include opening and closing.

**MS. VILLAGOMEZ:** Thank you.

**THE COURT:** Okay. And my apologies for the mistake on that.

**MR. SESSIONS:** No worries, Your Honor.

**THE COURT:** But I can imagine that it must have been a shock to read that, because that was different from what we talked about and that makes a significant difference in the way you present your cases.

So we're all on the same page, the ten hours is testimony only, it does not include opening and closing or jury

instruction.

**MS. VILLAGOMEZ:** Thank you, Your Honor.

**MS. LARSEN:** Thank you.

**THE COURT:** Okay. Let's see. Anything else from the plaintiff's perspective in addition to all the other things that we were planning on talking about?

**MS. VILLAGOMEZ:** Yes, Your Honor.

The final pretrial conference order also required that the parties exchange demonstratives before day zero.

The transcript from the final pretrial conference provided that plaintiff had offered to defense that we would exchange demonstratives the day before trial and we engaged in meet and confer efforts with opposing counsel to that effect.

Plaintiff would propose that as opposed to serving demonstratives prior to today, which the parties did not, that we exchange demonstratives the day prior to their use at trial.

**THE COURT:** Okay. And --

**MR. SESSIONS:** If I could probably just a little more color to that, Your Honor. This is Matt -- this is Mr. Sessions.

So during the pretrial conference Your Honor had asked had we worked out some way to exchange demonstratives prior to trial. I said, but we have a proposal that we plan to send to defendant, which is that we would exchange demonstratives the day before they're intended to be used 7

p.m.

We did send that to defense counsel. Defense counsel responded and said that they agreed to exchange demonstratives, and I believe their proposal was let's exchange them the morning of their intended use.

Either way it seemed that we had come to an agreement on, you know, as the case moves along demonstratives might change the -- you know, the need of what might need to come in or need to be presented might change, and so it seemed we had come to an agreement that we would exchange them daily, and then -- but then yesterday on a meet and confer call we were informed that they had intended to share all demonstratives for all of trial last night, other than for closing, which we weren't sure why it would be just be some demonstratives but not all if they felt that all were due.

But we said that -- you know, we thought we had an agreement, we're not ready to share demonstratives, because you know, we were going to share our opening demonstratives, for example, today, and then defendant said to not -- and fairness to them -- they said to not prejudice their client they did not share their demonstratives yesterday either.

So we just wanted to work out, see if we can figure out what the Court's preference would be on that, because it seemed like we had an agreement and -- but now the agreement I guess has fallen apart.

**THE COURT:** Okay. Yes.

**MS. FODE:** Thank you, Your Honor.

Respectfully I think they're trying to get ahead of the issue.

The Court's minute order was -- of May 22nd, 2026 was clear to us, it overruled any of our discussions about that prior to it, and the Court's order says, the parties are directed to exchange demonstrative exhibits prior to day zero, which I understood that to be before today, so if any issues come up that we could work them out so that we can streamline the jury process.

We just learned on a meet and confer call yesterday afternoon that they were not going to exchange them. We were ready to exchange, but as you can imagine that would be prejudicial to our client if we provide them so far in advance that then they have change their demonstratives in response.

So we would like to note it's another not following the Court's order and it does create confusion and it does prejudice our client, and so I do think now at this point we need to be clearer on what we need, but want to let you know that we were 100 percent going to comply by 12:00 -- or by 11:55 with this order as well.

**MR. SESSIONS:** And, Your Honor, if I may just one quick response, and with all due respect it's -- from our perspective it still seemed like if counsel had intended to do

fully comply with what they read the Court's order to be there wouldn't have been any reservation that hey, we're going to give you some demonstratives but not any that we'll use in closing. So that's why for us it seemed that hey, there needs to be a need to work this out.

**THE COURT:** Okay. So let's talk about what is facing us right in the window right now, which is demonstratives in opening statements, so why haven't those been exchanged?

**MR. SESSIONS:** Your Honor, I think just from -- because of our prior agreement either -- whether it was our proposal that they would be exchanged by 7 p.m. today or what defense counsel's proposal was, is that they would be exchanged tomorrow morning.

And so that was our prior agreement, and so that's why they have not been exchanged yet, at least from plaintiff's perspective.

**THE COURT:** But that agreement was made before the Court issued its order.

**MR. SESSIONS:** I do understand and recognize that, Your Honor, and I apologize to the Court for that misunderstanding on plaintiff's part.

**THE COURT:** Okay. So am I correct in understanding that the plaintiff's proposal is that demonstratives be exchanged by 7 p.m. the day before they're going to be used?

**MR. SESSIONS:** Correct, Your Honor.

**THE COURT:** And the plaintiff -- I'm sorry -- and defendant -- I don't know why I keep saying that -- defendant's position is that you're looking for direction from the Court that you understand what the order was. I understand that, but the order has not been complied with.

So what is the defense position in light of where we are today?

**MS. FODE:** Thank you for that -- the opportunity.

I do think that because we have to move forward then I do think 7 p.m. the day before would provide the parties time if we're going to object or meet and confer, so I do think that that would be a fair result going forward, and we'd be comfortable with that.

**THE COURT:** Okay. So that will be the order that any demonstratives that are going to be used at all during the trial be exchanged by 7 p.m. the day before they're going to be used.

**MR. SESSIONS:** Thank you, Your Honor. And apologizes for the confusion on plaintiff's part.

**THE COURT:** Okay. And in the future I need you -- when the Court issues an order it's not a suggestion, it's an order, okay?

**MR. SESSIONS:** Understood, Your Honor.

**THE COURT:** All right. Okay. Anything further from the plaintiff's perspective in addition to the things that we

were all planning to talk about this morning?

**MS. VILLAGOMEZ:** No, Your Honor.

**THE COURT:** Thank you.

And from the defense perspective?

**MS. FODE:** No, expect for I would and that we could ask a few questions -- a few more questions about voir dire --

**THE COURT:** Sure. Go ahead.

**MS. FODE:** -- when the time is appropriate for that.

**THE COURT:** It's fine now.

**MS. FODE:** Oh, perfect. Okay, good. Then one moment, please.

All right. I just wanted to confirm how -- if you could give a little bit more detail -- you already gave great detail, thank you so much and so much --

**THE COURT:** No, I know it's a strange procedure, so free feel to ask as many questions as you have.

**MS. FODE:** Thank -- I really appreciate it, it was very detailed.

I wanted to ask a little bit more about how you stack your panel size, if you can give that. If it happens to be 35 or if you can give that information. And then more the process of when somebody goes out how your process is to fill them in. And then also as far as the timing, would there be a short break once for causes and strikes -- before strikes are made where we would be able to confer on the information gathered,

like a ten-minutes break before strikes?

**THE COURT:** So Ms. Jackson, correct me if I'm wrong, we get 20 jurors; is that correct?

**THE CLERK:** Yes, Your Honor.

**THE COURT:** So the jury assembly room will send 20 prospective jurors up here, we'll seat 8 of them in the jury box, and the other 12 will be seating in the audience over on this side.

When I -- we start with voir dire I will address all 20 of them at the same time. I'll ask the -- explain a little bit about the jury process, ask some general questions, or the same kinds of questions that you've all heard at the beginning of voir dire about occupation and marital status and the occupation of the person's significant other.

And then I will ask, depending on what their occupations are, I'll ask questions concerning what they do, and to the extent that I think it's relevant to this case and to get information for all of you have to have to determine whether or not you want to exercise peremptories.

Then I will ask -- I have other questions that I have drafted in conjunction with the proposed voir dire questions that both sides have presented.

Then when I am done with that, depending on how -- where we are in terms of time I'll either call a sidebar or I'll give the jurors like a 10 to 15-minute break and I'll ask

counsel for each side whether or not you have other questions that I didn't ask that you want me to ask.

Like I said before, I'm pretty good about follow-up questions so it's very rare that there's something that I didn't ask that the lawyers want me to ask, but at this point you know your case better than I do, so there may be things that I don't ask about that you feel is important to ask, and depending on what it is I may or may not ask that question.

Then we'll -- usually the way the timing works out is I'll excuse the jury for about 20 minutes after the questioning has completed, I'll ask each side for any challenges for cause, and if there are any challenges for cause that are sustained that's something that we don't bring the jury back in, then I will ask for your three peremptory challenges, and each side will present your peremptory strikes on a piece of paper without having people coming up back into the box or coming -- have the jurors even back in the box.

Ms. Jackson and I will then go down the list starting from number 1 all the way through number 20 and seat the first 8 people who remain after the cause strikes have been taken out and the peremptories have been taken out, and that's our jury.

Did that answer your questions?

**MS. FODE:** It did, Your Honor.

And just to clarify, because I've never done blind strikes before, so it's before a topic of conversation amongst

my colleagues, and so just to confirm, they're going to do -- plaintiff will do their strikes, we'll do our strikes on these pieces of paper, we do not know their strikes and they don't know ours.

**THE COURT:** That's correct.

**MS. FODE:** Thank you.

**THE COURT:** So it may be that both sides want to strike the same person.

**MS. FODE:** Uh-huh.

**THE COURT:** I've never had that happen before, but there's always a first time. I have had cases where both sides agree to strike someone for cause. The last case that I had in particular we had that happen several times.

But you're going to exercise those, you know, in open court in front of each other, but the peremptories will not be in front of each other, you won't know what they've stricken.

**MR. SESSIONS:** Thank you, Your Honor.

**MS. FODE:** And may I is ask one follow-up question, because I have to ask?

If -- does the Court share the Court's questions prior so that we can take a look at them in advance?

**THE COURT:** No.

**MS. FODE:** No problem, I just had to ask. Thank you.

**THE COURT:** I don't -- you know, you're not going to be surprised by any of the questions that I ask, I ask the same

Case 8:24-cv-01989-MWC-JDE Document 127-1 Filed 06/12/25 Page 20 of 106 Page ID #:8813



kinds of questions that most -- I mean I don't -- well I don't know, there may be some judges who are less active with questioning, I'm the kind of judge that asks a lot of questions, mostly because I think jury selection is a fascinating opportunity to get to know people in our community that you might not actually encounter, so sometimes you'll hear me say, this has nothing to do with this case but I have to ask you out of curiosity and then I'll ask a question.

But you know, I'm not going to ask any questions that indoctrinate the jury. I'm not going to ask any questions that put the thumb on the scale for one side or the other.

I'll probably say more than once to the jurors that the reason that I'm asking all the questions that I'm asking is because both parties are entitled to have a trial by jurors who can be fair and impartial, so I may, you know, depending -- and you've all tried cases before, you know that you sometimes get a juror who you know there's something that you need to kind of probe, and so to the best of my ability I'll try to probe that so that way you can make a determination about whether or not you want to exercise any cause challenges. But they're -- for the most part there shouldn't be any surprises.

**MS. FODE:** Great, thank you.

And the only other issue I just wanted to confirm that we will discuss witnesses so we have some scheduling things just to --

Case 8:24-cv-01989-MWC-JDE Document 191 Filed 06/02/25 Page 21 of 106 Page ID #:7128



**THE COURT:** Right.

**MS. FODE:** -- talk about. Okay.

**THE COURT:** Okay. Well why don't we just go there right now, because that's something they wanted to talk about too.

So as you might imagine using the blind strike method for voir dire is much faster than the traditional way jury selection is done, and it is very likely that we will not only finish with your opening statements tomorrow, but also get into testimony.

So from the plaintiff's perspective who is your first witness?

**MR. SESSIONS:** That will be the plaintiff, Patrick Byrne.

**THE COURT:** Okay. And do you --

**MR. SESSIONS:** And this is Matthew sessions speaking.

**THE COURT:** Thank you.

And do you think that he'll be on the stand the entire day tomorrow?

**MR. SESSIONS:** It depends on -- well certainly I don't see his entire testimony finishing, whether we finish direct I think just depends on what time opening statements finish.

**THE COURT:** Right.

**MR. SESSIONS:** I think we put in our estimate that we

have probably about two hours of testimony with him, and of course that could change based on objections or anything that might slow that down.

But I don't anticipate him finishing his entire testimony, because I believe defendant estimated two and a half hours for his cross.

**THE COURT:** Okay. All right. So I think we did talk about this at the final pretrial conference about giving notice about who was going to be testifying in the following day.

Remind me, what are -- usually what we do is we have whoever is going to be presenting the witnesses notified by 4 o'clock the day before so there aren't any surprises.

Is that something -- is that what the parties in this case have agreed to or --

**MR. SESSIONS:** We did agree to a two-day notice, Your Honor.

**THE COURT:** Okay.

**MR. SESSIONS:** We agreed by 7 p.m. and both sides complied that last night for tomorrow.

**THE COURT:** Okay. Okay. And are there any -- so any logistical issues from the plaintiff's perspective with respect to any of the witnesses? Anyone need any assisted hearing devices, interpreters, anything like that?

**MR. SESSIONS:** No. No, Your Honor.

**THE COURT:** Okay. Okay. And how about from the

defense perspective?

**MS. YEE:** Yes, Your Honor, last night we sent over --

**THE COURT:** I need you to pull the microphone up so that -- because I can't hear you. Thank you.

**MS. YEE:** Yes, Your Honor. Can you hear me now?

**THE COURT:** Yes.

**MS. YEE:** Okay. So last night we met and conferred with plaintiff's counsel and we provided two witnesses on our list. One is plaintiff for Tuesday and also another one is a defense witness, Mr. Ross Creasy, and we told plaintiff that Mr. Creasy had a flight on Tuesday night and therefore we'd like to take him out of the order and have him testify on Tuesday afternoon before the Court finishes, but plaintiff objected to it.

So then we made immediate rescheduling with asking Mr. Creasy to reschedule his flight, which he did at great expenses, so then we met and conferred with plaintiff's counsel this morning asking them to please accommodate Mr. Creasy and then to have him testify first thing at 9 o'clock on Wednesday morning before he has his international flight scheduled for Wednesday.

**THE COURT:** Okay. And what is the plaintiff's perspective?

**MR. SESSIONS:** And, Your Honor, as I explained to defense counsel, our -- not opposed to calling witnesses out of

order, I don't like to do it, but you know in certain circumstances it's okay.

My concern particularly with Mr. Creasy is twofold. One is it does seem that unless defense counsel plans on keeping their cross of Mr. Byrne short he'll be still in the middle of his direct, cross, and redirect.

So under their proposal that would have to be interrupted, so Mr. Byrne would testify, then Mr. Creasy would testify, then Mr. Byrne would continue testifying, which seems unusual.

And then a witness that we subpoenaed who does work for defendant is Heather Parker, and we intend to call her immediately after Mr. Byrne's testimony on Wednesday because we were informed by dependence counsel last week or the week before that she has a hard deadline of she could only testify on Wednesday before 2 p.m.

So our plan was to call Mr. Byrne, finish his direct and cross by Wednesday morning or Wednesday at lunch, and then call Ms. Parker.

So if need be we could potentially be in a situation where we're calling Mr. Byrne, then Mr. Creasy, then Mr. Byrne again, then Ms. Parker, and heaven forbid potentially Mr. Byrne again. So I -- that just seems a little unusual, could confuse the jury.

So again, I'm not opposed to calling Mr. Creasy out

of order, but certainly it doesn't seem appropriate to call him on Tuesday before Mr. Byrne testifies and it doesn't feel appropriate to interrupt his testimony.

**THE COURT:** Okay. And Ms. Yee, why did Mr. Creasy make his travel arrangements so that he would testify at the beginning of the trial in the plaintiff's case?

**MS. YEE:** Your Honor, happy to explain.

Mr. Creasy made this schedule, this trip is a group trip involving seven other people, he made this, you know, travel two years ago, it was before the lawsuit was filed and it was also before plaintiff testified in his deposition that Mr. Creasy is a critical witness and he accused him of authorizing him to send -- stealing, you know, his stolen documents.

So Mr. Creasy has absolutely the right to come and counter and he's the only one that can come and counter that testimony.

**THE COURT:** Well why can't he come later in the trial?

**MS. YEE:** He will be -- Your Honor, he will be gone for his international flight between Wednesday and June 13th.

**THE COURT:** Okay, but the plaintiff is already making an accommodation for Ms. Parker.

**MS. YEE:** Your Honor, Mr. -- Ms. Parker can testify any time before 2 p.m. on Wednesday.

Case 8:24-cv-01989-MWC-JDE Document 92 Filed 06/02/25 Page 26 of 106 Page ID #:2133



**THE COURT:** Exactly. I mean what I'm saying is that the defense witnesses that you want to put on in the plaintiff's case are -- it's essentially trying to put your case before the plaintiff's case, which I can't allow.

**MS. YEE:** Your Honor, it will be in, you know, in my opinion it will be if anything his testimony will be in the middle of our cross of plaintiff.

**THE COURT:** I understand that, it's still in the plaintiff's case.

So if the plaintiff is making accommodations for Ms. Parker and has indicated an willingness to make an accommodation for Mr. Creasy, but I don't think that it is reasonable to ask that the defendant put on two of its witnesses on -- in the plaintiff's case just because -- I mean I still don't understand what the issue is with respect to the availability of these witnesses. You've all known that this case was going to be tried now for a long time.

**MS. YEE:** Your Honor, so plaintiff agreed to accommodate Ms. Heather is because Ms. Heather is their witness. They subpoenaed her then they put her on their witness list.

**THE COURT:** I understand, but she's affiliated with the defense.

**MS. YEE:** Your Honor, then we wouldn't be able to because Mr. Creasy is a critical witness in this case and his

testimony is only going to be 15 to 20 minutes, which we put on our witness list.

So we'd like to ask these questions, have him testify, and because this is a non-refundable international flight that affects seven other people who are not parties of this case, we'd like to take him out of the order, which this court civil trial order allows.

**THE COURT:** Okay. Mr. Sessions?

**MR. SESSIONS:** Your Honor, my position remains the same. We're willing to accommodate, I just -- I don't see how we can do it without interrupting Mr. Byrne's testimony, which I just think would be confusing to the jury, but we're willing to do whatever the Court is willing to grant.

**THE COURT:** Ms. Yee, do you think that you are able to -- because you have control over the time that you have cross-examine Mr. Byrne -- to the extent that you can do your cross-examination in order to accommodate your witness to testify --

**MS. YEE:** Yes, we --

**THE COURT:** -- do you think you can do that?

**MS. YEE:** Yes, we can do that, Your Honor.

**THE COURT:** Okay. So we can take Mr. Creasy after -- out of order as long as Mr. Byrne's testimony is complete, but if it's not complete, then we're not going -- he's not going to testify out of order in that way.

**MR. SESSIONS:** Yes, thank you, Your Honor.

And if we may, just so we can work out the logistics right now since we're all here, that would that also be we would make sure that we would ensure that Ms. Parker can testify before 2 p.m. as well? Because I want to make sure, I don't want to be in a position where they finish Mr. Byrne's --

**THE COURT:** Right, I don't want to be --

**MR. SESSIONS:** -- cross and --

**THE COURT:** -- position where because of the length of the defendant's cross-examination that we're in a place that we can't get Ms. Parker's testimony.

**THE YEE:** I think, Your Honor, we can work that out. We're happy to meet and confer to make sure that Ms. Heather goes before 2 p.m.

**THE COURT:** Okay. All right. Mr. Sessions?

**MR. SESSIONS:** As long as that all goes to plan -- according to plan then that's fine with us.

**THE COURT:** Okay. So I need you to make sure that you -- I don't know who's going to cross-examine Mr. Byrne, but you need to keep that in mind, because we are -- the -- we're in a situation where we've got witness availability issues that I think -- it's unfortunate that we're here, but these two witnesses are defense affiliated witnesses that are creating a major logistical problem and it's going to be on you to make sure that this smooths itself out.

**MS. YEE:** Understood, Your Honor, we will try our best, and again, you know, we proposed this because plaintiff's estimated testimony on Tuesday is two hours, so hopefully fingers crossed, you know, they're going to finish him on Tuesday, and -- but again, we will make sure like, you know, the party follow the -- and comply with the schedule as proposed.

**THE COURT:** Has Mr. Creasy's deposition been taken?

**MS. YEE:** Not in this case, no.

**THE COURT:** Okay. All right. In another case?

**MS. YEE:** No.

**THE COURT:** Okay. Okay. Let me see. I believe --

**(Pause)**

**THE COURT:** Are there any other issues with any of the witnesses?

**MR. SESSIONS:** None that I can think of, Your Honor.

**THE COURT:** Okay. From the defense perspective?

**MS. FODE:** It's not with the witnesses per se, but the deposition testimony.

We would like to just speed things along because we understand how many people and how much is going on, that we will withdraw our counter designations to Sufhan Majid's deposition transcript testimony that they're going to play, because now it's much longer and I think it'll take up a lot of the Court's time and the jury's time, so we'll withdraw those

to expedite.

**THE COURT:** Okay. Did you file those?

**MS. FODE:** The parties met and conferred, and opposing counsel was to -- I think the last correspondence we got was at 11 o'clock that that you were going to be submitting it to the Court, and so we should confirm that was done.

**MR. SESSIONS:** My understanding is that the depot designations and video was lodged with the Court, I'm just confirming that with my team right now.

**THE COURT:** I'm going to look too. Sometimes things don't get -- if they're filed over the weekend they won't get docketed until later, so let's see.

**MS. FODE:** And actually as you're mentioning it, Ms. Yee is reminding me that we didn't see proof that that was submitted to the Court, so that will be helpful.

**(Pause)**

**MR. SESSIONS:** Either way, Your Honor, we will get that submitted right now if it hasn't been already.

**THE COURT:** I have -- so docket 187 is notice of lodging of deposition transcripts.

**MR. SESSIONS:** Yeah.

**THE COURT:** So that's not the designation.

**THE COURT:** Yes. Yes. I believe that those were emailed to the Court, now I'm remembering. I believe that they were emailed to the Court on Memorial Day, May 25th.

**THE COURT:** Right. I have -- I think I have the -- let me just double check to make sure so I'm not speaking out of turn.

I have the plaintiff's deposition transcripts and deposition excerpts from the defense.

**MS. VILLAGOMEZ:** Your Honor, if I may?

**THE COURT:** Yes.

**MS. VILLAGOMEZ:** Stacey Villagomez for plaintiff.

On Monday, May 25th, we had emailed chambers and included the parties' objections with respect to the deposition designations as well as the designations, counter designations, and objections regarding Palmer Proctor and Sufhan Majid. Opposing counsel is also copied on that email.

**THE COURT:** Okay.

**MS. FODE:** Your Honor?

**THE COURT:** Yes.

**MS. FODE:** My colleagues are confirming that we did not receive a copy of that. Are you saying that we are copied on it?

**MS. VILLAGOMEZ:** Yes, you are copied in that email.

**THE COURT:** I don't think I have it either. Ms. Jackson, do you have it?

**THE CLERK:** Your Honor, I just forwarded you an email, I'm not sure if this is what you're looking for. It's from May 25th at 10 p.m., and it looks like the document --

there's an actual link to a Dropbox.

**THE COURT:** Oh, okay.

**THE CLERK:** Again, I'm not sure if that's what you are looking for.

**THE COURT:** I think it is.

**MS. VILLAGOMEZ:** Yes, Ms. Jackson, that is. Thank you.

**MS. FODE:** And just for the record we'll obviously go back and check, but I don't know if something happened, it went into spam or something, but we did not receive a copy of that. Just noting it for the record.

**THE COURT:** Okay. So I need you to send it again, and I'm wondering why you sent us a link to a Dropbox when this is something that needed to be filed on the docket.

**MS. VILLAGOMEZ:** Your Honor, our understanding was that these were supposed to be submitted by email. Our apologizes for not including it and filing it on the docket.

The reason that we included a Dropbox link, Your Honor, was because the deposition designations contained highlights that made the files too large, and so therefore I had to put it into a Drobox link in order for the Court to timely receive it.

**MR. SESSIONS:** Your Honor, apologies. I do believe that during the final pretrial conference the instruction that's on the transcript was to email the lodged designations

to chambers.

**(Pause)**

**THE COURT:** So while we're -- I'm going to download these documents now -- but while I do that will you please send it to defense counsel again now so that -- do you have the electronic capability to look at it once she sends it to you?

**MS. FODE:** Yes.

**THE COURT:** Okay.

**(Pause)**

**THE COURT:** Okay, I can't download these. The files are in a -- there's something that's preventing -- there's something in the files that is preventing me from actually downloading it onto the government system.

**MS. VILLAGOMEZ:** Your Honor, Stacey Villagomez for plaintiff.

To the extent it is helpful we do have extra thumb drives and we request load them onto a thumb drive if that would be helpful for Your Honor.

**THE COURT:** Yes.

**MS. VILLAGOMEZ:** Yes.

**THE COURT:** That would be helpful.

**MS. VILLAGOMEZ:** Thank you. Let me grab them.

**MS. FODE:** Can we have one as well?

**MS. VILLAGOMEZ:** Yes.

**MS. FODE:** Thank you.

(Pause)

**THE COURT:** Okay. So based on -- it sounds like there are a couple of issues.

There's -- defense is objecting to some of the designations as being untimely, and I want to make sure that I'm correct in understanding which counter designations you're withdrawing. I can't see them all, but I know -- I do note that you indicated that a few minutes ago. So go ahead.

**MS. FODE:** And I'll start with the end if that'll all right.

**THE COURT:** That's fine.

**MS. FODE:** We'll make it easy. We're going to withdraw all counter designations from defense. And so we can resubmit that to you if that's easier.

**THE COURT:** You don't need to do that.

**MS. FODE:** Okay.

**THE COURT:** I'll just make a note of it in my notes.

**MS. FODE:** We just want to streamline.

**THE COURT:** Okay.

**MS. FODE:** And then the other issue was the timeliness issue, which I mentioned at the final pretrial conference that the submissions were not -- they were untimely per the Court's civil trial order.

And I also would note for the record that one of the submissions that they would like to play is Palmer Proctor, who

is the CEO of Ameris Bank who was -- his deposition after the Court's -- the magistrate's order was allowed for a very limited purpose of 45 minutes and for two limited issues, and if the entire transcript is now going to be read in the court I think that we need to know it and we would seek that it's not appropriate to play it because by his own testimony it is irrelevant and it would be prejudicial to have the CEO's testimony when he didn't have a part in Mr. -- the plaintiff's -- his employment, the underlying LTIP agreement, any of the relevant terms, he was not part of, that was Jim LaHaise, who will be testifying and will be here and be able to be crossed, as well as Nicole Stokes, the CFO of the company will be here for the financial side.

So it really feels to me like it's a tactic that the case law that we've provided, it prevents against this type of thing with bringing the CEO -- even if they're not here, bringing their testimony in before the Court and before the jury that that is prejudicial and harassing to that witness.

**THE COURT:** Okay. Thank you.

Mr. Sessions or I'm not sure what's going to argue that on the plaintiff's side.

**MR. SESSIONS:** It's actually going to be a new person, Your Honor.

**THE COURT:** Okay.

**MR. SESSIONS:** And it sounds -- I think there's two

separate issues that have just been raised.

One is the timeliness issues which my colleague, Michael Gates, is prepared to address.

Then the other issue is an issue that was -- I understood was already worked out in the denial of defendant's MIL number 5, and because Andrew Wood, Mr. Wood wrote the opposition to that I would ask for him to address that.

But I would invite Mr. Gates to speak on the timeliness issue --

**THE COURT:** Yes.

**MR. SESSIONS:** -- if that is okay, Your Honor.

**THE COURT:** That's fine. Thank you.

Mr. Gates, will you come forward, please, and state your name -- your appearance and then I need to hear the argument on why -- on the response to counsel's objection based on untimeliness.

**MR. GATES:** Good morning, Your Honor, thank you. Michael Gates on behalf of Plaintiff.

**THE COURT:** Good morning.

**MR. GATES:** So going back to the April 10th pretrial conference meet and confer session, at that point we expected all witnesses, including Messier Majid and Proctor to be present physically for trial, so at that point we didn't think it necessary to designate their depositions.

Also at that meet and confer conference we -- the

parties mutually reserved their rights later on to submit pretrial documents, if necessary. And had there been any issue with that understanding or had at the time defense -- defendant indicated that those two witnesses would not be present on that day, we would have gone through their depositions and provided the designations.

It wasn't until I believe May 20th when we learned that those witnesses would not be physically present for trial because defense refused to accept our trial subpoenas for those two individuals.

And on May 22nd within hours after the file pretrial conference we gave defense counsel the designation -- the deposition designations for those witnesses, and then defendants -- defendant had the opportunity and actually did submit objections and counter designations to those depo designations.

And so it's or position that they were prejudiced by any sort of late submission.

**THE COURT:** Okay. And do you want to respond to that?

**MS. YEE:** Yes, thank you, Your Honor.

First of all, Your Honor, we have objections submitted with email to plaintiff's counsel, which I understand they're trying to submit it to you in a flash drive.

But just briefly, plaintiff's, you know, argument is

not well taken, because on April 10th at the counsel's pretrial conference meeting we exchanged witness list, and on our list there is no Palmer Proctor and there's no Sufhan Majid on our list, and the plaintiff is well aware they're out-of-state witnesses.

So their argument that they did not know that we're not going to accept the subpoena is incorrect.

**THE COURT:** Okay. You get the last word.

**MR. GATES:** Your Honor, at that April 10th meeting we specifically reserved the right to later designate depositions if witnesses were not going to be present at trial, and they specifically agreed to that reservation of rights. So we would just like to note that.

**THE COURT:** Okay. And I haven't -- because I don't have the files yet -- I haven't had a chance to read the deposition, so I need to do that.

But before I do that I did want to hear about the -- thank you -- I want to hear at the substance of --

**MR. GATES:** Thank you.

**THE COURT:** -- the argument concerning Mr. Proctor and other -- any other Apex executives pursuant to the ruling on the motion in limine number 5.

**MR. WOOD:** Sure, Your Honor, and I've just refreshed -- this is Andrew Wood on behalf of plaintiff. Just refreshed my recollection on the Court's order on the motion in limine,

which for the record states, that at this stage the Court declines to issue a blanket pretrial exclusion of Ameris's executive testimony based on the Apex doctrine.

The relevant -- I'm skipping down a little bit -- the relevant scope and cumulative nature of any given witness's testimony are better evaluated in the context of trial presentation.

So it's frankly simply inaccurate to state that Mr. Proctor testified that he had no involvement with any of these things. What he testified repeatedly, as Your Honor will see in the designation, is that he doesn't recall, not that he wasn't involved.

And I think it's highly probative for the jury to hear that the CEO of Ameris Bank, who was in charge and approved the $186 million acquisition of my client's business, now purports to have no recollection of having anything to do with the CEO of this $186 million acquired business, his performance or anything to do with his firing or anything to do with that, I think that's highly probative, but for purposes of, you know, substantive and the intent and perhaps malicious intent or reckless disregard that the defendant took.

I think that's highly probative for the jury to hear, especially given that other witnesses will testify, other Ameris witnesses will testify that Mr. Proctor was very involved in the acquisition, put a hold on the acquisition

because -- he didn't initially -- because he didn't want to expend these hundreds of millions of dollars, you know, at first while he was still getting involved in the organization.

So the idea that he's just somebody sitting up in an ivory tower somewhere that had nothing to do with any of this is just frankly not true, will be belied by other witness testimony, and it will be then probative for the jury to hear that this individual purports to have no recollection of the critical issues that were happening below him.

**THE COURT:** Okay, thank you.

Yes.

**MS. FODE:** Thank you, Your Honor.

I think the beauty of this is you'll be able to review the transcript when you receive it and you'll understand the limited scope and nature of Proctor's -- Palmer's testimony and involvement. And you don't have the benefit of the other testimony, but I can represent that Mr. LaHaise said that he was the decision-maker with regard to the termination, he was the decision-maker with regard to these issues. So it was not Mr. Palmer.

And again, I think counsel's argument, while passionate, I think it shows the risk of allowing this type of testimony from somebody at a CEO level of an entire company that has such limited personal knowledge. I think that's where the prejudice comes in and the risk that the jury will be

prejudiced by that involvement, especially when it is very limited, the magistrate judge was very clear that the deposition was 45 minutes and it was only limited to the LTIP and --

**MS. YEE:** The termination.

**MS. FODE:** -- and the termination.

So it wasn't -- there wasn't an invitation for him to speak on other issues and those two issues he was not involved in.

**THE COURT:** Okay.

**MR. WOOD:** If I may very briefly, Your Honor.

**THE COURT:** Yes, go ahead.

**MR. WOOD:** I agree that the beauty of the situation is you'll get to assess for yourself when you see this, and just to remind the Court that as we pointed out in our motion in limine number 5 opposition is that the Apex doctrine and in the Ninth Circuit is an issue that is dealt with for deposition purposes and not necessarily for trial testimony, and there's, you know, some Ninth Circuit law and things that we cited in our briefing that I won't go back over at this point, but again I think there are -- you know, if Your Honor will have an opportunity to assess for yourself once you review the transcript and I think you'll agree that there are -- or that the Court will agree that there are inferences that the jury can draw from these legitimate -- from this testimony

legitimately that are highly probative of the matters in dispute.

**THE COURT:** Okay.

**MS. YEE:** Your Honor, I just want to add very briefly, that there is -- you know, counsel's representation of the law is not true. There's Central District Court cases that says not only Apex applies in discover, it also applies for trial testimony, and it's in our brief, Your Honor.

**THE COURT:** Thank you.

**MR. WOOD:** Thank you, Your Honor.

**THE COURT:** Okay, thank you very much.

So I need to read that deposition transcript, and I will as soon as I get it.

**MS. VILLAGOMEZ:** And, Your Honor, if I may approach opposing counsel and Your Honor with the USB flash drives.

**THE COURT:** Yes, thank you.

**MS. VILLAGOMEZ:** Thank you.

**MS. YEE:** Thank you.

MS. FODE: Thanks so much.

**THE COURT:** Isn't technology wonderful when it works?

**MR. SESSIONS:** When it works, yes.

**THE COURT:** Yeah. Thank you.

**(Pause)**

**THE COURT:** Okay. All right, so we'll come back to that after I have a chance to review these documents and maybe

we'll talk about it a little later this afternoon.

Any other issues concerning the witnesses from plaintiff's perspective?

**MR. SESSIONS:** None regarding the witnesses, Your Honor.

**THE COURT:** Okay. Anything ELSE from -- about the witnesses from defendant's perspective?

**MS. FODE:** No, Your Honor.

**THE COURT:** Okay. And it sounds like we have the exhibits ironed out. I've got copies of all the exhibits that are Bate stamped?

**MR. SESSIONS:** Yes, you do, Your Honor.

**THE COURT:** Okay. And from defendant yours were Bate stamped initially when they were submitted?

**MS. YEE:** Yes, Your Honor, but I do have an issue related to the Bate stamp, if I may, please address the Court briefly.

**THE COURT:** Okay. You can go to the podium --

**MS. YEE:** Okay.

**THE COURT:** -- so that way we can hear you better.

**MS. YEE:** Thank you.

**MS. FODE:** She's tall.

**THE COURT:** Yeah. I had that issue in not the last trial I had but the trial before, one of the attorneys was probably six feet tall and she wore heels every day, so it was

I think very uncomfortable for her to have to bend over at counsel table, it was much easier at the podium.

**MS. FODE:** Thank you.

**MS. YEE:** Thank you, Your Honor. This does seem much better.

**THE COURT:** Is it better?

**MS. YEE:** Yes.

**THE COURT:** Okay, go ahead.

**MS. YEE:** Your Honor, so in plaintiff's most recently submitted joint exhibits list plaintiff added on May 25th 36 brand new exhibits 6 days before trial, and those exhibits were never produced in discovery. And I have the exhibits number here if Your Honor need it.

However, even if they were never produced plaintiff somehow Bate stamped them knowing that the discovery cutoff was November 28th, and therefore, Your Honor, those exhibits are untimely and we should not reward discovery gamesmanship and they're highly prejudicial to Ameris Bank.

**THE COURT:** Which exhibits are we talking about?

**MS. YEE:** Exhibits -- so it's Exhibit 137, 146 through 149 --

**THE COURT:** Wait, hold on for one second, I'm trying to write this down at the same time you're talking.

**MS. YEE:** Okay.

**THE COURT:** So 137.

**MS. YEE:** 146.

**THE COURT:** Yes.

**MS. YEE:** 147.

**THE COURT:** Yes.

**MS. YEE:** 148.

**THE COURT:** Uh-huh.

**MS. YEE:** 149.

**THE COURT:** Uh-huh.

**MS. YEE:** 151 through 165.

**THE COURT:** Okay. So --

**MS. YEE:** Secondly, Your Honor, in addition to the newly Bate stamped exhibits, plaintiff also violated this Court's civil trial order because they manipulated the joint exhibit list and added 30 additional documents and attachments to plaintiff's preexisting exhibits.

As you may recall, Your Honor, the required timing for the parties to exchange exhibits that happened on April 10th at the pretrial counsel's meeting, and therefore they're untimely and highly prejudicial.

And on that note, Your Honor, I want to state for the record that defendant has not added one single new exhibit since the April 10th pretrial conference.

**THE COURT:** Thank you. Okay, so I want to make sure I'm understanding the defendant's objection and what we're talking about. That the defendant -- that plaintiff added 30

new exhibits. Well, the claim is the plaintiff added 30 new exhibits after the cutoff for the exchange, and that Exhibits 137, 146 through 149, and 151 through 165 were not disclosed during discovery.

**MS. YEE:** Correct. And they only recently submitted six days before trial on May 25th.

**THE COURT:** Okay. All right. Plaintiff?

**MR. SESSIONS:** Ms. Larsen will speak to this.

**THE COURT:** Okay, Ms. Larsen, go ahead.

**MR. SESSIONS:** Do you want to go to the podium?

**MS. LARSEN:** Good morning, Your Honor.

**THE COURT:** Good morning.

**MS. LARSEN:** So first, regarding the Bates stamps, we had Bates stamps, the new documents per the Court's request at the final pre-trial conference order to make sure that things were clear on what documents were what. The other documents, many of which are publicly filed documents, they were available to Ameris, many of them coming from Ameris. Many of them are judicially noticeable. Many of them were not in plaintiff's possession, custody, or control and thus not needed to be produced by plaintiff. And we also reserve the right to amend our exhibit list at the Rule 16 conference on April 10th.

**THE COURT:** My understanding is that defendants are saying that you -- that the plaintiff amended after April 10th.

**MS. LARSEN:** Yes, but at that April 10th meeting, we

Case 2:24-cv-01989-WJM-JDE Document 119 Filed 06/02/25 Page 47 of 106 PageID: 7154



had both agreed that we would possibly amend our joint exhibit list if we needed to before trial.

**THE COURT:** Based on what understanding? That's contrary to the Court's order.

**MR. SESSIONS:** Your Honor, if I may, because I was at the April 10th conference, it was just an oral agreement between the parties and understanding that, yes, it was contrary to the Court's order. We had both agreed, hey, if things come up, we might want to supplement the exhibit list, are both sides in agreement that we'll be, you know, subject to substantive objections that neither side would object procedurally, and that was the agreement.

**THE COURT:** Okay, and what about the exhibits that were identified that were not disclosed during discovery?

**MR. SESSIONS:** I believe -- you know, I don't want to repeat Ms. Larsen's argument, but as to, you know, just to reiterate the position that she stated, these ones are the defendant's publicly filed documents. They're their documents. They're 10 Qs, earnings call statements, and the case law, which we're happy to present a brief to the Court on if necessary. The case law is clear that we're actually not under obligation to produce those. They're not in plaintiff's possession, custody, or control. And for an independent reason, they're judicially noticeable documents as publicly available SEC filings as well.

So for two independent reasons, plaintiff is not under an obligation to produce those.

**THE COURT:** But I'm sorry, go ahead. I want to hear from defense on the defense's response to that.

**MS. YEE:** Your Honor, I just want to point out that there's no exception. Just because they're public documents, there's no exception that they did not need to provide them during discovery, because we've never had a chance to depose witnesses on those exhibits.

**THE COURT:** Okay, and I'm assuming, I haven't looked at them. Maybe we should just look at them all individually right now. Let's look at Exhibit 137.

**(Pause)**

**THE COURT:** Document also has an error in it, not letting me open it. Let's see.

**(Pause)**

**THE COURT:** There's something wrong with the files that I'm getting from the plaintiff. This document, I downloaded it off of the thumb drive, but it has an error in the naming path, so it's not opening. Let's try the next one, 146.

**MR. SESSIONS:** Your Honor, we do have physical copies of all of these exhibits here. Though, of course, I understand we love technology, and I want to make sure that we get that ironed out for the Court. The technological issue we seem to

be having, but I do want to offer to the Court that we have binders. Both sides do, if that would be helpful.

**THE COURT:** Okay, so far, I've tried to open 137, 146. Neither one of them will open. 147, I'm having the same problem. Yeah, none of these documents will open for me.

Okay, so to the extent that there are documents that are on the exhibit list that were not on the original exhibit list, the Court's tentative, I have to see them, but the Court's tentative is to exclude them because they needed to be exchanged on the initial exhibit list. And they needed, and I understand that some of these documents, the plaintiff is taking the position that they're judicially noticeable or publicly available documents, but that's only part of the issue.

The issue is that the defense needs to be on notice as to what evidence is going to be presented in the plaintiff's case. And just because there's something that is out there in the ether in the public doesn't necessarily mean that you can add it at the last minute.

**MR. SESSIONS:** Understood, Your Honor. Thank you.

**THE COURT:** Okay. Okay, anything else with respect to the exhibits? And I do need electronic copies of these exhibits that will open.

**MR. SESSIONS:** Yes, Your Honor, perhaps when we're on the first -- if we're on a break today, I will make sure that

gets ironed out.

**THE COURT:** Okay, thank you. Yes?

**MS. FODE:** Nothing further.

**THE COURT:** Okay.

**MS. FODE:** Oh, I apologize. Of course, Ms. Yee knows better than I do.

**THE COURT:** Yes, Ms. Yee, go ahead.

**MS. YEE:** Maybe I'll just stand over there, if I may, Your Honor.

**THE COURT:** Yes.

**MS. YEE:** Your Honor, there is another exhibit defendants would like to strike from plaintiff's exhibit list, which is Plaintiff's Expert Deborah Dixon's Supplemental Report, Exhibit 136. Your Honor, we had previously made our objections to the use of Plaintiff's expert's late submitted report, but more importantly, this particular report that was submitted and served on us on May 1st, 2026, contains an entirely new section addressing the calculations of 2024 LTIP that this Court had already excluded, in addition to other new opinions. But I want to bring attention to this Court that they included 2024 LTIP calculations, which we never had a chance to depose the expert on, and our expert never had a chance to rebut.

**THE COURT:** Okay. Is the plaintiff anticipating presenting the expert reports into evidence?

Case 8:24-cv-01989-MWC-JDE Document 171-1 Filed 05/29/25 Page 51 of 106 Page ID #:7843



**MR. SESSIONS:** No, Your Honor. They're not there for that purpose. If anything, just maybe refreshing recollection. Of course, you know, opposing counsel can impeach with it if they intend to.

**THE COURT:** Okay. So at this point, I think the objection is premature. I don't think that, I mean, ordinarily it would not come into evidence because it's hearsay, but I'm not going to strike it from the list. We'll make evidentiary rulings on individual exhibits if and when the exhibits are offered into evidence, but I really -- I'm -- that's why I asked the question that I did that it's probably on the exhibit list just in case it's needed for impeachment or to refresh recollection.

**MR. SESSIONS:** That's right, Your Honor.

**THE COURT:** But I do note that the defendant does have an objection to using that report because of the -- because of content that was not included in the original report and so we'll tell -- if we need to talk about that, we'll talk about it.

**MS. YEE:** Sounds good. Understood, Your Honor. And if I may, Your Honor, I have a related issue regarding to the sealing of the exhibits. So we had a meet and confer session with plaintiff's counsel. We requested that counsel stipulate to our proposed five exhibits which contain third-party formal employee and employee sensitive privacy information, but

counsel refused to do that. So we'd like to address that issue so that we can properly seal those documents and submit to the Court.

**THE COURT:** Okay, what is plaintiff's response to that?

**MR. SESSIONS:** Our position, Your Honor, is they -- one, I -- assuming that Ms. Yee, and I don't intend to address Ms. Yee directly, but my understanding -- I assume she's talking about their proposal to redact certain information and exhibits, and we did meet -- if that is the case, we did meet, confer, and agree sure, we'll agree that you can redact XYZ information, but other information, including the identities of -- for example, the identity of other Balboa or Ameris employees. We did not agree to redact that.

Now sealing is a separate issue and I don't believe we've fully met and conferred on the grounds for sealing. I will say that my reaction if their intent is because we didn't redact -- because we didn't agree to redact, they want to seal that portion of the record during trial. Without hearing their arguments, my at least initial reaction is we don't believe that reaches the high standard which I believe is -- it's the one -- it's above good cause and the name -- the words are just escaping me right now. I just don't believe that it reaches that for purposes of sealing at trial, which is pretty high.

**THE COURT:** So and now I'm confused. Ms. Yee, are

you talking about sealing or redacting?

**MS. YEE:** I think, Your Honor, we're required to redact and sealing under the rule.

**THE COURT:** Why -- if you redact, why do you need to seal?

**MS. YEE:** Your Honor, okay -- let me clarify. So we had the meet and confer session with plaintiff's counsel on two issues. One is to seal customer information, which they agree to. They -- but they refuse to stipulate to seal employee-related information.

**THE COURT:** What does that mean?

**MS. YEE:** So, for example, Your Honor, we have exhibits that has employees' annual compensation in Plaintiff's documents that they produce. So it's on their exhibits list. It's plaintiff's exhibits includes, for example, employees' company stock options, confidential settlement agreement information involving third-party individuals. And those are the documents that we request that we seal.

**THE COURT:** On what ground? I mean, like counsel said, there's a high constitutional bar. We can't just seal things because people don't want them to be public.

**MS. YEE:** Your Honor, we're happy to redact them if that's okay.

**THE COURT:** Have you met and conferred about this?

**MS. YEE:** We did in that session. I think we believe

we talked about both redaction and the sealing.

**MR. SESSIONS:** And, Your Honor, our position -- I do not believe we -- and I was on the meet and confer, sealing was not presented as an option. And as I indicated, I don't believe sealing would be appropriate on the redaction. Counsel is correct that we did agree. We said yes, you can redact those customer names, but the employee names no. In particular, some of the employee names are employees who are going to be here testifying at trial.

**MS. YEE:** Not all of them, Your Honor. We have plenty of employees, third-party employees, a list of long names, you know, referencing their compensation, their address, their, you know, date of birth, salary, bonus information, their leave status.

**MS. FODE:** And if I may, even though Ms. Yee is doing a great job, Mr. Brower did the research and he informed us that the Court's order, which we know that the local rule on sealing is complex, but that it if it was redacted that we also needed to seek approval from the Court through the sealing process. If the Court is -- if redactions will suit everybody for these five documents, we are comfortable with that and appreciate -- it sounds like opposing counsel will not oppose that.

**THE COURT:** I'd -- it sounds to me like he is opposing it.

**MR. SESSIONS:** I'm not opposing redacting of customer information. I am opposing identifying certain information regarding the Balboa employees. The -- as my understanding reviewing the documents, Ms. Yee has just represented that it contains addresses, social security numbers, things like that. If -- that, my understanding, is not on those documents. That information, sure, I don't see the relevance in that and I would have been fine redacting that. But for the identities of -- for most of these employees and counsel is welcome to correct me if I'm wrong, but as I understand, the issue is the identity for the majority of these people.

Now, for the people who are going to be here testifying, it also reveals information, you know, two of them are Phil Silva and Rob Rasmussen. These are two people who were high up executives of Balboa and just like Mr. Byrne, they received compensation when the business was sold. They were also high participants in the LTIP. So the amount of money they received from the sale of the business, the amount of money they received under the LTIP is highly relevant. And -- but as for the other employees, I don't believe that, for example, there's not like a list of employees where it says here's how much -- here was, you know, this employee's annual salary, you know --

**MS. YEE:** There is. I'm happy to provide the Bates number.

**THE COURT:** Ms. Yee, please wait until he's finished with his --

**MS. YEE:** Thank you. Sorry, Your Honor.

**THE COURT:** -- argument and then I'll get back to you. Go ahead.

**MR. SESSIONS:** Yeah, if -- you know, again and perhaps we just missed that. I did -- we did try to meet and confer on this with Mr. Brower and tried to get clarification on what exactly it is they're trying to redact and seal. Again, I don't -- I might be mistaken on the information Ms. Yee is now -- just now said is in there. Happy to meet and confer on again if they can, you know, want to point out, hey this -- you know, this employee who worked in accounting, we want to redact their annual salary. Happy to meet and confer on that, but I don't recall that being part of what was presented in the meet and confer.

**THE COURT:** Okay, Ms. Yee? I'm sorry.

**MS. FODE:** May I, if the Court would indulge us and Ms. Yee would indulge us, that Mr. Brower is here and I think it would be a great opportunity for him to explain, since he was on the call, if that would be appropriate and then he would have the opportunity to argue as well. If you would indulge.

THE COURT: That's fine.

MS. FODE: Thank you. Okay. It's your moment.

**MR. BROWER:** Okay. Thank you, Your Honor. Zach

Brower for the defendant.

**THE COURT:** Good morning.

**MR. BROWER:** On the call that we had with opposing counsel, we discussed redacting and sealing. So the sealing is the higher level bar and in order to save the Court's time and to save the time of the parties, we agreed to redact certain documents to avoid needing to seal full exhibits. And so we discussed five different exhibits that had employee private information and customer private information. These were Exhibits No. 7, Exhibit 71, Exhibit 311, 376, and 381.

So Exhibit 376 and 381 had customer information only and so plaintiffs -- as Mr. Sessions has stated, they agreed to seal those customer information and as well Exhibit 71 only had customer information.

On Exhibit 7 and Exhibit 311, there is employee private information, and for example, on Plaintiff 317 and -- 319, excuse me, it has confidential settlement agreement information with third parties that are not involved in this litigation, have not been brought up in discovery in this litigation. An example on Plaintiff-00373 and 374, it has a list of probably about 100 employees' addresses, date of birth, salary, bonus information, benefits information, leave status. And then on Plaintiff-00386, it has employees' transaction bonuses.

And so that is the information that we've shared with

opposing counsel. We marked redactions for opposing counsel for them to review. They said they would review them and after the call Ms. Villagomez responded with an email said they would not agree to redaction of any employee third-party information. And that's what we bring to you today, Your Honor.

**THE COURT:** Right. No, I'm just -- I'm thinking about the claims in the case. Isn't this relevant to the whistleblower claim?

**MR. BROWER:** In what context, Your Honor? Like the employees' leave status, and the employees' --

**THE COURT:** Compensation.

**MR. BROWER:** Yes. It is relevant to the whistleblower, but not these third parties' information. This is all included in disclosure schedules. That was pre-acquisition, and so these are current and former Balboa employees, Balboa Capital employees and their information. This is not related to the LTIP, which Mr. Byrne is allegedly complaining about.

**THE COURT:** The complaint is broader than that. Mr. Sessions?

**MR. SESSIONS:** Yes, we agree, Your Honor. We do believe that this is relevant to whistleblower claim. And I will say, and I am trying to follow along with the argument presented and about the information that they seek to redact, but I'm not seeing it in what they sent us, because they sent

us copies of the exhibits with red boxes around what they seek to redact and what was just listed. I'm not seeing it in those red boxes.

**THE COURT:** Okay. Anything else?

**MR. BROWER:** Yeah, and so we provided counsel with two separate documents. We provided one with the marked redactions, so it has the red box around the proposed redactions. And then we also provided counsel within the USB drive the proposed redactions, which actually has the information that we want redacted with the redactions on them. So they've received two different copies of it together.

And then I just want to note as well, for Exhibit 7, this has this financial information we spoke about. Exhibit 311, it's an undated performance review of an employee. It has no reference to a date on it. It doesn't state who gave it. The reason that it's on the exhibit list is because it's something that plaintiff produced that we believe has been misappropriated by plaintiff, was taken and stolen from Ameris Bank. And so the reason that we want to seal this is because we want to raise this only for the purposes of after-acquired evidence of stealing documents, and this employee's undated performance review should not be brought into evidence to be used against this employee.

**MR. SESSIONS:** If I may, Your Honor, just to the extent it's helpful, I don't mean to harp on an issue. This

employee's review is Phil Silva, and this is the employee who was second in command to Mr. Byrne at Balboa and when they were at Ameris. And as the evidence will show, he's the person who took over Mr. Byrne's job after he was terminated.

**THE COURT:** Okay, so I'm going to ask that --

**MR. BROWER:** Your Honor, can I just make one point quickly?

**THE COURT:** Yes.

**MR. BROWER:** I'm sorry. I just want to note that this performance review is undated. It's unclear who initiated the performance review. And so at that point, using it in plaintiff's case-in-chief would just confuse the jury and would cause prejudice to my client.

**THE COURT:** Okay. So what I'm going to do is order everyone to meet and confer over these redactions/sealing requests because I don't think that you've done a complete job of doing that. But I will say, I don't understand why we're talking about all this right now. There were no motions in limine about this. So I can't make evidentiary rulings without any other contextual testimony or briefings. So I'm not quite sure why we're having conversations about admissibility of exhibits right now.

**MR. BROWER:** Understood. Thank you, Your Honor.

**MR. SESSIONS:** Thank you, Your Honor.

**THE COURT:** Okay. All right. We're going to take a,

I don't know, 15, 17-minute break. I'll give you a chance to go stretch your legs and get some water or coffee or something, and we'll see everyone back here at 11:00.

**MR. SESSIONS:** Thank you, Your Honor.

**THE COURT:** Thank you.

**THE CLERK:** All rise. This Court is in recess.

**(Recessed at 10:44 a.m.; reconvened at 11:01 a.m.)**

**THE CLERK:** This court resumes in session.

**THE COURT:** Thank you. Everyone can be seated.

Okay. All right, are we ready to transition over to jury instructions?

**MS. VILLAGOMEZ:** Yes, Your --

**THE COURT:** Go ahead.

**MR. SESSIONS:** Yes, Your Honor, and the only last thing we had on our list, I just wanted to say, outside of jury instructions was did Your Honor want any discussion today on ironing out the statement of the case?

**THE COURT:** Yes, because that's something I'm going to talk about -- I'll say very -- you know, I'll give the statement -- a statement of the case to the jurors during voir dire, so I did read both parties' statements of the case. One, I was thinking that I was going to need to draft another -- a new one because I think it's the defense version is very long and the plaintiff's version, I don't -- I'm not sure what the objection what -- the defense objection is. So we can talk

about it now if you'd like to.

**MR. SESSIONS:** Sure, Your Honor, and if the Court would indulge, I'd like to invite my associate Jordan Victor to briefly discuss it.

**THE COURT:** Okay. Thank you. Mr. Victor, could you come forward, please?

**MR. VICTOR:** Hello, Your Honor. Jordan Victor on behalf of plaintiff.

**THE COURT:** Good morning.

**MR. VICTOR:** Good morning. So plaintiff believes that the -- our proposed statement of the case offers three brief neutral paragraphs. One is a little background of the case for the jury. One is a brief description of plaintiff's claims. And one is a brief description of defendant's defenses. And each one of these gives the jury a simple basic understanding of what this case is about, whereas defendants is just -- is a more narrative description of their defenses and then just the legal terminology for plaintiff's causes of action and that -- plaintiff doesn't believe that's enough for the jury to understand when they first hear the statement of the case to actually understand what the case is about.

And then during meet-and-confer efforts on this issue, defendant brought up that plaintiff's statement contained both inaccuracies -- contained both inaccuracies and was argumentative but didn't exactly clarify what their

position or what exactly in plaintiff's statement was argumentative or inaccurate. So if defendant makes -- defendant clarifies what their position is on that now, we might be able to respond, but otherwise, we aren't sure exactly what their issue with it is.

**THE COURT:** Okay, and so my issue with the plaintiff's statement is that it is -- first of all, I'm going to be reading this to the jury and there are facts that the plaintiff has to prove that are stated as if they were proved already which I don't think is proper for the Court to do. Usually a statement of the case is maybe one paragraph long and says the plaintiff is X, defendant is Y. Plaintiff is claiming X. Defendant is claiming Y. And it's very short and concise, and is not a narrative.

This one -- yours is less of a narrative than the defense version, but it's still a narrative. It has -- like I said, it has facts that the plaintiff is going to need to -- the plaintiff has the burden of proof on some of these facts and the statement is written as if they've already been proven.

Okay. Is there anything else that you'd like to say before I hear a response from --

**MR. VICTOR:** No, Your Honor. Thank you.

**THE COURT:** Okay, so who's going to respond on behalf of the defendant?

**MS. YEE:** Thank you, Your Honor. Yes, Your Honor.

We're happy to make our version shorter, our statement. But we agree with you that the parties should not include a mischaracterization of the facts or arguments. And we're happy to work with plaintiff to provide a neutral statement.

**THE COURT:** Okay. And, Mr. Victor, would you like to respond?

**MR. VICTOR:** Yeah. Plaintiff, to the extent we need to work with defense counsel and kind of fix the language so it's not necessarily presenting facts as if they're already admitted, but their contentions or any other issues of that nature, we're happy to meet and confer with defendant on that.

**THE COURT:** Okay. And like I said, I -- you know, the statement of the case is not a narrative about -- that even hints at the merits of the case. It just gives the -- so it's designed to give the jury a context for the kinds of questions that I'm going to be asking during voir dire, so they understand if we're asking -- if I'm asking questions about whether or not they've ever owned a business. Have they ever sold a business? Have they ever -- do any of them -- are any of them compensated based on performance incentives, things like that. So that way they know why we're asking those kinds of questions, but not to try to precondition or get the jury thinking about what they think about the merits of the case. Just the subject matter of the case.

**MR. VICTOR:** Understood, Your Honor, and plaintiff is

Case 8:24-cv-01989-MWC-JDE Document 171-1 Filed 05/29/25 Page 65 of 106 Page ID #:7863



happy to meet with defense counsel to work on a revised statement of the case.

**THE COURT:** Okay, and you'll need -- if you're -- I'm sorry, go ahead, Ms. Yee.

**MS. YEE:** Your Honor, there are a couple of things that the parties had previously as you know met and conferred and obviously were not able to agree. So for example, point of included in their statement the breach of contract claim, that's an unplanned claim and then they also include the UCL claim, which is equitable claim, not, you know, proper for the jury. And then they referenced, you know, instead of plaintiff himself, they referenced the Balboa employees as if it's a class action. So those are the things I think we previously talked to plaintiff's counsel, but they did not agree.

**THE COURT:** Okay, so at this point, it's -- I'm not going to ask that you meet and confer over this. I'm going to draft a new statement of the case that I'm going to incorporate into my voir dire. I think that you have better things to do than to meet and confer about this and getting ready for tomorrow, and I frankly don't have time to allow you to do this. It should have been done two months ago. Neither statement is acceptable. So the Court is going to write a statement that is included in its voir dire.

**MR. VICTOR:** Understood, Your Honor. Thank you.

**MS. YEE:** Thank you, Your Honor.

**THE COURT:** Thank you. Okay, anything else?

**MR. SESSIONS:** No, Your Honor, and thank you for giving the associates an opportunity to be heard. I appreciate it.

**THE COURT:** Of course.

**MS. VILLAGOMEZ:** One more item, Your Honor, Stacey Villagomez for plaintiff. Before we came back from break, I provided Ms. Jackson with an updated thumb drive. So hopefully that --

**THE COURT:** I have it here. I haven't tried to download it yet. I will do that as we're talking. Okay. So jury instructions. Let me see if I can open these now. Okay, did everyone receive a copy of the chart that I sent out last week?

**MS. VILLAGOMEZ:** Yes, Your Honor. Plaintiff received it.

**THE COURT:** Okay.

**MS. YEE:** Defendant as well.

**THE COURT:** Okay, so the instructions that I highlighted in yellow are the ones that I think we need to talk about, but if there are others that are not -- either not on the list that I missed or not highlighted, but anyone wants to discuss, feel free to just, you know, interject so that we can talk about them.

So the first one is 1.2, duty of the jury. I'm not

going -- I'm going to give that because I don't give the jury written instructions at the beginning of the case, but I will give 1.3. Is there any objection?

**MS. VILLAGOMEZ:** No objection for plaintiff.

**THE COURT:** Okay, any objection?

**MS. FODE:** None for defense.

**THE COURT:** Okay. Okay, so moving on to 1.5. There were competing versions of 1.5. My tentative is to give plaintiff's version because it's more concise and the parties are going to make your arguments at trial. Any objection from the defense?

**MS. YEE:** Yes, Your Honor. I believe this is the exact same statement that plaintiff included in their neutral statement of case. So in this case, they included the unplanned breach of contract and UCL, as well as referring to Balboa employees instead of himself.

**THE COURT:** Just one moment.

**MS. VILLAGOMEZ:** Your Honor, in response to Ms. Yee, to the extent that plaintiff is able to and is successful in its attempt to amend the pleadings according to proof at trial, then this KC 1.5 as drafted by plaintiff would be the right selection.

**THE COURT:** Okay, so what I'm going to do, I'm going to propose a new 1.5 that tracks the statement of the case that I'm going to read to the jurors tomorrow, and we can talk about

that further when we get closer to instructing the jury. Okay, and I think that brings us to 1.11, which is evidence for a limited purpose. Again, plaintiff's version is more in tune with the model instruction and doesn't reply on the pleadings, and I didn't understand the reference to the complaint. There are several references to the complaint in the jury instructions. The complaint is not going into evidence, so it doesn't really make sense to refer to it. Does anyone want to be heard?

**MS. VILLAGOMEZ:** Plaintiff defers on the tentative.

**MS. FODE:** And yes, we agree that we just reserve the right to give a limit -- to propose to Your Honor a limiting instruction should the evidence provide that we believe it's necessary.

**THE COURT:** Okay, that's fine. Okay. The next one is 2.4, which is judicial notice. Is this contested?

**MS. VILLAGOMEZ:** Your Honor, defendant did not provide a competing instruction.

**THE COURT:** Okay.

**MS. YEE:** Your Honor, I just want to make it clear that we have never received judicial -- request for judicial notice for this trial.

**THE COURT:** Okay.

**MS. YEE:** We're actually confused. Yeah.

**THE COURT:** Yeah, so there are actually, we're about

to get into the land of a lot of these that we may or may not need. But if the Court does take judicial notice, is there any objection to this?

**MS. YEE:** No, Your Honor. I guess it depends on what the document is at the time of the trial.

**THE COURT:** Why would that drive the instruction? The instruction is just to tell the jury what judicial notice is. I'm not asking you to indicate whether or not you object to the Court taking a judicial notice over anything. But if the Court does end up taking judicial notice, is there any objection to giving this instruction?

**MS. YEE:** No, Your Honor. Thank you.

**THE COURT:** Okay. Next is 2.6. I don't understand why we're going to need this. Is there going to be a transcript?

**MS. VILLAGOMEZ:** No, Your Honor. We -- plaintiff offered this jury instruction based on its belief that we might be offering deposition transcript testimony. But we agree to, if the Court is willing, we would like to withdraw our request for KC 2.6, or excuse me, Ninth Circuit 2.6.

**THE COURT:** 2.6. Okay. Okay. Ninth Circuit Instruction 2.14. Is this contested? Okay. I'm not hearing anything, so I'm assuming it's not contested.

**MS. VILLAGOMEZ:** Your Honor, I believe defense proposed a competing instruction.

Case 8:24-cv-01989-MWC-JDE Document 192 Filed 06/02/25 Page 70 of 106 Page ID #:7863



**THE COURT:** Okay. And I think the plaintiff's version tracks the model instruction.

**MS. YEE:** That's fine with us, Your Honor. I believe plaintiff just included the expert's specific names in there, but we're fine with that. Ours is just exactly the same as the template. We did not include the expert's specific names.

**THE COURT:** Okay. 2.17, evidence in electronic format. What are we talking about here? What evidence?

**MS. VILLAGOMEZ:** Your Honor, the evidence that we were referring to would just be the files that were submitted on both.

**THE COURT:** The exhibits?

**MS. VILLAGOMEZ:** Yes.

**THE COURT:** Okay. So no video files, sound recordings, anything like that?

**MS. VILLAGOMEZ:** No, Your Honor.

**THE COURT:** Okay. And how about for the defense?

**MS. YEE:** Same, Your Honor.

**THE COURT:** Okay. So we'll hold on to that one. We'll give it if it's needed, but I don't think it's going to be needed, but you never know. Okay.

Agency. 4.2. And this is kind of related to 4.4, 4.5, 4.8, and 4.10. Everyone agrees that 4.1 should be given; is that correct?

**MS. VILLAGOMEZ:** That's correct.

**MS. YEE:** Yes, Your Honor.

**THE COURT:** Okay. So 4.2, I think that 4.1 adequately covers all of the issues in the remaining instructions in the agency series that will most likely come up in this case. I don't want to dive too deep into the four series because agency really isn't an issue. It's really just a question of instructing the jury about liability of acts that are taken by employees on behalf of their employer; is that right?

**MS. VILLAGOMEZ:** That's correct, Your Honor. We agree with the Court's tentative for the four series.

**THE COURT:** Okay.

**MS. YEE:** We agree as well, Your Honor.

**THE COURT:** Okay. 5.1, damages. So this one, the instruction that the defendant proposed is much too complicated. And I asked that you all meet and confer to propose a new instruction that combines 5.1 and 5.2. Were you able to do that?

**MS. VILLAGOMEZ:** Yes, Your Honor. We met and conferred yesterday and the parties have reached an agreement with respect to the instruction for 5.1 and 5.2.

**THE COURT:** Oh, okay.

**MS. VILLAGOMEZ:** And should we submit that by email or?

**THE COURT:** Yes.

Case 2:24-cv-01989-WLH-JDE Document 171-1 Filed 06/02/25 Page 72 of 106 Page ID #:7868



**MS. VILLAGOMEZ:** Thank you, Your Honor. We'll do that today.

**THE COURT:** Okay. Then 5.3, mitigation of damages. This is proposed by the defendant. What is the plaintiff's objection?

**MS. VILLAGOMEZ:** Your Honor, let me see. We have no objection to this, to 5.3.

**THE COURT:** Okay. And then 5.5 is proposed by plaintiff, but I think it's probably best to give KC-3942 instead. Would you like to be heard?

**MS. VILLAGOMEZ:** Yes, thank you, Your Honor. We do agree that KC-3942 would be workable, Your Honor. However, we note that 3942 is for the second phase of a bifurcated trial. We would propose that in addition to 3942, that the Court provide the instruction of KC-3941 for the first phase of trial.

**THE COURT:** 3941. Just one minute. Any objection to that?

**MS. YEE:** Your Honor, can we see their copy?

**MS. VILLAGOMEZ:** Yes, we have a copy.

**THE COURT:** So 3941 is just the punitive damages instruction that you get in the first phase of a bifurcated trial that gives the jury instructions on making the predicate finding of malice, oppression, or fraud without saying that it's punitive damages.

**MS. FODE:** Perfect. If you would just give us one minute.

**THE COURT:** Sure.

**(Pause)**

**MS. YEE:** Your Honor, we're fine with 3941. I just want to ask that this KC number 201 is included, because it talks about a highly probable, clear and convincing proof standard.

**THE COURT:** KC 201?

**MR. YEE:** Correct.

**THE COURT:** And the objection to that?

**MS. VILLAGOMEZ:** Your Honor, I'll have to review KC 201.

**THE COURT:** I couldn't hear you.

**MS. VILLAGOMEZ:** I'm sorry, Your Honor. If I may just review KC 201.

**THE COURT:** Yes, KC 201 is highly probable, clear and convincing proof.

**MS. VILLAGOMEZ:** Yes, Your Honor, we're okay with that proposal.

**THE COURT:** Okay. Okay. The next is -- okay, so let's go to the special instructions. My understanding is plaintiff has one special proposed instruction, and defendant had seven; is that right? Did I get them all?

**MS. VILLAGOMEZ:** That's correct, Your Honor.

**MS. YEE:** Correct, Your Honor.

**THE COURT:** Okay, I just wanted to make sure, because especially with respect to the defendants, most of these are not included in your index. I saw them when I was going through the physical copies of your instructions, so I wanted to make sure I got everything.

So let's start with the plaintiff's, which is plaintiff's special instruction 20, interpretation rule against surplusage. My tentative is to hold that one, because it is my understanding that the plaintiff intends to make a motion to amend to conform to proof during trial.

**MS. VILLAGOMEZ:** That's correct, Your Honor. We agree with the Court's tentative.

**THE COURT:** Okay. Would defendant like to be heard?

**MS. YEE:** Yes, Your Honor, if we may have a chance to briefly discuss the basis for plaintiff to amend it under 15(b). We'd like to be heard on that issue in terms of the -- in connection with the breach of contract.

**THE COURT:** Now?

**MS. YEE:** If Your Honor allows us to address the issue.

**THE COURT:** There's no evidence right now. What she's proposing is that depending on how the evidence comes in that there may be a motion to amend to conform to proof, but right now I don't have any evidence, so there's no motion

pending.

**MS. YEE:** Your Honor, if I may just briefly, there's no case law that supports what plaintiff is trying to do here when, you know, including a brand new claim at this, you know, time right before trial. There's only one case in Central District where the judge only allowed it because the parties stipulated. There are no other cases addressing this issue, so this would be creating the new law. And we're happy to do further briefing on this issue.

**THE COURT:** I don't need briefing, but I also don't need argument right now, but will -- Mr. Sessions, I saw that you stood up, so I will let you respond very briefly but there's nothing before the Court for me to make a ruling on.

**MR. SESSIONS:** Your Honor stole my words, so that's all I was going to say.

**THE COURT:** Okay. Let's move to defendant special instruction 1, when incentive compensation becomes wages. My tentative was to not give this one because it's going to be covered in the modified CACI 2700. Would you like to be heard?

**(Pause)**

**THE COURT:** Is there any -- would you like to be heard? Okay. I'm going to refuse that one then. Let's go to No. 2, causation between whistleblowing and termination. This one my tentative is to refuse because it is argumentative. Would you like to be heard?

**MS. VILLAGOMEZ:** The plaintiff defers on the tentative, thank you.

**MS. YEE:** Your Honor, sorry, just give me a second.

Your Honor, this issue was not addressed in the model template, which is why we're including a causation between the whistleblowing and termination.

**THE COURT:** I understand. My tentative is to refuse it because it's argumentative. Did you get the tentative rulings?

**MS. YEE:** Yes, Your Honor.

**THE COURT:** Okay. So I need to address what the Court has indicated is the tentative.

**MS. YEE:** Your Honor, I believe that your order stated that -- Your Honor, we can make it neutral instead of argumentative.

**THE COURT:** I don't have it in front of me. I don't -- again, there's nothing before me other than the instruction that was submitted, so that one is refused.

No. 3, complaints about internal personnel matters are not protected activity. And this actually goes to the same response to this one. Defendant's No. 4 complaints about contract are not protected activity. Defendant's 5, complaints about accounting methods are not protected activity. And No. 6, wrongful discharge in public -- in violation of public policy violation of law, I -- this one is related to CACI 2430

I think and the CACI instructions are tethered to the state law claims.

I asked that counsel be prepared to present argument on this instruction, especially in light of the California law that states that in order for something to be a violation of public policy, it needs to go against either statutory or constitutional provisions.

I'm not inclined to give the defendant's special instructions, but I do want to talk about CACI 2430 because it raises the same issues. So let's turn our attention to 2430 and I want to hear first from plaintiff's counsel.

**MS. VILLAGOMEZ:** Thank you, Your Honor. Plaintiff appreciates the Court's tentative and we have reviewed Gould (phonetic). Gould expressly recognizes that California's wage payment laws embodies a fundamental public policy. On page 1147 of that case it provides that public policy has a long favored the full and prompt payment of wages due to an employee and it is essential to the public welfare that he receive his pay promptly.

It further recognizes that wrongful termination claims based on complaints regarding unpaid wage compensation satisfies the elements for a wrongful termination in violation of public policy.

The proposed jury instruction 2430 that plaintiff has offered, we're not particularly wedded to this version of the

facts and we understand that the Court wants the instruction to expressly identify the statutory source of the public policy as reflected in Gould. In order to accommodate that, we would propose just a single sentence after the first one so that the first two sentences state in full, Byrne claims he was discharged from employment for reasons that violate a public policy and this is the new edition, California has a fundamental public policy delineated and statutory provisions governing the payment of earned wages to employees, including the prompt payment of wages due employees.

That single sentence would address the Court's concern with respect to Gould and the remaining framework with respect to CACI 2430 would be maintained.

**THE COURT:** Thank you. Defense? Ms. Yee?

**MS. YEE:** Your Honor, we agree that, you know, is your order that the public policy must be specifically identified, so we're happy to review plaintiff's new version which we have not received. But if that -- you know, if they identify the specific Gould section as to underlying policy we're fine with that in general.

**MS. FODE:** And just also to specify I think. Where a little bit of the confusion is, is we agree that's well established law that a Tameny claim can be based on a labor code violation; however, here we are arguing and we need our instructions to be clear that there is no case law and no legal

authority to support that a discretionary incentive plan would fall under the labor code.

So this is an issue of new fact, I mean, of new law, that we need to make sure is clear in the instructions and I appreciate we're trying to use the CACIs for the consistency, but we can agree if they want to propose something, we can look at that and we agree that -- with you with Gould, but we need to be clear that this case first they have to find that it falls within -- the jury's going to have to find that the facts and evidence support that it falls under the labor code to begin with.

**THE COURT:** Well, I'm not sure I agree with you that it doesn't fall under the labor code because the labor code defines wages in a very, very broad sense. And wages can include bonuses and things of that nature.

So I don't think that it's clear that this incentive plan doesn't fall under the labor code, but it is included in wages.

**MS. FODE:** And, Your Honor, respectfully this is our position that we disagree that there -- and I've done employment law for a long time and it has evolved. And I agree, I will agree that the labor code is broadly construed. However, it has to be reasonably ascertainable, Your Honor, it cannot be something that is tied to one year they do this, one year they do that, there's no case law and we stretched for a

year and a half there's no case law that supports that.

So I just want to make sure the record is clear that we respectfully disagree and we're not trying to put things in the CACIs that are extra, but I think here that there will be prejudice and confusion if the jury doesn't understand that that is a threshold that we believe on the defense that needs to be met.

**THE COURT:** Thank you. Would you like to respond?

**MS. VILLAGOMEZ:** Thank you, Your Honor. Again, we are just concerned -- discussing CACI 2430 which concerns wrongful discharge and violation of public policy. As the Court has stated, labor Code 200 is very clear that all amounts for labor performed by employees, whether fixed or ascertained by the standard of time, task, piece and commission or other method of calculation constitutes wages.

Shacter v Citigroup (phonetic), in that case the California Supreme Court, excuse me, defined wages broadly to include incentive compensation, such as bonuses and profit sharing. For that reason, Your Honor, there's no -- and many cases that I'm happy to cite, there's no dispute here with respect to incentive compensation as bonuses.

And the proposed 24 -- CACI 2430 that defendant had offered is far too argumentative, cumbersome and risks confusing the jury. It also collapses labor Code Section 1102.5 into this wrongful discharge and violation of public

policy incorrectly.

We would offer my proposed revision which I will be meeting and conferring with opposing counsel on, would be to just add that single sentence after the first sentence in plaintiff's proposed version to resolve the Court's concerns.

**THE COURT:** Okay. So if you could give your new proposed version to defense counsel, as well as e-mail it to the Court, then we can reconvene and talk about this particular instruction and others at another time, after everyone has had a chance to review it.

**MS. VILLAGOMEZ:** Thank you, we'll do.

**MS. FODE:** Thank you.

**THE COURT:** Okay. And then the last special instruction is defendant's instruction No. 7, no breach of contract claim. In my tentative as I indicated was to refuse this instruction because the jury is going to be instructed that the only law it is to consider is the law given and the instructions from the Court. And if there is -- if the Court -- if there's no motion or the Court denies the motion to amend to conform to proof, then there will be no breach of contract instructions that will be given to the jury.

**MS. YEE:** That's fine, Your Honor.

**MS. VILLAGOMEZ:** I'm sorry, plaintiff defers on the tentative, thank you.

**THE COURT:** Okay. Thank you.

Case 8:24-cv-01989-MWC-JDE Document 171 Filed 04/29/25 Page 82 of 106 Page ID #:7189



Okay. So that brings up the CACIs. Okay. Starting with CACI 107, this is duplicative of the model instruction 1.14, so I'm not inclined to include it. Would the defense like to be heard?

**MS. YEE:** That's fine with us, Your Honor, agreed.

**THE COURT:** Okay. 109, removal of claims or parties. I don't think any of this applies to this case, does it?

**MS. VILLAGOMEZ:** Stacy Villagomez for plaintiff, no, it does not apply, Your Honor.

**MS. YEE:** We would submit to the tentative.

**THE COURT:** Okay. Service provider for a juror with a disability has been requested by defendant. I don't think we're going to need it, but I'm fine with giving it, is there any objection from the plaintiff?

**MS. VILLAGOMEZ:** No objection.

**THE COURT:** Okay. Bias, CACI 113 was offered by the defendant, is there any objection to using this?

**MS. VILLAGOMEZ:** No objection, Your Honor.

**THE COURT:** Okay. Personal pronouns. This is also requested by the defendant. Which party, witness or attorney does this instruction refer to?

**MS. YEE:** Your Honor, we don't have a specific issue with this, we just put it there because just as needed. We don't have any issue if we don't use it at this time.

**THE COURT:** So I need to know so that way we know how

Case 2:24-cv-01989-WLH-DFM Document 191 Filed 06/02/25 Page 83 of 106 Page ID #:7879



to properly address people. So if there's no -- from the defense perspective no party or witness or attorney, I need to be aware of being sensitive about personal pronouns.

**MS. YEE:** Correct, Your Honor.

**THE COURT:** Okay. And from the plaintiff's perspective?

**MS. VILLAGOMEZ:** No, Your Honor, we don't believe this applies.

**THE COURT:** Okay. And we talked about on evidence instruction 201, highly probable, clear and convincing proof. Both sides agree that we should use that in conjunction with the other punitive damages instruction.

**MS. VILLAGOMEZ:** I'm sorry, Your Honor.

**THE COURT:** We just talked about this about ten minutes ago. It wasn't proposed by either party, but when we were having our conversation about the punitive damages instruction it was requested by defense to also include CACI 201. And I think everyone agreed.

**MS. VILLAGOMEZ:** Yes, plaintiff agrees.

**THE COURT:** Okay.

**MS. YEE:** Yes, Your Honor.

**THE COURT:** Okay. Breach of contract, this one I know we talked about this at the final pretrial conference and I could not remember what our conversation was. So is the plaintiff still asking for two separate instructions on this?

**MS. VILLAGOMEZ:** No, Your Honor. The issue is submitting to version 300, it was just that plaintiff was unsure how the Court would rule with respect to the 2024 cash award, so we broke that out into a separate instruction, but we addressed this at the final pretrial conference and plaintiff is agreeable to adding the years 2022, 2023 and 2024 into CACI instruction 300.

**THE COURT:** Okay. Any objection from the defense?

**MS. YEE:** Your Honor, the tentative is you simply hold it for now --

**THE COURT:** I'm sorry, I can't hear you.

**MS. YEE:** Your Honor, if the tentative is to simply hold on this and for the Court to make a decision at trial, that's fine with us.

**THE COURT:** Okay. So we'll talk about that as the trial progresses. Is the same with CACI 303, breach of contract, essential factual elements. My tentative was to hold until we know whether or not there's going to be an amendment to conform to proof, is that acceptable to plaintiff?

**MS. VILLAGOMEZ:** Yes, Your Honor, for the entire 300 series, the plaintiff defers on the tentatives.

**THE COURT:** Okay. And defense, on the 300 series?

**MS. YEE:** Your Honor, we would just reserve our objections.

**THE COURT:** Right. So there are --

Case 8:24-cv-01989-MWC-JDE Document 171-1 Filed 05/29/25 Page 85 of 106 Page ID #:7833



**MS. YEE:** But we're fine with your tentative.

**THE COURT:** Okay. The tentative is -- I don't even think that -- again, it's not properly before the Court because right now there's no breach of contract claim in the case.

**MS. YEE:** Understood, Your Honor, thank you.

**THE COURT:** So we'll just hold onto that and address them if they're needed. So the same is true for 355. Okay. That brings us to 2400 I believe, is that --

**MS. YEE:** Your Honor, there's 2400, I believe on your order.

**THE COURT:** 2400, yes. So what -- so defendant's instruction deletes the second half of the CACI, why?

**MS. YEE:** Your Honor, we've already discussed internally, we're fine with using the CACI in full.

**THE COURT:** Okay. Any objection from plaintiff?

**MS. VILLAGOMEZ:** Yes, Your Honor, plaintiff objects to CACI 2400 as inapplicable legally to this case. CACI 2400 concerns labor code Section 2922 which provides that employment is at will to the extent that the employee's term is unspecified.

In this case, Mr. Byrne's employment was for a specified term ending December 31st, 2024 with automatic renewal periods thereafter. Therefore, under California law and specifically labor Code Section 2922 his employment was not at will.

If we were to provide this instruction to the Court it would be a misrepresentation of his employment and confuse the jury with respect to the employer's ability to terminate him, quote at will.

**THE COURT:** Okay. Ms. Yee, would you like to respond?

**MS. YEE:** Yes, Your Honor, it's clear in his policy and in his employment agreement that he is -- in written an at will employee. And we also included this as part of the record in our MSJ and they never objected to it.

**MS. VILLAGOMEZ:** Your Honor, if I may.

**THE COURT:** Just one second, I'm trying to wrap my head around what I just heard.

Ms. Yee, are you saying that there is a contract here?

**MS. YEE:** In his employment agreement and also in company policies it's specified that he is an at will employee.

**THE COURT:** Okay. Go ahead.

**MS. VILLAGOMEZ:** Your Honor, that's a misrepresentation. Section 5.1 of his employment agreement provides that he may be terminated with or without cause upon written notice, but that does not mean that his employment is at all.

**THE COURT:** Was his employment for a specified term?

**MS. VILLAGOMEZ:** It was, Your Honor, ending December

31st, 2024, it was a three year term.

**THE COURT:** Okay. Ms. Yee?

**MS. YEE:** Your Honor, it says without cause, that means it is at will.

**THE COURT:** Well, this instruction applies to a contract or an employment agreement of an unspecified term. This one has a specified term.

**MS. YEE:** Your Honor, may I please confer with my colleague?

**THE COURT:** Yes.

**(Pause)**

**MS. FODE:** Just to clarify the state of the law, as I know it. Even if you have an employment agreement if it has an express at will clause in it that overrides any sort of implied covenant of good faith and fair dealing or anything under Guz (phonetic). And so you -- he has both. He's an express at will employee. He has a contract for a period of a certain time, which could be terminated at any time for any reason, so the two are not mutually exclusive.

**THE COURT:** But that's not what we have here. What we have here is a contract for a specified term, which is why 2400 doesn't apply. And 2400 is just a description of the at will presumption. It doesn't -- we're kind of mixing apples and oranges here.

The reason that this instruction is here to give the

jury guidance about the at will presumption concerning employment agreements for an unspecified term. This is a specified term. So that's why I don't think that 2400 applies.

**MS. FODE:** And, Your Honor, there's -- that's the option that we get under the CACIs, it doesn't -- I agree, it doesn't fit specifically, it's like a round peg in a square hole, but that is the CACI and we wanted to defer to the Court's preference to use the CACIs. And we -- it's important on the defense in any employment case that, you know, if there is the at will presumption that that is given to the jury.

So if the Judge would -- I know you don't want us to put us in a special, but I would propose then we put in a special if we have a problem with including the specific language that CACI provides to us. But he was an express at will agreement and frankly this is the first time, you know, we briefed, we had so many motions for summary judgment and this is the first time that I'm hearing an argument that he's not an at will employee.

So I would appreciate that we're allowed to reserve that right and provide a special limited to that provision.

**THE COURT:** Okay.

**MS. VILLAGOMEZ:** And thank you, Your Honor, I maintain my arguments that CACI 2400 does not comply, but to the extent the Court wishes to submit this instruction we would offer to the Court that the version that defendant had

submitted is not an accurate representation of CACI because it eliminates the word for any lawful reason or no reason at all with respect to at will employment.

The directions for use in this CACI 2400 specifically states that to the extent this instruction is provided for a claim for wrongful termination, then the word lawful should be included to avoid confusing the jury.

**THE COURT:** Okay. So we'll hang on to this one. I don't think 2400 applies because we are talking about a specified term. No one has asked for 2420, 2421, which is 2420 is breach of employment contract specified term, essential factual elements. 2421 is breach of employment contract, specified term, good cause defense, labor Code Section 2924.

2422 is breach of employment contract, specified term damages. I'm going to ask that in addition to the meeting and conferring about all the other things that we've talked about and in particular, the breach of contract and the -- any breach of contract claim that you talk about these as well because I do think that the two sides are talking past each other. But really maybe it's a case of using 2404, 05 and 06 instead of the breach of contract and the 2400. But I need you to talk about that.

**MS. VILLAGOMEZ:** Will do, Your Honor, thank you.

**MS. FODE:** Understood, thank you.

**THE COURT:** Okay. 2430 we talked about already.

2506 is the next one, this is a FEHA instruction. There is no FEHA claim in this case.

**MS. FODE:** Your Honor, thank you for raising your question and concern in advance. Again, this is a situation where this is where the CACI puts and they put it in the section that relates to FEHA claims. However, case law supports that after acquired evidence defense may be raised outside the FEHA context.

And in specific, there's a case that actually my firm worked on, Betoki v Allstate Insurance (phonetic) case. It specifically says an employer may exercise, and after acquired evidence defense in response to a wrongful termination cause of action. And there's case law on that.

So again, I agree with you that's not a FEHA claim, but this is where the CACI places it. If it would be less confusing for the jurors, we will welcome a special on that to put it in a different section, but it is allowed under a wrongful term cause of action.

**THE COURT:** Okay.

**MS. VILLAGOMEZ:** Thank you, Your Honor. We do agree with defense counsel that after acquired evidence does apply to wrongful termination in violation of public policy claims; however, we do not agree to section -- excuse me, CACI 2506 as defendant has drafted it for the insertions that were provided for the language is extremely argumentative and prejudicial and

not drafted in a neutral fashion.

For example, it states that Byrne sent without permission hundreds of Ameris documents consisting of thousands of pages of confidential and sensitive client business and employee information belonging to Ameris from his Ameris e-mail account to his personal e-mail account in violation of Ameris policies.

This is far too argumentative for purposes of a jury instruction. And to the extent the Court wishes to offer CACI 2506 we would request that much more neutral version of this instruction be given.

**THE COURT:** Okay. Can you redraft this because it is extremely argumentative?

**MS. FODE:** Certainly.

**THE COURT:** Okay. So you'll redraft and meet and confer and we'll talk about it later, but it sounds like there's agreement that an after acquired evidence instruction would be appropriate.

Okay. Now we're in the labor Code Section 2700. So this is an area where -- and I suspect that the plaintiff's case -- the defendant is defending a case that's not being brought by the plaintiff. So -- and this is where I think the two sides are speaking past each other.

My understanding is that that the plaintiff is seeking pre-2024 LTIP awards; is that correct?

**MS. VILLAGOMEZ:** That is correct for its nonpayment of wages claim.

**THE COURT:** Nonpayment of wages. So this one, as you saw in the chart, my tentative is to give plaintiff's version but the instruction needs to be edited to make it clear what the plaintiff is seeking. Would the defense like to be heard?

**MS. YEE:** Yes, Your Honor. Your Honor, first of all I want to read the reason we didn't ask basically to discuss special No. 1 is because your order says that that issue should be covered in the modified CACI 2700, so that's why I have a note here to address that particular issue, but we agree with the Court that plaintiff must limit the instruction to make clear that only 2022 and 2023 LTIP are included for alleged damages.

And in order to include and explain to the jury the significance of the out of issue versus just traditional wages, which is why, you know, we're -- our instructions, our language is in the special No. 1 should be included just as you ordered in the chart.

**THE COURT:** Okay. Would you like to respond?

**MS. VILLAGOMEZ:** Yes, thank you, Your Honor. We agree to modify plaintiff's version of CACI 2700 to seek only pre-2024 nonpayment of wages; however, just to be clear, we're reserving our rights to present evidence concerning 2024 LTIP damages, to the extent they're relevant to existing causes of

action or any causes of action that will be added following our motion for leave.

**THE COURT:** Okay. So you'll -- you're going to edit this and then give another draft to the defense and the Court and meet and confer and then we'll talk about it?

**MS. VILLAGOMEZ:** Yes, Your Honor, that's correct. And just to be clear, the Court's tentative is to give plaintiff's version and that is the version that we will propose for the reasons that I discussed for the prior instruction, defendant's version was too complicated, so I will just be redlining the version that you approved.

**THE COURT:** Okay. The next is 2704, waiting time penalty for nonpayment of wages. Again, I think the parties are speaking past each other concerning what the nature of this case is about. My tentative is to give the plaintiff's version of this instruction, edited to mirror the CACI because it doesn't mirror CACI right now.

**MS. VILLAGOMEZ:** We defer on the tentative.

**THE COURT:** Okay. And would the defense like to be heard?

**MS. YEE:** Your Honor, we're fine with the CACI. If it's going to mirror CACI, we would simply add that -- I believe the only difference that we added in our version is to include the good faith dispute. There's case law involved -- case law included under the CACI, we'd like, you know, counsel

to include that section.

**THE COURT:** That's why I want -- I suggested that everyone take a look at 2420, 21 and 22 because 2421 talks about the good cause or good faith defense, and so that's -- there's a reason to wrap all this up together in a way that's consistent with both parties' version of the case.

**MS. YEE:** Sounds good, thank you, Your Honor.

**THE COURT:** Let's see. Okay. I think that brings us to 3963 if I'm not mistaken.

**MS. VILLAGOMEZ:** That's correct.

**THE COURT:** So this one is requested by the defendant, it's 3963, is affirmative defense, employee's duty to mitigate damages. My tentative is to refuse this one because it's duplicative of model instruction 5.3. Would you like to be heard?

**MS. YEE:** Your Honor, we're fine with the model instruction 5.3.

**THE COURT:** Okay. Then that brings us 4603. This one, this is the whistleblower protection section. I note that there are competing versions. My tentative is to give plaintiff's version but edited to mirror the CACI.

**MS. VILLAGOMEZ:** Plaintiff defers on the tentative.

**THE COURT:** Anything from the defense?

**MS. YEE:** Your Honor, I want to seek a clarification. I believe your order when you addressed our special

instructions you have them, comment, as see comment to CACI 2430 limiting to special instruction 225, but 225 relates to the whistleblower instructions. So I just want to clarify.

**THE COURT:** I'm sorry, say that again.

**MS. YEE:** So your special -- your order noted that see comment to CACI 2430 under special instructions --

**THE COURT:** Uh-huh.

**MS. YEE:** -- Nos. 225. So I'm seeking clarification to see if the Court meant to discuss those special instructions under whistleblower protection versus wrongful discharge.

**MS. VILLAGOMEZ:** Your Honor, I'm not seeing that the tentative ruling references CACI 2430 with respect to the whistleblower protection instructions.

**THE COURT:** I don't think it does either. Ms. Yee, can you please point me in the right -- maybe it's getting too late in the morning, but if you could point me in the right direction.

**MS. YEE:** Your Honor, if you go to the special instructions under defendant's special instructions 225, it has a comment that says, see comment to CACI 2430. But 2430 refers to -- is a wrongful discharge.

**THE COURT:** Right, because all of those instructions go to the wrongful discharge in violation of public policy issue.

**MS. YEE:** Your Honor, our special instructions I

believe 325 are related to the whistleblower protected activity.

**THE COURT:** Okay. So what is your -- do you have a question? I don't understand what you're asking.

**MS. YEE:** So, yes, my understanding is are we going to address these special instructions under 4603, whistleblower protection?

**THE COURT:** No, because we've already addressed them, but we can if you have other questions that you wanted to raise we can. Let's stick to where we first and then we'll come back to what you just raised.

**MS. YEE:** Sounds good, thank you, Your Honor.

**THE COURT:** Okay. So with respect to CACI 4604, same decision. This one was proposed by the defendant and my tentative was to give this instruction but edit it to mirror the CACI, because it also does not mirror the CACI. Any objection from plaintiff?

**MS. VILLAGOMEZ:** No objection.

**THE COURT:** Okay. So we'll -- so I'm going to ask the defendant to redraft that instruction so that it mirrors the CACI. And we'll go back to defendant's special instructions 3, 4 and 5. Again, I don't -- I think the way these are written I don't think they're written to actually fit the facts of this case. Would plaintiff like to be heard?

**MS. VILLAGOMEZ:** Your Honor, we defer on the Court's

tentative with respect to all of defendant's special instructions and as we had discussed I will be proposing a revised CACI 2430 that will address all of these special instructions from defendant.

**THE COURT:** Okay. So, Ms. Yee, I think -- I mean, there's a little bit of conflation going on here because with respect to defendant's instructions 3, 4, and 5 those are focused on the substance of the complaint and the whistleblower statute doesn't really focus on the substance of the complaint but who the complaint is made to.

**MS. YEE:** Your Honor, these instructions are special instructions are designed to discuss the nature of the complaint.

**THE COURT:** I know. That's not what the law is.

**MS. YEE:** Your Honor, and these instructions were drafted based on case law because plaintiff's complaints here and especially unique for whistleblower is it needs to be a violation of the law, which plaintiff's complaints are not. And therefore, we think it's --

**THE COURT:** It doesn't necessarily need to be a violation of the law. If the person makes the complaint to the right person or the right government entity or person, then it doesn't matter whether it's illegal. If unlawful or retaliatory action is taken against that person for making that complaint, then the whistleblower statute applies.

**MS. YEE:** Your Honor, we respectfully disagree and then these instructions also goes to whether they are protected activity. And again, we drafted this based on case law, which we included in our specials and we'd like Your Honor to reconsider.

**THE COURT:** Okay. I understand what you're saying but what you just said actually underscores what I just said is basically if you take out the subject matter references, these three instructions basically say complaints are not protected activity and that's an incorrect statement of the law.

**MS. YEE:** Your Honor, again, not to be argumentative, Your Honor, but I think these special instructions focused on the nature of those complaints. These complaints, for example, if they're talking about internal personnel matters and it's not a complaint, that's protected under the whistleblower statute. Same thing as to, you know, if they're talking about a dispute regarding the contract or the contract terms and that in itself is not a protected activity.

**THE COURT:** Ms. Villagomez, would you like to respond?

**MS. VILLAGOMEZ:** Your Honor, we defer on the tentative again and we do believe that the revised CACI 2430 as I had discussed with the Court earlier would satisfy all of these proposed special instructions from defendant.

**THE COURT:** Okay. So the tentative is still

effective. I'm not inclined to give defendant's special instructions 3, 4 and 5 as drafted, but if you want to draft -- right now they're an incorrect statement of the law. If there are -- if you want to redraft it and we can revisit it after we talk about the CACIs with respect to the public policy instruction, then we can revisit it.

**MS. YEE:** Sounds good, thank you, Your Honor.

**THE COURT:** Thank you. Okay. And the last one is CACI 5030, which is implicit or unconscious vias. This was proposed by the defendant, are there any objections to this?

**MS. VILLAGOMEZ:** I have no objections, thank you.

**THE COURT:** Okay. So we'll go ahead and give that one. And I think that covers all of the instructions unless I missed something.

**MS. VILLAGOMEZ:** Not from plaintiff, Your Honor, thank you.

**MS. YEE:** Your Honor, I believe there's one missing from our disputed list, which is CACI 2507, substantial motivating reason. I don't believe the Court ruled on this one.

**THE COURT:** I'm sorry, which number?

**MS. YEE:** 2507.

**THE COURT:** 2507. I didn't see that that was proposed.

**MS. VILLAGOMEZ:** Your Honor, that's not in

defendant's index of disputed --

**THE COURT:** Right --

**MS. VILLAGOMEZ:** -- jury instructions.

**THE COURT:** -- you didn't propose that one.

**MS. YEE:** Your Honor, this one's related to 2430, it's a definition.

**THE COURT:** Okay. But what I'm saying is it wasn't -- you didn't -- it's not a proposed instruction. No one proposed this one.

**MS. YEE:** Your Honor, we're going to check and let you know after the break if we may.

**THE COURT:** Okay. So it's five minutes after 12. I'm going to let everybody go for lunch. I don't think I need to have you come back this afternoon unless you want to come back.

**MR. SESSIONS:** Your Honor, if -- and I'm sure defense might appreciate the same courtesy, if we could have one minute just to confer with our teams to see if there's anything left to address.

**THE COURT:** Sure. If you want to take the lunch hour to talk about it and come back at 1:30, I'm fine with you coming back and saying, nope, we don't have anything else and let you go.

**MR. SESSIONS:** I wouldn't want to do that to the Court or the court reporter, Your Honor, I --

**MS. FODE:** And I think we're good, Your Honor, and I appreciate the quickness and your preparation to make it go so quickly, so we're -- so unless plaintiff needs something, we're fine to do that and get ready for tomorrow.

**MR. SESSIONS:** Just one thing that we think could be addressed super quick, Your Honor.

**MS. VILLAGOMEZ:** Your Honor, you'll recall at the final pretrial conference, the Court had ordered that punitive damages by bifurcated at the end of the trial to the extent liability is found. We, as part of that discussion, the Court had advised that plaintiff is entitled to additional discovery to support its punitive claims.

On the same day of the final pretrial conference we e-mailed opposing counsel requesting that they identify a witness and produce documents relevant to support its financial wherewithal to pay punitive damages. Despite at least two requests with respect to that information, we still to date have not received that information and we would request an order from the Court that that information be provided promptly so that we can prepare by -- for that phase of trial, to the extent it becomes necessary.

**THE COURT:** Okay.

**MS. FODE:** And Your Honor's ruling, which we went back and reread was that we need to make sure that if punitives -- if malice found and oppression is provided by the jury, that

the punitive damages phase would proceed immediately. And we heard you, and we're absolutely prepared for that to happen. We did not read that that we have to provide financial information that was not provided in the discovery phase now before trial. We will get it to opposing counsel and we said we're happy to work out a schedule, but we didn't take that as we need to provide that right now when we're going into the liability phase. We will have a witness and we will have that prepared and can give to them in advance so they can prepare their questioning, if they need -- if we so move in that direction.

**THE COURT:** Okay. I do think that you need to, at the very least identify who the witness is going to be.

**MS. FODE:** Okay.

**THE COURT:** And I remember that at the final pretrial conference that the defense was going to provide that information in advance to the plaintiff because that was the reason I mentioned it, was that we'll go immediately from when the jury reaches a verdict if they make the punitive damages findings, we're going to start immediately. So there would be no time for you to identify and then produce documents later.

**MS. FODE:** Yes, and I agree I just didn't think it was it at the beginning of the case, I thought we would provide it in the middle of the case just because we're working on other things right now. I can provide the witness right now,

it'll be the CFO Nicole Stokes who will be available. So I can provide that and I'm not -- no gamesmanship, we were just focused on other things and are happy to provide that to them , you know, when we're in trial.

We didn't understand the importance and I guess there is some concern, because the newly added documents to the list which are financial in nature on the meet and confer, counsel didn't say this was for the bifurcation phase, said we're not -- they could be for either phase. So we are a bit leery that the bifurcated issues, the financial statute, the finances and the worth of the bank will come by a slip or something during the initial phase and -- but we are happy to provide it in a couple of days in advance, that's not a problem.

**THE COURT:** Okay. So I can assure you that I keep a really tight rein on -- especially because you can't see it, but each of the jurors has a screen in front of them, so if you're -- so we keep a very tight rein on publishing documents.

I know there's a way for us to let the attorneys and the court staff and the witness see documents before they're published to the jury. We're not going to let that happen. So if someone is questioning about a document that has financial information on it and there is an objection to admitting that document, it's not coming into evidence at that stage, at least not in that form. So I'm pretty vigilant about doing that.

**MS. FODE:** Thank you.

**THE COURT:** What is the plaintiff's request in terms of getting any financial documents in advance?

**MR. SESSIONS:** Well, Your Honor, as of right now, to be candid we do have handy, which was discussed this morning, we -- you know, we have plaintiff's -- I'm sorry, defendant Ameris Bank's 10-Qs, their SEC filings, which we do believe contains a lot of financial status information in it. We have asked defendant if they have any additional documents that they're willing to provide and to that they have not responded. But, you know, to the extent that there is anything else, we would appreciate that as was discussed at the final pretrial conference, but it may be that if there's nothing else, then we just stick with the SEC filings.

**THE COURT:** Okay. How about this? This is a proposal. That after the plaintiff rests and after any motions, assuming that the case goes forward into the defense case that the defense provide any documents that are going to be responsive to financial condition at the beginning of its case in chief just to the plaintiff, not to be admitted, not to be used in cross-examination or in rebuttal, but specifically for the purpose of having it for the second phase if we get there.

**MR. SESSIONS:** Yes, Your Honor, that makes sense. And if I may recant my last statement, I -- now I'm thinking back as we discussed this internally I do believe the documents

Case 8:24-cv-01989-WLH-JDE Document 27 Filed 06/26/25 Page 105 of 106 Page ID #:1212



we currently have probably are not sufficient, so we would appreciate that opportunity at that time to receive additional documents.

**THE COURT:** Is that proposal acceptable to the defense?

**MS. FODE:** That was what I was thinking, so that's great for us.

**THE COURT:** Okay. Trying to balance all of the interests. Okay. All right. So do you want to break for the day or do you just want to break for lunch and come back at 1:30?

**MR. SESSIONS:** We're good breaking for the day.

**THE COURT:** Okay.

**MS. FODE:** Yes, thank you, same here.

**MR. SESSIONS:** Your Honor, and I know Your Honor has not had a chance to check if the new thumb drive we provided works, but we are around and at the Court's convenience if they don't work, we're willing to come back and try to sort it out.

**THE COURT:** Okay. Thank you.

**MR. SESSIONS:** Apologies for that.

**THE COURT:** Like I said, technology is wonderful when it works.

**MR. SESSIONS:** When it works.

**THE COURT:** Okay.

**MS. VILLAGOMEZ:** Thank you.

Case 8:24-cv-01989-MWC-JDE Document 171-1 Filed 06/02/26 Page 106 of 106 Page ID #:7902



**THE COURT:** Thank you all very much.

**THE CLERK:** All rise. This court is adjourned.

**(Proceedings concluded at 12:12 p.m.)**

* * * * *

## CERTIFICATION

**I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.**

**June 2, 2026**

**Signed** **Dated**

***TONI HUDSON, TRANSCRIBER***