Johanna Schiavoni (SBN 248501)
johanna.schiavoni@calg.com
Michael von Loewenfeldt (SBN 178665)
michael.vonloewenfeldt@calg.com
Jessica M. Weisel (SBN 174809)
jessica.weisel@calg.com
**COMPLEX APPELLATE LITIGATION GROUP LLP**
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (213) 878-0404
Facsimile: (415) 726-2527

Stacy L. Fode, Esq. (SBN 199883)
sfode@nfclegal.com
Nana J. Yee, Esq. (SBN 272783)
nyee@nfclegal.com
**NUKK-FREEMAN & CERRA, P.C.**
550 West C Street, Suite 910
San Diego, California 92101
Telephone: (619) 292-0515
Facsimile: (619) 566-4741

Attorneys for Defendant
AMERIS BANK

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PATRICK BYRNE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>AMERIS BANK, a Georgia corporation,<br><br>Defendant. | Case No.: 8:24-cv-01989-MWC-JDE<br><br>**REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(b)**<br><br>Date: October 23, 2026<br>Time: 1:30 p.m.<br>Dept.: 6A<br><br>Hon. Michelle Williams Court |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii
INTRODUCTION ..... 1
ARGUMENT ..... 1
I. Ameris Preserved Its Rule 50(b) Arguments ..... 1
II. The Agreements Do Not Guarantee Plaintiff a 62.54% LTIP Share ..... 4
III. The Disputed LTIP Cost Categories in the JMOL Present Issues of Interpretation that Ameris Had Sole Authority to Resolve ..... 5
IV. Ameris Had Authority to Deny Plaintiff a Bonus for 2024 ..... 9
V. The Award of Future Economic Damages is Plain Error ..... 9
CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

***Cases***

*Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696 (2017)....9, 10, 11

*Citri-Lite Co. v. Cott Beverages, Inc.*, 721 F. Supp. 2d 912 (E.D. Cal. 2010)....12

*City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375 (2008)....6

*Dupree v. Younger*, 598 U.S. 729 (2023)....3

*Est. of Aguirre v. County of Riverside*, 131 F.4th 702 (9th Cir. 2025)....1

*F.B.T. Prods., LLC v. Aftermath Recs.*, 621 F.3d 958 (9th Cir. 2010)....7

*Freund v. Nycomed Amersham*, 347 F.3d 752 (9th Cir. 2003)....3

*Kelley v. Fundomate, Inc.*, 773 F. Supp. 3d 899 (C.D. Cal. 2025)....12

*Line One Lab'ys Inc. USA v. Wingpow Int'l Ltd.*, 2025 WL 3190864 (C.D. Cal. Oct. 29, 2025)....2

*Lust v. Animal Logic Ent.*, 2021 WL 6618677 (C.D. Cal. Aug. 25, 2021)....7

*Masterson v. Sine*, 68 Cal. 2d 222 (1968)....5

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169 (2013)....3

*Securitas Sec. Servs. USA, Inc. v. Superior Ct.*, 234 Cal. App. 4th 1109 (2015)....8

*Tahoe Nat'l Bank v. Phillips*, 4 Cal. 3d 11 (1971)....3, 4

*Toscano v. Greene Music*, 124 Cal. App. 4th 685 (2004)....11

*Union Bank v. Winnebago Indus., Inc.*, 528 F.2d 95 (9th Cir. 1975)....8

*Walker Prods., Inc. v. Cong*, 2026 WL 1803959 (C.D. Cal. May 20, 2026)....2

*Wolf v. Walt Disney Pictures & Television*,
162 Cal. App. 4th 1107 (2008) ........................................................................ 7

*Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*,
664 F. Supp. 3d 1142 (S.D. Cal. 2023) ........................................................ 2, 3

***Rules***

Fed. R. Civ. P. 50 ......................................................................... 1, 2, 3, 5

Fed. R. Civ. P. 59 ......................................................................................... 9

## INTRODUCTION

Ameris's Rule 50(b) motion asks this Court to decide pure questions of law regarding the parties' contracts. Though Plaintiff tries to gloss over this issue by claiming evidence supports the jury verdict, he misses the point. The evidence he cites is either parol evidence irrelevant to prove the meaning of the agreements or creates no conflict in the evidence that would defeat Ameris's authority to interpret the agreements and resolve conflicts between their provisions. Similarly, Plaintiff tries to backfill a theory of future wage loss that he never presented to the jury. But the snippets of testimony he cites do not constitute evidence that he would have been employed by Ameris after 2024, much less for how long or at what wage. The $6.3 million award is pure speculation unsupported by evidence.

## ARGUMENT

### I. Ameris Preserved Its Rule 50(b) Arguments

Ameris's Rule 50(a) motion argued that Plaintiff's claim he had an oral agreement giving him a fixed bonus of 62.54% of the LTIP pool contradicted the parties' written agreements. TT6 pp. 36-38. Ameris also argued that Plaintiff failed to prove he was entitled to more because Ameris rejected his alternative calculations and his disagreement "is not enough evidence to show that Ameris failed to pay him any earned wages." TT6 p. 39. Ameris's Rule 50(b) motion expands on the 50(a) arguments by establishing that the alleged oral agreement contradicts the express provisions of the parties' agreement and the parol evidence rule, and that the contract's delegation of sole authority to Ameris to interpret the parties' agreements bars Plaintiff's effort to advance his own interpretations of how the LTIP should be calculated. Dkt. 262-1 ("Mem. P&A") at 4-18.

The Rule 50(b) arguments are logical extensions of the 50(a) motion. A party does *not* waive an argument under Rule 50(b) when its argument is based "on the same underlying factual arguments" raised in the 50(a) motion. *Est. of Aguirre v. County of Riverside*, 131 F.4th 702, 706 (9th Cir. 2025) (Rule 50(b) motion

asserting police officer's actions were subject to qualified immunity relied on same underlying factual arguments regarding the reasonableness of his use of force raised in his 50(a) motion). That the relationship must be factual is consistent with Plaintiff's argument that the party opposing a Rule 50(a) motion may seek to cure any evidentiary defect by introducing additional evidence. Dkt. 268 ("Opp.") at 6.

Here, the Rule 50(a) argument against Plaintiff's claim to have a fixed percentage is the *same factual argument* Ameris raises in its 50(b) motion—i.e., that Plaintiff's purported oral agreement is parol evidence in violation of the integrated agreements and it contradicts the express language of the agreements. Similarly, whether Plaintiff's opinions about how the LTIP Pool should have been calculated are insufficient to support his claim depends on *the same facts* as Ameris's argument that the LTIP Plan delegates to Ameris sole authority "to interpret, administer, reconcile any inconsistency in, correct any defect in and/or supply any omission in the Plan and any instrument or agreement relating to … the Plan." Fode Decl. Ex. 545 ¶ 3.2(i).

Unlike here, Plaintiff's cases involve Rule 50(b) arguments predicated on *different* factual grounds than the earlier 50(a) arguments. *Line One Lab'ys Inc. USA v. Wingpow Int'l Ltd.*, 2025 WL 3190864, at *3 (C.D. Cal. Oct. 29, 2025) (litigation privilege and common interest privilege based on different facts); *Walker Prods., Inc. v. Cong*, 2026 WL 1803959, at *3 (C.D. Cal. May 20, 2026) (argument that defendant was unaware of exclusivity agreement and did not induce its violation is distinct from argument that conditions never triggered agreement and argument that defendant did not steal one trade secret did not preserve argument about other secrets). Plaintiff also cites *Workplace Technologies Research, Inc. v. Project Management Institute, Inc.*, 664 F. Supp. 3d 1142 (S.D. Cal. 2023), but that case supports Ameris. There, while the trial court held that some post-verdict arguments were not preserved, it held that the defendant's argument that the plaintiff had to prove lost profits through certain data and

evidence of future sales was preserved by a Rule 50(a) argument that the plaintiff's "damages evidence was 'speculative.'" *Id.* at 1163. As here, a more specific Rule 50(b) motion was not waived by a general 50(a) argument.[1]

Even if Ameris had not raised these issues in its Rule 50(a) motion, plain error review would still apply. Moreover, a litigant that does not assert a pure issue of law does not waive an issue previously raised on summary judgment. *Dupree v. Younger*, 598 U.S. 729, 736 (2023). During summary judgment, in response to Plaintiff's previously unasserted claim that Ameris had agreed to pay him 62.54% of the LTIP pool, Ameris argued that this alleged oral agreement should be rejected as a matter of law because it "directly contradicts the governing LTIP Award Agreement, which clearly leaves any individual allocation **blank**" and the Award Agreement "vests the Committee or its delegate with discretion over eligibility, calculation, allocation, and awards." Dkt. 114 at 5. The Court implicitly rejected these arguments when it denied summary judgment, as Plaintiff concedes, arguing that "the Court confirmed that a reasonable jury could find that 'the LTIP guarantees Plaintiff's LTIP Cash Award whenever' performance thresholds were met." Opp. at 12. But that is a question of contract interpretation, not fact.

Nor was Ameris required to object to Plaintiff's testimony. The parol evidence rule is not a traditional rule of evidence, but an issue of substantive law. Mem. P&A at 4; *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1174 (2013). Extrinsic evidence inconsistent with the contract is irrelevant to interpreting the agreement. *Tahoe Nat'l Bank v. Phillips*, 4 Cal. 3d 11, 23 (1971). A lack of objection to parol evidence does not foreclose a party from later arguing, as here, that the extrinsic evidence cannot support the judgment. *Id.*

---

[1] In *Freund v. Nycomed Amersham*, 347 F.3d 752, 757, 761 (9th Cir. 2003), the Rule 50(a) motion did not address punitive damages at all, precluding a later Rule 50(b) argument that there was insufficient evidence of malice.

## II. The Agreements Do Not Guarantee Plaintiff a 62.54% LTIP Share

The integration clauses in the Stock Purchase Agreement and Employment Agreement bar Plaintiff's claimed oral agreement. Mem. P&A at 4-7. Plaintiff argues that the integration clauses in these agreements do not extend to the LTIP Plan and the Award Agreement because they do not contain similar language. But he ignores the language of the integration clauses. The Stock Purchase Agreement states that it and "the other Transaction Documents" are "the final, complete and exclusive statement of the agreement" and "supersede all prior written agreements and all prior or contemporaneous oral agreements." Fode Decl. Ex. 323 ¶ 10.5. "Transaction Documents" include each "other agreement, certificate, instrument and document executed and delivered" in connection with the sale (Fode Decl. Ex. 323 p. 14), a definition that undeniably includes the LTIP Plan and Award Agreement. And Plaintiff testified that his alleged fixed percentage was part of the "preacquisition discussions and agreements" reached *before* he sold Balboa to Ameris. TT2 pp. 36:19-37:20. That directly *contradicts* the integration clauses.

Plaintiff also argues that the Court may consider extrinsic evidence to resolve an ambiguity created by the parties leaving a placeholder in the Award Agreement. Opp. at 11. But he is not resolving an ambiguity; he is *adding* a specific term not found in the agreement. Mem. P&A at 8. And he is doing so with an oral agreement that is barred by the Stock Purchase Agreement's express statement that the written agreements supersede any prior oral agreements. This violates the contractual language and the bar on parol evidence. Mem. P&A at 4-7.

And if there is an ambiguity, Paragraph 5 of the Award Agreement incorporates the LTIP Plan, which gives Ameris the authority to resolve it. Fode Decl. Ex. 545 ¶ 3.2(i). A prior oral agreement that trumps Ameris's right to interpret the Award Agreement or supply an omitted term like an entitlement to a fixed percentage of the bonus pool contradicts the express language of the contracts. As such, it is legally irrelevant evidence. *Tahoe*, 4 Cal. 3d at 23.

Nor can Plaintiff rely on *Masterson v. Sine*, 68 Cal. 2d 222 (1968). The option agreement there did not contain an express integration clause. *Id.* at 228 ("The option clause in the deed in the present case does not explicitly provide that it contains the complete agreement."). And even under *Masterson*, extrinsic evidence is not allowed where "the additional terms … would *certainly* have been included in the document." *Id.* If Plaintiff's share of the LTIP pool was fixed—not discretionary as the LTIP Agreement provides—that would have been stated expressly in the Award Agreement. The placeholder must therefore be interpreted to mean the parties did not agree in advance, but would decide the percentage through Ameris's discretion as the document states. Mem. P&A at 7-9.

## III. The Disputed LTIP Cost Categories in the JMOL Present Issues of Interpretation that Ameris Had Sole Authority to Resolve

Plaintiff's opposition shows why Ameris is entitled to judgment on his claims that Ameris miscalculated EBT.[2] Plaintiff admits the parties dispute how the "key assumptions" in the Award Agreement should be "interpreted," how expenses were "classified," and if Ameris's interpretation "complied" with contractual requirements to calculate EBT. *E.g.*, Opp. at 21, 22, 24. But Ameris had final authority to interpret the LTIP Plan and Award Agreement so its interpretation must control. Mem. P&A at 9-11. This question does not turn on conflicting evidence, but on the meaning of the contract's delegation of authority to Ameris.[3]

---

[2] Plaintiff again claims this issue was not raised in the Rule 50(a) motion but Ameris's counsel argued that Ameris responded to Plaintiff's complaints and concerns "and explained in detail why his complaints did not follow the Pioneer model, the terms of the LTIP or Ameris' internal controls. Mr. Byrne's conclusory arguments that he should have received more money is not enough evidence to show that Ameris failed to pay him any earned wages." TT6 pp. 38-39.

[3] Plaintiff cites an example where the LTIP calculation did not follow a "key assumption." Opp. at 19 (citing TT5 pp. 214:5-217:16). That testimony relates to key assumption (f), which specifically provides that "allowance for loan losses calculations and expenses for Balboa will be the greater of (i) actual net charge-offs or (ii) 1.25% of net investment in direct financing leases." Fode Decl. Ex. 546

***Support Staff Salaries.*** Addressing whether the salaries of employees providing various services for Balboa should have been excluded from EBT as "indirect Company expenses" when their salaries were deducted in the Pioneer Model, Plaintiff admits that the Award Agreement "does not define those categories or specify how to classify employees whose reporting relationships and responsibilities changed after the acquisition." Opp. at 20. In other words, the Award Agreement was ambiguous about whether those employee salaries should be included or excluded from the EBT calculations.

He concedes that the parties disputed what the agreement means by "indirect expenses" and whether the mere fact those employees reported to someone new, but did the same work, required their salaries to be excluded from the EBT calculation. That is a question of contract interpretation. Plaintiff admits as much in claiming the jury was entitled to determine the "contractual meaning." But it was not. The LTIP Plan gave Ameris sole authority to interpret its provisions.

The meaning of this provision was not a dispute of fact for the jury to decide. Juries can resolve "conflicting extrinsic evidence concerning the parties' intent and practice" if the material evidence is in conflict. Opp. at 20. But the evidence is *not* in conflict here. The parties did *not* dispute that those employees' salaries were costs under the Pioneer Model, those employees continued to provide the same services to Balboa that they provided before the sale, and the only change was that, after the sale, they reported directly to Ameris. The only dispute concerns how the contract should be interpreted in light of those undisputed facts.

Under such circumstances, contract interpretation remains a question of law for the Court, not the jury. Mem. P&A at 9-10 (citing authorities); *accord City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 395 (2008) (contract

---

p. 2. It is a good example of an *un*ambiguous provision and why Ameris has not argued its authority to interpret the contract applies to Dickson's calculations of that category. That proves nothing about the categories raised in the motion.

interpretation is a question of law for the court "when it is based on the words of the instrument alone [or] when there is no conflict in the extrinsic evidence"); *F.B.T. Prods., LLC v. Aftermath Recs.*, 621 F.3d 958, 964 (9th Cir. 2010). "This is true even when conflicting inferences may be drawn from the undisputed extrinsic evidence or that extrinsic evidence renders the contract terms susceptible to more than one reasonable interpretation."[4] *Lust v. Animal Logic Ent.*, 2021 WL 6618677, at *5 (C.D. Cal. Aug. 25, 2021) (citing *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1126-27 (2008)).

The meaning of "materially follow Balboa's past practices," Opp. at 22 (citing Fode Decl. Ex. 546 pp. 1-2 & n.3), in this context also is a question of contract interpretation. If past practice was to count those employees' salaries as costs and those employees were performing the same work, why should that change (i.e., why is it not materially consistent with Balboa's past practice) merely because the employees report to a different superior?

***Interim Rent.*** Plaintiff's response regarding interim rent proves that the dispute over how Ameris calculated interim rent is an issue of contract interpretation. Plaintiff and Dickson asserted that "materially follow Balboa's past practices" required Ameris to use the exact methodology Balboa used in calculating interim rent. While that phrase is reasonably susceptible to that interpretation, it is equally susceptible to Ameris's interpretation—that saying it would "materially follow Balboa's past practices" meant it would calculate EBT using the same categories of revenue and expenses not that it was bound to the exact methodology. Because that phrase is reasonably susceptible to both interpretations, it is ambiguous and Ameris's interpretation must control.

The evidence Plaintiff cites does not change that legal question. He claims

---

[4] For this reason, the purported conflicting testimony about what the parties discussed before the sale (Opp. at 20-21) does not create a conflict. Even accepting Plaintiff's subjective opinion that he believed his interpretation was consistent with the parties' pre-sale discussions, his subjective belief does not control.

the Award Agreement states GAAP will be used for one key assumption so Ameris was not required to follow GAAP's treatment of interim rent, but that does not prove the contract prohibited Ameris from using GAAP. While Plaintiff may personally believe "materially follow Balboa's past practices" prevented Ameris from using GAAP, his subjective belief is "irrelevant to the material issue of the parties' intent." *Union Bank v. Winnebago Indus., Inc.*, 528 F.2d 95, 99 (9th Cir. 1975); *see also Securitas Sec. Servs. USA, Inc. v. Superior Ct.*, 234 Cal. App. 4th 1109, 1125 (2015) (in contract interpretation, "parties' expressed objective intent, not their unexpressed subjective intent, governs").

Plaintiff's and Dickson's belief about how EBT should account for interim rent is therefore meaningless. And nothing in the Pioneer Model attached to the Award Agreement resolves the ambiguity. It does not detail *any* methodology used to calculate the categories of revenue and expenses. Fode Decl. Ex. 546 p. 8. It does not even mention "rent," let alone "interim rent." *Id.* Thus, it was left to Ameris's discretion how it would calculate interim rent.

***Repossessions and Stipulated Judgments.*** The same reasoning applies to Plaintiff's arguments about repossessions and stipulated judgments. As to both, he claims Ameris did not follow Balboa's methodology for calculating these categories of costs. But that presupposes that "materially follow Balboa's past practices" contractually required Ameris to slavishly use Balboa's methodology—even though that methodology inflated EBT by treating repossessed and auctioned property as if they were still subject to good loans and by treating the promises to pay stipulated judgments as if they were guaranteed income when, in fact, many would never be paid. TT2 pp. 199-200; TT3 pp. 153-54; TT5 pp. 186, 195-96.

To the extent Plaintiff contends that Ameris never "invoked" its authority to interpret these provisions (Opp. at 15-16), it necessarily did so when it calculated EBT for 2022 and 2023—and when it responded to his complaints and explained why it made the calculations the way it did. That Ameris allowed Plaintiff to divvy

up the 2022 LTIP pool—which the LTIP Plan contemplated (Fode Decl. Ex. 545 ¶ 3.1)—proves nothing about the extent of Ameris's contractual discretion.

Plaintiff also suggests Ameris did not exercise its discretion in good faith. Opp. at 16. But he has not asserted a breach of implied covenant claim. In any event, Ameris offered logical reasons based in historical practice (including support staff salaries in costs) and sound accounting practices (treating interim rent in accordance with new GAAP requirements and not inflating earnings through dubious means of accounting for repossessions and stipulated judgments). There is no basis for claiming Ameris acted in bad faith when it calculated EBT.

**IV. Ameris Had Authority to Deny Plaintiff a Bonus for 2024**

Plaintiff cites provisions in the Award Agreement that he was still eligible for a bonus after being terminated, but does not dispute that the LTIP Plan and the Award Agreement expressly state that Plaintiff had no *right* to an LTIP bonus until it was paid. Fode Decl. Exs. 545 ¶ 10.4, 546 ¶ 11. At most, this creates a conflict between different contract provisions. As such, Ameris had sole authority to "reconcile any inconsistency in" the "Plan and any instrument or agreement relating to [the Plan]." Fode Decl. Ex. 545 ¶ 3.2(i).

Ameris is entitled to judgment as a matter of law. Mem. P&A at 21.

**V. The Award of Future Economic Damages is Plain Error**

Both parties' arguments on this question are duplicative of those raised in connection with the Rule 59(e) motion, Dkt. 264. Plaintiff does not dispute that an award of future economic damages must be based on evidence that "makes reasonably certain their occurrence and extent." *Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696, 738 (2017). "Requiring the plaintiff to prove future economic losses are reasonably certain 'ensures that the jury's fixing of damages is not wholly, and thus impermissibly, speculative.'" *Id.* He also does not dispute that *no witness* offered any testimony estimating or calculating future lost wages. Plaintiff did not testify that he planned to work at Ameris past 2024, offer *any* evidence of

how long he would have worked there if he had not been terminated, or opine what the terms of that work would have been. Plaintiff's opposition does not identify a single piece of evidence from Plaintiff or anyone else concerning whether, on what terms, or for how long Plaintiff would have worked for Ameris past 2024, much less past the June 11, 2026 verdict. To the contrary, Plaintiff testified that he had only six months left in his employment with Ameris when he was terminated. TT2 p. 78:11-12.

Instead, Plaintiff points to a few stray remarks showing an interest in continuing to work with him. Opp. at 27-28. In July 2023, a year before he was terminated, Ameris's CFO told Plaintiff she "still wanted him to lead the Balboa Division." TT3 pp. 86:17-87:7. LaHaise told him in his 2023 performance review that he "wanted him to continue as CEO," and when Ameris decided not to renew Plaintiff's contract, it said it still wanted to work through a long-term plan with him. Fode Decl. Ex. 95; TT3 p. 243:11-13. That is not enough to show that Ameris *and Plaintiff* would have agreed to future terms. Ameris sent Plaintiff a severance protection agreement, which included no salary or other compensation terms. TT3 p. 244:17-20. But Plaintiff scoffed at the suggestion of a long-term plan, testifying that "it appears that his long-term plan is just to get me out, I guess in retrospect" and that "I don't know what is our long-term plan." TT2 p. 80:7-14. He never signed the severance protection agreement. TT4 p. 79:4-6. And he presented no evidence that he made any effort to negotiate terms for continued employment, or what terms would have been acceptable to him. And Plaintiff's counsel elicited testimony from LaHaise that the severance protection agreement was "not an offer of future employment." TT3 p. 246:13-16.

The question is not whether the expiration of his contract would have "necessarily [] ended [Plaintiff's] employment," Opp. at 27, but whether it was "reasonably certain" that Plaintiff would have continued to work for Ameris. *Atkins*, 8 Cal. App. 5th at 738. And there is *no evidence* that he would have, much

less for how long. Again, he did not testify that he wanted to work for Ameris after 2024, but instead that he only had six months left. TT2 p. 78:11-12.

The record contains no proof of "a definite expectation of continued employment … for any particular period of time." *Toscano v. Greene Music*, 124 Cal. App. 4th 685, 696 (2004) (reversing future lost wages as speculative).

Nor was there any evidence of how much Plaintiff would have been paid for any future employment. The extent of future damages, post-dating trial, must be proved with reasonable certainty. *Atkins*, 8 Cal. App. 5th at 738.

Neither Plaintiff, his expert, nor any other witness offered any calculation of future losses. Now he seeks to fill this gap by arguing that the evidence of his *past* income under his written contract with Ameris is somehow evidence of future income. Opp. at 27. But that three-year contract was made as part of Plaintiff's sale of Balboa to Ameris, and was not renewed. TT2 pp. 19:13-20:2; Fode Decl. Ex. 95. And he argues that the current CEO of the division, Silva, is making a similar (if smaller) amount. Opp. at 27. But Plaintiff offered no evidence that he would have been offered those terms. Nor, perhaps more importantly, did he offer any evidence that he would have accepted them. This whole case arises from Plaintiff's claim that he was owed millions more than Ameris said it owed him. Nothing in the record suggests that Plaintiff would have agreed to accept less pay going forward. To the contrary, in May 2024 Plaintiff told Silva: "I have received no offers on the LTIP nor have I heard anything on the 2025 compensation plan." Sessions Decl. Ex. 100; TT5 p. 13:4-8. And, contrary to the opposition's characterization on page 27, there was no discussion about a 2025 LTIP. The cited testimony, TT4 p. 130:19-24 and TT5 p. 13:7-24, says no such thing.

Moreover, Plaintiff's past compensation above the base salary of $350,000 was based on company performance bonuses. TT2 pp. 20:18-21:7; Fode Decl. Ex. 324 ¶ 3.2. There was no evidence predicting Ameris's *future* performance or whether any bonuses would be earned in the future. While Plaintiff's opposition

refers to a future LTIP, the LTIP Award Agreement was expressly for *2022-2024 only*. Fode Decl. Ex. 546.

This is not a question of mitigation. Opp. at 28-29. A mitigation of damages argument only makes sense once the Plaintiff has put on evidence that there were future wage losses to mitigate. At trial, the only economic losses Plaintiff introduced evidence of were his LTIP awards for 2022, 2023, and 2024. *See* Dkt. 264-1 (Rule 59(e) Mem. P&A) at 2-3. None of those amounts were subject to a mitigation of damages argument about future employment. The issue here is *not* that Plaintiff proved an amount of lost wages that the jury should have reduced because he failed to mitigate his loss. The issue is that Plaintiff made no attempt to claim or prove lost wages *at all*.

The jury's award of $6.3 million in future damages has no evidentiary support. Even under Plaintiff's newfound theory, at most the record showed that Ameris was open to discussing a relationship for some unspecified period past 2024 with Plaintiff, but no terms were discussed. Fode Decl. Ex. 95; TT3 p. 243:11-13. That is not enough to assume Plaintiff and Ameris would have agreed to terms, the amount of wages Plaintiff would have received under those terms, or that the relationship would have continued past June 11, 2026 until $6.3 million was owed. *Kelley v. Fundomate, Inc.*, 773 F. Supp. 3d 899, 929 (C.D. Cal. 2025) (award of future damages impermissibly speculative where "the terms of the offer were not clearly defined" and "Plaintiff did not establish he had a definite expectation of continued employment … for any period of time"); *Citri-Lite Co. v. Cott Beverages, Inc.*, 721 F. Supp. 2d 912, 937 (E.D. Cal. 2010) (damage theory based on assumption contract would have been renewed is "based on purely 'imaginary' and 'speculative events'").

## CONCLUSION

For the reasons set forth above, Ameris Bank respectfully requests the Court grant partial JMOL as set forth in the Motion.

Dated: October 9, 2026

Respectfully submitted,

**COMPLEX APPELLATE LITIGATION GROUP LLP**

/s/ Michael von Loewenfeldt
Michael von Loewenfeldt
Johanna Schiavoni
Jessica M. Weisel

**NUKK-FREEMAN & CERRA, P.C.**

Stacy L. Fode
Nana J. Yee

Attorneys for Defendant
AMERIS BANK