Johanna Schiavoni (SBN 248501)
johanna.schiavoni@calg.com
Michael von Loewenfeldt (SBN 178665)
michael.vonloewenfeldt@calg.com
Jessica M. Weisel (SBN 174809)
jessica.weisel@calg.com
**COMPLEX APPELLATE LITIGATION GROUP LLP**
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (213) 878-0404
Facsimile: (415) 726-2527

Stacy L. Fode, Esq. (SBN 199883)
sfode@nfclegal.com
Nana J. Yee, Esq. (SBN 272783)
nyee@nfclegal.com
**NUKK-FREEMAN & CERRA, P.C.**
550 West C Street, Suite 910
San Diego, California 92101
Telephone: (619) 292-0515
Facsimile: (619) 566-4741

Attorneys for Defendant
AMERIS BANK

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PATRICK BYRNE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>AMERIS BANK, a Georgia corporation,<br><br>Defendant. | Case No.: 8:24-cv-01989-MWC-JDE<br><br>**REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59**<br><br>Date: October 23, 2026<br>Time: 1:30 p.m.<br>Dept.: 6A<br><br>Hon. Michelle Williams Court |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

I. Allowing Dickson's Testimony on 2024 Damages and Restricting Her Cross-Examination Were Prejudicial Errors Requiring a New Trial ..... 1

II. The Economic Damages Are Excessive ..... 5

A. Future economic damages ..... 5

B. Dickson's LTIP calculations overall ..... 6

C. Dickson's 2024 LTIP calculations ..... 7

D. The extra $920,289 ..... 8

III. The $62,906,613 Punitive Damage Award Is Excessive ..... 9

A. The award is contrary to the weight of the evidence and excessive ..... 9

B. The award is unconstitutional ..... 10

1. Ameris's conduct had only low reprehensibility at most ..... 10

2. The punitive damages ratio is excessive ..... 10

3. Plaintiff's remaining arguments do not save the award ..... 12

IV. Conclusion ..... 12

# TABLE OF AUTHORITIES


**Page(s)**

***Cases***

*Atkins v. City of Los Angeles*,
8 Cal. App. 5th 696 (2017)....................6

*Bains LLC v. Arco Prods. Co.*,
405 F.3d 764 (9th Cir. 2005)....................10, 12

*Beatbox Music Pty, Ltd. v. Labrador Ent., Inc.*,
2023 WL 2922828 (C.D. Cal. Feb. 16, 2023)....................1

*Collinge v. IntelliQuick Delivery, Inc.*,
2017 WL 3887337 (D. Ariz. Sept. 6, 2017)....................1, 2, 3

*Davis v. McKesson Corp.*,
2019 WL 3532179 (D. Ariz. Aug. 2, 2019)....................7

*Dawe v. Corr. USA*,
506 F. App'x 657 (9th Cir. 2013) ....................11

*Freund v. Nycomed Amersham*,
347 F.3d 752 (9th Cir. 2003)....................12

*Garcia v. Truck Ins. Exch.*,
36 Cal. 3d 426 (1984)....................6

*In re Taco Bell Wage & Hour Actions*,
2016 WL 2755938 (E.D. Cal. Apr. 8, 2016)....................4

*Krause v. County of Mohave*,
459 F. Supp. 3d 1258 (D. Ariz. 2020)....................1

*Luke v. Fam. Care & Urgent Med. Clinics*,
323 F. App'x 496 (9th Cir. 2009) ....................1

*McCray v. Westrock Servs., LLC*,
2024 WL 4579108 (C.D. Cal. Sept. 10, 2024) ....................11

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988)....................7

*Mitri v. Walgreen*,
660 F. App'x 528 (9th Cir. 2016) ....................10

*Murphy v. City of Long Beach*,
914 F.2d 183 (9th Cir. 1990)....................9

*Noyes v. Kelly Servs., Inc.*,
349 F. App'x 185 (9th Cir. 2009) ....................11

*Plumley v. Mockett*,
836 F. Supp. 2d 1053 (C.D. Cal. 2010) ....................1

*Quevedo v. Trans-Pac. Shipping, Inc.*, 143 F.3d 1255 (9th Cir. 1998) .......... 3

*Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009) .......... 11

*Rubio v. CIA Wheel Grp.*, 63 Cal. App. 5th 82 (2021) .......... 11

*SEC v. Amazon Nat. Treasures, Inc.*, 132 F. App'x 701 (9th Cir. 2005) .......... 4

*Simon v. San Paolo U.S. Holding Co.*, 35 Cal. 4th 1159 (2005) .......... 11

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) .......... 11, 12

*Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852 (9th Cir. 2019) .......... 7

*Torres v. City of Los Angeles*, 548 F.3d 1197 (9th Cir. 2008) .......... 3

*United States ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 652 (C.D. Cal. 2007) .......... 3

*Wechsler v. Macke Int'l Trade, Inc.*, 221 F.R.D. 619 (C.D. Cal. 2004) .......... 3

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001) .......... 1, 3

*Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020 (9th Cir. 2003) .......... 11

## ***Statutes***

Cal. Civ. Code § 3283 .......... 6

Cal. Lab. Code § 210 .......... 12

## ***Rules***

Fed. R. Civ. P. 26 .......... 1, 2, 3, 4, 7

Fed. R. Civ. P. 37 .......... 3, 7

Fed. R. Civ. P. 50 .......... 5

Fed. R. Civ. P. 59 .......... 5, 8

Fed. R. Evid. 613 .......... 4

Fed. R. Evid. 1006 .......... 4

As demonstrated in the moving papers, a new trial is warranted because Dickson should not have been allowed to offer her untimely opinions about the 2024 LTIP, the jury's award of economic damages is excessive and contrary to the weight of the evidence, and the $62+ million punitive damages award is factually and constitutionally excessive. Plaintiff fails to rebut these points.

## I. Allowing Dickson's Testimony on 2024 Damages and Restricting Her Cross-Examination Were Prejudicial Errors Requiring a New Trial

Plaintiff does not dispute that (1) Dickson's already-late January expert report contained no analysis of the 2024 LTIP, (2) Dickson offered no opinions about the 2024 LTIP at her deposition, (3) Dickson's May opinions about the 2024 LTIP were based entirely on material she had before January but chose not to present at that time, (4) Ameris timely objected to Dickson's 2024 LTIP testimony,[1] and (5) Dickson's 2024 LTIP testimony added $4,844,985, or almost 54%, to the past economic damage award. Yet, Plaintiff insists there was no prejudicial error. Plaintiff's argument "nullifie[s]" "the very purpose of [Rule 26]," *Collinge v. IntelliQuick Delivery, Inc.*, 2017 WL 3887337, at *3 (D. Ariz. Sept. 6, 2017), neutering the "'self-executing,' 'automatic' sanction" "forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

Dickson's May report is *not* proper supplementation under Rule 26(e)(2). A supplemental report cannot add opinions or be based on documents the expert already had. Dkt. 263-1 ("Mem. P&A") at 7; *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009); *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062, 1063-64 (C.D. Cal. 2010); *Beatbox Music Pty, Ltd. v. Labrador Ent., Inc.,* 2023 WL 2922828, at *2-3 (C.D. Cal. Feb. 16, 2023); *Krause v. County*

[1] Plaintiff argues that Ameris's pretrial objection to the May report was unauthorized but does not dispute that Ameris made contemporaneous objections.

*of Mohave*, 459 F. Supp. 3d 1258, 1268-69 (D. Ariz. 2020). Plaintiff does not respond to this authority. He cites a footnote in *Collinge*, Dkt. 269 ("Opp.") at 9, but the holding in *Collinge* applied the same rule and excluded the improper "supplemental" report. *Collinge*, 2017 WL 3887337, at *2.

While Plaintiff argues that a supplemental report may correct for criticism, he does not show that Dickson's new 2024 LTIP opinions were responsive to any criticism by Ameris of her prior report. Instead, he admits Dickson *chose* not to give these opinions earlier because she was hoping to get more information. Opp. at 8-9; TT5 pp. 131:22-132:1, 134:12-15. But fact discovery *closed* on November 28, 2025—over a month before Dickson's (late) January report. And the Court's scheduling order requires motions to compel to be heard "*before* the discovery cutoff." Fode Decl. ¶¶ 3-5 & Ex. B. Plaintiff does not show that Ameris was obligated to provide any more records, or that he made any effort to obtain them. And he cites no case allowing an expert to hold back an opinion because she wants more data, and then "supplement" right before trial without new information.

Plaintiff claims that Dickson's May report "introduced no new theory, methodology, or category of damages." Opp. at 9. Not so. It *added $4.8 million* to Plaintiff's claimed LTIP damages; Dickson's January report had calculated no LTIP damages for 2024. The May report also presented the new unsupported theory that the 2024 LTIP could be calculated using 2023 numbers. Thus, Dickson's May report increased her LTIP calculations from $3.23 million to more than $8 million a mere month before trial and long after discovery had closed.

Because it was not a proper supplemental report, Plaintiff's argument about the timing of supplemental reports is irrelevant. Any such opinions were due in *December 2025*, but were not even included in Dickson's belated January 2026 report the Court previously allowed. Fode Decl. Exs. B, E, M pp. 2-6. Dickson's May report—and all of her opinions about the 2024 LTIP—were offered in blatant violation of Rule 26(a)(2)(B) and this Court's expert disclosure deadlines.

Plaintiff makes no meaningful argument that he was justified in ignoring the discovery deadline. He improperly attempts to impose the burden on Ameris, arguing that it should have tried to reopen discovery or continue the trial at the last minute. He cites no law requiring Ameris to do so. Plaintiff should not be allowed to violate basic discovery rules and shift the burden to Ameris to seek extensions to address Plaintiff's violation. Such a rule would contravene Rule 37's purpose to discourage discovery gamesmanship. Mem. P&A at 8. Plaintiff cites a few inapposite cases where discovery was reopened two months before trial. *United States ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 652, 656 (C.D. Cal. 2007); *Wechsler v. Macke Int'l Trade, Inc.*, 221 F.R.D. 619, 623 (C.D. Cal. 2004). Here, the Court did not even hear Ameris's pre-trial objection to Dickson's May report.

As Plaintiff's own authority makes clear, the prejudice from last minute testimony is "self evident." *Collinge*, 2017 WL 3887337, at *3 (striking improper late report). Plaintiff tries but fails to distinguish the cases cited in the moving papers where exclusion was ordered. Opp. at 12. Dickson's May report was one month before trial as in *Yeti by Molly*, 259 F.3d at 1107, and after summary judgment as in *Quevedo v. Trans-Pacific Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998). And, as in *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008), the Court did not explain its rulings on Ameris's trial objections to the late opinions, despite recognizing this issue required discussion. *See* TT0 p. 51:15-19.

In addition, while the Court need not reach the issue because the 2024 opinions should not have been allowed at all, after allowing Dickson to give opinions about 2024 that were not timely disclosed, the Court unfairly restricted Ameris's examination of her about those opinions. Plaintiff attempts to explain away his presentation of most of Dickson's report (despite counsel telling the Court they did not intend to do so) by arguing that the exhibits where she calculates her opinions were not actually part of her report. But Rule 26(a)(2)(B)(iii) requires an expert report to include "any exhibits that will be used

to summarize or support" the expert's opinions. Fed. R. Civ. P. 26(a)(2)(B)(iii). Moreover, those exhibits are not Rule 1006 summaries because they contain *analysis*. *In re Taco Bell Wage & Hour Actions*, 2016 WL 2755938, at *10 (E.D. Cal. Apr. 8, 2016) ("A summary under Rule 1006 must not make arguments about the inferences the jury should draw from the documents."); *cf. SEC v. Amazon Nat. Treasures, Inc.*, 132 F. App'x 701, 703 (9th Cir. 2005) (allowing summary because it did not include "the application of interpretive expertise to financial records").

Plaintiff also offers no justification for the evidentiary rulings that allowed him to introduce exhibits from the May report, while prohibiting Ameris from cross-examining on companion exhibits with lower calculations. Plaintiff makes the odd argument that alternative, lower damage calculations are not inconsistent with higher numbers. Opp. at 14. But of course different numbers are inconsistent. And demonstrating inconsistency is not a hearsay use of evidence. Ameris should have been allowed under Rule 613 to fully explore Dickson's decision to only present her highest calculation to the jury. And while Plaintiff argues that Ameris "did not frame its questions correctly," he notably makes no attempt to defend the four examples presented at page 9 of the motion detailing where Plaintiff objected to proper questions and its objections were sustained.[2]

Plaintiff argues that Ameris was able to make some points on cross-examination, and that Ameris cannot show the jury would have reached a different result if Ameris had been allowed to question Dickson with the exhibits to her report in the same way Plaintiff was permitted to do. But Ameris was entitled to an even playing field. That is the essence of a fair trial. And while the jury heard there was an alternative number, Ameris was not allowed to present it in the same way as Plaintiff's preferred higher numbers.

---

[2] At another point, Plaintiff's counsel suggested at sidebar that questions about changes between Dickson's opinions were appropriate and the Court agreed. So Ameris phrased its questions that way; yet, Plaintiff still objected on hearsay grounds, and the objections were sustained. TT5 pp. 124:14-125:2, 139:23-140:10.

More than half of Plaintiff's economic damages case was based on Dickson's untimely May opinions about the 2024 LTIP. Introduction of those opinions over Ameris's objections and the restrictions placed on Ameris's cross-examination of Dickson were prejudicial error and require a new trial.

## II. The Economic Damages Are Excessive

The jury's economic damages award was excessive, contrary to the weight of the evidence, and should be remitted for four reasons. Mem. P&A at 10-18.

### A. Future economic damages

As detailed in the Rule 50(b) and 59(e) motions and replies, Ameris contends that there is no basis in the record for the jury's award of $6.3 million in future economic damages. But even if the Court concludes that Plaintiff's mere citation to a few statements that there might be some future relationship and his past salary are sufficient to clear the Rule 50(b) and 59(e) hurdles, the clear weight of the evidence plainly does *not* support these damages. Rule 59 relief is proper.

The weight of the evidence does not show Plaintiff would have worked for Ameris after December 2024 if he had not been terminated. He did not even testify that he would have. To the contrary, he testified that he only had six months left in his employment. TT2 p. 78:11-12. That LaHaise at one point wanted him to continue as CEO and to discuss a long-term plan does not show that an agreement would have been reached, particularly given Plaintiff's testimony that "I don't know what is our long-term plan" and his failure to engage in any such planning. TT2 p. 80:7-14; TT4 p. 79:4-6. And Plaintiff's own counsel elicited testimony that Plaintiff had not received an "offer of future employment." TT3 p. 246:13-16.

Nor was there any evidence at trial about what amount Plaintiff would have been offered and accepted, or how long the relationship would have lasted. No witness provided any testimony, much less calculations, on this topic. So it is unsurprising that counsel did not ask the jury for any award of future lost wages. The jury's award is untethered to any time period or wage rate.

Future economic damages must be based on evidence that "makes reasonably certain their occurrence and extent." *Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696, 738 (2017); *see* Cal. Civ. Code § 3283 ("Damages may be awarded, in a judicial proceeding, for detriment … certain to result in the future."). "Requiring the plaintiff to prove future economic losses are reasonably certain 'ensures that the jury's fixing of damages is not wholly, and thus impermissibly, speculative.'" *Atkins*, 8 Cal. App. 5th at 738. Here, the clear weight of the evidence does not demonstrate any reasonably certain basis for finding that Plaintiff will suffer $6.3 million in lost wages after the date of trial.

**B. Dickson's LTIP calculations overall**

Plaintiff devotes only a footnote to addressing whether the weight of the evidence showed the parties agreed during the sale process that Plaintiff would receive 62.54% of the LTIP pool. Plaintiff argues "Ameris does not identify a different percentage that should have been used." Opp. at 17-18 n.4. Indeed—that is the point. There was no agreement to pay Plaintiff a fixed share of the LTIP pool. If the parties had reached an oral agreement as Plaintiff claimed, it would have been memorialized in the Award Agreement.[3] Mem. P&A at 12-13.

As for whether Dickson's calculations of the LTIP pool are against the weight of the evidence, Plaintiff merely repeats Dickson's interpretations of the "key assumptions." Again, that proves the point. The weight of the evidence shows that the parties had competing interpretations of the Award Agreement. But the parties' agreements gave *Ameris* final authority to resolve how the LTIP pool was calculated or the LTIP Plan applied. Fode Decl. Ex. 545 ¶¶ 3.2, 3.3.

Plaintiff's opposition is, in fact, *inconsistent with itself*. The opposition argues the Award Agreement required Ameris to follow the methodology of the

[3] Plaintiff argues that the jury interpreted the Award Agreement to contain such a term, but interpretation of a contract is an issue of law for the court. *Garcia v. Truck Ins. Exch.*, 36 Cal. 3d 426, 439 (1984).

Pioneer Model, but also argues the evidence supports excluding staff costs from the LTIP calculation when those costs were undeniably included in the Pioneer Model. Opp. at 18-20. The undisputed evidence is that those employees continued to support Balboa operations, as they did before the acquisition. *See, e.g.*, TT2 pp. 163-164, 209; TT5 p. 9; Fode Decl. Ex. 397.

Similarly, Plaintiff's claim that Ameris was bound to the Pioneer Model's methodology assumes the Award Agreement's footnote stating that the LTIP would "materially follow past practice" is not itself subject to interpretation. Plaintiff's position would bind Ameris to follow questionable accounting practices, such as making loans look like they were still good despite the property already being repossessed and sold or inflating EBT by assuming stipulated judgments would be paid when many are not. Plaintiff's evidence merely asserts competing interpretations of the key assumptions. But it was Ameris that had final say. Thus, the economic damages award is contrary to the clear weight of the evidence.

**C. Dickson's 2024 LTIP calculations**

As discussed above, Dickson's 2024 LTIP calculations were presented in violation of Rules 26 and 37, and should have been excluded. They also were improperly speculative because they rest on the assumption that the amounts Dickson added back to the LTIP pool for 2023 would also apply in 2024. Dickson admitted she had no 2024 data for those amounts, and she offered no factual basis for her assumption that the actual 2024 amounts were the same as in 2023.

Plaintiff claims this was reasonable because Dickson had no other data and she explained her assumption. But a court cannot rely on "unreliable evidence because an expert is at the disadvantage of not having reliable data." *Davis v. McKesson Corp.*, 2019 WL 3532179, at *43 (D. Ariz. Aug. 2, 2019). An "expert's opinion must rest on 'facts or data in the case that the expert has been made aware of or personally observed,' not merely assumptions and speculation." *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019); *see McGlinchy v. Shell*

*Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (expert opinion "hopelessly flawed" where based on assumption market conditions were the same in two periods).

Plaintiff identifies no evidence supporting Dickson's assumption that the 2023 and 2024 numbers were the same. He argues that the staff continued to work during that period, Opp. at 20, but the cited testimony does not say that. *See* TT5 p. 9:4-13 (no discussion of time periods). He posits: "Although that testimony did not establish identical expenses each year, it supplied context for evaluating Dickson's use of historical figures." Opp. at 20-21. Yet understanding why an expert is speculating does not justify allowing evidence based on speculation.

Plaintiff is unable to cite any record evidence providing a *factual* basis for Dickson's assumption that the financial data she used to make changes to EBT she made for 2023 was also true in 2024. There is *no* such evidence. Dickson's assumption that she could use the 2023 numbers for 2024 because she had no other information is impermissible speculation and provides no basis for her opinions about 2024. Because they were wholly speculative (and erroneously allowed in the first place), Dickson's 2024 calculations should be disregarded, rendering the jury's verdict based on them excessive and contrary to the weight of the evidence.

**D. The extra $920,289**

In his Rule 59(e) opposition, Plaintiff argued that the $920,289 over what he requested was extra LTIP damages that the jury could have found were owed (so he can claim prejudgment interest on it). Dkt. 270 (Rule 59(e) Opp.) at 15-16. In opposition to *this* motion, he claims that the extra $920,289 is wages for the period June 2024 to June 2026. Opp. at 17. Yet, that makes no sense in comparison to the $6.3 million in future economic damages for some unknown future period, and Plaintiff offers no mathematical explanation for these disparate numbers.

Plaintiff's contract ended in December 2024. At most he could have sought 6 more months of wages. But he introduced no evidence of such, and that would not have amounted to $920,289. The only calculations presented to the jury were

Dickson's LTIP calculations. The Court should find that the weight of the evidence does not support the jury's rounding Plaintiff's past economic loss demonstrated at trial upwards by nearly one million dollars.

The question on this motion is not whether Plaintiff can come up with a theory to explain the jury's award. The question is whether "even though supported by substantial evidence … the verdict is contrary to the clear weight of the evidence." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). And the award of $9 million in past economic damages is contrary to the clear weight of the evidence. The Court should find the economic damages award is excessive, and issue a conditional remittitur to the maximum amount supported by the evidence or, alternatively grant a new trial.

## III. The $62,906,613 Punitive Damage Award Is Excessive

### A. The award is contrary to the weight of the evidence and excessive

Plaintiff merges his weight-of-the-evidence response and his argument that Ameris's conduct was reprehensible. Opp. at 23-25. Most of his discussion is about Ameris's handling of the LTIP, but those facts relate to *contract* and *wage* claims that *cannot* be a basis for punitive damages. Mem. P&A at 21-22. "Failing to pay [Plaintiff] his fair compensation," Opp. at 28, is not grounds for punitive damages. He cites no evidence of any desire to injure him or other direct evidence of animus toward him. He next argues that terminating him intentionally deprived him of employment, Opp. at 24-25—a tautology true in *any* termination case. The weight of the evidence shows a dispute over how the LTIP was applied, not malice.

Plaintiff also offers no response to Ameris's argument that the amount of damages is patently excessive and out of line with cases involving much worse conduct. Mem. P&A at 19-20. Before even reaching the constitutional question, the Court should find that the punitive damage award is either contrary to the weight of the evidence entirely or, at the least, grossly excessive.

### B. The award is unconstitutional

#### 1. *Ameris's conduct had only low reprehensibility at most*

As for the constitutional analysis, Plaintiff again focuses on irrelevant facts. He is silent about his lack of financial vulnerability. He claims his termination was not a discrete incident involving only himself, but his argument that the LTIP calculations affected 150 other employees is about the LTIP dispute, *not* the termination, as are his other ways of describing the dispute over how much LTIP was owed. Opp. at 23-24. He claims Ameris also fired another executive who sold his company, but Ameris was not sued here for a pattern of buying companies and then firing the former owners. Opp. at 23. Plaintiff did "highlight[] this parallel" in argument, *id.*, but the similarities between Plaintiff and Vallari have nothing to do with retaliation. The sparse testimony Plaintiff elicited about Vallari says nothing about protected complaints, retaliation, or why Vallari's employment was terminated. TT4 pp. 94:18-96:14.

Plaintiff argues his termination involved disregard of the health or safety of others because the jury gave him $1.225 million for emotional distress. Opp. at 25. That Plaintiff suffered emotional distress is not evidence that terminating his contract posed a threat to health and safety under the reprehensibility test. *Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 775 (9th Cir. 2005) (racial discrimination and contract termination "did not evince reckless disregard of health or safety").

Plaintiff cites no case where similar facts were found more than slightly reprehensible and ignores *Mitri v. Walgreen*, which found "low to intermediate reprehensibility" where, unlike Plaintiff, the employee was financially vulnerable. 660 F. App'x 528, 530 (9th Cir. 2016); Mem. P&A at 22; Opp. at 23-25.

#### 2. *The punitive damages ratio is excessive*

A ratio analysis must start with the proper denominator of compensatory tort damages. Plaintiff posits that all of his compensatory damages are both tort and contract damages. Opp. at 25. Here again, he ignores the fact that Ameris asked for

a jury verdict form that segregated damages by claim, but after Plaintiff's objection the Court denied that request. Mem. P&A at 22; TT6 pp. 89-90. Plaintiff's opposition also is conspicuously silent on the 2022 and 2023 LTIP amounts, Opp. at 25-27, which cannot be tort damages from Plaintiff's termination because they were owed *before* the termination and thus cannot have been *caused by* the termination. Mem. P&A at 19, 23. Those amounts ($3,234,726) cannot be included, because they cannot possibly be tort damages caused by his termination. *See* Fode Decl. Exs. S ¶¶ 13 & 39, 175.

The same logic should apply to the 2024 LTIP award, because—as Plaintiff himself argued—his termination without cause did not affect his contractual right to that award. So the lack of payment on the 2024 LTIP is not *causally* related to his termination. Mem. P&A at 23. Plaintiff argues that he also could seek that amount as tort damages, but fails to address the causal problem with that theory. Opp. at 26. And, of course, any amount the Court finds excessive or unsupported based on the other motions before it must be excluded as well.

As for the ratio, Plaintiff argues that 3.8:1 is constitutional, but "[m]ultipliers *less* than nine or 10 are not … presumptively valid under *State Farm* [*Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)]." *Simon v. San Paolo U.S. Holding Co.*, 35 Cal. 4th 1159, 1182 (2005). With very high compensatory awards, a 1:1 ratio can reach the constitutional limit. Mem. P&A at 23-24. Plaintiff tries to distinguish *Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009) and *McCray v. Westrock Services, LLC*, 2024 WL 4579108 (C.D. Cal. Sept. 10, 2024), but ignores *Dawe v. Corrections USA*, 506 F. App'x 657 (9th Cir. 2013) and *Noyes v. Kelly Services, Inc.*, 349 F. App'x 185 (9th Cir. 2009). Plaintiff relies on *Zhang* and *Rubio*, but the punitive damage awards there were one to two orders of magnitude smaller than here. *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1044 (9th Cir. 2003) ($2.6 million punitive award); *Rubio v. CIA Wheel Grp.*, 63 Cal. App. 5th 82, 100 (2021) ($500,000 punitive award). Plaintiff cites no case affirming a

punitive damage award even close to this one.

3. *Plaintiff's remaining arguments do not save the award*

Plaintiff contends that Ameris's "vast financial resources" justify this unprecedented award. That is not the law. "The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award," and "cannot make up for the failure of other factors, such as 'reprehensibility,' to constrain significantly an award that purports to punish a defendant's conduct." *Bains LLC*, 405 F.3d at 777 (quoting *State Farm*, 538 U.S. at 427-28). Most of Plaintiff's authorities deal with the opposite issue: when a defendant's resources are too small to support an otherwise proper award. He points to *Freund v. Nycomed Amersham*, but "Nycomed [did] not challenge the size of the punitive award in relation to the compensatory award." 347 F.3d 752, 764 n.12 (9th Cir. 2003). Ameris's resources do not justify imposing a $62M+ punitive damage award for terminating Plaintiff.

Finally, Plaintiff argues that Ameris is pointing to the wrong civil penalty, and suggests the appropriate civil penalty is $2 million under California Labor Code section 210. Opp. at 30. But that and the other penalties Plaintiff cites are for non-payment of wages, not termination; they are irrelevant to punitive damages. Even crediting Plaintiff's theory, the jury's award is more than 31 times higher. Under any analysis, the civil penalties factor shows the jury's award is unconstitutional.

The Court should find the punitive damage award excessive on both state law and constitutional grounds. It should reduce the award to 1:1 the tort damages not otherwise reduced through the pending motions, excluding the damages for the 2022, 2023, and 2024 LTIP bonuses, or alternatively order a new trial.

## IV. Conclusion

For the reasons explained in the moving papers and above, the Court should grant Ameris's motion for new trial.

Dated: October 9, 2026

Respectfully submitted,

**COMPLEX APPELLATE LITIGATION GROUP LLP**

/s/ Michael von Loewenfeldt
Michael von Loewenfeldt
Johanna Schiavoni
Jessica M. Weisel

**NUKK-FREEMAN & CERRA, P.C.**

Stacy L. Fode
Nana J. Yee

Attorneys for Defendant
AMERIS BANK