Johanna Schiavoni (SBN 248501)
johanna.schiavoni@calg.com
Michael von Loewenfeldt (SBN 178665)
michael.vonloewenfeldt@calg.com
Jessica M. Weisel (SBN 174809)
jessica.weisel@calg.com
**COMPLEX APPELLATE LITIGATION GROUP LLP**
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (213) 878-0404
Facsimile: (415) 726-2527

Stacy L. Fode, Esq. (SBN 199883)
sfode@nfclegal.com
Nana J. Yee, Esq. (SBN 272783)
nyee@nfclegal.com
**NUKK-FREEMAN & CERRA, P.C.**
550 West C Street, Suite 910
San Diego, California 92101
Telephone: (619) 292-0515
Facsimile: (619) 566-4741

Attorneys for Defendant
AMERIS BANK

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PATRICK BYRNE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>AMERIS BANK, a Georgia corporation,<br><br>Defendant. | Case No.: 8:24-cv-01989-MWC-JDE<br><br>**REPLY IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FRCP 59(e)**<br><br>Date: October 23, 2026<br>Time: 1:30 p.m.<br>Dept.: 6A<br><br>Hon. Michelle Williams Court |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii
INTRODUCTION ........ 1
ARGUMENT ........ 1
I. Plaintiff Fails to Show Any Evidence of Future Economic Damages ........ 1
  A. The record contains no evidence that Plaintiff would have worked for Ameris after June 2026, much less for how long ........ 3
  B. The record contains no evidence of how much money Plaintiff would have made working for Ameris after 2024 ........ 6
  C. This is not a question of mitigation ........ 8
II. The Court's Prejudgment Interest Award Should Be Amended ........ 9
  A. Not all of the $9 million can be contract damages ........ 9
  B. The 2024 LTIP amount ........ 11
  C. When should interest run? ........ 11
CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

***Cases***

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960 (9th Cir. 2013) ... 10

*Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696 (2017) ... 1, 2, 3, 6, 7, 8, 11

*Brooktree Corp. v. Advanced Micro Devices, Inc.*, 757 F. Supp. 1088 (S.D. Cal. 1990) ... 10

*Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338 (9th Cir. 1987) ... 6

*Citri-Lite Co. v. Cott Beverages, Inc.*, 721 F. Supp. 2d 912 (E.D. Cal. 2010) ... 5

*Kelley v. Fundomate, Inc.*, 773 F. Supp. 3d 899 (C.D. Cal. 2025) ... 5

*Oldenkott v. Am. Elec., Inc.*, 14 Cal. App. 3d 198 (1971) ... 4

*Padgett v. Wright*, 516 F. App'x 609 (9th Cir. 2013) ... 9

*Patel v. Penman*, 103 F.3d 868 (9th Cir. 1996) ... 9

*Toscano v. Greene Music*, 124 Cal. App. 4th 685 (2004) ... 5

*United States v. English*, 521 F.2d 63 (9th Cir. 1975) ... 2

*Villacorta v. Cemex Cement, Inc.*, 221 Cal. App. 4th 1425 (2013) ... 5

***Statutes***

Cal. Civ. Code § 3283 ... 1

Cal. Civ. Code § 3287 ... 11

***Rules***

Fed. R. Civ. P. 50 ... 12

Fed. R. Civ. P. 59 ... 12

## INTRODUCTION

This motion concerns two issues: future economic damages and prejudgment interest on past economic damages. On the first issue, Plaintiff argues that the mere fact of his former employment and a few statements of interest in discussing a future relationship are sufficient. But none of the evidence he cites provides an evidentiary basis for the jury's $6.3 million award of future economic damages. The Court should strike the future economic damages from the judgment. On the second issue, Plaintiff argues that all $9 million in past economic damages are for LTIP contract damages, even though that is nearly a million dollars more than the evidence showed. But he impliedly concedes that interest on monies owed for the 2024 LTIP bonus cannot run until March 2025 when that bonus was due. As discussed below, the current interest award is unsupported and inequitable, and it should be amended and reduced.

## ARGUMENT

### I. Plaintiff Fails to Show Any Evidence of Future Economic Damages

Plaintiff does not dispute that an award of future economic damages must be based on evidence that "makes reasonably certain their occurrence and extent." *Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696, 738 (2017); *see* Cal. Civ. Code § 3283 ("Damages may be awarded, in a judicial proceeding, for detriment … certain to result in the future.").[1] California law does not permit damages that are "speculative, remote, imaginary, contingent, or merely possible." *Atkins*, 8 Cal. App. 5th at 738. "Requiring the plaintiff to prove future economic losses are reasonably certain 'ensures that the jury's fixing of damages is not wholly, and

---

[1] Plaintiff sometimes refers to a "reasonable probability" rather than a "reasonable certainty," Dkt. 270 ("Opp.") at 11 (citing written jury instructions), but the instruction read to the jury was "reasonable certainty" (TT6 p. 110:12-17). The latter reflects the law, as Plaintiff admits. Opp. at 5, 9; *Atkins*, 8 Cal. App. 5th at 738. Here, either wording would reach the same result.

thus impermissibly, speculative.'" *Id.* And Plaintiff "agrees" that "an award unsupported by any evidence cannot stand." Opp. at 14.

Plaintiff also does not dispute that *no witness* offered any testimony estimating or calculating future lost wages (much less discounting them to present value).[2] Plaintiff did not testify that he planned to work at Ameris past 2024, offer *any* evidence of how long he would have worked there if he had not been terminated, or opine what the terms of that work would have been. Plaintiff's opposition does not identify a single piece of evidence from Plaintiff or anyone else concerning whether, on what terms, or for how long Plaintiff would have worked for Ameris past 2024, much less past the June 11, 2026 verdict. To the contrary, Plaintiff testified that he had only six months left in his employment with Ameris when he was terminated. TT2 p. 78:11-12.

And Plaintiff does not dispute that, consistent with the absence of any evidence on this point, Plaintiff's counsel did not ask for an award of future wages[3] and told the jury that Plaintiff was fired with only six months left on his contract. TT1 pp. 148:24-149:1 (opening); TT6 pp. 140:16-19, 141:11-12 (closing).

Despite this lack of evidence or argument, the jury awarded Plaintiff $6.3 million in future economic loss. Fode Decl. Ex. Q. Plaintiff attempts to justify this award by, for the first time, articulating a theory that but for his termination he would have been employed by Ameris for "the long term" or "many years to come." Opp. at 7-8. Plaintiff admits the award requires "a reasonably certain evidentiary basis for both the amount of compensation Byrne would have earned and the period over which he would have earned it." Opp. at 9. The scraps of testimony Plaintiff cites do not meet that standard.

---

[2] *See United States v. English*, 521 F.2d 63, 71-72 (9th Cir. 1975) (award of future wages must be discounted to present value).

[3] Counsel *once* referred to the 2024 LTIP payment as "future lost earnings" even though it was due in 2025 not after trial, but included that amount in the award requested for *past* economic loss. TT6 pp. 140:22-23, 134:24-25, 150:13-21.

### A. The record contains no evidence that Plaintiff would have worked for Ameris after June 2026, much less for how long

It is undisputed that Plaintiff's contract with Ameris was for a fixed period ending in 2024, and that Ameris had given notice it would not be renewed. Fode Decl. Exs. 95 & 324 ¶ 1. Plaintiff newly theorizes that the jury concluded that, but for his termination, a new contract or other terms of employment would have been reached, and Plaintiff would have earned $6.3 million after the date of the verdict. But any such conclusion would be speculation piled on speculation. The occurrence of future damages must be proved with reasonable certainty. *Atkins*, 8 Cal. App. 5th at 738.

First, the jury would have to find that Ameris and Plaintiff would have agreed to continued employment past 2024. As "evidence" of that, Plaintiff only points to three small points in the record (he cites them repeatedly, but it is only three). In July 2023, a year before he was terminated, Ameris's CFO told Plaintiff she "still wanted him to lead the Balboa Division." TT3 pp. 86:17-87:7. That testimony says nothing about Plaintiff being employed by Ameris after 2024, much less after June 2026.

Next, Plaintiff argues that LaHaise told him in his 2023 performance review that he "wanted him to continue as CEO" and that when Ameris decided not to renew Plaintiff's contract, it said it still wanted to work through a long-term plan with him. Fode Decl. Ex. 95; TT3 p. 243:11-13. Ameris also sent Plaintiff a severance protection agreement in connection with continued employment that contained no salary or other compensation terms. TT3 p. 244:17-20. But Plaintiff scoffed at the suggestion of a long-term plan, testifying that "it appears that his long-term plan is just to get me out, I guess in retrospect" and that "I don't know what is our long-term plan." TT2 p. 80:7-14. Plaintiff never signed the severance protection agreement. TT4 p. 79:4-6. Nor did he testify that he made any effort to negotiate terms for continued employment, or what terms would have been

acceptable to him.[4] And Plaintiff's counsel elicited testimony that the severance protection agreement was "not an offer of future employment." TT3 p. 246:13-16.

Finally, Plaintiff points to testimony from Rasmussen that he thought Plaintiff's work ethic was strong as of March 2024 when Rasmussen left Ameris. TT3 pp. 33-34, 52-53. That testimony says nothing about whether Plaintiff would be working for Ameris after his contract ended in December 2024, and again, much less after June 2026.

Those three stray threads in no way establish that Plaintiff and Ameris would have reached an agreement on Plaintiff remaining employed by Ameris after December 2024, much less the terms of that agreement and how long that employment would have lasted. The only actual evidence was Plaintiff's admission that his contract had only six months left when he was fired. TT2 p. 78:11-12.

Lacking evidence, Plaintiff attempts to bolster his argument by citing *Oldenkott v. American Electric, Inc.*, 14 Cal. App. 3d 198 (1971), where the plaintiff was awarded damages for a period including a two-year renewal of his existing contract. Opp. at 8. But there are two key differences between this case and *Oldenkott*. First, the contract in *Oldenkott* was renewable "at the option of plaintiff." 14 Cal. App. 3d at 201. Here, the contract provided for automatic renewal "unless the Company or the Executive has given written notice to the other of its intent not to renew this Agreement," and it is *undisputed* that Ameris gave notice in March 2024 that the contract was *not* going to be renewed. Fode Decl. Exs. 95 & 324 ¶ 1. Second, in *Oldenkott* the plaintiff "testified if his contract had not been terminated he intended to exercise the option extending the term for an additional two years; he was 42 years of age; and he was in good health." 14 Cal. App. 3d at 203. Here, Plaintiff gave no such testimony. As discussed above,

---

[4] Plaintiff correctly argues that a *written* employment contract is not required for employment, Opp. at 5, but does not deny that some form of agreement would have to have been reached for Plaintiff to remain employed after December 2024.

Plaintiff did not testify that he would have remained at Ameris. He testified only that his contract ended six months after his termination. TT2 p. 78:11-12. And his counsel echoed that, telling the jury that the contract was "actually set to expire anyway" in December 2024.[5] TT6 p. 140:16-19; *see also* TT1 pp. 148:24-149:1; TT6 p. 141:11-12.

There was no evidentiary basis for the jury to conclude that Plaintiff would have been employed by Ameris after June 11, 2026 (the date of the phase one verdict), much less for how long. Plaintiff's new argument that his employment would extend "well into the future," Opp. at 9, is pure speculation and cannot support an award of future economic damages. *See Toscano v. Greene Music*, 124 Cal. App. 4th 685, 696 (2004) (reversing as speculative future lost wages where there was no proof of "a definite expectation of continued employment … for any particular period of time"); *Kelley v. Fundomate, Inc.*, 773 F. Supp. 3d 899, 929 (C.D. Cal. 2025) (award of future damages impermissibly speculative where "the terms of the offer were not clearly defined" and "Plaintiff did not establish he had a definite expectation of continued employment … for any period of time"); *Citri-Lite Co. v. Cott Beverages, Inc.*, 721 F. Supp. 2d 912, 937 (E.D. Cal. 2010) (damage theory based on assumption contract would have been renewed is "based on purely 'imaginary' and 'speculative events'").

---

[5] Plaintiff repeatedly argues that the arguments of counsel are not testimony, and Ameris agrees with that proposition. But that does not mean counsel's arguments are irrelevant to understanding what theories were presented to the jury by the parties. The purpose of opening statements and closing arguments is "to help [the jury] interpret the evidence." TT1 p. 124:3-8; TT6 p. 103:19-24. It is also true that *Villacorta v. Cemex Cement, Inc.*, 221 Cal. App. 4th 1425, 1433 (2013) affirmed a damages award higher than counsel requested; but not for a category of damages that was never requested, and not on a theory that was never argued. *Villacorta* does not aid Plaintiff.

### B. The record contains no evidence of how much money Plaintiff would have made working for Ameris after 2024

Just as there is no record evidence of whether, or for how long, Plaintiff would have worked for Ameris after June 11, 2026, there is no record evidence of how much Plaintiff would have been paid during that time. But the extent of future damages, post-dating trial, must also be proved with reasonable certainty. *Atkins*, 8 Cal. App. 5th at 738.

Plaintiff concedes that neither his expert nor any other witness offered any calculation of future losses. He argues that no expert testimony is required under *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338 (9th Cir. 1987). Opp. at 13. But in *Cassino* the plaintiff himself gave "lay opinion testimony about future earnings and benefits, and the application of inflation and discount rates to those figures." 817 F.2d at 1347-48. Plaintiff did not do that here. No testimony of any kind was presented to the jury, from Plaintiff or anyone else, of how much Plaintiff would have made if he stayed with Ameris not only past 2024 but past June 11, 2026 and into the future.

Plaintiff seeks to fill this gap by arguing that the evidence of his *past* income under his written contract with Ameris is somehow evidence of future income. Opp. at 9. But that three-year employment contract was made as part of Plaintiff's sale of Balboa to Ameris, and was not renewed. TT2 pp. 19:13-20:2; Fode Decl. Ex. 95. And he argues that the current CEO of the division, Silva, is making a similar (if smaller) amount. Opp. at 10-11. But Plaintiff offered no evidence that he would have been offered those terms. Nor, perhaps more importantly, did he offer any evidence that he would have accepted them. This whole case arises from Plaintiff's claim that he was owed millions more than Ameris said it owed him. Nothing in the record suggests that Plaintiff would have agreed to accept less pay going forward. To the contrary, in May 2024 Plaintiff told Silva: "I have received

no offers on the LTIP nor have I heard anything on the 2025 compensation plan." Sessions Decl. Ex. 100; TT5 p. 13:4-8.

Moreover, Plaintiff's past compensation above the base salary of $350,000 was based on company performance bonuses. TT2 pp. 20:18-21:7; Fode Decl. Ex. 324 ¶ 3.2. There was no evidence predicting Ameris's future performance or whether any bonuses would be earned in the future. While Plaintiff's opposition refers to a future LTIP, the LTIP Award Agreement was expressly for *2022-2024 only*. Fode Decl. Ex. 546. Plaintiff's opposition (at 10) refers to "discussions with LaHaise regarding the 2025 LTIP plan" but the evidence he cites—TT3 p. 244:11-16 and Fode Decl. Ex. 95—contain no such discussions. There was no evidence at trial about a new LTIP plan after 2024.

The award of future damages here is even more infirm than the award in *Atkins*. In *Atkins*, the plaintiffs presented an expert who testified to future damage calculations, and the plaintiffs each testified that they hoped to stay with the police department until retirement. 8 Cal. App. 5th at 740-41. The problem in *Atkins* was that those opinions lacked a factual basis. Here, the record does not contain either of those insufficient pieces of evidence; no one gave any testimony about future lost wages.

The expert's opinions in *Atkins* were deficient because they were not based on underlying evidence. 8 Cal. App. 5th at 740. The same deficiency—lack of evidentiary support—applies to the jury verdict here. That rule applied in *Atkins*—requiring a *factual basis* for an award of future damages—is *not* limited to obtaining a qualification or position in the first instance, as Plaintiff argues. Opp. at 10. It requires a nonconjectural basis for each fact underlying an award of future economic damages.

Plaintiff's opposition does not cite an evidentiary basis for the jury to find that Plaintiff would have continued to be employed past 2024—much less past June 11, 2026. It cites no evidence of the terms of such hypothetical employment,

or how long it would last. And Plaintiff does not, and cannot, articulate a logical calculation underlying the $6.3 million award. He offers no explanation of how long the jury concluded he would be employed, at what rate, what supports that calculation, or how it was discounted to present value.

Instead, Plaintiff offers a string of assumptions based solely on his prior employment and the fact that Ameris said it was open to discussing a future relationship with him. That is *not* evidence supporting an unexplained award of $6.3 million in future damages that no witness calculated and Plaintiff did not even ask the jury to award. The "reasonable certainty" standard requires more. *Atkins*, 8 Cal. App. 5th at 738.

**C. This is not a question of mitigation**

Finally, Plaintiff mistakenly attempts to reframe Ameris's argument as one about mitigation. Opp. at 11-13. A mitigation of damages argument only makes sense once the Plaintiff has put on evidence that there were future wage losses to mitigate. At trial, the only economic losses Plaintiff introduced evidence of were his LTIP awards for 2022, 2023, and 2024. *See* Dkt. 264-1 ("Mem. P&A") at 2-3. None of those amounts were subject to a mitigation of damages argument about whether Plaintiff should have found future employment.

The issue here is not that Plaintiff proved an amount of lost wages that the jury should have reduced because he failed to mitigate his loss. The issue is that Plaintiff made no attempt to claim or prove lost wages *at all*. Evidence from Ameris about other jobs Plaintiff could have obtained after 2024 (much less after June 11, 2026) would have been wholly irrelevant given the limited damages case presented by Plaintiff at trial.[6]

---

[6] Plaintiff argues that the undisputed terms of the contract and Plaintiff's own testimony are "just Ameris's version of events." Opp. at 11. Not so. Ameris cited this to show a *lack* of testimony about future losses—not to make an argument that Plaintiff should have mitigated losses he never claimed to have suffered.

At bottom, the jury's award of $6.3 million in future damages has no evidentiary support. Even under Plaintiff's newfound theory, at most the record showed that Ameris was open to discussing a relationship for some unspecified period past 2024 with Plaintiff, but no terms were discussed. Fode Decl. Ex. 95; TT3 p. 243:11-13. That is not enough to assume that Plaintiff and Ameris would have agreed to terms, the amount of wages Plaintiff would have received under those terms, or that the relationship would have continued past June 11, 2026 until $6.3 million was owed.

Because there is no evidentiary basis for the jury's award of future economic damages, the Court should alter and amend the judgment to remove that portion of the award. *See, e.g.*, *Patel v. Penman*, 103 F.3d 868, 878-79 (9th Cir. 1996); *Padgett v. Wright*, 516 F. App'x 609, 611-12 (9th Cir. 2013).

## II. The Court's Prejudgment Interest Award Should Be Amended

Plaintiff agrees that prejudgment interest is governed by California law and implicitly concedes that he did not ask the jury for prejudgment interest on tort damages. Opp. at 14, 17. He agrees that the court can look to the evidence and allocate the jury's damage award. Opp. at 15, 17. And he effectively concedes that Ameris should not be assessed interest running from September 2024 for amounts not due until March 2025. Opp. at 18-19.

So the prejudgment interest dispute raises three questions: (1) was the entire $9 million award of past economic damage contract damages, (2) how much of the past economic damages are for the 2024 LTIP, and (3) when should interest start to run?

### A. Not all of the $9 million can be contract damages

Plaintiff's breach of contract claim alleges failure to pay the LTIP bonuses in 2022, 2023, and 2024. Fode Decl. Ex. P ¶¶ 50-52. The *only* evidence of the amount Plaintiff was owed in LTIP bonuses, according to his own expert, was Dickson's calculations. Those total $8,079,711. Fode Decl. Ex. 175; TT5 pp.

117:19-118:9. Plaintiff argued to the jury that those numbers were correct. TT6 pp. 134:20-21 ("Ms. Dickson, in contrast, gave you the correct calculations."), 150:13-21 ("Ms. Dickson has provided a complete damages calculation broken down by year."). And the Court found, based on Dickson's testimony, that "Ameris owed Byrne LTIP wages of $3,234,276 for 2022 and 2023 at the time Ameris terminated Byrne's employment." Fode Decl. Ex. S ¶¶ 13 & 39.[7]

The jury's award of $9 million exceeds the LTIP damages by $920,289. To the extent that figure is based on anything, it can *only* be tort damages. Thus, it should be excluded from the contractual prejudgment interest calculation.

Plaintiff insists that because the jury verdict is not differentiated, it can be considered both all contract damages for this purpose and all tort damages for other purposes. Opp. at 15. That is incorrect. Of course, the reason it is undifferentiated is because Plaintiff successfully objected to Ameris's proposed verdict form breaking the numbers out (an issue Plaintiff's oppositions ignore). Mem. P&A at 6 n.5; TT6 pp. 89-90; Fode Decl. Exs. N, Q. And, as noted above, Plaintiff admits that the Court can look to the evidence to allocate these undifferentiated damages. Opp. at 17; *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 975-76 (9th Cir. 2013) (court could reasonably infer that the jury accepted expert's calculations); *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 757 F. Supp. 1088, 1100 (S.D. Cal. 1990), *aff'd*, 977 F.2d 1555 (Fed. Cir. 1992) (rejecting argument that court cannot allocate the damage award).

Plaintiff offers two theories of how the extra $920,289 can be considered contract damages. Both are incorrect. First, he argues that there was other evidence of unpaid LTIP based on his own emails and testimony. But Plaintiff's own final calculations were overall *lower* than Dickson's calculations. Plaintiff calculated a

---

[7] Ameris notes that the Court's findings contain a small typographical error inverting two digits. Dickson's numbers for 2022 and 2023 add up to $3,234,726, not $3,234,276 ($890,858 + $2,343,868 = $3,234,726). *See* Fode Decl. Ex. 175.

total pool shortfall for 2022 and 2023 of $4,494,801. TT2 pp. 68:8-69:6; Fode Decl. Ex. 482 p. 5. Dickson's number was $5,172,253. Fode Decl. Ex. 175.

Second, Plaintiff argues that the jury might have found that he would have given himself more than the 62.54% of the LTIP pool. Opp. at 15-16. He points to $15,000 he took from an employee's 2022 revoked bonus, which he testified was leftover money that Ameris's head of compensation suggested he take. Opp. at 16; TT2 pp. 128:23-131:9. There is no evidence Plaintiff would have decided to take a larger share in other years; his testimony was that his percentage was fixed in advance. TT2 p. 37:5-15. The jury is not permitted to speculate that Plaintiff might have taken more. *Atkins*, 8 Cal. App. 5th at 738 (damages cannot be "speculative, remote, imaginary, contingent, or merely possible").

Given Plaintiff's own evidence, the Court should only treat $8,079,711 of the past economic damages award as contract damages.

**B. The 2024 LTIP amount**

If the contract damages are $8,079,711, then the 2024 LTIP portion is $4,844,985, as Dickson testified. Fode Decl. Ex. 175; TT5 pp. 117:19-118:9. If the contract damages are the entire $9 million, as Plaintiff argues, then Plaintiff's suggestion that they be split proportionally among the three LTIP years makes the 2024 portion $5,396,400 and the 2022/2023 portion $3,603,600. Opp. at 18-19.

**C. When should interest run?**

Both parties agree the Court has discretion under California Civil Code section 3287(b). Opp. at 20-21. The moving papers state Ameris's position on why interest should not run until June 10, 2026 when the breach of contract claim was added to the case. Plaintiff's argument that the issue of LTIP payments was always in the case does not answer the question of when the *claim* for contract damages and, consequently, contract prejudgment interest, became part of the case.

But even if the Court disagrees with Ameris on this issue, Plaintiff effectively concedes that interest on the 2024 LTIP portion of the damages should

not run until March 15, 2025 when that payment was due. Opp. at 18-19. And that is the only result that makes sense here. Ameris cannot owe interest on an amount before it was obligated to pay it. Thus, at a minimum, the Court should amend the judgment to reflect that prejudgment interest on the 2024 LTIP amount does not run until March 15, 2025.

Taking the three issues together, and subject to any decrease in the past economic damages as a result of the Rule 50(b) or 59 motions:

If the Court determines that the contractual portion of the damages award is $8,079,711, then it should revise the prejudgment interest[8] award to $104,040.11 if interest runs from the date the breach of contract claim was added (June 10, 2026), or to $1,264,116.84 if the 2022 and 2023 LTIP amounts accrue interest as of the original complaint and the 2024 LTIP interest starts on March 15, 2025.

If the Court determines that the entire $9 million past economic damages award is contract damages, then it should revise the current prejudgment interest award to $115,890.41 if interest runs from the date the breach of contract claim was added (June 10, 2026) or, taking Plaintiff's proportional math, $1,408,122.74 if the 2022 and 2023 LTIP amounts ($3,603,600) accrue interest as of the original complaint and the 2024 LTIP ($5,396,400) interest starts on March 15, 2025.

## CONCLUSION

For the reasons stated above and in the moving papers, Ameris respectfully requests that the Court alter and amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) to:

1. eliminate the jury's unsupported award of $6.3 million in future economic damages; and

2. revise the prejudgment interest award as consistent with the calculations above.

---

[8] The current award results in $1,674,246.58 in interest.

Dated: October 9, 2026

Respectfully submitted,

**COMPLEX APPELLATE LITIGATION GROUP LLP**

/s/ Michael von Loewenfeldt
Michael von Loewenfeldt
Johanna Schiavoni
Jessica M. Weisel

**NUKK-FREEMAN & CERRA, P.C.**

Stacy L. Fode
Nana J. Yee

Attorneys for Defendant
AMERIS BANK